IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>              Plaintiff,<br>   v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS, INC.; AND ACTAVIS PLC,<br><br>              Defendants. | Case No. 14-cv-04361<br><br>Hon. Elaine E. Bucklo |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF TO DISMISS
ALL CLAIMS AGAINST CEPHALON, INC. AND TEVA PHARMACEUTICAL
INDUSTRIES LTD. PURSUANT TO RULE 12(b)(2), RULE 12(b)(6), AND RULE 9(b)**

/s/ Tinos Diamantatos
Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Tel.: (312) 324-1000
Email: tdiamantatos@morganlewis.com

Gordon Cooney, Jr. (admitted *pro hac vice*)
Steven A. Reed (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Email: jgcooney@morganlewis.com
Email: sreed@morganlewis.com

*Attorneys for Defendant Cephalon, Inc. and Teva Pharmaceutical Industries LTD.*

I.  **INTRODUCTION**

In its prolix complaint, the City makes sweeping accusations against numerous, distinct companies with respect to different medicines in a broad class of pain medications, based upon conclusory allegations that largely fail to distinguish between Defendants or the particular pharmaceutical products they sell. Defendants have filed a joint motion to dismiss to address the many deficiencies in the Complaint that warrant dismissal. Defendants Cephalon, Inc. ("Cephalon") and its parent entity, Teva Pharmaceutical Industries Ltd. ("Teva"), join in that motion, and also move separately and submit this supplemental memorandum to explain the additional reasons why the City's claims against them should be dismissed.

The claims against Cephalon and Teva, which relate to just 105 of the nearly 400,000 opioid prescriptions at issue in the Complaint, are particularly deficient. The Complaint does not contain any factual allegations with respect to Teva; and the only allegations against Cephalon are general, conclusory, and relate to Cephalon's alleged promotion of two opioid medicines, Actiq and Fentora, for off-label uses. However, off-label prescribing is entirely lawful. Although off-label *promotion* may raise FDA regulatory issues, statements about uses that have not been specifically approved by the FDA are not inherently fraudulent. Indeed, recognizing the difference between off-label promotion and fraud, multiple courts have dismissed substantially similar complaints against Cephalon because the very types of allegations raised by the City do not state a claim.[1]

As in *Travelers, Carpenters,* and *CREB I* and *II,* the City fails to identify a *single* false statement or omission that Cephalon or Teva made to a *single* physician who wrote an Actiq or

---

[1] *See Travelers Indemnity Company v. Cephalon, Inc.* ("*Travelers*"), No. 12-4191, 2014 WL 3408550 (E.D. Pa. July 14, 2014); *Indiana/Kentucky/Ohio/Regional Council of Carpenters Welfare Fund v. Cephalon, Inc.* ("*Carpenters*"), No. 09-3418, 2014 WL 2115498, at *6 (E.D. Pa. May 21, 2014); *Cen. Reg'l Empl. Benefit Fund v. Cephalon, Inc.* ("*CREB II*"), No. 09-3418, 2010 WL 1257790, at *4 (D.N.J. March 29, 2010); *Cen. Reg'l Empl. Benefit Fund v. Cephalon, Inc.* ("*CREB I*"), No. 09-3418, 2009 WL 3245485 (D.N.J. Oct. 7, 2009).

1

Fentora prescription that the City paid for; that Cephalon or Teva caused a *single* prescribing doctor to deviate from her medical judgment and prescribe one of the 105 Actiq or Fentora prescriptions at issue; or that any of these prescriptions was medically inappropriate for and did not benefit the Chicago employees who received them. Nor does the City allege that Cephalon said or did anything to cause it to reimburse for those prescriptions. The City certainly has failed to allege any particular facts about any fraudulent statements by Cephalon or Teva, as required by Rule 9(b). Moreover, while it uses the term "conspiracy" liberally, the City does not assert a *single* fact to support an agreement of any kind between any of the Defendants. To the contrary, at most, the Complaint alleges parallel conduct that is entirely consistent with each Defendant's independent interests. Thus, all claims against Cephalon and Teva should be dismissed.

