IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, a municipal corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-04361 Honorable Elaine E. Bucklo |
| v. | ) ) | |
| PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; and ACTAVIS PLC, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANT ENDO HEALTH SOLUTIONS INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Despite its bulk, Plaintiff City of Chicago's Complaint contains relatively few allegations specifically about Defendant Endo Health Solutions Inc. ("Endo"). What little there is never connects any alleged misstatements about opioids to any particular physician that heard them, or to any such physician's prescription for any patient. Indeed, the City often fails to sufficiently connect the supposed misstatements even to Endo, as they were allegedly made by others. And, examining the statements challenged by the City reveals that its pleading lacks vital detail and that these statements were not actually false or misleading. Given these defects, Endo moves to dismiss the Complaint against it pursuant to Fed. R. Civ. P. 12(b)(6) for failing to meet the "*Twombly-Iqbal*" standard and the heightened pleading requirements of Fed. R. Civ. P. 9(b).[1]

---

[1] Endo joins in and incorporates herein by reference the Defendants' Joint Memorandum, and submits this individual memorandum to address the allegations that specifically mention Endo.

1

## I. BACKGROUND AND SUMMARY OF THE ARGUMENT

Endo is a mid-sized specialty pharmaceutical company headquartered in Malvern, Pennsylvania. *See* Compl. ¶ 28. Among Endo's medications are three prescription opioids: Percodan, Percocet, and Opana. *Id.* The Complaint mentions these medications only in passing.

The gist of Plaintiff's claims is that all Defendants, including Endo, engineered a promotional and educational campaign misrepresenting the risks and benefits of opioid medications in general, which caused some number of unnamed doctors to write various opioid prescriptions for unspecified individual patients. While many different counts are asserted, the Complaint as a whole is based on a fraud theory. As set forth in the Defendants' Joint Memorandum, the City's claims fail for numerous of reasons, as a matter of law, with respect to all of the Defendants.

In addition, while the City's allegations overwhelmingly refer collectively to all "Defendants," the relatively sparse allegations naming Endo specifically also fail to state viable claims against Endo individually. Most fundamentally, none of these allegations describe any supposed misrepresentations by Endo that were actually conveyed to any particular health care providers who actually prescribed an Endo medication to any identified patients (whether in Chicago or elsewhere). Rather, the City relies on generalized allegations that Endo disseminated or made available allegedly false or misleading information, without specifying (as it must for fraud allegations) who received each alleged falsehood, or when they received it, and without any allegations as to how these messages caused anyone to write or to take any prescriptions for Endo medications. Moreover, the majority of the allegations as to Endo merely assert that Endo provided financial or other support to *separate* organizations or individuals, who then supposedly made misstatements (again, to whom being unspecified); yet the City never pleads any sort of agency relationship between Endo and those allegedly making the misrepresentations.

2

Without factual allegations establishing agency, the City's pleading of third parties' activities cannot support claims against Endo itself.

Furthermore, none of the specific statements the City links to Endo are actually false or misleading. They are truthful on their face, and the City's theories for making them actionable are not legally viable. For some, the City supplies nothing but conclusory characterizations. For others, the City only alleges that the statements are not sufficiently supported by scientific evidence. Such allegations are no better than the mere conclusory allegations. The mere absence of scientific support is not evidence of actual falsity—and falsity is needed to state a claim. Finally, the City asserts that true statements became misleading by failing to provide comprehensive risk information; this too is also unavailing given the ready availability of such information in Endo's drug labels.

In sum, although replete with innuendo and suggestion, the Complaint is fatally lacking in allegations of facts sufficient to establish the claims asserted against Endo.

## II. LEGAL STANDARDS

Endo incorporates herein the Joint Memorandum's discussion of the standards for Rule 12(b)(6) motions and Rule 9(b)'s heightened pleading requirements for fraud allegations. *See* Jt. Mem. Part III, Intro.

## III. ARGUMENT

As the Joint Memorandum explains, the City's group pleading, simply lumping all Defendants together as a whole, is improper and insufficient to state a claim. The City must make individual allegations as to Endo specifically to maintain any claims against Endo. This it has not done.

    **A.** **The City has not alleged which healthcare providers received any of the supposed misrepresentations it attributes to Endo, or that any of those individuals then improperly prescribed an Endo medication to a patient.**

3

The allegations referencing Endo do not describe how any of the supposed misstatements ascribed to Endo actually caused any health care provider to prescribe an Endo medication to any patient. Instead, the City makes generalized allegations that Endo distributed (or contributed to distributing) false and misleading information to the medical community at large, and then it stops. The Complaint never connects these broad allegations to any specific physicians. It never alleges whether these unnamed physicians then prescribed Endo medications, whether those prescriptions were inappropriate, and, if so, how the improper prescriptions were caused by the information ascribed to Endo.

