**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS, INC.; AND ACTAVIS PLC,<br><br>Defendants. | Case No. 14-cv-04361<br><br>Honorable Elaine E. Bucklo |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS JOHNSON & JOHNSON
AND JANSSEN PHARMACEUTICALS, INC.'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)
FOR FAILURE TO STATE A CLAIM</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. ARGUMENT ....................................................................................................................... 3
    A. Product Labels ......................................................................................................... 3
        1. Duragesic ..................................................................................................... 4
        2. Nucynta and Nucynta ER ........................................................................... 5
        3. Ultram and Ultracet .................................................................................... 6
    B. Product Advertisements .......................................................................................... 7
        1. Ultracet "Posters" ....................................................................................... 7
        2. Nucynta ER Website .................................................................................. 9
        3. Nucynta Advertisement in *Medical Economics* ....................................... 10
    C. "Unbranded" Information .................................................................................... 11
    D. Conspiracy ............................................................................................................. 14
III. CONCLUSION .................................................................................................................. 15

**TABLE OF AUTHORITIES**

Page

**CASES**

*Adcock v. Brakegate, Ltd.*,
    645 N.E.2d 888 (Ill. 1994) .................................................................................................. 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 7, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 7

*Bober v. Glaxo Wellcome, PLC*,
    246 F.3d 934 (7th Cir. 2011) ............................................................................................... 9

*Carpenters Welfare Fund v. Cephalon, Inc.*,
    2014 WL 2115498 (E.D. Pa. May 21, 2014) ...................................................................... 3

*Coehlo v. Park Ridge Oldsmobile, Inc.*,
    2001 U.S. Dist. LEXIS 14652 (N.D. Ill. 2001) ............................................................ 11, 12

*Davis v. G.N. Mortg. Corp.*,
    396 F.3d 869 (7th Cir. 2005) ......................................................................................... 3, 11

*Dillman v. Nadlehofer*,
    119 Ill. 567 (1886) .............................................................................................................. 3

*Gredell v. Wyeth Labs., Inc.*,
    367 Ill. App. 3d 287 (2006) ................................................................................................ 8

*Greifenstein v. Estee Lauder Corp., Inc.*,
    2013 WL 3874073 (N.D. Ill. July 26, 2013) ...................................................................... 8

*Knapp v. Hill*,
    276 Ill. App. 3d 376 (1995) .............................................................................................. 11

*Lateef v. Pharmavite LLC*,
    2013 U.S. Dist. LEXIS 51457 (N.D. Ill. Apr. 10, 2013) ................................................. 8, 9

*Martin ex rel. Martin v. Ortho Pharm. Corp.*,
    169 Ill. 2d 234 (1996) ....................................................................................................... 14

*McClure v. Owens Corning Fiberglas Corp.*,
    720 N.E.2d 242 (Ill. 1999) ................................................................................................ 14

## TABLE OF AUTHORITIES
## (continued)

                                      **Page**

*Muir v. Playtex Prods., LLC*,
   983 F. Supp. 2d 980 (N.D. Ill. 2013) .................................................................................... 11

*Mut. Pharm. Co. v. Bartlett*,
   133 S. Ct. 2466 (2013) .............................................................................................................. 9

*Schmidt v. Landfield*,
   20 Ill. 2d 89 (1960) .................................................................................................................. 3

*Wright v. Associated Ins. Cos.*,
   29 F.3d 1244 (7th Cir. 1994) ................................................................................................... 2

## STATUTES

21 U.S.C. § 352(n) ......................................................................................................................... 8

21 U.S.C. § 355(a) ....................................................................................................................... 10

21 U.S.C. § 829(a) ......................................................................................................................... 3

21 U.S.C. § 829(b) ......................................................................................................................... 3

## OTHER AUTHORITIES

79 Fed. Reg. 37623 (July 2, 2014) ................................................................................................. 6

## REGULATIONS

21 C.F.R. § 1306.03(a)(1) .............................................................................................................. 3

21 C.F.R. § 1306.11 ....................................................................................................................... 3

21 C.F.R. § 202.1(e) ....................................................................................................................... 8

21 C.F.R. § 202.1(e)(1) ................................................................................................................ 13

I.      INTRODUCTION

Defendants Janssen Pharmaceuticals, Inc. ("Janssen") and its parent company Johnson & Johnson ("J&J") join in the Memorandum of Points and Authorities filed in support of all Defendants' Joint Motion to Dismiss. In addition, Janssen and J&J write separately to highlight the deficiencies of the City of Chicago's scant allegations as to them.

