IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS, INC.; AND ACTAVIS PLC,<br><br>    Defendants. | Case No. 14-cv-04361<br><br>Honorable Elaine E. Bucklo |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR RELIEF FROM IMPROPER DELEGATION OF GOVERNMENTAL POLICE POWER TO A FINANCIALLY-INTERESTED PRIVATE PARTY**

    Defendants Cephalon, Inc., Endo Health Solutions Inc., Janssen Pharmaceuticals, Inc., Johnson & Johnson, Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company, Inc. (collectively, the "Moving Defendants") submit this Memorandum of Law in Support of their Joint Motion For Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party.

**PRELIMINARY STATEMENT**

    This motion seeks relief from the City of Chicago's unlawful delegation of its investigative police powers to private counsel with a financial interest in the outcome of the investigation. The City's civil enforcement action now before the Court was instigated by a private law firm, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"). The City deputized Cohen Milstein to investigate purported violations of the Municipal Code of Chicago ("MCC") and Illinois law under a contingency fee agreement promising payment only if the investigation

1

led to a successful enforcement action. The City designated Cohen Milstein "Special Assistant Corporation Counsel" and authorized it to exercise the City's investigative police powers, including the power to issue administrative subpoenas under the Chicago Municipal False Claims Act, MCC §§ 1-22-010-1-22-060 ("CFCA"); *see id.* § 1-22-050(a).

The City's delegation of its investigative police powers to a financially interested private party is both unprecedented and unlawful. The exercise of police powers is a core function of sovereign governments. The City has no authority to delegate its police powers or to permit financially interested persons to exercise those powers. The anti-delegation policy seeks to foster public confidence in government institutions, to provide appropriate mechanisms of accountability, to institutionalize investigative neutrality, and to protect against potential abuses of power. The City's delegation to Cohen Milstein tramples all of these objectives.

The anti-delegation rule applies with special force to law enforcement investigations. Government power to investigate potential violations of law is both sweeping and invasive. Investigators armed with administrative subpoena power can inquire into citizens' private affairs with minimal effort and minimal oversight, and compel production of confidential information, not only from persons under investigation, but from anyone with whom those persons dealt. For these reasons, public investigative powers are entrusted only to disinterested investigators with no personal or financial stake in the outcome.

The City's arrangement with Cohen Milstein violates the anti-corruption provisions of the City's own municipal code. Those provisions prohibit City officials from using their positions to influence "any governmental decision or action" in which they know they have a financial interest. MCC § 2-156-030. The City could not lawfully compensate its Corporation Counsel or his regularly-employed assistants with contingency fees tied to the "success" of law enforcement investigations conducted on the City's behalf. The rule must be the same for "Special Assistant Corporation Counsel" who stand in Corporation Counsel's shoes.

Nor can the City save the arrangement, as it has attempted to do here, by reserving for Corporation Counsel or his regularly-employed assistants the ultimate decision whether to

proceed with litigation. An exercise of prosecutorial discretion based on an investigation tainted by an unlawful conflict of interest is itself equally tainted. Under applicable law, both the contingency fee agreement and all actions taken as a result of the agreement are invalid. *See* MCC § 2-156-510.

The City's improper arrangement with Cohen Milstein raises issues of vital concern to the administration of justice. The Court should forcefully reject the notion that a public prosecutor can lawfully engage private attorneys to exercise the government's investigative police power while offering them a bounty if the case is charged. Defendants urge the Court to make clear that financially incentivizing an investigator to reach a particular outcome, by itself, destroys the fairness and legitimacy of a public investigation.

