IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF CHICAGO,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )    No. 14 C 4361
                                    )
PURDUE PHARMA L.P., *et al.*,       )
                                    )
                Defendants.         )

MEMORANDUM OPINION AND ORDER

The City of Chicago ("City") alleges that several
pharmaceutical companies illegally marketed opium-like
painkillers ("opioids") to patients suffering from chronic pain
unrelated to cancer. *See* Dkt. No. 81-1 ("Compl."). In response
to Defendants' motions to dismiss, the City has indicated that
it will file an amended complaint by October 20, 2014.

Meanwhile, three Defendants have moved for entry of a
protective order that would require the City to (1) deny a *USA
Today* reporter's pending requests under the Illinois Freedom of
Information Act ("IFOIA"), 5 ILCS § 140/1 *et seq.*, for the
documents referenced in Paragraphs 68 and 179 of the complaint
and (2) deny any other IFOIA requests for documents that the
movants produced to the City in response to investigative
subpoenas until this litigation ends.

1

I deny Defendants' motions for entry of a protective order
(Dkt. Nos. 90 and 96) for the reasons stated below. *USA Today*'s
renewed petition to intervene for the purpose of objecting to
these motions (Dkt. No. 132) is denied as moot.

I.

This case arises out of the City's investigation into
Defendants' suspected violations of the Chicago False Claims
Act, Municipal Code of Chicago ("MCC") § 1-22-010 *et seq.*

On April 5, 2013, the City served Janssen Pharmaceuticals,
Inc. and Johnson & Johnson (collectively, "Janssen") with a
subpoena for documents pursuant to § 1-22-050(a) of the MCC.[1]
The City also subpoenaed documents from Cephalon, Inc.'s
("Cephalon") parent company on the same day.

In response to Janssen's request to narrow the issues in
dispute, the City served Janssen with a revised subpoena on June
27, 2013. After attempting to secure Janssen's voluntary
compliance with the revised subpoena, the City petitioned the
Circuit Court of Cook County under MCC § 1-22-050(j) for an
order enforcing the subpoena. *See City of Chicago v. Janssen
Pharmaceuticals, Inc.*, Case No. 2013 L 010572 (Ill. Cir. Ct.).

On November 12, 2013, the judge presiding over the subpoena

---

[1] In a separate motion, Defendants argue that the manner in which
the City served these subpoenas--i.e., though outside counsel--
constituted an improper delegation of police powers to a
private, financially-interested third party. *See* Dkt. No. 148.

enforcement proceeding entered an agreed "Confidentiality Stipulation and Protective Order."  This order addressed future IFOIA requests for documents Janssen would be producing to the City in response to its investigative subpoena:

> The City of Chicago acknowledges that Produced Information may contain trade secrets, proprietary or sensitive commercial information, or other confidential information, and that Janssen considers this information to be protected and exempt from disclosure under the Illinois Freedom of Information Act, Illinois public records law, and any similar federal, state, or municipal law ("Public Disclosure Laws").
>
> If the City of Chicago receives a request made under the Public Disclosure Laws that it believes requires disclosure of any Produced Information, the Corporation Counsel will notify Janssen upon receipt of such request, so as to afford Janssen the opportunity to take steps to prevent disclosure; provided, however, that nothing in this Protective Order shall be read to conflict with the City of Chicago's duty to comply with the Public Disclosure Laws.  The parties expressly note, however, that pursuant to the Municipal Code of Chicago § 1-22-050(k), any documentary material, answers to written interrogatories, or oral testimony provided under the subpoena "shall be exempt from disclosure under the Illinois Administrative Procedure Act."  Nothing in this Protective Order in intended to diminish the protections afforded to Janssen under this provision or authorize disclosure of information that would otherwise be prohibited under § 1-22-050.

Dkt. No. 92 at Ex. 3 ¶ 8 (paragraph break added); *see also id*. at ¶ 4(d) (providing that protective order's limitations on disclosure "shall not apply to information where...disclosure is required by law").

