IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | |
| v. | Case No. 14-cv-04361 |
| | Honorable Elaine E. Bucklo |
| PURDUE PHARMA L.P., *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR RELIEF FROM IMPROPER DELEGATION OF GOVERNMENTAL POLICE POWER TO A FINANCIALLY-INTERESTED PRIVATE PARTY**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................. 1

II. PROCEDURAL HISTORY AND CASE BACKGROUND ........................................... 2

    A. Retention of Outside Counsel ................................................. 2

    B. The City's Pre-Litigation Investigative Subpoenas ................................ 3

III. ARGUMENT ................................................................. 4

    A. Outside Counsel Are Neither City Officials Nor City Employees, and Therefore Are Not In Violation Of MCC § 2-156-030(a) ..................... 4

    B. The City Has Not Improperly Delegated Its Authority, Nor Have Defendants Been Harmed by the City's Use of Outside Counsel on a Contingency Fee Basis ................................................................. 7

        1. The City's Subpoena Power Under the False Claims Ordinance ................................................................. 7

        2. The City's Investigation Was Not Unfair to Defendants ........................... 8

            a. The use of outside contingent fee counsel does not violate due process if government lawyers retain control over all key aspects of the case ............................................... 8

            b. Contingent fee arrangements pertaining to investigations are less—not more—likely than litigation to implicate due process ................................................................. 12

    C. Defendants Do Not Make The Showing Required To Obtain The Relief They Seek ................................................................. 14

IV. CONCLUSION ................................................................. 15

Plaintiff City of Chicago ("the City") submits this Memorandum of Law in Opposition to Defendants' Joint Motion for Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party ("Defendants' Motion"), ECF Nos. 148-49. This is Defendants' second effort to disqualify the City's outside attorneys, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein" or "Outside Counsel").[1]

## I.    PRELIMINARY STATEMENT

Defendants' Motion is extraordinary in its breadth. It asks the Court to disqualify the City's chosen attorneys, nullify the retention agreement between the City and Outside Counsel, and enjoin the City from using Outside Counsel in any similar lawsuit against Defendants. Defendants' requested relief is not premised on any alleged wrongful conduct in this case, but upon Outside Counsel's assistance during the City's investigation into Defendants' deceptive marketing practices. Defendants contend that the evidence the City obtained through its investigation is "tainted" because: (1) Outside Counsel acted as a City "employee" in violation of ethics rules that prohibit City officials and employees from having a financial interest in a City matter; and (2) the City improperly delegated its police powers to Outside Counsel to conduct the investigation.

Defendants' arguments, though heavy in rhetoric, are light on the law. This makes sense given that their position is contrary to the rulings of the City's independent Board of Ethics and virtually every state and federal court to have considered these issues. Defendants' Motion

---

[1]   On August 21, 2014, Defendants Purdue Pharma Inc., Purdue Pharma L.P., and the Purdue Pharma Frederick Company, Inc. (collectively, "Purdue") filed a motion to disqualify Cohen Milstein and its principal lawyer on the case, Linda Singer, arguing that she was personally and substantially involved as Attorney General for the District of Columbia in a prior settlement with that company. ECF No. 101. This motion has been briefed and is pending before the Court.

should be denied for multiple reasons. First, the City ethics ordinance does not apply to outside attorneys, who are not employees, but independent contractors. Second, the City's use of Outside Counsel to assist in the investigation and litigation of this case does not constitute a surrender of the City's police powers nor prejudice Defendants' right to due process. Third, Defendants fail to cite to any authority that would support the extraordinary relief they request.

## II. PROCEDURAL HISTORY AND CASE BACKGROUND

### A. Retention of Outside Counsel

In the spring of 2013, the City, pursuant to its false claims ordinance, Municipal Code of Chicago ("MCC") § 1-22-020, began an investigation into Defendants' deceptive marketing of opioid drugs and hired Cohen Milstein to assist on a contingent fee basis. The April 8, 2013 retainer agreement ("Agreement") between the City and Outside Counsel contains several provisions critical to evaluating Defendants' Motion.

