IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS, INC.; AND ACTAVIS PLC,<br><br>    Defendants. | Case No. 14-cv-04361<br><br>Honorable Elaine E. Bucklo |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION
FOR RELIEF FROM IMPROPER DELEGATION OF GOVERNMENTAL POLICE
POWER TO A FINANCIALLY-INTERESTED PRIVATE PARTY**

    Defendants Cephalon, Inc., Endo Health Solutions Inc., Janssen Pharmaceuticals, Inc., Johnson & Johnson, Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company, Inc. (collectively, the "Moving Defendants") submit this Reply Memorandum in Support of their Joint Motion For Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party.

**INTRODUCTION**

    The City of Chicago ("City") spends most of its Opposition ("Opp.") refuting an argument Defendants do not make—that governments may never engage outside contingency counsel. Tellingly, the City says little about Defendants' central argument—that the City unlawfully delegated its investigative police powers, including its authority to issue investigative subpoenas, to private attorneys who would only be paid if the case was charged. The Court should not be misled by the City's misdirection. This motion presents the question whether

1

public officials may lawfully delegate their *investigative police powers* to outside contingency counsel, creating, in effect, contingent-fee investigators. Here, the City placed its subpoena power at the disposal of outside counsel engaged in a national campaign, for their own profit, to instigate state and local governments to bring sweeping and novel claims against manufacturers of opioid pain relievers. Under the authorities discussed in Defendants' opening memorandum ("Mem."), that delegation of police power was improper and unprecedented. The City cites no contrary authority.

## ARGUMENT

**I.      The Delegation of Investigative Authority to Cohen Milstein Was Improper.**

The City asks the Court to find in MCC § 1-22-050(a) an implied authorization for corporation counsel to delegate its subpoena power to anyone it wishes. (Opp. 7.) But the statutory language is unambiguous: subpoena power is granted *only* to corporation counsel:

> Whenever the **corporation counsel** has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to an investigation, the **corporation counsel** may, before commencing a civil proceeding under this chapter, issue in writing and cause to be served upon such person, a subpoena…

Nothing in the statute authorizes, or even supports, delegation of subpoena power to outside counsel and the court must abide by the plain language of the statute. *See People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003) (courts should not depart from the plain language of a statute by reading into it exceptions, limitations or conditions).

The City nevertheless asserts that the Court can and should infer corporation counsel's authority to delegate his subpoena power from other provisions of the Chicago False Claims Act. The City relies on corporation counsel's broad investigatory powers under the statute and subsection (i)'s provision authorizing corporation counsel to share the fruits of a subpoena with third parties "as determined necessary…for effective enforcement of the laws of this city…" (Opp. 7.) But the Supreme Court has definitively rejected this line of argument. In *Cudahy Packing Co. of Louisiana v. Holland*, 315 U.S. 357 (1942) (discussed at Mem. 7), the Court held that because the subpoena power is a forceful weapon in law enforcement's arsenal, compulsory

2

in nature and subject to oppressive use, it "shall be delegable only when an authority to delegate is *expressly* granted." *Id.* at 366 (emphasis added).

The statute at issue in *Cudahy* granted authority to delegate other aspects of the investigative power, similar to subsection (i)'s authorization to share a subpoena's fruits. *Id*. at 359 (noting express statutory authorization to delegate power to inspect facilities). Far from concluding that these provisions manifested an intent to allow delegation of the subpoena power, the Court held the opposite: "the grant of authority to delegate the power of inspection, and the omission of authority to delegate the subpoena power, show a legislative intention to withhold the latter." *Id*. at 364. The Court also held that if authority to delegate the subpoena power were simply implied, it would render the narrow terms of the express grant of subpoena power "superfluous." *Id*.

