**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CITY OF CHICAGO, a municipal corporation,

       Plaintiff,

v.

PURDUE PHARMA L.P.; PURDUE PHARMA INC.;
THE PURDUE FREDERICK COMPANY, INC.; TEVA
PHARMACEUTICAL INDUSTRIES, LTD.; TEVA
PHARMACEUTICALS USA, INC.; CEPHALON, INC.;
JOHNSON & JOHNSON; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC. n/k/a
JANSSEN PHARMACEUTICALS, INC.; JANSSEN
PHARMACEUTICA, INC. n/k/a JANSSEN
PHARMACEUTICALS, INC.; ENDO HEALTH
SOLUTIONS INC.; ENDO PHARMACEUTICALS,
INC.; ACTAVIS PLC; ACTAVIS, INC.; WATSON,
PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.;
WATSON LABORATORIES, INC.; ACTAVIS LLC;
and ACTAVIS PHARMA, INC. f/k/a WATSON
PHARMA, INC.,

       Defendants.

Case No. 14-cv-04361

Honorable Elaine E. Bucklo
U.S. District Court Judge

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS**
**ALL CLAIMS AGAINST  DEFENDANTS CEPHALON, INC., TEVA**
**PHARMACEUTICAL INDUSTRIES LTD., AND TEVA PHARMACEUTICALS USA,**
**INC. PURSUANT TO RULE 12(b)(2), RULE 12(b)(6), AND RULE 9(b)**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ................................................................................................... 3

    A.   Cephalon's Opioid Medicines.................................................................. 3

    B.   Off-Label Prescribing Is Entirely Legal And Off-Label Promotion Is Not The Same As Fraud.................................................................................. 4

    C.   The City's Claims Against The Teva Defendants ................................... 5

III.  LEGAL ARGUMENT ........................................................................................... 6

    A.   All Claims Fail Because The City Has Not Pled Any Misrepresentation Or Omission By Any Teva Defendant, Much Less Any That Satisfy Rule 9(b)........ 6

        1.   The City's Unbranded Promotion Theory Fails As A Matter Of Law ........................................................................................... 6

        2.   The City's Branded Promotion Theory Fails As A Matter Of Law .......... 8

    B.   All Claims Fail Because The City Has Not Pled Any Facts To Show That Any Teva Defendant Caused The City Any Harm ............................... 11

        1.   All Claims Fail Against The Teva Defendants For Lack of Causation................................................................................... 11

        2.   All Claims Against The Teva Defendants Fail for Lack of Injury ......... 13

    C.   The Claims Against Teva Ltd. And Teva USA Fail For Additional Reasons ................................................................................................ 15

        1.   The Amended Complaint Fails To Allege Any Misconduct By Teva Ltd. Or Teva USA................................................................ 15

        2.   Teva Ltd. Is Not Subject to the Court's Jurisdiction ............................ 16

            a.   There Is No Specific Jurisdiction................................................ 17

            b.   There Is No General Jurisdiction ................................................ 18

IV.   CONCLUSION.................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bank One, Okla., N.A. v. Trammell Crow Servs., Inc.*,
    No. 03 C 3624, 2003 WL 23019173 (N.D. Ill. Dec. 23, 2003) .................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................1, 7, 6

*Borsellino v Goldman Sachs Grp. Inc.*,
    477 F.3d 502 (7th Cir. 2007) ........................................................................................................6

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)......................................................................................................................4

*Burgess v. Abex Corp. ex rel. Pneumo Abex Corp.*,
    311 Ill. App. 3d 900 (4th Dist. 2000)...........................................................................................8

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ........................................................................................................6

*Cen. Reg'l Empl. Benefit Fund v. Cephalon, Inc.*
    No. 09-3418, 2009 WL 3245485 (D.N.J. Oct. 7, 2009) ...........................................................2, 9

*Cen. Reg'l Empl. Benefit Fund v. Cephalon, Inc.*
    No. 13-7167, 2010 WL 1257790 (D.N.J. March 29, 2010)............................................2, 12, 13

*Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) ......................................................................................................17

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2013)............................................................................................................16, 18

*District 1199P Health & Welfare Plan v. Janssen, L.P*,
    No. 06-3044, 2008 WL 5413105 (D.N.J. Dec. 23, 2008)...........................................................13

*Goodyear Dunlop Tires Ops. S.A. v. Brown*,
    131 S. Ct. 2846 (2011)..........................................................................................................16, 18

*In re Actimmune Mktg. Litig.*,
    614 F. Supp. 2d 1037 (N.D. Cal. 2009) ........................................................................................5

*In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab.*,
    MDL No. 01699, 2012 WL 3154957 (N.D. Cal. Aug. 2, 2012)..................................................12

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2011)............................................................................................13

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774, 2009 WL 2043604 (D.N.J. July 10, 2009) ................................5, 8

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774, 2010 WL 2346624 (D.N.J. June 9, 2010).................................13

*In re Yasmin & Yaz Mktg., Sales Practices & Prods. Liab. Litig.*,
MDL No. 2100, 2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) .................................12

*Indiana/Kentucky/Ohio/Regional Council of Carpenters Welfare Fund* v. *Cephalon, Inc.*
No. 09-3418, 2014 WL 2115498 (E.D. Pa. May 21, 2014)............................*passim*

