IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PURDUE PHARMA L.P.; PURDUE PHARMA )<br>INC.; THE PURDUE FREDERICK COMPANY, )<br>INC.; TEVA PHARMACEUTICAL INDUSTRIES, )<br>LTD.; TEVA PHARMACEUTICALS USA, INC.; )<br>CEPHALON, INC.; JOHNSON & JOHNSON; )<br>JANSSEN PHARMACEUTICALS, INC.; ORTHO- )<br>MCNEIL-JANSSEN PHARMACEUTICALS, INC. )<br>n/k/a JANSSEN PHARMACEUTICALS, INC.; )<br>JANSSEN PHARMACEUTICA, INC. n/k/a )<br>JANSSEN PHARMACEUTICALS, INC.; ENDO )<br>HEALTH SOLUTIONS INC.; ENDO )<br>PHARMACEUTICALS INC.; ACTAVIS PLC; )<br>ACTAVIS, INC.; WATSON, )<br>PHARMACEUTICALS, INC. n/k/a ACTAVIS, )<br>INC.; WATSON LABORATORIES, INC.; )<br>ACTAVIS LLC; and ACTAVIS PHARMA, INC. )<br>f/k/a WATSON PHARMA, INC. )<br>)<br>Defendants. ) | Case No. 14-cv-04361<br>Honorable Elaine E. Bucklo |

**DEFENDANTS ENDO HEALTH SOLUTIONS INC.'S AND ENDO
PHARMACEUTICALS INC.'S MEMORANDUM OF LAW
<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Adding more pages has not cured the City of Chicago's failure to state any claim against Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (collectively, "Endo"). The First Amended Complaint ("FAC") still omits fundamental elements of the City's claims against Endo -- and this new effort makes evident that those omissions cannot be corrected.

The City's case against Endo is based on the theory that Endo made false or misleading statements about its opioid medications. However, in addition to the reasons given in the Defendants' Joint Motion, the FAC does not allege facts that, if true, would demonstrate either

1

any wrongful conduct specifically by Endo (*i.e.*, any false or misleading statements) or that any such conduct by Endo caused any recoverable injury. In summary, the claims against Endo fail because:

- The "statements" the City seeks to attribute to Endo were, for the most part, allegedly made by third parties. But Endo cannot be held liable in fraud merely for providing financial support to *separate* organizations or individuals, who then supposedly made misstatements (to unspecified others), absent allegations that these third parties were controlled by Endo or were its agents. (*See* pages 3-6, *infra.*)

- The FAC fails to demonstrate that any of the statements attributed (often incorrectly) to Endo were actually false or misleading. For instance, the City alleges that some of these statements were not sufficiently supported by scientific evidence, but the mere absence of such support, even if true, does not establish fraud. The City also attempts to create the appearance of omissions and inconsistencies between different statements attributed to Endo or to the FDA-approved labeling for Endo's medications, but none of these comparisons hold up under scrutiny. (*See* pages 6-10, *infra*.)

- The FAC is devoid of facts showing, if true, that any physician wrote unnecessary or inappropriate prescriptions for any patients due to Endo's alleged misrepresentations. Indeed, the City never identifies any alleged misrepresentations by Endo that were actually conveyed to any particular health care providers who prescribed an Endo medication to any particular patients, much less explains how any alleged misrepresentations caused harm to anyone. (*See* pages 11-12, *infra*.)

2

- The FAC, which as a whole is based on a fraud theory,[1] fails to allege the elements of its claims against Endo with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Instead, the City relies on generalized allegations that Endo disseminated or made available allegedly false or misleading information, without specifying (as it must) who received each alleged falsehood, or when, where, and how they received it.

Endo therefore moves to dismiss the FAC for failing to meet the "*Twombly-Iqbal*" standard and the heightened pleading requirements of Fed. R. Civ. P. 9(b).

## I.    LEGAL STANDARDS

Endo incorporates the Joint Memorandum's discussion of Rule 12(b)(6) standards and Rule 9(b)'s heightened pleading requirements for fraud allegations. *See* Jt. Mem. Part III.A.

