IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | |
| v. | Case No. 14-cv-04361 |
| PURDUE PHARMA L.P. *et al.*, | Hon. Jorge Luis Alonso |
| Defendants. | |

## THE PURDUE DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company (the "Purdue Defendants") respectfully submit this motion for reconsideration with respect to that portion of the Court's May 8, 2015 Memorandum Opinion and Order ("Order," Dkt. No. 288) ruling that certain allegations regarding material posted on two Purdue websites "are sufficient to state claims against the Purdue entities for violations of [Chicago Municipal Code §§ 2-25-90 and 4-276-470." (*Id.* at 29.)

**Procedural Background**

1. On May 8, 2015, this Court issued a Memorandum Opinion and Order (Dkt. No. 288) dismissing the First Amended Complaint ("FAC," Dkt. No. 186) as to all counts against all defendants, with the exception of Counts One and Two as to certain website allegations against the Purdue Defendants.

2. Counts One and Two of the FAC allege consumer fraud under Sections 2-25-090 and 4-276-470 of the Chicago Municipal Code. Given that Counts One and Two sound in fraud, this Court held that the allegations "must be pleaded 'with particularity'; that is, they must 'provide

the who, what, when, where and how' of the fraud.  Fed. R. Civ. P. 9(b); *Borsellino v. Goldman*

*Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quotations omitted)."  (Order at 16.)

      3.  Enumerating the thirteen allegations of fraudulent representations set forth against

the Purdue Defendants, the Court referenced two purported misrepresentations attributed to

Purdue websites:

> (9) has a website, "*In the Face of Pain* (inthefaceofpain.com), which states
> that policies that 'restrict[] [opioid] access to patients with pain who also
> have a history of substance abuse' and 'requir[e] special government-
> issued prescription forms for the only medications that are capable of
> relieving pain that is severe' [are] 'at odds with' best medical practices"
> and that a patient whose doctor will not give him enough opioids, should
> find another who will;
> . . . .
> (12) in 2005, posted a pamphlet on its website, *Partners Against
> Pain.com*, titled *Clinical Issues in Opioid Prescribing*, which
> distinguished pseudoaddiction from addiction;

(Order at 28-29 (alteration in original).)

      4.  With respect to the Purdue Defendants, the Court concluded:

> Though most of these allegations suffer from the same flaws as those
> leveled against other entities, the allegations that, starting in 2005 and
> continuing to the present, the Purdue entities made misstatements about
> opioids on their own websites with the intention that Chicago doctors and
> consumers rely on those misrepresentations are sufficient to state claims
> against the Purdue entities for violations of Code §§ 2-25-90 and 4-276-
> 470.

(Order at 29.)

## Standard of Review

      5.  The Purdue Defendants acknowledge that motions for reconsideration are rarely

appropriate.  Yet, the Seventh Circuit has noted that "[a] motion for reconsideration performs a

valuable function where 'the Court . . . has made an error not of reasoning but of apprehension.'"

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983), and

noting "Justice Cardozo also recognized the utility of the motion to reconsider" to correct "some

misapprehension or inadvertence"); *see also Patrick v. City of Chicago*, No. 14-CV-3658, 2015

WL 1880389, at *2 (N.D. Ill. Apr. 23, 2015); *Flowers v. Accelerated Bureau of Collections*, No.

96 C 4003, 1997 WL 224987, at *1  (N.D. Ill. 1997).

## Argument

6.  As set forth below, there are two principal reasons why the City's allegations

regarding the Purdue websites fail to state a claim:  (1)  As with the websites alleged against

other defendants, the FAC does not allege "that Chicago doctors or consumers visited the

websites or otherwise indicate when, how, and to whom the alleged misrepresentations were

made" (Order at 26); and (2) The allegations relating to each website, when required to be

alleged with particularity, cannot plausibly provide the basis for an actionable fraud claim (Order

at 16, 20-21).

A.    As with other defendants, the FAC fails to allege the "who, what, when, where, and how"
of the allegedly fraudulent Purdue website statements.

