**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CITY OF CHICAGO, a municipal corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-cv-04361 |
| v. | ) | Honorable Jorge L. Alonso |
| | ) | |
| PURDUE PHARMA L.P.; PURDUE | ) | |
| PHARMA INC.; THE PURDUE FREDERICK | ) | |
| COMPANY, INC.; TEVA | ) | |
| PHARMACEUTICALS USA, INC.; | ) | |
| CEPHALON, INC.; JOHNSON & JOHNSON; | ) | |
| JANSSEN PHARMACEUTICALS, INC.; | ) | |
| ORTHO-MCNEIL-JANSSEN | ) | |
| PHARMACEUTICALS, INC. n/k/a JANSSEN | ) | |
| PHARMACEUTICALS, INC.; JANSSEN | ) | |
| PHARMACEUTICA, INC. n/k/a JANSSEN | ) | |
| PHARMACEUTICALS, INC.; DEPOMED | ) | |
| INC.; ENDO HEALTH SOLUTIONS INC.; | ) | |
| ENDO PHARMACEUTICALS INC.; | ) | |
| ALLERGAN PLC; f/k/a ACTAVIS PLC; | ) | |
| ACTAVIS, INC. f/k/a WATSON, | ) | |
| PHARMACEUTICALS, INC.; WATSON | ) | |
| LABORATORIES, INC.; ACTAVIS LLC; and | ) | |
| ACTAVIS PHARMA, INC. f/k/a WATSON | ) | |
| PHARMA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**ENDO HEALTH SOLUTIONS INC.'S AND ENDO PHARMACEUTICALS INC.'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
**UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

RULE 12(B)(6) STANDARD .............................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I. All of the City's Claims Fail Because the SAC Does Not Allege Any Fraudulent Conduct By Endo ......................................................................................................................... 2

    A. The SAC Still Does Not Plausibly or Particularly Allege that any Endo-Specific Statements Are False or Misleading .......................................................................... 2

        1. The City's "patient function" claims fail as to Endo ..................................... 3

        2. The SAC does not allege that Endo minimized opioid risks compared with NSAIDs or other treatment alternatives ....................................................... 6

        3. The SAC does not allege deceptive "opioid withdrawal" claims by Endo............... 7

        4. The SAC does not allege actionable concealment of risks associated with "higher doses of opioids" by Endo .................................................................. 8

        5. The SAC does not allege that Endo deceptively concealed the risks of opioid addiction.................................................................................................. 9

    B. The SAC Still Does Not Allege Any Basis for Endo's Liability for Third-Party Conduct and Statements ......................................................................................... 11

        1. Allegations that Endo provided funding or grants to third parties are insufficient to show an agency relationship .......................................................... 12

        2. Allegations that Endo worked with or took the same positions as third parties are insufficient to show an agency relationship.......................................... 13

        3. The City has not adequately pled liability for third-party statements under Rule 9(b) ................................................................................................... 15

        4. The City has not adequately alleged aiding and abetting liability .......................... 15

    C. The SAC's Allegations Regarding Conduct Outside of Chicago Must Be Dismissed..... 16

II. The City Still Fails To Allege Any Causal Link Between Endo's Conduct and Any Injury ................................................................................................................................ 17

III. The City Fails to Allege Any Conspiracy Implicating Endo ........................................... 20

CONCLUSION.................................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
614 F. Supp. 2d 1037 (N.D. Cal. 2009) ................................................................6

*Anderson v. Boy Scouts of Am., Inc.*,
226 Ill. App. 3d 440 (Ill. Ct. App. 1992) ............................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................1,8

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ..............................................................................1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................1

*Bettua v. Sears, Roebuck & Co.*,
2009 WL 230573 (N.D. Ill. Jan. 30, 2009) .........................................................7

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
2012 WL 3154957 (N.D. Cal. Aug. 2, 2012) .....................................................19

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ..............................................................................3

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ..................................................................1, 20, 22

*Cincinnati Life Ins. Co. v. Beyrer*,
722 F.3d 939 (7th Cir. 2013) ..............................................................................5

*Connick v. Suzuki Motor Co., Ltd.*,
174 Ill. 2d 482 (1996) ..........................................................................7, 11, 13

*Crichton v. Golden Rule Ins. Co.*,
358 Ill. App. 3d 1137 (Ill. App. Ct. 2005) ....................................................4, 11

*Davis v. G.N. Mortg. Corp.*,
396 F.3d 869 (7th Cir. 2005) ..............................................................................7

*Eckler v. Wal-Mart Stores, Inc.*,
2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) .......................................................5

*Employer Teamsters-Local Nos. 175/505 v. Bristol Myers Squibb Co.*,
    969 F. Supp. 2d 463 (S.D. W. Va. 2013) .............................................................19

*In re Epogen*,
    2009 WL 1703285 (C.D. Cal. June 17, 2009) .................................................3, 6

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375 (1982) ........................................................................................3

*Gredell v. Wyeth Labs., Inc.*,
    854 N.E. 2d 752 (Ill. App. Ct. 2006) ................................................................5

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ........................................................3, 4, 6, 7

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012) ...........................................................................20

*Indiana/Kenkucky/Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon,
Inc.*,
    2014 WL 2115498 (E.D. Pa. May 21, 2014) ....................................................10

*Jepson, Inc. v. Makita Corp.*,
    34 F.3d 1321 (7th Cir. 1994) ...........................................................................2

*Lachmund v. ADM Inv'r Servs., Inc.*,
    191 F.3d 777 (7th Cir. 1999) .....................................................................11, 14

*United States ex rel. Bartlett v. Tyrone Hosp.*,
    234 F.R.D. 113 (W.D. Pa. 2006) ................................................................20, 21

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ...........................................................................19

*New Jersey Citizen Action v. Schering-Plough Corp.*,
    842 A.2d 174 (N.J. Super. Ct. App. Div. 2003) ...........................................4, 8, 10

*In re Text Messaging Antitrust Litig.*,
    2009 WL 5066652 (N.D. Ill. Dec. 10, 2009) ....................................................21

