**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | |
| v. | Case No. 14-cv-04361 |
| PURDUE PHARMA L.P.; PURDUE PHAR-MA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTI-CALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHAR-MACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; DEPOMED, INC.; ENDO HEALTH SOLU-TIONS INC.; ENDO PHARMACEUTICALS INC.; ALLERGAN PLC; f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; and ACTAVIS PHARMA, INC. f/k/a WAT-SON PHARMA, INC., | Honorable Jorge L. Alonso **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. THE COURT SHOULD DISMISS THE ACTION UNDER RULE 12(b)(6) FOR
FAILURE TO STATE A CLAIM ...................................................................... 3

    A. All Claims Fail Because the SAC Does Not Allege Fraud with
Particularity .............................................................................................. 3

        1. The SAC Engages in Improper Group Pleading ........................ 4

        2. The SAC Fails to Plead Each Defendant's Alleged Fraud with
Sufficient Particularity .............................................................. 6

    B. The City's Claims Fail Because the SAC Does Not Allege That
Defendants Caused It Harm ..................................................................... 8

        1. Causation Is Required for All of the City's Claims ................... 8

        2. The SAC Fails to Allege That Defendants' Purported Misconduct
Caused the City to Pay for Opioid Prescriptions or Other Harm ............ 10

        3. The SAC's Allegations Also Fail for Lack of Proximate Causation ....... 17

    C. All Claims Fail Because the City Has Not Adequately Alleged Injury .............. 21

    D. The SAC Is Deficient on Multiple Additional Grounds ..................................... 24

        1. The Claim Under Chicago Municipal Code § 2-25-090 (Count 1)
Must Be Dismissed to the Extent It Seeks Relief for Consumer
Fraud Prior to November 19, 2008 ...................................... 24

        2. The Unfair Practices Claim (Count 2) Must Be Dismissed .................... 25

        3. The Municipal False Statement (Count 4), Chicago Municipal
False Claims Statute ("CFCA") (Counts 5 and 6), and Insurance
Fraud (Count 8) Claims Must Be Dismissed ............................................ 26

            a. The SAC Fails to Plead a False Claim ........................................ 26

            b. The SAC Does Not Adequately Plead Presentment,
Causation, or Conspiracy ......................................................... 28

        4. The Municipal Services Claim (Count 7) Must Be Dismissed ............... 30

        5. The Civil Conspiracy Claim (Count 9) Must Be Dismissed ................... 30

            a. The SAC Fails to Allege an Agreement ...................................... 31

            b. The SAC Fails to Plead a Conspiracy with Particularity ............ 33

        6. The Unjust Enrichment Claim (Count 10) Must Be Dismissed ............. 34

III. CONCLUSION ................................................................................................ 34

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Allegis Realty Investors v. Novak*,
    223 Ill. 2d 318 (2006) .............................................................................................24

*Anthony v. Country Life Mfg., L.L.C.*,
    2002 WL 31269621 (N.D. Ill. Oct. 9, 2002)........................................................28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................3, 4, 13, 28

*Bank One, Okla., N.A. v. Trammell Crow Servs., Inc.*,
    2003 WL 23019173 (N.D. Ill. Dec. 23, 2003) .....................................................5

*Bantsolas ex rel. U.S. v. Superior Air & Ground Ambulance Transp., Inc.*,
    2004 WL 609793 (N.D. Ill. Mar. 22, 2004).......................................................29

*Bausch v. Stryker Corp.*,
    630 F.3d 546 (7th Cir. 2010) ..............................................................................28

*Beaman v. Souk*,
    2011 WL 832506 (C.D. Ill. Mar. 3, 2011)............................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................... *passim*

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502 (7th Cir. 2007) .............................................................3, 31, 33, 34

*Brown v. SBC Commc'ns, Inc.*,
    2007 WL 684133 (S.D. Ill. Mar. 1, 2007) ..........................................................31

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)............................................................................................27

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ................................................................................3

*Carroll v. Butterfield Health Care, Inc.*,
    2003 WL 22462604 (N.D. Ill. Oct. 29, 2003)....................................................26

*Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*,
    2010 WL 1257790 (D.N.J. Mar. 29, 2010).........................................................23

## TABLE OF AUTHORITIES
### (continued)

Page

*Cincinnati Life Ins. Co. v. Beyrer*,
　722 F.3d 939 (7th Cir. 2013) ...........................................................................8, 33

*City of Chi. v. Am. Cyanamid Co.*,
　355 Ill. App. 3d 209 (Ill. Ct. App. 2005) ...............................................................19

*City of Chi. v. Beretta U.S.A. Corp.*,
　213 Ill. 2d 351 (2004) .............................................................................17, 21, 30

*City of Sausalito v. O'Neill*,
　386 F.3d 1186 (9th Cir. 2004) ..............................................................................22

*Cleary v. Philip Morris Inc.*,
　656 F.3d 511 (7th Cir. 2011) ................................................................................34

*Cmty. Commc'ns Co. v. City of Boulder*,
　455 U.S. 40 (1982).................................................................................................22

*Cnty. of Cook v. Philip Morris, Inc.*,
　353 Ill. App. 3d 55 (2004) ...........................................................9, 10, 17, 30

*Cohen v. Am. Sec. Ins. Co.*,
　735 F.3d 601 (7th Cir. 2013) ................................................................................31

*DiLeo v. Ernst & Young*,
　901 F.2d 624 (7th Cir. 1990) ..................................................................................3

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
　2008 WL 5413105 (D.N.J. Dec. 23, 2008)...........................................................22

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
　784 F. Supp. 2d 508 (D.N.J. 2011) .......................................................................17

*Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*,
　969 F. Supp. 2d 463 (S.D. W. Va. 2013)..............................................................18

*Fakhouri v. Taylor*,
　618 N.E.2d 518 (Ill. App. 1993) ...........................................................................16

*Frymire v. Peat, Marwick, Mitchell & Co.*,
　657 F. Supp. 889 (N.D. Ill. 1987) .........................................................................33

## TABLE OF AUTHORITIES
### (continued)

Page

*Garrett v. Rentgrow, Inc.*,
2005 WL 1563162 (N.D. Ill. July 1, 2005)................................................................25

*Gaudie v. Countrywide Home Loans, Inc.*,
683 F. Supp. 2d 750 (N.D. Ill. 2010) ......................................................................31

*Germain v. Teva Pharm., USA, Inc.*,
756 F.3d 917 (6th Cir. 2014) ...................................................................................28

*Grenadyor v. Ukrainian Vill. Pharm., Inc.*,
772 F.3d 1102 (7th Cir. 2014) .................................................................................27

*Hard Drive Prods., Inc. v. Does 1-55*,
2011 WL 4889094 (N.D. Ill. Oct. 12, 2011)............................................................31

*Hartz v. Friedman*,
919 F.2d 469 (7th Cir. 1990) ....................................................................................4

*Health Care Serv. Corp. v. Olivares*,
2011 WL 4591913 (E.D. Tex. Sept. 2), *adopted by* 2011 WL 4591915 (E.D.
Tex. Sept. 30, 2011)................................................................................................17

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258 (1992)................................................................................................18

*HPI Healthcare Servs., Inc. v. Mt. Vernon Hosp.*,
545 N.E.2d 672 (Ill. 1989)......................................................................................34

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
2012 WL 3154957 (N.D. Cal. Aug. 2, 2012) ......................................................13, 24

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
2009 WL 2043604 (D.N.J. July 10, 2009)...............................................................13

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
2010 WL 2346624 (D.N.J. June 9, 2010) ...............................................................23

*In re Towers*,
162 F.3d 952 (7th Cir. Ill. 1998)............................................................................21

*In re Westinghouse Sec. Litig.*,
90 F.3d 696 (3d Cir. 1996)........................................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*,
   2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) ................................................................19, 20, 24

*In re Zyprexa Prods. Liab. Litig.*,
   671 F. Supp. 2d 397 (E.D.N.Y. 2009) ...................................................................................24

*Indeck N. Am. Power Fund, L.P. v. Norweb P.L.C.*,
   316 Ill. App. 3d 416 (2000) ...................................................................................................30

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
   665 F.3d 930 (7th Cir. 2012) .................................................................................................33

*Int'l Bhd. of Teamsters Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*,
   34 F. Supp. 2d 656 (N.D. Ill. 1998) ......................................................................................21

*Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*,
   585 F. Supp. 2d 1339 (M.D. Fla. 2008) ...........................................................................19, 20

*Jepson, Inc. v. Makita Corp.*,
   34 F.3d 1321 (7th Cir. 1994) ...............................................................................................4, 5

*King v. Schieferdecker*,
   498 F. App'x 576 (7th Cir. 2012) ............................................................................................2

*Kirk v. Michael Reese Hosp. & Med. Ctr.*,
   117 Ill. 2d 507 (1987) ............................................................................................................19

*Kozak v. Armstrong World Indus., Inc.*,
   213 Ill. App. 3d 1061 (Ill. Ct. App. 1991) ............................................................................19

*Kuehl v. FDIC*,
   8 F.3d 905 (1st Cir. 1993) ........................................................................................................4

*Lewis v. Lead Indus. Ass'n*,
   342 Ill. App. 3d 95 (Ill. Ct. App. 2003) ................................................................................19

*Lisitza v. Par Pharm. Cos.*,
   2013 WL 870623 (N.D. Ill. Mar. 7, 2013) ......................................................................32, 34

*Lyttle v. Killackey*,
   528 F. Supp. 2d 818 (N. D. Ill. 2007) ...................................................................................32

# TABLE OF AUTHORITIES
## (continued)

Page

*Martin by Martin v. Ortho Pharm. Corp.*,
169 Ill. 2d 234 (1996) ...................................................................................20

*McCauley v. City of Chi.*,
671 F.3d 611 (7th Cir. 2011) ...........................................................................3

*McClure v. Owens Corning Fiberglas Corp.*,
720 N.E.2d 242 (Ill. 1999) .............................................................................33

*Pa. Emps. Benefit Trust Fund (PEBTF) v. Ortho-McNeil-Janssen Pharm., Inc.*,
2010 WL 3613056 (Ct. Comm. Pl. July 7, 2010) ...........................................24

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
153 Ill. 2d 473 (1992) .....................................................................................9

*People ex rel. Madigan v. United Constr. of Am., Inc.*,
981 N.E.2d 404 (Ill. App. Ct. 2012) ...............................................................9

*Peterson v. Cmty. Gen. Hosp.*,
2003 WL 262515 (N.D. Ill. Feb. 7, 2003) .....................................................29

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ...........................................................................3

*Rawoof v. Texor Petroleum Co.*,
521 F.3d 750 (7th Cir. 2008) .........................................................................22

*Redelmann v. Claire Sprayway, Inc.*,
874 N.E.2d 230 (Ill. App. Ct. 2007) .........................................................31, 33

*Reuter v. MasterCard Int'l, Inc.*,
397 Ill. App. 3d 915 (2010) ...........................................................................21

*Robinson v. Toyota Motor Credit Corp.*,
201 Ill. 2d 403 (2002) ...............................................................................25, 26

*Roehl v. Merrilees*,
2012 WL 1192093 (N.D. Ill. Apr. 10, 2012) .................................................32

*S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer*,
2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ...............................................17

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
655 F. Supp. 2d 1270 (S.D. Fla. 2009) ..........................................................12

## TABLE OF AUTHORITIES
### (continued)

Page

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
    281 Ill. App. 3d 648 (1995) ...................................................................................34

*Segreti v. Lome*,
    747 F. Supp. 484 (N.D. Ill. 1990) .........................................................................31

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    20 F. Supp. 3d 305, 323 (E.D.N.Y. 2014) ...........................................................18

*Smith v. Eli Lilly & Co.*,
    137 Ill. 2d 222 (1990) .....................................................................................18, 19

*Sorrell v. IMS Health Inc.*,
    131 S. Ct. 2653 (2011) ...........................................................................................7

*Stanard v. Nygren*,
    658 F.3d 792 (7th Cir. 2011) ..................................................................................2

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*,
    1997 WL 1106276 (N.D. Ill. Aug. 12, 1997) ......................................................21

*Suburban Buick, Inc. v. Gargo*,
    2009 WL 1543709 (N.D. Ill. May 29, 2009) .........................................................5

*Sweeney v. Bausman*,
    1987 WL 45713 (N.D. Ill. Nov. 5, 1987) .............................................................32

