IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PURDUE PHARMA L.P., et al., )<br>)<br>Defendants. )<br>) | Case No. 1:14-cv-04361<br><br>Honorable Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF ACTAVIS DEFENDANTS' INDIVIDUAL MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Defendants Allergan plc, f/k/a Actavis plc ("Allergan"), Actavis, Inc., n/k/a Allergan Finance, LLC, f/k/a Watson Pharmaceuticals, Inc. ("Actavis, Inc.," and collectively with Allergan, the "Actavis Holding Company Defendants"); Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc. ("Actavis Labs"), Actavis LLC ("Actavis LLC"), and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc. ("Actavis Pharma," and collectively with Actavis Labs and Actavis LLC, the "Actavis Operating Company Defendants") submit this memorandum of law in support of their individual motion to dismiss Plaintiff City of Chicago's (the "City") Third Amended Complaint, filed October 25, 2016 (ECF No. 477) ("TAC"). From time to time hereafter, the Actavis Operating Company Defendants and the Actavis Holding Company Defendants collectively are referred to as the "Actavis Defendants."

The TAC should be dismissed as to the Actavis Defendants, in whole or in part, for the reasons set forth in the Memorandum of Points and Authorities in Support of Defendants' Joint Motion to Dismiss and/or Strike Counts 2 and 4-10 of Plaintiff's Third Amended Complaint

Under Rules 12(b)(6) and 12(f) (the "JMTD"), filed concurrently herewith and in which the Actavis Defendants join. Moreover, and as more fully set forth below, the TAC should be dismissed, in whole or in part, against the Actavis Defendants for the following three additional, independent reasons:[1]

*First*, the City has failed to comply with the Court's most recent directive to causally link the health care providers who prescribed the Actavis Defendants' opioid products at issue—*i.e.*, Kadian®—to the Actavis Defendants' purportedly fraudulent marketing activities. *See* § I., *infra*. *Second*, to the extent the City seeks relief for misconduct involving the branded opioid drug Kadian®, all claims concerning conduct before January 1, 2009 must be dismissed because (as before) the City explicitly concedes that none of the Actavis Defendants owned or marketed Kadian® before 2009. *See* § II.A., *infra*. *Third*, to the extent that any of the claims asserted against the Actavis Defendants relate to any brand-name or generic opioid product other than Kadian®, such claims must be dismissed because Kadian® remains the only opioid that any of the Actavis Defendants are alleged to have detailed to anyone in Chicago. *See* § II.B., *infra*.

## THE TAC'S ALLEGATIONS

For purposes of the instant motion, it is undisputed and, in fact, the City affirmatively alleges that the Actavis Defendants acquired the right to market and sell Kadian from an unaffiliated pharmaceutical manufacturer late in 2008. *Id*. ¶ 48. More specifically, "Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc., on December 30, 2008 and began marketing Kadian in 2009." *Id*.

---

[1] Allergan and Actavis, Inc. previously have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, because both are nonresident holding companies with no minimum contacts in or with the State of Illinois. (ECF Nos. 111, 220, 404). In accordance with the Court's November 1, 2016 Order (ECF No. 483), Allergan and Actavis, Inc. do not repeat those arguments here but expressly reserve all rights and procedural and substantive arguments against the exercise of personal jurisdiction over them in Illinois.

2

Although the City alleges that, in addition to Kadian®, "Actavis engages in the business of marketing and selling opioids in Chicago and across the country, including the branded drug[] . . . Norco, a generic version of Kadian, and generic versions of Duragesic and Opana," the TAC does not describe any detailing or marketing of any kind by any Actavis Defendants involving any opioid other than Kadian®. In fact, the City acknowledges that, while "Actavis also sold various generic opioids, including Norco, which were widely prescribed in Chicago," these products "were *not directly marketed* by sales representatives." TAC ¶ 263 n.93 (emphasis added); *see also* SAC ¶ 263 n.92 (same).

## ARGUMENT

**I.     DESPITE THREE AMENDMENTS TO ITS COMPLAINT, THE CITY STILL FAILS TO PLEAD ANY CAUSAL LINK BETWEEN THE ACTAVIS DEFENDANTS' ALLEGED CONDUCT AND ANY ALLEGED INJURY TO THE CITY**

The Court previously dismissed all but two of the City's 10 claims against the Actavis Defendants primarily because the City had (again) failed to sufficiently allege that the Actavis Defendants' alleged conduct caused any harm. *See* Memorandum Opinion and Order (ECF No. 471) ("Order") at 25-26 ("[T]he Court does not find that the City has alleged enough to connect defendants' alleged deceptive marketing with prescriptions that were covered by the City" because "the City has not alleged [that] injuries . . . or the monetary damage the City incurred were caused by prescriptions written as a result of defendant's alleged deceptive marketing"). The Order provided the City "a final opportunity" to re-plead and "connect[] . . . named prescribers . . . who were detailed with defendants' alleged deceptive marketing [to] the City's payment of false claims." *See* Order at 35, 41. Accordingly, the City had to identify a Kadian® prescription dispensed to a City-insured patient and written by a prescriber who had been detailed on Kadian®.

