**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | |
| v. | Case No. 14-cv-04361 |
| PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC; f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; and ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC., | Honorable Jorge L. Alonso  **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS JOHNSON & JOHNSON AND JANSSEN PHARMACEUTICALS,
INC.'S MOTION TO DISMISS COUNTS 4 TO 10 OF PLAINTIFF'S THIRD
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT ........................................................................................................ 2

    A. The Court Should Dismiss Counts 4 to 10 as to Janssen and J&J for Failure to Adequately Allege Causation. ....................................................... 2

    B. The Court Should Dismiss Counts 6 and 9 as to Janssen and J&J. ..................... 7

        1. The City Fails to Allege That Any Pseudonymous Prescriber Was Exposed to Statements by KOLs or "Front Groups" About Opioids. ................................................................................................. 8

        2. The City Fails to Allege a Viable Conspiracy. ......................................... 8

            a. The TAC Fails to Allege a Conspiracy with AGS as to the AGS Guideline or Related CME.................................................. 10

            b. The TAC Fails to Allege a Conspiracy with AGS and AAPM as to Finding Relief ......................................................... 11

            c. The TAC Fails to Allege a Conspiracy with APF as to the Let's Talk Pain Website or Exit Wounds ................................... 11

III. CONCLUSION................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 6, 10

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ............................................................................. 9, 10, 11

*Cincinnati Life Ins. Co. v. Beyrer*,
  722 F.3d 939 (7th Cir. 2013) ..................................................................................... 9, 11

*Frymire v. Peat, Marwick, Mitchell & Co.*,
  657 F. Supp. 889 (N.D. Ill. 1987) .................................................................................. 9

*Hard Drive Prods., Inc. v. Does 1-55*,
  2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) ................................................................. 9

*Lisitza v. Par Pharm. Cos.*,
  2013 WL 870623 (N.D. Ill. Mar. 7, 2013) .................................................................. 10

*McClure v. Owens Corning Fiberglass Corp.*,
  720 N.E.2d 242 (Ill. 1999) .......................................................................................... 11

*Redelmann v. Claire Sprayway, Inc.*,
  874 N.E.2d 230 (Ill. App. Ct. 2007) ....................................................................... 9, 10

*Rodarmel v. Pneumo Abex, L.L.C.*,
  957 N.E.2d 107 (Ill. App. Ct. 2011) ........................................................................... 12

*Roehl v. Merrilees*,
  2012 WL 1192093 (N.D. Ill. Apr. 10, 2012) ................................................................ 9

*Segreti v. Lome*,
  747 F. Supp. 484 (N.D. Ill. 1990) ................................................................................. 9

*Servpro Indus., Inc. v. Schmidt*,
  1997 WL 158316 (N.D. Ill. Mar. 31, 1997) ................................................................ 12

*Tierney v. Vahle*,
  304 F.3d 734 (7th Cir. 2002) ........................................................................................ 3

*Tucker v. Soy Capital Bank & Trust Co.*,
  974 N.E.2d 820 (Ill. App. Ct. 2007) ............................................................................. 9

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................................ 6, 9, 11, 12

I.    **INTRODUCTION**

Defendant Janssen[1] and its parent, Defendant Johnson & Johnson ("J&J"), join

Defendants' Joint Motion to Dismiss and/or Strike Counts 2 and 4-10 of the Third Amended

Complaint ("TAC"). Janssen and J&J write separately to highlight the City's continued failure in

those Counts, despite four attempts, to plead a viable claim against Janssen or J&J.

In its September 29, 2016 Order granting in part Defendants' motion to dismiss

("Order"), the Court held that the City had failed to plead the required element of causation for

Counts 4 through 10 of the Second Amended Complaint ("SAC")—*i.e.*, the claims for consumer

fraud, false statements, false claims, insurance fraud, unjust enrichment, and conspiracy. Order at

25, 32, 37-40. Specifically, the Court found it "impossible" for the Court or Defendants to

determine if the prescribers alleged to have heard misrepresentations about Defendants' drugs in

the body of the SAC (identified by lettered pseudonym) were the same prescribers who wrote the

City-reimbursed prescriptions listed in SAC's exhibits (identified by name). *Id.* at 32, 40. The

Court gave the City a "final opportunity" to correct this defect by matching the prescribers

identified by letter to those identified by name. Order at 32. The City now purports to do so, but

analysis of the still-skeletal information it has pleaded about these providers demonstrates that

the requisite causal link remains impossible to discern. Because the TAC fails yet again to plead

that causal link, Counts 4 through 10 must be dismissed with prejudice as to Janssen and J&J.

