**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>        Plaintiff,<br>  v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a WATSON, PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; and ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.,<br><br>        Defendants. | Case No. 14-cv-04361<br><br>Honorable Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS COUNTS II
AND IV-X OF PLAINTIFF'S THIRD AMENDED COMPLAINT AGAINST
<u>DEFENDANTS CEPHALON, INC. AND TEVA PHARMACEUTICALS USA, INC.</u>**

I.  **INTRODUCTION**

In its most recent dismissal decision, the Court dismissed all but two claims against Defendants Teva Pharmaceuticals USA, Inc. ("Teva USA") and Cephalon, Inc. ("Cephalon") (collectively, the "Teva Defendants").  The Court held that the City—yet again—failed to link any allegedly false statement by the Teva Defendants to any particular Chicago physician who wrote a medically inappropriate prescription of Cephalon's medicines (Actiq and Fentora) for which the City paid.  Yet, after being given one more opportunity by the Court to plead these critical details, the City's Third Amended Complaint ("TAC") still lacks any facts to support its sweeping claims against the Teva Defendants.  The City's fourth failed attempt should be its last.

The City still fails to identify a single false statement or omission that any Teva Defendant made to a single Chicago prescriber who wrote an Actiq or Fentora prescription for which the City paid.   It still fails to plead facts showing that any Teva Defendant caused any Chicago prescribing doctor to deviate from her medical judgment and write *any* of the prescriptions at issue.  And it still fails to link any statement or omission made by any Teva Defendant to a single opioid prescription.

In its TAC, the City has now amended its exhibits to identify the specific prescribers who were purportedly "exposed" to misrepresentations by Cephalon.  But these exhibits only make clear that that the City cannot plead causation as to the Teva Defendants as a matter of law.  Exhibit A.2 purports to identify "Prescribers Receiving Cephalon Misrepresentations" that wrote prescriptions for which the City paid.  After years of investigation and multiple amendments, the City has identified just *three* such prescribers:

- One prescriber who wrote a single prescription of Actiq for one patient more than 10 years ago, in 2006;

- A second prescriber who wrote just two prescriptions for Fentora for one patient nearly 10 years ago, in January and February of 2007; and

- A third prescriber who prescribed Fentora for just one of that prescriber's patients.

Critically, notwithstanding the label affixed to Exhibit A.2, the City does not allege a single fact to show that Cephalon had *any* interaction with any of these three prescribers (much less what was said); that Cephalon made a false statement or omission to any of them; or that that any of them abandoned his or her medical judgment and ignored the FDA-approved labels to write a prescription because of something (unspecified) that Cephalon said. The City does not even list the prescribers in Exhibit A.2 as having been interviewed about Cephalon.[1] Because the City has not pled any causal connection between some misrepresentation or omission that the Teva Defendants allegedly made and some prescription for which the City reimbursed, Counts II and IV-X must be dismissed.

In addition, Counts II and IV-X fail because the City does not plead a cognizable injury and it lacks Article III standing. Because off-label prescriptions often are beneficial to patients and are both common and legal, mere payment for off-label prescriptions, without more, is not a cognizable injury. Here, although it asserts that it paid for off-label prescriptions, the City fails to allege that either Actiq or Fentora was ineffective in treating the pain of any Chicago resident or that any Chicago resident suffered any harm from a prescription for which the City paid.

Finally, the City fails to plead any facts to support its conclusory allegations of a conspiracy (Counts VI and IX) and Counts II and IV-X against Teva USA must be dismissed for the additional reason that the City fails to plead any independent acts of wrongdoing against it.

---

[1] In fact, only *one* prescriber in the TAC that the City purportedly interviewed about Cephalon is listed as having written any Actiq or Fentora prescriptions for which the City paid—and that prescriber wrote that *single* prescription more than ten years ago and *before* ever being detailed by Cephalon. Tellingly, that prescriber is not listed on Exhibit A.2 as having received any alleged Cephalon misrepresentation.

2

## II. BACKGROUND

Cephalon is a pharmaceutical company that manufactures and sells innovative prescription medicines, including Actiq and Fentora. (TAC ¶¶ 32, 34). The City contends that, since October 2011, Teva USA has sold Cephalon-branded products (*id.* ¶ 34), but asserts no facts about Teva USA, including no allegations about its marketing of any opioid. (*Id.* ¶ 37).

