IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br>    Plaintiff,<br>    v.<br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; and ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.,<br>    Defendants. | Case No. 14-cv-04361<br>Honorable Jorge L. Alonso<br>Magistrate Judge Young B. Kim |

## **DEFENDANTS' SUPPLEMENTAL STATUS REPORT**

Pursuant to this Court's order dated April 19, 2017 (Dkt. No. 553), Defendants[1] hereby submit this supplemental statement setting forth Defendants' positions on the discovery issues identified in the Joint Status Report, dated April 14, 2017 (the "Joint Status Report") (Dkt. No. 552), with particular emphasis on the critical need for the City to promptly disclose the purported "medically unnecessary" prescription opioid claims at issue in this litigation in order

---

[1] Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company Inc. ("Purdue"); Teva Pharmaceuticals USA, Inc. ("Teva"); Cephalon Inc. ("Cephalon"); Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica Inc. ("Janssen"); Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. ("Endo"); and Allergan plc, f/k/a Actavis plc, Actavis, Inc., n/k/a Allergan Finance, LLC, f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., Actavis LLC, and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc. ("Actavis").

to facilitate a fair and efficient discovery process. While substantial progress has been made to clarify and narrow the issues in dispute, the City has refused to identify the allegedly "medically unnecessary" opioid reimbursement claims paid for by the City until after the close of fact discovery through expert disclosures. And although the City agreed to identify the purported misrepresentations underlying its claims in this litigation of which the City currently is aware, the City plans to hold any supplemental disclosure of additional misrepresentations and information linking the claims at issue with purported misrepresentations until the end of fact discovery. The City's position would thereby deprive Defendants of the chance to obtain crucial fact discovery on whether those claims, in fact, were medically unnecessary as the City claims, who prescribed them, and whether they were effective and/or benefited the patients who received them. This dispute, which has significant implications for the structure and timing of discovery, is detailed below in Section II.

With respect to the City's interrogatories and requests for production, the City has informed Defendants that it intends to raise four issues with the Court: (i) geographic scope of discovery, (ii) product scope of discovery, (iii) documents relating to other investigations and lawsuits, and (iv) temporal scope of discovery. While certain Defendants do not believe that the parties have reached an impasse on all of these issues and have indicated their willingness to confer with the City about such issues on a request by request basis, Defendants' general positions on these issues are set forth below in Section III.

Defendants proposed to the City that the parties exchange drafts of their supplemental status reports, so that the parties could substantively respond to the points raised by the other and better frame the issues for the Court. The City refused. Accordingly, to the extent the City raises issues or arguments not addressed in this supplemental status report, Defendants

2

will be prepared to address such issues during the status conference on May 8, 2017.

## I.      MEET AND CONFER BACKGROUND

Counsel for each of the Defendant groups has met and conferred individually with various counsel for the City on multiple occasions, and counsel for all parties have participated in two joint meet and confers.  Defendants also anticipate extensive meet and confers under the provisions of the parties' agreed protocol for electronically stored information (the "ESI protocol"), filed today (Dkt. No. 556), which may result in additional issues for resolution by the Court.  During their discussions, the parties worked to clarify and narrow their areas of disagreement, identifying and differentiating between issues requiring the Court's assistance and those on which the parties reasonably might compromise and potentially resolve.  Appendix A sets forth a summary of the individual meet and confers.  Because of facts unique to certain Defendants and the apparent differences in approach taken by different counsel for the City participating in the individual meet and confers, Defendants are not necessarily identically positioned with respect to each of the issues raised below.  Indeed, Appendix A reflects that, in some instances, certain Defendants do not believe they have reached any impasse with the City requiring Court intervention at this time.  All Defendants uniformly agree, however, with the importance of identifying the "medically unnecessary" prescriptions giving rise to the City's claims and requested relief and believe that the issues raised by the City are more appropriately addressed in the context of specific requests made to specific Defendants rather than through the City's preferred approach of making generalized statements removed from the relevant facts and circumstances applicable to each Defendant.

## II.      IDENTIFICATION OF "MEDICALLY UNNECESSARY" PRESCRIPTION CLAIMS

The central theory of liability upon which the City's claims are based is that "[b]ut for the misleading information disseminated by Defendants, doctors would not, in most instances, have prescribed opioids as medically necessary or reasonably required to address chronic pain." (Third Amended Complaint ("TAC") ¶ 634.)  As the City alleges: "In the first instance, the City was damaged directly, through its payment of false claims for chronic opioid therapy by (a) its self-insured health plans and (b) its workers' compensation program." (*Id.* ¶ 635.)  As such, the City seeks to recover restitution based, *inter alia*, on the costs of opioid prescriptions paid by the City through its health benefits and workers' compensation programs for chronic, non-cancer pain treatment that it alleges to have been "medically unnecessary" and written by a prescriber as a result of fraudulent misrepresentations by Defendants.  Yet, the City also has acknowledged that it cannot, and does not, take the position that prescribing opioid medication for chronic, non-cancer pain is, in itself, improper or "medically unnecessary." (Dkt. No. 527 at 34 n.21.)  Thus, it is critical to orderly fact discovery for Defendants to know *which* of the prescription claims for chronic opioid therapy submitted to and paid for by the City that the City asserts to be "medically unnecessary."

