IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, <br><br> Plaintiff, <br><br> v. <br><br> PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHOMCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; and ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC., <br> Defendants. | Case No. 14-cv-04361 <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Young B. Kim |

**PLAINTIFF CITY OF CHICAGO'S MOTION TO COMPEL –
<u>TEMPORAL SCOPE OF DISCOVERY</u>**

Plaintiff City of Chicago ("City") hereby seeks an Order on a single issue of critical importance to discovery in this litigation—the temporal scope governing Defendants' responses.[1] The City respectfully requests the Court compel Defendants to respond to discovery requests

---

[1] The parties initially identified six areas of disagreement in their pre-hearing status briefs. With this Motion, the City is moving to compel on only one of those issues—the beginning date for discovery searches. Some issues appear to have been resolved by the Court's guidance. There are other issues about which the parties continue to meet and confer, including some new issues, such as Purdue's willingness to identify custodians and electronic search terms. If it becomes necessary, the City will initiate further motions practice on that, or any other, issue that develops as discovery continues.

consistent with this Court's previous direction and a narrowed timeframe last proposed by the City during meet and confers. Specifically:

    1) For the opioid products that were approved by the Food and Drug Administration ("FDA") or acquired by a defendant after January 1, 2004, the discovery time period shall start one year prior to the product's approval or acquisition date, allowing discovery to capture marketing planning documents;

    2) For the opioid products that were approved by the FDA prior to January 1, 2004 (*i.e.*, Duragesic, OxyContin and Actiq), the time period shall start on January 1, 2004, plus the product's launch plan and communications relating thereto and marketing plan documents and communications, regardless of their date, reflecting or relating to marketing of the product after January 1, 2004.

This proposed temporal scope allows for discovery of the most critical marketing documents, without requiring Defendants to review and produce documents for the entire pre- and post-launch period for the relevant drugs.

### I.    The City's Time Period is Consistent with the Court's Prior Direction that Discovery Should Be Tied to Product Launch.

During the May 8, 2017 Status Hearing, the Court expressed its opinion that the scope of discovery in this case should be determined by relevancy to the products identified in the City's Third Amended Complaint, ECF. No. 478 ("TAC"). The Court stated that rather than tying the discovery period to the effective date of the False Claims Ordinance, as the City had done, "[discovery] should be more tailored to each product's launch because surely these pharma companies would have had [a] marketing strategy in place before launching the product." Hr'g Tr. at 81, May 8, 2017 ("May 8 Tr."). The Court went on to state: "As to the start date, it really depends on each defendant, on the product that they actually marketed." May 8 Tr. at 89.

2

"[W]e're talking about how pharmaceutical companies marketed these particular products. The best answer perhaps lies in that particular launch plan that the companies came up with before a product is introduced to the market." May 8 Tr. at 86.

Despite the Court's guidance, multiple Defendants took the position, during post-hearing meet and confers, that the temporal scope of discovery should be limited to a period starting some number of years *after* their earliest product launch. Consistent with the Court's direction, the City formally amended its discovery requests to take a more flexible, Defendant- and product-specific approach. By correspondence dated June 29, 2017, the City modified its requests to cover responsive documents from one year before the launch of each product at issue. Letter from Elizabeth Smith, Counsel for the City, to Counsel for Defendants (June 29, 2017) (Ex. A). Defendants—as a group—made it clear that they were not willing to agree to the temporal scope of the City's amended request. Each Defendant then responded separately. While Endo largely agreed to produce documents from one year prior to the launch of Opana ER in 2006, no other Defendant agreed to such an approach. Moreover, Purdue continued its attempt to tie discovery to a purported statute-of-limitations defense, despite the Court's clear guidance on this point.

**II. The City's Proposal Reflects a Further Compromise to Narrow Discovery for Earlier-Launched Drugs.**

Recognizing that a straight one-year prior to launch start-date would lead to lengthy discovery periods for a few of the products at issue in this litigation, the City offered a compromise. By correspondence dated July 12, 2017,[2] the City stated that it would be willing to accept discovery responses as set forth below. This constitutes the City's current proposal:

1. For the seven opioid products at issue in this litigation that were FDA-approved or acquired by a Defendant after 1/1/2004, the time period for responding to the City's discovery requests shall start one year prior to the product's approval or acquisition date.

---

[2] Letter from Jeffrey Nelson, Counsel for the City, to Counsel for Defendants (July 12, 2017) (Ex. B).

