IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICAL, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; and ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.,<br><br>Defendants. | Case No. 14-cv-04361<br><br>Honorable Jorge L. Alonso<br><br>Magistrate Judge Young B. Kim |

**DEFENDANTS' JOINT MOTION TO COMPEL PHASED
<u>IDENTIFICATION OF THE MEDICALLY UNNECESSARY CLAIMS AT ISSUE</u>**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2, Defendants[1], by and through their undersigned counsel, hereby move the Court for an order compelling the City of Chicago (the "City") to answer the interrogatory and production requests seeking identification of (i) the prescription claims submitted to and paid for by the City that it asserts were "medically unnecessary" and to whom they were written; (ii) the physicians or health care providers who wrote the prescriptions the City alleges to have been "medically unnecessary"; and (iii) the particular misrepresentation(s) made to the prescribing physician or health care provider that are alleged to have misled him or her (collectively, the "Medically Unnecessary Discovery Requests"), following the completion of party document discovery and document discovery with respect to identified third parties other than health care providers or patients.[2] Such a phased discovery approach is consistent with the guidance of this Court at the May 8, 2017 hearing and will ensure a fair, orderly and efficient discovery process.

## BACKGROUND

At the May 8, 2017 hearing, this Court heard argument regarding the timing of the City's response to the Medically Unnecessary Discovery Requests. Despite eventually acknowledging that it must establish both that a claim is "medically unnecessary" and the result of a Defendant's

---

[1] Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company Inc. ("Purdue"); Teva Pharmaceuticals USA, Inc.; Cephalon Inc.; Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica Inc. ("Janssen"); Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. ("Endo"); and Allergan plc, f/k/a Actavis plc, Actavis, Inc., n/k/a Allergan Finance, LLC, f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., Actavis LLC, and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc. ("Actavis").

[2] The relevant discovery requests and the City's responses thereto are attached as Appendix 1. Although not technically the subject of this motion, the Endo Defendants' second set of written discovery requests include requests seeking the identification of medically unnecessary claims that are substantively the same as those propounded by other Defendants.

"fraudulent marketing,"[3] the City initially responded to those requests through objections, contending that the requests were premature "contention interrogatories" and noting that it would not identify the prescription claims submitted to and paid for by the City that it asserts were "medically unnecessary" until *after* fact discovery through the submission of its expert reports. As Defendants set forth in their Supplemental Status Report filed with the Court in advance of the May 8, 2017 hearing (Dkt. No. 557), such a proposal was without basis and would fundamentally deprive Defendants of the opportunity to conduct essential fact discovery necessary to address the City's claims:

> The identification of which prescriptions paid for by the City that it claims were "medically unnecessary" is essential for Defendants to be positioned to conduct appropriate fact discovery to address the City's claims. Certainly, Defendants are entitled to conduct fact discovery to demonstrate, among other things, that (a) the prescription was "medically necessary" and based upon proper medical criteria; (b) the purported misrepresentation or omission was not material to the prescription decision and the prescriber was fully aware of the pertinent medical risks and benefits of the therapy; (c) the prescriber was not misled or misinformed by Defendants and/or was not deceived by the specific purported misrepresentations or omissions; (d) the Claims Administrator and Medical Advisor had appropriate information with respect to approving the prescription claim as "medically necessary"; and (e) the employee or plan member benefited from the particular prescription for which the City reimbursed. In short, the identification of the prescriptions paid for by the City that it alleges to be "medically unnecessary" is a threshold issue that permeates the fact discovery that will be necessary for Defendants to build their defense.

---

[3] Specifically, the City stated:

> If we simply identified claims for opioids that we thought were unwise, we would have no ability to – the City wouldn't wish to hold defendants responsible for those. It is those claims that were medically unnecessary and caused by defendants' fraudulent marketing. So it is exactly as your honor said, that we need to identify both of those buckets, the claims that were caused by defendants' fraudulent marketing as we allege it, and then those that were medically unnecessary. They are tied together.

(May 8, 2017 Hr'g Tr., attached hereto as Exhibit A, at 24-25; *see also id.* at 26 (City acknowledging that "[i]t has to be both, the deceptive representation and the inappropriate claim").)

