IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, <br><br> Plaintiff, <br><br> v. <br><br> PURDUE PHARMA L.P., *et al*, <br><br> Defendants. | Case No. 14-cv-04361 <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Young B. Kim |

**THE CITY OF CHICAGO'S OPPOSITION TO
DEFENDANTS' JOINT MOTION TO COMPEL PHASED IDENTIFICATION
OF THE MEDICALLY UNNCESSARY CLAIMS AT ISSUE** *(ECF 588)*

Defendants' Motion to Compel *(ECF 588)* (the "Motion") is not really a motion to compel at all, because it does not seek an Order compelling the Plaintiff City of Chicago to produce anything that the City is refusing to produce. That is, the City has filed a detailed complaint that alleges how Defendants' unlawful conduct injured the City when it caused the City to pay thousands of improper health insurance claims involving opioids *(ECF 478)*. The City has agreed to produce a set of its claims data involving opioids, a list of approximately 250,000 health insurance claims that the City reimbursed *(ECF 588-2 at 26-27)*. And the City will provide a disclosure regarding the claims that are improper, as medically unnecessary, when the City is able to make that disclosure. The Court has already acknowledged that the City is unable to do that until it takes additional discovery: "The other thing that you have to keep in mind is I can't force the City to give you something that the City says it does not have. So if the City says, we don't have an identified set of medically unnecessary claims, then that's the answer." *(ECF 588-2 at 41; see also, id. at 43)*. Because nothing is being withheld, there is no discovery response to compel.

Defendants' Motion is really a request for two things: (1) reconsideration of what was previously decided on May 8, 2017; and (2) an order barring the parties from beginning discovery in full. With regard to the latter, Defendants are asking the Court to issue an order to prohibit the City from taking *any* depositions until it first makes a detailed showing of: (1) each specific opioid-related claim that is improper as medically unnecessary (that is, a line-by-line itemization of which of the 250,000 claims constitute the injury and damages that the City has suffered); (2) each prescriber who is connected to that opioid; and (3) each specific misrepresentation from a Defendant that led to each of those prescriptions and claims. Thus, Defendants' Motion really seeks an order requiring the City to prove its case through individualized, claim-by-claim evidence, and to lay out those claims before the City can take any depositions.

The Motion is baseless. Specifically:

- It ignores the Court's directions on this topic, which were provided during a lengthy discovery conference on May 8, 2017 *(see ECF 588-2)*. Indeed, it is as if Defendants expect the Court to look at this issue as if it has never considered it before. However, on May 8th, the Court spoke to the issue directly, rejecting the very relief now sought in Defendants' Motion to Compel.

- The Motion seeks to impose an unprecedented entry-fee upon the City; that is, Defendants are asking the Court to require the City to make an itemized proffer on the merits (on injury and damages) *as a prerequisite* to taking any deposition that might inform their claims. The Federal Rules of Civil Procedure do not require a plaintiff to prove the merits of its case before the plaintiff can take discovery. Under the Defendants' proposal, the City then would have to seek the Court's permission

before supplementing its previous disclosure listing every false claim and demonstrate that additional claims were identified only as a result of its depositions.

- The Motion includes a six-phase discovery proposal that will not expedite the discovery process or make it more efficient, but instead, will unduly multiply the proceedings and add complexity and delay to this lawsuit. Defendants ignore the Court's request for proposals designed to *streamline* discovery.

As an alternative to Defendants' Motion, the City has offered a proposed discovery schedule, submitted here for the Court to consider (see Part 4, below). In contrast to what Defendants suggest, the City's scheduling proposal would streamline discovery in a common sense approach that adequately addresses Defendants' purported concerns. It is a fair and sensible approach, intended to keep this case moving.

1. **The City Is Not Now Withholding Anything, And There Is No Dispute That May Be Properly Raised In A Motion To Compel.**

To consider whether the Court should compel the City to produce anything, it is helpful to focus on what production the Motion is attempting to compel. The answer is nothing. The essence of the Motion is to prevent depositions until the City can produce what this Court recognized it does not yet have: "All I'm saying is we need to wait for that list when the City – when the City is able to go through discovery. That's all I'm saying. I can't force the City to do something it says it cannot do. It's simple." *(ECF 588-2 at 43; see also id. at 41).*

Moreover, the Motion makes no sense in light of what the City has already provided. The City has pled a 332-page complaint, which has detailed allegations regarding Defendants' unlawful conduct *(ECF 478).* That pleading also gives some examples of how Defendants' scheme has injured the City. Given the level of detail in the City's well-pled allegations, Defendants cannot claim that they are in the dark regarding the claims against them.