In addition, the Court lacks personal jurisdiction over Teva, which is a foreign corporation. Teva is headquartered and has its principal place of business in Israel, and Plaintiff asserts no facts to link Teva to this forum or the subject matter of this lawsuit. Indeed, Teva does not market, promote, or sell opioids. Teva's only alleged connection to this lawsuit is its ownership interest in Cephalon—which is insufficient as a matter of law to confer personal jurisdiction over Teva in this Court. For this reason as well, the claims against Teva should be dismissed.

## II.  FACTUAL BACKGROUND

Teva is an Israeli company with its principal place of business in Israel. (Compl. ¶ 24). Teva acquired Cephalon in 2011. (*Id.*). Since that time, Cephalon has been a wholly-owned subsidiary of Teva, and Teva does not itself manufacture, market, or sell opioid medicines in the United States. (Declaration of Hillel West ("West Decl."), attached hereto as Ex. A, at ¶¶ 3-4).[2]

---

[2] The Court may consider the West Declaration for the purpose of determining whether it has personal jurisdiction over Teva. *See, e.g.*, *Levin v. Posen Found.*, No. 13-C-8102, 2014 WL 3749189, at *1 n.2 (N.D. Ill.

Cephalon is a Pennsylvania-based pharmaceutical company that manufactures and sells innovative prescription medicines, including Actiq and Fentora. (Compl. ¶ 24). Actiq is a "potent" rapid-onset opioid that is delivered to the bloodstream through a lozenge that dissolves in the mouth. (*Id.* ¶¶ 198-99). As its label makes clear, Actiq was approved by the FDA for the management of breakthrough cancer pain in patients with malignant cancer who are opioid-tolerant. (*Id.* ¶ 200). The active ingredient in Actiq is fentanyl, a Schedule II controlled substance, and its product label (which includes a "black box" warning) specifies the potential risks associated with its use. (*Id.* ¶¶ 199-200). A true and correct copy of the Actiq product label is attached hereto as Ex. B.[3]

In October 2006, following FDA approval, Cephalon started promoting Fentora. (*Id.* ¶ 207). Like Actiq, Fentora is a "powerful" prescription opioid approved for the "treatment of breakthrough pain in patients with cancer who are already receiving and who are tolerant to around the clock opioid therapy for their underlying persistent cancer pain." (*Id.* ¶¶ 205-6). Fentora's label expressly states the conditions for which it is indicated and approved by the FDA and, like Actiq's label, includes a "strong" black box warning and lists the potential risks associated with its use. (*Id.* ¶ 206). A true and correct copy of the Fentora product label is attached hereto as Ex. C.

### A. Off-Label Prescribing Is Entirely Legal And Off-Label Promotion Is Not The Same As Fraud.

As touched upon in the Joint Motion to Dismiss (the "Joint Motion"), "off-label" prescribing refers to the well-established and entirely proper practice of medical professionals

---

July 29, 2014) ("court can consider declarations outside of the pleadings submitted by defendants challenging personal jurisdiction").

[3]     The product labels for Actiq and Fentora are quoted by the City and are central to the City's claims. (*See id.* ¶¶ 200, 206). As such, the complete product labels for Actiq and Fentora, attached hereto as Ex. B and Ex. C respectively, may properly be considered by the Court in ruling on the motion to dismiss. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

prescribing a medicine for a purpose different than that specifically approved by the FDA. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 n.5 (2001) (recognizing that off-label prescribing and use "often is essential to giving patients optimal medical care"); *Use of Approved Drugs for Unlabeled Indications*, FDA Drug Bulletin, Vol. 12, No. 1, at 4-5 (Apr. 1982) ("accepted medical practice often includes drug use that is not reflected in approved drug labeling"). Thus, in exercising their independent medical judgment, doctors are free to prescribe a medicine—including Actiq or Fentora—to treat *any* condition or symptom, regardless of whether the condition or symptom is covered by the FDA-approved labeling. *See Carpenters*, 2014 WL 2115498, at *7 ("We stress that it is not illegal for physicians, exercising their independent medical judgment, to prescribe Fentora for off-label use, that is, to patients outside of the breakthrough cancer pain context").