These vague allegations fall well short of Rule 9(b)'s requirement that the City identify what representations were made to whom, when, and how. *See Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 870 (7th Cir. 2013) (Rule 9(b) requires pleading "the method by which the misrepresentation was communicated to the Plaintiffs") (internal quotation, citation, and alteration omitted); *compare*, *e.g.*, Compl. ¶ 85 (no allegation as to who saw the allegedly misleading article), ¶ 193 (failing to allege the means of distribution, and specifying recipients only as "state medical boards, healthcare regulatory boards, medical organizations, hospitals and physicians across the country, including in Chicago") *with Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (identifying recipients of fraudulent messages only as defendant's "customers" insufficient under Rule 9(b)). More fundamentally, by leaving this gap in its allegations, the City has failed to plead the critical requirement of causation. *See* Jt. Mem. Part III.D.

      **B.**    **The City's allegations that Endo funded organizations or Key Opinion Leaders who made alleged misrepresentations do not plausibly allege that Endo can be held responsible for those challenged statements.**

The bulk of the City's references to Endo do not allege that Endo itself made the statements challenged as fraudulent. Compl. ¶¶ 55, 70, 85, 109, 111-112, 128, 134, 141, 143,

4

145, 147, 149, 151, 167, 185-186, 192-193, 244. Rather, the City alleges only that the statements were made by an organization or notable doctor (a "Key Opinion Leader" or "KOL"), and that this third party received funding from Endo. *See, e.g.*, Compl. ¶ 145 (complaining about "an opioid 'tool-kit' for the National Initiative on Pain Control" created by the American Pain Foundation, for which Endo provided a grant); *id.* ¶ 151 (describing American Academy of Pain Medicine and American Pain Society guidelines, whose only link to Endo is that "[f]ourteen of the 21 panel members who drafted [them], including KOL Dr. Portenoy, received support from Defendants Janssen, Cephalon, Endo, and Purdue"). Indeed, frequently the alleged support is not even specifically tied to the statements at issue. *E.g.*, *id.* ¶¶ 141, 143.

Critically, despite these allegations, nowhere does the City allege that Endo controlled the speakers or what they said. It never asserts that Endo crafted the supposedly false messages or authorized them to be made. The Complaint does not allege these third parties were agents of Endo. Without an agency relationship, Endo cannot be liable for others' alleged misrepresentations. Here, the dearth of any allegations showing that these third-party speakers were Endo's agents means that none of the allegations about those third parties' statements plausibly allege a misrepresentation **by Endo**. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 497-99, 501 (1996) (no liability for others' misstatements under common law fraud or Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") where the complaint was "devoid of any facts to support actual agency authority, either express or implied," and failed to "adequately allege apparent agency"); *Crichton v. Golden Rule Ins. Co.*, 358 Ill. App. 3d 1137, 1146-47 (2005) (association not liable under ICFA for alleged misstatements by insurer to which association referred members and for which association facilitated issuance of policies).

5

The failure to allege any basis for inferring an actual or apparent agency relationship severs Endo's responsibility for alleged statements of other organizations or KOLs.[2]

The City also alleges that Endo tracked attendance and what messages doctors took away from KOLs' programs. Compl. ¶ 128. On its face, these allegations do not establish any wrongful conduct. That Endo monitored the impact of what third parties had to say does not establish, or even suggest, that those third parties were Endo's agents.

The City's allegations of third-party statements also demonstrate the Complaint's Rule 9(b) failings: it alleges that unbranded websites carried supposedly deceptive material, but never specifies when such material was posted or who read it. Compl. ¶ 244. Similarly, allegations that multiple defendants "presented deceptive programs to doctors who attended [an] annual event," *id.* ¶ 149, do not specify the specific meeting (of many over several years) at which any supposed misstatements were made; nor does broadly referencing all doctors who attended any part of any of these meetings (which allegedly occurred half a country away from Chicago) provide adequate detail as to who actually heard Endo's allegedly deceptive programming.

### C. The City cannot plead that truthful statements are misrepresentations by alleging only conclusory and implausible characterizations.