Despite purporting to allege a massive fraud scheme by Janssen and other pharmaceutical companies to misrepresent the safety and efficacy of opioids, the City's 121-page Complaint says strikingly little about either Janssen or J&J. As to J&J, the City alleges that J&J is the corporate parent of Janssen (Complt. ¶ 27) and never mentions J&J again. The City's failure to allege any wrongdoing by J&J or any basis for vicarious liability requires dismissal. As to Janssen, the City alleges that the company manufactures several prescription opioid pain relievers—Duragesic, Nucynta, Nucynta ER, Ultram, and Ultracet (*id.* ¶ 27)—but then alleges next to nothing about those pain relievers or any supposed misconduct by Janssen in marketing them.

Only 24 of the Complaint's 376 paragraphs even mention Janssen. The City alleges that since 2007, its health plans have paid 1,564 claims totaling $272,440.90 for Janssen's opioids (*id.* ¶ 272). The City makes passing reference to Janssen's product labels (*id.* ¶ 115; *see also id.* ¶¶ 64, 112), but otherwise ignores them. The City also quotes snippets from three Janssen product-specific advertisements (*id.* ¶¶ 51, 60, 114, 116). The remaining allegations concern what the City calls "unbranded" promotion, meaning materials that discuss opioids in general but do not promote Janssen's branded products (*see id.* ¶ 282). In the "unbranded" category, the City alleges that Janssen "sponsored" a "key opinion leader" who published and spoke about opioids (*id.* ¶¶ 134, 151). The City also alleges that Janssen "funded" or otherwise influenced four general publications about pain treatment: (1) a treatment guideline for physicians (*id.* ¶ 154);

(2) a brochure for laypersons (*id.* ¶¶ 68, 116, 123, 173-74, 178); (3) a pain society website (*id.* ¶¶ 53-54, 74, 90, 107, 116; *see also id.* ¶ 244); and (4) a Gulf War veteran's book about his experiences with pain relievers (*id.* ¶¶ 185-86). For at least three reasons, these allegations patently fail to state a claim.

First, under Illinois law, the City cannot ignore the contents of Janssen's FDA-approved product labels. Product labels are the principal means by which drug companies communicate risk information about their drugs to prescribing physicians. Janssen's product labels—which the Court may properly consider in reviewing the sufficiency of the City's pleading[1]—contained extensive and detailed warnings about the very risks the City claims Defendants concealed.

Second, the City cannot state a claim based on snippets, taken out of context, from a handful of Janssen product advertisements. The Court must consider the advertisements as a whole and in the context of warnings provided in the product labeling. Here, the advertisements meet the FDA's fair balance requirements for product-specific prescription drug advertising and, read as a whole, are not remotely misleading.

Finally, the City cannot state a claim based on out-of-context references to "unbranded" materials. The materials consist largely, if not exclusively, of statements by third parties, not Janssen. They do not promote Janssen's pain relievers but provide general (and generally balanced) information, including repeated admonitions to both physicians and patients about the

---

[1] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The City's Complaint refers to Janssen's product labels (*see id.* ¶¶ 64, 112, 116 (acknowledging, *inter alia*, that labels contained "numerous warnings")), and Janssen's communications to physicians about the risks of the Janssen drugs at issue are self-evidently central to the City's claims. Under the same principle, the Court may also consider the Janssen product advertisements and "unbranded" informational materials referenced in the Complaint. Copies of the product labels, advertisements, and unbranded materials, as well as excerpts of the warnings contained in the product labels created for the Court's convenience, are attached as Exhibits 1-30 to the accompanying Declaration of Charles C. Lifland ("Lifland Decl.").

need for individualized medical evaluation and advice. These "unbranded" materials also cannot support the alleged fraud scheme to misrepresent the safety and efficacy of opioids.