Even if the Court permits the City's claims to proceed, the improper delegation of police powers and contingent fee arrangement should not go unremedied. Accordingly, the Moving Defendants respectfully request that the Court enter an Order: (i) invalidating the contingency fee agreement between Cohen Milstein and the City; (ii) prohibiting the City from retaining Cohen Milstein to pursue this or any similar action against the Moving Defendants; and (iii) granting such other relief as the Court determines is fair and just in the circumstances.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 8, 2013, the City, acting through its Corporation Counsel Stephen R. Patton, entered into a contingent fee agreement appointing Cohen Milstein "Special Assistant Corporation Counsel" to represent the City "in an investigation and litigation of potential claims regarding fraudulent marketing of opioid drugs ('Opioid Matter')." *See* Letter to Linda Singer from Stephen R. Patton ("Contingent Fee Agreement") at 1, attached as Ex. 5 to the Declaration of Scott D. Stein in Support of Defendants' Joint Motion For Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party ("Stein Decl.").[1]

---

[1] Defendants attach the Contingent Fee Agreement entered into and made publicly available in state court filings relating to the subpoena issued to Janssen. *See* Engagement Agreement with Outside Counsel, Appendix to Petition by the City of Chicago for an Order Enforcing Subpoena, Ex. 4, Case No. 2013L010572 (Cook Cty. Cir. Ct. Sept. 23, 2013). The City and Cohen Milstein modified the Contingent

3

The Contingent Fee Agreement reserved to Corporation Counsel the right to "maintain control of the investigation and litigation . . . including whether and how to proceed with litigation." But it expressly delegated to Cohen Milstein responsibility "for carrying out the investigation and litigation and for making day-to-day decisions," including with regard to "subpoenae [sic] and investigative demands." *Id*. at ¶ 11.

The Contingent Fee Agreement also required Cohen Milstein to provide "all legal services required in investigating and litigating this matter, including all associated support services." *Id*. at ¶ 8. The Contingent Fee Agreement provided that Cohen Milstein would be compensated only if the City recovered in litigation. *Id*. at ¶ 1. The Contingent Fee Agreement established a sliding scale percentage, ranging from 22% to 30% of any recovery, based on the stage of the proceedings at the time of resolution. *Id*. But if Cohen Milstein's investigation did not persuade the City to go forward with an enforcement action, the firm would have received nothing. On completion of Cohen Milstein's "initial investigation,"

> the City will determine whether to move forward to litigation. If the City reasonably and in good faith decides that the evidence or size of the potential claims does not make it appropriate to proceed, it will terminate this retainer. In that event, the City will have no obligation to pay Cohen Milstein's fees or expenses.

*Id*. at ¶ 14.

Immediately after executing the Contingent Fee Agreement, Cohen Milstein served all Defendants with investigative subpoenas ("Investigative Subpoenas") issued under CFCA § 1-22-050(a) by Cohen Milstein partner Linda Singer as "Special Assistant Corporation Counsel" for the City. *See* Stein Decl. Ex. 1; Declaration of Patrick Fitzgerald in Support of Defendants' Joint Motion for Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party ("Fitzgerald Decl."), Ex. 1; Declaration of Tinos

---

Fee agreement by letter dated September 19, 2013 (also attached as part of Ex. 5 to the Stein Decl.), but the modifications did not change the provisions under discussion here. The City provided the modification to Sidley Austin LLP ("Sidley") pursuant to an Illinois Freedom of Information Act request that Sidley made on behalf of Janssen. (Stein Decl. ¶7.) Defendants are unaware of any further modifications to the Contingent Fee Agreement.

Diamantatos in Support of Defendants' Joint Motion for Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party ("Diamantatos Decl."), Ex. 1; Declaration of Joshua M. Davis in Support of Defendants' Joint Motion for Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party ("Davis Decl."), Ex. 1. As part of its investigation, Cohen Milstein also subpoenaed third parties, although Defendants do not know whom or how many because the City has neither shared that information with Defendants nor made it public.[2]