After entry of this protective order, Janssen produced almost 115,000 pages of documents to the City in response to the June 27, 2013 subpoena. In the cover letters accompanying its productions, Janssen took the position that the enclosed documents were "protected and exempt from disclosure under [IFOIA], § 1-22-050(k) of the Chicago False Claims Act, Illinois public records law, and any similar federal, state, or municipal law." *See* Dkt. No. 93.

Meanwhile, in response to a separate investigative subpoena, Cephalon produced approximately 127,000 pages to the City starting in December 2013. On March 25, 2014, the City and Cephalon's parent company entered into a "Confidentiality Agreement" that applied to Cephalon's past and future document productions. Cephalon's confidentiality agreement with the City contains the same provision concerning possible IFOIA requests as the one quoted above from Janssen's protective order. *See* Dkt. No. 96 at Ex. A ¶ 7.[2]

II.

On June 2, 2014, the City filed suit against Janssen, Cephalon, and other pharmaceutical companies in the Circuit

---

[2] In a previous filing, the City represented that it also entered into confidentiality agreements with Defendants Actavis PLC and Endo Health Solutions, Inc. during the pre-suit investigation. *See* Dkt. No. 50 at Exhibits C and E. However, only Janssen and Cephalon have moved for entry of a protective order relating to pending IFOIA requests.

Court of Cook County.  The City's complaint redacted references to documents that Defendants had designated as confidential when producing them to the City during the pre-suit investigation.

After Defendants removed this case to federal court based on diversity of citizenship, the City moved for leave to file an un-redacted version of the complaint under seal.  *See* Dkt. No. 49.  However, because the City did not agree with Defendants' confidentiality designations, it also asked the Court to unseal the complaint after seven days.  The City later moved to defer presentment of its motion to file the complaint under seal until July 17, 2014 to allow the parties time to work towards an agreed resolution on whether any information in the complaint should be redacted.  *See* Dkt. No. 58.

On July 14, 2014, three newspapers--the *Chicago Tribune*, the *Los Angeles Times*, and *USA Today* ("the Newspapers")-- petitioned for leave to intervene in this action for two purposes: (1) to object to redactions in the City's publicly filed complaint and (2) to access documents the City had obtained from Defendants during its pre-suit investigation.  *See* Dkt. No. 66.  Two days after the Newspapers moved to intervene, the City withdrew its motion for leave to file the complaint under seal.  *See* Dkt. No. 72.

The City filed a fully un-redacted complaint on July 22, 2014.  *See* Dkt. No. 81 at Ex. A.  About one week later, the

Newspapers withdrew their petition for leave to intervene even though they had not obtained access to any of the documents referenced in the City's complaint. *See* Dkt. No. 84.

On July 30, 2014, two days after the Newspapers withdrew their petition to intervene, a *USA Today* reporter filed two IFOIA requests with the City seeking (1) all documents underlying the allegations made in Paragraph 68 of the complaint and (2) the document referenced in Paragraph 179. In these two paragraphs, the City alleged:

> 68. For example, in a Janssen-sponsored publication, *Finding Relief: Pain Management for Older Adults*, published in 2009 and still available online, Janssen asserts as "Fact" that "opioids are *rarely* addictive when used properly for the management of chronic pain" (emphasis in original). Numerous Janssen employees vetted and approved the content of this publication, and Janssen arranged for copies of *Finding Relief* to be distributed by its pain sales force.

> 179. Upon information and belief, other Defendants also focused outreach efforts on the elderly. Cephalon's 2007 marketing plan for Fentora, for example, in a slide describing plans to target chronic non-cancer pain patients, laid out a multi-city tour with stops at AARP events, YMCAs, senior living facilities, and National Council on Aging chapters.

Compl. at ¶¶ 68, 179.