First, the Agreement provides that Cohen Milstein will function as Special Assistant Corporation Counsel to represent the City in investigating and litigating potential claims regarding the fraudulent marketing of opioid drugs. ECF No. 151-5 at 1. Cohen Milstein "will be paid on a contingent fee basis, only upon a recovery" and "will be responsible for carrying out the investigation and litigation and for making day-to-day decisions" regarding the case. *Id*. ¶¶ 1, 11. The City "will maintain control of the investigation and litigation and will make all key decisions, including whether and how to proceed with litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation." *Id.* Moreover, "[t]he City must approve any settlements and must be apprised of any settlement offers made by Defendants" and "designate a point of contact who will supervise the investigation and litigation and who will be available directly to the other parties in this matter as

needed." *Id* ¶¶ 12, 13.  Upon conclusion of the initial investigation, "the City will determine whether to move forward to litigation." *Id* ¶ 14.

B.      The City's Pre-Litigation Investigative Subpoenas

On April 5, 2013, Corporation Counsel directed Outside Counsel to sign and serve investigative subpoenas on Defendants and other entities.  *See* ECF No. 151-1.  The subpoenas sought information about Defendants' opioid sales in Chicago; Defendants' representations about the efficacy of opioids to treat chronic, non-cancer pain; and Defendants' role in the submission of claims for opioid prescriptions.  *Id.*

Upon receipt of these subpoenas, Defendants raised directly with the City a number of concerns about them, including that they were signed by an attorney from Cohen Milstein.  *See*, *e.g.*, ECF No. 151 ("Stein Decl.") ¶ 3.  In an effort to secure Defendants' compliance, the City issued revised subpoenas signed by Michael Dolesh, Senior Counsel for the City.  *See id.* ¶ 4. The City also provided Defendants with a copy of the Agreement, but Defendants continued to raise concerns about the subpoenas and Outside Counsel's role in the case.  *See id.* ¶¶ 6-7.

The City met with Defendants to discuss their continuing objections.  *See id.* ¶ 8.  At these meetings, Mr. Dolesh stated clearly and unequivocally that Outside Counsel operated under the City's control and that lawyers employed by the City—not Outside Counsel—would be responsible for making all of the pivotal decisions in the case.[2]  *Id.*  Nonetheless, Defendants filed their Motion on September 29, 2014.  For the reasons outlined below, it is meritless.

_____

[2] In addition, on September 19, 2013, the City amended the Agreement in response to Defendant Endo's concerns to make clear that "good cause" justifying termination of the Retainer included any determination by the City that "the public interest would not be best served by bringing the case."  *See* ECF No. 151-5.

## III.    ARGUMENT

A.    Outside Counsel Are Neither City Officials Nor City Employees, and Therefore Are Not In Violation Of MCC § 2-156-030(a)

Defendants assert that, having been appointed "Special Assistant Corporation Counsel," Outside Counsel became City "official[s] or employee[s]" who are barred from "participat[ing] in . . . any city governmental decision or action in which [they] know[] . . . that [they have] any financial interest . . . ." MCC § 2-156-030(a). A review of MCC § 2-156-030(a), Illinois law, and the plain language of the Agreement demonstrates that private attorneys hired for a single matter are neither public officials nor City employees.

First, an Advisory Opinion issued by the Chair of the City of Chicago's Board of Ethics on August 20, 2014 specifically considered whether Cohen Milstein's role in this litigation implicated MCC § 2-156-030(a) and concluded it did not. *See* Advisory Op., Case No. 14032.A (City of Chi. Bd. of Ethics Aug. 20, 2014) ("Opinion") at 1-2, attached to Ex. A.[3] The Opinion examined the definitions of "employee," "official," and "city contractor" in the Municipal Ethics Ordinance and concluded that "[t]he contractual arrangement between the City and Cohen Milstein and its attorneys fits squarely within the definition of 'City contractor,'" which is "any person . . . who is paid from the City treasury or pursuant to City ordinance, for services to any City agency . . . ." *Id.* at 3-4. The Opinion noted that, to determine whether an individual was a City "employee" or "official," prior Board precedent also had considered whether (1) the

---

[3]    As a result of meeting in the summer of 2014 with attorneys for Purdue, which first raised the conflict issue, the City sought an opinion from the City's Board of Ethics on the issue. After Defendants, including Purdue, filed the Motion on September 19, 2014, the City sent all Defendants a copy of the Opinion and requested Defendants withdraw that part of Motion relating to the conflicts issue. *See* Letter from Michael J. Dolesh, Senior Counsel, City of Chicago (Sept. 24, 2014), attached as Ex. A. On September 25, 2014, Purdue's counsel rejected the City's request and stated that the Defendants would proceed with their motion as filed. *See* Letter from Patrick J. Fitzgerald, Purdue Counsel (Sept. 25, 2014), attached as Ex. B.