The same reasoning applies here. If the City Council intended to authorize corporation counsel to delegate his subpoena power under the Chicago False Claims Act, it could easily have substituted the phrase "corporation counsel or his duly appointed delegate," or something similar, in subsection (a). Contrary to the City's argument, authorization to share the fruits of a subpoena with others does not connote authorization to delegate subpoena power. They are different things entirely. One permits corporation counsel to share documents and information he has already gathered in the exercise of his express statutory authority. The other would allow outside counsel to probe citizens' affairs through exercise of the subpoena power, backed by the coercive power of the state.

The City's only case citation on this point, *Tesoro Petroleum Corp. v. State*, 42 P.3d 531 (Alaska 2002) (cited at Opp. 8), is inapposite. *Tesoro* involved an investigation under Alaska's consumer protection statute. Like the Chicago False Claims Act, the Alaska statute had one provision authorizing the Alaska Attorney General to issue civil investigative demands (CIDs) and another specifying who could inspect or copy materials the attorney general obtained. *See id.* at 536; AS 45.50.592(a) & (e). The attorney general issued the CID himself, so the Alaska court had no occasion to consider whether he could have permissibly delegated that authority.

3

Rather, the court addressed only the narrow question of whether the statute authorized post-production disclosure to outside counsel. *Id.* The *Tesoro* court's holding therefore has no bearing on the issue here. In fact, under the reasoning of *Cudahy*, Alaska's grant of authority to share materials after production and the omission of authority to delegate the CID or subpoena power shows only "a legislative intention to *withhold* the latter." 315 U.S. at 364 (emphasis added).

Illinois law, like the federal law at issue in *Cudahy*, allows public officials to issue investigative subpoenas only under express legislative authorization. (*See* Mem. 7.) The City cites *no* Illinois or other authority supporting "implied" authorization to delegate subpoena power to outside counsel. Nor does the City cite any authority for the proposition that, by reserving for themselves the decision whether to proceed with litigation, public officials can somehow sanitize or cure an unauthorized delegation of subpoena power.[1] There is no such authority (*id.* 10-11), and that conclusion would ignore Cohen Milstein's role in the investigation. The City's contingent fee agreement expressly delegated to Cohen Milstein both the authority to "carry[] out the investigation" and to make the "day-to-day decisions regarding court filings, subpoenae [sic] and investigative demands …." (Letter to Linda Singer from Stephen R. Patton ("Contingent Fee Agreement") at ¶11, attached as Ex. 5 to the Declaration of Scott D. Stein, ECF No. 151-5.) At the same time, Cohen Milstein would be paid only if its investigation persuaded the City to litigate. Those terms gave Cohen Milstein a powerful incentive to use its day-to-day control of the investigation to steer the matter to litigation by assembling a factual record skewed towards that result. (Mem. 10-11.)

The events here show that contingent fee counsel has, in fact, steered the investigation

---

[1] As explained in the opening brief, the City's decision whether to proceed depended on the results of the investigation it delegated to Cohen Milstein. (Mem. 11.) It is immaterial that the City subsequently issued duplicate subpoenas signed by Michael Dolesh, Senior Counsel for the City. (*See* Opp. 3.) The revised subpoena merely repeated the requests originally propounded by Cohen Milstein and continued to require Defendants to produce documents directly to that firm. The City's suggestion that an after-the-fact change of signatories could resolve the delegation issue transparently elevates form over substance.

4

and the resulting litigation. After Defendants objected to the City's improper delegation of subpoena power, the City gave assurances that before filing suit it would afford Defendants an opportunity to present their case against litigation. (Mem. 5.) In reliance on those assurances, several Defendants began voluntarily complying with the subpoenas (after fully reserving their rights to challenge the unlawful delegation).[2] (*Id.*) But less than two weeks after Cohen Milstein filed a substantively identical lawsuit in California, this time acting on behalf of Orange and Santa Clara Counties, the City abruptly filed this action, reneging on its prior assurances and curtailing Defendants' voluntary document productions. (*Id.* 6.) Cohen Milstein has also made no secret of its continuing efforts to shop the same claims alleged here to state and local governments nationally.[3] These events provide substantial evidence that the law firm, not the City, is driving the litigation agenda.