*Ironworkers Local Union 68 And Participating Employers Health And Welfare Funds v. AstraZeneca Pharm. LP*,
634 F.3d 1352 (11th Cir. 2011) .........................................................................13

*Kolcraft Enterprises, Inc. v. Artsana USA, Inc.*,
No. 13 C 4863, 2014 WL 3865814 (N.D. Ill. Aug. 6, 2014)................................18

*Levin v. Posen Found.*,
No. 13-8102, 2014 WL 3749189 (N.D. Ill. July 29, 2014) ....................................3

*McClure v. Owens Corning Fiberglas Corp.*,
188 Ill. 2d 102 (1999) ...........................................................................................7

*Moore v. Boating Indus. Assoc.*,
819 F.2d 693 (7th Cir. 1987) ................................................................................7

*Northern Grain Mktg., LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014) ..........................................................................16, 17

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ..........................................................................16, 17

*Redelmann v. Claire Sprayway, Inc.*,
375 Ill. App. 3d 912 (1st Dist. 2007) ...................................................................7

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) ..............................................................................17

*Travelers Indemnity Company v. Cephalon, Inc.*
("*Travelers*"), No. 12-4191, 2014 WL 3408550 (E.D. Pa. July 14, 2014) ....................*passim*

iii

*United Food & Commercial Workers Cent. Pa. & Reg. Health & Welfare Fund v.*
  *Amgen, Inc.*,
  400 Fed. Appx. 255 (9th Cir. 2010) ........................................................................8

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ...............................................................................................15

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) .............................................................................................16

*Wright v. Associated Ins. Cos.*,
  29 F.3d 1244 (7th Cir. 1994) ..................................................................................4

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 9(b) ........................................................................................................... *passim*

## I.    <u>INTRODUCTION</u>

The City's Amended Complaint attempts to use length to camouflage the absence of relevant details of actual fraud against the City.  All Defendants have filed a joint motion to dismiss (the "Joint Motion").  In addition, Defendants Teva Pharmaceuticals USA, Inc. ("Teva USA"), Cephalon, Inc. ("Cephalon"), and their parent entity, Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") (collectively, the "Teva Defendants"), move separately to explain the additional reasons why the City's claims against them should be dismissed.[1]

The City does not assert any factual allegations against Teva Ltd. or Teva USA, other than that Teva Ltd. acquired Cephalon in October 2011 and that Teva USA now purportedly sells Cephalon medicines.  As to Cephalon, the City rests its fraud-based claims on two theories: (a) that Cephalon sponsored third-party activities and publications that made purportedly false statements about opioid medicines in general and somehow conspired with other Defendants to do so ("Unbranded Promotion Theory"); and (b) that Cephalon falsely promoted two opioid medicines, Actiq and Fentora, for off-label uses ("Branded Promotion Theory").  Both theories lack the necessary details to state a claim under *Iqbal*, *Twombly*, and Rule 9(b).

With respect to its Unbranded Promotion Theory, the City alleges nothing more than that Cephalon engaged in entirely lawful activities, including funding certain third-party publications about opioids in general, sponsoring continuing medical education ("CME") programs about opioids, and participating in trade organizations that supported opioid therapy.  The City fails to allege facts to show that Cephalon somehow controlled what any third party said or did—much

---

[1]    While the Joint Motion seeks dismissal and/or a stay based upon the prudential doctrine of primary jurisdiction, there are multiple grounds to dismiss the Amended Complaint now, for the reasons set forth herein and in Section III of the Joint Motion.  Regardless of what the FDA concludes with respect to the long-term effect of opioids, the Amended Complaint fails to state a claim as to any of the Teva Defendants and Teva Ltd. is not subject to jurisdiction in this Court.

less that any specific third-party statements purportedly attributable to Cephalon were false, influenced a doctor to prescribe an opioid medicine for which the City paid, or led to an opioid prescription that did not benefit a patient. Although the City also tries to hold the Teva Defendants responsible for the actions of other Defendants through conclusory "conspiracy" assertions, the City does not assert a single fact to support an agreement of any kind between any of the Defendants. Thus, its Unbranded Promotion Theory is fatally flawed and the City's claims based upon that theory should be dismissed.

Likewise, Plaintiffs' Branded Promotion Theory fails as a matter of law because it rests entirely upon allegations of off-label promotion. Off-label prescribing, however, is *lawful*, and although off-label promotion may raise FDA regulatory issues, statements about uses that have not been specifically approved by the FDA are not inherently fraudulent. Indeed, recognizing the difference between off-label promotion and fraud, multiple courts have dismissed substantially similar complaints against the Teva Defendants because the very types of allegations raised by the City here do not state a claim.[2] As in *Travelers, Carpenters,* and *CREB,* the City fails to identify a *single* false statement or omission that Cephalon made to the City, to one of the City's pharmacy benefit managers, or to *any* physician who wrote an Actiq or Fentora prescription for which the City paid; it fails to plead facts showing that Cephalon caused *any* prescribing doctor to deviate from her medical judgment and write *any* of the prescriptions at issue; and it fails to plead facts showing that any prescriptions for Actiq or Fentora was medically inappropriate for and did not benefit the Chicago employee who received it. Thus, all claims based upon the City's Branded Promotion Theory must be dismissed as well.