## II.    ARGUMENT

### A.    The City Has Failed to Allege Conduct For Which Endo Can Be Held Liable

#### 1.    The City has failed to allege facts sufficient to hold Endo liable for statements made by others

The City's suit against Endo rests primarily on allegations regarding statements made by people or entities other than Endo, such as doctors the City refers to as "Key Opinion Leaders" ("KOLs") and various pain-related organizations. *See* FAC ¶¶ 102, 119, 121-123, 125, 129, 132, 138, 141-142, 145, 149, 151, 155, 159, 164, 167, 182, 186, 188, 190, 193, 196, 204, 207-209, 220, 222-223, 231, 239, 247, 252, 260-261, 264, 267, 271, 278, 409. Indeed, the City's theory is that Endo and the other Defendants "generally avoided using branded advertisements to spread misleading claims about addictiveness" but instead used third parties as their alleged proxies for this purpose. *See, e.g.*, *id.* ¶ 102.

---

[1] Jt. Mem. Part III.A.

But Endo cannot be held liable for the statements of others without specific allegations showing that these third-parties were under Endo's control or acting as Endo's agents. Absent such allegations, these allegedly false statements cannot be attributed to Endo. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 497-99, 501 (1996) (no liability for others' misstatements under common law fraud or Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") where the complaint was "devoid of any facts to support actual agency authority, either express or implied," and failed to "adequately allege apparent agency"); *Crichton v. Golden Rule Ins. Co.*, 358 Ill. App. 3d 1137, 1146-47 (5th Dist. 2005) (association not liable under ICFA for alleged misstatements by insurer to which association referred members and for which association facilitated issuance of policies). Furthermore, because the City "relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant," its agency allegations must satisfy Rule 9(b).[2] *Lachmund v. ADM Inv., Servs, Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). The City's allegations fail these tests.

"The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Anderson v. Boy Scouts of Am., Inc.*, 226 Ill. App. 3d 440, 443 (1st Dist. 1992). The FAC, however, never alleges that Endo had the right to control the words used or messages conveyed by any third-party organization or KOL. Rather, at most, the City alleges that some of these third parties took positions consonant with Endo's or believed that offering to convey certain messages would make them more likely to receive grants from Endo. *See, e.g.*, FAC ¶¶ 196 (alleging organization's "willingness to assist with Defendants'

---

[2] The City relies on the same allegations as to third-parties' incentives to please the Defendants to suggest both that these parties are defendants' agents and that these parties warped the truth to suit defendants' commercial interests. *See, e.g.*, FAC ¶¶ 188, 196.

4

marketing efforts" was exemplified by the *organization's* "grant request *to* Endo") (emphasis added), 204 (alleging same organization "sometimes did not even need industry prompting" but sought to respond to a negative article about opioids "*[o]n its own initiative*") (emphasis added). But these allegations do not establish, especially under the heightened pleading standard of Rule 9(b), that Endo conditioned any funding on or otherwise exercised any control over the statements made by these third parties. *See Gen. Building Contractors Assoc., Inc. v. Pennsylvania*, 458 U.S. 375, 395 (1982) ("That the employers fund the activities of the JATC does not render the JATC the employers' servant or agent . . . .").

Allegations that Endo was able to identify and "enlist" or "vet[]" likeminded third parties whose opinions coincided with Endo's interests also fail to establish, even if true, that Endo exercised sufficient control over these third parties to be held liable for their conduct. *E.g.*, FAC ¶¶ 122 (alleging that "KOLs were carefully vetted to ensure that they were likely to remain on-message and supportive" and that Endo reviewed an unnamed physician's prior work), 121, 123, 149. Indeed, the facts alleged in the FAC reflect that these third parties were independent actors who were merely "willing[]" to speak and make their own decisions regarding what to say. *See, e.g.*, *id.* ¶ 145 & n.83. The allegation that someone is only *likely* to be *willing* to write an article does not plausibly establish that the person is *controlled* by Endo or Endo's agent. Because "[t]he ability or right to control is a key element to the determination" of agency, *Anderson*, 226 Ill. App. 3d at 443-44, this gap in the City's pleading is fatal to its attempt to hold Endo liable for the alleged misstatements of others.[3]

---

[3] The City's own pleading also contradicts any theory of agency based on apparent authority because it alleges that Defendants' support for these third parties was not disclosed. *See* FAC ¶¶ 397-398. On the contrary, the City alleges that they were controlled notwithstanding their apparent professional independence. *See* FAC Section V.C.2.a.