7.  The requirement that a complaint alleging fraud must "'provide the who, what, when,

where and how' of the fraud" (Order at 16 (quoting Fed. R. Civ. P. 9(b)), applies to website

postings as it does to advertisements, pamphlets and other sources of communication.  *See, e.g.*,

*Ritacca v. Storz Medical, A.G.*, 291 F.R.D. 176, 179-180 (N.D. Ill. 2013) (dismissing complaint

for failure to plead consumer fraud regarding information posted on "corporate websites" with

requisite particularity).   Thus, as this Court held with respect to allegations regarding other

websites, dismissal is warranted in those circumstances in which the City fails to allege with

particularity "that Chicago doctors or consumers visited the websites or otherwise indicate when,

how, and to whom the alleged misrepresentations were made."  (Order at 26; *see also id.* at 27

(addressing allegations regarding the website "Prescriberesponsibly.com" and holding dismissal was required because there are no allegations "about where or when" the "entities made these alleged misrepresentations to Chicago doctors or consumers").)[1]

8. With respect to the Purdue Defendants, the Court enumerated allegations pertaining to two websites: (1) *In the Face of Pain* (inthefaceofpain.com); and (2) *Partners Against Pain.com* (partnersagainstpain.org). (Order at 28-29.) As to the first website, the allegations in the FAC pertain to a posting entitled "Protecting Access to Pain Treatment" (FAC ¶¶ 255, 260 & n.124, 267); as to the second website, the allegations in the FAC pertain to a posting entitled "Clinical Issues in Opioid Prescribing" (FAC ¶ 262).

9. As with the other websites addressed by the Court in its Order, no allegation in the FAC alleges with particularity "that Chicago doctors or consumers visited the websites or otherwise indicate when, how, and to whom the alleged misrepresentations were made." (Order at 26.) There is not a single allegation of any Chicago doctor or consumer ever reviewing the "Protecting Access to Pain Treatment" article posted on the inthefaceofpain.com website or the "Clinical Issues in Opioid Prescribing" article posted on the partnersagainstpain.org website, let alone an allegation that any particular representation set forth in those articles affected in any manner a prescription written by a Chicago doctor or reimbursed by the City. Nothing in the FAC provides the requisite particularity and necessary information regarding who from Chicago accessed the website, when they accessed the website, the specific allegedly false statement

---

[1] To the extent the Court's Order distinguishes, in part, between "sponsored" websites and websites operated by a defendant, that distinction would not differentiate the Purdue websites from those of other defendants. For instance, as the Court noted, the Janssen Entities "'currently run[] a website, Prescriberesponsibly.com . . . , which claims that concerns about opioid addiction are 'overstated.'" (Order at 27.) Yet, the Court properly dismissed those website allegations against the Janssen Entities for failure to plead fraud with requisite particularity. (*Id.*)

which they reviewed on the website, why such a statement is false, or how any such statement on the website affected any prescription the City paid for.[2]

B.  No plausible fraudulent misrepresentation can be alleged with particularity

10.  Moreover, the City's failure to meet the requirements of Federal Rule of Civil Procedure 9(b) is underscored by consideration of the two identified postings at issue.[3]  The City cannot plausibly allege actionable misrepresentations arising from either website posting.  *See, e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939-940 (7th Cir. 2001) ("As a matter of law, none of the three statements on which Bober based his CFA claim is deceptive."); *Ibarrolo v. Kind LLC*, No. 13 C 50377, 2015 WL 1188498, at *3 (N.D. Ill Mar. 12, 2015) (dismissing because "challenged statement was not misleading as a matter of law").  (*See also* MTD at 20-26; Reply at 10-16.)