*Thornwood, Inc. v. Jenner & Block*,
    344 Ill. App. 3d 15 (2003) .............................................................................16

*Vasiljevich v. Levit*,
    2011 WL 10068639 (Ill. Ct. App. Oct. 31, 2011) ..............................................16

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) .............................................................................2

**Statutes**

Mun. Code Chi. § 1-22-020 ................................................................................................21

Mun. Code Chi. § 2-25-090 ................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................................1

## INTRODUCTION

The City's Second Amended Complaint ("SAC")—and its corresponding 300+ pages, and 800+ paragraphs—is a case study in simultaneously saying a lot and nothing at all. The new allegations the City has added do not cure the defects that resulted in dismissal of its prior complaint. Like that complaint, the SAC still fails to provide factual allegations that—assuming for purposes of this motion are true—demonstrate any actionable conduct attributable to Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (collectively, "Endo") that is plausibly and particularly pled, or that such conduct caused any recoverable injury. For those reasons, as well as the others stated herein and in the Defendants' joint briefing, the Court should reject the City's attempted second bite at the apple and dismiss the SAC in its entirety.

## RULE 12(B)(6) STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires well-pled allegations that transcend the "speculative" and "conceivable" and are more than "merely consistent with a defendant's liability," disregarding a complaint's "legal conclusions" and "conclusory statements." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677-79. Moreover, because all of the SAC's claims here sound in fraud, they must also meet the particularity standard of Fed. R. Civ. P. 9(b) to avoid dismissal. This requires the City to provide the specific "who, what, when, where, and how" of the alleged scheme. *E.g.*, *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

## ARGUMENT

This Court previously dismissed all of the City's claims against Endo for three primary reasons. First, because the City failed to plead with the requisite plausibility or particularity any

alleged misrepresentations by Endo under Chicago and Illinois law.  *See* Order at 26, 32.

Second, because the City failed to provide allegations sufficient to infer that Endo can be held

liable for statements made by third-party individuals or organizations.  *Id.* at 26.  And finally,

because the City failed to allege that Endo's purported conduct caused the City harm.  *Id.* at 32,

33.  The SAC suffers from the identical defects.  While the City has expanded the length of its

former complaint, it has done so by multiplying the number of insufficient allegations.  Thus, the

SAC offers only more of the same.  Accordingly, the Court should dismiss the claims against

Endo.

## I.    ALL OF THE CITY'S CLAIMS FAIL BECAUSE THE SAC DOES NOT ALLEGE ANY FRAUDULENT CONDUCT BY ENDO

### A.    The SAC Still Does Not Plausibly or Particularly Allege that any Endo-Specific Statements Are False or Misleading

The SAC alleges that Endo and the other Defendants:  (1) "misrepresented that opioids

improve function"; (2) "deceptively minimized the adverse effects of opioids and overstated the

risks of NSAIDs"; (3) "falsely claimed withdrawal is easily managed"; (4) "misrepresented or

omitted the greater dangers from higher doses of opioids"; and (5) employed a variety of claims

to "mask[]" or "misrepresent[]" opioid addiction risks.  SAC ¶ 215.  As a threshold matter, the

SAC repeatedly attributes these conclusory allegations to "Defendants,"[1] unfairly ascribing

cumulative alleged conduct from one defendant to another, which alone is grounds to dismiss the

SAC in its entirety.  *See, e.g.*, *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328-29, 1331 (7th

Cir. 1994) (affirming dismissal and explaining that "plaintiffs must take care to identify which

[of multiple defendants] was responsible for the individual acts of fraud");  *Vicom, Inc. v.*

*Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778  (7th Cir. 1994) (affirming dismissal and

---

[1] *See, e.g.,* SAC ¶¶  6-13, 21-22, 70, 85, 86, 89-91, 93, 125-133,150-52, 168, 172, 176, 177, 181, 200-01, 205, 208, 210, 214, 234, 246, 250.

explaining that "in a case involving multiple defendants" the complaint must "inform each defendant of the nature of his alleged participation in the fraud" rather than "vaguely attribut[ing] the alleged fraudulent statements to 'defendants.'").

Moreover, even the handful of Endo-specific allegations buried in the SAC's hundreds of paragraphs do little to salvage the City's case. Beyond conclusory assertions, not one involves actionable fraud that has been plausibly and particularly pled. To survive dismissal, however, the City must allege facts sufficient to show conduct that is actionable and must also aver sufficient detail to comply with Rule 9(b). *See, e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939-40 (7th Cir. 2001) (affirming 12(b)(6) dismissal of consumer fraud claims that were not supported by allegations sufficient to show statements were actionable); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015) (dismissing consumer fraud claim for "fail[ure] to plausibly allege how" asserted misrepresentation was deceptive); *In re Epogen*, No. MDL 08-1934, 2009 WL 1703285, at *5-6 (C.D. Cal. June 17, 2009) (dismissing claims where plaintiff failed to provide "substantive allegations" to "adequately flesh out their claims of fraud" or "explain how specific information booklets, CME programs, and promotional materials … were false of deceptive"). The SAC fails as to Endo in both respects.

### 1. The City's "patient function" claims fail as to Endo

As to its claim that Defendants generally "misrepresented that opioids improve function," SAC ¶ 215, the City's central contention about Endo is that the company deceptively promoted Opana ER by distributing promotional pieces to physicians that depicted either a "46-year-old chef with chronic low back pain" who "needs a treatment option with true 12-hour dosing" or a "construction worker who was reported to suffer from chronic low back pain," suggesting that

"Opana ER will make it more likely that [he] can return to work and support his family." SAC

¶¶ 413, 414.[2] These cannot support a fraud claim.