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) ..................................................................................2

*TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*,
    153 F.3d 822 (7th Cir. 1998) ................................................................................21

*Tucker v. Soy Capital Bank and Trust Co.*,
    974 N.E.2d 820 (Ill. App. Ct. 2012) ...............................................................31, 33

*U.S. ex rel. Crews v. NCS Healthcare of Ill., Inc.*,
    460 F.3d 853 (7th Cir. 2006) ................................................................................26

*U.S. ex rel. Dolan v. Long Grove Manor, Inc.*,
    2014 WL 3583980 (N.D. Ill. July 18, 2014)...................................................26, 29

*U.S. ex rel. Drescher v. Highmark, Inc.*,
    305 F. Supp. 2d 451 (E.D. Pa. 2004) ...................................................................29

**TABLE OF AUTHORITIES**
(continued)

Page

*U.S. ex rel. Fowler v. Caremark Rx, Inc.*,
   2006 WL 2425331 (N.D. Ill. Aug. 21, 2006) .......................................................8, 29

*U.S. ex rel. Garst v. Lockheed Integrated Solutions Co.*,
   158 F. Supp. 2d 816 (N.D. Ill. 2001) ....................................................................30

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
   328 F.3d 374 (7th Cir. 2003) ..................................................................4, 7, 8, 28

*U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*,
   2008 WL 5211021 (N.D. Ill. Dec. 10, 2008)..........................................................24

*U.S. ex rel. McGee v. IBM Corp.*,
   81 F. Supp. 3d 643, 666 (N.D. Ill. 2015) ..............................................................29

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
   2011 WL 3911095 (E.D. Va. Sept. 6, 2011), *aff'd*, 707 F.3d 451 (4th Cir.
   2013) ...............................................................................................................13

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) ..........................................................................11, 12

*U.S. ex rel. Nowak v. Medtronic*,
   806 F. Supp. 2d 310 (D. Mass. 2011) ...................................................................12

*U.S. ex rel. Obert-Hong v. Advocate Health Care*,
   2001 WL 303692 (N.D. Ill. Mar. 28, 2001)............................................................8

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
   2009 WL 1456582 (E.D.N.Y. May 22, 2009) .......................................................11

*U.S. ex rel. West v. Ortho-McNeil Pharm., Inc.*,
   2007 WL 2091185 (N.D. Ill. July 20, 2007)................................................8, 28, 29

*U.S. ex rel. Wildhirt v. AARS Forever, Inc.*,
   2011 WL 1303390 (N.D. Ill. Apr. 6, 2011) ...........................................................30

*U.S. ex rel. Zemplenyi v. Grp. Health Coop.*,
   2011 WL 814261 (W.D. Wash. Mar. 3, 2011) .......................................................24

*U.S. v. Krizek*,
   111 F.3d 934 (D.C. Cir. 1997) ............................................................................29

**TABLE OF AUTHORITIES**
**(continued)**

Page

*U.S. v. Mackby*,
    261 F.3d 821 (9th Cir. 2001) ....................................................29

*U.S. v. President & Fellows of Harvard Coll.*,
    323 F. Supp. 2d 151 (D. Mass. 2004) .....................................29

*U.S. v. Sanford-Brown, Ltd.*,
    788 F.3d 696 (7th Cir. 2015) ...........................................3, 4, 5, 27

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 3062 (2011) .......................................12

*United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund
    v. Amgen, Inc.*,
    400 F. App'x 255 (9th Cir. 2010) ..........................................20

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) .................................................4, 5

*Vodak v. City of Chi.*,
    2006 WL 2524141 (N.D. Ill. Aug. 20, 2006) ...........................21

*Watt v. City of Highland Park*,
    2001 WL 1090152 (N.D. Ill. Sept. 13, 2001) ...........................5

*Webb v. Local 73, Serv. Emps. Int'l Union*,
    2002 WL 31049841 (N.D. Ill. Sept. 13, 2002) ........................31

*Williams v. Purdue Pharma Co.*,
    297 F. Supp. 2d 171 (D.D.C. 2003) .......................................22

*Wolf v. Liberis*,
    153 Ill. App. 3d 488 (1987) ...............................................31

*Wright v. Associated Ins. Cos.*,
    29 F.3d 1244 (7th Cir. 1994) ...........................................2, 11

*Zekman v. Direct Am. Marketers, Inc.*,
    182 Ill. 2d 359 (1998) ......................................................31

## TABLE OF AUTHORITIES
### (continued)

Page

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................................1, 4

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 3

**Statutes**

720 ILCS 5/17-10.5 ................................................................................................8, 21

720 ILCS § 5/17-10.5(a)(1) ...................................................................................26

745 ILCS 35/2.........................................................................................................25

21 U.S.C. § 331(a) ..................................................................................................27

21 U.S.C. § 337(a) ..................................................................................................28

21 U.S.C. § 352 .......................................................................................................27

MCC § 1-20-020 ................................................................................................8, 21, 30, 31

MCC § 1-21-010 ......................................................................................................8

MCC § 1-21-010(a)..................................................................................................21, 26

MCC § 1-21-020 ......................................................................................................8

MCC § 1-22-020 ......................................................................................................8

MCC § 1-22-020(1)..................................................................................................28

MCC § 1-22-020(2)..................................................................................................26

MCC § 1-22-020(3). ................................................................................................29

MCC § 2-25-090 ................................................................................................9, 24, 25, 31

MCC § 2-25-090(a)..................................................................................................3

MCC § 4-276-470 ....................................................................................................9, 31

x

## I.    INTRODUCTION

Defendants[1] move to dismiss the City's Second Amended Complaint ("SAC"). Despite ballooning to 325 pages, the City's third attempt to plead claims against Defendants remains profoundly deficient and fails to cure the defects this Court outlined in its May 8, 2015 dismissal order ("Order"). Most glaringly, the City still fails to plead the details of any fraud, still fails to connect any supposed misrepresentation to any City-reimbursed prescription, and still fails to plead that any City-reimbursed prescription was ineffective or harmed any patient.

The City's pleading is deficient under Rules 8(a), 9(b), and 12(b)(6) for multiple reasons. *First*, although Defendants are competing manufacturers[2] of a wide range of opioid products, the SAC violates Rule 9(b) by lumping them together as if they were a single company manufacturing an undifferentiated product. The SAC also still fails to plead any of the City's claims with the particularized "who, what, where, when, and how" that Rule 9(b) requires. If anything, the SAC's unconstrained group pleading and escalating prolixity—which separately violate Rule 8(a)—further obfuscate the particulars of the City's claims.

*Second*, the SAC still fails to adequately plead causation. The City does not identify any prescriber who relied on any Defendant's supposed misrepresentation in prescribing that Defendant's medication, as this Court expressly required for the City's causes of action for false statements, false claims, insurance fraud, municipal costs, and unjust enrichment. Order at 32-33.

---

[1] Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company, Inc. ("Purdue"); Teva Pharmaceuticals USA, Inc. ("Teva"); Cephalon Inc. ("Cephalon"); Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica Inc. ("Janssen"); Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. ("Endo"); and Allergan plc, f/k/a Actavis plc, Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc., Actavis LLC, Actavis Pharma, Inc., f/k/a Watson Pharma, Inc., and Watson Laboratories, Inc. ("Actavis"). The City voluntarily dismissed Depomed, Inc.

[2] Some Defendants are only parents, affiliates, predecessors, or successors of manufacturers. For convenience, this Memorandum at times refers collectively to "Defendants," but these references should not be taken as representations that the non-manufacturer companies make, market, or sell the products in issue.

Nor does the City allege that it relied on any Defendants' supposed misrepresentation when it approved any prescription reimbursement request. And the City does not allege facts supporting any plausible inference of causation for its consumer fraud claims, as required by Illinois law. The City simply ignores the many factors that defeat proximate causation as a matter of law, including prescribers' exercise of their independent medical judgment and their evaluation of the FDA-mandated product warnings, which prominently delineated the risks of opioid therapy.[3]

*Third*, the SAC still fails to plead a cognizable injury. Under its health and workers' compensation plans, the City is required to cover drugs prescribed for FDA-approved uses, and the FDA has approved multiple opioid medications for the treatment of chronic non-cancer pain. In addition, the SAC fails to identify any prescription that was ineffective or harmed any patient. And the SAC concedes that during most of the relevant time period, the City paid fixed premiums to a third party for all prescription drug costs—meaning that the City *paid the same amount* and suffered no economic loss no matter how many prescriptions were reimbursed.

*Finally*, each count suffers from claim-specific deficiencies requiring dismissal.

For all of these reasons, the SAC fails to state a claim. The Court should dismiss with prejudice because the City's repeated inability to cure pleading deficiencies demonstrates that further amendment would be futile and only cause undue prejudice to Defendants.[4] Order at 34.

---

[3] Because the SAC refers to Defendants' product labels and their FDA-mandated warnings are central here, the Court may consider them in resolving this motion. *See, e.g.*, SAC ¶¶ 22, 29, 35, 40, 45, 48; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("document[s] merely … referred to in [a] complaint" can be considered for purposes of resolving a motion to dismiss where their authenticity is not disputed and they are central to the claims); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (consideration of documents "referred to in the plaintiff's complaint and … central to [plaintiff's] claim" does not "convert[] the motion to dismiss into a motion for summary judgment"). The Court may also consider the SAC-referenced City health and workers' compensation plans. *See, e.g.*, SAC ¶¶ 645-49, 651, 659.

[4] *See King v. Schieferdecker*, 498 F. App'x 576, 579 (7th Cir. 2012) (dismissal with prejudice proper where plaintiff "forced the defendants to brief the flaws in his complaint twice over two years"); *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011) (dismissal with prejudice "eminently reasonable" where it was plaintiff's "third attempt to plead properly.").

## II. THE COURT SHOULD DISMISS THE ACTION UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

### A. All Claims Fail Because the SAC Does Not Allege Fraud with Particularity

As with the FAC, all the SAC's claims sound in fraud. To survive a motion to dismiss, the City's claims must therefore meet both the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and the particularity standard of Rule 9(b). *See* Order at 3 ("the City is required to plead the elements of its claims with the specificity required by [Rule] 9(b)"), 16-17; *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).[5] To satisfy *Twombly*, the allegations must transcend the "speculative" and "conceivable," and "state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also* Order at 16. Well-pleaded factual allegations must be more than "'merely consistent with' a defendant's liability," and mere "legal conclusions" and "conclusory statements" must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (quoting *Twombly*, 550 U.S. at 557); *see also McCauley v. City of Chi.*, 671 F.3d 611, 617 (7th Cir. 2011). To satisfy Rule 9(b), the SAC must further detail the "who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also* Order at 16. It must allege with particularity "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705 (7th Cir. 2015) (quotation marks and citation omitted).

---

[5] The City reasserts its claim that Defendants committed "unfair" business practices in violation of MCC § 2-25-090(a)—this time as a separate count. *Compare* FAC ¶¶ 404-17 (unfairness claim pleaded together with other Section 2-25-090(a) claims) *with* SAC ¶¶ 752-61 (standalone unfairness claim). But the claim is still based entirely on allegedly deceptive advertising practices. *See* SAC ¶ 755(a)-(g) (alleging "Defendants' unfair acts or practices include" various forms of "marketing" and "promot[ional]" activities that were false and deceptive). Accordingly, it remains subject to Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (Rule 9(b) applied to unfairness claim based on deceptive practice allegations); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (same for unfairness claim based on misrepresentations or omissions).