3

The City alleges the Actavis Defendants detailed Chicago Prescribers B, C, D, E, F, G, H, I, and J. TAC ¶¶ 296(a)-(h), n.97, 386(a). Yet, the TAC's exhibits confirm that Prescribers C, D, G, and I did not prescribe *any* of the Actavis Defendants' pharmaceutical products. Prescriber F allegedly "recall[ed] being detailed by Kadian representatives from 2005 to 2007." TAC ¶ 296(d). Even so, any such detailing cannot be attributed to the Actavis Defendants because it indisputably occurred *before* "Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc., on December 30, 2008 and began marketing Kadian in 2009." *Id*. ¶ 48.

Prescriber J did not write any Kadian® prescriptions but is associated with claims for generic opioid products attributed to some of the Actavis Defendants. Ex. B.2. Claims for these products say nothing about any alleged Kadian® marketing, however. Rather, they show that a pharmacist substituted a generic alternative for the branded opioid actually prescribed. Here, the City has not identified any generic opioid specifically substituted for Kadian®. Moreover, and in any event, a City-insured patient having a prescription filled with a generic opioid sold by the Actavis Defendants cannot support liability because the City agrees "Actavis . . . sold various generic opioids" but those "were not directly marketed by sales representatives." TAC ¶ 263 n.93.

With respect to Prescribers B, E, and H, the City sets forth vague allegations of purported misrepresentations supposedly made by unnamed "sales representatives" of the Actavis Defendants.[2] Prescriber E prescribed Kadian® once to one patient in one month in 2010. Exs. A.1, A.6. Prescriber H prescribed Kadian® once to one patient in one month in 2012. *Id*. And Prescriber B prescribed Kadian® to one patient once a month between November 2009 and

---

[2] Notably, "allegations of the complaint [that] do not identify the persons or agents employed by the defendants who are responsible for the alleged misrepresentations or material omissions" have been rejected on Rule 9(b) grounds because "[i]t is insufficient [under Rule 9(b)] to attribute misrepresentations to a corporate entity without naming the responsible individuals." *See In re Universal Foundry Co.*, 163 B.R. 528, 540 (E.D. Wis. 1993).

4

November 2011 and another patient twice a month between November 2010 and February 2011.³ Ex. A.1. No prescriber alleged to have been detailed by any Actavis Defendants prescribed Kadian® to any patient covered by the City's workers' compensation program.

These exhibits, on their face, do not identify any improper or wrongful, let alone fraudulent, prescription; rather, they identify opioid prescriptions the City alleges were written to treat chronic pain conditions. The City admits such prescriptions are entirely consistent with the labeling and indications for Kadian®. *See, e.g.*, TAC ¶ 48 ("Prior to April 2014, Kadian was indicated for the 'management of moderate to severe pain when a continuous, around-the-clock opioid analgesic is needed for an extended period of time.'"). The City does not claim these Kadian® prescriptions (1) had any causal connection to any pro-opioid messaging or Kadian® detailing by any Actavis Defendants; or (2) were medically unnecessary, harmful, ineffective, or otherwise improper and ineligible for payment by the City. The City also fails to plead that Prescribers B, E, and H "heard [the Actavis Defendants'] misrepresentations" and "subsequently prescribed [their] drugs . . . *rel[ying] on [the] misrepresentations when they [did so]*." Order at 32-33 (emphasis added). As such, the City still fails to adequately allege that any Kadian® prescriptions were written or reimbursed *because of* any statements or conduct by any Actavis Defendants. Such failure alone is dispositive of Counts II and IV-X of the TAC.

Assuming *arguendo* the City did bridge the gap between the alleged detailing of Prescribers B, E, and H and Kadian® prescriptions allegedly billed to the City, a smattering of Kadian® prescriptions written to four City health plan patients (AO, CX, BL, and CN) is not "a

---

³ In Exhibits A.6, A.7, B.1, and B.2, the City identifies prescriptions for Norco® and various generic opioid products attributed to the Actavis Defendants. These prescriptions, however, were written by Prescribers *other than* those whom any Actavis Defendants allegedly detailed. Even if the Prescribers in Exhibits A.6, A.7, B.1, and B.2 were misled by other Defendants or third parties, such conduct is not imputable to the Actavis Defendants, because "[t]he City does not allege that Actavis acted with or through third parties." TAC ¶ 752 n.143.