In addition, the Court should dismiss Counts 6 and 9 of the TAC on the independent

grounds that the City (1) failed to allege that any pseudonymous prescriber was exposed to

statements by Janssen key opinion leaders ("KOLs") or to publications resulting from the alleged

---

[1] "Janssen" refers to Defendant Janssen Pharmaceuticals, Inc. and its predecessors, Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Janssen Pharmaceutica, Inc.

conspiracy between Janssen and various so-called "front groups," and (2) failed to allege an agreement between Janssen and its alleged co-conspirator(s) to violate the law.

For these reasons and the reasons stated in Defendants' Joint Motion to Dismiss, Janssen and J&J respectfully request that the Court dismiss with prejudice TAC Counts 4 through 10.

## II.     ARGUMENT

### A.      The Court Should Dismiss Counts 4 Through 10 as to Janssen and J&J for Failure to Adequately Allege Causation.

The Court previously dismissed the SAC equivalents of TAC Counts 4 through 10 because the City failed to allege that Janssen or J&J's (or any other drug manufacturer's) conduct caused the City's alleged harm. But the City's amendments to its complaint, namely the revision of its exhibits and the addition of footnotes 133 and 136, *see* TAC at 1 n.1, fail to cure the City's deficient causation pleading.

In its prior Order, the Court directed the City to "connect[] the named prescribers listed in Exhibits A and B to prescribers identified by letter in the SAC who were detailed with defendants' alleged deceptive marketing," Order at 35, and to "clearly identif[y]" the "prescribers who *heard the misrepresentations* . . . as the same prescribers who *subsequently* prescribed defendants' drugs," *id.* at 32 (emphasis added).

And, as Defendants Janssen and J&J have explained in prior briefing, *see* Janssen Mot. to Dismiss SAC (Dkt. 418) at 3-4, it is not sufficient that the City allege that these prescribers prescribed just any Janssen drug. Because Duragesic and Nucynta ER are the only Janssen opioids challenged in the TAC, the TAC must link an alleged misrepresentation to *a later prescription of Duragesic or Nucynta ER*.

A later prescription of Nucynta IR (also called simply Nucynta) is insufficient: Nucynta IR is an immediate-release pain reliever approved for the treatment of *acute* pain. *See*

2

Declaration of Charles Lifland, Exs. 1 & 2 at 1, 3.[2] The City does not allege that any Chicago prescriber prescribed Nucynta IR to treat chronic pain. Nor does the City allege that Janssen promoted Nucynta IR for the treatment of chronic pain to any Chicago prescriber who prescribed a Janssen opioid. Nucynta IR is thus not subject to the City's claims about the use of opioids to treat chronic pain. For the same reasons, allegations of a later prescription of "Janssen's opioids" do not support the City's claims: such a phrase might refer to Nucynta IR or to other opioids manufactured by Janssen that are not challenged in the TAC. *See* TAC ¶ 40.

Like the SAC, the TAC alleges that 14 Chicago-area prescribers (Prescribers B, C, D, G, H, J, R, S, T, Z, AA, BB, CC, and PP) may have been exposed to allegedly misleading messages about Janssen opioids. TAC ¶¶ 547, 552(a)-(k), 554-56. The City has failed, however, to link any alleged misrepresentation about chronic opioid therapy to a later prescription of Duragesic or Nucynta ER by any prescriber, for the following reasons:

| Prescriber B | (1) The City does not allege that Prescriber B's prescriptions of Duragesic or Nucynta ER occurred *subsequent* to any alleged misrepresentations by Janssen, because it provides no date of any alleged misrepresentations. The TAC alleges only that Prescriber B "sees opioid drug company representatives on a regular basis, and [] has seen representatives from Janssen." TAC ¶ 552(e). |
| --- | --- |
| | (2) Prescriber B is alleged to have prescribed Nucynta ER on June 17, July 17, August 13, September 19, and October 18, 2013, and Duragesic on April 30 and June 11, 2009. *Id.* Exs. A.4, A.6. On all of these dates, the City paid fixed |