### A. Cephalon's Opioid Medicines

Actiq is a "powerful" rapid-onset opioid with "extreme potency." (*Id.* ¶¶ 303-304, 307). As its label makes clear, Actiq was approved by the FDA for the management of breakthrough cancer pain in patients with malignant cancer who are opioid-tolerant. (*Id.* ¶ 305). Actiq's label—which includes a "black box" warning, the "most serious medication warning required by the FDA"—specifies the potential risks associated with its use. (*Id.* ¶¶ 303-305, 310).

In October 2006, Cephalon began promoting Fentora. (*Id.* ¶ 309-311). Like Actiq, Fentora is a powerful prescription opioid approved for the "treatment of breakthrough cancer pain in patients with cancer who are already tolerant to around the clock opioid therapy . . . ." (*Id.* ¶¶ 309-310). Like Actiq's label, the label for Fentora includes a "strong" and "detailed" black box warning and lists the potential risks associated with its use. (*Id.* ¶ 310).

### B. The Court's Previous Decisions

On May 8, 2015, the Court issued a comprehensive opinion dismissing the City's First Amended Complaint. (ECF No. 288). The Court held that the City failed to plead a plausible claim against any of the Teva Defendants because, among other reasons, the City failed to "connect the alleged misrepresentations specifically to Chicago doctors or consumers." (*Id.* at 24, 32 (emphasis added)). Likewise, the City failed to allege any "details" about any Cephalon prescriptions for which the City paid and, thus, the City failed to allege "with particularity that it was harmed by defendants' actions." (*Id.* at 32-33).

3

After the City filed its Second Amended Complaint ("SAC"), Defendants again moved to dismiss. On September 29, 2016, the Court granted those motions to dismiss in part and denied them in part. (Opinion ("Op."), ECF No. 471). The Court held that Counts II and IV-X require causation, yet the City did not establish the necessary causal link between the specific alleged misrepresentations by the Teva Defendants and the prescriptions for which the City paid. The Court reasoned that while the City alleged that Defendants made "alleged misstatements" to certain Chicago-area prescribers, it failed to show those prescribers were the ones who wrote the prescriptions paid for by the City. (Op., at 18, 32-33). Indeed, the City's exhibits—which purported to identify prescribers who wrote prescriptions paid for by the City—were insufficient because it was "*impossible*" to determine from those exhibits whether the prescribers "*are the same prescribers who heard the misrepresentations about defendant's drugs*." (Op., at 32 (emphasis added); *see also id.* at 35, 37, 38, 40). The Court further stressed that the City "*must adequately allege*" facts to show that the prescribers identified on the City's exhibits "*relied on defendant's misrepresentations when they prescribed defendants' drugs.*" (Op., at 33 (emphasis added)). The Court noted that despite knowledge of the alleged fraud, the City alleged that it continues to pay claims for medically unnecessary opioid prescriptions—which further negated causation. (Op., at 31).

C. **The City Has Failed To Cure The Causation Defect Identified By The Court**

The TAC pleads the same ten causes of action, based upon virtually the same allegations, as the SAC. The TAC includes two exhibits: (1) Exhibit A purports to identify prescriptions written by health care providers who allegedly were "exposed to Defendants' deceptive marketing"; and (2) Exhibit B purports to identify "all City-reimbursed opioid prescriptions for selected patients." (TAC, page 262, n. 133). In response to the Court's opinion, the Exhibits now contain letter designations for prescribers that match the letter designations in the TAC. (*Id.*

4

at page 1 n. 1). In addition, the TAC adds certain allegations purporting to explain the steps the City has only recently taken to limit what opioid prescriptions it pays for. (*Id.* ¶¶ 681-88). As described below, the City's revised Exhibits and few new allegations only confirm that it has not and cannot plead causation as to the Teva Defendants.[2]

### III. LEGAL ARGUMENT

All of the City's claims are predicated on fraud, which the City repeatedly refers to as the "Fraudulent Scheme." (SAC ¶¶ 678, page 248; *see also id.* at page 249, 292 (referring to Defendants' conduct as "Fraudulent and Deceptive Marketing of Opioids"); *id.* ¶¶ 129, 222, 676, 678-82, 687 (referring to conduct as "fraudulent")). Thus, all of the City's claims are subject to Rule 9(b)'s heightened pleading standards. *See, e.g., Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014). To satisfy Rule 9(b), the City must plead its claims with particularity and must plead facts showing the "'who, what, when, where, and how'" of the alleged fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Once again, the City has failed to do so as to the Teva Defendants.