Given the City's theory of liability, this case is unlike "off-label" marketing cases or other similar cases in which the claims at issue can be identified based upon objective criteria (e.g., the medical condition for which the prescription was written).  Rather, the City bases its claims upon an as yet unspecified, subjective theory of "medical necessity" for which there is no *ex ante* basis for Defendants to know which prescriptions the City will identify as "medically unnecessary" and the basis for having done so.  The identification of which prescriptions paid for by the City that it claims were "medically unnecessary" is essential for Defendants to be

positioned to conduct appropriate fact discovery to address the City's claims. Certainly, Defendants are entitled to conduct fact discovery to demonstrate, among other things, that (a) the prescription was "medically necessary" and based upon proper medical criteria; (b) the purported misrepresentation or omission was not material to the prescription decision and the prescriber was fully aware of the pertinent medical risks and benefits of the therapy; (c) the prescriber was not misled or misinformed by Defendants and/or was not deceived by the specific purported misrepresentations or omissions; (d) the Claims Administrator and Medical Advisor had appropriate information with respect to approving the prescription claim as "medically necessary"; and (e) the employee or plan member benefited from the particular prescription for which the City reimbursed. In short, the identification of the prescriptions paid for by the City that it alleges to be "medically unnecessary" is a threshold issue that permeates the fact discovery that will be necessary for Defendants to build their defense.

Accordingly, certain Defendants propounded interrogatories and requests for production requesting that the City identify (i) the prescription claims submitted to and paid for by the City that it asserts were "medically unnecessary"; (ii) the physicians or health care providers who wrote the prescriptions the City alleges to have been "medically unnecessary"; and (iii) the particular misrepresentation(s) made to the prescribing physician or health care provider that are alleged to have misled him or her. Notwithstanding that the City's TAC purports to list examples of what it claims to be the "medically unnecessary" prescriptions at issue, the City has responded that it will not identify the prescription claims submitted to and paid for by the City that it asserts were "medically unnecessary" until *after* fact discovery and will do so only through the submission of its expert reports. Instead, the City has indicated that it will only produce at the outset of fact discovery its claims data files (without identifying which

claims are at issue) and the documents currently in its possession reflecting or identifying the representation(s) alleged to be deceptive or misleading (without identifying the prescriptions alleged to have been written as a consequence of such alleged misrepresentations). As set forth below, the City's grounds for objecting to the identification of the prescriptions alleged to be "medically unnecessary" are without basis. More fundamentally, however, the City's suggestion that Defendants would first learn such information *after* fact discovery is squarely at odds with any orderly and fair fact discovery process and would prejudice Defendants' ability to build their defense.

During the course of meet and confers, Defendants stated that (a) they believed the City should have identified the claims they will place at issue as "medically unnecessary" already and producing the identification of the "medically unnecessary" prescriptions at issue should be made at the outset of fact discovery; (b) the information necessary to claim a prescription to have been "medically unnecessary" does not turn on any information solely in control of the Defendants; and (c) if the City could identify the particular information in Defendants' possession that its expert requires to determine the "medically unnecessary" prescriptions at issue, Defendants would address with the City some phased process through which Defendants would provide such information to the City, the City would identify the "medically unnecessary" prescriptions at issue, and then Defendants would proceed with conducting fact discovery on the set of claims appropriately identified. The City indicated that it needed "everything" from fact discovery before it could identify the "medically unnecessary" claims at issue and that it would not provide such identification until the expert phase or supplement its identification of alleged "misrepresentations" until the end of fact discovery. Defendants indicated, consistent with the above, that such a process was unworkable and would

6

deprive Defendants of essential fact discovery regarding the bases for the prescriptions at issue, the authorization decisions regarding those prescriptions, and the role, if any, of alleged "misrepresentations" with respect to those prescriptions.

The City's various objections to identifying the "medically unnecessary" prescriptions at issue at the outset of fact discovery are without merit. For instance, the City asserts that such discovery is not relevant to the pending Counts I and III. That is incorrect on multiple grounds. First, as the City previously represented to this Court, the City has conceded for purposes of fact discovery that "[t]he parties have agreed that discovery will proceed on all Counts, even those currently pending on a renewed Motion to Dismiss before Judge Alonso." (Dkt. No. 552 at 3.)

Second, this Court previously addressed the importance of the City identifying the allegedly fraudulent prescriptions at issue and the misrepresentations or omissions alleged to have caused such "medically unnecessary" prescriptions to be written. Indeed, nearly two years ago, the Court noted the value of having the City identify the fraudulent claims submissions at issue and the misrepresentations or omissions allegedly associated with those specific claim submissions in order to appropriately define the scope of discovery. *See* May 15, 2015 Hr'g Tr. at 10-14 (stating that identification of the "specific claims and damages" and "reliance issue[s]" may "help us understand the scope we should be looking at in terms of the . . . discovery to be conducted in this case"). The Court stated: "I urge the City to start collecting the information for purposes of exchanging with . . . whoever stays in the case." *Id.* at 14. The Court also noted the importance of defining the "universe of representations" so that discovery could be framed around "trying to find out whether these representations are misrepresentations, and how much damages are sustained as a result of those misrepresentations." Sept. 22, 2015 Hr'g Tr. at 28-29.