2. For the three products at issue in this litigation approved or acquired prior to 1/1/2004, the time period for responding to the City's discovery requests shall start on 1/1/2004, plus the following:

   a. The product's launch plan and communications relating to the product's launch plan; and

   b. All marketing plan documents, communications related to marketing plans, and marketing materials, regardless of the date, reflecting or relating to marketing of the product after 1/1/2004.

For the Court's convenience, such timeframes are as set forth below:

| Defendant | Opioid Product | Approval or Acquisition Date | Proposed Discovery Start Date |
|---|---|---|---|
| Janssen | Duragesic | August 7, 1990 | 1/1/2004 Plus |
| Janssen | Nucynta | November 20, 2008 | 11/20/2007 |
| Janssen | Nucynta ER | August 25, 2011 | 8/25/2010 |
| Purdue | OxyContin | December 12, 1995 | 1/1/2004 Plus |
| Purdue | Butrans | June 30, 2010 | 6/30/2009 |
| Purdue | Hysingla ER | November 20, 2014 | 11/20/2013 |
| Teva | Actiq | October 11, 2000 | 1/1/2004 Plus |
| Teva | Fentora | September 25, 2006 | 9/25/2005 |
| Endo | Opana ER | June 22, 2006 | 6/22/2005 |
| Actavis | Kadian | December 30, 2008 | 12/30/2007 |

Defendants reacted differently to the City's proposed compromise. Endo stated that it did not object in general to the timeframe the City proposed, while reserving the right to object to specific instances where Endo believes, due to the burden associated with obtaining responsive material and/or the potential relevance of that material, the appropriate date cut off is later in time. Endo did not identify which of the City's requests might be subject to its caveat. Teva and Actavis, noting that they acquired Actiq and Kadian, respectively, after their launch, objected to discovery preceding their ownership of the drugs. The City explained that it only seeks pre-acquisition marketing documents to the extent that they reflect the Defendant's own assessments of, or plans for, the marketing of the subject drug after January 1, 2004, including: (1) marketing materials or plans prepared by the prior owner in the Defendant's custody or control that the

Defendant adopted or implemented, in whole or in part; and (2) the Defendant's own pre-acquisition marketing strategies or materials that reflect or relate to its marketing during the relevant timeframe. Purdue indicated that it would only produce materials after November 1, 2008, based on the codification date of MCC §2-25-090, notwithstanding both this Court's prior guidance and the fact that the City also asserts claims under ordinances that pre-date 2008. Janssen agreed with the City's proposal to begin discovery about Nucynta on November 20, 2007 and Nucynta ER on August 25, 2010, but objected to the City's proposal for Duragesic.

### III. The City's Proposal Targets Relevant Material and is Proportional.

#### A. Standard for Review

The Court should adopt the City's proposed compromise because it seeks information that is relevant to the City's claims and proportional to the needs of the case. In assessing the appropriateness of discovery, Courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"[T]he federal courts are unanimous in holding that the definition of relevant is expansive and inclusive," and "[t]his is even more true in the context of discovery than in the context of admissibility at trial." *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp.*, 317 F.R.D. 620, 630 (N.D. Ill. 2016). "Discovery requests are relevant if there is a possibility that the information sought may be relevant to the subject matter of the action." *Lucas v. Gold Standard Baking, Inc.*, No. 13-cv-1524, 2017 WL 1436864, at *2 (N.D. Ill. Apr. 24, 2017) (Kim, Mag. J.).

"Discovery must not only be relevant to a party's claim or defense, it must also be proportional to the needs of the case." *Infowhyse GmbH v. Fleetwood Grp.*, No. 15-cv-11229, 2016 WL 4063168, at *4 (N.D. Ill. July 29, 2016) (internal quotation and citation omitted). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules. . . . Courts commonly look unfavorably upon significant restrictions placed upon the discovery process, and the burden rests upon the objecting party to show why a particular discovery request is improper." *Ousterhout v. Zukowski*, No. 11-cv-9136, 2016 WL 3675564, at *2 (N.D. Ill. Apr. 5, 2016) (quoting *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (internal quotation marks omitted). "[T]he scope of discovery should be broad in order to aid in the search for truth." *Kodish*, 235 F.R.D. at 450.

Defendants cannot demonstrate that the City's proposed time period is improper. The City's segmented, product-specific approach is narrowly tailored to focus upon the most important materials and to avoid undue burden on the Defendants that made and marketed the three opioids at issue launched prior to 2004.