(*Id.* at 4-5.) Defendants also demonstrated that under pertinent authority, the requests were not "contention interrogatories" or "contention requests." Rather, they sought to ascertain key facts that went to the heart of the City's allegations, namely *which* prescriptions the City claims were medically unnecessary, *which* doctors wrote them, and *what* purported misrepresentations were alleged to be associated with those prescriptions. (*Id.* at 9-10.)[4]

After hearing argument on the issue, the Court agreed with Defendants on two main issues. *First*, that the City must identify which claims it contends were medically unnecessary before the close of fact discovery so that Defendants may have an appropriate opportunity to conduct fact discovery regarding those claims. (*See* Ex. A at 42 ("There's no way no how the City is not going to identify the subset before a fact discovery deadline, before third-party discovery, because the defendants should be able to test the underlying data before it -- they actually go into expert discovery.").) *Second*, that the requests did not constitute "contention" interrogatories or requests. (*See id.* at 50 ("I don't consider these interrogatories and requests to produce as contention interrogatories and requests to produce. I think they're just, you know, straight facts that they're asking for.").)

The City responded that it was not yet positioned to provide the requested list of medically unnecessary and fraudulent claims and needed further discovery regarding Defendants' marketing in order to provide the list. (*See* Ex. A at 24 ("[A]s I understand the City's argument is, well, we don't – we don't have the ability to identify those just yet without

---

[4] Defendants further noted that such disclosures were in accordance with both this Court's prior guidance and the prior rulings of Judge Alonso. (*Id.* at 7-8.)

getting more information about the marketing efforts of the defendants.").)[5]

Accordingly, the Court proposed a phasing process: "So that's why I'm proposing that at some point . . . before the fact discovery ends that the City is required to do the expert analysis so that the City can identify the medically unnecessary and fraudulent claims that the City will rest on in order to prove liability and damages in this case." (Ex. A at 36.) The Court further clarified the manner in which it contemplated the appropriate phasing: "And what I can say to the City and to the defendants is that we're not going to close fact discovery, we're not going to move forward with some third discovery – third-party discovery until we have the set of claims that the City is relying on in order to prove this case." (*Id.* at 41-42.)

After the Court's guidance, counsel for the City stated that written discovery, including certain limited written discovery of third parties (other than treating health care providers and patients), would be necessary before disclosures of the medically unnecessary and fraudulent claims at issue:

> I just want to be clear. Right now, we have a schedule for written discovery. And my only point was that that might need to include some written discovery of third parties. I think the City would be happy to come back in front of you once the parties are ready to take depositions and figure out what disclosures the City can make and the defendants need in order to proceed in this case.

(Ex. A at 47.) Counsel for Defendants then suggested that the parties meet and confer on a proposal for a phasing schedule, which the Court indicated would be helpful. (*Id.* at 50.)

Consistent with the Court's guidance, Defendants sought to meet and confer with the City

---

[5] The City also argued that it may attempt to rely on some unspecified form of "aggregate proof" in an attempt to establish liability and damages. (Ex. A at 5-7.) Defendants set forth that any such attempt at "aggregate proof" would be improper, as a matter of law, in this case. (*Id.* at 11-14, 19-21.) The Court, however, indicated that it would not resolve issues concerning the requisite form of proof for purposes of discovery in this case. (*See id.* at 42 ("The issue regarding whether aggregate proofing is required or whether aggregate proofing is appropriate in this case, to me that is above my pay grade. That goes to liability. I'm dealing with the scope of discovery. From my standpoint, we need to figure out what that subset is.").)

and proposed to the City the following phased schedule:

1. Complete party document discovery and begin document discovery with respect to third parties other than HCPs/patients (e.g., the City's Health Plan administrators, Prescription Benefits, Workers Compensation Program medical management vendor and pharmacy benefits manager; other third party organizations named in the City's complaint, initial disclosures or discovery responses)

2. City discloses "medically unnecessary claims" and alleged misrepresentations that led to those claims

3. Party depositions, continued third-party document discovery and third-party depositions (including HCPs/patients)

4. City may supplement list of claims and misrepresentations if it can demonstrate that deposition testimony provided new information not otherwise available through prior document discovery

5. Defendants will be allowed to conduct additional (potentially duplicative) depositions if the City supplements the lists

6. Fact discovery closes

(June 13, 2017 email, attached as Exhibit B.)