3

In addition, the City has promised that it will produce a set of data that will detail all of its health insurance claims involving opioids. The City believes that dataset will include approximately 250,000 claims, involving nearly 35,000 different prescribers *(see ECF 588-2 at 26-27)*. When Defendants have that universe of claims data in hand, Defendants can run their own analysis to identify which ones were caused by Defendants' deceptive conduct and are medically unnecessary, just like the City can run such an analysis. Once the universe of claims data is exchanged, the parties (and their experts) will be on equal footing to evaluate the City's claims regarding medical necessity.

The City then should be allowed to take party and third-party depositions. For example, it will be essential to depose Defendant sales employees to determine what was said to prescribers; whether the marketing messages were centrally directed; how many times and in what forms the messages were repeated; and for what periods of time the prescribers were exposed to such marketing. As to third parties that also disseminated messages about opioids, the City will use depositions to determine the extent of Defendants' participation and control over such activities.

With the claims data and what is yielded from document and deposition discovery, the City will then be in a position to make a disclosure regarding the claims that the City believes are improper as medically unnecessary (see Part 4, below). As the Court stated, fact discovery will not close before this point: "So that's why I'm proposing that at some point before the – before the fact discovery ends that the City is required to do the expert analysis so that the City can identify the medically unnecessary and fraudulent claims that the City will rest on in order to prove liability and damages in this case." *(ECF 588-2 at 36)*. Therefore, Defendants will have the opportunity to take the depositions they actually need in regards to this disclosure. But until the City has the discovery *it* needs, no such disclosure of medically unnecessary claims can be

4

made. Hence, this is not a dispute about whether the City is withholding something, or whether the City should be compelled to produce something now. There is no ripe or proper motion to compel on this issue, at least not in any traditional sense.

## 2. Defendants' Motion Should Be Denied Because It Rehashes Arguments That The Court Already Considered And Rejected At The May 8th Discovery Conference.

In this Motion, Defendants suggest a Six-Phase Discovery Proposal, which would work as follows: (1) the parties would complete party document discovery and begin third-party document discovery other than prescribers and patients; (2) then the City would disclose all "medically unnecessary claims and alleged misrepresentations that led to those claims"; (3) then the parties would begin party depositions, continue third-party document discovery, and begin third party depositions; (4) then the City would have a chance to supplement its disclosure, presumably after seeking leave of the Court, but only if the City could demonstrate some newly-discovered information that warranted such a supplement; (5) then Defendants could take more, potentially duplicative, depositions; and (6) then fact discovery would close *(ECF 588 at 5)*.

In arguing for their six-phase discovery proposal, Defendants assert that they must have the City's definitive list of each and every medically unnecessary claim before Defendants can participate in (or permit) any deposition *(ECF 588 at 7)*; that statistical or sampling method is impermissible "as a matter of law" for this case *(ECF 588 at 7-8)*; and that Defendants will need to take discovery of doctors and patients for the claims that are eventually itemized *(ECF 588 at 8-9)*. Defendants raised these arguments in connection with the May 8th Discovery Conference, both in writing *(ECF 557 at 4-12)* and during oral argument *(ECF 588-2 at 11-24, 31-33, 33-35, 36-38, 42, 44-47)*. At that conference, the Court rejected Defendants' request that the City must provide a list of medically unnecessary claims before depositions can begin *(ECF 588-2 at 35,*

*36, 38, 40-42, 46)*. The Court stated that the City could take depositions before making a more detailed disclosure on medically unnecessary claims, but the Court also stated that the City's disclosure should happen sometime before the close of fact discovery *(ECF 588-2 at 35-42, 43)*.

> I don't know what you mean by early on because I guess what I'm contemplating is after direct – after direct discovery, meaning the City gets an opportunity to review discovery responses, to depose witnesses, so it would be direct discovery – what I mean by that is discovery among the parties -- then you have the expert analysis, identification of the medically unnecessary and fraudulent claims, then you have third-party discovery.

*(ECF 588-2 at 38)*.