Off-label promotion is different from off-label prescribing, and refers to the promotion of a drug by a pharmaceutical company for a use not approved by the FDA. Off-label promotion may be subject to federal regulatory action by the FDA and has been the subject of enforcement by the U.S. Department of Justice, but there is nothing intrinsically untruthful or misleading about off-label promotion. *See, e.g.*, *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *10 (D.N.J. July 10, 2009) ("off-label promotion of a pharmaceutical product in violation of the FDCA simply does not give rise to fraud-based rights of action"); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 n.6 (N.D. Cal. 2009) ("off-label marketing of an approved drug is itself not inherently fraudulent").

**B.      The City's Claims Against Cephalon Rest Upon Off-Label Promotion**.

Although the Complaint spans 120 pages and 370 paragraphs, it mentions Teva only once (Compl. ¶ 24) and barely references Cephalon in the first 196 paragraphs. The City's allegations

4

against Cephalon come in Paragraphs 197-225, and assert that Cephalon marketed Actiq and Fentora off-label to unidentified physicians in promotional materials and continuing medical education seminars ("CMEs"). (*Id.* ¶¶ 197-225). Without pleading any facts about any prescribing doctors, anything in particular that Cephalon said to any prescribing doctors or the City, or any facts regarding the Actiq or Fentora prescriptions for which it paid, the City contends in conclusory fashion that Cephalon has "caused" it to pay for 105 prescriptions of Actiq and Fentora since 2007. (*Id.* ¶¶ 268, 270, 272). The City also contends that Cephalon and Teva somehow "conspired" with the other Defendants to have the City pay for opioid prescriptions. (*Id.* at ¶¶ 330-345, 362-366). Based upon these allegations, the City seeks to recover the costs of those prescriptions, as well as other costs and penalties. (*Id.* at ¶¶ 265-273).

## II. LEGAL ARGUMENT

### A. All Claims Fail Because The City Has Not Pled Any Misrepresentation Or Omission By Cephalon, Much Less Any That Satisfy Rule 9(b)

All ten of the claims asserted against Cephalon and the other Defendants rest upon allegations of fraudulent misrepresentations and omissions regarding safety and efficacy of opioids. (Compl. ¶¶ 100, 278, 300, 310, 317, 332-33, 348, 356, 365, 375). Because all of the City's claims are predicated on fraud, they are subject to the heightened pleading standards of Rule 9(b). *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, No. 13-2831, 2014 WL 3765935, *3 (7th Cir. Aug. 1, 2014); *Borsellino v Goldman Sachs Grp. Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

It is well-settled that off-label promotion of pharmaceutical medicines cannot form the basis for fraud-based claims, absent well-pled allegations that the promotional statements that

5

allegedly caused the plaintiff's injury were actually false or misleading.[4]  Applying this rule, numerous courts have dismissed complaints based upon nearly identical allegations against Cephalon for failing to plead any misrepresentation, omission, or other fraudulent conduct.  For instance, in *Carpenters*, a third-party payor asserted fraud-based claims against Cephalon to recover payments for supposedly inappropriate prescriptions of Fentora, based upon allegations that Cephalon engaged in fraudulent marketing.  2014 WL 2115498, at *1, 3.  The Court dismissed the "voluminous" complaint, which included many of the same allegations here, for failure to satisfy Rule 9(b).