The City offers nothing to show statements were misleading except conclusory and implausible characterizations. For example, the City asserts that comments that patients usually do not become addicted to opioids, *see, e.g.*, Compl. ¶¶ 69-70, are misrepresentations because Endo's Opana advertising warned that "use of opioid analgesic products carries the risk of addiction even under appropriate medical use," *id.* ¶ 70. But there is no contradiction between those statements (or an allegation that the former is actually false). *See Ind./Ky./Ohio Reg'l*

---

[2] Indeed, the City affirmatively rebuts the apparent authority theory of agency by alleging that Endo's funding was not disclosed. *See* Compl. ¶¶ 55, 244.

*Council of Carpenters Welfare Fund v. Cephalon, Inc.*, No. 13-7167, 2014 WL 2115498, at *5-*6 (E.D. Pa. May 21, 2014) (fraud not plausibly alleged if a statement "neither contradicts nor conceals the limits of the FDA's approval").

Similarly, the City challenges Endo's statement that Opana ER's new formulation was "*designed to be crush resistant.*"  Compl. ¶ 78 (emphasis in Complaint).  The City acknowledges, however, that it is true that the formulation was so designed.  *Id.*  While the City alleges that the FDA refused to change Opana ER's label to indicate that it was "abuse-resistant," it is forced to concede that Endo complied with the FDA's decision and ***did not*** say the formulation was "abuse-resistant."  *Id.*  Thus, the Complaint fails to allege that the description of the formulation's design is actually false.  *See Crichton*, 358 Ill. App. 3d at 1147-48 (ICFA "may not be used as a vehicle for transforming nondeceptive and nonfraudulent statements or omissions into actionable ones"); *see also In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934, 2009 WL 1703285, at *6 (C.D. Cal. June 17, 2009) ("To survive a motion to dismiss, Plaintiff[] must show that [Defendant's] actions went beyond presenting its drugs in the best light possible and crossed the line into actionable fraud.").[3]

Stripped of the City's conclusory characterizations, *Iqbal v. Ashcroft*, 556 U.S. 662, 679 (2009), many of the alleged misstatements attributed to Endo are nothing more than accurate statements that cannot give rise to liability.  *See also In re Epogen*, 2009 WL 1703285, at *5 ("liberally incorporat[ing] . . . 'false' and 'deceptive'" is "purely cosmetic" and does not allege fraud).  Similarly futile allegations appear in paragraphs 73, 74, 85, 145, 151, and 185.

Furthermore, these allegations are deficient under Rule 9(b).  They either fail to provide an adequate time frame for when the alleged misstatements were made, Compl. ¶¶ 69, 78, 145,

---

[3] As discussed in the Part E below, the City also fails to allege that this description is misleading.

7

or to state "where" the statements were made, *id.* ¶¶ 69, 70, 74, 78, 85, 145, 151, or how the alleged falsehoods were distributed, *id.* ¶¶ 69, 70, 73, 78, 85, 145, 151, 185. And none of the allegations specify who received them. Rule 9(b) requires much more. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how of the fraud.") (internal quotation and citation omitted).

> **D. The City cannot plead that statements are misrepresentations because they were made with insufficient substantiation.**

The City also suggests that certain statements about opioids, such as that they may improve the quality and function of patients' lives, Compl. ¶¶ 55-56, 145, 192-193, are actionable because there is insufficient substantiation for these claims, *see id.* ¶ 58. The Complaint does not allege these statements are actually false. And "[m]erely because a fact is unsupported by clinical tests does not make it untrue." *Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 291 (2006). Rather, "[l]ack of substantiation is deceptive only when the claim at issue implies there is substantiation for that claim," such has by stating specifically that "tests show that [a drug] is effective for cough suppression" or that the drug "is more effective for cough suppression than XYZ [drug]." *Id.*; *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001). The City cannot transform statements that only suggest—without specific assertions of substantiation—the possibility of improvement, *see, e.g.*, Compl. ¶ 55 ("you *may* find you are now able to participate in activities of daily living . . . ) (emphasis added), into actionable misrepresentations by only alleging the lack of substantiating evidence or some scientific dispute. *See In re Schering-Plough Corp., Intron / Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, at *8 (D.N.J. June 9, 2010) (unpublished).

The City similarly faults nonenumerated American Pain Foundation materials and a talk allegedly prepared by Endo for supposedly not disclosing a lack of confirming evidence. *See*

Compl. ¶¶ 147, 159. But these allegations do not include—as needed to state a claim—that any affirmative claims of substantiation were made. In addition, the City's allegation concerning Endo's statement that Opana ER was "*designed to be crush resistant*" is also no more than an allegation that Endo made a claim without substantiation. *See id.* ¶ 78 (alleging only that there is "no evidence" and that the FDA called Endo's data "insufficient").