## II. ARGUMENT

### A. Product Labels

Illinois law requires that an allegedly deceptive statement be assessed in context, meaning "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005); *see also Schmidt v. Landfield*, 20 Ill. 2d 89, 94 (1960) ("[T]he representations must be viewed in the light of all the facts of which the plaintiff had actual notice, and also of such as he might have availed himself by the exercise of ordinary prudence" (quoting *Dillman v. Nadlehofer*, 119 Ill. 567, 577 (1886))0. That principle defeats the City's claims against Janssen because Janssen's product labels establish that prescribing physicians—a patient's only source for opioids—had extensive risk information.

Patients can lawfully obtain opioid drugs only by prescription from a licensed physician. *See* 21 C.F.R. § 1306.11. Physicians are presumed by law to know the contents of the product labels for the drugs they prescribe. *Ind./Ky./Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, 2014 WL 2115498, at *6 (E.D. Pa. May 21, 2014) ("[P]hysician-prescribers are presumed to have knowledge of a drug label's content"). Further, before prescribing an opioid, a physician must be specifically authorized to prescribe controlled substances. *See* 21 C.F.R. § 1306.03(a)(1).[2] And in the case of extended-release/long-acting opioids (such as Duragesic and Nucynta ER), the FDA also "strongly encourage[s]" prescribers to complete additional FDA-compliant training "to reduce serious adverse outcomes resulting from inappropriate prescribing,

---

[2] In addition, prescriptions for Schedule II controlled substances (which include Duragesic, Nucynta, and Nucynta ER) cannot be refilled. *See* 21 U.S.C. § 829(a). A consumer must therefore consult with a physician before every renewal. Prescriptions for Schedule IV substances (which include Ultram and Ultracet) cannot be refilled more than five times without a renewal. *See id.* § 829(b).

3

misuse, and abuse," including "addiction, unintentional overdose, and death."[3]

The City's Complaint does not challenge the adequacy of the labeling for any of Janssen's opioids, nor does it allege that Janssen promoted its opioids for any "off-label" indications.

### 1. Duragesic

Duragesic is a highly potent opioid pain reliever administered via transdermal patch, first approved by the FDA in 1990. *See* Lifland Decl. Ex. 12 at 1.[4] Its active ingredient, fentanyl, is 100 times more potent than morphine and is listed as a Schedule II controlled substance. *See id.* Ex. 12 at 11, 25. Under its FDA-approved labeling, Duragesic is indicated only for patients already established to be opioid tolerant, for pain "severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate." *Id*. at 1, 4.

Duragesic's labeling includes a prominent "boxed warning" highlighting its serious risks:

**Addiction, Abuse, and Misuse**
**DURAGESIC exposes patients and other users to the risks of opioid addiction, abuse, and misuse, which can lead to overdose and death. Assess each patient's risk prior to prescribing DURAGESIC, and monitor all patients regularly for the development of these behaviors or conditions** *[see Warnings and Precautions (5.1)]*.

**Life-threatening Respiratory Depression**
**Serious, life-threatening, or fatal respiratory depression may occur with use of DURAGESIC, even when used as recommended. Monitor for respiratory depression, especially during initiation of DURAGESIC or following a dose increase. Because of the risk of respiratory depression, DURAGESIC is contraindicated for use as an as-needed analgesic, in non-opioid tolerant patients, in acute pain, and in postoperative pain** *[see Contraindications (4)* **and** *Warnings and Precautions (5.2)]*.

---

[3] *See* FDA, Extended-Release (ER) and Long-Acting (LA) Opioid Analgesics Risk Evaluation and Mitigation Strategy (REMS), *available at* http://www.fda.gov/downloads/Drugs/DrugSafety/Postmarket DrugSafetyInformationforPatientsandProviders/UCM311290.pdf (last visited Aug. 29, 2014).

[4] *See also* FDA, Drugs@FDA, http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm? fuseaction=Search.DrugDetails (last visited Aug. 29, 2014) (listing approval date for Duragesic).