The Investigative Subpoenas were extremely broad, covering a period of more than seven years and calling for production of documents in more than sixty categories (not including subparts). *See* Stein Decl., Ex. 1; Fitzgerald Decl., Ex. 1; Diamantatos Decl., Ex. 1; Davis Decl., Ex. 1. In correspondence and meetings with both the City and Cohen Milstein, the Moving Defendants objected not only to the subpoena's oppressive breadth and scope, but also to the City's unlawful delegation of its investigatory powers. *See* Stein Decl. ¶¶3-9 and Exs. 2-4; Fitzgerald Decl. ¶¶3-5 and Ex. 2; Diamantatos Decl. ¶¶4-7 and Ex. 2; Davis Decl. ¶¶3-7 and Ex. 2. One Defendant (Purdue Pharma L.P.) refused to produce documents in response to the Investigative Subpoena, and the City ultimately withdrew the subpoena as to it. *See* Fitzgerald Decl. ¶6 and Ex. 4. Other Defendants sought and received assurances from Assistant Corporation Counsel, Michael Dolesh, that the City, not Cohen Milstein, would decide whether to bring an enforcement action, and some sought and received assurances that they would be given an opportunity to present arguments and evidence to dissuade the City from proceeding. *See* Stein Decl. ¶8; Davis Decl. ¶6. Defendants began producing responsive documents subject to an express reservation of rights, including the right to challenge the City's unlawful arrangement

---

[2] Court filings in this case indicate that Cohen Milstein subpoenaed the American Pain Foundation and used documents produced by it to make allegations against Defendants. *See e.g.*, Memorandum of Law in Support of City of Chicago's Motion to File the Complaint Under Seal, ECF No. 50, at 4-6 (Jul. 7, 2014); Joint Motion for Orders (1) Deferring Presentment of Plaintiff's Motion to File Amended Complaint Under Seal and (2) Disclose to Defendants Redacted Allegations Based on Information Produced by the American Pain Foundation, ECF No. 59 (Jul. 9, 2014).

with Cohen Milstein. *See* Stein Decl. ¶10; Diamantatos Decl. ¶¶4-5, 7; Davis Decl. ¶7.[3]

The City never afforded Defendants a pre-lawsuit meeting to rebut the proposed claims. *See* Stein Decl. ¶10; Diamantatos Decl. ¶8; Davis Decl. ¶8. In May 2014, two California counties also represented by Cohen Milstein on a contingency basis sued Defendants in California, asserting substantially the same claims the City makes here. *See* Complaint, *People of the State of California v. Purdue Pharma L.P., et al*, Case No. 30-2014-00725287 (Orange Cnty. Sup. Ct., May 21, 2014). Less than a week later, notwithstanding Defendants' cooperation with the subpoenas and their good faith efforts to engage the City in a meaningful dialogue, the City abruptly filed suit in Cook County Circuit Court. Like the California complaint, the City's complaint alleges that Defendants waged a years-long campaign to deceptively market opioid pain relievers. The complaint asserts claims including violations of the CFCA, the MCC's consumer fraud and cost recovery ordinances, and common law fraud, civil conspiracy, and unjust enrichment. The City has asserted that these allegations are based in significant part on the documents and information obtained pursuant to the Investigative Subpoenas. *See* Carla K. Johnson, *City of Chicago Sues Over Painkiller Marketing*, ASSOCIATED PRESS, June 3, 2014, *available at* http://bigstory.ap.org/article/city-chicago-sues-over-painkiller-marketing ("Chicago subpoenaed documents from the companies 'to determine if we had the basis to sue,' city spokeswoman Shannon Breymaier said.").[4] In fact, the complaint refers to numerous documents that Cohen Milstein collected from Defendants by means of the investigative subpoenas.

---

[3] In late June 2013, the City withdrew the initial Investigative Subpoena from Ms. Singer to Janssen and issued a replacement subpoena signed by Mr. Dolesh. Stein Decl., Ex. 3. The replacement subpoena demanded production of the same sixty-six categories of documents and directed Defendants to produce the requested documents to Cohen Milstein. *Id*.

[4] Based on the timing and similarity of the California complaint, Defendants have serious concerns not only that the City improperly delegated its investigatory powers to Cohen Milstein, but that Cohen Milstein has improperly used the fruits of that unlawful delegation to advance contingency claims it is pursuing or intends to pursue on behalf of other clients, in violation of MCC § 2-156-070, the terms of its agreement with the City (*see* Stein Decl., Ex. 5), and the terms of a protective order and confidentiality agreements governing Defendants' document productions (*see* Stein Decl., Ex. 7; Diamantatos Decl., Ex. 4). Defendants do not advance that contention in this motion, but reserve their right to pursue appropriate remedies for such misconduct both here and in other jurisdictions if that should prove to be the case.