Shortly after receiving the IFOIA requests referenced above, the City notified Janssen that it deemed three documents Janssen had marked as "CONFIDENTIAL" to be (1) responsive to the request for documents relating to the allegations made in

Paragraph 68 and (2) not exempt from disclosure under IFOIA. The City provided a similar notice to Cephalon with respect to its 2007 marketing plan for Fentora, which Cephalon had also designated as "CONFIDENTIAL."

Janssen and Cephalon notified the City of their objections to disclosure of the requested documents. The City secured an extension of time for its response to the pending IFOIA requests and attempted to resolve its difference with Janssen and Cephalon about whether the requested documents are statutorily exempt from disclosure.

When the parties reached an impasse on this issue, Janssen and Cephalon moved for entry of a protective order that would require the City to (1) deny the *USA Today* reporter's pending IFOIA requests and, until this litigation concludes, (2) deny any future IFOIA requests for documents that Janssen or Cephalon produced to the City during its pre-suit investigation. *USA Today* has renewed its petition to intervene for the sole purpose of objecting to entry of the requested protective order.

III.

The first issue I must decide is whether Rule 26(c) or any other source of authority allows me to enter a protective order that would effectively grant Janssen and Cephalon injunctive relief for the duration of this case against any IFOIA requests

for documents that they produced to the City in response to investigative subpoenas.

Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" "The court may, for good cause, issue an order...forbidding the disclosure or discovery [sought]." Fed. R. Civ. P. 26(c)(1)(A).

The plain language for Rule 26(c) provides no authority to enter the requested protective order because *USA Today* is not seeking discovery materials from Janssen or Cephalon. Janssen and Cephalon argue that I should nonetheless treat the *USA Today* reporter's pending IFOIA requests as the functional equivalent of an intervenor's request for discovery materials. However, neither Janssen nor Cephalon has cited any case where a court transformed an IFOIA request for records maintained by a public body--which are "presumed to be open to inspection or copying," 5 ILCS § 140/1.2--into a futile request to intervene for the purpose of obtaining confidential discovery materials.[3]

---

[3] *See City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, --- F.3d ---, 2014 WL 4092255, at *1 (7th Cir. Aug. 20, 2014) ("Discovery material can be shielded from the public eye."); *Bond v. Utreras*, 585 U.S. 1061, 1066 (7th Cir. 2009) ("[T]here is no constitutional or common-law right of public access to discovery materials exchanged by the parties but not filed with the court. Unfiled discovery is private, not public."); *see also Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002) ("Secrecy is fine at the discovery stage, before the material enters the judicial record."); *Union Oil Co. of*

In essence, Janssen and Cephalon complain that IFOIA provides a backdoor way for *USA Today* to obtain a subset of otherwise confidential discovery materials that they produced to the City before this litigation commenced. Janssen and Cephalon both attempted to guard against such backdoor disclosures in their confidentiality agreements with the City. *See* Dkt. No. 92 at Ex. 3 ¶ 8; Dkt. No. 96 at Ex. A ¶ 7. To the extent those agreements require the City to deny the *USA Today* reporter's pending IFOIA requests--which seems doubtful given that "nothing in [the agreements] shall be read to conflict with the City of Chicago's duty to comply with the Public Disclosure Laws"--Rule 26(c) is not the right enforcement mechanism. Janssen can enforce its "Protective Order" with the City before the state court judge who entered it. Cephalon, in turn, can enforce its "Confidentiality Agreement" with the City in a breach of contract action. Those disputes are completely collateral to

_____

*Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court."); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("It is true that pretrial discovery, unlike the trial itself, is usually conducted in private."); *In re Associated Press*, 162 F.3d 503, 512 (7th Cir. 1998) ("Until admitted into the record, potential evidence is not ordinarily within the scope of press access."); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897-98 (7th Cir. 1994) ("[U]ntil admitted into the record, material uncovered during pretrial discovery is ordinarily not within the scope of press access."); *see also* Fed. R. Civ. P. 5(d)(1) ("[D]iscovery requests and responses must not be filed until they are used in the proceeding or the court orders filing[.]").

this litigation, in which discovery between the parties has not even commenced.