individual holds a classified City position; (2) the individual is paid from the City payroll; (3) the individual receives employee benefits; and (4) there is federal income tax withholding for the individual. *Id.* at 4. The Opinion concluded that "Cohen Milstein and its attorneys, employees and agents are not City employees or officials, but are City contractors" and, as a result, "they do not fall under the ambit of [MCC] § 2-156-030(a)." *Id.* at 5.

Courts similarly have noted that "[t]he characteristics of a public office are generally agreed upon . . . [and] include: (1) creation by statute or constitution; (2) exercise of some portion of the sovereign power; (3) a continuing position not occasional or contractual; (4) fixed tenure; (5) an oath is required; (6) liability for misfeasance or nonfeasance; and (7) the official has an independence beyond that of employees." *Midwest Television, Inc. v. Champaign-Urbana Commc'ns., Inc.*, 37 Ill. App. 3d 926, 931 (4th Dist. 1976). Although "[n]ot all these factors are required in order to determine that a position is an office," *id.* at 932, they do not collectively describe outside counsel retained for a single, contractually-defined assignment and vested with no independent or ongoing authority. *See Wargo v. Indus. Comm'n*, 58 Ill. 2d 234, 237 (1974) (public officers are not hired for a single act; "the duties of the position are continuous"); *see also PawChak v. Long*, 91 Ill. App. 2d 218, 220 (3d Dist. 1968) (a municipal officer's "duties are continuing and not limited to a single transaction"). Rather than "exercis[ing] some portion of the sovereign power," *Midwest Television, Inc.*, 37 Ill. App. 3d at 931, the Agreement reserves that power for the City by requiring that it maintains control of the matter. Agreement ¶ 11. The Agreement also expressly provides that Outside Counsel's obligations cease upon the termination of that contract. *See* Agreement ¶¶ 14-17.

The case law also shows that Outside Counsel are not City employees, notwithstanding their title of "Special Assistant Corporation Counsel." MCC § 2-156-010(j) defines an

Page 5

"Employee" as "an individual employed by the City of Chicago, whether part-time or full-time, but *excludes . . . city contractors*." (emphasis added). Similarly, under the Chicago Fair Labor Practices Ordinance, an employee is "any person who performs services for wages or salary under a contract of employment . . . ." MCC § 2-168-010(a)(4). In *State ex rel. Discover Financial Services Inc. v. Nibert*, 744 S.E.2d 625 (W. Va. 2013), the West Virginia Supreme Court considered the issue and determined that the state Governmental Ethics Act defined an employee as an individual whose "services . . . must be compensated for in wages or their equivalent." *Id*. at 632 (emphasis omitted). Outside counsel, however, were to be paid only on a contingency basis, such that "*if they prevail*, a court *may* award them attorney's fees." *Id*. at 633 (emphasis in original). Thus, the Court held that "a private attorney appointed as a special assistant attorney general is not an employee of the Office of the Attorney General" for purposes of the Governmental Ethics Act. *Id*. at 634; *see also Conant v. Robins, Kaplan, Miller & Ciresi, L.L.P.*, 603 N.W.2d 143 (Minn. Ct. App. 1999) (state's outside lawyers are neither state officers nor employees). Indeed, the City knows of no court that has found that outside counsel, whether or not designated as special counsel, are employees.[4]

The cases Defendants cite are inapposite. *People ex rel. Landers v. Toledo*, 267 Ill. 142, 145-46 (1915), is a tax case that deals with "assistant state's attorneys," who are described as salaried government lawyers whose compensation is to be fixed by the county board and paid out of the county treasury. In *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296 (1995), the court held that assistant state's attorneys are

---

[4] Defendants' stated fear that neglecting to classify Outside Counsel as City officers or employees will "create a yawning and unwarranted loophole" in ethics regulation overlooks the fact that Outside Counsel are supervised by City lawyers who *are* subject to that provision. Defs.' Mot. 9.