## II.  MCC § 2-156-030(a) Provides an Additional and Alternate Basis for the Relief Sought.

The City's improper delegation of its subpoena power would require invalidation of the retainer agreement even if the agreement did not also violate the City's Governmental Ethics Ordinance. *See* MCC § 2-156-030(a). But the agreement plainly does violate that prohibition. Despite the City's protestations, this provides a second, independent reason why the agreement is invalid.

The City's contrary argument relies primarily on an *ex parte* advisory opinion from its own Board of Ethics, sought and obtained after the City filed its complaint. The opinion asserts

---

[2] In the Opposition, the City suggests that Defendants should have litigated the delegation issue in state court. (Opp. n. 12.) This would have made little sense given that the City withdrew the subpoena as to Purdue and had promised the other Defendants the opportunity to dissuade the City from filing suit at the conclusion of their productions. (*See* Mem. 5.) Moreover, Defendants expressly reserved the right to challenge the delegation later, if the City brought suit.

[3] *See* John Schwartz, *Chicago and 2 California Counties Sue Over Marketing of Painkillers*, N.Y. TIMES (Aug. 25, 2014) (noting that "the private law firms that have filed the opioid suits, including the public-interest firm Cohen Milstein Sellers & Toll, have encouraged governments to join their fight"), http://www.nytimes.com/2014/08/25/us/chicago-and-2-california-counties-sue-drug-companies-over-painkiller-marketing.html?_r=0.

5

that outside counsel is an independent contractor and therefore not an "official or an employee" of the City for purposes of the Governmental Ethics Ordinance. (Opp. Ex. A.) But the opinion gives no indication that the Board ever considered, or was even asked, the questions presented by this motion—whether the delegation of subpoena power was lawful and whether outside counsel appointed as "Special Assistant Corporate Counsel" with express authority to exercise the City's investigative police powers must be subject to the conflict of interest provision. Rather, the opinion's analysis amounts to little more than an inquiry as to whether the lawyer is on the City's regular payroll.

The Board's opinion is not entitled to judicial deference. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (interpretations in opinion letters not entitled to *Chevron*-style deference because they are not arrived at after formal adjudication or notice-and-comment rulemaking). The Court should reject the argument that the advisory opinion controls here, and look instead to the compelling anti-corruption policy behind the conflict of interest prohibition and the reality of Cohen Milstein's duties.

Those considerations lead to the conclusion that, as "Special Assistant Corporate Counsel" vested with authority to exercise the City's investigatory police power, Cohen Milstein is a City "official" for purposes of the conflict of interest provision. The Chicago Municipal Code definition of an official is broad: "any person holding any elected office of the city or *any appointed, non-employee member* of any city agency." MCC § 2-156-010(q) (emphasis added).[4]

---

[4] The MCC definition of "official" is much broader than the definition of "employee" at issue in *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625 (W. Va. 2013) (cited at Opp. 6). By its terms, the West Virginia Governmental Ethics Act would apply to special assistant attorney generals only if they qualified as "employees," defined as "any person in the service of another under any contract of hire…where the employer or an agent of the employer has the right or power to control and direct such person in the material details of how work is to be performed and who is not responsible for the making of policy nor for recommending official action." W. Va. Code § 6B-1-3(d). Because West Virginia precedent held that "contract of hire" means "an agreement in which a person provides labor or personal services to a government entity for wages or a salary," and because other statutory provisions made clear that employees had to accrue paid vacation or compensatory time, the Court found that contingent fee counsel were not "employees." *Id.* at 633-634. Compare *Tesoro*, 42 P.3d at 538 (holding that outside counsel

Corporation counsel Stephen Patton is undisputedly an official; his office is created under MCC § 2-60-020. As head of the Department of Law he has express authority to "appoint and remove all subordinate officers and employees of his department." MCC § 2-152-040. He appointed Cohen Milstein as "Special Assistant Corporation Counsel" and vested them with authority to exercise his office's subpoena power and day-to-day responsibility for the investigation. It follows that those lawyers fall under MCC § 2-156-010(q) and, by extension, § 2-156-030(a).