---

[2]     *See Travelers Indemnity Company v. Cephalon, Inc.* ("*Travelers*"), No. 12-4191, 2014 WL 3408550 (E.D. Pa. July 14, 2014); *Indiana/Kentucky/Ohio/Regional Council of Carpenters Welfare Fund* v. *Cephalon, Inc.* ("*Carpenters*"),  No. 09-3418, 2014 WL 2115498, at *6 (E.D. Pa. May 21, 2014); *Cen. Reg'l Empl. Benefit Fund v. Cephalon, Inc.* ("*CREB II*"), No. 13-7167, 2010 WL 1257790, at *4 (D.N.J. March 29, 2010); *Cen. Reg'l Empl. Benefit Fund v. Cephalon, Inc.* ("*CREB I*"), No. 09-3418, 2009 WL 3245485 (D.N.J. Oct. 7, 2009).

Lastly, the Court lacks personal jurisdiction over Teva Ltd., which is a foreign corporation.  Teva Ltd. is headquartered and has its principal place of business in Israel, and Plaintiff asserts no facts to link Teva Ltd. to this forum or the subject matter of this lawsuit.  Indeed, Teva Ltd. does not market, promote, or sell opioids.  Teva Ltd.'s only alleged factual connection to this lawsuit is its ownership interest in Cephalon and Teva USA—which is insufficient as a matter of law to confer personal jurisdiction over Teva Ltd. in this Court.  For this reason as well, all claims against Teva Ltd. should be dismissed.

## II.    BACKGROUND

Teva Ltd. is an Israeli company with its principal place of business in Israel.  (Am. Compl.  ¶ 32).  Teva Ltd. acquired Cephalon in 2011, and is the parent of Teva USA.  (*Id.* at ¶¶ 32-33).  Teva Ltd. does not itself manufacture, market, or sell opioid medicines in the United States.  (Declaration of Hillel West ("West Decl."), attached hereto as Ex. A, at ¶¶ 3-4).[3]

Cephalon is a Pennsylvania-based pharmaceutical company that manufactures and sells innovative prescription medicines, including Actiq and Fentora.  (Am. Compl. ¶¶ 31, 34).  Plaintiff contends that, since October 2011, Teva USA has sold Cephalon-branded products but alleges no other factual allegations against Teva USA.  (*Id.* at ¶ 33).

### A.    Cephalon's Opioid Medicines

Actiq is a "powerful" rapid-onset opioid with "extreme potency" that is delivered to the bloodstream through a lozenge that dissolves in the mouth.  (*Id.* ¶¶ 290-92, 294).  As its label makes clear, Actiq was approved by the FDA for the management of breakthrough cancer pain in patients with malignant cancer who are opioid-tolerant.  (*Id.* ¶ 292).  The active ingredient in Actiq is fentanyl, a Schedule II controlled substance, and its product label—which includes a

---

[3]     The Court may consider the West Declaration to determine whether it has personal jurisdiction over Teva Ltd.  *See, e.g.*, *Levin v. Posen Found.*, No. 13-8102, 2014 WL 3749189, at *1 n.2 (N.D. Ill.  July 29, 2014) ("court can consider declarations outside of the pleadings submitted by defendants challenging personal jurisdiction").

"black box" warning, the "most serious medication warning required by the FDA"—specifies the potential risks associated with its use. (*Id.* ¶¶ 290-92, 297). A true and correct copy of the Actiq product label is attached hereto as Ex. B.[4]

In October 2006, following FDA approval, Cephalon started promoting Fentora. (*Id.* ¶ 296). Like Actiq, Fentora is a "powerful" prescription opioid approved for the "treatment of breakthrough cancer pain in patients with cancer who are already tolerant to around the clock opioid therapy for their underlying persistent cancer pain." (*Id.* ¶¶ 296-97). Fentora's label expressly states the conditions for which it is indicated and approved by the FDA and, like Actiq's label, includes a "strong" and "detailed" black box warning and lists the potential risks associated with its use. (*Id.* ¶ 297). A true and correct copy of the Fentora product label is attached hereto as Ex. C.

### B. Off-Label Prescribing Is Entirely Legal And Off-Label Promotion Is Not The Same As Fraud

"Off-label" prescribing refers to the well-established and entirely proper practice of medical professionals prescribing a medicine for a purpose different than that specifically approved by the FDA. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 n.5 (2001) (recognizing that off-label prescribing and use "often is essential to giving patients optimal medical care"); *Use of Approved Drugs for Unlabeled Indications*, FDA Drug Bulletin, Vol. 12, No. 1, at 4-5 (Apr. 1982) ("accepted medical practice often includes drug use that is not reflected in approved drug labeling"). Thus, in exercising their independent medical judgment, doctors are free to prescribe a medicine—including Actiq or Fentora—to treat any condition or symptom, regardless of whether the condition or symptom is covered by the FDA-approved

---

[4] The product labels for Actiq and Fentora are quoted by the City and are central to its claims. (*See id.* ¶¶ 292, 296). As such, they may properly be considered by the Court in ruling on the motion to dismiss. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

labeling. *See Carpenters*, 2014 WL 2115498, at *7 ("We stress that it is not illegal for physicians, exercising their independent medical judgment, to prescribe Fentora for off-label use, that is, to patients outside of the breakthrough cancer pain context").