The City's allegations about these third-party statements are also woefully inadequate under Rule 9(b). For example, the City alleges that "Endo was able to find an author . . . willing to 'develop a manuscript based on provided bullet points,'" FAC ¶ 141, but nowhere alleges: that Endo controlled the author's end product; who that author was; what the author actually wrote; or when, where, how, to whom it was distributed—or even whether it was ever distributed at all. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (Rule 9(b) requires a plaintiff to plead the "'who, what, when, where, and how' of the fraud.") (citation omitted). The other allegations all have similar flaws. *See, e.g.*, FAC ¶¶ 186 (no allegations as to when an allegedly deceptive website funded by Endo displayed the supposed misstatements, nor who read them); 252i (failing to specify when, where, or to whom an allegedly deceptive Endo-sponsored continuing medical education piece was published).

> **2. The City has not stated a cause of action against Endo based on misrepresentation because it fails to allege that any statements it attributes to Endo were actually false or misleading**

The City also fails to allege facts demonstrating that any statement it attributes (often incorrectly) to Endo was actually false or misleading. Moreover, the City's allegations that Endo did not warn about the risk of addiction associated with its opioid medications are contradicted by the City's own reliance on the FDA-approved labeling for those same medications—which expressly warns about addiction risks. Thus, the FAC does not plausibly allege facts at the very heart of the City's claims: the supposedly false statements.

As with all prescription medications, Endo's opioid medications are accompanied by FDA-approved prescribing information that includes warnings about potential risks associated with use of those medications, including the risk of addiction. For instance, Endo's labeling for Opana ER states, among other things, that: "All patients treated with opioids including OPANA ER require careful monitoring for signs of abuse and addiction, since use of opioid analgesic

6

products carries the risk of addiction even under appropriate medical use. . . . Abuse of OPANA ER poses a risk of overdose and death." Kubota Decl. Ex. 19, at 14.[4] Indeed, the City itself alleges that one of the other risks Endo allegedly failed to adequately convey is included in Endo's labeling. FAC ¶ 239 (noting that a "similar warning [relating to benzodiazapines] is found on the labels"). Moreover, physicians have a duty to be familiar with the warnings contained in the labeling for medications they prescribe to their patients. *See, e.g.*, *Travelers Indem. Co. v. Cephalon, Inc.*, --- F. Supp. 2d ----, No. 12-4191, 2014 WL 3408550, at *11 & n.21 (E.D. Pa. July 24, 2014); *Ind./Ky./Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, No. 13-7167, 2014 WL 2115498, at *6 (E.D. Pa. May 21, 2014) ("[P]hysician-prescribers are presumed to have knowledge of drug label's contents."). Because the City acknowledges that the drug labeling, which is "available to potential prescribing physicians, clearly identifies the dangers . . . that form the basis of [Plaintiff's] concerns," *see id.*, the City's allegations that Endo somehow failed to disclose side effects of its opioid medications, *see* FAC ¶¶ 239, 271d-f, fall of their own weight. *See also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939-40 (7th Cir. 2001) (no deception under ICFA where available information dispels possible incorrect implication).