11.  For example, the City does not allege that the "Clinical Issues in Opioid Prescribing" article at issue was ever posted on the partnersagainstpain.org website at any time other than 2005.  Instead, Plaintiff artfully pleads that "Purdue's unbranded website, Partners Against Pain.com posted a pamphlet in 2005 and upon information and belief circulated after 2007 titled, *Clinical Issues in Opioid Prescribing . . .* " (FAC ¶ 262), inherently acknowledging that there is

---

[2]  As set forth in the Joint Motion to Dismiss filed by the Purdue Defendants, the City's allegations, including those pertaining to the two Purdue websites at issue, fail to allege with any particularity "***who*** received" an alleged misrepresentation from the website; "***what*** supposedly false statement[]" was made on the website or "***why*** any such statement was false"; "***when*** any particular false statement was made or ***when*** the City reimbursed for prescriptions" based on any alleged misrepresentation contained on the websites; or "***how*** any alleged fraudulent acts affected any prescriptions the City paid for."  (*See* Mem. Supp. Defs.' Joint Mot. to Dismiss ("MTD") at 17, Dkt. No. 229; *see also* Reply Supp. Defs.' Joint Mot. to Dismiss ("Reply") at 6-10, Dkt. No. 262.)

[3]  The postings themselves are properly considered at the Motion to Dismiss stage because they are expressly referenced in the FAC.  *See* MTD at 2 n.4 and the precedent cited therein.

no basis to allege that the pamphlet was "posted" on the website at any time other than 2005. The "when" and "who" are thus critical, as the City fails to identify a single doctor or patient who reviewed that web posting in 2005, let alone that the website posting of the pamphlet played a role in the prescription of any Purdue opioid in Chicago. More fundamentally, the posting in 2005 predates even the enactment of Section 2-25-090 of the Chicago Municipal Code, which was not enacted until November 19, 2008. There is no basis in law by which the posting of the pamphlet on the website only in 2005, and not "continuing to the present" (Order at 29) can provide a valid basis for a cause of action for violating Section 2-25-090.

12. With respect to the "Protecting Access to Pain Treatment" article posted on the inthefaceofpain.com website, there is similarly no plausible basis to allege a fraudulent misrepresentation claim. The *actual* article, attached hereto as Exhibit A and properly considered at the motion to dismiss stage given its express reference in the FAC (FAC ¶ 260 n.124), makes plain that the cursory allegations in the FAC mischaracterize the article. The actual content of the article provides no plausible basis for a fraud claim. First, contrary to the assertion that the article "states . . . that a patient whose doctor will not give him enough opioids, should find another who will" (Order at 28), there is no such statement or representation of any kind in the article. *See, e.g.*, *Bober*, 246 F.3d at 938. To the contrary, the article discusses "the major public health concern" of prescription drug abuse, recounts statistics regarding the costs of prescription pain medication abuse, and addresses studies regarding the different state policies to address the issue. (Ex. A). Second, the criticisms of the policies in "some states" that the FAC selectively quotes in truncated form are, in fact, *cited* statements from a publication entitled "Achieving Balance in State Pain Policy: A Progress Report Card (CY 2013)" prepared and presented by the Pain & Policy Studies Group from the Carbone Cancer Center at the University

of Wisconsin School of Medicine and Public Health.  The Carbone Cancer Center publication, attached hereto as Exhibit B, is sponsored by the American Cancer Society, the American Cancer Society Cancer Action Network, Inc., and the Livestrong Foundation.  *See* Ex. B at 1-2.  The purportedly fraudulent representations set forth in the FAC are, in fact, criticisms of certain state policies towards prescription pain care identified by the Carbone Cancer Center in its own work and recounted faithfully in the "Protecting Access to Pain Treatment" article with proper citation. *Compare* Order at 28, *with* Ex. B at 11-12.  The "Protecting Access to Pain Treatment" article further states that the "sites referred to in this document are not associated, affiliated, or controlled by Purdue and Purdue takes no responsibility for the content of those sites."  Ex. A at 1 n.1.  Notably, the article further advises:  "This is not intended to be a comprehensive summary of available information on this topic.  Please consult with your health care professional for additional information."  *Id.*  Accordingly, there is nothing plausibly fraudulent about repeating a reputable cancer center's views regarding public policies concerning opioids.