First, the City does not allege that these advertisements were in fact false, or even that

they are factual representations; instead, the SAC states that they "*suggested* that using Opana

ER . . . would allow patients to perform demanding tasks." SAC ¶ 413 (emphasis added). But

"mere subjective descriptions"—like these—"do not qualify as fraudulent misrepresentations"

under the Municipal Code of Chicago ("MCC") or Illinois law. *E.g.*, *Crichton v. Golden Rule*

*Ins. Co.*, 358 Ill. App. 3d 1137, 1147 (Ill. App. Ct. 2005); *see also New Jersey Citizen Action v.*

*Schering-Plough Corp.*, 842 A.2d 174, 177-78 (N.J. Super. Ct. App. Div. 2003) (affirming

dismissal of consumer fraud complaint premised on claims that by using defendant's

pharmaceutical product "you . . . can lead a normal nearly symptom-free life again" because

"[t]his and similar statements in Schering's DTC advertising for these products are, simply put,

not statements of fact, but are merely expressions in the nature of puffery and thus are not

actionable").

Second, the City does not allege that the statements concerning the depicted patients are

false, that the patients do not suffer from chronic pain making them inappropriate candidates for

Opana ER, or that treatment of chronic pain may never improve a patient's abilities to work or

engage in other activities. *See, e.g.*, *In re Epogen*, 2009 WL 1703285 at *6 ("if Amgen had

falsely represented in its informational materials that EPO was FDA-approved for an off-label

use, such conduct would almost certainly be fraudulent. Similarly, if Plaintiffs alleged that

Amgen made untrue statements about the results of a particular study, this would likely support a

---

[2]    The City also points to internal Endo materials alleged to depict another patient who "suffers from chronic pain" and was able to "go out and do things" after taking Opana ER, or which suggest that "treatment with opioids is very favorable in most cases." SAC ¶¶ 415-416. But the City does not allege that these materials or messages were used externally. Even if it had, these claims fail to demonstrate actionable conduct for the same reasons discussed above.

. . . state consumer law claim. As currently pled, however, Plaintiffs have not stated any particularized facts which, if true, establish that Amgen fraudulently misrepresented the effectiveness of EPO."). To the contrary, the City's allegations reflect only that the functional benefits of using an opioid analgesic for pain relief may be *less* as compared "to other prescription pain medications" or "over other non-addicting treatments." SAC ¶¶ 72, 73. This does not make Endo's advertisements false or deceptive—the advertisements are not alleged to compare Opana ER to other treatments, much less to compare potential functional outcomes of different therapies. "When false advertising claims do survive a motion to dismiss . . . there is not this kind of mismatch between the representations at issue and the evidence that allegedly debunks them." *Eckler v. Wal-Mart Stores, Inc.*, No. 12-cv-727, 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) (dismissing consumer fraud claims); *see also Gredell v. Wyeth Labs., Inc.*, 854 N.E. 2d 752, 756 (Ill. App. Ct. 2006) ("Lack of substantiation is deceptive only when the claim at issue implies there is substantiation for the claim, *i.e.,* if defendants had claimed something along the lines of 'tests show that [x product] is effective for [a given ailment]' or '[x product] is more effective for [that ailment] than [y product].'").

The City also attempts to allege that Endo is liable for "misleading" patient function claims by asserting that APF, a third party pain organization, stated on the painknowledge.com website that patients using an opioid to treat chronic pain "*may* find [they] are now able to participate in activities of daily living," or that their level of function "*should* improve." SAC ¶ 221(i) (emphases added). As discussed below, the City has failed to allege that this claim and all others made by third parties can be attributed to Endo.[3] But in any event, the City also fails to allege that this website snippet is actionable fraud. The same is true as to the City's remaining non-specific "deceptive" claims reflected in CMEs or other materials that Endo did not craft or

---

[3]        *See infra* Section I.B.

5

make. *See* SAC ¶¶ 221(j), (l)-(m), 452. The City "makes tendentious leaps in concluding that [Endo's] marketing efforts [were] false and misleading simply because [Endo or other non-parties] presented [a] drug product in the best possible light." *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1054-55 (N.D. Cal. 2009). These leaps are insufficient to surpass the standards for defeating a motion to dismiss. *See, e.g., id.*

### 2. The SAC does not allege that Endo minimized opioid risks compared with NSAIDs or other treatment alternatives

The SAC also fails to plead that any conduct—attributed to Endo—"deceptively minimized the adverse effects of opioids and overstated the risks of NSAIDs." SAC ¶ 215; *see also id.* ¶ 742(g). The SAC asserts only that Endo distributed a case study (*Case Challenges in Pain Management: Opioid Therapy for Chronic Pain*) to prescribers that discussed as an "example" a "patient who had taken NSAIDs for more than eight years and, as a result, developed a 'massive upper gastrointestinal bleed'" and "recommended treating this patient with opioids instead." SAC ¶ 418; *see also id.* ¶ 252(f).[4] The City does not allege that patients may not develop gastrointestinal bleeding from prolonged NSAID use, or any other reason why this statement would be deceptive. Simply calling a case study "deceptive," SAC ¶ 252, does not make it so and is not sufficient even at the pleading stage. *See, e.g., Ibarrola*, 83 F. Supp. 3d at 756-57 (dismissing Illinois consumer fraud claim where allegations did not plausibly show how consumer would be deceived by alleged fraudulent marketing).