All the SAC's claims proceed from its general allegation that Defendants misrepresented the safety and efficacy of opioids for the treatment of chronic non-cancer pain, causing physicians to write and the City to reimburse medically inappropriate prescriptions. *See, e.g.*, SAC ¶¶ 214-16, 239, 294, 365, 384, 480, 550, 627. Those prescriptions, in turn, allegedly caused the City to incur costs or damages. Yet despite adding 135 pages and over new 335 paragraphs, the City still fails to plead any alleged act of fraud by any Defendant with the specificity Rule 9(b) requires. Indeed, the prolix additions to the SAC and the City's continued improper group pleading only further obscure the actual claims against each Defendant, in violation of Rule 8(a). *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (dismissing 400-paragraph complaint because "length and complexity may doom a complaint by obfuscating the claim's essence"); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994). ("A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.").[6]

### 1.     The SAC Engages in Improper Group Pleading

The Seventh Circuit has repeatedly held that complaints lumping defendants together with generalized allegations are improper and should be dismissed. To satisfy *Iqbal*, *Twombly*, and Rule 9(b), a complaint must particularize the alleged wrongdoing of *each* defendant. *See, e.g.*, *Sanford-Brown*, 788 F.3d at 705-06 (complaint's "collective reference to 'Defendants'" failed to notify each defendant "of the circumstances of its alleged participation in the scheme"); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328-29 (7th Cir. 1994) ("when the complaint ac-

---

[6] *See also Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990) (dismissal under Rule 8(a) would have been proper considering plaintiff's 323-paragraph complaint); *Vicom*, 20 F.3d at 775 (plaintiff's "confusing, redundant, and seemingly interminable amended complaint violated the letter and the spirit of Rule 8(a)"); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702-03 (3d Cir. 1996) (dismissing 600-paragraph complaint under Rule 8); *Kuehl v. FDIC*, 8 F.3d 905, 908-09 (1st Cir. 1993) (dismissing 358-paragraph under Rule 8). At 850 paragraphs, the SAC eclipses these complaints in both length and opacity.

cuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud."); *Vicom*, 20 F.3d at 778 (same; citing cases "reject[ing] complaints that have 'lumped together' multiple defendants"); *see also Bank One, Okla., N.A. v. Trammell Crow Servs., Inc*., 2003 WL 23019173, at *2 (N.D. Ill. Dec. 23, 2003) (dismissing claims against parent lumped with subsidiary).

The SAC is replete with impermissible group pleading. Defendants are 16 separate companies in 5 unrelated corporate families. The operating companies within these families manufacture, market, and sell opioid pain medications approved for the treatment of different conditions under different FDA-approved labeling. As the City recognizes, these separate companies compete against each other and actively differentiate their medications. SAC ¶¶ 106-07. Yet in hundreds of paragraphs, the SAC fails to distinguish among Defendants, their drugs, their drugs' labels, their promotional techniques, and the relevant time periods, and fails to detail which company did or said what, when, where, or to whom.[7] For this reason alone, the SAC fails under Rule 9(b). *See Sanford-Brown*, 788 F.3d at 706; *Jepson*, 34 F.3d at 1328-29; *Vicom*, 20 F.3d at 779.[8] And now that the City has *withdrawn* its unsupported allegations that Defendants conspired with one another, *see* §II.D.5 *infra,* it can no longer attempt to lump Defendants together as co-conspirators. It must present particularized allegations against *each* Defendant.

---

[7] *See* SAC ¶¶ 1-4, 6-13, 21-24, 70, 85, 89-91, 93, 96, 98-101, 106, 108-15, 118, 120, 127-39, 142, 150-52, 155-56, 167-68, 172, 176, 177, 180-81, 200-01, 205, 208, 210, 214, 217, 222-23, 228, 230-31, 234, 241, 246, 249-50, 260-61, 633-38, 650, 656, 658, 660, 667, 687, 700, 702, 708, 711, 719, 726, 732-37, 740-47, 755-61, 764-68, 776-80, 786-90, 819-21, 829-33. For example, the SAC alleges that "Defendants, through a sophisticated and highly deceptive and unfair marketing campaign that began in the late 1990s, deepened around 2006, and continues to the present, set out to, and did, reverse the popular and medical understanding of opioids." *Id.* ¶ 7. But the SAC nowhere alleges which Defendants even marketed opioids during these time periods or which opioids they sold.

[8] *See also Watt v. City of Highland Park*, 2001 WL 1090152, at *2-3 (N.D. Ill. Sept. 13, 2001) (dismissing group-pleaded claims and noting that the allegations, "if read literally, would absurdly charge each [individual] with carrying out everything" alleged); *Beaman v. Souk*, 2011 WL 832506, at *5, *15 (C.D. Ill. Mar. 3, 2011); *Suburban Buick, Inc. v. Gargo*, 2009 WL 1543709, at *4 (N.D. Ill. May 29, 2009).

### 2. The SAC Fails to Plead Each Defendant's Alleged Fraud with Sufficient Particularity

Attempting to remedy the FAC's pervasive non-compliance with Rule 9(b), *see* Order at 22-23, the SAC adds conclusory summaries of alleged interviews of "Chicago prescribers" "who reported that they were detailed" by Defendants' unidentified sales representatives. SAC ¶¶ 296, 386, 482, 552, 630. These include some who allegedly "relied on treatment guidelines or scientific articles, attended CMEs, … and were trained by doctors who provided Defendants' deceptive messages." *Id.* ¶ 687; *see also id.*¶¶ 688-701. The SAC asserts that the interviews show "[t]he connection between Defendants' marketing and opioid prescribing." *Id*. ¶ 682. But as discussed below and in the individual motions, these allegations *still* fail to give the relevant particulars of any alleged fraud. Specifically, they provide none of the following requisite details:

- The City still repeatedly fails to identify ***who*** prescribed any particular opioid. And while it sometimes alleges that anonymous prescribers prescribed "drugs" or "opioids" manufactured by specified Defendants,[9] it ignores that Defendants manufacture a wide range of medications, including opioids prescribed for uses the City does not challenge (*e.g.*, Janssen's Nucynta IR, indicated for short-term treatment of acute pain). Similarly, while the City's Exhibits purport to list prescribers of Defendants' opioids, the SAC fails to connect the prescribers in its Exhibits with any of the anonymous prescribers it interviewed.

- The City still repeatedly fails to identify ***who*** made or received allegedly false statements. The SAC often attributes statements to "drug company representatives," "opioid manufacturers," or "sales representatives from all Defendants,"[10] but then fails to specify which Defendant made any particular statement. And it concedes that three of the anonymous prescribers "do not recall being exposed to Defendants' marketing." *Id.* ¶ 703; *see also id.* ¶¶ 704-06.

- The City still repeatedly fails to allege ***what*** opioid was actually marketed in particular interactions with the anonymous prescribers, ***what*** (if anything) was said about it, and thus ***why*** any such statement about it was false. The SAC repeatedly alleges that sales representatives misrepresented the risks and benefits of "opioids,"[11] failing to identify any specific drug.

- The City still fails to allege (in any instance) both ***when*** an allegedly deceptive statement was

---

[9] *See* SAC ¶¶ 296, 386, 482, 552, 630, 688-701.

[10] *E.g.*, SAC ¶¶ 296(a)-(b), (e), (h), 386(a), (d), (h), 482(a), (c)-(e), (g)-(h), 552(a)-(e), (g)-(h), 630(a), (c), (f), (g)-(h), (q).

[11] *E.g.*, *id*. ¶¶ 296(a), (e), (h), 386(a), (d)-(h), 482(a)-(e), (g), (h), 552(b)-(e), 630(c), (g), (m), (q).

made and *when* a related prescription (if any) was written, let alone *how* any allegedly deceptive statement affected even a single City-paid prescription. To the contrary, the City admits that prescribers "cannot always recall with precision when particular detailing visits took place." *Id.* ¶ 296 n.94.

- The City still fails to allege *why* any doctor prescribed opioids or *how* any particular prescription was somehow inappropriate. Save for Exhibits A.7 and B.2, which ambiguously list the "Most Frequent Primary Pain Diagnosis per Claim," SAC nowhere alleges why opioids were prescribed, let alone that they were prescribed for treatment of chronic non-cancer pain.

- The City's allegations about interviews with Patients A-H similarly fail. The SAC alleges these patients were "prescribed opioids by health care providers who confirmed they received [Defendants'] marketing messages," *id.* ¶¶ 708-09, but fails to allege *who* made the statements, *when* they were made, *how* they were misleading, *why* the prescription was made, or *how* the statements affected prescribing decisions.

The SAC's wholesale failure to connect particular misrepresentations to particular prescriptions reimbursed by the City renders its allegations impermissibly vague and defective. *Garst*, 328 F.3d at 376. So does the SAC's failure to allege *any* facts connecting particular misrepresentations to particular decisions approving reimbursement requests. *See infra* §§ II.B.-C.[12]

The SAC's new allegations about general marketing strategies intended to reach Chicago prescribers and patients also fail to state a claim. *See, e.g.*, SAC ¶¶ 85-118 (describing "direct" and "unbranded" marketing). Most do nothing more than describe lawful marketing practices, such as "target[ing]… individual health care providers," tracking "prescriber 'switching'" to Defendants' opioids, and "marketing to prescribers through voice mail, postcards, and email." *Id.* ¶¶ 100, 107, 108; *see also, e.g.*, *id.* ¶¶ 23, 89-90, 101-03, 176, 292; *see generally Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2659 (2011). And they fail to supply the details needed to tie any alleged misrepresentations to any City-reimbursed prescriptions, including *where* or *when* Defendants implemented the referenced marketing practices, *what* particular statements were made in the course of these practices, *why* those statements were deceptive, to *whom* in Chicago the

---

[12] The SAC's failure to comply with Rule 9(b) is particularly egregious given its admission that the City received information from wide ranging pre-litigation subpoenas. SAC ¶ 185.

statements were made and *when* they were made, and *how* this marketing led to any inappropriate City-reimbursed prescription.[13] As more fully discussed in Defendants' individual briefs, these missing details are fatal to all of the City's claims—whether based upon statements "disseminated … through KOLs and Front Groups," appearing "in unbranded marketing materials," *id.* ¶ 127,[14] or appearing in certain Defendants' branded materials, *id.* ¶ 87. *See Garst*, 328 F.3d at 376 (lengthy complaint failed to plead fraud with requisite specificity); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013) (plaintiff spent "a great deal of energy insinuating that fraud occurred," but failed to allege specifics of fraudulent activity).[15]

### B. The City's Claims Fail Because the SAC Does Not Allege That Defendants Caused It Harm

#### 1. Causation Is Required for All of the City's Claims

In dismissing the FAC, the Court held that the City's MCC §§ 1-20-020 (municipal costs), 1-21-010 & 1-21-020 (false statements), 1-22-020 (false claims), 720 ILCS 5/17-10.5 (in-

---

[13] Many of these practices are not specified to have occurred in Chicago at all, but rather in the "Midwest" or unidentified locations. *E.g.*, SAC ¶¶ 117, 224, 229(aa), 295, 385, 481, 493, 510, 551, 628-29. And even for materials purportedly available in Chicago, the SAC fails to allege that local prescribers were exposed to them. *E.g.*, *id.* ¶¶ 145, 167, 170, 252(m), 339, 347, 418, 525-26, 543-44, 609-10. Likewise, the City alleges that "Defendants published print advertisements in a broad array of medical journals," *id.* ¶ 86, but nowhere alleges when, how, or if these (undescribed) advertisements reached Chicago prescribers— much less that any Chicago prescriber wrote a City-reimbursed prescription for a Defendant's opioid in reliance on an alleged misrepresentation in such advertising. Citing the alleged "nationwide and uniform character" of Defendants' marketing practices, the City pleads on "information and belief" that marketing messages would have reached Chicago prescribers. *See, e.g.*, *id.* ¶ 475; *see also id.* ¶¶ 340, 347, 381, 416, 508, 515. But under Rule 9(b) and *Twombly*, such generalized and speculative assertions are not enough.

[14] With few exceptions (addressed in Defendants' individual motions), the SAC's allegations about unbranded general information materials—prescribing guidelines, medical journals, brochures, books, and websites—repeat nearly verbatim the allegations the Court already held inadequate. *See* Order at 22-33.

[15] *See also U.S. ex rel. Obert-Hong v. Advocate Health Care*, 2001 WL 303692, at *2 (N.D. Ill. Mar. 28, 2001) (Rule 9(b) not met where complaint "outlines the general methodology of a scheme, but offers no specific instances of fraud"); *U.S. ex rel. West v. Ortho-McNeil Pharm., Inc.*, 2007 WL 2091185, at *5 (N.D. Ill. July 20, 2007) (FCA claims dismissed where generalized allegations of off-label marketing did not identify which sales representatives made misrepresentations, to which doctors, or what about the statements was false); *U.S. ex rel. Fowler v. Caremark Rx, Inc.*, 2006 WL 2425331, at *6-7 (N.D. Ill. Aug. 21, 2006) (FCA claims dismissed where allegations of general scheme did "not identify a single prescription through which [Defendant] perpetrated the alleged fraud").

surance fraud), and unjust enrichment claims must be—but were not—supported by facts show-
ing that particular doctors relied on Defendants' purported misrepresentations when prescribing
City-reimbursed opioid medications. Order at 32-33 (dismissing claims for failure to identify
"doctors who, as a result of one or more of defendants' alleged misrepresentations, prescribed
opioids for chronic pain to a City-insured patient or worker's compensation recipient whose
claim for that prescription the City paid")). The SAC reasserts these claims in Counts 4-8 and 10,
but again fails to allege that Defendants' supposed conduct caused the City's harm.