representative sample of claims" indicative of the systemic marketing fraud the City alleges. *See* TAC ¶¶ 7, 661; *see also U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510-11 (6th Cir. 2007) ("In order for a relator to proceed to discovery on a fraudulent scheme, the claims that are pled with specificity must be *characteristic example[s]* that are *illustrative of* [the] class of all claims covered by the fraudulent scheme.") (brackets in original; emphasis added; internal quotations omitted); *United States ex rel. Ceas v. Chrysler Grp. LLC*, 78 F. Supp. 3d 869, 879-80 (N.D. Ill. 2015) ("Plaintiff only refers to conduct that occurred in 2004 and 2005 [and,] [w]hile one could imagine (or infer) additional violative acts that might have occurred post-2009, this would be a large leap from the allegations in Plaintiff's amended complaint (*i.e.,* not a reasonable inference), and it is not the Court's duty to speculate."). Indeed, *one* Kadian® prescription for *one patient* in 2010, *one* prescription for *another patient* in 2012, and prescriptions written for *two patients* on a monthly basis for two-plus years are not "characteristic" or "illustrative" of "[a] highly deceptive and unfair marketing campaign . . . to expand the market for opioids . . . that began in the late 1990s . . . and continues to the present . . . ." TAC ¶¶ 6, 7. The Court need not speculate, nor should it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Instead, for the reasons above and those set forth in the JMTD, Counts II and IV-X of the TAC remain fatally flawed and should be dismissed with prejudice.

II. **THE COURT SHOULD LIMIT THE SCOPE OF THE CITY'S CLAIMS AGAINST "ACTAVIS" BASED ON THE CITY'S OWN ALLEGATIONS**

Seventh Circuit law is clear that "a party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006). "[A] plaintiff pleads himself out of court when it would be necessary to contradict the complaint

6

in order to prevail on the merits . . . . If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (ellipsis in original; internal quotations omitted). Based on the foregoing legal authority, all claims against "Actavis" based on marketing activities involving Kadian® before 2009 and conduct involving any opioid product other than Kadian® should be dismissed without leave to amend.

### A. "Actavis" Cannot Be Liable for Pre-2009 Conduct or Claims Involving Kadian®

The City admits in the TAC that the Actavis Defendants did not market or own Kadian® before 2009. *See* TAC ¶ 48 ("Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc., on December 30, 2008 and began marketing Kadian in 2009."). The City does not allege a factual basis for subjecting the Actavis Defendants to liability for the marketing of Kadian® by an unrelated drug manufacturer before the Actavis Defendants acquired the right to sell Kadian®. Without alleging a basis to hold one of the Actavis Defendants liable for the pre-2009 conduct of King Pharmaceuticals, Inc., the TAC does not state a plausible claim for relief against the Actavis Defendants based on any conduct predating the acquisition of Kadian® on December 30, 2008. All such claims must be dismissed with prejudice.

### B. The TAC Fails to State a Cognizable Claim Based on the Sale by the Actavis Defendants of Any Opioid Product Other Than Kadian®

The gravamen of the City's claims against the Actavis Defendants remains that sales representatives and paid speakers purportedly acting on behalf of "Actavis" made actionable false statements to Chicago prescribers and consumers about the efficacy, safety, and medical necessity of opioid drugs. TAC ¶¶ 263, 297. But the City voluntarily confirmed (for the second time) that no one employed by any of the Actavis Defendants detailed or directly promoted any opioid drug except for Kadian®. *Id.* ¶ 263 n.93. In so doing, it has created an "impenetrable

7

defense" to claims of fraud or other wrongdoing involving, for example, the marketing or sale of any generic opioid or other non-Kadian opioid product.

Significantly, too, the TAC is devoid of *any* allegation of fact suggesting any Chicago prescriber or consumer was exposed to any statements, true or false, about any opioid product other than Kadian® by anyone employed by the Actavis Defendants. Consequently, even without its concession in footnote 93, the City has furnished no information on which to base a claim against the Actavis Defendants relating to the promotion or sale of any prescription opioid other than Kadian®. The failure to allege any such information alone warrants dismissal with prejudice of all non-Kadian® related claims for relief.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the JMTD, the Court should dismiss with prejudice (1) Counts II and IV-X of the TAC against each of the Actavis Defendants; (2) all claims arising from or concerning the marketing of Kadian® before 2009; and (3) all claims arising from or concerning conduct involving any opioid product other than Kadian®.


Dated: December 15, 2016

Respectfully submitted,

By: /s/ James W. Matthews
James W. Matthews (pro hac vice)
Katy E. Koski (pro hac vice)
Jason L. Drori (pro hac vice)
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199
Telephone: (617) 342-4000
Facsimile: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jdrori@foley.com

8

Jonathan W. Garlough
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
jgarlough@foley.com

*Allergan plc, f/k/a Actavis plc, Actavis, Inc., n/k/a Allergan Finance, LLC, f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., Actavis LLC, and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all counsel of record via CM/ECF on December 15, 2016.

/s/ James W. Matthews
James W. Matthews

4840-7823-9293.5