---

[2] The Court may consider both the FDA-approved labeling that accompanied Janssen's opioids and the unbranded materials the TAC alleges were misleading because those documents are referenced in the TAC and are central to the City's claims. *See, e.g.*, TAC ¶¶ 22, 29 n.11, 40, 55; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("document[s] merely . . . referred to in [a] complaint" can be considered for purposes of resolving a motion to dismiss where their authenticity is not disputed and they are central to the claims).

| | |
|---|---|
| | premiums to a third party who in turn paid *all* prescription drug costs. This means that at the time in question, the City paid nothing more on account of Prescriber B's listed opioid prescriptions and therefore the submission and payment of claims for those prescriptions did not cause the City any economic injury. *See id.* ¶ 647; Joint Motion to Dismiss TAC at 6-7. <br><br> (3) The City does not allege that Janssen made any misrepresentations to Prescriber B about chronic opioid therapy. The TAC is ambiguous as to whether the alleged misrepresentation that "'steady-state' drugs have less potential for abuse" was made by Janssen representatives, as opposed to representatives of opioid manufacturers generally. TAC ¶ 552(e). And the alleged misrepresentation about "patient function and quality of life" is not tied to chronic opioid therapy but rather to opioids generally. *Id.* |
| Prescriber C | Prescriber C is not alleged to have prescribed any Janssen opioid. *Id.* Exs. A.4, A.6, A.7, B.1, B.2. |
| Prescriber D | Prescriber D is alleged to have prescribed only Nucynta IR, *id.*—as to which the TAC asserts no claim.[3] |
| Prescriber G | Prescriber G is alleged to have prescribed only Nucynta IR, *id.*—as to which the TAC asserts no claim. |
| Prescriber H | Prescriber H is alleged to have prescribed only Nucynta IR, *id.*—as to which the TAC asserts no claim. |
| Prescriber J | Prescriber J is alleged to have prescribed only Nucynta IR, *id.*—as to which the TAC asserts no claim. |

---

[3] Claims as to the prescribers who only prescribed Nucynta IR each also fail because the City does not allege that any misrepresentations to these prescribers about chronic opioid therapy *preceded* their prescriptions of Nucynta IR.

| | |
|---|---|
| Prescriber R | The City fails to allege that Janssen made any misrepresentation about chronic opioid therapy to Prescriber R. The TAC alleges that Prescriber R, who participated in Janssen's speaker bureau, was "trained by Janssen" and was thus "exposed to the same misrepresentations disseminated to other doctors." *Id.* ¶ 547. But the City does not allege that Prescriber R was trained about Nucynta ER or Duragesic, or that Janssen made any misrepresentation about the chronic use of opioids to him. And though the TAC alleges that Janssen visited Prescriber R 231 times, it does not allege that any of these visits related to Janssen's opioids or that Janssen's sales representatives made any misrepresentations to Prescriber R during these visits. *Id.* ¶ 554. |
| Prescriber S | (1) Prescriber S is alleged to have prescribed "Janssen opioids" at some point in a ten-year period. *Id.* ¶ 552(b).[4] This vague allegation is insufficient because it might refer to Nucynta IR or another Janssen opioid not challenged in the TAC.<br>(2) The City fails to allege that prescriptions for the unidentified Janssen opioids were subsequent to any alleged misrepresentations by Janssen. |
| Prescriber T | Prescriber T is not alleged to have prescribed any Janssen opioid. *Id.* Exs. A.4, A.6, A.7, B.1, B.2. |
| Prescriber Z | Prescriber Z is alleged to have prescribed only Nucynta IR, *id.*—as to which the TAC asserts no claim. |
| Prescriber AA | Prescriber AA is not alleged to have prescribed any Janssen opioid. *Id.* |
| Prescriber BB | The City fails to allege that Janssen made any misrepresentation about chronic opioid therapy to Prescriber BB. Prescriber BB is alleged to have "received 3 |