#### A. Counts II And IV-X Fail For Lack Of Causation.

For Counts II and IV-X, the City must plead facts showing that an allegedly false statement by one of the Teva Defendants caused a Chicago physician to write an opioid prescription for which the City reimbursed. (TAC ¶¶ 769-771 (Count II); ¶¶ 786, 788 (Count IV); *id.* ¶¶ 798, 807 (Count V); *id.* ¶¶ 817, 824 (Count VI); *id.* ¶¶ 832, 835 (Count VII); *id.* ¶¶ 839, 844-45 (Count VIII); *id.* ¶¶ 847, 855-56 (Count IX), *id.* ¶ 859 (Count X)). As the Court held, this causal nexus is an element of the City's claims. (Op., at 18, 32-33, 35, 37-38, 40).[3]

---

[2] The Teva Defendants are not moving again to dismiss Counts I and III of the TAC.
[3] *See, e.g., In re Schering Plough Corp.*, 678 F.3d 235, 247 (3d Cir. 2012) (dismissing claim brought by third-party payor under Article III for lack of causal nexus); *Hess v. Kanoski & Associates*, 668 F.3d 446, 456 (7th Cir. 2012) (causation is element of civil conspiracy claim); *County of Cook v. Philip Morris, Inc.*, 353 Ill. App. 3d

5

Notwithstanding that the Court dismissed the SAC in part for failure to plead causation and told the City what it needed to do to cure this problem, the City has failed to do so:

- It does not allege that Cephalon had any communications with the City (or one of its pharmacy benefit managers) or that the City (or one of its pharmacy benefit managers) directly relied on any statements by Cephalon;

- It does not describe with particularity a single interaction between Cephalon and a Chicago doctor who wrote an Actiq or Fentora prescription for which the City paid—much less describe with particularity even a single false statement or omission that Cephalon made to such a prescriber; and

- It does not allege any facts to show that even a single doctor abandoned his or her medical obligation, chose to ignore the contents of the Actiq and Fentora labels, and relied instead upon something false that Cephalon supposedly said in connection with a single prescription for which the City paid.

As a matter of law, because the City fails to allege facts showing that it, its agents, or any of the doctors who prescribed Actiq or Fentora relied upon any false statements by Cephalon, Counts II and IV-X should be dismissed for lack of causation.

In an attempt to satisfy its causation burden and in response to the Court's mandate, the City has attached revised exhibits (Exhibits A and B) to the TAC that finally purport to identify the prescribers who wrote prescriptions for which the City paid. But as described below (and summarized in Appendix A), this only confirms the complete absence of any facts to establish causation as to the Teva Defendants.

Exhibit A.2 purports to list "Prescribers Receiving Cephalon Misrepresentations." (Pl's Exhibit A.2, attached hereto as Ex. A). It identifies only three prescribers with respect to Cephalon – Prescribers R, M, and V – who wrote prescriptions for only three patients. (TAC ¶

---

55, 59 (2006) ("[p]roof of a causal relationship between a defendant's action and a plaintiff's injury is essential in every tort" and statutory claim); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL No. 1703, 2007 WL 4287511, at *7 (N.D. Ill. Dec. 4, 2007) (requiring causation for unjust enrichment claim); *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 492 (1992) (requiring Attorney General to demonstrate "some connection" between alleged misrepresentation and injury under Illinois Consumer Fraud Act ("ICFA")); Chicago Municipal Code ("Code") § 2-25-090 (deferring to interpretation of ICFA, which requires causation); Code § 1-20-020 (requiring person to "cause[] the City or its agents to incur costs . . . related to such person's violation" of law); Code § 1-20-010 (requiring causation); Code § 1-20-020 (same); 720 ILCS § 5/17-10.5(a)(1) (same).

386).  Moreover, Prescriber V wrote *only one* prescription of Actiq more than ten years ago, Prescriber M wrote *only two* prescriptions of Fentora in 2007, and Prescriber R wrote prescriptions for just one patient.  (Ex. A).  This certainly does not support—and in fact refutes—the City's conclusory assertion that these or any other prescribers relied upon some unspecified misrepresentations to ignore their own medical judgment and the plain disclosures in FDA-approved product labels to engage in indiscriminant and "inappropriate" prescribing.