Moreover, the Court previously recognized the right of Defendants to obtain proper discovery regarding causation, or what was generally being referred to as "reliance" – *i.e.*, the "link between the [misrepresentations] at issue and the City's prescriptions that it's seeking damages for." Aug. 10, 2015 Hr'g Tr. at 9. As stated by the Court: "The [Defendants] certainly have the right to engage in discovery to now . . . find out whether there was any reliance. Whether it's the City's position that reliance is not necessary, certainly if the [Defendants] feel it's part of their defense of the case, then certainly." *Id.* Moreover, the relief sought by the City with respect to Counts I and III—namely "restitution" for, inter alia, "[d]irect costs of unnecessary opioid prescriptions paid by the City through its health benefits, retirement, workers' compensation, and injury-on-duty programs" (Pl.'s Resp. to Purdue Rog. 5)—necessarily renders such information discoverable and requires proof of causation with respect to the restitutionary amounts being sought. *See Cleary v. Philip Morris USA, Inc.*, No. 09 C 1596, 2010 WL 431670, at *3 (N.D. Ill. Feb. 1, 2010) (rejecting argument that to be entitled to restitution, plaintiff need not demonstrate causation or injury); *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 745 (Ill. 1994) ("A person who has conferred a benefit upon another because of mistake, whether or not the mistake was induced by fraud or misrepresentation, is entitled to restitution only if the mistake caused the conferring of the benefit" (quoting Restatement of Restitution § 9 (1937))).

Such basic information regarding the prescriptions at issue and the alleged misrepresentations that supposedly caused those prescriptions is vital to Defendants' ability to prepare their defenses. To that end, Defendants must have an opportunity *during* fact discovery to explore whether the prescriptions at issue were "medically unnecessary," whether the prescribing physician received or was misled by the representation or omission alleged to have caused the improper prescription, and how such prescriptions were addressed by the Claims

Administrator and Medical Director during the authorization and payment process. Yet, if identification of the claims at issue and the alleged misrepresentations or omissions purportedly causing those claims are left until the close of fact discovery or expert reports, Defendants will be unfairly deprived of their right to conduct necessary discovery to defend against those claims. *See, e.g.*, *First Health Grp. Corp. v. United Payors & United Providers, Inc.*, No. 96 C 2518, 1999 WL 515499, at *1 (N.D. Ill. July 12, 1999) (noting that the "whole purpose" of requiring plaintiff to respond to certain damages' interrogatories before close of fact discovery "was to get out on the table plaintiff's damages contentions so that defendant could explore them during the discovery period"); *Cretney-Tsosie v. Creekside Hospice II, LLC*, No. 2:13-cv-00167-APG-PAL, 2016 WL 1257867, at *2, 6 (D. Nev. Mar. 30, 2016) (ordering modification of discovery plan and scheduling order deadlines where the "government's inability to disclose crucial discovery" regarding the false claims and certifications at issue during fact discovery prejudiced defendants).

Next, the City asserts that such requests are premature "contention interrogatories" or "contention requests." The interrogatories and requests, however, are *not* contention interrogatories or contention requests, but instead seek identification of facts or documents upon which the City's claims are founded—an entirely permissible and appropriate source of discovery as this stage of the litigation. *See, e.g.*, *Sargent-Welch Sci. Co. v. Ventron Corp.*, 59 F.R.D. 500, 503 (N.D. Ill. 1973) ("It is clear that the defendants are entitled to know the facts upon which plaintiff's claim is founded. Mutual knowledge of the relevant facts is essential to proper litigation. Either party may compel the other to disclose what relevant facts he has in his possession."); *United States ex rel. Lisitza v. Par Pharm. Cos.*, No. 06 C 6131, 2014 WL 222727, at *5 (N.D. Ill. Jan. 21, 2014) (granting motion to compel responses to interrogatories requesting that relator "identify documentation for each false claim and to identify all claims for

reimbursements at issue in this lawsuit"); *Boyd v. Tornier, Inc.*, No. 07-751-MJR, 2008 WL 2691727, at *1 (S.D. Ill. June 30, 2008) (observing that questions that "merely ask for the facts which form the basis of specified allegations made in the complaint" are not contention interrogatories). Even were the requests for the identification of the "medically unnecessary" claims at issue somehow construed as a "contention interrogatory," as opposed to a factual identification interrogatory, the City should be required to answer at this time. As noted above, this information is necessary for Defendants to prepare their defenses. And courts routinely acknowledge that there is no basis to delay responses to contention interrogatories where the answers would "narrow[] the issues" and assist the court (or parties) in "finding out exactly what [a plaintiff] contends." *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1996 WL 169389, at *2 (N.D. Ill. 1996); *see also In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 641 (7th Cir. 2007) (observing that contention interrogatories would be appropriate in order to "smoke out what exactly the plaintiffs are charging" where the complaint was "a hideous sprawling mess, 40 pages in length with 221 paragraphs of allegations" and the Court "found it difficult and in many instances impossible to ascertain the nature of the charges").[2]