### B. The City's Proposed Timeframe Targets Relevant Material.

The City's various claims in this litigation all relate to how the Defendants marketed their opioid products. The documents the City seeks regarding the Defendants' plans, strategies, and materials for marketing their opioids are directly relevant to the City's claims, and in particular, Defendants' centrally-developed and executed campaign for misrepresenting the risks and benefits of these narcotic drugs. As the Court recognized: "The best answer perhaps lies in that particular launch plan that the companies came up with before a product is introduced to the market." May 8 Tr. at 86. Therefore, for most of the products at issue, the City's proposal starts one year before product approval or acquisition, in order to capture each product's launch plan and early marketing

6

development. For the three oldest products at issue, the City's proposed compromise starts later—with the originally requested January 1, 2004 timeframe—to avoid undue burden and specifically targets the two most relevant subjects that are likely to exist from before that timeframe: launch plan materials and marketing plan materials that reflect or relate to marketing of the product after January 1, 2004.

The City's proposed temporal scope is tailored to reflect a timeframe that is relevant to the allegations in the TAC. In meet-and-confers and otherwise, Defendants have not seriously contended that the documents the City seeks are irrelevant to the City's claims, but focused upon the proportionality of the requests, which is analyzed below.

### C. The Issues at Stake are Important.

The opioid addiction epidemic is reaching staggering, tragic proportions in Chicago and across the nation. According to the federal government, more than 165,000 people died from prescription opioid overdoses from 1999-2014,[3] more than the total American casualties in the Vietnam War. Moreover, the rate is increasing, with drug overdose deaths in 2016 most likely exceeding 59,000—more overdose deaths annually than deaths caused by AIDS at the height of the AIDS epidemic.[4] In Chicago, in particular, the tide of opioid use, abuse, and addiction, have contributed to a dramatic increase in the use of heroin, which together have created a rising demand for the City's emergency services and health care. TAC ¶ 723. The City's complaint also demonstrates the costs that this epidemic have imposed in the City—more than $11 million in spending on these drugs and on addiction treatment through the City's own health plans and

---

[3] *The Opioid Epidemic: By the Numbers*, U.S. Dept. of Health and Human Servs. (2016), https://www.hhs.gov/sites/default/files/Factsheet-opioids-061516.pdf (Ex. C).

[4] Katz, Josh, *Drug Deaths in America Are Rising Faster Than Ever*, N.Y. Times (June 5, 2017), https://www.nytimes.com/interactive/2017/06/05/upshot/opioid-epidemic-drug-overdose-deaths-are-rising-faster-than-ever.html (Ex. D).

7

workers' compensation programs, not including the broader costs in increased City services to residents and families who have lost lives or loved ones to opioids. TAC ¶¶ 733-35. Moreover, the conduct outlined in the City's TAC, which alleges that Defendants engaged in a deliberate campaign to overstate the benefits and understate the risks of drugs they knew were addictive and often deadly, is precisely the kind of illegal conduct prohibited by the City's False Claims and Consumer Fraud Ordinances.

### D. The Amount in Controversy Supports the City's Discovery.

In this action, the City seeks various forms of relief for each of the ten counts pled in the TAC, including treble damages, restitution and disgorgement of any money acquired as a result of Defendants' consumer fraud and deceptive practices; and civil penalties (up to $10,000 per violation or day). It is not possible to quantify the full amount in controversy at this stage in the litigation, prior to discovery, but the monetary relief will easily be in the tens of millions of dollars, if not more. Moreover, the City seeks injunctive relief aimed at stemming and reversing the impact of Defendants' deceptive marketing, which magnifies the significance of the amounts at stake. Therefore, the discovery expenses that Defendants may face under the City's proposal are commensurate with the amount in controversy.

### E. The Defendants Have Adequate Resources and Ready Access to the Relevant Information.

The Defendants are global multi-billion dollar pharmaceutical companies. They have sufficient resources and full access to their own information. Defendants should be readily able to identify the custodians and documents responsive to the City's requests. Moreover, each corporate Defendant and its top-tier litigation firms have at their disposal the latest electronic searching and coding tools available, along with sufficient staffing and other resources to gather and review the targeted documents sought by the City.

### F. The Discovery is Important in Resolving the Issues.

The only issue presented by this motion is the City's proposed temporal scope of discovery. The City has carefully tailored its proposed timeframe to coincide with the most critical documents and periods involved—the period of product launch planning and product marketing. This discovery is essential to the case.