In the meet and confers, the City refused to agree to Defendants' proposed phasing schedule and initially refused to propose any alternative phasing schedule, contending that the issue was premature and should not be addressed at this time.

On the afternoon of July 18, 2017 (the day before motions to compel were due to be filed), the City sent Defendants a letter proposing an alternative phased discovery plan. (July 18, 2017 letter, attached as Exhibit C.) Under the City's proposal, *depositions* would be conducted of parties and third-parties other than "City employees or vendors involved in processing health benefits or workers' compensation claims" *prior* to the City's disclosure of the medically unnecessary claims at issue and the alleged misrepresentations associated with those medically unnecessary claims (and the City proposes that such a disclosure would not occur until a year

from now). (*Id.* at 1.) Further, under the City's proposal, instead of identifying the set of medically unnecessary claims at issue, the City would provide only "a sample or subset of false/medically unnecessary claims, or otherwise identify those claims or its methodology for the identification of false/medically unnecessary claims." (*Id.*) Finally, in its July 18, 2017 proposal, the City took the position, without explanation, that discovery relating to prescribing health care providers or the patients associated with medically unnecessary claims is not "necessary or appropriate." (*Id.* at 1 n.1)

## ARGUMENT

As noted at the May 8, 2017 hearing, the City should be positioned to identify the medically unnecessary claims at issue following written discovery and document production of the parties and certain third-parties. Thereafter, depositions and focused additional discovery informed by the specification of the claims at issue can be conducted in a fair and orderly manner. The phased approach presented by Defendants is consistent with this Court's guidance. By contrast, the City's belated proposal is one-sided, inefficient, and would deprive Defendants of a fair opportunity to develop and prepare their defenses to the City's claims.

The City should be positioned to identify the medically unnecessary claims at issue and the alleged misrepresentations associated with those medically unnecessary claims following written discovery (including the call notes of sales agents, etc.).[6] As set forth in the prior submission to the Court (Dkt. No. 557 at 4-12), and extensively argued before the Court at the May 8th hearing, a proper and *timely* identification of the "medically unnecessary" claims at issue "permeates the fact discovery that will be necessary for Defendants to build their defense."

---

[6] The City has already conducted an extensive pre-suit and post-suit investigation here, receiving information and/or documents from over 100 third parties.

(*Id.* at 5.) It is critical to an orderly and fair fact discovery process for the Defendants to know "*which* of the prescription claims for chronic opioid therapy submitted to and paid by the City that the City asserts to be 'medically unnecessary'" and the purported misrepresentation associated with those claims in order to frame appropriate deposition questioning to third party witnesses (such as speakers or those responsible for third-party publications) and to understand the matters at issue with respect to Defendants' personnel (such as personnel who communicated with Chicago prescribers). (*Id.* at 4; *see also* Ex. A at 36-45.) As the City would have it, depositions of third party witnesses and Defendants' own party witnesses would take place without Defendants having knowledge of the claims the City is contending to be at issue, the prescribers involved in writing the purportedly "medically unnecessary" prescriptions (and whether any such prescribers attended Speaker programs or CLEs at issue, or otherwise interacted with the third-parties), or the purported misrepresentations alleged to be the basis for the "medically unnecessary" prescriptions. Such a process would deprive Defendants of the ability to frame appropriate questioning of third-party witnesses grounded in the claims at issue, or to address with Defendants' personnel the purported misrepresentations at issue.

Moreover, the identification of the medically unnecessary claims at issue is central to liability and damages and thus the proper subject of discovery. In this regard, precedent is clear that "sampling" or statistical approaches fail, as a matter of law, where, as here, the claims involve an assertion that a *third-party* prescriber purportedly wrote a "medically unnecessary" prescription based upon an alleged misrepresentation. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (rejecting sampling approach); *United States v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at *12-13 (N.D. Tex. June 20, 2016) (rejecting statistical approach where claims involved "the *subjective clinical judgment* of a number of certifying physicians");

*In re Zyprexa Products Liability Litig.*, 671 F. Supp. 2d 397, 457 (E.D.N.Y. 2009) (same).