But even after the May 8th Conference the Defendants have continued to push their same position. The six-phase proposal is the same proposal that Defendants made to the City on June 13, 2017. In a joint meet-and-confer on June 14, 2017, the City explained to Defendants why it could not accept their proposal, stating that producing a list of medically unnecessary claims was inconsistent with how the City was going to prove its claims, that it could not agree to deferring depositions until after its disclosure regarding medically unnecessary claims, and that there was no reason to delay third party document discovery and depositions, which were necessary for the City to flesh out how Defendants participated in or controlled various misrepresentations by third party front groups and Key Opinion Leaders, and how widely those misrepresentations were disseminated to consumers and prescribers in the City of Chicago. The City indicated that it regarded Defendants' proposal as inconsistent with this Court's direction, and given such fundamental disagreement, initially declined to offer a counter-proposal. In the interest of trying to at least narrow the issues, the City offered a counter-proposal on July 18, 2017. Defendants rejected the City's counter-proposal as "fundamentally unfair." Email from Gretchen Wolf, Counsel for Purdue, to Elizabeth Smith, Counsel for the City (July 19, 2017). The City

6

responded that it was difficult to consider Defendants' position without an explanation of why the City's counter-proposal was "fundamentally unfair," email from Elizabeth Smith, Counsel for the City, to Gretchen Wolf, Counsel for Purdue (July 19, 2017), but Defendants have offered no such explanation.

There is nothing new in the Defendants' proposal. The Court has already worked through this issue in full. There is no valid reason now for the Court to adopt Defendants' view that the City's disclosure must happen before any depositions.

### 3. Defendants' Six-Phase Discovery Proposal Is Unfair, Unsupported By The Rules, And Would Not Fit The Needs Of This Case.

As discussed above (in Part 1), Defendants are aware of the accusations against them. Also, the City has, and will be, making disclosures of the information regarding the false, medically unnecessary claims when the City can do so, which will be after direct discovery but before fact discovery closes.

In their Motion, Defendants argue (again) that the disclosure must be a complete and itemized list of each claim that is medically unnecessary, arguing that the City cannot meet its burden by disclosing a methodology or a sample *(ECF 588 at 7-8)*. This Court has said it is not inclined to decide the eventual proof requirements that will apply at trial when deciding the proper scope and sequence of discovery *(ECF 588-2 at 42, 43)*. The Court should remain wary of Defendants' attempt to inject liability-related issues into this discovery matter, which Defendants acknowledge is not appropriate (even as they go on to argue them) *(ECF 588 at 9)*. The Court has already suggested that the City may be able to rely on a methodology or disclose a subset or sample of claims *(ECF 588-2 at 17-18, 42)*, and the cases in this Circuit also support the use of sampling for proving the impact of unlawful conduct. *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (stating defendant's argument that the district judge had to address each of the

claim forms was "a formula for paralysis. Statistical analysis should suffice."); *Illinois Physicians Union v. Miller*, 675 F.2d 151, 155 (7th Cir. 1982) (approving use of statistical sampling, which "has been recognized as a valid basis for findings of fact in the context of Medicaid reimbursement."); *see also Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) ("In many cases, a representative sample is the only practicable means to collect and present relevant data establishing a defendant's liability."). (See also *ECF 558 at 12-15*, in which the City also discussed at length the support for using sampling and other methods of proof). For present purposes, there is ample support for the City's plan to disclose a sample, subset or other methodology regarding which claims are medically unnecessary. Defendants' Motion never comes to grips with the applicable Seventh Circuit authority.

Defendants' six-phase discovery proposal rests on an unspoken premise—that before a plaintiff may take depositions, that plaintiff must itemize every injury, must measure all of its damages, and must prove causation. No rule supports such a proffer requirement, and no case supports it either. Quite the contrary, often a plaintiff cannot itemize every injury (or measure damages or provide evidence on each part of causation) when the case is still in the early stages. *See, e.g., Caudill v. Keller Williams Realty Inc.*, 2013 U.S. Dist. LEXIS 156178 at *9 (N.D. Ill. Oct. 31, 2013) (plaintiffs pled enough facts to establish actual loss, even without exact amounts or itemization); *Worix v. MedAssets Inc.*, 869 F. Supp. 2d 893, 900 (N.D. Ill. 2012) (same); and *In re Aqua Dots Products Liab. Litig.*, 270 F.R.D. 322, 326 (N.D. Ill. 2010) (plaintiff need not provide evidence on the merits as a prerequisite for serving proper discovery requests).