The Court reasoned that although plaintiff "allege[d] a sweeping" campaign of "off-label marketing" regarding the use of Fentora for non-cancer pain, plaintiff failed to allege anything fraudulent that Cephalon did or said.  *Id.* at *5.  The Court stressed that statements that Fentora "'has been shown to be effective' for non-cancer breakthrough pain" were not false because they "neither contradict[] nor conceal[] the limits of the FDA's approval of the drug" and because "physician-prescribers are presumed to have knowledge of a drug label's contents."  *Id.* at *6.  The Court further reasoned that the plaintiff failed to identify when any specific statements were made, to whom, and how they were linked to any of the prescriptions at issue.  *Id.* at *6-7 & n.3; *see also CREB I*, 2009 WL 3245485, at *4 (dismissing fraud-based claims brought against Cephalon by governmental health and welfare benefit funds based upon alleged fraudulent

---

[4]  *See, e.g., United Food & Commercial Workers Cent. Pa. & Reg. Health & Welfare Fund v. Amgen, Inc.*, 400 Fed. Appx. 255, 257 (9th Cir. 2010) (dismissing claims because despite allegations of off-label promotion, complaint "did not identify statements or representations made by Amgen that were literally false or misleading"); *In re Schering-Plough Corp.*, 2009 WL 2043604, at *10 (dismissing claims because "off-label promotion of a pharmaceutical product in violation of the FDCA [Food Drug & Cosmetic Act] simply does not give rise to fraud-based rights of action . . .").

promotion of Actiq and Fentora because "[m]erely alleging that Cephalon marketed the drugs at issue for off-label purposes does not state a claim for fraud").[5]

Similarly, in *Travelers,* Judge McLaughlin dismissed a fraud-based complaint against Cephalon by several insurance companies seeking to recover payments for off-label prescriptions of Actiq and Fentora. The insurance companies relied upon many of the same statements and materials that the City does here, including certain promotional documents, educational seminars, and investor statements. 2014 WL 3408550, at *10. Judge McLaughlin held that the plaintiffs failed to satisfy the heighted standard of Rule 9(b) because "communications discussing, or even encouraging, non-FDA approved uses are not inherently fraudulent, and the plaintiffs have not explained in what way the statements [ ] are deceptive or misleading." *Id.* Judge McLaughlin further reasoned that the insurance companies could not rely upon the flawed assumption that "Cephalon must have misrepresented the safety or efficacy of the drugs, or doctors would not have prescribed them for off-label use," particularly when doctors are "sophisticated consumers who themselves have an affirmative duty to be familiar" with the labels of the medicines they prescribe. *Id.* at *11.

Like the complaints in *Carpenters*, *Travelers*, and *CREB,* the City relies upon nothing more than conclusory allegations of wrongdoing and allegations of off-label promotion to support its theory. The City fails to identify a ***single relevant*** supposedly false statement or omission by Cephalon. The City fails to identify any statement or omission (much less a false one) that Cephalon made to the City, that Cephalon made to any physician who prescribed Actiq

---

[5] The *CREB* Court also rejecting plaintiff's strategy—like the City's here (*see* Compl. ¶¶25-26, 196)—of trying to use Cephalon's plea agreement, which resolved a misdemeanor charge of violating the FDCA through off-label promotion between January and October 2001, to satisfy its fraud-based claims. Because off-label promotion cannot form the basis for fraud claims, the City's allegations concerning this plea agreement offer no support for its claims. *See, e.g.*, *CREB I*, 2009 WL 3245485, at *4 ("[r]eferring to a plea agreement and civil settlement in another action . . . does not satisfy plaintiffs' burden of pleading fraud with specificity under Rule 9(b) in this case, nor does such a reference 'raise a right to relief above the speculative level'"); *In re Schering-Plough Corp. I*, 2009 WL 2043604, at *10 (same).

or Fentora to one of the City's employees or retirees, or that is somehow linked to any prescription that the City paid for or that caused any harm to any Chicago resident. Nor does the City even attempt to identify any details about any false statements or omissions—such as when it was made, to whom, where, and by whom.