The City's allegations about inadequately supported statements fail under Rule 9(b) because they do not state "when," *see* Compl. ¶¶ 55-56, 78, 145, 147, "where," *id.* ¶¶ 56, 78, 145, 147, 159 or "how," *id.* ¶¶ 56, 78, 145, 147, 192-193, they were made and disseminated. None of these allegations identify the recipients of these supposed misstatements.

### E. The City cannot plead that truthful statements are misrepresentations by alleging the omission of material that is provided in the medication's FDA-approved label.

The City also alleges that Endo (or some third party it funded) failed to disclose side effects of its opioid medications, Compl. ¶¶ 111-112, 185-186, particularly when presented alongside other pain-management drugs' side effects, *see id.* ¶¶ 122, 167. However, the City makes no allegation that Endo made any actually false statements. And the allegation that Endo failed to disclose risks fails because the allegedly omitted risks are included in Endo's FDA-approved labels, with which physicians have a duty to be familiar. *See, e.g.*, *Travelers Indem. Co. v. Cephalon, Inc.*, --- F. Supp. 2d ----, 2014 WL 3408550, at *11 & n.21 (E.D. Pa. 2014).

The City takes issue with a list of adverse effects associated with opioids generally that appeared in a third-party publication allegedly funded by Endo. Compl. ¶¶ 111-112. The City has not pled an actual falsehood, however, as the proffered list expressly states that it covers the "most common side effects," and the City never alleges that these side effects were not the most common. *Id.* Nor could one plausibly conclude from these allegations that such omissions were actually misleading. *See In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1054-55 (N.D.

9

Cal. 2009) ("tendentious leap[]" to conclude marketing was "false and misleading" because data used to present "drug product in the best light possible"); *see also Munch v. Sears, Roebuck and Co.*, Nos. 06 C 7023, 07 C 412, 2008 WL 4450307, at *6 (N.D. Ill. Sept. 30, 2008). Furthermore, the City itself relies on opioid drug labeling that it concedes "contain numerous warnings" for additional risks that it alleges should have been disclosed. Compl. ¶ 112. "[P]hysician-prescribers are presumed to have knowledge of drug label's contents." *See Ind./Ky.*, 2014 WL 2115498, at *6. Thus, because the City acknowledges that the drug labeling, which is "available to potential prescribing physicians, clearly identifies the dangers . . . that form the basis of [Plaintiff's] concerns," it has failed to allege fraud. *See id.*

Similarly unavailing are the City's allegations that Endo distributed a "case study" which described one patient's negative experiences with non-opioid drugs. Compl. ¶ 122. The City never alleges that anything in this case study is false. Moreover, the City has not plausibly alleged a misleading characterization of risks, because it admits that this case study was distributed "**with Opana ER's prescribing information**"—the label which lists, as mandated by the FDA, Opana ER's risks, including respiratory depression and misuse, abuse, and diversion.[4] *Id.* (emphasis added); *Bober*, 246 F.3d at 939-940 (no deception under ICFA where information accompanying drug dispels any possible incorrect implication).[5] These allegations also fail to satisfy Rule 9(b).

---

[4] Attached as Exhibit A is the prescribing information for Opana ER, Extended-Release Tablets CII (new formulation), available at
http://www.endo.com/File%20Library/Products/Prescribing%20Information/opanaer_biconcave.pdf.
Because Opana's label is mentioned numerous times in the Complaint and are central to the City's claims, *see, e.g.*, Compl. ¶¶ 5, 17, 122, the court may consider it without converting this motion into one for summary judgment, *see Wright v. Assoc. Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[5] The City also tries to connect Endo to the concept of pseudoaddiction, by alleging that Endo distributed a book and a guide authored by KOLs to assist in selling Endo's Opana ER. Compl. ¶¶ 109, 192-193. These allegations fail to plead any fraud by Endo. Not only did Endo not make the alleged statements itself, but they are no more than KOLs' opinions as to prescribing practices, which are not actionable.
Footnote continued on next page

### F. The City's fraud, misrepresentation, and false statement claims fail because it has not adequately pled any misrepresentation, and its conspiracy counts fail not only for that reason, but also because it has insufficiently alleged that Endo reached any agreements with another Defendant.

Counts I to IV, VII and IX all require false or misleading statements by Endo.[6] As explained above, the City has not adequately pled any such misrepresentation, and so these Counts must all be dismissed as to Endo.