> **Accidental Exposure**
> **Deaths due to a fatal overdose of fentanyl have occurred when children and adults were accidentally exposed to DURAGESIC. Strict adherence to the recommended handling and disposal instructions is of the utmost importance to prevent accidental exposure** *[see Warnings and Precautions (5.3)].*
>
> **Neonatal Opioid Withdrawal Syndrome**
> **Prolonged use of DURAGESIC during pregnancy can result in neonatal opioid withdrawal syndrome, which may be life-threatening if not recognized and treated. If opioid use is required for a prolonged period in a pregnant woman, advise the patient of the risk of neonatal opioid withdrawal syndrome and ensure that appropriate treatment will be available** *[see Warnings and Precautions (5.4)].*

*Id.* at 3; *see also id.* at 1.[5] The referenced sections in the body of the labeling provide more detailed information about these and other risks, and information relevant to prescribing physicians. *Id.* at 11-28. In addition, the labeling includes extensive warnings and instructions to be provided to the patient. *Id.* at 37-39.

### 2. Nucynta and Nucynta ER

Nucynta is an opioid pain reliever administered via oral tablet or solution, first approved by the FDA in 2008. *See id.* Ex. 16 at 1; Ex. 18 at 1. Its active ingredient, tapentadol, is less potent than morphine, but still listed as a Schedule II controlled substance. *See id.* Ex. 16 at 5, 19; Ex. 18 at 6, 20. The FDA approved an extended release oral tablet formulation, Nucynta ER, in 2011. *See id.* Ex. 15 at 1. Nucynta is approved for "moderate to severe acute pain" in adults. *See id.* Ex. 16 at 1, 3; Ex. 18 at 1, 3. Nucynta ER is approved for the same indication as Duragesic. *See id.* Ex. 14 at 1.

---

[5] The warnings quoted in this Memorandum of Points and Authorities for the Janssen opioid drugs at issue appear in the current prescription drug labels for these drugs, all of which are attached to the Lifland Declaration. (*See* Lifland Decl. Exs. 12, 14, 16, 18, 19, 21.) As is the case for many prescription drugs, the FDA approves changes to the wording of the warnings for these drugs from time to time. A representative earlier version of the FDA-approved label for each of these drugs is also attached to the Lifland Declaration. (*See id.* Exs. 13, 15, 17, 20, 22.) For the Court's convenience, summaries of the relevant language from the various labels are attached as Exhibits 1-11 of the Lifland Declaration.

5

Nucynta's labeling contains lengthy warnings about the potential for abuse, addiction, life-threatening respiratory depression, and death from overdose. *See id.* Ex. 16 at 5-7, 15-17; Ex. 18 at 6-7, 17-20. Nucynta ER has a boxed warning similar to Duragesic's boxed warning, and has similarly detailed risk information in the body of the labeling. *See id.* Ex. 14 at 1.

### 3. Ultram and Ultracet

Ultram is a low potency opioid pain reliever administered via oral tablet, first approved by the FDA in 1995. *See* Schedules of Controlled Substances: Placement of Tramadol Into Schedule IV, 79 Fed. Reg. 37623, 37623 (July 2, 2014). Its active ingredient, tramadol, is less potent than tapentadol and listed only as a Schedule IV controlled substance. *See id.*; Lifland Decl. Ex. 19 at 1. Ultram is approved for "moderate to moderately severe pain" in adults. *See* Lifland Decl. Ex. 19 at 7. Ultracet, approved by the FDA in 2001, is a combination of tramadol and acetaminophen (a non-opioid, short-term pain reliever which is the active ingredient in Tylenol). *See id.* Ex. 21 at 1.[6] Ultracet is approved for "short-term (five days or less) management of acute pain." *See id.* Ex. 21 at 6.

Ultram's labeling contains lengthy warnings about the potential for abuse, addiction, life-threatening respiratory depression, and death from overdose. *See id.* Ex. 19 at 9-11, 18-20. Ultracet's labeling contains the same warnings about opioid-related risks, as well as a boxed warning highlighting the risk of acute liver damage from excessive dosages of acetaminophen. *See id.* Ex. 21 at 1, 9-11, 19-21.