## ARGUMENT

### I. The Delegation of Investigative Authority to Cohen Milstein Was Improper

It is well established that public officials may issue investigative subpoenas only pursuant to express legislative authority to do so. *Appeal Bd. of Dep't of Envtl. Control of City of Chicago v. U. S. Steel Corp.*, 272 N.E.2d 46, 48 (Ill. 1971) ("the power to issue administrative subpoenas is an extraordinary one which is not to be implied from a simple grant of authority to enact ordinances"). Likewise, it is well established that public officials may delegate their subpoena power, even to their subordinates, only pursuant to statutory authority. *See*, *e.g.*, *Cudahy Packing Co. of Louisiana v. Holland*, 315 U.S. 357 (1942) (administrator of U.S. Department of Labor Wages and Hours Division could not lawfully delegate subpoena power to Division's regional directors where Congress had not authorized such delegation). As explained in *Cudahy*:

> Unlimited authority of an administrative officer to delegate the exercise of the subpoena power is not lightly to be inferred. ***It is a power capable of oppressive use, especially when it may be indiscriminately delegated*** and the subpoena is not returnable before a judicial officer. …[T]he subpoena may … be used to compel production at a distant place of practically all of the books and records of a manufacturing business, covering considerable periods of time. True, there can be no penalty incurred for contempt before there is a judicial order of enforcement. But the subpoena is in form an official command, and even though improvidently issued it has some coercive tendency, either because of ignorance of their rights on the part of those whom it purports to command or their natural respect for what appears to be an official command, or because of their reluctance to test the subpoena's validity by litigation. All these are cogent reasons for inferring an intention of Congress not to give unrestricted authority to delegate the subpoena power which it has in terms granted only to the responsible head of the agency.

*Id.* 363-64 (emphasis added).

Here, the Corporation Counsel purported to delegate his investigative subpoena power not to subordinate members of his department, but to a private law firm. *See* Contingent Fee Agreement at ¶ 11 ("Cohen Milstein will be responsible for carrying out the investigation … and for making day-to-day decisions regarding … subpoenae [sic] and investigative demands"). Nothing in the Municipal Code of Chicago ("MCC") or other Illinois law authorizes such a

delegation. On the contrary, the CFCA expressly reserves the City's investigative subpoena power to Corporation Counsel. *See* MCC § 1-22-050(a)(1) ("Whenever *the corporation counsel* has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to an investigation, *the corporation counsel* may, before commencing a civil proceeding under this chapter, issue in writing and cause to be served upon such person ... a subpoena ....") (emphasis added); MCC §§ 1-22-050(a)(1)(A)-(D).[5]

The absence of legislative authority renders the City's attempted delegation of investigative subpoena power to Cohen Milstein unlawful and void *ab initio. See Cudahy*, 315 U.S. at 363-46; *cf. Ferguson v. Patton*, 985 N.E.2d 1000, 1010 (Ill. 2013) (holding that City's Inspector General could not lawfully retain private counsel to enforce administrative subpoena, even on a *pro bono* basis, absent express legislative authorization to do so).[6] Apparently cognizant of this obstacle, the City has attempted to remove it by appointing Cohen Milstein "Special Assistant Corporation Counsel" in the City's Law Department. *See* Contingent Fee Agreement at 1 (retaining Cohen Milstein as "Special Assistant Corporation Counsel for the City of Chicago to represent it in an investigation and litigation of potential claims …").[7] But appointing Cohen Milstein to the Law Department only makes matters worse. As Special Assistant Corporation Counsel, Cohen Milstein's contingent fee arrangement unambiguously violates the City's financial conflict of interest policy.

The City's conflict of interest prohibition broadly provides that "[n]o official or employee

---

[5] Similarly, the Corporation Counsel alone may commence a judicial proceeding to enforce an investigative subpoena in the event of noncompliance. *See* MCC § 1-22-050(j)(1) ("Whenever any person fails to comply with any subpoena issued under subsection (a) ... the corporation counsel may file ... a petition for an order ... for the enforcement of the subpoena.").