In their eagerness to litigate disputed questions of state law--namely, whether the four documents responsive to the *USA Today* reporter's pending IFOIA requests are statutorily exempt from disclosure[4]--the parties are attempting to stretch Rule 26(c) beyond its plain language. Janssen and Cephalon are not seeking protection against a discovery request. Nor are they seeking to curtail a party from disseminating documents or information obtained during discovery. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (holding that a protective order restricting the dissemination of information obtained during pre-trial discovery is compatible with the First Amendment).[5] The City's statutory duty under IFOIA to disclose public records is separate from whatever interests it may have in disseminating discovery materials during this litigation.

Janssen and Cephalon are really trying to enjoin the City from granting IFOIA requests for documents that they produced to

---

[4] Janssen and Cephalon rely on the following statutory exemptions: 5 ILCS § 140/7(a)(1) (information prohibited from disclosure under rules and regulations implementing state law, including MCC §§ 1-22-050(i) and (k)); § 140/7(1)(d) (information obtained during law enforcement investigations); and § 140/7(1)(g) (trade secrets).

[5] Incidentally, IFOIA's exemptions do not control a court's determination of whether "good cause" exists to prohibit the dissemination of discovery materials. *See Henry v. Centeno*, No. 10 C 6364, 2011 WL 3796749, at *2 (N.D. Ill. Aug. 23, 2011) (Gettleman, J.).

the City during the pre-suit investigation.  Illinois courts
have not decided whether IFOIA, like its federal counterpart,
"is purely a disclosure statute and affords [individuals and
businesses who comply with investigative subpoenas] no private
right of action to enjoin agency disclosure." *Chrysler Corp. v.
Brown*, 441 U.S. 281, 285 (1979); *see also Twin-Cities
Broadcasting Corp. v. Reynard*, 661 N.E.2d 401, 404 (Ill. App.
Ct. 1996) (declining to decide "whether, under the Illinois
FOIA, the existence of an exemption imposes an affirmative duty
on an agency to withhold information sought").  I need not
decide whether Illinois law permits so-called "reverse-FOIA"
suits to enjoin the City or any other public body from
disclosing records obtained in response to an investigative
subpoena.  It suffices to hold that Janssen and Cephalon may not
litigate a "reverse-FOIA" claim against the City under the guise
of a Rule 26(c) motion for entry of a protective order.

The City, for its part, has not objected to the
adjudication of pending IFOIA requests under Rule 26(c).  *See*
Dkt. No. 131 at 3 n.1.  However, I cannot use Rule 26(c) as a
springboard to resolve disputed questions of state law.  *See
Chicago Tribune Co. v. Bd. of Trustees of Univ. of Ill.*, 680
F.3d 1001, 1004 (7th Cir. 2012) (vacating declaratory judgment
for newspaper in IFOIA suit against state university, which
"ar[ose] under state law, and *only* state law," and directing

district court to dismiss for want of subject matter jurisdiction).

To the extent the City wants legal advice before responding to the *USA Today* reporter's pending IFOIA requests, the statute provides that a public body may ask the Illinois Attorney General to issue an advisory opinion regarding how to comply with its disclosure obligations. *See* 5 ILCS § 140/9.5(h). Rule 26(c) provides no basis for me to decide or even express an opinion on whether the *USA Today* reporter's pending IFOIA requests should be granted or denied. The City must decide for itself how to handle these requests, with or without the benefit of an advisory opinion from the Illinois Attorney General.

IV.

Janssen's and Cephalon's motions for entry of a protective order, Dkt. Nos. 90 and 96, are DENIED for the reasons stated above. *USA Today*'s renewed petition to intervene, Dkt. No. 132, is DENIED as moot.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: October 10, 2014

12