"managerial employees" for purposes of the labor statute because they are empowered to make independent decisions and wield "the power [of the State's Attorney] in the same manner and to the same effect as the State's Attorney." *Id*. at 300-06. The assistant state's attorneys in these cases are government lawyers—they are hired on salary to exercise judgment on behalf of the state. This is plainly different than Outside Counsel, who are neither paid a salary by the government nor authorized to make any "key decisions."[5]

B. The City Has Not Improperly Delegated Its Authority, Nor Have Defendants Been Harmed by the City's Use of Outside Counsel on a Contingency Fee Basis

*1. The City's Subpoena Power Under the False Claims Ordinance*

As a home-rule entity under the Illinois 1970 Constitution, the City Council enacted the City false claims ordinance, giving Corporation Counsel the power to issue pre-litigation subpoenas as part of an investigation into suspected false claims. *See* MCC § 1-22-050. The City Council gave Corporation Counsel greater investigatory powers under the false claims ordinance than its federal and Illinois counterparts, after which it was patterned, including the authority to conduct discovery via subpoenas, as opposed to civil investigative demands, and to share subpoenaed documents with "any individual . . . as determined necessary . . . for effective enforcement of the laws of this city." MCC § 1-22-050(i)(2). Nothing in the Ordinance prohibits Corporation Counsel from retaining outside counsel to assist in carrying out these investigative duties.[6] The Supreme Court of Alaska, in evaluating a statute granting the state

[5] Defendants' argument applies to *any* outside counsel retained by government—whether paid hourly or by contingent fee—since such counsel has a financial interest in the advice they provide.

[6] Illinois courts have upheld Corporation Counsel's authority to retain outside counsel to assist in his duty to "conduct all the law business of the City." MCC § 2-60-020(a). In *Baltzer v. City of Chicago*, 260 Ill. App. 384, 387 (Ill. App. Ct. 1931), the Illinois Appellate Court considered whether it was proper for Corporation Counsel to have hired two private attorneys to represent the City as "Special Assistant Corporation Counsel." Rejecting the plaintiff's objections, the court held that: "with the grant of these

attorney general similar investigatory authority, held that a restriction on his ability to carry out such investigations with the assistance of outside counsel would "conflict" with the grant of such broad powers. *Tesoro Petrol. Corp. v. State*, 42 P.3d 531, 538 (Alaska 2002).

There is no basis for Defendants' contention that Corporation Counsel has given over his authority to Outside Counsel. The City yielded no authority to Outside Counsel to conduct an investigation without the City's direction or approval. The Agreement demonstrates that the City retained full control over the investigation and litigation and Outside Counsel was engaged in a subordinate role, assisting the City's own lawyers in this resource-intensive matter. Defendants offer no facts to the contrary—and there are none to be found.

2. *The City's Investigation Was Not Unfair to Defendants*

Defendants fail to cite the decisions of nearly a dozen courts that have determined that hiring outside counsel on a contingency fee basis to assist government enforcement actions is constitutionally sound when government lawyers retain control over the case. Moreover, Defendants fail to address that they had an opportunity under the City's false claims ordinance to contest the City's pre-litigation subpoenas before a state court judge.[7]

a. The use of outside contingent fee counsel does not violate due process if government lawyers retain control over all key aspects of the case

From the tobacco litigation in the late 1990s to recent pharmaceutical cases, government enforcement authorities have hired outside contingent fee counsel in complex matters to steward

---

great powers by implication the legislature also gave authority and right to obtain legal advice necessary for the proper use and preservation of the same." *Id.* at 396.

[7] Defendants raise questions about Outside Counsel's representation of other government entities in a similar suit. These issues are irrelevant to Defendants' arguments, and the City will not address them except to clearly assert that there has been no improper collaboration with those other entities.

limited public resources and to level the playing field against well-resourced adversaries like

Defendants.[8]  Numerous courts have considered whether these arrangements implicate due

process and virtually every one of them has concluded that they are permissible.

This principle was most thoroughly expressed in *County of Santa Clara v. Superior Court*

*(Atlantic Richfield Co.)*, 235 P.3d 21 (Cal. 2010).  Numerous California public entities hired

outside counsel on a contingent fee basis to pursue a public nuisance action against

manufacturers of lead paint.  *Id*. at 25.  Ruling on the paint companies' due process challenge,

the Court concluded:

> Private counsel serving in a subordinate role do not supplant a
> public entity's government attorneys, who have no personal or
> pecuniary interest in a case and therefore remain free of a conflict
> of interest that might require disqualification.  Accordingly, in a
> case in which private counsel are subject to the supervision and
> control of government attorneys . . . the prosecution may proceed
> with the assistance of private counsel, *even though the latter have
> a pecuniary interest in the case*.