The result is the same under Illinois case law. None of the cases cited by the City specifically interprets the term "official" as defined in the MCC.[5] But as the City grudgingly concedes (Opp. 5), Illinois courts generally take a functional approach, employing a loose, multi-factor test to determine whether a position is an office. *See Midwest Television*, 37 Ill. App. 3d at 932. That approach fully supports Defendants' position here. In *Wargo*, for example, the Court approvingly quoted the proposition that "an official is distinguished from an employee both by his exercise of some portion of a sovereign power and by the importance, dignity, and independence of his position." 58 Ill. 2d at 236 (*quoting* 1A Larson, Workmen's Compensation Law, sec. 56.20). Cohen Milstein easily satisfies this test. Similarly, Cohen Milstein has several of the characteristics enumerated in *Midwest Television*: the Special Assistant Corporation Counsel "exercise[s] some portion of the sovereign power," would be liable for "misfeasance or nonfeasance," and "has an independence beyond that of employees." 37 Ill. App. 3d. at 931.

Further, because Cohen Milstein was engaged to exercise powers ordinarily reserved for a City "official," they should be subject to the same ethical constraints regardless of whether the position of Special Assistant Corporation Counsel falls within MCC's definition of that term. As

---

could review documents produced in response to attorney general's CID because they were "authorized employee[s] of the state").

[5] *Midwest Television, Inc. v. Champaign-Urbana Comm'n*, 37 Ill. App. 3d 926, 931 (4th Dist. 1976), interprets the Public Officer Prohibited Activities Act, now codified at 50 ILCS 105/3. *PawChak v. Long*, 91 Ill. App. 2d 218, 220 (3d Dist. 1968), interprets a provision of the Illinois Municipal Code now codified at 65 ILCS 5/3.1-55-10. And *Wargo v. Indus. Commission*, 58 Ill. 2d 234, 236 (Ill. 1974), interprets the Workmen's Compensation Act, now codified at 820 ILCS 305, *et seq.*

the court in *Merck Sharp & Dohme Corp. v. Conway*, 861 F. Supp. 2d 802 (E.D. Ky. 2012) stated, "the standard of neutrality required for state-employed prosecutors also extends to private counsel that performs a prosecutorial function. . . . . The responsibility follows the job." *Id.* at 813; *see also Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787, 804 (1987) ("A private attorney appointed to prosecute a criminal contempt should be as disinterested as a public prosecutor who undertakes such a prosecution"). Like the acts of the assistant state attorneys in *Office of Cook Cnty. State's Attorney v. Illinois Local Labor Rel. Bd.*, Cohen Milstein's acts must "be regarded as if done by [corporation counsel] himself." 166 Ill. 2d 296, 303 (1995); *see also People ex rel. Landers v. Toledo*, 267 Ill. 142, 146 (1915). Commentators agree: "[a]ny other conclusion would allow government to circumvent the political and constitutional limits on its authority simply by authorizing previously private actors to exercise public powers." Martin H. Redish, *Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications*, 18 SUP. CT. ECON. REV. 77, 95 (2010); Restatement (Third) of the Law Governing Lawyers § 97, cmt. i (2000).[6]

Here, the City delegated to Cohen Milstein law enforcement powers usually exercised by full-time members of the Law Department subject to the City's conflict of interest provisions and ethical constraints. (Contingent Fee Agreement ¶11). If Cohen Milstein is not equally bound by those ethical provisions, it would defeat the purpose of having them. Indeed, that result would permit corporation counsel not only to extend the subpoena power beyond the statutory authorization, but to escape the constraints of the Governmental Ethics Ordinance by doing so.