Off-label promotion is different from off-label prescribing, and refers to the promotion of a drug by a pharmaceutical company for a use not approved by the FDA. Off-label promotion may be subject to federal regulatory action by the FDA and has been the subject of enforcement by the U.S. Department of Justice, but there is nothing intrinsically untruthful or misleading about off-label promotion. *See, e.g.*, *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *10 (D. N.J. July 10, 2009) ("off-label promotion of a pharmaceutical product in violation of the FDCA simply does not give rise to fraud-based rights of action"); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 n.6 (N.D. Cal. 2009) ("off-label marketing of an approved drug is itself not inherently fraudulent").

### C.     The City's Claims Against The Teva Defendants

The City's Amended Complaint spans 190 pages and more than 500 paragraphs. Most of the City's allegations against Cephalon, despite sounding in fraud, are focused on its alleged off-label promotion of Actiq and Fentora. (Am. Compl. ¶¶ 289-318). The City also alleges that Cephalon, both on its own and with other Defendants, misrepresented the efficacy and safety of opioids in general. (*Id.* ¶¶ 120-122, 129, 135-136, 159, 161, 164, 179, 193, 207, 247, 252, 260, 262, 267, 271, 459-472, 492-495). The Amended Complaint mentions Teva USA and Teva Ltd. in only two paragraphs. (Am. Compl. ¶¶ 32-33).

Based upon these allegations, the City contends that Cephalon has somehow "caused" it to pay for purportedly medically inappropriate prescriptions of Actiq, Fentora, and other opioids for chronic pain. (*Id.* ¶¶ 417, 421-22, 430-32, 438-41, 453-54, 457, 463, 469-70, 473, 477-78, 487-90, 495-96, 501-03, 506-07, 511). The City seeks to recover the costs of each and every

chronic pain opioid prescription for which it paid and any unidentified "consequential costs" of such prescriptions, such as costs relating to addiction treatment. (*Id.* at ¶¶ 358, 455-457 471-73).

## III.  LEGAL ARGUMENT

### A.  All Claims Fail Because The City Has Not Pled Any Misrepresentation Or Omission By Any Teva Defendant, Much Less Any That Satisfy Rule 9(b).

All eleven of the claims asserted against the Teva Defendants rest upon allegations that: (a) Cephalon made fraudulent misrepresentations and omissions regarding the safety and efficacy of opioids in general and somehow "conspired" with other Defendants to do so; and (b) Cephalon made fraudulent misrepresentations and omissions regarding the safety and efficacy of Actiq and Fentora in particular. (Am. Compl. ¶¶ 288, 406, 411, 427-28, 437, 449, 463, 476, 483, 493, 499, 506). Because all of the City's claims are predicated on fraud, they are subject to Rule 9(b)'s heightened pleading standards. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014); *Borsellino v Goldman Sachs Grp. Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The City has failed to satisfy *Iqbal*, *Twombly*, or Rule 9(b) as to either theory.

### 1.  The City's Unbranded Promotion Theory Fails As A Matter Of Law.

The City's Unbranded Promotion Theory rests entirely upon lawful conduct that is not alleged to have any connection to the City. In its section labeled "Why Defendants Claims Are Misleading" (Am. Compl. ¶¶ 242-272), the City identifies only a handful of alleged statements that it attempts to attribute to Cephalon. The City contends that Cephalon sponsored three independent publications by third party organizations (including the Federation of State Medical Boards and the American Pain Foundation) about opioids in general and one CME where a doctor purportedly stated that opioids can improve quality of life and are more effective in treating breakthrough pain than aspirin. (*Id.* ¶¶ 247(d)-(f), 252(c)-(d), 260(b), 262(b), 267(c)-(d), 271(c), 289). But there is nothing unlawful or fraudulent about these activities. Indeed, the City

fails to allege any facts to show how Cephalon can be held responsible for these independent publications and activities; how anything said in or during them was false; or how they supposedly influenced any Chicago doctor who wrote any of the opioid the prescriptions about which the City complaints. Absent these critical details, the City's claims against the Teva Defendants based upon its Unbranded Promotion Theory must be dismissed.

Lacking any facts about any fraud by any of the Teva Defendants, the City attempts to hold them responsible for the unbranded promotional statements of other Defendants. The City asserts that all "Defendants conspired to defraud the City" into paying for opioid prescriptions for chronic pain. (*Id.* ¶¶ 459-472, 492-495). But the City fails to plead a single fact to show any agreement between Cephalon and any other Defendant, much less that Cephalon or any other Teva Defendant had knowledge of and participated in any type of plan to harm the City. This is fatal to the City's conspiracy theory. *See, e.g., McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) ("[T]o state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement."); *see also Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 924 (1st Dist. 2007) ("The complaint must allege that the defendant knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy.").

In addition, the City's conspiracy theory against the Teva Defendants rests upon nothing more than that Cephalon was a member of a trade organization and funded some of the same third-party publications and research about opioids that some other Defendants supported. (Am. Compl. ¶¶ 120-122, 124-125, 129, 135-136, 159, 161, 164, 179, 188, 193, 207, 220). As a matter of law, these allegations of lawful business activities and parallel conduct are insufficient to hold Cephalon responsible for the acts of any other Defendant. *See, e.g., Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007) ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice"); *Moore v. Boating Indus. Assoc.*, 819 F.2d 693, 712 (7th Cir. 1987) ("mere membership" in trade association does not support conspiracy claim); *Burgess v. Abex Corp. ex rel. Pneumo Abex Corp.*, 311 Ill. App. 3d 900, 902 (4th Dist. 2000) ("an agreement implicitly shown by parallel conduct . . . is not sufficient to show a conspiracy").