The City makes no allegation that Endo made any actually false statements about the risks of its medications.[5] To the extent it alleges merely that Endo tried to cast the risk

---

[4] Exhibit 19 to the Kubota Declaration submitted with the Defendants' Joint Motion to Dismiss is the drug label for Opana ER approved in December 2011. Because Defendants' labels are mentioned numerous times in the FAC and are central to the City's claims, *see, e.g.*, FAC ¶¶ 9, 21, 53, the court may consider Opana ER's label without converting this motion into one for summary judgment. *See Wright v. Assoc. Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[5] The City's allegations that Endo supported the concept of "pseudoaddiction" -- e.g., by funding a third-party organization and KOLs, *see* FAC ¶¶ 131, 186, 261, 262, 409 -- fail to plead any fraud by Endo. Statements of scientific opinion such as these do not constitute actionable misrepresentations. *See Marino v. United Bank of Ill., N.A.*, 137 Ill. App. 3d 523, 527 (2d Dist. 1985) ("Matters of fact are to be distinguished from expressions of opinion, which cannot form the basis of an action of fraud.").

Footnote continued on next page

information in a favorable light, those allegations fail to assert an actionable claim based on misrepresentations.[6] *See In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1054-55 (N.D. Cal. 2009) (rejecting "tendentious leap[]" to conclude marketing was "false and misleading" because data used to present "drug product in the best light possible"); *see also Munch v. Sears, Roebuck and Co.*, Nos. 06 C 7023, 07 C 412, 2008 WL 4450307, at *6 (N.D. Ill. Sept. 30, 2008).

The City also attempts to create an impression that false statements were made by juxtaposing different concepts that it incorrectly suggests are contradictory. For example, the City asserts that it was a misrepresentation to state that "most" opioid users do not become addicted, *see, e.g.*, FAC ¶¶ 102, 196, 252, because Endo's own warning stated that "use of opioid analgesic products carries the risk of addiction even under appropriate medical use," *id.* ¶¶ 102, 252. There is no contradiction, however, in saying that these medications have a risk of addiction but "most" who use them do not become addicted. While the City characterizes this as "minimiz[ing]" the addiction risk, *id.* ¶ 252, it does not allege that these statements are actually false. *See Ind./Ky.*, 2014 WL 2115498, at *5-*6 (fraud not plausibly alleged if a statement "neither contradicts nor conceals the limits of the FDA's approval"); *see also Crichton*, 358 Ill. App. 3d at 1147-48 (ICFA "may not be used as a vehicle for transforming nondeceptive and nonfraudulent statements or omissions into actionable ones").

Similarly, there is no conflict between the American Geriatrics Society's alleged statement that the risk of addiction is "exceedingly low in older patients with no current or past history of substance abuse," FAC ¶ 233, and the finding in a study cited by the City that

---

Footnote continued from previous page
Moreover, the City expressly pleads that the risk of addiction is well-disclosed in each drug's label. *See* FAC ¶ 60. Finally, these allegations fail under Rule 9(b) because they omit to state when and where the alleged misstatements were made, and who received them.

[6] These allegations also fail to satisfy Rule 9(b) by omitting when these supposed misrepresentations were made, FAC ¶¶ 239, 271d-e, where they were made, *id.* ¶¶ 239, 271e-f, and to whom, *id.* ¶¶ 239, 271d-f.

8

"patients 65 or older were among those with the largest number of serious overdoses." *Id.* Addiction risk and the number of overdoses are not the same things; it is entirely possible that the rate of addiction among elderly patients (especially those with no current or past history of substance abuse) could be low even while the elderly generally experience a relatively higher number of overdoses. Certainly, nothing about this comparison indicates that the American Geriatric Society's statement was false. The same problems doom the City's allegations about articles on the metabolization of Opana ER in the elderly and a case study on NSAIDs (non-steroidal anti-inflammatory drugs, a different type of medication)—it never alleges that anything in these articles or the case study is actually false.[7] FAC ¶¶ 139, 271d. *See In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934, 2009 WL 1703285, at *6 (C.D. Cal. June 17, 2009) ("To survive a motion to dismiss, Plaintiff[] must show that [Defendant's] actions went beyond presenting its drugs in the best light possible and crossed the line into actionable fraud.").