13.  While Purdue recognizes that "drug labels do not preclude fraud claims based on the misrepresentations of the label information" (Order at 21), neither article is in any manner inconsistent with FDA-approved label information or constitutes any plausible misrepresentation of label information.  Unsurprisingly, the FAC fails to identify with particularity any such alleged inconsistency.[4]  There is no plausible basis by which the articles at issue, when

---

[4] For instance, the distinction between "addiction" and "pseudoaddiction" discussed in the "Clinical Issues in Opioid Prescribing" article is a conceptual distinction set forth in the FDA-approved label for OxyContin.  The article notes that "[p]suedoaddiction is a term which has been used to describe patient behaviors that may occur when pain is undertreated.  Patients with unrelieved pain may become focused on obtaining medications, may 'clock watch,' and may otherwise seem inappropriately 'drug seeking.'"  *See* "Clinical Issues in Opioid Prescribing," attached hereto as Ex. C at 2.  The FDA-approved labeling for OxyContin recognizes the same distinction.  Section 9.2 (Abuse) of the FDA-approved labeling for OxyContin states that

appropriately considered in context, could be construed to mislead a prescribing physician. *See, e.g.*, *Bober*, 246 F.3d at 938-40; *Ibarrolo*, 2015 WL 1188498, at *4 ("The Court must view the allegedly misleading information in light of the information available. . . ."); Reply at 6-10.

14. In sum, "the complaint fails to describe any sort of plausible 'what' of the fraud." *Borsellino*, 477 F.3d at 508; *see also Par Sterile Prods.*, 2015 WL 1263041, at *6 ("The Court cannot draw a reasonable inference that [Defendant's] statements are misleading based on the allegations [Plaintiff] has made."); *Lesniak v. Bank of America, N.A.*, 13 CV 4694, 2015 WL 996825, at *5-6 (N.D. Ill. Mar. 3, 2015) (plaintiff "has not plausibly alleged fraudulent misrepresentation"); *Greifenstein*, 2013 WL 3874073, at *4 (dismissing because Plaintiff's complaint "does not plead with particularity *how* the wrinkle-repair claims she identifies are false" (alteration in original)); Reply at 6-10. Nothing with respect to the articles at issue constitutes an actionable misrepresentation or could plausibly be construed as a fraudulent misrepresentation that would mislead prescribing physicians or their patients.

15. The Purdue Defendants respectfully submit that consistently and uniformly applying the reasoning set forth in the Order to the website allegations as to the Purdue Defendants warrants the dismissal of allegations against the Purdue Defendants. As this Court held with respect to allegations regarding websites, dismissal is warranted because the City fails to allege with particularity "that Chicago doctors or consumers visited the websites or otherwise indicate when, how, and to whom the alleged misrepresentations were made." (Order at 26.) For the

---

"[a]buse and addiction are separate and distinct from physical dependence and tolerance" and notes that "[p]reoccupation with achieving adequate pain relief can be appropriate behavior in a patient with poor pain control." *See* FDA-approved prescription drug label, attached as Exhibit D at 17-18.

foregoing reasons, the same reasoning and principles of law should apply to the website allegations concerning the Purdue Defendants. [5]

WHEREFORE, the Purdue Defendants respectfully request that the Court grant this Motion for Reconsideration and amend its Memorandum Opinion and Order to also dismiss all allegations as to the Purdue Defendants.

---

[5] As the Court is aware, the City of Chicago intends to file a Second Amended Complaint against the Purdue Defendants and other defendants. Accordingly, the Court may prefer, for purposes of judicial efficiency, that the matters presented in this Motion for Reconsideration await that amended complaint and be presented in the context of a motion to dismiss the Second Amended Complaint.

Dated:   May 26, 2015

Respectfully submitted,

By:  /s/ Patrick J. Fitzgerald
    R. Ryan Stoll
    Patrick Joseph Fitzgerald

    SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
    155 N. Wacker Drive
    Suite 2700
    Chicago, IL 60606
    (312) 407-0508
    ryan.stoll@skadden.com
    patrick.fitzgerald@skadden.com

    *Attorneys for Defendants Purdue Pharma*
    *L.P., The Purdue Frederick Company,*
    *Inc., and Purdue Pharma, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2015, I electronically filed the foregoing The Purdue

Defendants' Motion for Reconsideration with the clerk of the court using the CM/ECF system

which will send notification of such filing to the e-mail addresses denoted on the electronic Mail

Notice List.

Executed on May 26, 2015, at Chicago, Illinois.

 /s/ Patrick J. Fitzgerald

Patrick Joseph Fitzgerald