The City also alleges that APF (not Endo) included on its website a "list" of some, but not all, opioid-related adverse events, and that APF (not Endo) distributed *Exit Wounds*, which

---

[4]    The City alleges also that unnamed "Endo sales representatives" told unnamed Chicago prescribers that "NSAIDs were more toxic than opioids," but provides no specifics of any of these supposed conversations (e.g., to whom Endo made such claims, when Endo did so, or which sales representatives were involved). SAC ¶ 252(i). Furthermore, the City fails to provide any allegations regarding the "toxic[ity]" of opioids as compared to NSAIDs and accordingly alleges no basis for the Court to infer that such a statement would be false or misleading. *Id.*

"omitted warnings of the risk of interactions with opioids and benzodiazepines." SAC ¶ 252(g)-(h). Even if these purported omissions had been attributed to Endo, the SAC fails to provide any basis for the Court to infer that the "omissions" from isolated website or textbook snippets were material to any purported fraud. *See, e.g.*, *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 504 (1996) (evaluating whether allegations demonstrated materiality of claimed omission sufficient to withstand dismissal); *Bettua v. Sears, Roebuck & Co.*, No. 08 C 1832, 2009 WL 230573, at *3 (N.D. Ill. Jan. 30, 2009) (dismissing consumer fraud claims where "plaintiffs' allegations are insufficiently specific to show a deceptive practice or to permit an inference of materiality"). This shortcoming is particularly significant in this context, where the SAC in fact acknowledges Endo's disclosure of the allegedly concealed information. *See* SAC ¶ 454; *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) ("the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff."); *Ibarrola*, 83 F. Supp. 2d at 759 (dismissing Illinois consumer fraud claim where plaintiff "fail[ed] to plausibly allege how her understanding of the term [at issue] corresponds with the contrary information" defendant had provided).

### 3. The SAC does not allege deceptive "opioid withdrawal" claims by Endo

The City next asserts that Defendants "falsely claimed withdrawal [from an opioid product] is easily managed," SAC ¶ 215, but only alleges that Endo did so by "sponsoring" an independent CME, *Persistent Pain in the Older Adult*, which "misleading[ly]" "taught that withdrawal symptoms can be avoided entirely by tapering the dose by 10-20% per day for ten days." SAC ¶¶ 241, 244(b); *see also id.* ¶ 445. Other than its conclusory characterization of this CME as "misleading," the City offers no allegations to plausibly show that the statements are fraudulent. Indeed, instruction on methods to manage withdrawal from opioid therapy are

7

entirely consistent with recognition that withdrawal is "always a factor" in discontinuing treatment, as the City claims. SAC ¶ 445. The City does not allege that the method of dose-tapering is false, or otherwise explain why, how, or whether this statement is deceptive. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotations omitted). Here, the City has not even gone that far.

### 4. The SAC does not allege actionable concealment of risks associated with "higher doses of opioids" by Endo

The City's claims regarding Endo's supposed misrepresentations about the "greater dangers from higher doses of opioids," SAC ¶ 215, likewise fail to show any actionable deceit. The City alleges that again APF—not Endo—claimed on a website "that opioids may be increased until 'you are at the right dose of medication for your pain,'" and that a patient pamphlet Endo distributed but did not author, *Understanding Your Pain: Taking Oral Opioid Analgesics*, similarly said that an opioid dose can be increased such that a patient will not "run out" of pain relief. SAC ¶¶ 248(e)-(f); *see also id.* ¶ 470. The City does not allege that it is false to claim that a patient's opioid medication dose can be escalated to achieve an analgesic effect, it does not define or explain what a "high" or "higher dose" of any opioid is, and it does not allege how these claims in particular were interpreted by anyone, much less that the interpretation in some way rendered the claims misleading. Further, the City alleges that these claims were directed at patients, who "as a practical matter" could obtain Endo's opioid medication "only through a physician's prescription"—after consulting with a doctor. *New Jersey Citizen Action*, 842 A.2d at 177. As a result, in this context, "the relationship between the words used in the advertising and purchase of the product is at best an attenuated one." *Id.* at 178 (affirming dismissal of consumer fraud claim); *see also Connick*, 174 Ill. 2d at 505 (materiality means "a

8

buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.").  These claims, too, fail as to Endo.

> **5.**    **The SAC does not allege that Endo deceptively concealed the risks of opioid addiction**

The City's remaining claims generally assert that Defendants, including Endo, "callously manipulate[d] what doctors wanted to believe" by concealing the potential risk of addiction associated with opioid medications, SAC ¶ 23, and that "Defendants' efforts were wildly successful."  SAC ¶ 12.  Yet the City simultaneously acknowledges that the "potential [for] addiction" associated with opioid medications has been long recognized, and that it is likewise reflected in a multitude of sources, including Defendants' own FDA-approved product labels, which "fully disclosed" the allegedly concealed risk.  *See, e.g.*, SAC  ¶¶  58, 65, 67.[5]  Beyond that, the SAC does not identify any statements that are not facially accurate or consistent with supposedly contradictory evidence, and the SAC fails to provide factual allegations from which the Court could infer that any Endo-attributed statement was in fact false or misleading.

For example, the City faults Endo and third parties Endo did not control for claiming that "most people" do not become addicted to opioids, that patients "usually" do not develop an addiction problem, or that opioid use in elderly patients presents "*possibly less* potential for abuse than in younger patients."  SAC ¶¶ 229(k)-(n), (p), (r), 449, 445 (emphasis added).  The City asserts that such statements reflect "outright misrepresentations about the risk of addiction," SAC ¶ 224, but the City does not allege that "most people" *do* become addicted to opioids, that patients *do* "usually" develop an addiction problem, or that there is *not* "possibly less" abuse-potential among elderly opioid medication users.

---

[5]        *See also* Declaration of Melissa A. Ku, Ex. 1 at § 9.2.

The City attempts to ameliorate the consistency between its own statistics of opioid addiction rates (allegedly "between 8% and 12%" (SAC ¶ 226)) and these supposedly fraudulent statements by claiming, for example, that the "the overall presentation" of these claims "suggest[ed] the risk is so low as not to be a worry." SAC ¶ 229(k). Yet the City provides no detail on that "overall presentation," how it renders an otherwise truthful claim misleading, or why the Court should infer that it is the case. *E.g.*, *Indiana/Kenkucky/Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, No. Civ. A. 13-7167, 2014 WL 2115498, at *5-6 (E.D. Pa. May 21, 2014) (fraud is not plausibly alleged if a statement "neither contradicts nor conceals" truthful information). Furthermore, as with many of its other claims, the City fails to allege specifics of who (if anyone) in Chicago has received these messages, when or from whom they received them, or how, when, or whether any recipient has been deceived.[6] *See* Order at 26 (dismissing MCC claims against Endo where City failed to specify "that Chicago doctors or consumers visited the websites or otherwise indicate when, how, and to whom, the alleged misrepresentations were made.").