The City's consumer fraud claims under MCC §§ 2-25-090 & 4-276-470 and the Illinois
Consumer Fraud and Deceptive Business Practices Act ("ICFA"), *see* SAC Counts 1-3, also re-
quire a causal nexus between Defendants' purported misrepresentations and City-reimbursed
prescriptions. Illinois courts have repeatedly held that "[p]roof of a causal relationship between a
defendant's action and a plaintiff's injury is essential in every tort.'" *Cnty. of Cook v. Philip
Morris, Inc.*, 353 Ill. App. 3d 55, 60 (2004). Even a public prosecutor must "set forth specific
facts" showing that the defendants' alleged misrepresentation had "some connection" to the as-
serted injury. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 492 (1992) (affirm-
ing dismissal of ICFA claim where attorney general's complaint failed "to establish … a connec-
tion" between the misrepresentation and injury and therefore failed to "set forth specific facts
which show that defendants misrepresented a material fact"); *Philip Morris*, 353 Ill. App. 3d at
60-66 (affirming judgment on the pleadings of an ICFA public prosecutor claim under the re-
moteness doctrine for failure to "set forth a direct relationship between the injury asserted and
the injurious conduct in th[e] case"). Absent allegations demonstrating this connection, the City
fails to state a claim under the ICFA or its MCC counterparts.[16]

---

[16] *People ex rel. Madigan v. United Constr. of Am., Inc.*, 981 N.E.2d 404 (Ill. App. Ct. 2012), is not to the
contrary. The court there held that a public prosecutor "is not required to establish proximate cause *in or-*

### 2. The SAC Fails to Allege That Defendants' Purported Misconduct Caused the City to Pay for Opioid Prescriptions or Other Harm

The SAC is devoid of allegations plausibly establishing that Defendants' purported misrepresentations caused the City harm. The City reincorporates the vast majority of its prior (deficient) allegations and simply adds more of the same, all of which suffer from the same causation defects the Court has already found fatal. The City first claims that causation is "evidenced by: (a) the increase in opioid prescribing nationally in concert with Defendants' marketing; [and] (b) the City's own increased spending on opioids resulting from Defendants' promotional spending." SAC ¶ 634; *see also id*. ¶¶ 638-44, 679-81. This Court has already rejected the City's attempt to allege causation through statistics and should do so again. *See* FAC ¶¶ 322, 360-64, 382-85 (alleging statistical correlation between Defendants' marketing expenditures and increased prescription and payment rates of opioids); Order at 22-27, 32 (dismissing claims for failure to connect specific misrepresentations to specific Chicago doctors or prescriptions). The SAC's new statistics still do not establish that Defendants' marketing or promotional spending had any connection to the City's alleged *harm*, which the City must causally link to the supposed misrepresentations or omissions, not to marketing and promotion in general.[17]

The City's contortion of purportedly supportive national data highlights the meaninglessness of these statistics to the City's pleading burden. As just one example, the City alleges that an unnamed "[s]tudy of 7.8 million doctor visits found that prescribing for pain increased by

---

*der to have standing* to litigate a violation of the [ICFA]." *Id*. at 411 (emphasis added). Setting aside whether the City has *standing* to bring consumer fraud claims, the City must plead facts demonstrating causation to *state* a consumer fraud claim. *See also Philip Morris*, 353 Ill. App. 3d at 60 (recognizing distinction between facts sufficient to confer standing and facts sufficient to state a consumer fraud violation and rejecting the public prosecutor's argument that it "[had] standing" under the ICFA and that "[t]herefore, the remoteness analysis [did] not apply").

[17] The City admits the lack of a causal connection by alleging that causation is evidenced by the "increase in opioid prescribing nationally *in concert* with Defendants' marketing." SAC ¶ 634 (emphasis added).

73% between 2000 and 2010" and that "[f]or back pain alone … the percentage of patients pre-scribed opioids increased from 19% to 29% between 1999 and 2010, even as the use of NSAIDs or acetaminophen declined and referrals to physical therapy remained steady." SAC ¶ 640. These general statistics—completely divorced from Defendants, their supposed conduct, their products, or Chicago—say nothing about the duration (short or long term) or nature (acute or chronic) of the patients' pain, the type of opioids prescribed, or why opioids were selected, let alone about the necessary causal link between any alleged misrepresentation and harm to the City.

Nor do the City's allegations about unexplained "expert analysis … of data on Defend-ants' promotional spending," *id.* ¶ 680; *see also id.* ¶¶ 634, 644, 679-81, adequately plead causa-tion. The SAC claims that the "City's Increased [Opioid] Costs *Correlate* with Defendants' Pro-motion," *id.* § V.F.1.b.iii (emphasis added), and that "[e]very 10% increase in Defendants' pro-motional spending nationally is *associated* with a 4.8% increase in the volume of opioids cov-ered by the [City's] health benefits and workers compensation program." *Id.* ¶ 680 (emphasis added). But correlation and association are not causation. And the City's analysis of general promotional spending data does not plausibly support *any* inference that Defendants are respon-sible for the City's purported harm: the City does not allege which "opioids" and which "De-fendants" the data include, what portion of the marketing was directed at Chicago, whether any fraudulent statements (as opposed to other promotion) caused any increase in City-reimbursed opioid prescriptions, or whether the allegedly increased reimbursements were for Defendants' opioids or even were prescribed for chronic non-cancer pain.[18] Conclusory references to "expert"

_____

[18] *See, e.g.*, *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 459-60 (4th Cir. 2013) (sta-tistically based allegations held too general to plausibly infer that defendant caused the submission of false claims for reimbursement, where a defendant's alleged misconduct merely "*could* have led, but *need not necessarily* have led," to the submission of false claims; a plaintiff must allege the particulars of actu-al prescriptions reimbursed as a result of the asserted fraud) (emphasis in original); *U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *9-10 (E.D.N.Y. May 22, 2009) ("statistical evidence" of increased

analysis cannot satisfy the burden to plead facts showing causation as to each Defendant.

Moreover, the City's causal theory—that alleged misrepresentations of the risks and benefits of Defendants' opioid medications led doctors to write, and the City to reimburse, opioid prescriptions they otherwise would not have believed were medically necessary—is inherently insusceptible to a generalized showing, much less one that does not connect particular prescriptions to particular false statements.[19] Because physicians "are presumed to go beyond advertising medium and use their independent knowledge in making medical decisions," merely alleging physicians wrote more prescriptions does not support an inference they wrote them *because of* any Defendant's conduct. *Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1280-81 (S.D. Fla. 2009); *see also Takeda*, 707 F.3d at 459-60. And because prescriptions depend on many variables, including the "independent actions of prescribing physicians" and "[a]n individual patient's diagnosis, past and current medications," "general proof of but-for causation" cannot substitute for factual allegations showing the alleged misrepresentations caused particular physicians to write prescriptions they otherwise would not have written. *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 126-27 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 3062 (2011); *see also U.S. ex rel. Nowak v. Medtronic*, 806 F. Supp. 2d 310, 354-55 (D. Mass. 2011) ("Each individual health care provider's medical judgment is an essential element of [the]

---

sales held insufficient to show defendants caused submission of false claims because it did not "directly address[] the category of ... patients, at which [the manufacturer's] advocacy allegedly was directed" and physicians could have "rel[ied] on [other sources of information] in choosing to prescribe" the drug).

[19] *See, e.g.*, SAC ¶ 634 ("But for the misleading information disseminated by Defendants, doctors would not, in most instances, have prescribed opioids as medically necessary or reasonably required to address chronic pain."); *id.* ¶ 636 ("Defendants' marketing of opioids caused health care providers to prescribe and the City … to pay for prescriptions of opioids to treat chronic pain. Because of Defendants' unbranded marketing, health care providers wrote and the City paid for prescriptions of opioids for chronic pain that were filled not only with their drugs, but with opioids sold by other manufacturers. All of these prescriptions were caused by Defendants' fraudulent marketing and therefore all of them constitute false claims. Because … the City is obligated to cover medically necessary and reasonably required care, it had no choice but to pay these false and fraudulent claims."); *id.* ¶ 638 ("Defendants' scheme to change the medical consensus regarding opioid therapy for chronic pain worked.").

claim"). Generalized allegations cannot replace "facts that would articulate a plausible theory of causation," including what specific prescribers "did as a result of [Defendants'] marketing efforts." *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 2011 WL 3911095, at *5-6 (E.D. Va. Sept. 6, 2011), *aff'd*, 707 F.3d 451 (4th Cir. 2013) (dismissing false claims action for "fail[ure] to identify any specific instances in which [defendant] caused a … healthcare provider to submit a claim for reimbursement to the government [for] a non-reimbursable prescription").[20]

Recognizing this need, the SAC claims that causation is also "evidenced by: … (c) interviews with Chicago prescribers, including those who prescribed opioids paid for by the City, who confirmed that they prescribed opioids based on deceptive marketing, patients' demand, and/or to continue opioids therapy begun by other doctors." SAC ¶ 634. But these allegations *still* fail to connect prescribers to particular City-reimbursed prescriptions allegedly written because of Defendants' conduct. The City generally alleges that, at unidentified times, these prescribers "relied on" unidentified "treatment guidelines or scientific articles, attended [unidentified] CMEs, were visited by [unidentified] drug representatives, and were trained by [unidentified] doctors who provided [unidentified] Defendants' [unidentified] deceptive messages [regarding unidentified opioids]," and that some (not all) of them prescribed unidentified opioids for unidentified indications that the City reimbursed. *Id*. ¶ 687. These and the City's other conclusory assertions of causation and reliance, *see*, *e.g*., *id*. ¶¶ 636, 686, fail to satisfy *Iqbal*, *Twombly*, or Rule 9(b), and this lack of particular and essential facts regarding causation also dooms the City's interview summaries. *Id*. ¶¶ 296-97, 386-87, 482-83, 547-56, 630, 688-701.

---

[20] *See also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig*., 2012 WL 3154957, at *4 (N.D. Cal. Aug. 2, 2012) (dismissing Illinois statutory and common law fraud and unjust enrichment claims premised on an attempt to "create an inference of causation" from statistical "quantity effect[s]"); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *25 (D.N.J. July 10, 2009) (rejecting efforts to prove causation though "generalized allegations and aggregate proof" based on statistical analysis of defendants' sales data).

These allegations are materially indistinct from those the Court previously ruled insufficient, and they highlight the City's continuing inability to adequately plead its claims. The very first prescriber profiled in the SAC's causation section makes this failing plain. *Id.* ¶¶ 689-91; *see also id.* ¶¶ 296(a), 482(g), 552(e), 630(a). The City alleges that "Prescriber B" "talked with opioid manufacturers' sales representatives on a regular basis," "met with [certain Defendants'] detailers," "has attended, and continues to attend, drug company-sponsored CMEs," and "knows that the programs may be biased" but "has no time to research the issue on his own." *Id.* ¶¶ 688-89. But the City does not specify which (if any) *Defendant* sponsored the CMEs or identify any supposed misrepresentations they may have contained, let alone allege that Prescriber B was exposed to any such misrepresentations before prescribing. *Id.* ¶¶ 688-91. Absent such exposure, there is no plausible basis to infer any type of causal connection between Prescriber B's prescriptions and any misrepresentation, much less infer that Prescriber B prescribed any Defendant's opioid *as a result* of a misrepresentation. *See supra* § II.B.1. And while the City alleges that Prescriber B "relied on the representations made by drug company representatives," it does not specify the company, the representations, or the drug(s) to which they related, when the representations were made, when the reliance occurred, or whether it resulted in any prescription. SAC ¶¶ 296(a), 482(g), 552(e), 630(a). That the City reimbursed prescriptions written by Prescriber B for "[unidentified] opioids … including …[unidentified] Defendants' [unidentified] drugs" and for unidentified indications supports no inference of causation on the claims here.