---

[4] The exhibits do not indicate that Prescriber S ever prescribed any Janssen opioid. TAC Exs. A.4, A.6, A.7, B.1, B.2.

| | |
|---|---|
| | meals from Janssen on August 14, October 1, and November 4[,] 2013, which would have included talks by Janssen sales representatives." *Id.* ¶ 556. But the TAC fails to explain what those "talks" would have consisted of, or even whether the talks related to opioids—as opposed to the many other drugs manufactured by Janssen. |
| Prescriber CC | (1) Prescriber CC's prescriptions are alleged to have resulted in "claims from Nucynta [IR] and Nucynta ER," *Id.* ¶ 547, but the City fails to allege that it paid for any of these claims.[5]<br><br>(2) The City fails to allege that these prescriptions, for which no date is specified, occurred *subsequent* to any alleged misrepresentations by Janssen. *Id.*<br><br>(3) The City's allegations about misrepresentations made to Prescriber CC are impermissibly vague. The City alleges only that Prescriber CC was "trained by Janssen and thus . . . exposed to the same misrepresentations disseminated to other doctors." *Id.* This vague allegation is insufficient under Rule 9(b). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The City does not allege that Prescriber CC was trained about Nucynta ER or Duragesic, or that Janssen made any misrepresentation about the chronic use of opioids to him. |
| Prescriber PP | Prescriber PP is alleged to have prescribed only "Nucynta," presumably referring to Nucynta IR, TAC ¶ 552(k)—as to which the TAC asserts no claim.[6] |

Because no prescriber is alleged to have been exposed to a misrepresentation about chronic opioid therapy and subsequently prescribed Duragesic or Nucynta ER, Counts 4 to 10 must be dismissed.

---

[5] The exhibits do not indicate that Prescriber CC ever prescribed Nucynta ER or Duragesic. *See* TAC Exs. A.4, A.6, A.7, B.1, B.2. The only reference to these prescriptions is in the body of the TAC. *Id.* ¶ 547.
[6] The exhibits do not indicate that Prescriber PP ever prescribed any Janssen opioid. TAC Exs. A.4, A.6, A.7, B.1, B.2.

The City has also insufficiently alleged causation as to its claims that Janssen's unbranded marketing resulted in prescriptions of drugs manufactured by *other* Defendants. *See* TAC ¶¶ 761, 792, 807, 826, 845, 856. Because the TAC fails to allege that any pseudonymous prescriber was exposed to Janssen's unbranded marketing, *see, e.g.*, *id.* ¶¶ 519-544 (describing unbranded marketing documents but failing to allege that any prescriber was exposed to such documents), it has once again failed to allege any causal link sufficient to state a claim under Counts 4-10. And the City's claims as to the unbranded publication *Exit Wounds* and the American Geriatric Society ("AGS") Clinical Practice Guideline titled Pharmacological Management of Persistent Pain in Older Persons ("AGS Guideline") fail for the additional reason that the TAC fails to allege that the Janssen exercised editorial control over either of these documents. *See* Order Dismissing First Amended Complaint (Dkt. 288) at 27 ("there are no allegations about [Janssen's] editorial control over [unbranded] materials"); Janssen Motion to Dismiss SAC (Dkt. 418) at 12, 14.

### B. The Court Should Dismiss Counts 6 and 9 as to Janssen and J&J.

The TAC makes the same defective conspiracy allegations as the SAC. The Court previously dismissed Count 6 (Conspiracy to Defraud Under the City's False Claims Act) of the SAC for failure to plead an underlying false claim, Order at 36, and Count 9 (Civil Conspiracy) for failure to plead causation, *id.* at 37-38. The TAC is likewise defective: Defendants' joint memorandum explains the TAC's failure to plead an underlying false claim, and the preceding section of this memorandum explains the TAC's failure to plead causation.

The conspiracy allegations are also defective as to Janssen and J&J for two additional reasons: (1) the City's failure to allege that any pseudonymous prescriber was exposed to statements by Janssen key opinion leaders ("KOLs") or to publications resulting from the alleged

7

conspiracy between Janssen and various so-called "front groups," and (2) the City's failure to allege an agreement between Janssen and its alleged co-conspirator(s) to violate the law.