Moreover, as summarized in Appendix A, *there are no allegations in the TAC linking any statements (much less false ones) by the Teva Defendants to any of the three prescribers*. For instance, while the City makes the conclusory assertion that Prescriber M appeared on "Cephalon's 2007 Fentora target list" and was a Cephalon speaker (TAC ¶¶ 377, 388), the City does not allege facts about any interaction between Cephalon and Prescriber M, does not allege any false statements made to Prescriber M by Cephalon, and does not allege any facts to show that Prescriber M abandoned his independent medical judgment and wrote any prescription because of something false that Cephalon said or did.  Likewise, the only connection between Prescribers V and R and Cephalon is the conclusory allegation that they were "targeted and detailed in 2010, 2011, and 2013" by Cephalon. (TAC ¶ 388).  But the lone prescription written by Prescriber V was written in 2006 (prior to any detailing), and the City does not plead any facts about any such interactions, such as what was said, when, and whether the prescriber relied upon something he or she was told.  The alleged fact that Prescribers V and R were "targeted and detailed" is simply not enough.  As the Third Circuit has made clear, "[a]llegations that physicians attended presentations and interacted with Cephalon sales representatives do not sufficiently demonstrate that these interactions *caused the physicians to write the prescriptions at issue*." *Travelers v. Cephalon, Inc.*, 62 F. App'x 82, 87 (3d Cir. 2015) (emphasis added)

7

(affirming dismissal of common law and statutory claims against Teva Defendants based upon alleged false marketing of opioids for lack of causation); *see also Cen. Reg'l Empl. Benefit Fund v. Cephalon, Inc.* ("*CREB II*"), 2010 WL 1257790, at *4 (D.N.J. March 29, 2010) (same).[4]

The City also fails to plead facts linking any of the prescribers on Exhibits B.1 and B.2—which purport to list opioid prescriptions submitted to the City's health plan and workers' compensation program for the eight patients identified in ¶¶ 718-719 of the TAC—to any alleged misrepresentation by Cephalon. For instance, Exhibit B.2 does not list a single Actiq or Fentora prescription submitted to the City's workers' compensation plan, and Exhibit B.1 only identifies one prescriber by letter (Prescriber Y) who, in 2005 and 2006, wrote prescriptions of Actiq submitted to the City's health plan. There is not a single fact in the TAC showing that Cephalon had any contact with Prescriber Y; that Cephalon said something false or misleading to Prescriber Y; or that Prescriber Y ignored the Actiq label and instead relied upon some misstatement or omission in deciding to write the Actiq prescriptions at issue.[5]

Tellingly, while Paragraph 386 in the TAC purports to list the "Chicago-area prescribers" (Prescribers C, F, G, E, O, P, Q, and J) that the City interviewed and were detailed by Cephalon representatives (TAC ¶ 386), ***none of those prescribers*** is identified on the Exhibit (A.2) that purports to list "Prescribers Receiving Cephalon Misrepresentations." Moreover, only ***one*** of those prescribers (Prescriber O) is identified on Exhibits A or B as someone who wrote prescriptions of Actiq or Fentora for which the City paid; that Prescriber wrote only ***one***

---

[4] Exhibit A.6, titled "Prescribers Who Received Defendants' Misrepresentations," identifies a few additional prescribers (Prescribers A, O, U, X, and Y) who prescribed Actiq or Fentora. But the City makes no allegations linking Prescribers U, X, and Y to Cephalon, the only allegation regarding Prescriber A is that he was "on Cephalon's 2007 Fentora target list" (TAC ¶ 388), and Prescriber O wrote one prescription of Actiq in 2005, before he had any contact with Cephalon (TAC ¶ 386(e)). There are simply no facts to show that any of these Prescribers ever received any false statements by Cephalon – which presumably is why they were not listed in Exhibit A.2 – much less relied upon them.

[5] Exhibit B also identifies four additional prescribers who purportedly wrote opioid prescriptions manufactured by Cephalon and Teva USA, yet they are not identified by letter, the TAC does not contain any reference to these prescribers, and there is no allegation that they had any contact with Cephalon or Teva USA.

8

prescription of a Cephalon medicine and did so on July 19, 2005 (Exhibit A.6)—***more than ten years ago and before ever allegedly being detailed by Cephalon***. (TAC ¶ 386(e) (alleging that Prescriber O was detailed in 2006 by Cephalon sales representatives)). Nor is there a single fact alleged about anything false or misleading that was said to this prescriber by Cephalon.

Put simply, after an extensive presuit investigation and four chances to plead the causation elements of its claims against the Teva Defendants, the City still cannot identify a single doctor who claims to have been misled by Cephalon into writing a supposedly "inappropriate" prescription for which the City paid. Indeed, the City has not linked the prescribers on its Exhibits to any allegedly false statements by Cephalon in the TAC. Thus, Counts II and IV-X should now be dismissed with prejudice.