---

[2] *See also In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) ("Courts have discretion to allow [contention] interrogatories before discovery is complete. . . . Contention interrogatories are permitted when answering them could contribute to clarifying the issues." (citation omitted)); *Clark Equip. Co. v. Lift Parts Mfg. Co.*, No. 82 C 4585, 1985 WL 2917, at *7 (N.D. Ill. Oct. 1, 1985) ("Refusals to respond to contention interrogatories or to identify the facts and/or documents supporting allegations contained in the complaint . . . are unjustified, absent a court order, obtained in advance, directing that the contention 'interrogatory need not be answered until designated discovery has been completed or until a pretrial conference or other later time.' And generally, a court should be reluctant to excuse timely answers concerning facts and documents currently known." (citation omitted)); *Rogers v. Bank of Am., N.A.*, No. 3:10-CV-375 DRH-DGW, 2011 WL 612072, at *1 (S.D. Ill. Feb. 15, 2011) (concluding that contention interrogatories were proper because "Defendant has a right to flesh out exactly what the Plaintiff is claiming it did wrong and upon what information

*(cont'd)*

Indeed, contention interrogatories at the outset of litigation are especially appropriate where, as here, there has been "extensive pre-litigation investigation." *Kartman v. State Farm Mut. Auto Ins. Co.*, 247 F.R.D. 561, 566 (S.D. Ind. 2007) ("Plaintiffs should be able to articulate their general legal theories . . . even if these theories are not fully developed."). Prior to filing its complaint in 2014, the City "conducted a more than year-long investigation into the marketing of opioids for chronic pain by [] Defendants" (TAC ¶ 27), during which it obtained documents and/or information from over 280 individuals and entities, including four of the five Defendant groups. The City cannot possibly claim that it is premature to provide Defendants with the information upon which it is basing its claims. At a minimum, the City should have in its possession all the information necessary to identify the prescriptions it contends were "medically unnecessary" and the prescribers alleged to have written those prescriptions.

Finally, to the extent the City believes it requires expert assistance to identify the "medically unnecessary" prescription claims at issue, there is no reason that the City should not already have enlisted such expertise or should not otherwise be required to do so at the outset of discovery so that the matters in dispute can appropriately be identified and framed and so that orderly fact discovery may be conducted thereafter. Indeed, the City already has identified examples of what it has determined to be medically unnecessary prescription claims (TAC ¶ 718), and there is no reason why it cannot identify the remaining "medically unnecessary" prescription claims at this time. Defendants requested that the City identify what specific information is necessary for its expert to identify the "medically unnecessary" prescription claims at issue in

_____
*(cont'd from previous page)*
the Plaintiff is basing that belief" because "[t]his information would allow Defendant to prepare a response").

order to assess the City's refusal to provide such identification at this stage, and the City declined to do so. To the extent the City only discloses at the end of fact discovery, or in the expert phase of this litigation, the complete set of "medically unnecessary" claims—and the purported misrepresentations that supposedly induced those claims—upon which it will rely at trial, Defendants will be severely prejudiced and unfairly deprived of the opportunity to conduct necessary discovery to defend against the City's claims of "medically unnecessary" prescriptions having been written by physicians purportedly misled by a Defendant's representation.

## III.  ISSUES IDENTIFIED BY THE CITY RELATING TO CERTAIN OF DEFENDANTS' OBJECTIONS TO DISCOVERY REQUESTS

In raising the issues of geographic scope, product scope, documents related to other investigations and lawsuits, and temporal scope, the City seeks some unspecified, generalized guidance from the Court on issues that are more appropriately addressed through a request-by-request and defendant-by-defendant analysis. The City also disregards that Defendants are positioned differently on each of these issues by virtue of facts unique to certain Defendants, differences in the City's allegations directed to certain Defendants, differences in the objections lodged by individual Defendants, differences in the burden or availability of documents related to certain Defendants, and differences in the agreements reached, offers made, and positions taken with respect to each individual Defendant during the course of the meet and confers, which Defendants will not recite in detail for purposes of this submission. And as mentioned, the City rejected Defendants' proposal to exchange drafts of these supplemental status reports. Nevertheless, Defendants outline below for the Court their general positions with respect to these issues.