Some Defendants have argued that the City will be precluded from asserting claims before 2008, and therefore that discovery should likewise be limited. In the first place, the City asserts claims that date back to at least January 1, 2005; thus, Defendants have no basis to object to discovery covering this time period.[5]

Moreover, this is not the proper forum to adjudicate a statute of limitations defense (particularly because the City has alleged that Defendants fraudulently concealed their deceptive conduct, raising factual questions that will be resolved in the course of litigation and because Defendants did not assert, and therefore waived, a statute-of-limitations defense) or the time period of the City's claims. But, ultimately, the statute of limitations period does not define the time period for discovery; as this Court has noted,[6] the proper scope of discovery is defined by the relevance and proportionality of the documents to the claims at issue, not the statute of limitations.

---

[5] Until recently, counsel for the City incorrectly believed, as reflected in its briefing, that the earliest enacted ordinance giving rise to any Count in the TAC was the City's False Claims Ordinance (Counts V & VI), which was enacted in 2005. In fact, as the City notified Defendants, Letter from Elizabeth Smith, Counsel for the City, to Counsel for Defendants (June 29, 2017) (Ex. A), the City's Consumer Fraud Ordinance (Counts I & II) actually was the earliest enacted ordinance, having been enacted in 1990. M.C.C. 16-6(a) (1990) (Ex. E); *see also* M.C.C. 2-24-060 (2005) (Ex. F). In 2008, the City Council again re-codified the Consumer Fraud Ordinance, but the substantive provisions were—and remain—identical to those that were enacted in 1990. M.C.C. 2-25-090 (2017).

[6] "Statute of limitations deals with claims that are viable. It doesn't deal with discovery. . . . Sometimes you have to go back beyond the statute of limitations to get the information that's pertinent, especially in these types of cases where marketing could have come up before, you know, some year and then reused for another product moving forward." May 8 Tr. at 86-87.

*In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 357 n.5 (N.D. Ill. 2005) (where information is relevant, the statute of limitations is not a basis for barring discovery).

### G. The Burden or Expense of the Proposed Discovery Does Not Outweigh Its Likely Benefit.

As demonstrated above, the benefit of the City's proposed timeframe, which is tailored to target evidence directly relevant to the City's claims, is significant, and it is not outweighed by the Defendants' burden. The fact that discovery requests involve work, time and expense is not sufficient to render them objectionable. *Gard v. Dooley*, No. 4:14-cv-04023, 2017 WL 782279, at *3 (D.S.D. Feb. 28, 2017). Courts that have confronted similar issues routinely have approved discovery time periods that were longer than the claims at issue in the litigation. *E.g.*, *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) ("[C]ourts in this Circuit have often taken the default position of limiting discovery to no earlier than five years from the date on which the allegedly tortious conduct occurred."); *N.U. v. Wal-Mart Stores, Inc.*, No. 15-4885, 2016 WL 3654759, at *4 (D. Kan. July 8, 2016) (setting six-year pre-accident time period for discovery); *In re Dockers Roundtrip Airfare Promotion Sales Practices Litig.*, No. CV-09-2847, 2010 WL 11515318, at *5 (C.D. Cal. Aug. 1, 2010) (upholding two-and-a-half year discovery period before the period of actual liability as "far less than the presumptive five-year period"). In this case, the City is requesting far less than these courts approved. Therefore, Defendants should be compelled to comply with the City's proposed timeframe for discovery.

### CONCLUSION

For the foregoing reasons, the City respectfully requests this Court to issue an Order compelling each of the Defendants to answer the City's Interrogatories and produce documents in accordance with the proposal set forth in Section II, above.

Dated: July 19, 2017                    Respectfully submitted,

                                        EDWARD N. SISKEL
                                        Corporation Counsel, City of Chicago


                                        BY:           /s/
                                              Jeffrey Nelson (admitted pro hac vice)
                                              Linda Singer (admitted pro hac vice)
                                              Elizabeth Smith (admitted pro hac vice)
                                              MOTLEY RICE LLC
                                              401 9th St. NW, Suite 1001
                                              Washington, DC 20004
                                              jnelson@motleyrice.com
                                              lsinger@motleyrice.com
                                              esmith@motleyrice.com
                                              Telephone: (202) 232-5504