The determination of whether a prescription is "medically unnecessary," across various physicians and patients, necessarily involves individualized factual determinations:

> Several of the criteria for "medical necessity" are context-sensitive, rather than one-size-fits-all. Because each patient presents a unique set of symptoms and indications, and each patient may respond differently to any given medication, it requires a highly specific, individual analysis to determine, for example, whether there exists for a given patient another "effective and more conservative or substantially less costly treatment." . . . Whether a prescription . . . is "medically necessary" must take into account all the information available to the prescribing physician about the risks and benefits with respect to the individual patient in question and the myriad vectors affecting the presenting person.

*In re Zyprexa Products Liability Litig.*, 671 F. Supp. 2d at 456-57.

As noted by Chief Judge Lynn of the Northern District of Texas in a thoughtful analysis of the issue:

> [C]ertainly you can't extrapolate from how one physician assessed a patient's eligibility to make conclusions about another physician. Thus, proof regarding one claim does not meet Relator's burden of proof regarding other claims involving different patients, different medical conditions, different caregivers, different facilities, different time periods, and different physicians.

*Vista Hospice Care*, 2016 WL 3449833, at *13 (internal quotations omitted).

Here, Defendants must have an appropriate opportunity to conduct fact discovery to demonstrate, among other things, that (a) a prescription was "medically necessary" and based upon proper medical criteria; (b) a purported misrepresentation or omission was not made or was not material to the prescription decision and a prescriber was fully aware of the pertinent medical risks and benefits of the therapy; (c) a prescriber was not misled or misinformed by Defendants and/or was not deceived by the specific purported misrepresentations or omissions; (d) the Claims Administrator and Medical Advisor had appropriate information with respect to approving the prescription claim as "medically necessary"; and (e) the employee or plan member

benefited from the particular prescription for which the City reimbursed. The City's proposal would deprive Defendants of an ability to address any of these critical issues in the fact discovery process.

In view of this Court's indication that it is not its province to decide the type of evidence the City must present to establish liability (Ex. A at 42), Defendants have not fully briefed here the question of whether "sampling" or statistical approaches are sufficient (as noted above, they are not as a matter of law). Regardless, as a matter of discovery, the City should be required to identify all medically unnecessary claims at issue, and for which it will be seeking damages or fines, as such information is unquestionably relevant and central to the defense of this action. To the extent the City later refuses to disclose all "medically unnecessary" claims at issue, and for which it will be seeking damages or fines, Defendants respectfully submit that the issue may need to be submitted to Judge Alonso for resolution in order that discovery may proceed in an appropriate and orderly fashion.

Finally, the City's suggestion that no discovery related to the prescribing health care provider or the medical circumstances of the patient at issue will be warranted is without any basis in law and disregards settled principles of the learned intermediary doctrine, the fundamental questions of whether a prescriber was misled in any manner or a purported misrepresentation played any role in the prescribing decision, and the requirement that any alleged misrepresentation be addressed within the context of entirety of the information known at the time. *See, e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938-39 (7th Cir. 2001); *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392-93 (Ill. 1987) ("The doctor, functioning as a learned intermediary between the prescription drug manufacturer and the patient, decides which available drug best fits the patient's needs and chooses which facts from the various

warnings should be conveyed to the patient, and the extent of disclosure is a matter of medical judgment.").

Defendants' proposed phasing is in accordance with this Court's guidance and necessary for an orderly and fair fact discovery process. Accordingly, Defendants respectfully request that the Court enter an order requiring that the City answer the interrogatory and production requests seeking identification of (i) the prescription claims submitted to and paid for by the City that it asserts were "medically unnecessary" and to whom they were written; (ii) the physicians or health care providers who wrote the prescriptions the City alleges to have been "medically unnecessary"; and (iii) the particular misrepresentation(s) made to the prescribing physician or health care provider that are alleged to have misled him or her, following the City's completion of party document discovery and the document discovery with respect to identified third parties other than health care providers or patients.

## Local Rule 37.2 Certification

Counsel for each of the Defendants met and conferred via telephone with counsel for the City on June 14, 2017 and July 7, 2017 regarding Defendants' proposed phasing of discovery. Despite the parties' good faith attempts to resolve their differences, the parties were unable to reach an accord.