In their Motion, Defendants assert that they need the City's disclosure on medically unnecessary claims before they can take certain depositions, but they do not claim that the disclosure is necessary for all the depositions they plan to take. And they never explain why the

8

information must be disclosed before the City will be allowed to take any depositions. This is particularly unfair where the City has a need for depositions before it can make the disclosure at issue. As the City has previously explained, depositions are essential to the City's ability to identify the number and nature of medically unnecessary claims. For example, the City will need to depose Defendants' sales representatives or other employees regarding what they told prescribers, when and for how long their messages to prescribers were disseminated, and whether such messages were centrally directed. The City also will need to depose third parties, such as front groups and Defendants' Key Opinion Leaders, regarding the information they disseminated and the extent of Defendants' control over their messaging. There is no reason that these important depositions should be delayed, nor is it fair to require the City to disclose *all* medically unnecessary claims before it can take depositions and then meet another evidentiary hurdle before supplementing those disclosures after it conducts depositions relevant to identifying those claims. If a Key Opinion Leader, for example, reveals that he or she made a deceptive presentation to a conference attended by Chicago prescribers, the City would be required to go back and re-work its disclosure to add every additional claim by prescribers at that conference, and additional misrepresentations to each of the claims already identified; there is no justification to require the City to undertake this effort once—let alone twice. Furthermore, under the City's plan discussed below, Defendants will have an opportunity to conduct depositions related to the City's disclosure regarding medically unnecessary claims after that disclosure is made.

      Defendants argue that they need a complete list of medically unnecessary claims prior to the start of depositions so that they have enough time to depose many (or all) of the prescribers and patients involved with those claims *(ECF 588 at 7-9)*. However, the Supreme Court has

recognized that there is a privacy interest in the confidentiality of medical records, which may be weighed against the interest in requiring disclosure. *See Whalen v. Roe*, 429 U.S. 589, 605-06 (1977). In the Seventh Circuit and elsewhere, courts have prohibited party discovery and quashed third-party subpoenas for medical information where the probative value is outweighed by the potential loss of privacy. *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004) (affirming quash of third-party subpoenas to patients); Plaintiff the State of South Carolina's Notice of Motion and Motion for a the Entry of a Protective Order in *South Carolina ex. rel. McMaster v. Janssen Pharmaceutica, Inc.*, No. 2007-CP-42-1438 (S.C. Ct. Common Pleas March 24, 2008) *(Exh. A)*; Discovery Master Order, *Alaska v. Eli Lilly & Co.*, 3AN-06-05630 CI (Alaska Super. Ct. Sept. 24, 2007) (prohibiting discovery of individual patient records in drug marketing case) *(Exh. B)*.

As with the present case, the *Janssen* and *Eli Lilly* cases were government actions against drug companies for deceptive marketing practices that led to medically unnecessary uses of their drugs. And as with the present case, the claims of the states in *Janssen* and *Eli Lilly* stood alone—the states, like the City, did not seek individual damages for injuries to patients, and did not rely on evidence regarding specific patients' medical histories, separate from the information provided to defendants in the governments' claims databases. The defendants in these cases sought discovery responses that would have identified the individual patients and provided more detail regarding their individual medical histories. The states argued that: (a) such information was irrelevant to the claims and that discovery of patient information was disproportionate to the harm that would be caused to the non-parties; (b) they intended to support their claims with statistical modeling methodologies, not through claim-by-claim proof; and (c) any particular

10

benefit that the drug may have had to any particular patient was largely beside the point.[1] Additionally, South Carolina argued that under state law, the medical information at issue was to be afforded special protections and could create particular pitfalls for wrongful disclosure, adding to the cost, burden and harm that would be caused by obtaining the data. In the *Eli Lilly* case, the discovery master agreed with the government, issuing an order that denied the defendant's motion to compel discovery of the identities and medical histories of the non-party individual patients. In the *Janssen* case, Janssen dropped its request for individual patient information. Order, *South Carolina ex. rel. McMaster v. Janssen Pharmaceutica, Inc.*, No. 2007-CP-42-1438 (S.C. Ct. Common Pleas June 13, 2008) *(Exh. C).*

The same result should be reached here, especially since the medical records are particularly sensitive. The records at issue here involve controlled substances abuse. Therefore, they are subject to heightened protection under federal regulations. 42 C.F.R. Part 2. Furthermore, Illinois has enacted a physician-patient privilege that protects such medical information and expresses the State's strong public policy. 735 ILCS § 5/8-802. While discovery of patient records is not yet ripe, and the City is not now attempting to fully brief it, it is relevant to the extent that Defendants claim that it justifies their proposed discovery schedule. The deposition campaign Defendants seek to accommodate would require a staggering time commitment, far out of proportion to the needs of the case or the probative value of any evidence

---

[1] In *Eli Lilly*, the discovery master noted that discovery of individual medical records would cause significant delay, with an estimated 700 patients at issue, and that in light of that burden, Lilly would have had to make a strong showing that it was likely that the discovery would produce important evidence undermining the accuracy of the State's database. *See Exh. B.*

Here, the City's claims records involve thousands of patients. Producing individual records would require thousands of hours and multiple levels of review to deal with all the confidentiality and privilege issues involved. As in *Eli Lilly*, Defendants here cannot justify the burden of gathering and processing such records.