The City merely alleges – in a general and conclusory fashion – that Cephalon "deceptively and unlawfully" marketed Actiq and Fentora to doctors (*see* Compl. ¶¶ 197, 201, 219, 222, 225); that Cephalon sponsored publications that discussed the use of opioids generally (*id.*. ¶¶ 83, 106 121, 134-35); that Cephalon was a member of the American Academy of Pain Medicine (*id.* ¶ 149); and that Cephalon sponsored two CMEs where speakers talked about the use of rapid-acting opioids for breakthrough (not long-term) pain (*id.* ¶¶ 214-215). These allegations are woefully insufficient to satisfy Rule 9(b). They do not identify a single false statement that Cephalon made in connection with any of those activities. They do not allege that Actiq or Fentora was discussed and, if so, what was specifically said. And they do not connect any of these activities to any Actiq or Fentora prescription for which the City paid.

The City also makes the conclusory assertion that all "Defendants conspired to defraud the City" into paying for opioid prescriptions. (Compl. ¶ 339; *id.* at ¶ 330-345, 362-66). But the City fails to plead a single fact to show any agreement between Cephalon and any other Defendant, much less that Cephalon had knowledge of and participated in any plan to harm the City. For this reason alone, the City's conspiracy claims fail. *See, e.g., McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) ("[T]o state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement."); *see also Redelmann v. Claire Sprayway, Inc*., 375 Ill. App. 3d 912, 924 (1st Dist.

8

2007) ("The complaint must allege that the defendant knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy.")

At most, the City alleges that Cephalon was a member of a trade organization, funded third-party publications and research with other Defendants, and promoted Actiq and Fentora in ways similar to how other Defendants were promoting their medicines. (Compl. ¶¶ 106, 121, 134-35, 149, 151). As a matter of law, these allegations of lawful business activities and parallel conduct are insufficient to hold Cephalon responsible for the acts of any other Defendant under a conspiracy theory. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice"); *Moore v. Boating Indus. Assoc.*, 819 F.2d 693, 712 (7th Cir. 1987) ("mere membership" in trade association does not support conspiracy claim); *Burgess v. Abex Corp. ex rel. Pneumo Abex Corp.*, 311 Ill. App. 3d 900, 902 (4th Dist. 2000) ("an agreement implicitly shown by parallel conduct . . . is not sufficient to show a conspiracy").

Because the City has failed to plead any facts to show that Cephalon engaged in (or conspired to engage in) any fraudulent conduct, all of its claims against Cephalon should be dismissed.

### B. All Claims Fail Because The City Has Not Pled Any Facts To Show That Cephalon Caused The City Any Harm.

Further, as demonstrated in the Joint Motion, as pled, each of the City's claims require the City to show that: (a) each Defendant's misrepresentations or omissions caused Chicago physicians to write opioid prescriptions for which the City now seeks reimbursement; and (b) the City suffered a cognizable injury. (Compl. ¶¶ 268-270, 273, 289, 295-96, 304-05, 310, 312-13, 319, 325-27, 340-41, 343, 349-51, 355-63, 366, 368-69, 375-76). The City has not come close to doing so as to Cephalon.

9

### 1. All Claims Fail Against Cephalon For Lack of Causation.

The City contends that Cephalon made unidentified misrepresentations and omissions to Chicago prescribers, who, in turn, wrote prescriptions for which the City paid. (Compl. ¶ 265). The City, however, does not allege any facts to support this theory:

- It does not allege that Cephalon had any communications with the City or that the City directly relied on any statements by Cephalon;

- It does not identify any doctor who wrote an Actiq or Fentora prescription for which the City paid;

- It does not identify a single interaction between Cephalon and a doctor who wrote an Actiq or Fentora prescription—much less a single false statement that Cephalon made to a prescribing doctor; and

- It does not allege any facts to show that a single doctor abandoned his or her medical obligations and relied upon something false that Cephalon supposedly said in connection with a single prescription for which the City paid.