In addition, as explained in the Joint Memorandum, the City's conspiracy claims in Count V (conspiracy to make false claims) and VIII (civil conspiracy) must also be dismissed, not only because the City's underlying claims of fraud fail, but also because the Complaint's generalized, collective allegations about all Defendants as a group are an insufficient to allege any unlawful agreement among them. Further, as to Endo specifically, these claims must be dismissed because the Complaint never alleges any facts showing that Endo reached any agreement with any other Defendant; nor does it contain any allegation as to what Endo individually did to join the supposed conspiracy or to learn of its aims and scope. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (for a fraud conspiracy, Rule 9(b) requires specifically pleading "when it was made or which individuals . . . arranged the

---

Footnote continued from previous page
*See Marino v. United Bank of Ill., N.A.*, 137 Ill. App. 3d 523, 527 (1985) ("Matters of fact are to be distinguished from expressions of opinion, which cannot form the basis of an action of fraud."). And, even the City pleads that the risk of addiction is well-disclosed in Opana's label. *See* Compl. ¶ 64; *see also* Ex. A. Finally, these allegations fail to include the Rule 9(b) particulars of how they were distributed, specifically where they were distributed, and specifically who received them.

[6] *See* Chi. Mun. Code § 2-25-090(a) (prohibiting "consumer fraud, unfair method of competition, or deceptive practice"); *e.g.*, *id.* § 4-276-470(1) (prohibiting "any deception, fraud, false pretense, false promise or misrepresentation, or to conceal, suppress or omit any material fact with intent that others rely upon such concealment, suppression or omission"); *id.* § 1-21-010(b) (prohibiting causing another to make a certification to the City without "a reasonable investigation to determine . . . accuracy, truthfulness or completeness"); *id.* § 1-22-020(2) (prohibiting "knowingly" causing "a false record or statement to get a false or fraudulent claim paid or approved"); 720 ILCS 5/17-10.5(a)(1) (prohibiting "knowingly" causing property to be obtained "by deception," through "causing a false claim to be made to a self-insured entity"); *Connick*, 174 Ill. 2d at 496 (common law fraud requires "a false statement of material fact" and "knowledge that the statement was false").

conspiracy"); *see also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (aside from Rule 9(b), "normal pleading standards" require dismissing a complaint that "lumps all the defendants together," because "it remains essential to show that a particular defendant joined the conspiracy and knew of its scope") (citation omitted); *United States ex rel. Bartlett v. Tyrone Hosp.*, 234 F.R.D. 113, 124 (W.D. Pa. 2006) (dismissing conspiracy count under the False Claims Act because the complaint failed "to state the existence of an agreement to defraud the Government by the Defendants").

### G. The City's cost recovery and unjust enrichment claims are predicated on the other violations, and must be dismissed with the other claims.

The City's remaining claims require a separate, predicate violation, and thus must be dismissed because the other counts fail. Count VI is based on Chicago Municipal Code § 1-20-020, which provides only for recovery of costs "reasonably related to [a] person's violation of any federal, state or local law," or failure to correct conditions causing a violation. *See also Vodak v. City of Chicago*, No. 03 C 2463, [2006 WL 2524141](), at *3 (N.D. Ill. Aug. 30, 2006) (violation required). Count X, unjust enrichment, "is not a separate cause of action;" thus "when the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and we reject the plaintiff's claims that those dealings, indeed *were* fraudulent, the theory of unjust enrichment . . . is no longer viable." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447-48 (7th Cir. 2011) (internal quotation and citation omitted, emphasis in original).

### IV. CONCLUSION

The foregoing reasons, the Court should grant Endo's motion to dismiss.

Dated: August 29, 2014

Respectfully submitted,

 /s/ Joshua M. Davis_____
One of the Attorneys for Defendant Endo Health Solutions Inc.

Peter V. Baugher ARDC# 0138282
Kristen E. Hudson ARDC #6281191
SCHOPF & WEISS LLP
One South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-9300
Fax: (312) 701-9335
baugher@sw.com
hudson@sw.com


Jonathan L. Stern (*pro hac vice admission to be filed*)
Steven G. Reade (*admitted pro hac vice*)
Joshua M. Davis (*admitted pro hac vice*)
Melissa Ku (*admitted pro hac vice*)
Joanna Persio (*admitted pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Fax: (202) 942-5999
Jonathan.Stern@aporter.com
Steven.Reade@aporter.com
Joshua.Davis@aporter.com
Melissa.Ku@aporter.com
Joanna.Persio@aporter.com

**CERTIFICATE OF SERVICE**

    I, Joshua M. Davis, an attorney, hereby certify that a true and correct copy of Defendant Endo Health Solutions Inc.'s Memorandum of Law in Support of its Motion to Dismiss was filed electronically with the Clerk of the Court using the CM/ECF System, which will automatically provide electronic notice upon all counsel of record on this 29th day of August, 2014.

                                                              /s/ Joshua M. Davis