\*\*\*

Janssen's comprehensive warnings preclude any claims that the company attempted to conceal or minimize opioid-related risks. The City cannot plausibly claim that Janssen engaged

---

[6] *See also* FDA, Drugs@FDA, http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction=Search.DrugDetails (last visited Aug. 29, 2014) (listing approval date for Ultracet).

6

in a massive scheme to conceal opioid risks and simply pretend that Janssen's extensive warnings to prescribing physicians about those same risks did not exist. Viewed in context, the City's claim is wholly implausible and should be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (dismissal of a complaint under Rule 12(b)(6) is proper where the complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

### B. Product Advertisements

The City's fleeting references to three Janssen product advertisements similarly fail to support a plausible claim. First, as noted above, under Illinois law, the Court must consider the advertisements in light of Janssen's product labels and the detailed warnings they contain. This alone defeats any claim. Second, the City quotes statements from the advertisements out of context and in a misleading fashion. Considered in their entirety, the advertisements are not remotely misleading.

#### 1. Ultracet "Posters"

The City alleges that Janssen distributed to unspecified doctors' offices a "series of posters," some with "the tagline 'Ultracet lets them perform,'" that "showed pictures of people dressed for a variety of active professions suggesting that doctors prescribe Ultracet because 'Pain doesn't fit into their schedules'" (Complt. ¶ 51). According to the City, the posters "falsely implied that Ultracet was appropriate for help in maintaining an active lifestyle," "[d]espite the lack of scientific evidence in support of such a claim" (*id.*). This allegation fails on multiple levels.

First, even taking the City's characterization at face value, it does not support the City's claim. As noted above, Ultracet is a tramadol/acetaminophen combination drug indicated only for "short-term (five days or less) management of acute pain." (*See supra* II.A.3.) The

7

advertisement never suggests that Ultracet should be given long term or for chronic pain. On the contrary, one poster depicts people with localized flare-ups (e.g., in the knee), *see* Lifland Decl. Ex. 27, while the other mentions postsurgical pain, *see id.* Ex. 28 at 1. Both expressly state that Ultracet is indicated only for short-term management of acute pain. *See id.* Exs. 27 at 6 & 28 at 2. The City does not and cannot allege that Ultracet is ineffective for short-term management of acute pain consistent with its approved indication.

Second, under Illinois law, advertisements can be actionable for lack of scientific substantiation only if they falsely state or imply that scientific substantiation exists. *Greifenstein v. Estee Lauder Corp., Inc.*, 2013 WL 3874073, at *4 (N.D. Ill. July 26, 2013); *Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 305 (2006) ("Lack of substantiation is deceptive only when the claim at issue implies there is substantiation for that claim [where there is none].... Merely because a fact is unsupported by clinical tests does not make it untrue"). The Ultracet advertisement nowhere asserts or suggests that "scientific evidence" supports its inherently subjective statements. The statements in question—"Pain doesn't fit into their schedules" and "Ultracet lets them perform"—are obvious sales slogans that Illinois law deems to be non-actionable "puffery" because they "provide no objective measure from which a reasonable person can gauge their truth or falsity." *Lateef v. Pharmavite LLC*, 2013 U.S. Dist. LEXIS 51457, at *7-9 (N.D. Ill. Apr. 10, 2013).

Finally, the City overlooks that the Ultracet advertisements include, as FDA regulations require for most product-specific promotional materials (*see* 21 U.S.C. § 352(n); 21 C.F.R. § 202.1(e)), a "fair balance" summary of the FDA-approved indications and risk information. One of the posters directs the reader to "Please see important safety information and full Prescribing Information on back," which includes a warning that Ultracet can be addictive, along

8

with a series of other warnings. Lifland Decl. Ex. 28 at 1-2. The other states that it is "For sales representative use only. Not to be left with physician. Please provide full Prescribing Information" and that the active ingredient in Ultracet "may induce psychic and physical dependence of the morphine type." *Id*. Ex. 27 at 5-6. The advertisements therefore could not be misleading; indeed, compliance with federal regulations forecloses any false advertising claim under Illinois law. *See* Joint Brief Section F.1.b; *Bober v. Glaxo Wellcome, PLC*, 246 F.3d 934, 941-42 (7th Cir. 2011).