[6] *See also U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 566 (D.C. Cir. 2004) ("subdelegation" of regulatory authority to outside parties is presumptively invalid absent express legislative authority; "statutory 'silence' … simply leaves that lack of authority untouched"); *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 927 (D.C. Cir. 2008) ("Even if the Coast Guard had delegated some or all of its decision-making authority under the Ports and Waterways Safety Act to an outside body not subordinate to it, such as the International Maritime Organization, the delegation would be unlawful absent affirmative evidence that Congress intended the delegation").

[7] Under MCC § 2-60-010, the City's Department of Law consists of the Corporation Counsel and his assistants and clerks.

shall make, participate in making or in any way attempt to use his position to influence any city governmental decision or action in which he knows or has reason to know that he has any financial interest distinguishable from its effect on the public generally." MCC § 2-156-030(a). On its face, the provision prohibits City officials from exercising the City's investigative police powers if they have a financial interest in the outcome. This provision would prohibit Corporation Counsel, a City official under MCC § 2-60-020, or his subordinates, appointed pursuant to MCC §2-152-040, from acting subject to such financial interest and it must equally prohibit "Special Assistant Corporation Counsel" from doing the same. To hold the prohibition inapplicable to officials exercising government police powers by special appointment would create a yawning and unwarranted loophole in the provision's intended public protection against improper influence on government decisions.

The City has nevertheless insisted in correspondence with Defendants that Cohen Milstein is no more than an independent contractor providing legal services. According to the City, this excuses Cohen Milstein from the conflict of interest bar. This is wrong for multiple reasons. First, it ignores the fundamental nature of the arrangement. The City has not merely engaged Cohen Milstein to perform legal services, but has appointed Cohen Milstein "Special Assistant Corporation Counsel" with authority to exercise the City's non-delegable police powers, including subpoena power. Contingent Fee Agreement at 1 & ¶ 11.

Second, the City's position ignores longstanding case law holding that assistant state attorneys are public officers because, among other things, they were "named by and under the supervision of the state's attorney;" they were "paid out of the county treasury" (as Cohen Milstein will here be paid from City funds if the City obtains a recovery), and they "exercise some portion of the sovereign power of the state." *People ex rel. Landers v. Toledo*, 267 Ill. 142, 146 (1915); *see also Office of Cook County State's Attorney v. Illinois Local Labor Rel. Bd.*, 166 Ill. 2d 296 (1995) ("Assistant State's Attorneys are in essence surrogates for the State's Attorney"). The same reasoning applies here.

Third, the City's position ignores the ethical principles applicable to private lawyers

serving as public prosecutors. *See* Restatement (Third) of The Law Governing Lawyers § 97, cmt. i. (2000) ("[A] lawyer in private practice retained to function part-time as a public prosecutor operates in that regard subject to restrictions on prosecutors with respect to their advocacy, disclosure obligations, and similar matters ... notwithstanding that the lawyer would not be so constrained in representing nongovernmental clients. ... Such a lawyer may also be subject to special conflict-of-interest restrictions applicable to governmental lawyers or officers").

Finally, there can be no doubt that the City's arrangement with Cohen Milstein, in fact, creates a debilitating and pernicious conflict of interest. The Contingent Fee Agreement authorized and deputized Cohen Milstein to conduct a fraud investigation in the City's name and to use its investigative powers. The City would then determine, in its sole discretion, whether to proceed with litigation. *See* Contingent Fee Agreement at 1 & ¶¶ 8, 11, 14. While conducting the investigation, Cohen Milstein knew it would receive payment only if its work persuaded the City to file suit. *See id.* at ¶¶ 1, 14. Conversely, if the City in good faith elected not to file suit, Cohen Milstein knew it would be paid nothing. *See id.* at ¶14.

The agreement thus created both a financial carrot (the prospect of a large contingency fee percentage of any litigation recovery) and a financial stick (the prospect of being paid nothing for its investigative work). Together these economic forces created a powerful financial incentive for Cohen Milstein to steer the investigation towards litigation in countless ways, both obvious and subtle. Cohen Milstein had an incentive to sweep over-broadly in its discovery requests, to exaggerate purportedly inculpatory evidence, and to overlook, ignore, or fail to pursue exculpatory evidence. And the fact (revealed by its near-simultaneous filing of the parallel California case) that Cohen Milstein was at the same time working to persuade other clients to file similar contingency fee claims in other jurisdictions could only amplify its skewed incentives.