*Id*. at 36-37 (emphasis added).  The Court held that contingent fee agreements could be

permissible if they provide "(1) that the public-entity attorneys will retain complete control over

the course and conduct of the case; (2) that government attorneys retain a veto power over any

decisions made by outside counsel; and (3) that a government attorney with supervisory

---

[8]  As the Attorney General of Maryland explained with respect to tobacco litigation, it would have been "prohibitively expensive for the State to finance a lawsuit seeking billions of dollars from unusually wealthy and powerful opponents."  *Philip Morris Inc. v. Glendening*, 349 Md. 660, 676 (Md. 1998) (internal quotations omitted).  In *People v. Philip Morris Inc.*, 198 Ill. 2d 87 (2001), the Illinois Supreme Court explained that "the whole point of contingent fee agreements is to remove from the client's shoulders the risk of being out-of-pocket for attorney fees . . ."  *Id*. at 99.  *See also* David B. Wilkins, *Rethinking the Public-Private Distinction in Legal Ethics:  The case of 'substitute' attorneys general*, 2010 Mich. St. L. Rev. 423, 433 (Summer 2010) ("In an age of dwindling state budgets, it is likely . . . that there will be 'industries that will not be taken on, there are cases that will not be brought, unless we allow contingency fees.'").  Professor Wilkins's article specifically notes as a model Cohen Milstein's work for government entities.

authority must be personally involved in overseeing the litigation." *Id.* at 40. All of these requirements have been met in this case, and Defendants have not argued otherwise.

Courts across the country have considered the same question and reached the same conclusion.[9] *See State v. Lead Indus. Ass'n*, 951 A.2d 428, 476 (R.I. 2008) (attorney general empowered to retain outside counsel when they serve in a "subordinate role"); *Glendening*, 709 A.2d at 1243 (no due process concern where the attorney general retains "the authority to control all aspects of [outside counsel's] handling of the litigation"); *Merck Sharp & Dohme Corp. v. Conway,* 861 F. Supp. 2d 802, 815 (E.D. Ky. 2012) (no due process concern with outside counsel "so long as [the attorney general] retains . . . control over all critical decision-making"); *Nibert*, 744 S.E.2d at 638 (contingent fee counsel permissible where "the Attorney General retained the authority to decide strategy and tactics"); *Commw. v. Janssen Pharm., Inc.*, 8. A.3d 267, 277-78 (Pa. 2010) (rejecting defendant's challenge to contingent fee outside counsel).[10]

---

[9] Janssen was involved in one of the cases Defendants fail to cite. In its challenge to the Governor's use of contingent fee counsel, the Pennsylvania Supreme Court found that Janssen lacked standing to complain that retention of outside counsel violates its due process rights: "it is difficult to see how a party-opponent in active litigation with the Commonwealth could be said to have a substantial, direct and immediate interest in the authority or identity of the legal representation the Commonwealth has chosen." *Janssen Pharm.*, 8 A.3d at 277.

[10] *See also Pickering v. Hood*, 95 So. 3d 611, 616 (Miss. 2012) (Mississippi Attorney General has authority to enter into contingency fee agreements); *State v. Hagerty*, 580 N.W.2d 139 (N.D. 1998) (Attorney General may retain outside contingent fee counsel); *Philip Morris Inc. v. Graham*, No. 960904948 CV, slip op. (Utah Dist. Ct. Feb. 13, 1997) (approving Attorney General's retention of contingency fee outside counsel), attached as Ex. C; *State v. Eli Lilly & Co.*, No. 2007-CP-42-1855, 2009 WL 6058383 (S.C. Ct. Com. Pl. Sept. 22, 2009) (hiring contingent fee lawyers does not violate defendant's due process); *see also Philip Morris, Inc.*, 198 Ill. 2d at 87. The same reasoning has been applied to uphold cities' hiring of outside counsel. *See City of Grass Valley v. Newmont Mining Corp.*, No. 2:04-cv-00149-GEB-DAD, 2007 WL 4166238 (E.D. Cal. Nov. 20, 2007); *see also Sherwin-Williams Co. v. City of Columbus*, No. C2–06–829, 2007 WL 2079774 (S.D. Ohio July 18, 2007). In fact, the only contrary authority of which the City is aware is *Meredith v. Ieyoub,* 700 So. 2d 478 (La. 1997), in which the Court prohibited contingent fee outside counsel on grounds that underlying statute directed the use of recovered funds and prevented the payment of a contingent fee, not because of due process concerns.