---

[6] The City dismisses this concern by arguing that outside counsel are supervised by City lawyers who are subject to the Governmental Ethics Ordinance. (Opp. n. 4.) But this is insufficient under the plain language of the Ordinance. The conflict of interest provision does not merely prohibit a financially interested person from making an unsupervised decision. It broadly prohibits financially interested persons from "mak[ing], *participat[ing]in making or in any way us[ing] his position to attempt to influence* any City governmental decision or action." MCC § 2-156-030(a) (emphasis added). Even if the City supervised Cohen Milstein as it claims, there is no doubt that Cohen Milstein participated in and influenced the City's decisions.

### III. The City's Other Arguments and Cases Are Inapposite.

The City heavily relies on cases in which courts have upheld, in appropriate circumstances and with appropriate conditions, contingency fee arrangements between public entities and outside counsel assisting in civil enforcement actions. *See County of Santa Clara v. Superior Ct.*, 50 Cal. 4th 35, 64 (2010), *Philip Morris, Inc. v. Glendening*, 349 Md. 660, 676 (Md. 1998), *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 91 (2001), *State v. Lead Indus. Ass'n*, 951 A.2d 428, 476 (R.I. 2008), and *State v. Hagerty*, 580 N.W. 2d 139, 147 (N.D. 1998). But in all of those cases the government retained outside counsel *after* it decided to bring the case. None approved a purported delegation of investigative subpoena power, and thus none addressed the problem here of financial incentives tainting the investigation and predetermining its outcome.[7]

In fact, there is strong reason to doubt that the contingency arrangement here would pass muster under these cases even if it were limited to assisting in litigation. In *County of Santa Clara*, the City's lead case, the Court emphasized that Santa Clara County's action for remediation of lead paint did not seek to enjoin ongoing business activity, did not involve conduct potentially chargeable as a criminal or quasi-criminal violation, and did not implicate potential rights under the First Amendment. *See* 50 Cal. 4th at 55. On that basis, the Court distinguished a prior case in which it had held unlawful a contingency arrangement to prosecute a public enforcement action. *Id*. The exact opposite is true of the City's far reaching claims here: the City's complaint seeks to enjoin ongoing business activity, asserts claims of fraudulent and other illegal activity that could give rise to criminal or quasi-criminal liability, and challenges both commercial and non-commercial speech about opioids. But that is not the argument Defendants advance in this motion, and the court therefore need not decide it. As the

---

[7] The City also incorrectly cites two cases in which the courts did not reach the validity of the contingency fee agreement, ruling instead that the defendant lacked standing to challenge the agreement under the particular statutes in issue. *See Commw. v. Janssen Pharmaceutica, Inc.*, 8 A.3d 267, 277-78 (Pa. 2010); *Philip Morris, Inc. v. Graham*, No. 960904948 CV, Slip. Op. at 2 (Utah Dist. Ct. Feb. 13, 1997).

9

City well knows but seeks to obfuscate, this motion is directed only to the City's unlawful delegation of investigative police power under Illinois law.

Tacitly recognizing that the cited decisions do not address Defendants' argument, the City misleadingly points to four additional cases—*Pursue Energy Corp. v. Mississippi State Tax Commission*, 816 So. 2d 385 (Miss. 2002), *Tesoro*, 42 P.3d 531 (Alaska 2002), *Merck Sharp & Dohme Corp. v. Conway*, 947 F. Supp. 2d 733 (E.D. Ky. 2013), and *State v. Eli Lilly & Co.*, No. 2007-CP-42-1855, 2009 WL 6058383 (S.C. Ct. Com. Pl. Sept. 22, 2009)—for the proposition that "courts have expressly permitted use of outside counsel in investigations." (Opp. 12.) None of those cases addressed, let alone upheld, an attempted delegation of investigative subpoena power.