## 2. The City's Branded Promotion Theory Fails As A Matter Of Law.

The City also alleges that Cephalon engaged in off-label promotion regarding its two opioid medicines, Actiq and Fentora. (Am. Compl. ¶¶ 285-318). But it is well-settled that off-label promotion of pharmaceutical medicines cannot form the basis for fraud-based claims absent well-pled allegations that the promotional statements that allegedly caused the plaintiff's injury were actually false or misleading.[5] Applying this rule, numerous courts have dismissed complaints based upon nearly identical allegations against Cephalon for failing to plead any misrepresentation, omission, or other fraudulent conduct. For instance, in *Carpenters*, a third-party payor asserted fraud-based claims against Cephalon to recover payments for supposedly inappropriate prescriptions of Fentora, based upon allegations that Cephalon engaged in fraudulent marketing. 2014 WL 2115498, at *1, 3. The Court dismissed the "voluminous" complaint, which included many of the same allegations here, for failure to satisfy Rule 9(b).

The Court reasoned that although plaintiff "allege[d] a sweeping" campaign of "off-label marketing" regarding the use of Fentora for non-cancer pain, plaintiff failed to allege anything fraudulent that Cephalon did or said. *Id.* at *5. The Court stressed that statements that Fentora "'has been shown to be effective' for non-cancer breakthrough pain" were not false because they "neither contradict[] nor conceal[] the limits of the FDA's approval of the drug" and because

---

[5]    *See, e.g., United Food & Commercial Workers Cent. Pa. & Reg. Health & Welfare Fund v. Amgen, Inc.*, 400 Fed. Appx. 255, 257 (9th Cir. 2010) (applying rule); *In re Schering-Plough Corp.*, 2009 WL 2043604, at *10 (applying rule).

"physician-prescribers are presumed to have knowledge of a drug label's contents [which state the FDA-approved indications and FDA-required risks]." *Id.* at *6. The Court further reasoned that the plaintiff failed to identify when any specific statements were made, to whom they were made, and how they were linked to any of the prescriptions at issue. *Id*. at *6-7 & n.3; *see also CREB I*, 2009 WL 3245485, at *4 (dismissing fraud-based claims brought against Cephalon by governmental health and welfare benefit funds because "[m]erely alleging that Cephalon marketed the drugs at issue for off-label purposes does not state a claim for fraud").

Similarly, in *Travelers,* the Court dismissed a fraud-based complaint against Cephalon by several insurance companies seeking to recover payments for off-label prescriptions of Actiq and Fentora. The insurance companies relied upon many of the same statements and materials that the City does here, including certain promotional documents, educational seminars, and investor statements. 2014 WL 3408550, at *10. The Court held that the plaintiffs failed to satisfy the heighted standard of Rule 9(b) because "communications discussing, or even encouraging, non-FDA approved uses are not inherently fraudulent, and the plaintiffs have not explained in what way the statements [ ] are deceptive or misleading." *Id*. The Court further reasoned that the insurance companies could not rely upon the flawed assumption that "Cephalon must have misrepresented the safety or efficacy of the drugs, or doctors would not have prescribed them for off-label use," particularly when doctors are "sophisticated consumers who themselves have an affirmative duty to be familiar" with the labels of the medicines they prescribe. *Id.* at *11.

Like the complaints in *Carpenters*, *Travelers*, and *CREB,* the City's Amended Complaint fails to recognize the distinction between off-label promotion and fraud. In the section directed to Cephalon under the heading "Defendants, in Promoting their Branded Products, Also Misled

Prescribers" (Am. Compl. ¶¶ 285-318), the City relies upon nothing more than conclusory allegations of wrongdoing and allegations of off-label promotion:

- Cephalon "deceptively and unlawfully marketed Actiq and then Fentora for patients and uses for which they were not safe, effective, or allowed . . . ." (*Id.* ¶ 288).

- "Cephalon continued to use its general pain sales force to promote Fentora off-label to pain specialists as an upgrade over Actiq for the treatment of non-cancer breakthrough pain." (*Id.* at ¶ 310); and

- "Cephalon-set sales quotes for its general pain sales force would be unattainable if they did not deceptively promote Fentora off-label." (*Id.* at ¶ 313).

(*See also e.g.*, Am. Compl. ¶¶ 288, 289, 293, 298, 317).

Indeed, the City fails to allege a ***single relevant*** supposedly-false statement or omission by Cephalon. The City fails to identify any statement or omission (much less a false one) that Cephalon made to the City or one of the City's pharmacy benefit managers; that Cephalon made to any physician who prescribed Actiq or Fentora to one of the City's employees or retirees; or that is somehow linked to any prescription for which the City paid or that caused any harm to any Chicago resident. Nor does the City even attempt to identify any details about any false statements or omissions—such as what was said, when, to whom, where, and by whom.

At most, the City alleges nothing more than non-fraudulent promotional conduct—that Cephalon used speaker programs to promote Actiq and Fentora at scheduled events with prescribers (*id.* ¶¶ 285-286); that Cephalon sponsored CMEs (more than five years ago) where speakers talked about the use of "rapid onsent opioids" for breakthrough pain (*id.* ¶¶ 303-306); that Cephalon sought to expand the label for Fentora (*id.* ¶¶ 308-309); that Cephalon's sales representatives detailed pain specialists (*id.* ¶¶ 312-315); and that Cephalon analyzed the market share of Fentora among certain patients (*id.* ¶¶ 316-317). As in *Carpenters*, *Travelers*, and *CREB*, these allegations are woefully insufficient to plead any fraud, much less satisfy Rule 9(b).