Finally, the City attributes a number of statements to Endo that it asserts were not sufficiently substantiated, *e.g.*, FAC ¶¶ 138 n.79, 166, 264, but this also fails to allege that Endo engaged in any actual misrepresentations. "Merely because a fact is unsupported by clinical tests does not make it untrue." *Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 291 (1st Dist. 2006); *see also In re Schering-Plough Corp., Intron / Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, at *8 (D.N.J. June 9, 2010) (unpublished). Rather, "[l]ack of substantiation is deceptive only when the comparative claim at issue implies there is

---

[7] These and similar allegations also fail to meet the heightened pleading standards of Rule 9(b). They either fail to state an adequate time frame for when the alleged misstatements were made, FAC ¶¶ 196, 233, 252, 271, 409, or "where" the statements were made, *id.* ¶¶ 102, 139, 196, 233, 252, 271, 409, or how the statements were distributed, *id.* ¶¶ 139, 233, 252, 409. And none of the allegations specifies who received them. *See Beyrer*, 722 F.3d at 948.

9

substantiation for the claim made," such as by stating specifically that "tests show that [a drug] is effective for cough suppression" or that the drug "is more effective for cough suppression than XYZ [drug]." *Gredell*, 367 Ill. App. 3d at 291; *Bober*, 246 F.3d at 939 n.2.

Thus, the City faults a continuing medical education program, which was sponsored by Endo and published by a third-party organization, because that program about older adults "claimed that opioids have 'possibly less potential for abuse than in younger patients[,]' which lacks evidentiary support." FAC ¶ 252i (alteration in FAC). But suggesting that a medication *possibly* has less potential for abuse in older patients does not imply that it has proven lower rates of abuse. Nor does the City claim the statement was actually false. Similarly, the City also attacks as unsubstantiated Endo's statement that Opana ER was "*designed to be crush resistant.*" *See id.* ¶ 252f (alleging that there is "no evidence" and that the FDA called Endo's data "insufficient").[8] The City also mischaracterizes statements that only suggest, without specific assertions of substantiation, that Endo's medications may help improve patients' daily lives. *See, e.g.*, FAC ¶ 247 & g (characterizing statement on website of a third-party, sponsored by Endo, that "you *may* find you are now able to participate in activities of daily living . . . ." as "suggest[ing] that its claims are corroborated by scientific evidence") (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Tellingly, again, the City does not allege that any of these statements were false.[9]

---

[8] Although the City appears to argue that Endo misrepresented that its new formulation was more difficult to abuse, the FAC confusingly alleges that advertisements for the new formulation "conveyed that they were less difficult to abuse." FAC ¶ 252f (emphasis added).

[9] The City's allegations about inadequately supported statements also fail under Rule 9(b), because they do not state "when," *see* FAC ¶¶ 167, 186, 196, 225, 227, 233, 247, 252, 264, 267, 271, 409, "where," *id.* ¶¶ 138 n.79, 166, 167, 196, 225, 227, 233, 247, 252, 260, 264, 267, 271, 409, or "how," *id.* ¶¶ 167, 225, 233, 252, 264, 271, 409, they were made and disseminated. Nor do any of these allegations identify the recipients of these supposed misstatements.

### B. The City Fails to Allege Facts Plausibly Demonstrating That Any Conduct By Endo Caused Any Cognizable Injury

The City still has not adequately pled how any of Endo's supposed misstatements actually caused any health care provider to improperly prescribe any Endo medications to any patient. *See also* Jt. Mem. Part III.C-III.D. Instead, the City tries three new approaches—all of which are futile.

First, the City vaguely pleads about the prescribing practices of four unidentified Doctors A through D. FAC ¶¶ 365-377. In addition to the flaws discussed in the Joint Memorandum, these paragraphs fail to allege that any of these anonymous doctors received even a single, specific misstatement from Endo—much less that any of them relied upon any such statements when they wrote prescriptions for any patients or that those prescriptions caused any harm to anyone.