Finally, to the extent the City attempts to rely on general assertions that "Endo sales representatives omitted discussion of addiction risks related to Endo's drugs" when detailing "Chicago prescribers" or that these risks were "simply not part of the sales conversation," the allegations are too general to support any plausible inference that an alleged omission was misleading and also fail to meet the heightened pleading standards of Rule 9(b). SAC ¶¶ 229(s), 482(h). The City does not allege the complete who, what, when, where, and why needed to satisfy Rule 9(b). These and similar allegations made throughout the SAC, which fail to provide the particulars of alleged instances of fraud, do not save the City's claims.

---

[6]     *See, e.g.*, SAC ¶¶ 404, 409, 411, 415, 416, 424, 427, 445, 465, 473.

### B. The SAC Still Does Not Allege Any Basis to Hold Endo Liable for Third-Party Conduct and Statements

As described above, the City has failed to allege that the third-party statements it attempts to attribute to Endo are false or misleading. Even if it had provided such allegations, Endo cannot be liable for those statements without specific allegations showing that each of the third parties was under Endo's control or acting as Endo's agent. This Court has already held as much, dismissing claims in the City's earlier complaint in part because "the City d[id] not explain what editorial control, if any, the Endo entities had over materials they allegedly sponsored or funded." Order at 32. The SAC suffers from the same defect.

The City attempts to bolster its agency allegations by adding conclusory assertions that Endo exercised control or influence over third-party organizations. But the City has failed to plead facts substantiating these assertions. Accepted as true, the facts the City does allege show only that Endo provided grants or funding to third parties, hired KOLs, collaborated with pain organizations, distributed third-party publications, and advocated for the same policies as third parties.[7] These are no different from the prior complaint's allegations.[8] None shows the requisite control to establish an agency relationship under normal pleading standards, let alone the more stringent test of Rule 9(b). *See Connick*, 174 Ill. 2d at 498 ("A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship."); *Crichton*, 358 Ill. App. 3d at 1146-47 (association not liable for misstatements made by insurer to which association referred its members); *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (applying Rule 9(b) to fraud-based allegations).

---

[7] SAC ¶¶ 94, 96, 138, 143, 147-49, 161, 166, 170, 186, 189, 197-98, 203, 211, 212, 221(i), (l)-(m), 229, 239-240, 248(e)-(f), 252(g)-(h), 372 n.111, 390, 393, 420-21, 423-27, 430, 432-33, 436-39, 441-47, 450-51, 456-58, 462, 465, 469, 471-76, 489-90, 561, 591, 616.

[8] FAC ¶¶ 102, 119, 121-123, 125, 129, 132, 138, 141-142, 145, 149, 151, 155, 159, 164, 167, 182, 186, 188, 190, 193, 196, 204, 207-209, 220, 222-223, 231, 239, 247, 252, 260-261, 264, 267, 271, 278, 409.

1. **Allegations that Endo provided funding or grants to third parties are insufficient to show an agency relationship**

Throughout the SAC, the City alleges that Endo provided funding or grants to third parties to sponsor websites, publications, and CMEs, which the third parties authored, distributed, and conducted.[9] The majority of the City's assertions are substantively similar or identical to the prior allegations in the City's earlier complaint, which this Court held insufficient.[10] *See* Order at 24-26. The few new allegations regarding funding do not warrant a different result now.

The City attempts to save its funding claims in two ways. First, it offers new examples of funding that Endo provided to third parties. *See, e.g.*, SAC ¶¶ 436-37, 442. But these examples fail adequately to plead an agency relationship for the same reasons the Court held other facts regarding funding to be insufficient—mere funding does not show that Endo exercised control over third parties. *See* Order 24-26. If anything, these new allegations show that third-party organizations were independent. *See, e.g.*, SAC ¶¶ 436 (Endo provided "***unrestricted***" grants to NIPC), 442 (questioning value of newsletters when they benefited Endo more than APF), 447 ("APF made a grant ***request to*** Endo") (emphases added).

Second, the City adds conclusory assertions that Endo exerted control over third parties through the funding it provided. *See, e.g.*, SAC ¶¶ 170 (organization reliant on outside funding to create publication), 433 ("Endo provided substantial assistance to, and exercised editorial control, over the deceptive and misleading messages that APF conveyed. . . . Endo was one of AFP's biggest financial supporters"), 439 ("Endo exerted its control over NIPC by funding NIPC

---

[9]     SAC ¶¶ 143, 147, 161, 166, 170, 186, 189, 197-98, 203, 211, 212, 221(i), (l)-(m), 229(k), (m), (p), (r), 240, 248(e), 252(g)-(h), 372 n.111, 427, 430, 433, 436-37, 442, 443, 447, 450-51, 457-58, 465, 471, 490, 616.

[10]     *Compare* SAC ¶¶ 143, 147, 161, 166, 170, 186, 189, 197-98, 203, 211-12, 221, 229, 240, 248, 252, 372 n.111, 427, 430, 433, 443, 447, 450-51, 457-58, 465, 471, 490, 616 *with* FAC ¶¶ 125, 129, 145, 151, 159-60, 163-64, 167, 182, 190, 193, 196, 207-08, 220, 238-39, 247, 252, 260(c), 262, 264, 267, 271, 306.

12

and APF projects"), 451 (alleging medical writer felt compelled to draft publication to meet demands of sponsors). Like the prior allegations dismissed by this Court, *see, e.g.*, FAC ¶ 193 (APF reliant on third-party funding), these assertions do not establish that Endo conditioned any funding upon, or otherwise exercised any control over, the statements these third parties made. *See, e.g.*, *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 395 (1982) ("That the employers fund the activities of the JATC does not render the JATC the employers' servant or agent . . . ."). Nor do these allegations, or any others in the SAC, sufficiently allege that the third-party organizations had actual or apparent authority to act on Endo's behalf. *See Connick*, 174 Ill. 2d at 499 (dismissing complaint when plaintiff failed to allege third parties had the authority to act on behalf of the defendant).