As detailed in Defendants' individual motions to dismiss, similar deficiencies riddle the City's allegations about all the other interviewed "Chicago Prescribers."[21] Indeed, the City's al-

---

[21] These inadequacies are even more apparent in the three other prescriber interviews profiled in the SAC's causation section. The City alleges that "Prescriber D" indicated he has relied on sales representatives and the information they provide," SAC ¶¶ 692-94, and "relied on the representations made by drug company representatives," *id.* ¶¶ 296(b), 482(c), 552(c), 630(f), but nowhere specifies what information

legations often *negate* rather than support any plausible causation inference. Among the inter-viewed "Chicago Prescribers" are those who "do not recall being exposed to opioid marketing," have "not attended a pain CME," and "do[] not receive any sales representatives at [their] of-fice[s]" but still "prescribe [Defendants'] drugs." *Id.* ¶¶ 702-06. Also included are prescribers who based their decisions on factors apart from any alleged misrepresentations by any Defend-ant. These include physicians who "learned through medical school [or] residency that opioids were safer than NSAIDs and more effective," who "observed other providers using opioids for chronic pain and found support for their opioid use in medical literature," or who "wished to avoid conflict with patients who requested [opioid medications]." *Id.* ¶¶ 696, 700, 702.

The SAC next claims that causation is also "evidenced by: …(d) a representative sample of claims for opioids that were prescribed by physicians who were subject to Defendants' decep-tive marketing, then paid for by the City's health plans and workers' compensation program." *Id.* ¶¶ 634, 707-09. Here, the SAC points to a number of City-reimbursed prescriptions and con-cludes that "[b]ecause of Defendants' fraudulent, misleading, and unfair marketing, these [pre-scriptions] were not—and could not have been—based on the prescribers' assessments of the risks and benefits of opioids to treat these patients' chronic pain." *Id.* ¶ 708. But while acknowl-edging that the patients were diagnosed with conditions consistent with the FDA-approved indi-cations for Defendants' products, *see id.* ¶¶ 707, 708(a)-(d), 709(e)-(h), the City does not allege that the prescribers were exposed to any particular misrepresentation made by any Defendant, that any such misrepresentation resulted in the City's reimbursement of these prescriptions, or

---

he allegedly relied on and when, whether it can be attributed to any Defendant, whether it was false or misleading, or the specific prescriptions he would not have written absent that reliance. The next pre-scriber—Prescriber RR—is not alleged to have been exposed to *any* statement by *any* Defendant. *Id.* ¶¶ 695-98. And the only even remotely relevant allegation as to the last prescriber—Prescriber SS—is the vague claim that "[a]s a result of Defendants' conduct, Prescriber SS previously learned that opioids are the most appropriate treatment for chronic pain." *Id.* ¶¶ 699-701.

how, why, or whether these prescriptions were falsely claimed as "medically necessary."

The City also claims that causation is "evidenced by: … (e) the consequences of opioid over prescription—including addiction, overdose, and death—that have been visited on Chicago and its residents, as confirmed by interviews with victims and addiction treatment programs." *Id.* ¶¶ 634, 710-22. The City again relies on general statistics, *id.* ¶¶ 710-14, allegations attributed to interviews with "addiction treatment programs," *id.* ¶¶ 714-17, and Chicago patients who claim their doctors did not warn them, and they were not otherwise aware, that they could become addicted to opioids, *id.* ¶¶ 718-22. But aside from claiming that one anonymous doctor "transmitted [unidentified] Defendants' [unidentified] misrepresentations" to an unidentified patient, *id.* ¶ 719, and that doctors' omissions "mirror and confirm Defendants' drug representatives' own widespread practice … of omitting any discussion of addiction from their sales presentations to physicians or in their 'educational' materials," *id.* ¶ 722, the City makes no attempt to plausibly, much less particularly, tie any of these allegations to any Defendant's purported conduct. Moreover, because Defendants' labels *all* highlight the risk of addiction and doctors have a duty to be knowledgeable about those labels and communicate risks to their patients, these allegations, even if accepted as true, fail to demonstrate how Defendants caused any harm. *See Fakhouri v. Taylor*, 618 N.E.2d 518, 520 (Ill. App. 1993) ("physicians, … using their medical judgment, have a duty to convey the warnings to their patients.… As a result, the [learned intermediary] doctrine prevents the imposition of a duty upon drug manufacturers to warn patients directly.").

Finally, the SAC makes no allegation that the City itself or any "agents of the [City's] health plans and workers' compensation program," *see, e.g.*, SAC ¶¶ 776, 780, 788, 807, were exposed to Defendants' alleged misrepresentations before approving any prescription reimbursement request at issue, much less that they relied on the alleged misrepresentations in doing

16

so.[22] On the contrary, the City continues to reimburse opioid prescriptions today, even though it can no longer claim to be misled by Defendants' alleged misconduct. *See id.* ¶¶ 794, 813. The City's failure to allege facts showing that any false statement from Defendants caused the City or health plan "agents" to reimburse the opioid prescriptions at issue defeats all of its claims. *See Health Care Serv. Corp. v. Olivares*, 2011 WL 4591913, at *7 (E.D. Tex. Sept. 2), *adopted by* 2011 WL 4591915 (E.D. Tex. Sept. 30, 2011) (dismissing Illinois fraud, unjust enrichment, conspiracy, and negligence claims for "fail[ure] to allege what misrepresentations, if any, were made directly to [the third-party-payor plaintiff] and upon which it relied").[23]

### 3. The SAC's Allegations Also Fail for Lack of Proximate Causation

Because the Court dismissed the City's claims for lack of but-for causation, it did not consider whether those claims also fail for lack of *proximate* causation. *See* Order at 32. They do. Proximate cause exists "only if the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it." *City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004) (internal citations and quotations omitted). The concept of proximate cause "operates … through the remoteness doctrine, which is sometimes called the 'direct-injury' test." *Philip Morris*, 353 Ill. App. 3d at 60. "This doctrine states that there must be 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting

---

[22] The City's health plans required a "Claims Administrator or Medical Advisor" to independently determine "if a service or supply is Medically Necessary" and therefore reimbursable. *See* Fitzgerald Declaration in Support of Purdue Defendants Motion to Dismiss Ex. 8 at 122 ("[E]ven if a physician prescribes … health care services and supplies as medically necessary, the Claims Administrator will not pay … if it is determined by the Claims Administrator or Medical Advisor that they were not medically necessary under the terms of the plan. The Claims Administrator or Medical Advisor have complete discretion to make determinations of medical necessity for purposes of the plan and such determination shall be final.") (quotation altered).

[23] *See also Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 525 (D.N.J. 2011) (dismissing claims for failure to allege that those who determined whether a prescription was reimbursable received or were influenced by defendant's marketing); *S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer*, 2009 WL 3151807, at *5-8 (S.D.N.Y. Sept. 30, 2009) (dismissing claims for failure to tie alleged misrepresentations to decisions by "pharmacy benefit decision makers" or third-party insurers).

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992)). There can be no liability if too many "significant independent intervening events" lie between the purported misconduct and harm. *Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 467 (S.D. W. Va. 2013); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 20 F. Supp. 3d 305, 323 (E.D.N.Y. 2014) (granting summary judgment on RICO and ICFA claims in part because length of causal chain rendered connection between manufacturer's wrongdoing and payor's injury too attenuated).

The SAC attempts to hold Defendants liable for harm far removed from their conduct. The City asserts that Defendants effected a "sea change in medical and public perception" that led the use of long-term opioid therapy for chronic pain to become "commonplace." SAC ¶¶ 6-7. From that premise, the City seeks to make Defendants liable for: (1) prescribing decisions not only of doctors exposed to Defendants' marketing but of *any* doctor who wrote City-reimbursed opioid prescriptions for chronic non-cancer pain, *id.* ¶¶ 702-06, 781, 816, 823, 834; (2) every City-reimbursed opioid prescription for chronic non-cancer pain regardless of whether it was for one of Defendants' opioids, *id.* ¶¶ 751, 781-82, 797, 814-16, 822, 825, 834-35, 846; (3) unidentified doctors' failure to advise patients of opioid risks, *id.* ¶¶ 715-22, 758, 760; (4) all costs associated with those prescriptions, *id.* ¶¶ 817-25; and (5) a "black market in prescription opioids" and "other criminal activities." *See, e.g.*, *id.* ¶¶ 16, 726-29, 759(f). But Defendants are not "insurers of their industry," *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 266 (1990), and cannot be liable for these purported harms. Due to the many significant and independent intervening events and actors, any connection between the alleged misconduct and injury is too attenuated.

This is true even as to purported injuries from prescriptions of Defendants' opioids written by physicians allegedly exposed to Defendants' alleged misrepresentations. The intervening

18

events include: (1) the prescriber's exercise of medical judgment—itself influenced by a multitude of independent factors—as to the best treatment for the patient's medical condition; (2) the patient's preferences; (3) the patient's decision to fill a prescription; (4) the patient's decision whether and how to use the medication; and (5) the City's decision to cover the drug for the particular indication and to reimburse for the particular prescription. Worse yet, the City attempts to hold Defendants responsible for products *not* their own and for prescriptions by doctors who were never exposed to Defendants' marketing.[24]

Case law confirms that such a causal chain, which "necessarily involves" multiple layers of "decision making [by] the patient, the prescribing physician, and the [City as a] third-party payor," can result in only a remote and attenuated injury. *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 3119499, at *6-9 (S.D. Ill. Aug. 5, 2010) (dismissing negligence and misrepresentation claims as too remote to support proximate cause). In particular, the learned intermediary doctrine interjects prescribing physicians, who "use their independent medical judgment to decide whether [a particular drug] is the best treatment for a given patient," as a "key independent factor" that breaks the chain of causation. *Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*, 585 F. Supp. 2d 1339, 1344 (M.D. Fla. 2008) (dismissing RICO and state law consumer protection claims because prescribers' independent medical judgment broke causal chain). Illinois law has long recognized this doctrine. *See, e.g., Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill. 2d 507, 518-19 (1987) (a prescriber must consider

---

[24] As a matter of law, Defendants cannot be responsible for the costs and claims associated with other manufacturers' opioid products. *See Smith*, 137 Ill. 2d at 233, 251 (rejecting market share liability and requiring that plaintiffs identify the product causing their injuries); *City of Chi. v. Am. Cyanamid Co.*, 355 Ill. App. 3d 209 (Ill. Ct. App. 2005) (affirming dismissal when plaintiff failed to show defendants' specific products caused the alleged injuries); *Lewis v. Lead Indus. Ass'n*, 342 Ill. App. 3d 95, 103 (Ill. Ct. App. 2003) (holding that members of an industry may not be held jointly and severally liable "without proof that the particular member's specific product caused the injury for which recovery is sought"); *Kozak v. Armstrong World Indus., Inc.*, 213 Ill. App. 3d 1061 (Ill. Ct. App. 1991) (same).

"the propensities of the drug as well as the susceptibilities of his patient," "weigh[] the benefits of any medication against its potential dangers[,]" and "decide[] which available drug best fits the patient's needs"); *Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234, 244 (1996) ("prescribing physicians, and not pharmaceutical manufacturers, are in the best position to provide direct warnings to patients concerning the dangers associated with prescription drugs."). Courts applying the doctrine dismiss claims like the City's because proof of causation "would require an inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit." *Ironworkers*, 585 F. Supp. 2d at 1345.[25]

The SAC acknowledges that a physician's prescribing decision is a crucial, independent step between Defendants' representations and a patient's use of Defendants' opioids. But contrary to its own implausible assertion that Defendants "subverted every 'input' physicians rely on," SAC ¶ 658, the City concedes that physicians have available many sources of information about Defendants' products—including the FDA-approved labeling, educational material required under the FDA REMS program, and a large body of medical literature. *See, e.g.*, *id.* ¶¶ 22, 55, 58, 65, 67, 70-72, 81, 157-74. It also concedes that many of the Chicago doctors whom the City interviewed made prescribing decisions based on factors separate from Defendants' alleged misconduct, including the doctors' knowledge, experience, and judgment. *See supra* § II.B.2. Just as in *Ironworkers*, *Yasmin*, *Amgen*, and many other cases, the connection between Defendants' alleged conduct and the City's alleged harm is too remote to support a claim.