    **1.** **The City Fails to Allege That Any Pseudonymous Prescriber Was Exposed to Statements by KOLs or "Front Groups" About Opioids.**

    The City's allegations in Counts 6 and 9 assert an alleged conspiracy between Janssen, on the one hand, and KOLs or "front groups," on the other hand, to disseminate misleading information about opioids. TAC ¶¶ 811, 814, 816, 817, 818, 820, 847, 850, 853. But these counts are fatally deficient because the City fails to allege that any pseudonymous Chicago prescriber listed in the TAC was exposed to publications resulting from the alleged conspiracy between Janssen and various "front groups," *see also supra* at 3-6, or to misrepresentations by Janssen KOLs.

    Prescribers B (TAC ¶¶ 552(e), 556), C (*id.* ¶ 552(a)), D (*id.* ¶ 552(c)), G (*id.* ¶ 552(d)), H (*id.* ¶ 552(f)), J (*id.* ¶ 552(g)), S (*id.* ¶ 552(b)), T (*id.* ¶ 552(j)), Z (*id.* ¶ 552(h)), AA (*id.* ¶ 552(i), and PP (*id.* ¶ 552(k)) are alleged to have been exposed to misrepresentations by Janssen sales representatives. Prescriber BB is alleged to have attended meals that "would have included talks by Janssen sales representatives." *Id.* ¶ 556. Prescribers R and CC are alleged to have been exposed to misrepresentations by Janssen itself during their speaker training. *Id.* ¶ 547. In sum, no prescriber is alleged to have been exposed to or relied on any unbranded publications that were purportedly the subject of the alleged conspiracies or any statements by Janssen KOLs. The conspiracy counts therefore must be dismissed.

    **2.** **The City Fails to Allege a Viable Conspiracy.**

    As relevant to Janssen and J&J, the City alleges three separate conspiracies: (1) between Janssen and the AGS in connection with the AGS Guideline and a continuing medical education program ("CME") promoting the AGS Guideline; (2) between Janssen, the American Academy

of Pain Medicine ("AAPM"), and AGS in connection with the publication *Finding Relief*; and (3) among Janssen and the American Pain Foundation ("APF") in connection with the publications *Let's Talk Pain* and *Exit Wounds*. *See* TAC ¶¶ 814, 850. Alleging that the conspirators sought to "deceptively promote the risks, benefits, and superiority of opioid therapy," *id.* ¶ 850, the TAC asserts that the publications are the "products of these conspiracies," and that the "collaboration . . . in creating and disseminating these publications is further evidence of each conspiracy's existence." *Id.*

But merely calling a publication the product of a conspiracy neither states a claim nor complies with Rule 9(b). To sufficiently plead conspiracy, the City must allege an agreement between Janssen and its alleged co-conspirator(s) to violate the law and a tortious act in furtherance of that agreement. *See Tucker v. Soy Capital Bank & Trust Co.*, 974 N.E.2d 820, 834-35 (Ill. App. Ct. 2007); *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 240 (Ill. App. Ct. 2007). Agreement is the essence of conspiracy, *see Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 409 (7th Cir. 2007), and failure to allege an agreement is fatal, *see Hard Drive Prods., Inc. v. Does 1-55*, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011); *Segreti v. Lome*, 747 F. Supp. 484, 487 n.1 (N.D. Ill. 1990). And where, as here, the claimed conspiracy sounds in fraud, the allegations must satisfy the particularity requirements of Rule 9(b). *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013); *Borsellino*, 477 F.3d at 507, 509. Rule 9(b)'s heightened standard applies to all elements of such a conspiracy claim, including agreement. *See Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 895-96 (N.D. Ill. 1987).