### B. All Claims Against The Teva Defendants Fail for Lack of Injury.

As alleged and as an element of many of its claims, the City also must assert facts to show that it suffered some form of harm. (TAC ¶ 771 (Count II), ¶¶ 791-92 (Count IV), ¶¶ 805, 807 (Count V), ¶¶ 824, 826 (Count VI), ¶ 835 (Count VII), ¶ 844 (Count VIII), ¶ 855 (Count IX), ¶ 860 (Count X)).[6] Moreover, to have Article III standing, the City must show that it suffered an "injury-in-fact." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992); *see also Travelers Indem. Co. v. Cephalon, Inc.* ("*Travelers I*"), 32 F. Supp. 3d 538, 546-47 (E.D. Pa. 2014), *aff'd,* 620 F. App'x 82 (3rd Cir. 2015).

Courts have repeatedly recognized that merely reimbursing for off-label prescriptions is not a cognizable injury, in the absence of facts showing that the prescriptions were ineffective for

---

[6] *See, e.g., In re Towers*, 162 F.3d 952, 955 (7th Cir. 1998) ("[R]estitution is 'compensation for actual pecuniary loss' from the perspective of the victim . . . "); *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998) (defendant must be enriched at plaintiff's expense to support unjust enrichment claim); Code § 1-20-020 (City must incur financial harm in providing services related to person's violation of law); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97-C-5696, 1997 WL 1106276, at *16 (N.D. Ill. Aug. 12, 1997) (injury is an element of a claim under 720 ILCS 5/17-10.5); *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 927 (2010) (injury is element of civil conspiracy claim); Code § 1-21-010(a) (authorizing "up to three times the amount of damages which the city sustains because of the person's violation of this section").

9

or caused harm to the patients who received them.[7] Thus, courts have dismissed similar attempts to bring fraud-based claims against Cephalon based on nothing more than that the prescriptions at issue were off label. *See, e.g.*, *Travelers I*, 32 F. Supp. 3d at 546-548 (dismissing claims by third-party payors against Teva Defendants for alleged false and misleading marketing of opioid medicines due to lack of facts showing "that Actiq and Fentora were ineffective for Travelers' workers' compensation claimants" or that any claimants suffered "physical harm as a result of taking Actiq or Fentora"); *CREB II*, 2010 WL 1257790 at *3 (same).

In the section entitled "Examples of Opioid-Related Claims Paid by the City's Health Plans and Workers' Compensation Program" (TAC ¶¶ 718-719), the City identifies eight patients who were purportedly prescribed opioids for off-label conditions. But ***only two*** of these patients were prescribed Actiq or Fentora (*id.* ¶¶ 718(b), 719(h)), and there are ***no*** allegations to suggest that Actiq or Fentora was ineffective in alleviating their pain or caused them harm. In fact, there are virtually no facts about any Actiq or Fentora prescriptions—including whether the medicines helped or harmed the patient, whether they were effective in treating his or her pain, or why the City authorized reimbursement for these off-label prescriptions.

Instead, the City's theory of harm as to Cephalon's medicines relies entirely on the same conclusory assertions from the previously-dismissed SAC—that Actiq and Fentora were "not safe, effective or allowed" to treat chronic non-cancer pain because they were not approved by the FDA for such uses. (TAC ¶ 302). But both the Supreme Court and the FDA have recognized that "off-label" use "often is essential to giving patients optimal medical care." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 n.5 (2001) (internal citations and

---

[7] *See, e.g., Ironworkers Local Union 68 And Participating Emp' Health And Welfare Funds v. AstraZeneca Pharm. LP*, 634 F.3d 1352, 1360 (11th Cir. 2011); *Travelers I*, 32 F. Supp. 3d at 546-547 ; *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, *7-8 (D.N.J. June 9, 2010); *CREB II.*, 2010 WL 1257790, at *3; *District 1199P Health & Welfare Plan v. Janssen, L.P*, No. 06-3044, 2008 WL 5413105, at *11-13 (D.N.J. Dec. 23, 2008).

quotations omitted); *see also United States v. Caronia*, 703 F.3d 149, 153 (2d Cir. 2012) ("courts and the FDA have recognized the propriety and potential public value of unapproved or off-label drug use" and collecting cases and authority). And just because a medicine has not been FDA-approved to treat a particular condition does not make it "ineffective" or "unsafe" for a patient with that condition. *Travelers I*, 32 F. Supp. 3d at 546-547. Indeed, the City's conclusory allegation that Actiq and Fentora were "ineffective" for treating such pain is contradicted by the FDA warnings regarding their potency and the City's description of these medicines as "powerful," "strong," and "potent." (SAC ¶¶ 303-304, 306, 309); *see also Travelers I*, 32 F. Supp. 3d at 548. Thus, Counts II and IV-X should be dismissed for lack of a cognizable injury.