### A.      Geographic Scope of Discovery

The City's discovery requests seek a wide variety of documents and information from across the country.  Some requests relate to scientific research, nationwide promotional materials, and other issues that are not limited to any particular geographic region and to which Defendants have not objected based on geographic scope, while other requests apply specifically to the Chicago Metropolitan Statistical Area ("MSA").[3]  But several requests involve information and documents relating solely or in significant part to other geographic areas that have no bearing on this case.  For example, the City seeks information about prescriptions written for Defendants' opioid productions outside Chicago, revenue generated outside of Chicago, complaints from persons outside of Chicago, marketing practices and expenses outside Chicago, litigation and investigation matters outside Chicago, and Defendants' compliance with judgments, settlement agreements, or other dispositions of matters outside of Chicago.  Although the City asserts that it is not seeking records of sales visits or promotional events in other states and merely wants Defendants to search for responsive documents that reflect national marketing plans, training materials, publications and the like, the City continues to press for other categories of materials without engaging in a request-by-request discussion of the relevance of such information.

Without a particularized analysis of the relevance to the City and corresponding burden to the Defendants tethered to the City's individual discovery requests and the type of information each request seeks, the City's generalized request for the Court to weigh in on the

---

[3] Certain Defendants have explained to the City that some data may not be kept in the ordinary course of business in a form that can is readily attributable to the Chicago MSA specifically.  For example, some web traffic information the City has sought may not be tracked based upon the zip codes forming the Chicago MSA.  Defendants therefore propose producing data reasonably approximating the Chicago MSA using the form in which the data is kept in the ordinary court of business.  The City has not voiced any opposition to this approach.

propriety of geographic scope is inappropriate and premature. Many of the City's requests seek irrelevant materials, are overly broad, impose undue burdens on Defendants, and are not proportional to the needs of this case where they seek information or documents concerning specific geographic areas beyond the Chicago MSA. *See, e.g.*, *Dalitz v. AmSurg Corp.*, No. 2:12-cv-2218-TLN-OKD, 2015 WL 8717398, at *2-3 (E.D. Cal. Dec. 15, 2015) (nationwide and statewide discovery was "disproportionate to [relator plaintiffs'] needs for discovery concerning their [False Claims Act] claims").[4]

### B. Product Scope of Discovery

Branded Kadian® is the only opioid for which the City alleges any misrepresentations or unlawful opioid marketing with respect to any of the Actavis Defendants. (*See, e.g.*, TAC ¶¶ 229(c), 229(d), 229(e), 252(c), 263, 296(b), 296(c), 296(d), 296(e), 296(f), 296(g), 296(h).) Duragesic®, Nucynta® IR, and Nucynta® ER are the only Janssen opioids for which the City alleges any misrepresentations or unlawful opioid marketing in the TAC. (*See, e.g.*, *id.* ¶¶ 212, 224, 229(x), 229(z), 229(aa), 229(bb), 244(c), 252(k), 252(*l*), 493, 505-506, 508-510, 546, 549-551, 552(a), 552(f), 552(i), 552(j), 552(k).) OxyContin®, Butrans®, and Hysingla® are the only Purdue opioids for which the City alleges any misrepresentations or unlawful opioid marketing in the TAC. (*See, e.g.*, *id.* ¶¶ 216, 221(s), 229(kk), 229(*ll*), 244(g), 253-259, 558, 563-570, 624, 628, 629, 630(a), 630(d), 630(e), 630(g), 630(i), 630(k), 630(*l*), 630(n), 630(o), 630(p), 752(h).) Actiq® and Fentora® are the only Teva opioids for which the City alleges any misrepresentations or unlawful opioid marketing in the TAC. (*See, e.g.*, *id.* ¶¶

---

[4] The City has also said that it seeks information for the Chicago MSA to ensure that the greater Chicago area is covered by the City's requests, but Defendants have not attempted to limit production to a smaller geographic area except in situations where the data is not organized in a way that would allow it to be culled to the Chicago MSA.

221(g), 298, 299, 302, 307, 311, 319, 322-327, 332, 334, 365-368, 371, 376, 386(b), 657, 765(g).)
Opana® ER is the only Endo opioid about which the City alleges misrepresentations or unlawful
marketing. (*See id.* ¶¶ 221(k), 224, 229(j), 230, 240(c), 258.)

Although the TAC does not support this, and without citing any supporting
allegations or authority, the City argues that its allegations specific to the above-named drugs are
mere examples. The City contends its claims should be read as encompassing opioids as a drug
class, including both extended-release and immediate-release products not identified in the TAC
and for which the City has not only not alleged any marketing, misrepresentations, or actionable
conduct but has in some cases specifically denied that such marketing, misrepresentations, or
actionable conduct occurred as to such other products. (*See, e.g.*, *id.* ¶¶ 263 n.93 ("Actavis also
sold various generic opioids, including Norco, which were widely prescribed in Chicago and
benefited from Actavis's overall promotion of opioids, but were not directly marketed by sales
representatives.").)

The Actavis, Janssen, Purdue, and Teva Defendants each have confirmed they
have provided or will provide the City with information relating to the opioid(s) for which the
City has alleged any misrepresentations and detailing or other promotional activities.[5]
Defendants also have produced or agreed to produce documents relating to pain treatment and
opioid use generally, *e.g.*, unbranded educational materials. Beyond these categories, no
additional discovery related solely to other opioid products is warranted on the facts alleged in
the TAC.