                                              Thomas P. McNulty
                                              Fiona A. Burke
                                              City of Chicago, Department of Law
                                              30 N. LaSalle St., Suite 1240
                                              Chicago, IL 60602
                                              thomas.mcnulty@cityofchicago.org
                                              fiona.burke@cityofchicago.org
                                              Telephone: (312) 744-6939

                                              Kenneth A. Wexler
                                              Thomas A. Doyle
                                              WEXLER WALLACE LLP
                                              55 W. Monroe Street, Suite 3300
                                              Chicago, IL 60603
                                              kaw@wexlerwallace.com
                                              tad@wexlerwallace.com
                                              Telephone: (312) 346-2222

                                              *Attorneys for Plaintiff City of Chicago*

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 19, 2017, I caused the foregoing Plaintiff City of Chicago's Motion to Compel – Temporal Scope to be filed with the clerk of the court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List below:

  July 19, 2017                  By: _____/s/_____

                           Jeffrey Nelson
                           Attorney for Plaintiff

| | |
|---|---|
| James W. Matthews<br>Katy Koski<br>Jason Drori<br>Ana Francisco<br>David Goroff<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Suite 2500<br>Boston, MA 02199<br>jmatthews@foley.com<br>kkoski@foley.com<br>jdrori@foley.com<br>afranciso@foley.com<br>dgoroff@foley.com<br><br>*Attorneys for Allergan plc f/k/a Actavis plc, Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* | Jonathan W. Garlough<br>FOLEY & LARDNER LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60654<br>jgarlough@foley.com |

| | |
|---|---|
| Jonathan L. Stern<br>Steven G. Reade<br>Joshua Davis<br>Sean Morris<br>Joanna Persio<br>ARNOLD & PORTER<br>KAYE SCHOLER LLP<br>601 Massachusetts Avenue, NW<br>Washington, DC 20001<br>jonathan.stern@apks.com<br>steven.reade@aporter.com<br>joshua.davis@aporter.com<br>sean.morris@aporter.com<br>joanna.persio@aporter.com<br><br>*Attorneys for Endo Health Solutions Inc.,*<br>*Endo Pharmaceuticals, Inc.* | |
| Charles C. Lifland<br>Carolyn J. Kubota<br>Esteban Rodriguez<br>Seth Baglin<br>O'MELVENY & MYERS LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>clifland@omm.com<br>ckubota@omm.com<br>erodriguez2@omm.com<br>sbaglin@omm.com<br><br>Dave Roberts<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC 20006<br>droberts2@omm com<br><br>*Attorneys for Defendants Janssen*<br>*Pharmaceuticals, Inc., Johnson & Johnson,*<br>*Ortho-McNeil-Janssen Pharmaceuticals, Inc.*<br>*n/k/a Janssen Pharmaceuticals, Inc., Janssen*<br>*Pharmaceutica, Inc. n/k/a Janssen*<br>*Pharmaceuticals, Inc.* | Michael P. Doss<br>Scott D. Stein<br>SIDLEY AUSTIN LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>mdoss@sidley.com<br>sstein@sidley.com |

| | |
|---|---|
| Patrick Joseph Fitzgerald<br>Gretchen Wolf<br>R. Ryan Stoll<br>Lindsey Sieling<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>155 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>patrick.fitzgerald@skadden.com<br>gretchen.wolf@skadden.com<br>ryan.stoll@skadden.com<br>lindsey.sieling@skadden.com<br><br>Robert S. Hoff<br>WIGGIN AND DANA LLP<br>281 Tresser Boulevard<br>Two Stamford Plaza<br>Stamford, CT 06905<br>rhoff@wiggin.com<br><br>*Attorneys for Defendants*<br>*Purdue Pharma L.P.,*<br>*Purdue Pharma Inc., and*<br>*The Purdue Frederick Company, Inc.* | Tinos Diamantatos<br>Jane Dudzinski<br>Megan Braden<br>MORGAN, LEWIS & BOCKIUS LLP<br>77 West Wacker Drive, 5th Floor<br>Chicago, IL 60601<br>tdiamantatos@morganlewis.com<br>jane.dudzinski@morganlewis.com<br>megan.braden@morganlewis.com<br><br>J. Gordon Cooney, Jr.<br>Steven A. Reed<br>Jeremy Menkowitz<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>jcooney@morganlewis.com<br>sreed@morganlewis.com<br>jeremy.menkowitz@morganlewis.com<br><br>*Attorneys for Teva Pharmaceuticals USA, Inc.* |