Dated:   July 19, 2017                    Respectfully submitted,


                                          By: /s/ Charles C. Lifland
                                               Charles C. Lifland (*pro hac vice*)
                                               Carolyn J. Kubota (*pro hac vice*)
                                               O'MELVENY & MYERS LLP
                                               400 S. Hope Street
                                               Los Angeles, CA 90071
                                               Telephone:  (213) 430-6000
                                               Facsimile:   (213) 430-6407
                                               clifland@omm.com
                                               ckubota@omm.com

                                               *Attorneys for Defendants Janssen*
                                               *Pharmaceuticals, Inc., Johnson &*
                                               *Johnson, Janssen Pharmaceutica, Inc.*
                                               *n/k/a Janssen Pharmaceuticals, Inc.,*
                                               *and Ortho-McNeil-Janssen*
                                               *Pharmaceuticals, Inc. n/k/a Janssen*
                                               *Pharmaceuticals, Inc., Appearing Pro*
                                               *Hac Vice*

                                          By: /s/ Michael P. Doss
                                               Michael P. Doss
                                               Scott D. Stein
                                               SIDLEY AUSTIN LLP
                                               One South Dearborn
                                               Chicago, IL 60603
                                               Telephone:   (312) 853-7520
                                               Facsimile:    (312) 853-7036
                                               mdoss@sidley.com
                                               sstein@sidley.com

                                               *Attorneys for Defendants Janssen*
                                               *Pharmaceuticals, Inc., Johnson &*
                                               *Johnson, Janssen Pharmaceutica, Inc.*
                                               *n/k/a Janssen Pharmaceuticals, Inc.,*
                                               *and Ortho-McNeil-Janssen*
                                               *Pharmaceuticals, Inc. n/k/a Janssen*
                                               *Pharmaceuticals, Inc.*

By: /s/ R. Ryan Stoll

R. Ryan Stoll
Patrick Joseph Fitzgerald
Gretchen M. Wolf
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
155 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 407-0508
ryan.stoll@skadden.com
patrick.fitzgerald@skadden.com
gretchen.wolf@skadden.com

*Attorneys for Defendants Purdue
Pharma L.P., Purdue Pharma Inc., and
The Purdue Frederick Company Inc.*

By: /s/ Tinos Diamantatos

Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Telephone: (312) 324-1145
(312) 353-2067 (fax)
tdiamantatos@morganlewis.com

Gordon Cooney, Jr. (*pro hac vice*)
Steven A. Reed (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
jgcooney@morganlewis.com
sreed@morganlewis.com

*Attorneys for Defendants Cephalon, Inc.
and Teva Pharmaceuticals USA, Inc.*

By: /s/ Joshua M. Davis

    Steven G. Reade (*pro hac vice*)
    Joshua M. Davis (*pro hac vice*)
    ARNOLD & PORTER KAYE
    SCHOLER LLP
    601 Massachusetts Avenue, NW
    Washington, DC 20001
    Telephone: (202) 942.5000
    steven.reade@apks.com
    joshua.davis@apks.com

    *Attorneys for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

By: /s/ James W. Matthews

    James W. Matthews (*pro hac vice*)
    Katy E. Koski (*pro hac vice*)
    Jason L. Drori (*pro hac vice*)
    FOLEY & LARDNER LLP
    111 Huntington Avenue, Suite 2500
    Boston, MA 02199
    (617) 342-4000
    jmatthews@foley.com
    kkoski@foley.com
    jdrori@foley.com

    Jonathan W. Garlough
    FOLEY & LARDNER LLP
    321 North Clark Street, Suite 2800
    Chicago, IL 60654
    (312) 832-4500
    jgarlough@foley.com

    *Attorneys for Defendants Allergan plc, f/k/a Actavis plc, Actavis, Inc., n/k/a Allergan Finance, LLC, f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., Actavis LLC, and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc.*

13

**SIGNATURE ATTESTATION**

Pursuant to the Northern District of Illinois' General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories concur in the filing's content.

/s/ R. Ryan Stoll
R. Ryan Stoll

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2017, I caused to be electronically filed the foregoing

Defendants' Joint Motion to Compel to be filed with the clerk of the court using the CM/ECF

system, which will send notification of such filing to the e-mail addresses denoted on the

electronic Mail Notice List.

/s/ R. Ryan Stoll
R. Ryan Stoll