11

they could offer. Perhaps recognizing the impracticality of such an endeavor, the Court asked Defendants if they intended to depose all of the doctors involved with medically unnecessary claims. In response, Defendants said maybe they would, but did not answer more directly *(ECF 588-2 at 16-21)*. If Defendants are seriously contemplating hundreds of third-party depositions, they simply do not have an appropriate or practical plan for discovery in this case.

Defendants' six-phase discovery proposal is cumbersome and inefficient and would make this case hopelessly complex and slow-moving. Maybe that is Defendants' point. It requires the City to disclose fraudulent or medically unnecessary claims before the City has the deposition information it needs to do so, forces the City to generate and conform to a proof methodology that is inconsistent with its plan for trial, and enables Defendants to take duplicative depositions.

To make matters worse, the Motion does not suggest any deadlines or time periods for each of their six phases. The Motion surely does not meet the Court's request, which was for proposals to "streamline" discovery and to make discovery "more effective" *(ECF 588-2 at 50)*. In short, Defendants' six-phase discovery proposal is not designed to keep this case moving forward sensibly or fairly.

### 4. The City's Proposed Discovery Schedule Is A Sensible And Efficient Way To Streamline Discovery In This Case.

Because the Court asked for proposals that would streamline and facilitate discovery *(ECF 588-2 at 50)*, the City is proposing the following discovery schedule for this case:

a. Third party written discovery shall begin immediately. Written party discovery shall be complete by **January 31, 2018**.

b. Depositions of parties and certain third parties identified above may begin on **December 1, 2017** and must be complete by **April 30, 2018**. At this stage, because Defendants are waiting on relevant depositions until after the City's disclosure of medically unnecessary claims, depositions will not include City employees or vendors involved in processing health benefits or workers

compensation claims. Those employees and vendors are likely within the net of depositions Defendants will want after the medically unnecessary claim disclosure, and this restriction will prevent unwarranted duplication.

c. On or before **June 30, 2018** the City shall disclose a sample or subset of false/medically unnecessary claims, or otherwise identify those claims or its methodology for the identification of false/medically unnecessary claims.

d. Between **July 2, 2018** and **October 26, 2018**, the parties may conduct additional written discovery related to the City's identification of claims or its claims methodology and depositions of City employees and vendors involved in claims processing.

e. Fact discovery closes on **October 29, 2018**.

f. The City shall disclose its experts pursuant to FRCP 26 (a)(2) on or before **December 3, 2018.**

g. Defendants shall disclose their experts pursuant to FRCP 26(a)(2) on or before **January 7, 2018.**

h. Expert depositions shall begin after Defendants' expert disclosures are served and shall be complete by **March 4, 2019**.

*(See also ECF 588-4).* The City's scheduling proposal takes into account the Court's instruction that the City should make a disclosure regarding medical necessity before the close of fact discovery *(ECF 588-2 at 35-36, 38, 41-42)*. The City's scheduling proposal also suggests firm deadlines to keep discovery moving and to encourage all of the parties to complete the needed pretrial work in a timely fashion. And the City's scheduling proposal is a better alternative than Defendants' cumbersome six-phase discovery proposal. Accordingly, the City requests that the Court enter a Scheduling Order based on the City's scheduling proposal, as set forth above.

13

## **Conclusion**

For the foregoing reasons, the Court should deny Defendants' Motion to Compel *(ECF 588)*.

DATED: August 2, 2017          Respectfully submitted,

/s/ Thomas A. Doyle
_____

Fiona A. Burke
Thomas P. McNulty
City of Chicago, Department of Law
30 N. LaSalle St., Suite 1240
Chicago, IL 60602
fiona.burke@cityofchicago.org
thomas.mcnulty@cityofchicago.org
Phone: (312) 744-6929

MOTLEY RICE LLC
Linda Singer
Elizabeth Smith
Jeffrey Nelson
401 9th Street NW, Suite 1001
Washington, DC 20005
lsinger@motleyrice.com
Phone: (202) 386-5626

WEXLER WALLACE LLP
Kenneth A. Wexler
Thomas A. Doyle
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
kaw@wexlerwallace.com
Phone: (312) 346-2222

*Attorneys for Plaintiff City of Chicago*

## **CERTIFICATE OF SERVICE**

I certify that, on August 2, 2017, I caused a copy of the foregoing document to be served on Counsel for Defendants via the Court's ECF system.

/s/ Thomas A. Doyle