As a matter of law, the City's failure to allege facts to show that either it or the doctors who prescribed Actiq or Fentora had any contact with Cephalon, much less were influenced by anything false that Cephalon said, warrants dismissal. *See, e.g., CREB II*, 2010 WL 1257790, at *4 (dismissing claims against Cephalon because, despite allegations of off-label promotion, plaintiffs did "not plead a single instance in which they, themselves, or any of their prescribing doctors received a misrepresentation of fact from Defendants and relied upon that misrepresentation in deciding to prescribe one of the Subject Drugs to Plaintiffs").[6]

---

[6] *See also In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab.*, No. 05-cv-01699, 2012 WL 3154957, at *8-9 (N.D.Cal. Aug. 2, 2012) (dismissing fraud-based claims for lack of causation because third-party payor failed to allege "that particular doctors with a 'demonstrated connection' to the plaintiff were actually deceived by the defendant's statements"); *In re Yasmin & Yaz Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 3119499 (S.D.Ill. Aug. 5, 2010) (same); *In re Schering-Plough Corp. Intron/Temodar Cons. Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, at *8-9 (D.N.J. June 9, 2010) (same); *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, No. 08-CV-5175, 2009 WL 3151807, at *6 (S.D.N.Y. Sep. 30, 2009) (same).

Here, the City alleges nothing more than a conclusory and hypothetical nexus between Cephalon and any Chicago prescriber—that Cephalon sponsored three independent continuing medical education programs that were "*available to Chicago physicians*." (Compl.¶¶ 213-214 (emphasis added)). Yet, the Complaint contains no information as to whether a Chicago physician actually attended any Cephalon-sponsored CME or whether any physician prescribed Actiq or Fentora to someone covered by a City health plan as a result of the CME. The City simply makes no effort to connect anything that Cephalon allegedly said or did with the prescriptions for which it reimbursed.

### 2. All Claims Against Cephalon Fail for Lack of Injury.

As discussed in greater detail in the Joint Motion, it is also well-settled that merely reimbursing for off-label prescriptions is not a cognizable injury in the absence of facts that the prescriptions were ineffective for or caused harm to the patients who received them.[7] For this reason, courts have dismissed fraud-based claims against Cephalon for failure to plead facts showing that the patients who received the Actiq or Fentora prescriptions at issue somehow did not benefit from them or were harmed. *See, e.g.*, *Travelers*, 2014 WL 3408550 at *6-7; *CREB II*, 2010 WL 1257790 at *3.

Here, the City alleges no facts about any of the prescriptions it paid for or the patients who received them—including why Actiq or Fentora was prescribed, whether the prescription was on-label or off-label, whether it helped or harmed the unidentified patient, whether it was

---

[7] *See, e.g., In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 247 (3d Cir. 2011); *Ironworkers Local Union 68 And Participating Employers Health And Welfare Funds v. AstraZeneca Pharm. LP*, 634 F.3d 1352 (11th Cir. 2011); *Travelers,* 2014 WL 3408550 at *6-7; *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, *7-8 (D.N.J. June 9, 2010); *CREB II.*, 2010 WL 1257790, at *3; *District 1199P Health & Welfare Plan v. Janssen, L.P*, No. 06-3044, 2008 WL 5413105, at *11-13 (D.N.J. Dec. 23, 2008).

11

effective in treating his or her pain, or whether the City authorized the prescription even though it was to treat non-cancer pain.

Instead, the City's theory of harm relies entirely on the conclusory assertions that Actiq and Fentora were "not safe, effective or allowed" to treat chronic non-cancer pain because they were not approved by the FDA for such uses. (*See, e.g.,* Compl. ¶ 197). But simply because a medicine has not been approved by the FDA to treat a particular condition does not make it "ineffective" or "unsafe" for a patient with that condition. *Travelers*, 2014 WL 3408550 at *6 (rejecting conclusory allegations that Actiq and Fentora are "unsafe" or "ineffective" for off-label use because "absence of data or evidence proving that a drug is safe and effective in treating a particular condition, without more, does not support the conclusion that the drug is actually ineffective or unsafe for that use").[8]