### 2. Nucynta ER Website

Much the same analysis applies to the Complaint's second reference to Janssen product advertising, the slogan "Efficacy you need, Tolerability you want" on an informational website for Nucynta ER (Complt. ¶ 60). The City alleges that the statement is deceptive because studies do not support "a claim of long-term efficacy" for Nucynta ER (*id.*). But the advertisement says nothing about *long-term* efficacy or supporting studies to that effect, *see* Lifland Decl. Ex. 29. In any event, the statement is too vague and subjective to support a claim. *Lateef*, 2013 U.S. Dist. LEXIS 51457, at *9. Importantly, the statement appears next to a prominent button labeled "Full Indication Statement." Lifland Decl. Ex. 29 at 1. The reader is invited, with one click, to view the product's approved indications, extensive warnings, and disclosures about its "efficacy" and "tolerability," all in compliance with FDA "fair balance" disclosure requirements. *Id.* at 2-8.

The City next alleges that the statement is misleading because none of the clinical trials Janssen submitted to the FDA in support of Nucynta ER's approval lasted longer than 12 weeks and one study showed no efficacy over a placebo (Complt. ¶ 60). This is simply a backhanded argument that, in the City's view, the FDA lacked sufficient evidence to approve Nucynta ER for its stated indication. Legally, the decision whether to approve a drug belongs exclusively to the FDA. *See Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2470-71 (2013) ("Under the Federal

9

Food, Drug, and Cosmetic Act (FDCA), drug manufacturers must gain approval from the [FDA] before marketing any drug in interstate commerce." (internal citations omitted) (citing 21 U.S.C. § 355(a))). The City concedes that the FDA, in fact, approved Nucynta ER as safe and effective for its stated indication after reviewing the information submitted (Complt. ¶¶ 17, 60).

### 3. Nucynta Advertisement in *Medical Economics*

The City's third and last reference to an actual Janssen product advertisement simply mischaracterizes the statement in question. The City alleges as deceptive the statement "OPIOID EFFICACY MEETS UNEXPECTED TOLERABILITY" in a Nucynta advertisement appearing in *Medical Economics*, a magazine for physicians (*id.* ¶ 114). According to the City, the capitalized statement "misrepresents [Nucynta's] serious side effects" because "the risk of addiction and serious side effects make opioids intolerable for most patients" (*id.*). But the advertisement indicates in large bolded text, just below the capitalized statement, that "tolerability" refers to "**GI tolerability.**" Lifland Decl. Ex. 30 at 3. GI (*i.e.*, gastrointestinal) tolerability is an important consideration for opioids because nausea and vomiting are common side effects. *See id.* at 4. Remarkably, the City *concedes* that the capitalized statement refers to GI tolerability (*see* ¶ Complt. 114 ("the 'tolerability' to which Janssen referred was a lack of GI-related side-effects (*e.g.*, nausea and vomiting)"). But the City goes on to allege that "the all-caps claim of 'unexpected tolerability' falsely implied that Nucynta could be taken without severe side effects or consequences," because "a reader could only learn this after examining a bar chart representing the study's results" (*id.*). The City's allegation is absurd. A physician reading the advertisement needed only to note the adjacent bolded text stating "**GI tolerability**"; he or she

10

did not need to examine any charts.[7] Under the City's view, words plucked from an advertisement and given a meaning different from their clear contextual meaning can be actionable false advertising. That is flatly contrary to Illinois law. *Davis*, 396 F.3d at 884; *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 988 (N.D. Ill. 2013) ("[A] statement that would have been deceptive in isolation can be non-deceptive when placed in context"). The City's pleading on this point typifies the deficiencies that run throughout its Complaint.

### C. "Unbranded" Information

Finally, the City's allegations about Janssen's involvement in several "unbranded" promotional activities do not state a claim. First, the City has failed to allege facts sufficient to attribute any of the allegedly misleading "unbranded" statements or materials to Janssen. The allegation that Janssen funded research grants or paid speaker fees for "key opinion leaders" who published or spoke about opioids does not show that the opinion leaders' publications or statements were Janssen's (Complt. ¶¶ 134, 151). Likewise, the City alleges that Janssen "supported" distribution of a geriatric treatment guideline developed by a committee of physicians for the American Geriatrics Society (*id.* ¶ 154). Those allegations do not transform the guideline into Janssen's representations or recommendations. And allegations that the American Pain Foundation (APF) distributed a book by an Iraq War veteran about his experiences with painkillers using grant money APF had received from Janssen or others (*id.* ¶ 185) does not make the book a publication by Janssen.