The City's reservation of the right "to maintain control of the investigation" and "make all key decisions, including whether and how to proceed with litigation," cannot save the

10

arrangement. *Id.* at ¶11. By its plain terms, the Contingent Fee Agreement gave Cohen Milstein both the responsibility to conduct the investigation and—importantly—the ability to shape it. The agreement required Cohen Milstein to provide "all legal services required in investigating … this matter" (*id.* at ¶ 8), and deputized it both to "carry[] out the investigation" and to make the "day-to-day decisions regarding court filings, subpoenae [sic] and investigative demands …." *Id.* at ¶ 11.

The City's decision whether to proceed with litigation necessarily depended on the body of evidence that Cohen Milstein collected and presented. As the deputized investigator, Cohen Milstein decided what evidence to collect, what not to collect, what issues to pursue, and what issues not to pursue. But Cohen Milstein made those decisions while maintaining powerful and personal financial incentives to steer the matter towards litigation. A decision to proceed based on such an investigation—even if made in good faith—is as tainted by the underlying conflict of interest as the investigation itself.

Given the obvious and substantial potential for abuse in such an arrangement, it is difficult to imagine why any governmental authority would agree to it, even if it were lawful. But the Court need not concern itself with the wisdom of the arrangement, because it plainly constitutes both an unauthorized delegation of investigatory police power and a violation of the City's conflict of interest statute. Despite its insistence on the arrangement's validity, the City has never cited to Defendants *any* case upholding a government's delegation of its police powers to private counsel financially interested in the outcome of the investigation, and Defendants do not know of any such case.[8] Indeed, in Defendants' experience, the delegation of police power attempted by the City and Cohen Milstein here is unprecedented.

---

[8] Defendants are aware of cases addressing the propriety of agreements retaining contingency fee counsel to prosecute government claims in litigation, which have been upheld (with conditions) in some cases and rejected in others. Compare *County of Santa Clara v. Superior Court*, 235 P.3d 21 (Cal. 2010), with *People ex rel. Clancy v. Superior Court*, 705 P.2d 347 (Cal. 1985). None of those cases, however, addresses or upholds a purported delegation of the government's investigatory police power, which is the issue addressed in this motion.

## II. The Moving Defendants are Entitled to Relief From the Improper Arrangement Between the City and Cohen Milstein

"It is well established that courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal and that the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997) (internal quotations omitted). "A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results." *Clancy*, 705 P.2d at 350. This Court should roundly reject the improper arrangement in this case and make clear that the exercise of police power for profit will not be tolerated.

Under the Municipal Code, any official action taken in violation of the conflict of interest provisions is "invalid and without any force or effect whatsoever." MCC § 2-156-510. At a minimum, therefore, the Court should invalidate the Contingent Fee Agreement to preclude any continuing relationship between the City and Cohen Milstein that allows the firm to profit from its tainted "investigation."[9]

In addition, the Court should preclude Cohen Milstein from further representing the City in this or any other action asserting claims that were or could have been asserted against the Moving Defendants in this action. "[T]he district court, which has the primary responsibility for supervising the conduct of attorneys appearing before it, possesses broad discretion in determining whether disqualification is required in a particular case ...." *Schloetter v. Railoc of Ind., Inc.*, 546 F.2d 706, 710 (7th Cir. 1976) ("[t]he courts … have a responsibility to maintain public confidence in the legal profession … [t]his means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety." *Id.*

---

[9] MCC § 2-156-510 also mandates that "[a]ll city contracts shall include a provision requiring compliance with this chapter." The Contingent Fee Agreement contains no such provision, providing further grounds for its abrogation. *See generally* Stein Decl., Ex. 5.

(citation omitted)).