Each of these cases involved a government entity hiring outside counsel to assist in exercising its police (and not proprietary) functions.

Defendants rely instead on *People ex. rel. Clancy v. Superior Court*, 705 P.2d 347 (Cal. 1985), which was distinguished in relevant part by *Santa Clara*. *See Santa Clara*, 235 P.3d at 31-35. *Clancy* involved a "quasi-criminal" penalty—an injunction shutting down the defendant's adult bookstore. Here, the City only seeks an injunction limiting the *manner* in which Defendants market their drugs, not preventing them from marketing drugs entirely.[11] Also, in *Clancy*, "[t]he history of [the town's] efforts to shut down the bookstore revealed a profound imbalance between the institutional power and resources of the government and the limited means and influence of the defendants." *Santa Clara*, 235 P.3d at 32. In contrast, in *Santa Clara*, "[t]here [was] no indication that the contingent-fee arrangements . . . have created a danger of governmental overreaching or economic coercion" because "[d]efendants are large corporations with access to abundant money and legal resources." *Id*. at 34. Defendants in this litigation are multi-billion dollar drug companies with ample and prolific legal representation; the imbalance of power that drove *Clancy* is simply not present. Finally, the *Santa Clara* Court pointed out that city lawyers had no control over the prosecution in *Clancy*. In this case, the Agreement gives Corporation Counsel the "power to control and supervise the litigation." *See Santa Clara*, 235 P.3d at 36. The City makes all "key decisions," including the decision whether to sue, who to sue, what relief to seek, and how and on what terms to conclude the case. Agreement ¶ 11.

---

[11] The fact that civil penalties are at issue does not transform the case into a quasi-criminal one either. *Scott v. Ass'n for Childbirth at Home, Int'l*, 88 Ill.2d 279, 288 (1981) (noting that the Illinois Consumer Fraud and Deceptive Business Practices Act "is clearly within the class of remedial statutes" and "[t]he fact that a civil penalty . . . can be imposed does not make [it] a penal statute").

b.   Contingent fee arrangements pertaining to investigations are less—
not more—likely than litigation to implicate due process

Defendants seek to sidestep this precedent by asserting that the use of outside counsel in

an investigation involving the issuance of subpoenas is different—and more dangerous—than in

litigation.  However, the City found no authority—and Defendants cite none—restricting a

government entity's ability to use outside counsel in an investigation, with or without subpoenas.

Instead, courts have expressly permitted use of outside counsel in investigations.  *See Pursue*

*Energy Corp. v. Miss. State Tax Comm'n,* 816 So. 2d 385, 389 (Miss. 2002) (state attorney

general can retain outside counsel to assist in civil investigation, including requesting documents

from investigated entities); *Tesoro*, 42 P. 3d at 538 (Alaska attorney general empowered to use

outside counsel in an investigation). *See also Merck Sharp & Dohme Corp. v. Conway*, 947 F.

Supp. 2d 733, 736 (E.D. Ky. 2013) (contingent fee counsel retained to "[a]ssum[e the] lead role

*in investigating* and, if warranted, preparing litigation against Merck & Co. Inc. . . . ") (emphasis

added); *Eli Lilly*, 2009 WL 6058383, at *1 (denying motion to disqualify outside counsel that

had "pursued the investigation and prosecution of civil litigation").

From a due process perspective, Defendants' focus on the use of Outside Counsel in the

City's investigation harms, rather than helps, their argument as parties have fewer due process

rights in an investigation.  In *Hannah v. Larche*, 363 U.S. 420 (1960), the Supreme Court noted:

> [T]he requirements of due process frequently vary with the type of
> proceeding involved . . . . [An investigation] does not adjudicate.
> It does not hold trials or determine anyone's civil or criminal
> liability.  It does not issue orders.  Nor does it indict, punish, or
> impose any legal sanctions.  It does not make determinations
> depriving anyone of his life, liberty, or property.