As already discussed, in *Tesoro* the attorney general issued a CID as authorized by statute and the Court considered only whether the statute also authorized him to share the collected documents with outside counsel. 42 P.3d at 536. The decision does not indicate that outside counsel had any role in drafting or otherwise shaping the CID, nor is it clear whether outside counsel was engaged on a contingency basis. *Id.* at 534. In *Merck*, the Kentucky attorney general sued Merck for alleged false advertising and retained outside contingency counsel to assist in the matter "*[a]pproximately one year into the action*" 947 F. Supp. 2d at 735 (emphasis added). The case does not address any attempted delegation of investigative subpoena power. Likewise, in *Eli Lilly*, although it appears that contingency fee counsel was retained before suit was filed, Eli Lilly did not become aware of that fact until served with the complaint. 2009 WL 6058383, at *2. The Court may therefore fairly infer that private counsel did not subpoena Eli Lilly during the pre-suit investigation.

*Pursue* likewise upheld only the validity of private contingent fee counsel sending a letter to an oil and gas company requesting documents and information, not a delegation of subpoena power. The latter "differs materially…from the power to gather data." *Cudahy*, 315 U.S. at 364. Importantly, the underlying statute was readily distinguishable from MCC § 1-22-050(a). The governing statute in *Pursue* expressly authorized employment of "special counsel in any county

10

to aid the prosecuting attorney." Miss. Code Ann. § 27-65-87. MCC § 1-22-050(a) does not include any comparable provision.

The City also argues that agreements delegating public investigative authority are less concerning than agreements to assist in public litigation because investigations are less intrusive than litigation. (Opp. 12-13.) But the *Hannah*, *Aponte*, and *Fitzgerald* cases all involved administrative or legislative fact-finding investigations, not law enforcement investigations like the one delegated to Cohen Milstein here.[8] And *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984), holds only that the SEC has no obligation to notify the target of an investigation when it issues a subpoena to a third party. The Court did not consider what constitutional issues might arise if the SEC delegated its authority to conduct investigations to outside counsel motivated by a contingency fee bounty.

As Defendants discuss in their opening brief, no citizen should be subject to a law enforcement investigation in which the investigator is financially interested in the outcome. An investigator who will be paid only if the case is litigated brings built-in bias to his or her work. Moreover, an investigator's financial interest in the outcome of a case nullifies the significance of prosecutorial discretion. A prosecutor must decide whether to pursue a case based on the body of information his or her investigator presents. By shaping the investigation, a contingent fee investigator can influence or even predetermine the outcome. (Mem. 10.) That arrangement is fundamentally at odds with basic principles of fairness and justice.

---

[8] In *Hannah v. Larche, et al.*, 363 U.S. 420 (1960), the Supreme Court considered the validity of certain rules of procedure adopted by the Congressionally created Commission on Civil Rights. Likewise, in *Aponte v. Calderon, et al.*, 284 F.3d 184 (1st Cir. 2002), the First Circuit considered the validity of internal operating rules of Puerto Rico's Independent Citizens' Commission to Evaluate Government Transactions. In both cases, the commission's role—unlike corporation counsel's role here—was merely advisory; neither could institute legal action against any of its investigative targets. *See Hannah*, 363 U.S. at 440; *Aponte*, 284 F.3d at 187. In *Fitzgerald v. Hampton*, 467 F.2d 755 (D.C. Cir. 1972), the court held that due process rights attach to reinstatement hearings before the Civil Service Commission because the Commission—like corporation counsel—"takes affirmative action which affects an individual's legal rights." 467 F.2d at 766.