10

They do not identify a single false statement that Cephalon made in connection with any of those activities. They do not even allege that Actiq or Fentora was discussed and, if so, what was specifically said. And they do not connect any of these activities to any prescription for which the City paid. Thus, all of its claims against the Teva Defendants should be dismissed.

### B. All Claims Fail Because The City Has Not Pled Any Facts To Show That Any Teva Defendant Caused The City Any Harm.

As pled, each of the City's claims require the City to show, among other things, that: (a) an alleged misrepresentation made by one of the Teva Defendants caused a Chicago physician to write an opioid prescription for which the City reimbursed; and (b) the City suffered a cognizable injury. (Am. Compl. ¶¶ 417, 421-22, 430-32, 438-41, 453-54, 457, 463, 469-70, 473, 477-78, 487-90, 495-96, 501-03, 506-07, 511). The City has not come close to doing so.

### 1. All Claims Fail Against The Teva Defendants For Lack of Causation.

The Amended Complaint is devoid of any factual allegations to establish causation:

- It does not allege that Cephalon had any communications with the City or that the City directly relied on any statements by Cephalon;

- It does not allege that Cephalon had any communications with any pharmacy benefit managers for the City's health care plans or that those managers relied on any statements by Cephalon in deciding whether to pay for opioid prescriptions;

- It does not identify any doctor who wrote an Actiq or Fentora prescription for which the City paid;

- It does not identify a single interaction between Cephalon and a doctor who wrote an Actiq or Fentora prescription—much less a single false statement that Cephalon made to a prescribing doctor; and

- It does not allege any facts to show that a single doctor abandoned his or her medical obligations and relied upon something false that Cephalon supposedly said in connection with a single prescription for which the City paid.

11

 As a matter of law, because the City fails to allege facts to show that it, its pharmacy benefit managers, or any of the doctors who prescribed Actiq or Fentora had any contact with Cephalon, all claims should be dismissed for lack of causation.

The City purportedly conducted interviews with four unidentified Chicago doctors (Am. Compl. ¶¶ 365-377), yet the City does not identify a single statement that Cephalon or any other Teva Defendant made to any such doctor, much less a false one. Nor does the City identify a single prescription written by any of those doctors that was supposedly influenced by any Teva Defendant. One unidentified doctor allegedly wrote opioid prescriptions after talking with unidentified "sales representatives" for an unidentified company but, notably, that doctor *did not write any Actiq or Fentora prescriptions*. (Ex. C to Am. Compl. (listing prescriptions written by "Doctor A"); *see, e.g., CREB II*, 2010 WL 1257790, at *4 (dismissing claims against Cephalon because plaintiffs did "not plead a single instance in which they, themselves, or any of their prescribing doctors received a misrepresentation of fact from Defendants and relied upon that misrepresentation in deciding to prescribe one of the Subject Drugs to Plaintiffs")).[6]

The City makes a few cursory assertions to try to link Cephalon to Chicago prescribers, but still fails to connect anything that it said or did to any Chicago physician who wrote any of the prescriptions at issue. For instance, although the City alleges that unidentified Cephalon sales representatives met with unidentified Chicago prescribers more than eight years ago during a dinner and office meeting and other unidentified events (Am. Compl. ¶¶ 286-287, 315), the City fails to allege what was said during any event, whether any statement was false, or whether any prescriber wrote any prescription because of such a statement. Likewise, the City alleges that Cephalon sponsored three independent CME programs which supposedly mentioned Actiq

---

[6]     *See also In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab.*, MDL No. 01699, 2012 WL 3154957, at *8-9 (N.D. Cal. Aug. 2, 2012) (applying rule); *In re Yasmin & Yaz Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 3119499, at *7-9 (S.D. Ill. Aug. 5, 2010) (applying rule).

or Fentora that were "***available to Chicago physicians***." (*Id.* ¶¶ 303-04 (emphasis added)). Yet, the Amended Complaint contains no information as to whether a Chicago physician actually attended any Cephalon-sponsored CME, how anything said there was fraudulent, or whether any physician prescribed Actiq or Fentora to someone covered by a City health plan as a result of the CME. In short, because the City fails to connect anything that Cephalon allegedly said or did with the prescriptions for which it reimbursed, all claims fail as a matter of law.

### 2. All Claims Against The Teva Defendants Fail for Lack of Injury.

It is also well-settled that merely reimbursing for off-label prescriptions is not a cognizable injury in the absence of facts that the prescriptions were ineffective for or caused harm to the patients who received them.[7] For this reason, courts have dismissed fraud-based claims against Cephalon for failure to plead facts showing that the patients who received the Actiq or Fentora prescriptions at issue somehow did not benefit from them or were harmed. *See, e.g.*, *Travelers*, 2014 WL 3408550 at *6-7; *CREB II*, 2010 WL 1257790 at *3.