Second, the City focuses on prescriptions written by "KOLs who served on the speakers bureaus of Cephalon, Endo, and Janssen." FAC ¶ 378. The City fails, however, to identify any particular prescriptions by any specific KOL who was on any Endo speakers bureau. Rather, the City simply lumps Endo together with the other Defendants without specifying which (if any) of these alleged prescriptions resulted from misstatements by Endo or might have caused harm to any patient or to the City. The City itself contradicts the notion that these KOLs were misled when it alleges that these same KOLs were so aligned with Defendants' commercial goals that they were enlisted to help sell opioid medications. *See id.* ("these doctors were paid and trained by Defendants to assist in marketing opioids to treat chronic pain"); *see also* FAC Section V.C.2.a.

Third, the City tries to rely on allegations about the supposed success of Endo's marketing strategy as a substitute for the specific casual allegations required (for example, by

11

alleging an increase in prescriptions written by doctors who were visited by Endo sales staff, FAC ¶ 276). *See also, e.g.*, *id.* ¶¶ 185, 225. Once again, this generalized approach not only fails to identify the specific physicians who were supposedly misled or the actual statements that caused them to be misled, but also fails to identify any inappropriate or unnecessary prescriptions they wrote. Even the most specific of the allegations in this vein illustrates these shortcomings. In paragraph 277 of the FAC, the City alleges that Endo found prescribers had better recall of sales messages and were more willing to prescribe Opana ER "[w]hen it rolled out certain materials." But the City never alleges: what these materials were; when they were distributed; which doctors received them and retained the alleged misstatement; and—most importantly—which allegedly improper prescriptions were written due to any alleged misrepresentations.

### C. The City's Conspiracy Claims Fail As Well

In addition to the reasons given in the Joint Memorandum, the City's conspiracy claims in Count V (conspiracy to make false claims) and VIII (civil conspiracy) must be dismissed specifically as to Endo because the FAC never alleges any facts showing that Endo reached any agreement with any other Defendant; nor does it contain any allegation as to what Endo individually did to join the supposed conspiracy or to learn of its aims and scope. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (for a fraud conspiracy, Rule 9(b) requires specifically pleading "when it was made or which individuals . . . arranged the conspiracy"); *see also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (aside from Rule 9(b), "normal pleading standards" require dismissing a complaint that "lumps all the defendants together," because "it remains essential to show that a particular defendant joined the conspiracy and knew of its scope") (citation omitted); *United States ex rel. Bartlett v. Tyrone Hosp.*, 234 F.R.D. 113, 124 (W.D. Pa. 2006) (dismissing conspiracy count under the False

Claims Act because the complaint failed "to state the existence of an agreement to defraud the Government by the Defendants"); *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 140-41 (1999) ("parallel conduct alone is insufficient to establish civil conspiracy . . . . basic economic principles dictate that competitive companies will often act in a highly similar manner.") (internal quotations and alterations omitted).

### III. CONCLUSION

For the foregoing reasons, the Court should grant Endo's motion to dismiss.

Dated:  December 19, 2014                                       Respectfully submitted,


      /s/ Joshua M. Davis
One of the Attorneys for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.

Peter V. Baugher ARDC# 0138282
Kristen E. Hudson ARDC #6281191
SCHOPF & WEISS LLP
One South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-9300
Fax: (312) 701-9335
baugher@sw.com
hudson@sw.com


Steven G. Reade (*admitted pro hac vice*)
Joshua M. Davis (*admitted pro hac vice*)
Melissa Ku (*admitted pro hac vice*)
Joanna Persio (*admitted pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
Telephone: (202) 942-5000
Fax:  (202) 942-5999
Steven.Reade@aporter.com
Joshua.Davis@aporter.com
Melissa.Ku@aporter.com
Joanna.Persio@aporter.com

**CERTIFICATE OF SERVICE**

    I, Joshua M. Davis, an attorney, hereby certify that a true and correct copy of Defendants Endo Health Solutions Inc.'s and Endo Pharmaceuticals Inc.'s Memorandum of Law in Support of their Motion to Dismiss was filed electronically with the Clerk of the Court using the CM/ECF System, which will automatically provide electronic notice upon all counsel of record on this 19th day of December, 2014.

                                                    /s/ Joshua M. Davis