### 2. Allegations that Endo worked with or took the same positions as third parties are insufficient to show an agency relationship

The City also alleges that KOLs and third-party organizations took policy positions aligned with Endo's or that Endo worked with or distributed third-party publications.[11] The Court has already held that materially similar allegations were insufficient to plead an agency relationship,[12] *see* Order at 24-26, and the City's new allegations do not cure this defect. To the contrary, the City's allegations show that Endo and third parties worked collaboratively on various issues, not that Endo controlled others. *See* SAC ¶¶ 202-04 ("collective collaboration"), 434-436 (Endo "worked with" third party and was given "advance notice" and "opportunity to comment" on materials), 456 (Endo "worked closely with other third-party front Groups and KOLs"), 489 (Endo hired a KOL), 591 (Endo and APF put together a presentation).

---

[11]     *See, e.g.*, SAC ¶¶ 94, 138, 148-49, 198, 229, 239, 240c, 248(f), 390, 393, 420-21, 430, 432, 433, 438, 439, 441, 444-46, 456, 462, 469, 472-75, 489, 561, 591.
[12]     *Compare* SAC ¶¶ 138, 148-49, 198, 239, 240, 248, 420-21, 430, 432, 433, 445-46, 462, 469, 472-74, 489, 490, 561, 591 *with* FAC ¶¶ 119, 130-31, 149, 151, 164, 166, 190, 208, 222, 247, 252, 261, 262, 264, 267, 271, 278.

The SAC also adds a handful of conclusory assertions that Endo "exercised control" over third parties by approving, funding, developing, reviewing, and specifying content and distributions, but these allegations do not change the outcome.  *See* SAC ¶¶ 433, 439-440, 446, 489.  That Endo approved or offered comments on materials produced by third parties is irrelevant when the third party is not alleged to be bound to follow Endo's recommendations. The SAC also fails to plead who at Endo purportedly exercised control over third-party content, what Endo told the third parties, when or where these actions took place, or how Endo's actions led to any purported misleading statements.  Absent these allegations, the City cannot establish an agency relationship.  *See Lachmund*, 191 F.3d at 783 (in fraud cases, agency must be pled with particularity under 9(b)).

Similarly, allegations that Endo was able to identify and "enlist" or "vet[]" likeminded third parties whose opinions were consistent with Endo's also fail to establish, even if true, that Endo exercised sufficient control over these third parties to be held liable for their conduct.  *See, e.g.*, SAC ¶¶ 94 (alleging that Endo enlisted "product loyalists" as speakers), 141 (KOLs "were carefully vetted to ensure that they were likely to remain on-message and supportive"), 432 (pain organizations "better placed to make a medical case" than Endo), 444 (Endo and NIPC shared a "common 'mission'").  Again, these facts are similar to the City's earlier, insufficient allegations.  *See* Order at 24-26; *see also* FAC ¶¶ 121-23, 149.  Indeed, the facts reflect that third parties were independent actors who were merely "willing[]" to speak and made their own decisions regarding what to say.  SAC ¶ 465; *see also id.* ¶ 442 (questioning utility of NIPC when Endo profited more than APF).  The allegation that someone is likely to only be willing to write an article or collaborate on a project does not plausibly establish that the person is controlled by Endo or Endo's agent.  Because "[t]he ability or right to control is a key element to

14

the determination" of agency, *Anderson v. Boy Scouts of Am., Inc.*, 226 Ill. App. 3d 440, 443-44 (Ill. Ct. App. 1992), this gap in the City's pleading is fatal to its attempt to hold Endo liable for the alleged misrepresentations of others.

### 3. The City has not adequately pled liability for third-party statements under Rule 9(b)

Even if the City has adequately pled facts establishing an agency relationship between Endo and third parties—which it has not—the City's allegations about these third-party statements are still patently inadequate under Rule 9(b). The SAC fails to plead with particularity who received any of the purported third-party misrepresentations, which KOLs made misrepresentations and the context of those misrepresentations, where and when many of the alleged misrepresentations occurred, and how any alleged representations misled any particular prescriber or patients connected to any of the City's prescriptions. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (Rule 9(b) requires a plaintiff to plead the "'who, what, when, where, and how' of the fraud.") (citation omitted). For example, the SAC alleges that Endo worked with APF to identify authors to respond to a critical journal article, SAC ¶ 434, but nowhere alleges: (1) that Endo controlled the author's end product; (2) who that author was; (3) what the author actually wrote; or (4) when, where, how, or to whom it was distributed. The other allegations all have similar flaws. *See, e.g.*, SAC ¶ 461 (failing to specify when, where, and what conferences, CMEs, or publications Endo allegedly attended, funded, and distributed), ¶¶ 186, 189 (failing to specify how funding led to any misrepresentations), ¶ 229(k) (failing to specify anyone who saw the website, when they saw it, and how they were misled).

### 4. The City has not adequately alleged aiding and abetting liability

The SAC also alleges that Defendants aided and abetted alleged misrepresentations by KOLs and pain organizations. *See, e.g.*, SAC ¶¶ 746-747, 756, 776. But the City has pled no

specific facts as to how Endo aided or abetted any alleged violations. To state a claim for aiding and abetting, a plaintiff must plead that "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28 (2003) (citation omitted). The City pleads no facts showing that Endo was "regularly aware" of its supposed role in any tortious activity or that Endo knowingly and substantially assisted in any violations. Nor does the City show that any alleged wrongful acts by third parties *caused* an injury to anyone. Accordingly, any purported liability premised on aiding and abetting third parties must be dismissed. *See Vasiljevich v. Levit*, 2011 WL 10068639, at *8 (Ill. Ct. App. Oct. 31, 2011) (dismissing complaint for failure to plead substantial knowledge and assistance elements of aiding and abetting claim).