Finally, the proximate causation requirement forecloses liability based on the SAC's in-

---

[25] *See also Yasmin*, 2010 WL 3119499, at *7-9 (fraud-based claims dismissed where court would "have to delve into the specifics of each physician patient relationship to determine what damages were caused by [drug manufacturer's] alleged fraudulent conduct, as opposed to what damages were caused by the physician's independent medical judgment"); *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) (affirming dismissal where no "cognizable theory of proximate causation link[ed manufacturer's] alleged misconduct to Appellant's alleged injury" due to intervening links, including the "doctors' decisions to prescribe [the drug]").

flammatory charge that Defendants created "a new secondary market for opioids … [and] additional illicit markets in other opiates, particularly heroin," resulting in "concomitant crime and costs; unrealized economic productivity; and broken families and homes." SAC ¶ 759(g)-(h); *see also id*. ¶¶ 726-29. Proximate cause "will not be found where the criminal acts of third parties have broken the causal connection" and those acts and their consequences are not "so clearly foreseeable that the sales practices of [a defendant] should be deemed a legal cause [thereof]." *Beretta*, 213 Ill. 2d at 408; *see also Int'l Bhd. of Teamsters Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 34 F. Supp. 2d 656, 662 (N.D. Ill. 1998). Defendants sell highly regulated, FDA-approved medications that patients can lawfully obtain only by prescription. Defendants are "several times removed" from any criminal market or resulting heroin epidemic. *Beretta*, 213 Ill. 2d at 412 (inappropriate to subject defendants who sold "highly regulated" "lawful" product to liability). Those social ills are "the aggregate result of numerous unforeseeable intervening criminal acts by third parties not under defendants' control." *Id.* at 432.

## C. All Claims Fail Because the City Has Not Adequately Alleged Injury

For each claim, the SAC must plead a legally cognizable injury.[26] But the City fails to al-

---

[26] *See* SAC ¶¶ 750, 761 (Counts 1-2 (consumer fraud)) (alleging City was "damaged" by Defendants' acts and seeking "restitution of any money acquired as a result of Defendants' consumer fraud"), *see also In re Towers*, 162 F.3d 952, 955 (7th Cir. Ill. 1998) ("restitution is 'compensation for [victim's] actual pecuniary loss'"); SAC ¶ 771 (Count 3 (misrepresentations in connection with sale or advertising of merchandise)) (alleging City was "damaged" by Defendants' acts); *id*. ¶¶ 781-82 (Count 4 (false statements)) (alleging City was "damaged" by Defendant's acts and seeking "restitution of any money acquired"), *see also* MCC § 1-21-010(a) (authorizing up to three times the "damages … the city sustains"); SAC ¶¶ 795, 797 (Count 5 (false claims)) (same); *id*. ¶¶ 814, 816 (Count 6 (conspiracy to defraud)) (same); *id*. ¶ 825 (Count 7 (recovery of costs)) (claiming City incurred costs due to Defendants' acts recoverable under MCC § 1-20-020), *see also Vodak v. City of Chi.*, 2006 WL 2524141, at *3 (N.D. Ill. Aug. 20, 2006) (injury is element of claim under § 1-20-020); SAC ¶ 834 (Count 8 (insurance fraud)) (alleging City was "damaged" by Defendants' acts), *see also Steadfast Ins. Co. v. Auto Mktg. Network, Inc*., 1997 WL 1106276, at *16 (N.D. Ill. Aug. 12, 1997) (injury is element of a claim under 720 ILCS 5/17-10.5); SAC ¶ 845 (Count 9 (civil conspiracy)) (alleging City was "damaged" by Defendants' acts); *see also Reuter v. MasterCard Int'l, Inc*., 397 Ill. App. 3d 915, 927 (2010) (injury is element of civil conspiracy); SAC ¶ 850 (Count 10 (unjust enrichment)) (alleging City was "damaged" by Defendant's acts and seeking "disgorge[ment of ] all unjust enrichment to the City"), *see also TRW Title Ins. Co. v. Sec. Union Title*

lege that it reimbursed any opioid prescriptions that harmed patients and should not have been written.[27] The City predicates its theory of injury, instead, on the claim that long-term therapy for chronic non-cancer pain is *never* medically necessary or reasonably required. *See*, *e.g.*, SAC ¶¶ 70, 655, 672. Yet this flies in the face of the FDA's ***approval*** of most of the identified opioids for just that purpose.[28] *Id*. ¶ 22 (FDA-approved labels "may have allowed or did not exclude the use of opioids for chronic non-cancer pain"). The SAC further concedes doctors wrote City-reimbursed opioid prescriptions as "medically necessary or reasonably required." *Id*. ¶ 634.

Courts routinely dismiss complaints like the SAC for failure to allege that prescriptions were ineffective or harmful. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 2008 WL 5413105, at *8 (D.N.J. Dec. 23, 2008) (dismissing fraud-based claims because plaintiffs failed to "allege that any beneficiaries, insured, or employees … 'received [an] inadequate [or] inferior [drug] or even worse, suffered personal injuries as a result of' Defendants' alleged misrepresentations"); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-77 (D.D.C. 2003) ("Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs"). Even for opioids prescribed off-label,

---

*Ins. Co*., 153 F.3d 822, 828 (7th Cir. 1998) (defendant must be enriched at plaintiff's expense).

[27] The SAC is ambiguous on whether the City seeks recovery for prescription costs it did not reimburse. Although the SAC is not styled as a *parens patriae* action, it seemingly attempts to assert claims relating to opioid prescriptions written for Chicago consumers *not* covered by any of the City's health plans. *See*, *e.g.*, SAC ¶ 750 ("By reason of Defendants' unlawful acts, Chicago consumers have been damaged, and continue to be damaged, in a substantial amount to be determined at trial."). But in addition to constitutional-standing requirements, there are prudential limitations on a federal court's power to hear cases. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008). One well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties. *Id*. A city is not permitted to assert such claims, and this is yet another example of the City's over-reaching. *See Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 53-54 (1982) (our system of government "has no place for sovereign cities"); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (political subdivisions are precluded from suing as *parens patriae*). Even if the City could do so, the claims would fail for the same lack of particularity that plagues the rest of the SAC.

[28] Other opioids identified in the SAC, such as Nucynta IR, are approved for the treatment of acute pain, but the City does not claim that Defendants promoted these opioids for the treatment of chronic pain.

the reimbursement costs are not recoverable unless the prescription was ineffective or harmed the patient. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2010 WL 2346624, at *7-8 (D.N.J. June 9, 2010) (dismissing where third-party payor failed to allege facts showing that off-label prescriptions "were actually ineffective or unsafe"); *Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, 2010 WL 1257790, at *3 (D.N.J. Mar. 29, 2010) (no cognizable injury where plaintiffs failed to allege prescriptions "were ineffective even for off-label uses").

The SAC fails to allege that Defendants' allegedly improper conduct caused any doctor to write ***any*** ineffective or harmful opioid prescriptions, much less that ***every*** opioid prescription in Chicago was ineffective or harmful. *See, e.g.*, SAC ¶¶ 636, 662. Neither the City's Exhibits nor the interviews with the seven anonymous doctors and eight anonymous patients who are profiled in the causation and harm sections of the SAC bridge this gap. *See* SAC § V.F.1-2. *None of* the prescriptions listed in the Exhibits is claimed to have failed to alleviate a patient's pain or harmed a patient in any way. *See id*. SAC Exs. A.1-7, B.1-2.[29] *None of* the seven doctors is claimed to have written any prescriptions for the treatment of chronic non-cancer pain, let alone prescriptions that were ineffective or harmful. *See* SAC ¶¶ 688-701, 704-06. Four doctors— "Chicago Prescribers" SS, RR, JJ, or LL—are not even alleged to have written *any* City-reimbursed prescriptions. *Id*. ¶¶ 695-701, 704, 706. And *none* of the eight patients is alleged to have received an ineffective or harmful prescription.[30] *Id*. ¶¶ 708-09. Nor does the City allege that *any* of these prescriptions led it to incur costs for emergency services or addiction treatment.

---

[29] Save for Exhibits A.7 and B.2, which ambiguously list the "Most Frequent Primary Pain Diagnosis per Claim," the exhibits do not identify why opioids were prescribed, let alone allege that the prescriptions were written for the treatment of chronic non-cancer pain. And while Exhibits A.7 and B.2 purport to list patients who received opioid prescriptions for the treatment of pain over an extended period of time, they fail to allege that the patients did not have cancer.

[30] The three additional addiction treatment patients the City interviewed are not alleged to have received opioid prescriptions reimbursed by the City. SAC ¶¶ 719-21.

Absent specific allegations of injury, the City's claims fail.[31]

Finally, the SAC admits that the City did not pay direct costs for prescription drugs for most of the period at issue.[32] The City paid fixed premiums for all prescriptions to a third party, who in turn paid all prescription costs—meaning that the City *paid the same amount* regardless of how many prescriptions were reimbursed. *Id.* ¶ 647. The City cannot establish injury for periods in which it paid only fixed premiums for prescriptions. *See U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*, 2008 WL 5211021, at *2-3 (N.D. Ill. Dec. 10, 2008); *U.S. ex rel. Zemplenyi v. Grp. Health Coop.*, 2011 WL 814261, at *2 (W.D. Wash. Mar. 3, 2011). Nor can the City claim injury from any indirect premium increases, SAC ¶ 647, because they are too speculative. *See Bextra*, 2012 WL 3154957, at *8 (inflated price injuries are too speculative). The Court should dismiss the City's damage claims for the periods in which it was not self-insured.

### D. The SAC Is Deficient on Multiple Additional Grounds

#### 1. The Claim Under Chicago Municipal Code § 2-25-090 (Count 1) Must Be Dismissed to the Extent It Seeks Relief for Consumer Fraud Prior to November 19, 2008

To the extent the City seeks relief under Section 2-25-090 for conduct occurring before the statute's November 19, 2008 enactment date, the claim fails because the statute does not apply retroactively. *See Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330-31 (2006). Though

---

[31] In *Zyprexa*, the court held that Mississippi, which sought to recover prescription costs, damages, and statutory penalties for "non-medically necessary" prescriptions allegedly caused by defendant's misconduct, needed individualized proof that prescribers relied on the alleged misrepresentations for *each* allegedly unnecessary prescription. *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 453, 457 (E.D.N.Y. 2009); *see also Yasmin*, 2010 WL 3119499, at *7 (dismissing damage claims where court "would have to delve into the specifics of each physician patient relationship to determine what damages were caused by [defendant's] alleged fraudulent conduct, as opposed to what damages were caused by the physician's independent medical judgment."); *Pa. Emps. Benefit Trust Fund (PEBTF) v. Ortho-McNeil-Janssen Pharm., Inc.*, 2010 WL 3613056 (Ct. Comm. Pl. July 7, 2010) (same for unjust enrichment claim).

[32] SAC ¶ 647 (discussing periods "[b]efore July 2006," "[b]etween July 2006 and December 2009," and "[f]rom January 2012 to December 2013" during which the City paid premiums for HMO plans, "which in turn covered the cost of prescription drugs").

the City previously conceded this point,[33] it impermissibly reasserts this claim as to "all times relevant to th[e] [SAC]," SAC ¶¶ 743-44, which alleges conduct stretching back decades.

### 2.  The Unfair Practices Claim (Count 2) Must Be Dismissed

The City's claim that Defendants violated Section 2-25-090 by "engaging in unfair acts or practices to promote the sale and use of opioids" fails because the SAC does not allege facts showing the conduct to be "unfair" under any of the three applicable factors. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002) (discussing factors).[34]

*First*, the SAC identifies no "public policy" the conduct supposedly "offend[ed]." *Id.* While the SAC cites 745 ILCS 35/2, SAC ¶ 757 & n.140, that statute's stated policy—"to promote and encourage use of [an] intervention process to help initiate" addiction treatment—has no nexus to the claims here. Also insufficient is the SAC's vague and conclusory allegation that Defendants "worked to undermine public policy, enshrined by" unspecified laws "aimed at ensuring honest marketing and safe and appropriate use of pharmaceutical drugs." *Id.*; *see also Garrett v. Rentgrow, Inc.*, 2005 WL 1563162, at *3 (N.D. Ill. July 1, 2005) (unfairness claim dismissed for "fail[ure] to point to any established statute or common law doctrine" setting out an offended public policy); *Robinson*, 201 Ill. 2d at 421 (a "bare assertion of unfairness without describing in what manner the [conduct] … violate[s] public policy or [is] oppressive is insufficient").