A conspiracy claim must allege sufficient facts from which a court may infer the existence of a conspiratorial agreement between the parties. *See Roehl v. Merrilees*, 2012 WL 1192093, at *8 (N.D. Ill. Apr. 10, 2012). The mere use of the words "conspired" and "agreed" is

insufficient, as is an allegation of a *lawful* agreement: "[f]acts must be alleged to suggest the existence of an agreement *to violate the law*." *Lisitza v. Par Pharm. Cos.*, 2013 WL 870623, at *7 (N.D. Ill. Mar. 7, 2013) (emphasis added). A "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557. None of the TAC's conspiracy allegations satisfies these requirements.

a. **The TAC Fails to Allege a Conspiracy with AGS as to the AGS Guideline or Related CME (TAC ¶¶ 169-71, 206, 229(u), 528, 814, 850).**

The alleged conspiracy as to the AGS Guideline and related CME rests on an allegation that AGS drafted the Guideline "knowing that pharmaceutical company funding would be needed, and allowing these companies to determine whether to provide support only after they have [*sic*] approved the message." TAC ¶ 170; *see also id.* ¶ 229(u). This allegation supports the existence of neither an agreement between AGS and Janssen, nor an agreement to violate the law. *See Redelmann*, 874 N.E.2d at 240 (unilateral allegations do not demonstrate conspiracy). The City's allegation that "Janssen also would have exercised control" over AGS's CME promoting the Guideline, TAC ¶ 528, likewise fails to show an agreement. And the TAC nowhere alleges the requisite who, when, where, or how of the purported conspiracy, including how the conspiracy was formed, which individuals participated in it, and how their acts furthered it. The conclusory allegation that Janssen "provided support for [AGS's] deceptive statements promoting opioids" "[a]s part of its agreements" is insufficient. *Id.* ¶ 814; *see also id.* ¶¶ 24, 129, 200-204, 778. *See Borsellino*, 477 F.3d at 509 ("the complaint tells us nothing about the nature of the purported agreement to defraud the plaintiff[], such as when it was made or which [Defendants] arranged the conspiracy").

        b.      **The TAC Fails to Allege a Conspiracy with AGS and AAPM as to Finding Relief (TAC ¶¶ 519-27, 814).**

The alleged conspiracy as to the *Finding Relief* brochure rests on allegations that Janssen (1) "worked with AAPM and AGS to create" the *Finding Relief* brochure, (2) contracted with Conrad & Associates LLC, a medical publishing firm not alleged to be a co-conspirator, (3) gave a Conrad-hired writer "editorial feedback" which "was adopted in the published version," (4) "reviewed and approved" the brochure, and (5) "paid to have its sales force distribute [it]," while AAPM (6) "purchased and distributed" copies. TAC ¶¶ 519-20, 525-26.

These allegations fail to establish an agreement between Janssen and AAPM or AGS to violate the law. *See McClure v. Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258, 266 (Ill. 1999) ("Proof of a relationship . . . does not establish the required agreement"). The allegations merely describe, at a high level, parties working together to create and distribute a brochure. Even if that conduct were sufficient to support a conspiracy claim—and it is not—the allegations fail to specify the "who, what, when, where, and how" of the agreement as required by Rule 9(b). *Beyrer*, 722 F.3d at 950; *Borsellino*, 477 F.3d at 507, 509.

        c.      **The TAC Fails to Allege a Conspiracy with APF as to the Let's Talk Pain Website or Exit Wounds (TAC ¶¶ 529-44, 814).**

As to *Let's Talk Pain*, the City alleges that (1) Janssen and APF "entered into a partnership to 'keep pain and the importance of responsible pain management top of mind' among prescribers and patients" and "agreed to work to reach 'target audiences'" of patients, physicians, and KOLs, TAC ¶ 533; (2) Janssen "sponsored, developed, and approved content" of *Let's Talk Pain* "acting in conjunction with the APF" (and two other medical organizations, AAPM and ASPMN, *not* alleged to be co-conspirators), *id.* ¶ 221(p); (3) Janssen "financed and orchestrated" these organizations' participation in the website, *id.* ¶¶ 221(p), 531; and (4)