        C.        **<u>The Conspiracy Claims (Count VI and IX) Fail For Additional Reasons.</u>**

The City contends that the Teva Defendants conspired with two third-party trade associations, the APF and FSMB, to fraudulently "promote the risks, benefits, and superiority of opioid therapy." (TAC ¶¶ 812, 848). As described above, this claim fails for lack of causation. It also fails for other fundamental reasons, too.

This Court has recognized that a claim for civil conspiracy "is not an independent tort." (ECF No. 288, at 33). To plead this claim, the City must allege facts showing "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino*, 477 F.3d at 509. Because the claim sounds in fraud, the City also must satisfy Rule 9(b). *Id*.

The City fails to plead any facts to show any agreement between Cephalon and the FSMB or the APF to defraud the City. Indeed, with one exception (TAC ¶ 350), the City fails to allege *any* communications between either Teva Defendant and the FSMB or the APF; it fails to identify when the agreement allegedly took place, which individuals arranged the conspiracy, or

11

any alleged meetings in support of the conspiracy; and it certainly fails to allege that either Teva Defendant had knowledge of and participated in any type of plan to harm the City. This is the very pleading flaw that *Twombly* addressed and is fatal to the City's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"); *see also Wright v. Carter*, No. 14 C 9109, 2015 WL 4978688, at *5 (N.D. Ill. Aug. 20, 2015) (Alonso, J.) (same).[8]

### D. The SAC Again Fails To Allege Any Misconduct By Teva USA.

All allegations relating to Teva USA are confined to six conclusory paragraphs —none of which plead any facts concerning any wrongdoing. (TAC ¶¶ 33, 34, 37, 324, 662, 676). Indeed, the City fails to allege any statements or actions by Teva USA. To mask the absence of any facts against Teva USA, the City yet again purports to define "Cephalon" as Teva USA and Cephalon. (TAC ¶ 34). But such group pleading is improper, particularly after four pleading attempts, and does not relieve the City from pleading specific facts related to Teva USA. Moreover, the City's SAC does not identify *any* particular conduct by Cephalon *after October 2011*—when Teva USA allegedly became affiliated with Cephalon. For this reason alone, Counts II and IV-X against Teva USA should be dismissed. *See, e.g.*, *Travelers I*, 32 F. Supp. 3d at 551-553 (dismissing claims against Teva USA due to lack of allegations of misconduct).

## IV. CONCLUSION

The City has had four opportunities to plead Counts II and IV-X. It has not done so—and clearly cannot do so. For the reasons stated above and in Defendants' joint motion to dismiss, the Court should dismiss Counts II and IV-X against the Teva Defendants with prejudice.

---

[8] At most, the City alleges that Cephalon provided funded two publications by trade associations published nearly ten years ago (TAC ¶¶ 161, 189, 344, 353), but this lawful conduct creates no inference of any conspiracy. *See In re Text Messaging Antitrust Litig.*, 2009 WL 5066652, at *7 (N.D. Ill. Dec. 10, 2009) (applying rule).

Dated: December 15, 2016                    Respectfully submitted,

                                               By: /s/ Tinos Diamantatos
                                                  Tinos Diamantatos

                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  77 West Wacker Drive, 5th Floor
                                                  Chicago, IL 60601
                                                  Telephone: (312) 324-1145
                                                  (312) 353-2067 (fax)
                                                  tinos.diamantatos@morganlewis.com

                                                  Gordon Cooney, Jr. (admitted *pro hac vice*)
                                                  Steven A. Reed (admitted *pro hac vice*)
                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  1701 Market Street
                                                  Philadelphia, PA 19103-2921
                                                  Telephone: (215) 963-5000
                                                  gordon.cooney@morganlewis.com
                                                  steven.reed@morganlewis.com

                                                  *Attorneys for Defendants Cephalon, Inc. and Teva Pharmaceuticals USA, Inc.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on December 15, 2016, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

  Executed on December 15, 2016, at Chicago, Illinois.


                /s/ Tinos Diamantatos
                Tinos Diamantatos