---

[5] Like the Actavis Defendants, Janssen, Purdue, and Teva, Endo also has explained that discovery is not
relevant or proportional for Endo opioids other than Opana® ER, which opioids are referenced in a single
paragraph or footnote of the TAC, and for which the City has not made substantive allegations about
promotion. Endo, however, does not believe it has reached an impasse with the City concerning product
scope.

The boundaries for discovery require that "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). In determining whether such a showing has been made, "[i]t must not be forgotten that relevance for discovery purposes does not exist in the air. It is a function of the claims and defenses in the case." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 722 (N.D. Ill. 2014). Accordingly, "[a] specific request for discovery is measured by the court against the background of a specific case." 8 Charles A. Wright, et al., Fed. Prac. & Proc. Civ. § 2009 (3d ed.).

Here, the City has brought a fraudulent marketing case based on Defendants' marketing of certain prescription opioids—products the City alleges were the subject of misrepresentations to Chicago prescribers and medically unnecessary prescriptions for which the City paid. The City has not pled any facts showing that every or even most commercially available opioids prescribed in Chicago to any City-insured patient during the relevant time period are encompassed by the TAC's allegations. In one sentence of one paragraph of the 860-paragraph TAC, the City alleges Defendants' "claims also were false and misleading in that they misrepresented the risks of both the particular drug and opioids as a class." (TAC ¶ 230.) The City, however, does not identify a single misrepresentation or any conduct relating to any "particular drug" beyond those listed above. Nor do any allegations or claims in the TAC purport to apply to opioids not detailed or otherwise marketed to Chicago prescribers. On the contrary, as to the Actavis Defendants, the City affirmatively alleges that Norco® and the "various generic opioids" sold by the Actavis Defendants in Chicago "*were not directly*

*marketed* by sales representatives," and no misrepresentations or any misconduct are alleged as to these products. (*See id.* ¶ 263 n.93 (emphasis added).)

The relevance and proportionality requirements of Rule 26 mandate that discovery concerning Defendants' branded marketing and promotion should be confined to the drug products actually involved in Defendants' alleged fraudulent marketing practices. Expanding discovery to all opioids (including generic opioids which the City admits were never marketed to anyone in Chicago) is overly broad, not relevant to any party's claim or defense, and not proportional to the needs of the case, as required by Rule 26(b)(1). *See United States v. Supervalu, Inc.*, No. 11-CV-3290, 2017 WL 1381651, at *3 (C.D. Ill. Apr. 17, 2017) ("[T]he Relators allege that Supervalu made fraudulent misrepresentations because its reported U&C prices did not include pricing under the Price Matching Program. The claim is limited to Supervalu's alleged fraudulent treatment of the prices in the Price Matching Program. . . . The impact of other discount programs on U&C prices is not relevant. Therefore, the Court finds that opening up discovery to all discount programs is not proportional to the needs of the case.").

## C.    Other Investigations and Lawsuits

The City has issued several discovery requests that target documents and communications relating to any investigation or lawsuit regarding the marketing, safety, or efficacy of Defendants' opioids. Defendants have objected to such requests on the grounds that they are overly broad and largely irrelevant to the present lawsuit.[6] The fact that a communication was exchanged or a document was produced in a separate lawsuit or investigation does not make it relevant to the present action, especially where the matter related

---

[6] Without waiving their objections, Purdue, Janssen, Endo, and Teva have agreed to provide the City with a list of publicly-disclosed lawsuits (and for Endo and Janssen, publicly-disclosed investigations). Actavis is still considering the City's request for such a list.

solely to conduct in another jurisdiction or outside the time frame relevant in this case. The City

has the burden to formulate discovery requests that are tailored to lead to the discovery of

admissible evidence in this case. Nevertheless, without waiving their objections, each of the

Defendant groups has either agreed to provide the City with a list of publicly-disclosed lawsuits

(and in some cases, investigations) or to consider providing the City with such a list.

Numerous courts, including courts in the Seventh Circuit, have recognized the

impropriety of such "cloned" or "piggyback" discovery—*i.e.* discovery requests that seek the

production of materials already produced or received in other lawsuits or investigations. *See, e.g.*,

*Moore v. Morgan Stanley & Co., Inc.*, No. 07 C 5606, 2008 WL 4681942, at *5 (N.D. Ill. May

30, 2008) ("[J]ust because the information was produced in another lawsuit . . . does not mean

that it should be produced in this lawsuit."); *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No.

IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (observing that cloned

discovery "is irrelevant and immaterial unless the fact that particular documents were produced

or received by a party is relevant to the subject matter of the instant case" and denying motion to

compel documents produced in response to a CID from the DOJ). Instead, "plaintiffs' counsel

must do their own work and request the information they seek directly." *Midwest Gas Servs.*,

2000 WL 760700, at *1; *see also Wollam v. Wright Med. Grp., Inc.*, No. 10-cv-03104-DME-

BNB, 2011 WL 1899774, at *2 (D. Colo. May 18, 2011) ("Direct requests allow a court to

consider the relevance of the information sought to the specific claims and defenses in the

pending case. A request for all discovery in unidentified actions taken worldwide . . . does not

allow such review. Discovery is intended to be liberal, but it is not unbounded."); *Drake v.