Moreover, the City has not alleged facts to show that *any* of the 105 Actiq and Fentora prescriptions at issue were actually off-label, much less that the patients who received them either did not experience effective pain relief or suffered some harm. *Id.* at *7 (dismissing claims against Cephalon for lack of injury because "plaintiffs do not allege that the drugs failed to relieve claimant's pain" and "do not allege that any Travelers' claimant suffered physical harm as a result of taking Actiq or Fentora"). Once again, the City's bare assertions and legal conclusions fall far short of satisfying its pleading burden. Accordingly, because the City has failed to allege facts to show that it has been harmed by Cephalon, its claims must be dismissed.

C.    **The Claims Against Teva Fail For Additional Reasons.**

All of the claims against Teva fail for two additional reasons: (1) the Complaint alleges no facts to state a claim against Teva; and (2) the Court lacks personal jurisdiction over Teva.

---

[8] Indeed, the City's theory that Actiq and Fentora were somehow "ineffective" for treating such pain is contradicted by the FDA warnings regarding their potency and the City's description of these medicines as "powerful," "strong," and "potent." (Compl. ¶¶ 198, 199 200, 204); *see also Travelers,* 2014 WL 3408550, at *7.

### 1. The Complaint Fails To Allege Any Misconduct By Teva

To state a claim against Teva, the City must allege facts to show that Teva did something wrong. The allegations relating to Teva, however, are confined to one paragraph in the Complaint, which alleges that:

> Defendant Teva Pharmaceuticals Industries, Ltd. is an Israeli corporation with its principal place of business in Petah Tikva, Israel. In 2011, Teva Pharmaceutical Industries, Ltd. acquired Cephalon, Inc. Defendant Cephalon, Inc. is a Delaware corporation with its principal place of business in Frazer, Pennsylvania.

(Compl. ¶ 24). The Complaint does not allege a single fact to show that Teva participated in any misconduct or, indeed, marketed or promoted Actiq or Fentora at all.[9]

Teva's only alleged connection to this lawsuit is that it is the parent of Cephalon. But "the mere fact that there exists a parent-subsidiary relationship between two corporations" does not "make one liable for the torts of its affiliate." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Travelers*, 2014 WL 3408550, at *14 (dismissing claims against Teva because "parent company . . . is not liable for the acts of its subsidiaries"). For this reason, all claims against Teva should be dismissed.

### 2. Teva Is Not Subject to the Court's Jurisdiction.

The claims against Teva also should be dismissed for the independent reason that this Court lacks personal jurisdiction over it. This Court has personal jurisdiction over nonresident defendants only in cases where the defendant has sufficient "minimum contacts" with the forum such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

---

[9] In Paragraph 24 of the Complaint, the City purports to define "Cephalon" as Teva and Cephalon. But this group pleading is improper and does not relieve the City from pleading specific facts related to Teva. *See, e.g., Bank One, Okla., N.A. v. Trammell Crow Servs., Inc.*, No. 03 C 3624, 2003 WL 23019173, at *2 (N.D. Ill. Dec. 23, 2003) (dismissing claims against parent company where complaint lumped parent and subsidiary and referred to them collectively). In addition, all factual allegations specific to Cephalon occurred no later than 2009, prior to Teva's acquisition of Cephalon. (Compl. ¶ 24).

Personal jurisdiction may take one of two forms—specific or general. Specific jurisdiction exists when the contact involves "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). If the defendant's contacts with the forum are unrelated to the case in controversy, the courts may still exercise "general jurisdiction" if the defendant's "affiliations with the State are so 'continuous and systematic'" as to render the defendant essentially "at home" in the forum state. *Id.; see Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2013).