The City does not allege that Janssen had editorial control over those statements and the City alleges no facts supporting a claim that the speakers or authors were Janssen's agents. *See Knapp v. Hill*, 276 Ill. App. 3d 376, 381-82 (1995) (actual agency exists only where principal has

---

[7] *See* Lifland Decl. Ex. 30 at 3. Moreover, the advertisement contained no fewer than four pages of fair balance disclosures, including lengthy information about the risks of addiction, overdose, and death. *Id.* at 4-7.

11

authority to control manner and method in which agent performs, or where there is a grant of specific authority from principal to agent to make a statement or omit material information); *Coehlo v. Park Ridge Oldsmobile, Inc*., 2001 U.S. Dist. LEXIS 14652, at *14 (N.D. Ill. Sept. 19, 2001) ("to establish actual agency, [plaintiff] must allege that [defendants] specifically authorized" a third party to make a statement or "conceal the [material] fact" at issue). Nor does the City allege that anyone reasonably relied on an assumption that these speakers or authors were Janssen's agents, creating apparent agency. *See Coehlo,* 2001 U.S. Dist. LEXIS 14652 at *15-16 (plaintiff must allege it "reasonably concluded that [the third party] was an agent of [the defendants], or that [the plaintiff] relied on [the third party's] apparent authority to his detriment"). Absent plausible agency allegations, statements by or materials of third parties cannot support a claim against Janssen.

Second, the "unbranded" materials themselves do not promote Janssen's opioids and so do not support the City's claim. *See* Lifland Decl. Exs. 23-26. The materials contain basic information, at a high level of generality, about a variety of pain treatments, including opioids, NSAIDs, steroids, and others. Each of the materials mentions the well-known risks of opioids. For example, the 2009 American Geriatrics Society treatment guideline, compiled by a committee of ten physicians and peer reviewed by over a dozen other medical societies, discuss opioid risks at length, citing more than three dozen published articles. *Id.* Ex. 23 at 1339-46.[8] The guideline includes recommendations for all available pain treatments, and ranks both the strength of the recommendation and strength of the supporting evidence. *Id.* The Complaint quotes a statement from the discussion preceding the recommendations—addiction risks are

---

[8] Committee members who had in the past received research grants or speaker fees from pain medicine manufacturers disclosed those relationships in the publication. Half the committee members had no such relationships. Lifland Decl. Ex. 23 at 1343.

12

"exceedingly low in older patients with no current or past history of substance abuse"—and alleges that no studies support the statement (Complt. ¶ 154). But the authors in fact cite five studies supporting the quoted statement (one of which, in turn, relies on an analysis of dozens of other studies). *See* Lifland Decl. Ex. 23 at 1339-40 & refs. 117, 112-13, 124-25. The Complaint does not explain how the guideline could plausibly be characterized as part of the alleged fraudulent scheme.

The City also refers to Janssen "sponsored" informational materials oriented to patients, including a brochure titled *Finding Relief: Pain Management for Older Adults*, a website titled *Let's Talk Pain*, and a 200-page book authored by Derek McGinnis, a U.S. Navy veteran injured in the Iraq war, titled *Exit Wounds—A Survival Guide to Pain Management for Returning Veterans and Their Families* ("*Exit Wounds*").[9] These materials present alternative pain management strategies at even higher levels of generality. *See* Lifland Decl. Exs. 24-26.[10] All three acknowledge the well-known risks of opioids. *See, e.g.*, *id.* Ex. 24 at 17; *id.* Ex. 25 at 10, 68-69.[11] More importantly, all three repeatedly emphasize that patients seeking treatment for

---

[9] The City also claims that Janssen ran unbranded websites to disseminate allegedly "deceptive messages" (Complt. ¶ 244), but alleges *no* facts about these websites or messages and therefore fails to state a claim under Rule 12(b)(6) and Rule 9(b). *See Iqbal*, 556 U.S. at 678.