Permitting Cohen Milstein to continue acting as the City's counsel in this very public litigation, despite the blatant violation of the City's own conflict of interest rules and the improper financial incentives that led to the filing of this litigation in the first place, plainly would erode public confidence in the government's investigative neutrality, to say nothing of the legal profession more broadly. The public rightly expects that government investigations are motivated by a desire to discover the truth, not the financial profit that the individuals conducting those investigations stand to gain. Merely eliminating the contingent aspect of Cohen Milstein's financial arrangement now and requiring the firm to proceed on an hourly-rate basis (where it would continue to benefit financially from the fruits of its tainted investigation) would not undo that harm. Indeed, it would afford the City a potential windfall—the avoidance of a contingency-fee payment should there be a recovery—thus, rewarding the City for improperly delegating its police powers in the first place. Accordingly, the City should be precluded from continuing to engage Cohen Milstein in this or any related matter. Finally, the Court should grant such other relief as it deems appropriate in the circumstances.

## **CONCLUSION**

For the foregoing reasons, the Moving Defendants respectfully request that the Court (i) void the retention agreement between the City and Cohen Milstein; (ii) preclude the City from retaining Cohen Milstein in this or any similar action against the Moving Defendants; and (iii) grant such other relief as the Court determines is fair and just in the circumstances.

Dated:  September 19, 2014                     Respectfully submitted,

By: /s/ Carolyn J. Kubota
    Carolyn J. Kubota
    ckubota@omm.com
    Charles C. Lifland
    clifland@omm.com

Michael P. Doss
mdoss@sidley.com
Scott D. Stein
sstein@sidley.com

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Telephone:    (312) 853-7520
Facsimile:     (312) 853-7036

*Attorneys for Defendant Janssen Pharmaceuticals, Inc.; and Johnson & Johnson*

O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone:    (213) 430-6000
Facsimile:     (213) 430-6407

*Attorneys for Defendants Janssen Pharmaceuticals, Inc. and Johnson & Johnson, Appearing Pro Hac Vice*

By: /s/ R. Ryan Stoll
    R. Ryan Stoll
    ryan.stoll@skadden.com
    Patrick Joseph Fitzgerald
    patrick.fitzgerald@skadden.com

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    155 N. Wacker Drive
    Suite 2700
    Chicago, IL 60606
    (312) 407-0508

    *Attorneys for Defendants Purdue Pharma L.P., The Purdue Frederick Company, Inc., and Purdue Pharma, Inc.*

|  |  |
|---|---|
|  | By: /s/ Tinos Diamantatos |
|  | Tinos Diamantatos |
|  | tdiamantatos@morganlewis.com |
|  |  |
|  | MORGAN, LEWIS & BOCKIUS LLP |
|  | 77 West Wacker Drive, 5th Floor |
|  | Chicago, IL 60601 |
|  | (312) 324-1145 |
|  | (312) 353-2067 (fax) |
|  |  |
|  | *Attorneys for Defendants Cephalon, Inc.* |
|  |  |
|  | By: /s/ Peter Vincent Baugher |
|  | Peter Vincent Baugher |
| Jonathan L. Stern | baugher@sw.com |
| Jonathan.Stern@aporter.com | Kristen Elizabeth Hudson |
| Joshua M. Davis | hudson@sw.com |
| Joshua.Davis@aporter.com |  |
|  | SCHOPF & WEISS LLP |
| ARNOLD & PORTER LLP | One South Wacker Drive |
| 555 Twelfth Street, NW | 28th Floor |
| Washington, DC 20004 | Chicago, IL 60606 |
| Telephone: (202) 942-5000 | (312) 701-9300 |
| Fax: (202) 942--5999 |  |
|  | *Attorneys for Defendant Endo Health* |
| *Attorneys for Defendant Endo Health Solutions* | *Solutions Inc.* |
| *Inc., Appearing Pro Hac Vice* |  |

## SIGNATURE ATTESTATION

Pursuant to the Northern District of Illinois' General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories concur in the filing's content.

/s/ Carolyn J. Kubota  
Carolyn J. Kubota

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2014, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on September 19, 2014, at Los Angeles, California.

      /s/ Carolyn J. Kubota
      Carolyn J. Kubota