*Id.* at 440-41.  An investigation alone is powerless; a judicial or administrative proceeding is

needed to affect a defendant's legal rights and heightened due process protections exist in those

tribunals. *See also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) ("[t]he Due Process

Clause is not implicated . . . because an administrative investigation adjudicates no legal rights");

*Aponte v. Calderón*, 284 F.3d 184, 193 (1st Cir. 2002) ("it is clear that investigations conducted

by administrative agencies . . . do not trigger due process rights"); *Fitzgerald v. Hampton*, 467

F.2d 755, 765 (D.C. Cir. 1972) ("the Supreme Court's decisions have consistently distinguished

the due process requirements in administrative proceedings of a quasijudicial character from the

due process requirements in proceedings which are purely investigative and fact-finding").[12]

   Defendants rely on two cases to make their argument, but neither is on point. In *Appeal*

*Board of the Department of Environmental Control v. United States Steel Corp.*, 48 Ill. 2d 575,

578-79 (1971), the Court held that the Appeal Board of the Department of Environmental

Control of the City of Chicago could not issue subpoenas unless the power to do so was

expressly granted by the legislature. [13] *Id.* In *Cudahy Packing Co. of Louisiana v. Holland*, 315

U.S. 357 (1942), the Supreme Court held that the Administrator of the Wage and Hour Division

of the Department of Labor could not delegate subpoena power because Congress specifically

vested subpoena power in the Administrator, separate and apart from a broader delegation of

investigatory powers, and relevant legislative history indicated that the power to delegate the

Administrator's subpoena power was eliminated in conference. *See id.* at 359-60. Unlike the

---

[12] Further, Defendants' due process interests have been sufficiently protected in this matter because—whether Defendants elected to exercise their rights or not—the enforcement of the City's subpoenas is subject to judicial supervision. MCC §§ 1-22-050(j)(1), (j)(4) (requiring corporation counsel to obtain a court order if voluntary compliance is refused). The false claims ordinance also contains its own safeguards, permitting a party receiving a subpoena to petition the Court to modify it or set it aside. MCC § 1-22-050(j)(2). Thus, "[t]he safeguard against abuse or excessive zeal . . . is provided in the case of an administrative investigation by judicial review in the enforcement proceeding." *Scott*, 88 Ill. 2d at 300.

[13] *U.S. Steel Corp.* dealt with ordinances that predated the 1970 Illinois Constitutional amendment that granted home rule authority to Chicago (and other municipalities over 500,000 people) and thus does not restrict the City's authority to issue subpoenas pursuant to the Chicago false claims ordinance.

Page 13

law at issue in *Cudahy*, the MCC gives Corporation Counsel broad authority to conduct

discovery via subpoenas.  MCC § 1-22-050; *see also Scott*, 88 Ill. 2d at 299 (subpoena properly

signed by assistant even though consumer protection statute does not expressly authorize

Attorney General to delegate investigative powers).[14]

C.      Defendants Do Not Make The Showing Required To Obtain The Relief They Seek

The Court also should deny the Defendants' Motion because its request for

"miscellaneous relief" is really an attempt to obtain declaratory relief that the Agreement is null

and void.  Defendants also ask the court to invalidate the Agreement and to "preclude Cohen

Milstein from further representing the City in this or any other action asserting claims that were

or could have been asserted against the Moving Defendants in this action."  *Id*.  Thus,

Defendants seek an injunction prohibiting the City from continuing to retain Cohen Milstein

without making the required showing.  *See* Def.s' Mot. 12.  Defendants provide no reasoning

why such drastic relief is necessary, no examples in which such relief has been applied, and no

acknowledgment of the numerous court decisions establishing contingent fee relationships like

the one in this case are fully proper.

Equitable relief like that sought by Defendants is extraordinary, particularly in the

context of attorney disqualification.  As the Illinois courts have explained:

> Both Federal and state courts have viewed with disapproval a
> litigant's attempt to disqualify opposing counsel as a tactical
> weapon in litigation for fear that such action can be misused for
> purposes of harassment.  Not surprisingly, a disqualification is
> regarded as a drastic measure which courts should approach with
> continuance and grant only as a last resort.  It is also looked upon
> as a vehicle that serves to destroy the attorney-client relationship

---

[14] In *Scott*, the "subordinate" was a government employee, but nothing in the case law makes that
prerequisite to issuing subpoenas and conducting investigations on behalf of the investigating agency.