**IV.     Defendants are Entitled to the Relief Sought.**

Finally, the Court should reject the City's attempts to avoid the consequences of its unlawful relationship with contingent fee counsel.  Defendants' motion does not seek a preliminary injunction.  It should not be converted into such a motion or be judged by that legal standard merely because it asks the Court for an order.  The requirements for preliminary injunctive relief have no application to this motion, which seeks relief based on legal and ethical disabilities created by the City's improper delegation of investigative police power.  Moreover, as explained in the opening brief (Mem. 12), courts have broad inherent powers to protect the orderly administration of justice by regulating the conduct of lawyers before them.  *See Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997); *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176 (1997) ("The determination of whether counsel should be disqualified is directed to the sound discretion of the trial court...").  Defendants do not lightly seek invalidation of the City's agreement with contingent fee counsel, nor do they ask the Court to lightly grant such relief.  But here that relief is necessary to "maintain[] public confidence in the legal profession and ensur[e] the integrity of judicial proceedings."  *SK Handtool Corp. v. Dresser Indus., Inc.*, 246 Ill. App. 3d 979, 989 (1st Dist. 1993).

## CONCLUSION

For the reasons set forth above and in the opening brief, the Court should grant Defendants' motion and (i) void the retention agreement between the City and Cohen Milstein; (ii) preclude the City from retaining Cohen Milstein in this or any similar action against the Moving Defendants; and (iii) grant such other relief as the Court determines is fair and just in the circumstances.

Dated:   November 21, 2014                           Respectfully submitted,

                                                     By: /s/ Carolyn J. Kubota
                                                         Carolyn J. Kubota
Michael P. Doss                                          ckubota@omm.com
mdoss@sidley.com                                         Charles C. Lifland
Scott D. Stein                                           clifland@omm.com
sstein@sidley.com

SIDLEY AUSTIN LLP                                        O'MELVENY & MYERS LLP
One South Dearborn                                       400 S. Hope Street
Chicago, IL  60603                                       Los Angeles, CA 90071
Telephone:    (312) 853-7520                             Telephone:   (213) 430-6000
Facsimile:    (312) 853-7036                             Facsimile:   (213) 430-6407

*Attorneys for Defendant Janssen*                        *Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc.; and Johnson &*                   *Pharmaceuticals, Inc. and Johnson &*
*Johnson*                                                *Johnson, Appearing Pro Hac Vice*


                                                     By:  /s/ R. Ryan Stoll
                                                         R. Ryan Stoll
                                                         ryan.stoll@skadden.com
                                                         Patrick Joseph Fitzgerald
                                                         patrick.fitzgerald@skadden.com

                                                         SKADDEN, ARPS, SLATE, MEAGHER
                                                         & FLOM LLP
                                                         155 N. Wacker Drive
                                                         Suite 2700
                                                         Chicago, IL 60606
                                                         (312) 407-0508

                                                         *Attorneys for Defendants Purdue Pharma*
                                                         *L.P., The Purdue Frederick Company,*
                                                         *Inc., and Purdue Pharma, Inc.*

By: /s/ Tinos Diamantatos
Tinos Diamantatos
tdiamantatos@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
(312) 324-1145
(312) 353-2067 (fax)

*Attorneys for Defendants Cephalon, Inc.*

By: /s/ Peter Vincent Baugher
Peter Vincent Baugher
baugher@sw.com
Kristen Elizabeth Hudson
hudson@sw.com

SCHOPF & WEISS LLP
One South Wacker Drive
28th Floor
Chicago, IL 60606
(312) 701-9300

*Attorneys for Defendant Endo Health Solutions Inc.*

Jonathan L. Stern
Jonathan.Stern@aporter.com
Joshua M. Davis
Joshua.Davis@aporter.com

ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Attorneys for Defendant Endo Health Solutions Inc., Appearing Pro Hac Vice*

14

**SIGNATURE ATTESTATION**

Pursuant to the Northern District of Illinois' General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories concur in the filing's content.

    /s/ Carolyn J. Kubota
Carolyn J. Kubota

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2014, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on November 21, 2014, at Los Angeles, California.

/s/ Carolyn J. Kubota<br>
Carolyn J. Kubota