Here, while the City identifies eleven patients who purportedly were prescribed "medically unnecessary" opioids for which the City paid (Am. Compl. ¶¶ 380-381), the City fails to identify a single patient who was prescribed Actiq or Fentora. Nor does the City allege any facts about any Actiq or Fentora prescriptions—including why Actiq or Fentora was prescribed, whether the prescription was on-label or off-label, whether it helped or harmed the unidentified patient, whether it was effective in treating his or her pain, or whether the City authorized the prescription even though it was to treat some off-label condition.

---

[7]     *See, e.g., In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 247 (3d Cir. 2011); *Ironworkers Local Union 68 And Participating Employers Health And Welfare Funds v. AstraZeneca Pharm. LP*, 634 F.3d 1352, 1360 (11th Cir. 2011); *Travelers*, 2014 WL 3408550 at *6-7; *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, *7-8 (D.N.J. June 9, 2010); *CREB II.*, 2010 WL 1257790, at *3; *District 1199P Health & Welfare Plan v. Janssen, L.P*, No. 06-3044, 2008 WL 5413105, at *11-13 (D.N.J. Dec. 23, 2008).

13

Instead, the City's theory of harm as to Cephalon's medicines relies entirely on the conclusory assertions that Actiq and Fentora were "not safe, effective or allowed" to treat chronic non-cancer pain because they were not affirmatively approved by the FDA for such uses. (*See, e.g.,* Am. Compl. ¶ 288). But "off-label" use often forms the appropriate standard of care, and simply because a medicine has not been approved by the FDA to treat a particular condition does not make it "ineffective" or "unsafe" for a patient with that condition. *Travelers*, 2014 WL 3408550 at *6 (rejecting conclusory allegations that Actiq and Fentora are "unsafe" or "ineffective" for off-label use because "absence of data or evidence proving that a drug is safe and effective in treating a particular condition, without more, does not support the conclusion that the drug is actually ineffective or unsafe for that use"). Indeed, the City's theory that Actiq and Fentora were "ineffective" for treating such pain is contradicted by the FDA warnings regarding their potency and the City's description of these medicines as "powerful," "strong," and "potent." (Am. Compl. ¶¶ 290, 294, 296); *see also Travelers*, 2014 WL 3408550, at *7.

More fundamentally, the City has not alleged facts to show that ***any*** of the Actiq or Fentora prescriptions at issue were prescribed for patients with chronic non-cancer pain (or for any other off-label use). The City also fails to allege any facts to show that any patients who received any Actiq or Fentora prescriptions either did not experience effective pain relief or suffered some harm. This is fatal to the City's claims. *Id.* at *7.

Lastly, the City complains about alleged payments that it made for treatment for opioid addiction and opioid-related emergency room visits. (Am. Compl. ¶¶ 382-388). But the City fails to identify a single patient who purportedly became addicted to Actiq or Fentora; that the City had to pay for any treatment costs for that patient; or that anything that Cephalon said or did

caused the prescription to be written, the patient to become addicted, or the City to have to pay for any treatment costs.  Thus, the City's claims fail for lack of injury.

      **C.**      **<u>The Claims Against Teva Ltd. And Teva USA Fail For Additional Reasons.</u>**

           **1.**      **The Amended Complaint Fails To Allege Any Misconduct By Teva Ltd. Or Teva USA.**

To state a claim against Teva Ltd. or Teva USA, the City must allege facts to show that they did something wrong.  It fails to do so.  The allegations relating to Teva Ltd. are confined to two conclusory paragraphs in the Amended Complaint, which allege nothing more than that Teva Ltd. is an Israeli corporation that acquired Cephalon in 2011 and that, "[u]pon information and belief," Teva Ltd. "directs the business practices of Cephalon and Teva USA and their profits inure to the benefit of Teva Ltd. as controlling shareholder."  (Am. Compl. ¶¶ 32-33).  The Amended Complaint does not allege a single fact to show that Teva Ltd. participated in any misconduct or, indeed, marketed or promoted Actiq or Fentora at all.[8]  Moreover, it is well-settled that "the mere fact that there exists a parent-subsidiary relationship between two corporations" does not "make one liable for the torts of its affiliate."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Travelers*, 2014 WL 3408550, at *14 (dismissing claims against Teva Ltd. because "parent company . . . is not liable for the actions of its subsidiaries").  Thus, all claims against Teva Ltd. should be dismissed.

Similarly, the claims against Teva USA are glaringly deficient.  The City relies entirely upon the naked assertion that, after October 2011, Teva USA sold "former Cephalon branded products."  (Am. Compl. ¶ 33).  But the City fails to allege any statements or actions by Teva

---

[8]      In Paragraph 33 of the Complaint, the City purports to define "Cephalon" as Teva Ltd., Teva USA, and Cephalon.  But such group pleading is improper and does not relieve the City from pleading specific facts related to Teva Ltd. or Teva USA.  *See, e.g., Bank One, Okla., N.A. v. Trammell Crow Servs., Inc.*, No. 03 C 3624, 2003 WL 23019173, at *2 (N.D. Ill. Dec. 23, 2003) (dismissing claims against parent company where complaint lumped parent and subsidiary and referred to them collectively).

USA.  Moreover, the City's Amended Complaint does not identify *any* particular conduct after October 2011—when Teva USA allegedly became affiliated with Cephalon.  For this reason alone, all claims against Teva USA should be dismissed, too.  *See, e.g.*, *Travelers*, 2014 WL 3408550, at *7 (dismissing claims against Teva USA because of lack of allegations of wrongdoing).