### C. The SAC's Allegations Regarding Conduct Outside of Chicago Must Be Dismissed

In addition to the reasons given in the Joint Memorandum, the City's claims under Count I and II must be dismissed as to Endo for failure to assert conduct occurring in Chicago. The Chicago Municipal Code Section 2-25-090 applies only to those deceptive acts or practices that occur "while conducting any trade or business ***in the city.***" MCC § 2-25-090 (emphasis added). But the SAC fails to connect many of the allegations against Endo to conduct occurring within Chicago.[13] These allegations fail to state any claim under Section 2-25-090. *See* Order at 26 (dismissing claims not connected with Chicago).

---

[13]     *See* SAC ¶¶ 86, 90, 94-95, 97, 102, 104, 107, 138, 143, 147, 149, 157, 161, 166, 184, 186, 189, 197-98, 202-04, 206, 211-12, 221(i)-(k), (m), 229(i)-(j), (l), 229(r), 239, 249(c), 282, 395-96, 398-99, 411, 414-15, 417, 422-243, 428-42, 444, 456, 461, 463-68.

## II. THE CITY STILL FAILS TO ALLEGE ANY CAUSAL LINK BETWEEN ENDO'S CONDUCT AND ANY INJURY

This Court dismissed the City's prior complaint in part because it failed to "allege . . . the identities of doctors who, *as a result of one or more of defendants' alleged misrepresentations*, prescribed opioids for chronic pain."  Order at 32 (emphasis added).  The same is true with respect to the SAC.  The City's cosmetic effort to cure this defect in the prior complaint fails, and the allegations needed to show causation are still lacking.

To begin with, while the City now refers to additional "Chicago Prescribers" beyond those included in its earlier complaint, the SAC's allegations about them are materially similar to those the Court already dismissed.  The City still has not alleged that "as a result" of any Endo-specific conduct, any doctor prescribed an opioid product they otherwise would not have.  *See* Order at 32 (explaining that to avoid dismissal, the City must allege "the identities of doctors who, as a result of [Endo's] alleged misrepresentations" prescribed opioids the City reimbursed).  Instead, the primarily non-specific allegations about the "Chicago Prescribers" reflect that:  (1) these doctors were visited, at unspecified times, by unspecified sales representatives from all or some combination of Defendants and other unspecified "opioid manufacturers";[14] or (2) that these doctors attended unspecified CMEs that the City does not attribute to any Defendant, much less to Endo specifically;[15] and (3) that some of these prescribers—in most cases over the course of nearly a decade—also wrote some opioid prescriptions that the City reimbursed.[16]  As before, the SAC does not connect prescriptions to Endo's alleged misconduct in particular and does not provide detail sufficient even to show that these prescribers wrote any opioid prescription *after*

---

[14]      *See, e.g.*, SAC ¶¶ 296 (a), 482(g), 552(e); *see also id.* ¶ 482(a)-(j).
[15]      *See, e.g.*, SAC ¶ 687 ("These doctors relied on treatment guidelines or scientific articles, attended CMEs, were visited by drug representations"); *id.* ¶ 689 ("Prescriber B also has attended, and continues to attend, drug company-sponsored CMEs").
[16]      *See* SAC ¶ 482.

any Endo-detailing visit.  Instead, the City asks the Court—again—to infer, without support, that particular prescriptions must have been written "as a result of" an alleged Endo misrepresentation about the risks or benefits of its opioid medication.

But the City's other allegations contradict that inference.  First, according to the SAC, "the magnitude of [the] potential for abuse and addiction" associated with opioids "ha[s] been recognized for millennia," "[s]tudies and articles" dating back to "the 1970s and 1980s ma[ke] clear the reasons to avoid opioids," the FDA has acknowledged publically the "grave risks" of opioids, "the most well-known of which include addiction, overdose, and even death," and Endo's FDA-approved product labels "fully disclosed" these risks and the indication for its product.  SAC ¶¶ 56, 65, 68, 81.  Second, the City alleges that the "Chicago Prescribers" who wrote prescriptions for opioids it reimbursed did so, not because they were deceived by Endo's alleged claims, but because these doctors "learned through medical school [and] residency that opioids were safer than NSAIDs and more effective," "observed other providers using opioids for chronic pain and found support for their opioid use in medical literature," or "wished to avoid conflict with patients who requested [opioid medications]."  SAC ¶¶ 696, 700, 702.  These allegations render implausible the City's conclusory assertions that the "deceptive messages" attributed generally to Endo and all other Defendants  "tainted virtually every source doctors could rely on for information and prevented them from making informed treatment decisions," SAC ¶ 23, and instead highlight the mix of information that has long been available to prescribers.

Regardless, just because Endo's supposed misconduct "*could*" possibly have caused prescribers to write prescriptions that they otherwise would not have, does not support any inference—much less particularly show—that they did.  *U.S. ex rel. Nathan v. Takeda Pharm. N.*

18

*Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013) (affirming dismissal where complaint failed to provide sufficient facts to infer that defendant's conduct had caused the submission of false claims); *see also Employer Teamsters-Local Nos. 175/505 v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 472 (S.D. W. Va. 2013) (dismissing state law claims when "the SAC d[id] not allege, let alone plausibly, whether any prescriptions were written based on a misunderstanding of Plavix's efficacy"); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 11-cv-00310, 2012 WL 3154957, at *8-9 (N.D. Cal. Aug. 2, 2012) (dismissing Illinois fraud-based claims where plaintiff failed to provide factual allegations to show that "particular doctors with a 'demonstrated connection' to [it were] deceived").

Furthermore, as is explained in Defendants' joint brief, attaching Endo prescriptions paid for by the City is insufficient to show that Endo caused any injury. First, to the extent these exhibits identify why any reimbursed opioid product was prescribed, the City provides merely that it was to address a patient's chronic pain diagnosis, entirely consistent with the FDA-approved indication for Endo's opioid medication. *See* SAC, Exs. A3, B1, B2. Second, the City never alleges that these prescriptions were written or reimbursed *because of* any Endo-specific conduct. *See* Order at 32.