*Second*, the SAC fails to allege facts showing that Defendants' conduct was "immoral, unethical, oppressive, or unscrupulous." *Robinson*, 201 Ill. 2d at 417-18. The SAC asserts Defendants were "oppressive to both patients and prescribers" by "co-opt[ing] the sources reasona-

---

[33] Opp. to JMTD at 50 n.53 ("[t]he City does not seek a retroactive application" of Section 2-25-090 and only seeks damages for "conduct that violates [this statute] occurring after November 19, 2008").

[34] Because the City's unfairness claim rests on the same allegations as its consumer fraud claims, it must (but does not) comply with Rule 9(b). *See supra* § II.A. & n.5. And to the extent the unfairness claim (or the municipal services claim or civil conspiracy claim) depends on alleged violations of the FDCA or FDA regulations, *see* SAC ¶¶ 755(c)-(e), 819(h), 844(g), it is preempted. *See infra* § II.D.3.

ble physicians relied upon" and "target[ing] non-specialist physicians and non-physician pre-scribers." SAC ¶ 758. But to state an unfairness claim, conduct must be "so oppressive as to leave the consumer with little alternative except to submit to it." *Robinson*, 201 Ill. 2d at 418. Given the availability of other treatment options and the SAC's concession that opioid risks are disclosed in product labeling, SAC ¶¶ 10, 58, 65, 67-68, the City cannot plausibly claim that the alleged conduct left prescribers and patients with "little alternative" but to embrace opioids.

*Third*, for the same reasons and those described in Section II.C, the SAC fails to plead a "substantial injury to consumers." *Robinson*, 201 Ill. 2d at 418; *see Carroll v. Butterfield Health Care, Inc.*, 2003 WL 22462604, at *3 (N.D. Ill. Oct. 29, 2003) (no substantial injury where plaintiff not "coerced" by defendants and failed to "allege that he had no alternate choices").

### 3. The Municipal False Statement (Count 4), Chicago Municipal False Claims Statute ("CFCA") (Counts 5 and 6), and Insurance Fraud (Count 8) Claims Must Be Dismissed

#### a. The SAC Fails to Plead a False Claim

The City's false statement, CFCA, and insurance fraud counts all fail to plead a requisite false claim.[35] To do so, the City "must link specific allegations of deceit to claims for govern-ment payment." *U.S. ex rel. Dolan v. Long Grove Manor, Inc.*, 2014 WL 3583980, at *3 (N.D. Ill. July 18, 2014). It has not. *First*, rather than identify specific false claims, the SAC asserts that *all* reimbursement claims for opioids prescribed to treat chronic non-cancer pain are false. SAC ¶ 776. The Seventh Circuit has repeatedly rejected that mode of pleading, holding allegations that fail to identify specific false claims insufficient. *See U.S. ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 858 (7th Cir. 2006) (rejecting statistics-based argument that *all* claims for

---

[35] MCC § 1-21-010(a) imposes liability on "[a]ny person who knowingly makes a false statement of ma-terial fact to the city…." MCC § 1-22-020(2) imposes liability for "false or fraudulent claim[s] paid or approved by the city." 720 ILCS § 5/17-10.5(a)(1) prohibits "the making of a false claim or [] causing a false claim to be made on any policy of insurance …."

certain medications are false); *Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014) ("[v]iolating a regulation is not synonymous with filing a false claim").

*Second*, the SAC impermissibly relies on "implied certification." Alleging that the City's health and workers' compensation plans cover only "medically necessary" or "reasonably required" prescriptions, the SAC asserts that every drug reimbursement claim includes the provider's implied certification that the prescription is "customary for the treatment or diagnosis of an Illness or Injury, and is consistent with generally accepted medical standards." SAC ¶ 651; *see also id.* ¶¶ 776, 778, 788, 807, 830. But the Seventh Circuit has now definitively *rejected* implied certification as a basis for false claims liability. *See Sanford-Brown*, 788 F.3d at 711-12. And the SAC does not allege that any provider expressly certified compliance with the relevant contract terms, laws, or regulations in seeking reimbursement for prescriptions of Defendants' opioids.

*Third*, from the premise that "Defendants' deceptive marketing rendered opioids misbranded as prescribed for chronic pain," *id.* ¶ 656, the SAC asserts that "Defendants' opioids were not FDA-approved within the meaning of the City's health plans, for the long-term treatment of chronic pain," and therefore ineligible for reimbursement. SAC ¶ 830. This theory fails as a matter of law. The SAC purports to invoke 21 U.S.C. § 352 (a drug may be deemed misbranded if, among other reasons, its labeling is "false or misleading in any particular"), and 331(a) (prohibiting "[t]he introduction … into interstate commerce of any … drug … that is … misbranded"), but the Federal Food, Drug, and Cosmetic Act ("FDCA") vests exclusive enforcement authority for these provisions in the federal government. The City's attempt to declare Defendants' drugs misbranded is therefore preempted under the Supremacy Clause. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349-50 (2001) ("[W]e have clear evidence that Congress intended that the [FDCA] be enforced exclusively by the Federal Govern-

27

ment.") (citing 21 U.S.C. § 337(a)); *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010)

("[T]he plaintiff must not be suing *because* the conduct violates the [FDCA] (such a claim would

be impliedly preempted under *Buckman*))" (citation omitted, emphasis in original); *Anthony v.*

*Country Life Mfg., L.L.C.*, 2002 WL 31269621, at *3 (N.D. Ill. Oct. 9, 2002) (an ICFA claim

"premised solely upon a violation of the FDCA" held preempted). In addition, as discussed in

Defendants' concurrently filed Joint Motion to Dismiss or Stay Under the Primary Jurisdiction

Doctrine, the FDA has recently reviewed the precise issue underlying the City's misbranding

claims for most of the opioids at issue—whether the approved indication for treatment of chronic

pain should be limited as to dose, duration, or cancer pain—and has rejected the City's position.

Under *Iqbal*, the City cannot plausibly contend Defendants' drugs are misbranded; accordingly,

its "misbranding" argument cannot save its claims under the CFCA or other provisions of Illinois

law. *Cf. Germain v. Teva Pharm., USA, Inc.*, 756 F.3d 917, 929 (6th Cir. 2014).

### b. The SAC Does Not Adequately Plead Presentment, Causation, or Conspiracy

Counts 4-6 and 8 must also be dismissed because the SAC does not allege "any specific

example of a fraudulent claim" *presented* to the City for payment. *Garst*, 328 F.3d at 376; *see*

*also* MCC § 1-22-020(1) (imposing liability for "knowingly present[ing], or caus[ing] to be pre-

sented" a false claim). Under Rule 9(b), the City "must identify specific false claims for payment

as well as (1) who submitted the false claim, (2) what the person submitted, (3) when he submit-

ted the claim, (4) where he did so and (5) how he did so." *West*, 2007 WL 2091185, at *3 (citing

*Garst*, 328 F.3d at 376). The City's Exhibits, which purport to list a representative sample of pre-

sented claims, provide none of these details. The claims in Exhibits B.1-B.2 are not tied to any

false statement, and Exhibits A.1-A.7 merely purport to list prescriptions written by prescribers

who "received" Defendants' unidentified "misrepresentations" without connecting any listed

prescription to a misrepresentation or to a claim submitted to the City. SAC Exs. A.1-A.7, B.1-B.2. The exhibits thus fail to show *who* presented any claim, *what* claims were presented, *when*, *where*, or *how* any claim was presented, and *why* or *how* any claim is false. The SAC's allegations describing this "representative sample" do not fill the gap. *Id.* ¶¶ 709(e)-(h). The failure to "tie a specific fraudulent transaction to an invoice submitted to the [City]" defeats the SAC's false claims counts. *Fowler*, 2006 WL 2425331, at *6.[36] For the same reason, these counts fail for lack of causation. The conclusory allegation that Defendants "caused doctors and pharmacies to submit, and the City to pay, claims to its health plans," SAC ¶ 650, is insufficient.[37]

The SAC's failure to allege any underlying false claim also defeats its cause of action under the CFCA's conspiracy provision, MCC § 1-22-020(3). The SAC alleges Cephalon, Endo, Janssen, and Purdue "conspired with KOLs and Front Groups to defraud the City by getting a false or fraudulent claim allowed or paid, as part of a comprehensive scheme to illegally and deceptively promote opioids in an effort to further opioids sales." *Id.* ¶ 800, *see also id.* ¶¶ 801-05, 811. But as discussed *infra*, the SAC alleges no facts sufficient to demonstrate an agreement between any Defendant and any third party "for the purpose of obtaining or aiding to obtain payment from the government." *U.S. ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 666 (N.D. Ill. 2015) (dismissing FCA conspiracy claim for failure to allege "who the agreement was with, how

---

[36] *See also Dolan*, 2014 WL 3583980, at *5; *West*, 2007 WL 2091185, at *4; *Bantsolas ex rel. U.S. v. Superior Air & Ground Ambulance Transp., Inc.*, 2004 WL 609793, at *2 (N.D. Ill. Mar. 22, 2004); *Peterson v. Cmty. Gen. Hosp.*, 2003 WL 262515, at *2 (N.D. Ill. Feb. 7, 2003) (dismissing FCA claims for failure to allege specific claims with particularity as required by Rule 9(b)).

[37] To avoid dismissal, the City must allege facts showing that Defendants played a *direct* causal role in presenting a false claim. *See U.S. v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001) (defendant medical clinic director instructed billing service to place his identification number on claims); *U.S. v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997) (defendant physician allowed wife to submit claims on his behalf); *U.S. v. President & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 187-89 (D. Mass. 2004) (defendant signed invoices indicating that expenses were chargeable to federally funded entity); *U.S. ex rel. Drescher v. Highmark, Inc.*, 305 F. Supp. 2d 451, 459-60 (E.D. Pa. 2004) (defendant causes submission of a false claim only when the submitting party is "merely a conduit to the transfer of government funds").

they agreed, how they decided to file a false claim, who made the alleged misrepresentation, who filed the allegedly false claim, the method by which it was filed, and how much the payment was for") (citation and quotations omitted).[38]

### 4. The Municipal Services Claim (Count 7) Must Be Dismissed

MCC § 1-20-020 authorizes actions against persons who cause the City "to incur costs in order to provide services reasonably related to such person's violation of any federal, state or local law." The City's claim for recovery under this statute fails because the City has failed to state a claim for a violation of municipal or state laws or facts showing causation or injury. *See infra* §§ II.B.-C. The claim is also independently barred by the remoteness doctrine. *See Philip Morris*, 353 Ill. App. 3d at 60. Further, the City's claim to recover prescription, health care, addiction treatment, and emergency services costs is barred by the municipal cost recovery rule, also called the free public services doctrine. This doctrine provides that public expenditures "made in the performance of governmental functions are not recoverable in tort." *Beretta*, 213 Ill. 2d at 424. Because the City fails to plead an underlying code violation, the costs the City seeks to recover, *see* SAC ¶¶ 822-25, fall squarely within the *Beretta* rule. *See* 213 Ill. 2d at 426, 430.

### 5. The Civil Conspiracy Claim (Count 9) Must Be Dismissed

The failure to adequately plead an underlying claim defeats the City's civil conspiracy claim. Order at 33 (citing *Indeck N. Am. Power Fund, L.P. v. Norweb P.L.C.*, 316 Ill. App. 3d 416, 432 (2000) (because "a conspiracy is not an independent tort," a conspiracy claim fails when the "plaintiff fails to state an independent cause of action underlying its conspiracy allega-

---

[38] *See also U.S. ex rel. Wildhirt v. AARS Forever, Inc.*, 2011 WL 1303390, at *6 (N.D. Ill. Apr. 6, 2011) (dismissing because false claims conspiracy must be "formed ... to defraud the government" and created "for the purpose of obtaining payment from the government."); *U.S. ex rel. Garst v. Lockheed Integrated Solutions Co.*, 158 F. Supp. 2d 816, 825 (N.D. Ill 2001) (dismissing because relator failed to allege that the conspiracy was "one to get a false or fraudulent claim allowed or paid by the government").

tions")).[39] As discussed below and in the individual motions to dismiss, the conspiracy claim also fails because the SAC alleges neither an agreement to commit an unlawful act nor a Defendant's tortious act in furtherance of such agreement. *Tucker v. Soy Capital Bank and Trust Co.*, 974 N.E.2d 820, 834-35 (Ill. App. Ct. 2012); *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 240 (Ill. App. Ct. 2007). Nor does the SAC particularize the "who, what, when, where, and how" required under Rule 9(b) for pleading fraud-based conspiracies. *See Gaudie v. Countrywide Home Loans, Inc.*, 683 F. Supp. 2d 750, 758-60 (N.D. Ill. 2010).