Janssen "exercised substantial control over the content" of the website,[7] *id.* ¶ 532, as exemplified by Janssen's approval rights over the site's content, *id.* ¶¶ 533-35, 538. As to *Exit Wounds*, the City alleges that (1) Janssen "sponsored" the book and "gave APF substantial assistance in distributing *Exit Wounds* . . . by providing grant money and other resources," *id.* ¶¶ 252(k), 543, *see also* ¶¶ 211, 221, 229; (2) *Exit Wounds* was a "promotional project[] with and through APF," *id.* ¶ 542; and (3) APF mailed copies of *Exit Wounds* to a foundation serving wounded veterans, *id.* ¶ 544.[8]

But there is nothing remotely unlawful about the conventional business activities described in the allegations about *Let's Talk Pain* or *Exit Wounds. See Servpro Indus., Inc. v. Schmidt*, 1997 WL 158316, at *19 (N.D. Ill. Mar. 31, 1997) (conspiracy not established where the facts relied upon "equally support[ed] the inference that the parties were engaged in innocent, non-conspiratorial, unilateral conduct") (citations omitted). And the allegations again fail to specify the "who, what, when, where, and how" of the agreement as required by Rule 9(b).

## III.    <u>CONCLUSION</u>

For all the foregoing reasons and the reasons stated in Defendants' Joint Motion to Dismiss, the Court should dismiss Counts 4 through 10 of the TAC.

---

[7] The City points to a "2011 Consulting Agreement between Janssen and one of APF's employees, relating to the dissemination of national survey data" and speculates that it "demonstrates the near-total control Janssen was empowered to exercise over APF in connection with . . . *Let's Talk Pain.*" TAC ¶¶ 536-37. But the TAC alleges no facts that connect this Agreement to the *Let's Talk Pain* website or that otherwise support this speculation.

[8] The TAC's other allegations about APF—that Janssen "enlisted" APF as part of a promotional effort at an AAPM meeting, TAC ¶ 529, participated in activities related to APF's "Corporate Roundtable" (such as "shar[ing] expertise from within [Janssen] for [a] public awareness campaign"), *id.* ¶¶ 529-30, and viewed APF as a "'coalition member[]' in the fight to increase market share," *id.* ¶ 532—all describe lawful activities without any stated connection to the purported conspiracy tied to *Let's Talk Pain* or *Exit Wounds. See Rodarmel v. Pneumo Abex, L.L.C.*, 957 N.E.2d 107, 130-31 (Ill. App. Ct. 2011) (sharing of information and membership in the same organization does not show conspiratorial agreement).

Dated:   December 15, 2016                    Respectfully submitted,


                                              By: /s/ Charles C. Lifland
                                                  Charles C. Lifland
                                                  clifland@omm.com
                                                  Carolyn J. Kubota
                                                  ckubota@omm.com

                                                  O'MELVENY & MYERS LLP
                                                  400 S. Hope Street
                                                  Los Angeles, CA 90071
                                                  Telephone: (213) 430-6000
                                                  Facsimile: (213) 430-6407

                                                  *Attorneys for Defendants Janssen
                                                  Pharmaceuticals, Inc., Johnson &
                                                  Johnson, Janssen Pharmaceutica, Inc.
                                                  n/k/a Janssen Pharmaceuticals, Inc., and
                                                  Ortho-McNeil-Janssen Pharmaceuticals,
                                                  Inc. n/k/a Janssen Pharmaceuticals, Inc.,
                                                  Appearing Pro Hac Vice*


                                              By: /s/ Michael P. Doss
                                                  Michael P. Doss
                                                  mdoss@sidley.com
                                                  Scott D. Stein
                                                  sstein@sidley.com

                                                  SIDLEY AUSTIN LLP
                                                  One South Dearborn
                                                  Chicago, IL 60603
                                                  Telephone:   (312) 853-7520
                                                  Facsimile:   (312) 853-7036

                                                  *Attorneys for Defendants Janssen
                                                  Pharmaceuticals, Inc., Johnson &
                                                  Johnson, Janssen Pharmaceutica, Inc.
                                                  n/k/a Janssen Pharmaceuticals, Inc., and
                                                  Ortho-McNeil-Janssen Pharmaceuticals,
                                                  Inc. n/k/a Janssen Pharmaceuticals, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2016, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on December 15, 2016, at Los Angeles, California.

/s/ Charles C. Lifland
Charles C. Lifland

14