Allergan, Inc.*, No. 2:13-cv-234, 2014 WL 12664971, at *3 (D. Vt. Mar. 19, 2014) (denying

motion to compel, stating that "[a]n order which permits plaintiffs to obtain all of the materials

furnished in the Department of Justice investigation may result in surrender of documents that are totally irrelevant to the pending litigation"); *King County v. Merrill Lynch & Co., Inc.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (denying motion to compel cloned discovery, noting that "Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses").[7]

### D. Temporal Scope

The parties have agreed that discovery will proceed on all Counts, even those currently pending on a renewed Motion to Dismiss before Judge Alonso. However, the parties do not agree on the relevant time period for discovery and have had various discussions on the appropriate scope. Indeed, as to a number of the City's requests, certain Defendants have agreed to search for and produce documents extending back to 2004, and in some cases even earlier, but where the allegations in the TAC do not support such expansive, irrelevant and burdensome discovery, Defendants have objected.

The City seeks information and documents extending back to 2004 and has taken the position that the scope of the discovery requests also should include a continuing obligation to supplement and produce documents from the period after this action was filed. Defendants

---

[7] While some courts have allowed discovery into prior lawsuits and investigations in limited circumstances, the plaintiff must establish that such discovery is narrowly tailored to be relevant to specific circumstances of the case and not overly broad. *See, e.g., Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2013 WL 120240, at *10 (N.D. Ill. Jan. 9, 2013) (allowing discovery in antitrust case into "inquiries, investigations and prior litigation concerning antitrust activities" where the "products clearly overlap, and . . . some employees may overlap as well"); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11-cv-1108-SEB-TAB, 2013 WL 2406266, at *2 (S.D. Ind. May 31, 2013) (concluding that request for documents related to *all* criminal investigations involving alleged infringements or counterfeits of certain trademarks was overly broad but allowing discovery into one particular criminal investigation that was reasonably calculated to lead to discovery of admissible evidence). The City has not even attempted to meet this standard in its meet and confers to date.

object to this proposed ten-plus year time frame for discovery. The Defendants' position is that this scope is overly broad and unduly burdensome because it calls for a response without regard to whether such a response concerns the claims or defenses of any party and without regard to whether such a response is proportional to the needs of the case.

First, the allegations in the TAC fail to allege a sufficient factual basis for obtaining such discovery. Certain Defendants did not even own the products at issue during the entire time period proposed by the City. At least one other court in the Northern District has stated that "a qui tam action is not a roving commission to investigate all the financial dealings of the defendants." *United States ex rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, No. 99 C 8287, 2003 WL 21504998, at *2 (N.D. Ill. June 30, 2003). Accordingly, parties should "tailor[] discovery to the specificity of the claims." *Id.*

Second, the Plaintiff's proposed time frame would predate the enactment of relevant statutes. The TAC alleges a violation of the Chicago Consumer Fraud ordinance, Section 2-25-090, which was not enacted until November 2008. The statute does not apply retroactively, as the City has previously conceded. (Dkt. No. 252 at 50 n.53 ("[t]he City does not seek a retroactive application" of Section 2-25-090 and only seeks damages for "conduct that violates [this statute] occurring after November 19, 2008")). Further, when a statute is silent regarding its temporal reach, the "general principle that prospectivity is the appropriate default rule." *See Allegis Realty Inv's v. Novak*, 860 N.E.2d 246, 253 (Ill. 2006) (recognizing "clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not").

Third, the Plaintiff's proposed time frame would predate the statute of limitations. Plaintiff's claims are barred, in whole or in part, by the five-year statute of limitations contained in 735 ILCS 5/13-205 ("all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued") and the statute of limitations contained in MCC 1-22-040(b) ("A civil action under Section 1-22-030 may not be brought: (1) more than six years after the date on which the violation of Section 1-22-020 is committed; or (2) more than three years after the date when facts material to the right of action are known or reasonably should have been known by the official of the city charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.").

Under Illinois law, a cause of action accrues when the plaintiff knew or reasonably should have known of a wrongly caused injury to itself or to Chicago consumers. *Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 547 (Ill. App. Ct. 2004). Here, Plaintiff alleges wrongfully caused injuries that occurred over an unspecified period of time. Plaintiff and/or Chicago consumers certainly knew of these alleged injuries at the time the complaint was filed in 2014 and would have known of, or reasonably should have known of, at least some of these purported injuries well before that. (*See, e.g.*, TAC ¶ 81 ("Studies and articles from the 1970s and 1980s made clear the reasons to avoid opioids."); *id.* ¶ 83 (describing 1994 article discussing "compelling reasons to reject long-term opioid administration as a therapeutic strategy" (citation omitted)); *id.* ¶ 647 (discussing periods "[b]efore July 2006," "[b]etween July 2006 and December 2009," and "[f]rom January 2012 to December 2013" during which Plaintiff paid premiums for HMO plans, "which in turn covered the cost of prescription drugs"); *id.* ¶ 662 (alleging more than $13.9 million spent by Plaintiff for over 320,000 claims for Defendants'

opioid medications between 2006 and 2015 as example of direct harm to the City); *id.* ¶¶ 723-24 (listing "[e]mergency department visits due to opioids increas[ing] 153 percent between 2004 and 2011" and "[w]idespread opioid use and abuse in Chicago" as examples of direct harm to Chicago consumers).) To the extent that Plaintiff knew or reasonably should have known of any wrongfully caused injuries outside of the limitations period, Plaintiff's claims, and thus discovery, are time-barred.