It is well-settled that "[t]he plaintiff bears the burden of establishing personal jurisdiction." *Greving*, 743 F.3d at 491. In addition, if a defendant chooses to submit "affidavits or other evidence" to show the absence of personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). Here, the City has failed to meet its burden, and the facts described in the attached Declaration of Hillel West demonstrate that no specific or general jurisdiction exists over Teva.

      a.    **<u>No Specific Jurisdiction</u>**.

Under controlling Seventh Circuit law, specific personal jurisdiction is only appropriate if the following two-part test is met: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Greving*, 743 F.3d at 492 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). The "purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on 'random, fortuitous, or attenuated contacts,' . . . but on contacts that demonstrate a real

14

relationship with the state with respect to the transaction at issue." *Id.* at 492-493 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

The City has not met and cannot meet its burden with respect to these requirements. The City has not alleged ***anything*** about Teva besides the fact that it "is an Israeli corporation with its principal place of business in Petah Tikva, Israel" and that it acquired Cephalon, a Delaware corporation based in Pennsylvania, in 2011. (Compl. ¶ 24). This is insufficient because "stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact." *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *Purdue Research Found.*, 338 F.3d at 788 n. 17 ("[A]s a general rule, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent.").

In addition, Teva does not market, promote, or sell opioids in the United States. (West Declaration, Ex. A, at ¶ 3). It therefore has no connection with any of the marketing activities out of which the City's claims arise. (*Id.*). Nor has the City alleged any other basis for subjecting Teva to specific jurisdiction in Illinois. Thus, no specific jurisdiction exists.

    **b.**  **<u>No General Jurisdiction</u>**.

To have general jurisdiction, Teva's contacts must be "so constant and pervasive 'as to render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2013) (*quoting Goodyear*, 131 S. Ct. at 2851). This means that Teva must have its "domicile, place of incorporation, and principal place of business" in Illinois. *Goodyear*, 131 S. Ct. at 2854.

Here, Teva is domiciled, incorporated, and has its principal place of business outside the United States (Compl. ¶ 24) – and, therefore, cannot be said to be "at home" in Illinois. (West Declaration, Ex. A, at ¶ 2). Nor does the Court have general jurisdiction over Teva because it is Cephalon's parent. The Supreme Court has made clear that a foreign corporation may not be

15

subject to general jurisdiction on the basis of the contacts of its subsidiary unless the parent itself is "at home" in the jurisdiction. *Daimler*, 134 S. Ct. at 759. Because Teva is not "at home" in Illinois, the Court should dismiss all claims against Teva for lack of personal jurisdiction.[10]

### III. CONCLUSION

For the foregoing reasons, as well as those expressed in the Joint Motion, Cephalon and Teva respectfully request that the Court enter an Order dismissing all claims against them.

Respectfully submitted,

Dated: August 29, 2014

/s/ Tinos Diamantatos
Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Email: tdiamantatos@morganlewis.com

Gordon Cooney, Jr. (admitted *pro hac vice*)
Steven A. Reed (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Email: jgcooney@morganlewis.com
Email: sreed@morganlewis.com

*Attorneys for Defendants Cephalon, Inc. and Teva Pharmaceutical Industries LTD.*

---

[10] Although the Supreme Court in *Daimler* allowed for the possibility of "an exceptional case" in which a corporation might be subject to general jurisdiction in a place other than its principal place of business or place of incorporation (134 S. Ct. at 761 n.19), the Court made clear that even conducting billions of dollars a year of business in the jurisdiction does not make the case exceptional. Instead, the Court's example of an "exceptional" case was one in which a corporation temporarily moved its offices to the United States and conducted all affairs from the United States due to wartime occupation of the corporation's home country. Clearly, there are no such exceptional circumstances in this case.

**CERTIFICATE OF SERVICE**

      I, Tinos Diamantatos, hereby certify that on August 29, 2014, I caused a true and correct copy of the foregoing document to be served using the electronic case filing system, which will send electronic notification of such filing to all parties that have appeared in this action.

                                                 /s/ Tinos Diamantatos
                                                 Tinos Diamantatos