[10] Contrary to any suggestion in the Complaint, FDA "fair balance" requirements for product specific advertising do not apply to "unbranded" promotion. *See* 21 C.F.R. § 202.1(e)(1) (discussing required fair balance disclosures in "[a]ll advertisements for any prescription drug"); FDA Guidance for Industry, "Help-Seeking" and Other Disease Awareness Communications at 1, 3 (Jan. 2004) (stating that "disease awareness communications"—defined as communications "that discuss a particular disease or health condition, but do not mention any specific drug or device or make any representation or suggestions concerning a particular drug or device"—"constitute[] neither labeling nor advertising and [are], therefore, not subject to the requirements for the disclosure of risk information ...."), *available at* http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/ucm070068.pdf (last visited Aug. 29, 2014).

[11] The City highlights the brochure's purported statement of "Fact" that "opioids are rarely addictive when used properly for chronic pain" (Complt. ¶ 68). In fact, the brochure merely notes that "many studies" support that proposition, Lifland Decl. Ex. 24 at 17, and the multiple citations to such studies in the American Geriatrics Society guideline referenced elsewhere in the City's Complaint bear that out, *id.* Ex. 23 at 1339-40 & ref. 112-13, 117, 124-25. The guideline also cites numerous studies supporting the statement in the brochure that NSAIDs carry their own set of well-known serious risks for geriatric

13

pain relief should see a doctor for individualized medical advice (just as the American Geriatrics Society treatment guideline emphasizes that physicians must evaluate each patient individually in deciding what treatments to recommend). *See, e.g.*, *id.* Ex. 24 at 13, 17, 19; *id.* Ex. 25 at 6; *id.* Ex. 26 at 84.[12] As discussed above, physicians who prescribe opioids have the benefit of the extensive and detailed risk information provided in Janssen's product labels. *See Martin ex rel. Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234, 244 (1996) ("prescribing physicians, and not pharmaceutical manufacturers, are in the best position to provide direct warnings to patients concerning the dangers associated with prescription drugs"). Again, the Complaint does not plausibly explain how, in this context, the brochure and website could support the fraudulent scheme the City purports to allege.

### D. Conspiracy

Finally, the City has not adequately alleged that Janssen participated in a conspiracy, however defined. "In order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). "[T]he agreement is a necessary and important element of a cause of action for civil conspiracy ...." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). Here, the City alleges no such agreement involving Janssen (or any Defendant), let alone any factual details of such an agreement. As discussed in the joint Memorandum of Points and Authorities, the City's conspiracy claim fails under both Rule 9(b) and the *Twombly/Iqbal* plausibility standard.

---

patients, including gastrointestinal bleeds and cardiovascular adverse events (Complt. ¶ 123). *See* Lifland Decl. Ex. 23 at 1339, refs. 48 & 49.

[12] *Exit Wounds* is a wide-ranging book that presents a veteran's first-person narrative of pain management, coupled with general guidance on pain management for other veterans. The book discusses opioids only briefly in a chapter titled "Your Arsenal of Treatment Options" that includes a discussion of other medicines and other methods of pain relief, including complementary and alternative medicine. *See* Lifland Decl. Ex. 26 at 99-130.

### III. CONCLUSION

For the reasons stated above and in the joint brief, the Court should dismiss the City's Complaint in its entirety as to both J&J and Janssen.

Dated: August 29, 2014

Respectfully submitted,

By: /s/ Charles C. Lifland
Charles C. Lifland
clifland@omm.com
Carolyn J. Kubota
ckubota@omm.com

O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Johnson & Johnson, Appearing Pro Hac Vice*

By: /s/ Michael P. Doss
Michael P. Doss
mdoss@sidley.com
Scott D. Stein
sstein@sidley.com

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7520
Facsimile: (312) 853-7036

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Johnson & Johnson*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2014, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on August 29, 2014, at Los Angeles, California.

    /s/ Charles C. Lifland
Charles C. Lifland