Page 14

by effectively preventing a party from freely retaining his counsel of choice.

*Hannan v.* Watt, 147 Ill. App. 3d 456, 461-62 (Ill. App. Ct. 1986) (internal citations omitted).

Defendants seek an extraordinary remedy; this Court should require them to demonstrate they deserve it. *See, e.g., Harlem Algonquin LLC v. Can. Funding Corp.* 742 F. Supp. 2d 957, 959-60 (N.D. Ill. 2010).

## IV.   CONCLUSION

For the foregoing reasons, the City respectfully requests that (1) Defendants' Motion be DENIED and (2) this Honorable Court grant such other relief as it may deem just and proper.

DATED: November 7, 2014.

Respectfully submitted,

STEPHEN R. PATTON
**Corporation Counsel, City of Chicago**

BY:        /s/  Fiona A. Burke

Attorney No. 90909
MICHAEL DOLESH (ARDC # 6183797)
FIONA A. BURKE (ARDC # 6273779)
MARY EILEEN CUNNIFF WELLS (ARDC # 6304397)
City of Chicago, Department of Law
30 N. LaSalle St., Suite 1230
Chicago, IL 60602
Michael.Dolesh@cityofchicago.org
Fiona.Burke@cityofchicago.org
MaryEileenCunniff.Wells@cityofchicago.org
Phone: (312) 744-9028

COHEN MILSTEIN SELLERS & TOLL PLLC
Linda Singer - *Admitted pro hac vice*
Jeanne A. Markey - *Admitted pro hac vice*
Joshua D. Glickman - *Admitted pro hac vice*
1100 New York Ave NW, Suite 500 East
Washington, DC 20005
lsinger@cohenmilstein.com
jmarkey@cohenmilstein.com
jglickman@cohenmilstein.com
Phone: (202) 408-4600

**EXHIBIT LIST**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR RELIEF FROM IMPROPER DELEGATION OF GOVERNMENTAL POLICE POWER TO A FINANCIALLY-INTERESTED PRIVATE PARTY**

***City of Chicago v Purdue Pharma L.P.*, *et al.*, No 14-cv-04361**


Exhibit A      Letter from Michael J. Dolesh, Senior Counsel, City of Chicago (Sept. 24, 2014)

Exhibit B      Letter from Patrick J. Fitzgerald, Purdue Counsel (Sept. 25, 2014)

Exhibit C      *Philip Morris Inc. v. Graham*, No. 960904948 CV, slip op. (Utah Dist. Ct. Feb. 13, 1997)

## CERTIFICATE OF SERVICE

I, Fiona A. Burke, an attorney, certify that on this 7th day of November, 2014, I electronically filed the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR RELIEF FROM IMPROPER DELEGATION OF GOVERNMENTAL POLICE POWER TO A FINANCIALLY-INTERESTED PRIVATE PARTY** with the Clerk of the Court using the CM/ECF system, which thereby electronically served all counsel of record.

I further certify that I caused to be served the following Defendants by e-mail on their counsel as follows:

| | |
|---|---|
| • ENDO PHARMACEUTICALS, INC. | Joshua M. Davis<br>Arnold & Porter LLP<br>555 Twelfth Street, NW<br>Washington, DC 20004-1206<br>Email: joshua.davis@aporter.com |
| • TEVA PHARMACEUTICALS USA, INC. | Tinos Diamantatos<br>Morgan, Lewis & Bockius LLP<br>77 West Wacker Drive<br>Chicago, IL 60601<br>Email: tdiamantatos@morganlewis.com |
| • ACTAVIS, INC.<br>• WATSON LABORATORIES, INC.<br>• WATSON, PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.<br>• ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.<br>• ACTAVIS LLC | James W. Matthews<br>K&l Gates LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA 02111<br>Email: james.matthews@klgates.com |
| • JANSSEN PHARMACEUTICALS, INC.<br>• JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC. | Carolyn June Kubota<br>O'Melveny & Myers LLP<br>400 S. Hope Street, Suite 1601<br>Los Angeles, CA 90071<br>Email: ckubota@omm.com |

/s/ Fiona A. Burke

Fiona A. Burke