### 2.      Teva Ltd. Is Not Subject to the Court's Jurisdiction.

The claims against Teva Ltd. also should be dismissed for the independent reason that this Court lacks personal jurisdiction over it.  This Court has personal jurisdiction over nonresident defendants only in cases where the defendant has sufficient "minimum contacts" with the forum such "that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction may take one of two forms—specific or general.  Specific jurisdiction exists when the contact involves "issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).  If the defendant's contacts with the forum are unrelated to the case in controversy, the courts may still exercise "general jurisdiction" if the defendant's "affiliations with the State are so 'continuous and systematic'" as to render the defendant essentially "at home" in the forum state.  *Id.; see Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2013).

It is well-settled that "[t]he plaintiff bears the burden of establishing personal jurisdiction."  *Greving*, 743 F.3d at 491.  In addition, if a defendant chooses to submit "affidavits or other evidence" to show the absence of personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).  Here, the

City has failed to meet its burden and the facts described in the attached Declaration of Hillel West demonstrate that no specific or general jurisdiction exists over Teva.

### a.     There Is No Specific Jurisdiction.

Under controlling Seventh Circuit law, specific personal jurisdiction is only appropriate if the following two-part test is met: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Greving*, 743 F.3d at 492 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)).

The City has not met and cannot meet its burden with respect to these requirements. The City concedes that Teva Ltd. "is an Israeli corporation with its principal place of business in Petah Tikva, Israel" (Am. Compl. ¶ 32), and the few allegations concerning Teva Ltd. all stem from the fact that Cephalon is a "wholly-owned subsidiary of Teva Ltd." and that "profits inure[d] to the benefit of Teva Ltd. as controlling shareholder." (*Id.* ¶ 33). This is insufficient because "stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact." *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *Purdue Research Found.*, 338 F.3d at 788 n. 17 ("[A]s a general rule, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent.").

In addition, Teva Ltd. does not market, promote, or sell opioids in the United States and Cephalon and Teva USA operate independently of Teva Ltd. (West Decl., Ex. A, at ¶ 3). Teva Ltd. therefore has no connection with any of the marketing activities out of which the City's claims arise. (*Id.*). In an effort to try to subject Teva Ltd. to specific jurisdiction in Illinois, the City alleges in conclusory fashion that Teva Ltd. "directs the business practices of Cephalon and Teva USA." (Am. Compl. ¶ 33). The City provides no facts in support of this legal conclusion.

Moreover, it is legally insufficient to trigger specific jurisdiction because the City does not and cannot allege that Cephalon or Teva USA exist "for no purpose other than conducting the business of [their] parent." *Kolcraft Enterprises, Inc. v. Artsana USA, Inc.*, No. 13 C 4863, 2014 WL 3865814, at *4-5 (N.D. Ill. Aug. 6, 2014); *see also* West Decl., at ¶¶ 4-5. Thus, no specific jurisdiction exists over Teva Ltd.

**b.**     <u>**There Is No General Jurisdiction.**</u>

To have general jurisdiction, Teva Ltd.'s contacts must be "so constant and pervasive 'as to render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2013) (*quoting Goodyear*, 131 S. Ct. at 2851). This means that, for Teva Ltd. to be subject to general jurisdiction in this Court, it must have its "domicile, place of incorporation, and principal place of business" in Illinois. *Goodyear*, 131 S. Ct. at 2854.

There is no dispute that Teva Ltd. is domiciled, incorporated, and has its principal place of business outside the United States (Am. Compl. ¶ 32) – and, therefore, it cannot be said to be "at home" in Illinois. (West Decl., Ex. A, at ¶ 2). Nor does general jurisdiction exist over Teva Ltd. because it is Cephalon's and Teva USA's parent or somehow profits from their conduct. The Supreme Court has made clear that a foreign corporation may not be subject to general jurisdiction on the basis of the contacts of its subsidiary unless the parent itself is "at home" in the jurisdiction. *Daimler*, 134 S. Ct. at 759. Because Teva Ltd. is not "at home" in Illinois, the Court should dismiss all claims against Teva Ltd. for lack of personal jurisdiction.

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, as well as those expressed in the Joint Motion, the Teva Defendants respectfully request that the Court enter an Order dismissing all claims against them.

Dated:  December 19, 2014  Respectfully submitted,


      /s/ Tinos Diamantatos
      Tinos Diamantatos
      MORGAN, LEWIS & BOCKIUS LLP
      77 West Wacker Drive
      Chicago, IL 60601
      Email: tdiamantatos@morganlewis.com

      Gordon Cooney, Jr. (admitted *pro hac vice*)
      Steven A. Reed (admitted *pro hac vice*)
      MORGAN, LEWIS & BOCKIUS LLP
      1701 Market Street
      Philadelphia, PA  19103-2921
      Email:  jgcooney@morganlewis.com
      Email:  sreed@morganlewis.com

      *Attorneys for Defendants Cephalon, Inc., Teva*
      *Pharmaceuticals USA, Inc., and Teva Pharmaceutical*
      *Industries Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I, Tinos Diamantatos, hereby certify that on December 19, 2014, I caused a true and correct copy of the foregoing document to be served using the electronic case filing system, which will send electronic notification of such filing to all parties that have appeared in this action.

/s/ Tinos Diamantatos
Tinos Diamantatos