Finally, the City's allegations about prescriptions written by physicians who participated in Endo's speakers' bureau program are no help. *See* SAC ¶¶ 484-487, 708, 709(f). The City apparently wishes to imply that these physicians, "Chicago Prescribers A, M, U, and V," prescribed Endo opioid medications because Endo motivated them to do so with improper financial incentives. But the SAC offers not one thread of support for such theory. Instead, it makes the conclusory assertion that "these paid speaking engagements incentivized these prescribers to write prescriptions for Endo's opioids, because only doctors who wrote Endo

19

prescriptions were considered for the role." SAC ¶ 487. This is yet another attempt by the City to distract from the SAC's substantive shortcomings with meaningless, disjointed assertions.

## III. THE CITY FAILS TO ALLEGE ANY CONSPIRACY IMPLICATING ENDO

In addition to the reasons given in the Joint Memorandum, the City's conspiracy claims in Counts VI and XIV must be dismissed as to Endo because the SAC still fails to allege any facts showing that Endo reached an agreement to commit an unlawful act with any other Defendant or third party, or that Endo knew of and participated in a common plan to harm the City. *See Borsellino*, 477 F.3d at 509 (Rule 9(b) requires specifically pleading "when [the conspiracy] was made or which individuals . . . arranged the conspiracy"); *United States ex rel. Bartlett v. Tyrone Hosp.*, 234 F.R.D. 113, 124 (W.D. Pa. 2006) (dismissing conspiracy count under the False Claims Act because the complaint failed "to state the existence of an agreement to defraud the Government").

The City asserts that Endo agreed with KOLs and "Front Groups" that they would deceptively promote the risks, benefits, and superiority of opioid therapy.[17] But the SAC pleads no facts supporting these conclusory allegations. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012) (each putative co-conspirator "must have under[stood] the general objectives of the conspiratorial scheme, accept[ed] them, and agree[d], either explicitly or implicitly to do its part to further those objectives.") (brackets in original; citation omitted; internal quotations omitted); *Borsellino*, 477 F.3d at 509 (conspiracy requires "an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means"). For example, the SAC does not specify what the agreement was, when and how any such agreement was formed, who made or carried out the

---

[17] *See* SAC ¶¶ 800, 801, 803, 839.

purported agreement, where the agreement was made or carried out, or how the acts of Endo or third parties furthered any such agreement.

Instead, the SAC merely alleges that Endo provided funding for websites and CMEs or that Endo sponsored and distributed certain publications.[18] But this conduct is lawful and cannot support an inference of conspiracy absent facts showing that Endo actually agreed with third-parties organizations to generate alleged misrepresentations on websites or in the CMEs and publications. *See In re Text Messaging Antitrust Litig.*, 2009 WL 5066652, at *7 (N.D. Ill. Dec. 10, 2009) ("Participation in points of contact or relationships for promotion of mutual interest (like a trade organization) does not, without more, support an inference of conspiracy.").

Nor does the SAC contain any allegations as to what Endo individually did to join the supposed conspiracy or to learn of its aims and scope. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (aside from Rule 9(b), "normal pleading standards" require dismissing a complaint that "lumps all the defendants together," because "it remains essential to show that a particular defendant joined the conspiracy and knew of its scope") (citation omitted). Because the SAC is devoid of facts supporting any agreement between Endo and the other Defendants, the Court should dismiss the conspiracy claims.

Even if the City had done enough to plead civil conspiracy—which it has not—the SAC still fails to state a claim under MCC § 1-22-020 because it never alleges facts showing that any supposed agreement between Endo and any third-party sought to defraud the City by getting a false or fraudulent claim allowed or paid. *See* MCC § 1-22-020; SAC ¶ 803. The SAC fails to plead the existence of an agreement between Endo and any third party to defraud the government. *See* MCC § 1-22-020; *see also Tyrone Hosp.*, 234 F.R.D. at 124 (dismissing

---

[18] *See, e.g.*, SAC ¶¶ 161, 211-12, 221(i)-(j), 221(l)-(m), 229(k), (m), (p), (r), 240(c)-(d), 244(b), 248(e)-(f), 252(g)-(h), 440, 445-55, 457-59, 476, 489-91, 616.

conspiracy count under the False Claims Act because the complaint failed "to state the existence

of an agreement to defraud the Government by the Defendants").

## **CONCLUSION**

The City failed to cure any of the defects that compelled the dismissal of the first

complaint, and the Court should dismiss this action against Endo once and for all.  For the

reasons stated herein, as well as those set forth in Defendants' Joint Motion to Dismiss the

Second Amended Complaint, the SAC should be dismissed in its entirety as to Endo.


Dated:  November 20, 2015                    Respectfully submitted,

                                             /s/ Joshua M. Davis
                                             One of the Attorneys for Defendants Endo Health
                                             Solutions Inc. and Endo Pharmaceuticals Inc.


Steven G. Reade (*admitted pro hac vice*)
Joshua M. Davis (*admitted pro hac vice*)
Melissa A. Ku (*admitted pro hac vice*)
Joanna G. Persio (*admitted pro hac vice*)
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, DC  20001
Telephone: (202) 942-5000
Fax:  (202) 942-5999
Steven.Reade@aporter.com
Joshua.Davis@aporter.com
Melissa.Ku@aporter.com
Joanna.Persio@aporter.com


Peter Vincent Baugher ARDC# 0138282
Nicholas A. Gowen ARDC # 6280123
HONIGMAN MILLER SCHWARTZ & COHN LLP
One South Wacker Drive, 28th Floor
Chicago, IL 60606
Telephone: (312) 701-9300
Fax: (312) 701-9335
pbaugher@honigman
ngowen@honigman.com

**CERTIFICATE OF SERVICE**

I, Joshua M. Davis, an attorney, hereby certify that a true and correct copy of

the foregoing was filed electronically with the Clerk of the Court using the CM/ECF System,

which will automatically provide electronic notice upon all counsel of record on this 20th day of

November, 2015.

/s/ Joshua M. Davis

23