### a. The SAC Fails to Allege an Agreement

Because conspiracy is an agreement to commit an illegal act, the essence of conspiracy is agreement. *See Borsellino*, 477 F.3d at 509; *Webb v. Local 73, Serv. Emps. Int'l Union*, 2002 WL 31049841, at *4 (N.D. Ill. Sept. 13, 2002). Failure to allege agreement is fatal to a conspiracy claim. *See, e.g.*, *Hard Drive Prods., Inc. v. Does 1-55*, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011); *Segreti v. Lome*, 747 F. Supp. 484, 487 n.1 (N.D. Ill. 1990). Unable to plead facts showing an agreement among the Defendants, the City now attempts to reconfigure its conspiracy claim as one alleging multiple conspiracies between individual Defendants and third parties. According to the SAC, "by engaging in conduct described in [the SAC], [Cephalon, Endo, Janssen, and Purdue] agreed" with "the various KOLs and Front Groups with which each of

---

[39] The same failing dooms the SAC's claim that Defendants "aided and abetted" third-party violations of MCC §§ 2-25-090 (consumer fraud), 4-276-470 (misrepresentations in sale or advertising of merchandise), 1-20-020 (false statements), and 1-20-020 (municipal costs), *see* SAC ¶¶ 742-44, 746-47, 765, 775-76, 782, 819. The SAC asserts that the "allegation[s] that Defendants 'acted in concert' with third parties … [also mean] that [they] aided and abetted these third parties in the commission of acts necessary to achieve" "some end." *Id.* ¶ 129 n.44. But the SAC nowhere alleges that third parties committed the underlying "principal violation" on which an aiding and abetting claim must be predicated, and that omission defeats any claim on this theory. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 611 (7th Cir. 2013); *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1987). The claim also fails as to Section 2-25-090 (and the nearly identically worded Section 4-276-470) because Illinois law does not recognize aiding and abetting liability under Section 2 of ICFA, which forms the basis of the City's Section 2-25-090 claims, SAC ¶ 739. *See Brown v. SBC Commc'ns, Inc.*, 2007 WL 684133, at *3 (S.D. Ill. Mar. 1, 2007); *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill. 2d 359, 369 (1998) (same).

them was allied" to "deceptively promote the risks, benefits, and superiority of opioid therapy." SAC ¶¶ 837-41. The SAC asserts that the publications of the KOLs and Front groups are the "products of these conspiracies," and the "collaboration … in creating and disseminating these publications is further evidence of each conspiracies' existence." *Id*.

This claim fails on multiple grounds. First, a conspiratorial agreement "cannot be inferred from the averment that overt acts were committed in furtherance of the conspiracy," *Sweeney v. Bausman*, 1987 WL 45713, at *2 (N.D. Ill. Nov. 5, 1987), particularly when the City fails to specify which of the "conduct described" in its 325-page SAC purportedly supports such an agreement.[40] Instead, a conspiracy claim must allege sufficient facts from which a court may infer the existence of a conspiratorial agreement between the parties. *See Roehl v. Merrilees*, 2012 WL 1192093, at *8 (N.D. Ill. Apr. 10, 2012); *Lyttle v. Killackey*, 528 F. Supp. 2d 818, 831-32 (N. D. Ill. 2007). Also, "[f]acts must be alleged to suggest the existence of an agreement *to violate the law*." *Lisitza v. Par Pharm. Cos.*, 2013 WL 870623, at *7 (N.D. Ill. Mar. 7, 2013) (emphasis added). A "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557.

Merely changing the purported co-conspirators' identities (from other Defendants to "KOLs and Front Groups") and not particularizing the underlying allegations is insufficient to allege a conspiratorial agreement and only perpetuates the deficiencies of the prior complaints. The SAC relies upon conclusory allegations that attempt to tie each of Cephalon, Endo, Janssen, and Purdue to various pain care organizations and various publications, *see, e.g*., SAC ¶¶ 519,

---

[40] This failure makes the conspiracy claim as it relates to KOLs particularly unintelligible. Even though the City's conspiracy count asserts that "Defendants Cephalon, Endo, Janssen, and Purdue each conspired with various KOLs," it does not identify *any* KOLs with whom each Defendant allegedly conspired. *See* SAC ¶¶ 836-46. The remainder of the SAC, in turn, refers to nearly a dozen KOLs, *see, e.g., id.* ¶¶ 138, 143-49, 166, 198, 367, 372, 593 n.125, 617, and repeatedly refers to "KOLs" without identifying these individuals by name, *see, e.g., id.* ¶¶ 8-11, 24, 118, 127, 133-42, 199, 200-01, 222-23.

533, 584-85, 587, 596, it identifies a handful of miscellaneous agreements—some with parties who are not alleged to be co-conspirators—related to the preparation of those publications, *id.* ¶¶ 536, 583, and alleges that Defendants funded, sponsored, or distributed the publications, *see, e.g.*, *id.* ¶¶ 344, 347, 353, 445, 447, 451, 457-59, 525, 543, 603, 608-09, 612-13, 616. But the SAC is wholly lacking in non-conclusory allegations that there was any conspiratorial agreement, much less that the parties "understood the general objectives of the conspiratorial scheme, accepted them, and agreed, either explicitly or implicitly to do [their] part to further those objectives." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012) (citation and internal alterations omitted); *see also McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 266 (Ill. 1999) ("Proof of a relationship … does not establish the required agreement"). It is also wholly lacking in non-conclusory allegations that any such agreement was for any unlawful purpose, let alone for the purpose of defrauding the City, and fails to identify the requisite "overt tortious or unlawful act" committed by one of the conspirators in furtherance of these purported agreements, requiring dismissal. *Tucker*, 974 N.E.2d at 834-35; *Redelmann*, 874 N.E.2d at 240.

### b. The SAC Fails to Plead a Conspiracy with Particularity

The City also fails to allege the "who, what, when, where, and how" of each Defendant's allegedly fraudulent conspiracy with third parties and thus fails to satisfy Rule 9(b)'s particularity requirement. *Beyrer*, 722 F.3d at 950; *Borsellino*, 477 F.3d at 507, 509. The heightened pleading standard applies to all elements of the conspiracy claim, including agreement. *See Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 895-96 (N.D. Ill. 1987). Yet the SAC's conspiracy allegations provide none of the requisite details, including *when* or *how* the various schemes were formed, *which* individuals participated in the schemes, and *how* their acts furthered the conspiracy. The SAC's conclusory allegations, including that "[a]s part of its

agreements," each Defendant "provided support for [third parties'] deceptive statements promoting opioids," are insufficient to support this claim. SAC ¶¶ 802-05; *see also id.* ¶¶ 24, 129, 200-04, 768. *See Borsellino*, 477 F.3d at 509 ("the complaint tells us nothing about the nature of the purported agreement to defraud the plaintiff[], such as when it was made or which [Defendants] arranged the conspiracy."). Because the City fails to "connect the dots" between alleged collaboration in a marketing campaign and the alleged conspiracy to defraud, the claim fails. *Lisitza*, 2013 WL 870623, at *5.

### 6. The Unjust Enrichment Claim (Count 10) Must Be Dismissed

The City's unjust enrichment claim is derivative of the other claims and fails for the same reasons. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then ... unjust enrichment will stand or fall with the related claim."). This claim also fails because the SAC does not allege facts showing that (1) any Defendant "ha[s] unjustly retained a benefit to the [City's] detriment," Order at 33 (quoting *HPI Healthcare Servs., Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679 (Ill. 1989)), or (2) the City has no adequate remedy at law. *Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 656 (1995). As discussed above, the SAC does not adequately allege that the City was harmed or that Defendants caused any such harm. And nothing suggests that the City's statutory or other common law remedies would be inadequate.

### III. CONCLUSION

The City has failed to and cannot cure the many fundamental defects in its pleadings, including those identified by the Court in its prior ruling. The Court should dismiss with prejudice.

Dated:   November 20, 2015

Respectfully submitted,

By: /s/ Charles C. Lifland
    Charles C. Lifland
    Carolyn J. Kubota
    Ivana J. Cingel

    O'MELVENY & MYERS LLP
    400 S. Hope Street
    Los Angeles, CA 90071
    Telephone:  (213) 430-6000
    Facsimile:   (213) 430-6407
    clifland@omm.com
    ckubota@omm.com
    icingel@omm.com

    *Attorneys for Defendants Janssen Phar-*
    *maceuticals, Inc., Johnson & Johnson,*
    *Janssen Pharmaceutica, Inc. n/k/a Janssen*
    *Pharmaceuticals, Inc., and Ortho-McNeil-*
    *Janssen Pharmaceuticals, Inc. n/k/a*
    *Janssen Pharmaceuticals, Inc., Appearing*
    *Pro Hac Vice*

By: /s/ Michael P. Doss
    Michael P. Doss
    Scott D. Stein

    SIDLEY AUSTIN LLP
    One South Dearborn
    Chicago, IL 60603
    Telephone:   (312) 853-7520
    Facsimile:    (312) 853-7036
    mdoss@sidley.com
    sstein@sidley.com

    *Attorneys for Defendants Janssen Phar-*
    *maceuticals, Inc., Johnson & Johnson,*
    *Janssen Pharmaceutica, Inc. n/k/a Janssen*
    *Pharmaceuticals, Inc., and Ortho-McNeil-*
    *Janssen Pharmaceuticals, Inc. n/k/a*
    *Janssen Pharmaceuticals, Inc.*

35

By: /s/ R. Ryan Stoll

    R. Ryan Stoll
    Patrick Joseph Fitzgerald

    SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
    155 N. Wacker Drive
    Suite 2700
    Chicago, IL 60606
    Telephone: (312) 407-0508
    ryan.stoll@skadden.com
    patrick.fitzgerald@skadden.com

    *Attorneys for Defendants Purdue Pharma*
    *L.P., The Purdue Frederick Company,*
    *Inc., and Purdue Pharma, Inc.*


By: /s/ Tinos Diamantatos

    Tinos Diamantatos

    MORGAN, LEWIS & BOCKIUS LLP
    77 West Wacker Drive, 5th Floor
    Chicago, IL 60601
    Telephone: (312) 324-1145
    (312) 353-2067 (fax)
    tdiamantatos@morganlewis.com

    Gordon Cooney, Jr. (pro hac vice)
    Steven A. Reed (pro hac vice)
    MORGAN, LEWIS & BOCKIUS LLP
    1701 Market Street
    Philadelphia, PA 19103-2921
    Telephone: (215) 963-5000
    jgcooney@morganlewis.com
    sreed@morganlewis.com

    *Attorneys for Defendants Cephalon, Inc.*
    *and Teva Pharmaceuticals USA, Inc.*

By: /s/ Steven G. Reade

Steven G. Reade (pro hac vice)
Joshua M. Davis (pro hac vice)
ARNOLD & PORTER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942.5000
steven.reade@aporter.com
joshua.davis@aporter.com

*Attorneys for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

By: /s/ Peter Vincent Baugher

Peter Vincent Baugher
Nicholas A. Gowen
HONIGMAN MILLER SCHWARTZ &
COHN LLP
One South Wacker Drive, 28th Floor
Chicago, IL 60606
Telephone: (312) 701-9300
pbaugher@honigman.com
ngowen@honigman.com

*Attorneys for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

By: /s/ James W. Matthews

James W. Matthews (pro hac vice)
Katy E. Koski (pro hac vice)
Jason L. Drori (pro hac vice)
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199
Telephone: (617) 342-4000
jmatthews@foley.com
kkoski@foley.com
jdrori@foley.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
Telephone: (312) 832-4500
jgarlough@foley.com

*Attorneys for Defendants Allergan plc, f/k/a Actavis plc, Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc., Actavis LLC, Actavis Pharma, Inc., f/k/a Watson Pharma, Inc., and Watson Laboratories, Inc.*

## SIGNATURE ATTESTATION

Pursuant to the Northern District of Illinois' General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories concur in the filing's content.

/s/ Charles C. Lifland
Charles C. Lifland

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2015, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.


Executed on November 20, 2015, at Los Angeles, California.


/s/ Charles C. Lifland
Charles C. Lifland