Fourth, the time period proposed by the City far exceeds the scope of the TAC's specific factual allegations with respect to ongoing conduct. Specifically, the City has taken the position that the scope of the discovery requests should include an obligation to produce documents from the time period *after* this action was filed. However, discovery past the filing of the complaint is indeterminate and overly burdensome. Even if a complaint alleges an ongoing practice of allegedly false or fraudulent conduct, a court may limit the temporal range for discovery to the filing of the complaint. *See, e.g.*, *United States v. R&F Properties of Lake Cty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) (cutting date for discovery off at filing of original complaint).

\* \* \*

Defendants respectfully submit that the timing for disclosure of the alleged misrepresentations and "medically unnecessary" prescription claims upon which the City will rely at trial must be addressed and accounted for before any further discovery schedule is entered in this case. Defendants further respectfully submit that the City's broad, generalized positions with respect to geographic scope, product scope, documents from other litigation or investigation matters, and temporal scope are more appropriately addressed via individual meet and confer discussions and, if necessary, individual motion practice.

Dated:   May 3, 2017                                      Respectfully submitted,


By: /s/ Charles C. Lifland

    Charles C. Lifland (pro hac vice)
    Carolyn J. Kubota (pro hac vice)
    O'MELVENY & MYERS LLP
    400 S. Hope Street
    Los Angeles, CA 90071
    Telephone:  (213) 430-6000
    Facsimile:   (213) 430-6407
    clifland@omm.com
    ckubota@omm.com

    *Attorneys for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Appearing Pro Hac Vice*

By: /s/ Michael P. Doss

    Michael P. Doss
    Scott D. Stein
    SIDLEY AUSTIN LLP
    One South Dearborn
    Chicago, IL 60603
    Telephone:   (312) 853-7520
    Facsimile:    (312) 853-7036
    mdoss@sidley.com
    sstein@sidley.com

    *Attorneys for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

By: /s/ Gretchen M. Wolf

R. Ryan Stoll
Patrick Joseph Fitzgerald
Gretchen M. Wolf
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
155 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 407-0508
ryan.stoll@skadden.com
patrick.fitzgerald@skadden.com
gretchen.wolf@skadden.com

*Attorneys for Defendants Purdue
Pharma L.P., Purdue Pharma Inc., and
The Purdue Frederick Company Inc.*


By: /s/ Tinos Diamantatos

Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Telephone: (312) 324-1145
(312) 353-2067 (fax)
tdiamantatos@morganlewis.com

Gordon Cooney, Jr. (pro hac vice)
Steven A. Reed (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
jgcooney@morganlewis.com
sreed@morganlewis.com

*Attorneys for Defendants Cephalon, Inc.
and Teva Pharmaceuticals USA, Inc.*

By: /s/ Joshua M. Davis
    Steven G. Reade (pro hac vice)
    Joshua M. Davis (pro hac vice)
    ARNOLD & PORTER KAYE
    SCHOLER LLP
    601 Massachusetts Avenue, NW
    Washington, DC 20001
    Telephone: (202) 942.5000
    steven.reade@apks.com
    joshua.davis@apks.com

    *Attorneys for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*


By: /s/ James W. Matthews
    James W. Matthews (pro hac vice)
    Katy E. Koski (pro hac vice)
    Jason L. Drori (pro hac vice)
    FOLEY & LARDNER LLP
    111 Huntington Avenue, Suite 2500
    Boston, MA 02199
    (617) 342-4000
    jmatthews@foley.com
    kkoski@foley.com
    jdrori@foley.com

    Jonathan W. Garlough
    David B. Goroff
    FOLEY & LARDNER LLP
    321 North Clark Street, Suite 2800
    Chicago, IL 60654
    (312) 832-4500
    jgarlough@foley.com
    dgoroff@foley.com

    *Attorneys for Defendants Allergan plc, f/k/a Actavis plc, Actavis, Inc., n/k/a Allergan Finance, LLC, f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., Actavis LLC, and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc.*

**SIGNATURE ATTESTATION**

Pursuant to the Northern District of Illinois' General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories concur in the filing's content.

/s/ Gretchen M. Wolf
Gretchen M. Wolf

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2017, I caused to be electronically filed the foregoing

Defendants' Supplemental Status Report to be filed with the clerk of the court using the

CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on

the electronic Mail Notice List.


/s/ Gretchen M. Wolf
Gretchen M. Wolf