## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CITY OF CHICAGO, a municipal corporation,

        Plaintiff,

    v.

PURDUE PHARMA L.P.; PURDUE PHARMA
INC.; THE PURDUE FREDERICK COMPANY,
INC.; TEVA PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; JOHNSON & JOHNSON;
JANSSEN PHARMACEUTICALS, INC.;
ORTHOMCNEIL-JANSSEN
PHARMACEUTICALS, INC. n/k/a JANSSEN
PHARMACEUTICALS, INC.; JANSSEN
PHARMACEUTICA, INC. n/k/a
JANSSEN PHARMACEUTICALS, INC.; ENDO
HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC.; ALLERGAN PLC
f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a
WATSON PHARMACEUTICALS, INC.;
WATSON LABORATORIES, INC.; ACTAVIS
LLC; and ACTAVIS PHARMA, INC. f/k/a
WATSON PHARMA, INC.,

        Defendants.

Case No. 14-cv-04361

Honorable Jorge L. Alonso

Magistrate Judge Young B. Kim

### PLAINTIFF CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS
### MOTION TO COMPEL REGARDING TEMPORAL SCOPE OF DISCOVERY

With the agreement reached between the City and Endo, *see* ECF No. 589, whereby Endo

largely agreed to produce documents dating back to 2005, or one year before its drug, Opana ER,

was launched, and Defendants' agreement to produce documents dating back a year pre-launch

for some of their more recent drugs, this dispute now involves the discovery time frame for five

drugs manufactured by four Defendants: Duragesic (Janssen); OxyContin (Purdue); Actiq

(Teva); Fentora (Teva); and Kadian (Actavis).  The City merely seeks to ensure that the same

discovery rule, to which some Defendants have already agreed with respect to some of the drugs, is consistent across-the-board because, as the agreements to date reflect, that discovery is both relevant and proportional. The City has made a significant concession by cutting discovery off at 2004 with the limited exception of (1) pre-2004 launch plans and related communications; and (2) marketing materials and communications that relate to the manner in which the drugs were marketed post-1/1/2004. The City is not seeking decades' worth of documents, as Defendants argue; instead, the City is seeking the same thing for the older drugs that some defendants have already agreed to for post-1/1/2004 drugs, namely, the launch plans and communications and any marketing plans that shed light on the marketing efforts post-1/1/2004. The fact that Defendants' alleged misconduct went on longer for certain older drugs is a reason to allow discovery going back further, and not an excuse for Defendants to avoid their discovery obligations.

Defendants, on the other hand, seek to tie discovery to what they claim, but which the City strongly disputes, is the longest statute of limitations applicable to the City's case—six years—or back to 2008. But statutes of limitations do not govern discovery, and, in any event, Defendants have utterly failed to demonstrate that a six year statute of limitations applies. Likewise, each Defendant raises certain additional arguments specific to their drug or drugs, none of which have merit here on a discovery motion.

The following table summarizes the parties' latest positions with regard to the discovery period that should apply to the five drugs at issue in the City's motion.

| Drug and Manufacturer | Approval or Acquisition Date | City's Proposed Discovery Start | Defendant's Proposed Start |
|---|---|---|---|
| Duragesic (Janssen) | 8/7/1990 | 1/1/2004 Plus* | Defer to request-specific negotiations |
| OxyContin (Purdue) | 12/12/1995 | 1/1/2004 Plus* | 11/1/2008 w/ earlier documents as Purdue deems appropriate |
| Actiq (Teva) | 10/11/2000 | 1/1/2004 Plus* | 1/2006 |
| Fentora (Teva) | 9/25/2006 | 9/25/2005 | 1/2006 |
| Kadian (Actavis) | 12/30/2008 | 12/30/2007 | 1/2009 |

## I.    Defendants Are Wrong that the Statute of Limitations Cuts Off Relevant Discovery.

Defendants argue that the City's proposed discovery time period would capture irrelevant material because it falls outside of the applicable statutes of limitations. Defendants seek unilaterally to impose six years as the longest statute of limitations that may be applicable to the City's claims, and by extension, to the discovery time period.  Defs.' Opp'n. to Mot. to Compel ("Defs.' Opp'n") at 13, ECF No. 591.  This argument fails for at least three reasons.

First, statutes of limitations do not govern discovery disputes—the primary question is relevance, and the early conduct here is relevant to the more recent violations.  As this Court previously has stated, statutes of limitations govern liability, not discovery.  "Statute of limitations deals with claims that are viable.  It doesn't deal with discovery.  Right?"  Hr'g Tr. at 86-87, May 8, 2017 ("May 8 Tr.").  In response, the Defendants agreed with the Court, affirming that the statute of limitations does not determine the scope of discovery.  *Id.* at 87.  But even assuming the application of a statute of limitations for liability purposes, discovery can properly target events before that liability period.  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 357 n.5 (N.D. Ill. 2005) ("[W]here the information is otherwise relevant, the statute of limitations is not a basis for barring discovery."); *Beesley v. Int'l Paper Co.*, No. 06-703-DRH, 2008 WL 207537, at *1 (S.D. Ill. Jan. 24, 2008).  In fact, some courts recognize a presumptive five-year

discovery period that precedes the liability period. *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (recognizing a "five-year rule"); *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000).

Here, Defendants claim that there is an applicable statute of limitation that establishes a liability period starting in 2008. Even if this Court were to hold that the liability period starts in 2008 due to a statute of limitations, the City should still be entitled to obtain discovery over relevant material that precedes that date. With a few targeted exceptions for early launch plans and marketing development, the relevance of which cannot credibly be debated, the City's proposal would capture material starting in 2004, less than the presumptive five-year discovery period preceding the liability period.

Second, even if statutes of limitations were to apply to discovery disputes, it would have no application in this case because the City has alleged that the Defendants fraudulently concealed their violations. Under the fraudulent concealment doctrine, the statute of limitations is tolled when the defendant has used fraudulent concealment to prevent the plaintiff from discovering its violations. *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 36, 46 N.E.3d 706, 716 (Ill. 2015). In a discovery dispute such as this, the Court should consider the allegations to be true, and in this case, the City has pled fraudulent concealment. City's Third Amended Complaint ("TAC") ¶¶ 743-47, ECF No. 478. In a footnote, Defendants state in conclusory fashion that the City's complaint "is insufficient to allege fraudulent concealment." Defs.' Opp'n. at 15 n.8. The Defendants had an opportunity to raise the statute of limitations in their motions to dismiss, but chose not to. In any case, because fraudulent concealment is a factual issue, the City is entitled to discovery to flesh out those allegations.

4

Third, even if the statutes of limitations were to apply generally, despite the Defendants' fraudulent concealment, the City would be exempt from its application for those counts that allege public harm, which would be sufficient to support the City's discovery requests. Where the government brings an action in its public capacity, the otherwise applicable statute of limitations does not apply. *Village of DePue, Illinois v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 781 (C.D. Ill. 2010). In this case, while some counts do seek recovery for economic losses incurred by the City as a healthcare plan or workers' compensation plan administrator, other counts are civil enforcement actions, brought purely pursuant to the City's police powers and seeking remedies such as civil penalties only in response to public harm. For those counts, the statute of limitations does not apply, and because each count is supported generally by the same wrongful conduct, these counts alone are sufficient to support the requested discovery.[1]

## II.     The City's Proposed Discovery Time Period is Proportional.

Defendants do not dispute that "the *actual* marketing communications made in the Chicago area occurring during any actionable time period" are "salient." Defs.' Opp'n. at 16. To the extent the actual marketing communications are salient, so must be the product's launch plans and the defendants' marketing strategy that informed those marketing communications, as this Court previously stated:

> I mean, [discovery] should be more tailored to each product's launch because surely these pharma companies would have had marketing strategy in place before launching the product.

May 8 Tr. at 81.

---

[1] Defendants also attempt to establish an artificially short liability period by claiming that the earliest substantive ordinance at issue in this case was enacted in 2008. Defs.' Opp'n. at 2, 7, 11, 13, 22, 28, 33. But even if the enactment date set the start date for discovery, which it does not, the City's False Claims Ordinance was enacted in 2005, and the City first enacted its Consumer Fraud Ordinance in 1990. *See* City's Mot. to Compel at 9 n.5, ECF No. 586.

5

What I like about Janssen's proposal is that it allows for that room for the City to find out what Janssen did before a product launched, whether it be mid-2009 or 2005 or 2006, whatever the case may be.

I'm not even sure whether fraudulent concealment comes into my analysis of what scope of discovery should be allowed here because we're talking about how pharmaceutical companies marketed these particular products. The best answer perhaps lies in that particular launch plan that the companies came up with before a product is introduced to the market. And so that's why I like Janssen's proposal.

May 8 Tr. at 86.

Defendants next argue that the "court must apply the standards in an even-handed manner." Defs.' Opp'n at 21. But that is precisely what the City's proposal seeks to do by limiting discovery of pre-2004 material to launch plans and marketing plans and strategy that informed or reflected Defendants' marketing communications post-2004. The earlier enacted drugs are in fact getting greater discovery concessions than the later enacted drugs. For drugs approved or acquired after 2004, all marketing materials and plans during the lifespan of that drug are requested. For the earlier approved drugs, the City could request all marketing documents during the entire lifespan of those drugs. But it has not done so. With limited exceptions of targeted launch plans and marketing materials that are inherently relevant, the City largely has cut off discovery at a decade, which Defendants' own case suggests is proportional. *See Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 WL 467677, at *5-7 (N.D. Ill. Feb. 3, 2017) (approving 10-year discovery timeframe). That some Defendants engaged in alleged misconduct for a longer period of time does not, and should not, support an argument that it is not proportional or unduly burdensome to require the company to produce documents that span more time. *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (15-year liability period means that 15-year discovery period is not burdensome).

Defendants argue that discovery in a case about social harms of opioids should be limited because of what Defendants consider to be their social benefits. Of course, those "social

benefits" (if any) are an issue for the merits, and it can only be resolved after discovery has been completed. In supporting their argument, Defendants cite the 2013 U.S. Food and Drug Administration ("FDA") Response to the Physicians for Responsible Opioid Prescribing ("PROP") Citizens Petition.[2] Defs.' Opp'n. at 19. The City, however, discussed the FDA response to the Citizens' Petition extensively in its TAC, including the fact the FDA described opioids as carrying "grave risks," including "addiction, overdose, and even death." TAC ¶ 68. Similarly, the City included the fact that the FDA noted the purported "benefits" of opioids for chronic, non-cancer pain have not been demonstrated. TAC ¶¶ 4; *see also* TAC ¶¶ 15 (citing U.S. Centers for Disease Control and Prevention ("CDC") report on *Examining the Growing Problems of Prescription Drug and Heroin Abuse* (Apr. 29, 2014) as identifying an opioid-induced "public health epidemic"); 685 (discussing the recommended limitations in the *CDC Guideline for Prescribing Opioids for Chronic Pain* (Mar. 18, 2016)).

As the City has alleged in its TAC, the benefits of opioids beyond ninety days are not proven, and the harms continue to grow. TAC ¶¶ 70-78, 720-725, 733-739. The fact that the "opioid medications at issue are rigorously regulated by the FDA", Defs.' Opp'n at 20, is not a reason to limit discovery. FDA regulation does not defeat the City's claims; does not eliminate

---

[2] While the Defendants argue otherwise, the Citizens Petition did not seek to "prohibit" the use of opioids for chronic, non-cancer pain, but rather to add a maximum duration to the approved drug label. *See* FDA Letter of Sept. 10, 2013, at 1, attached to Defs.' Opp'n, Ex. F, ECF No. 591-7. The FDA does not have the power to prevent a prescriber from prescribing a drug off-label. Furthermore, Defendants quote a passage from the response: "[w]hen prescribed and used properly, opioids can effectively manage pain and alleviate suffering. Chronic pain is a serious and growing health problem[.]" Defs.' Opp'n at 19 (quoting FDA Letter of Sept. 10, 2013, at 2, attached to Defs.' Opp'n, Ex. F.). It does not follow that chronic *use* of opioids is the proper use Defendants claim the FDA described. To the contrary, one outcome of the PROP petition was that the FDA tightened the label to add language that extended-release opioids are indicated "only when alternative treatments are inadequate," and only where pain is "severe enough to require daily, around-the-clock, long-term opioid treatment[.]" FDA Letter of Sept. 10, 2013, at 8.

the societal harm caused by Defendants' deceptive marketing; and should not preclude the City's access in discovery to the information it needs to prove its case.

## III. The Defendant-Specific Arguments Are Not Persuasive.

Defendants make several arguments that each relate to a specific Defendant. For the most part, these arguments belong in a motion to dismiss, not in the briefing on a motion to compel. They relate to liability issues, yet have not been decided by Judge Alonso. Therefore, none of these defendant-specific arguments should prevent the Court from adopting the City's proposal, which is based on the City's claims.

### A. Purdue – OxyContin

Purdue makes two additional arguments why the City's proposed discovery is inconsistent with Rule 26(b)(1). First, Purdue claims that it has already produced marketing materials related to the launch of OxyContin as part of its New Drug Application ("NDA") in 1995. Defs.' Opp'n at 22-24. Information submitted to the FDA prior to its approving OxyContin is responsive, but not sufficient. OxyContin's NDA file from 1995 could not possibly include Purdue's internal documents regarding post-2004 marketing initiatives. In addition, the City has requested not just the primary launch and marketing plans, but also communications *relating to* the product's launch plan and subsequent marketing plans—such as emails, call scripts, and training documents—none of which are included with the NDA.

Second, Purdue argues that its 2007 Consent Judgment with the State of Illinois released the City's claims against it prior to May 8, 2007. Defs.' Opp'n at 23, 27-28. Although this discovery dispute is not the proper forum for such arguments, the City notes that, even assuming for sake of argument that the State could release the City's claims, the release in the referenced Consent Judgment is clear and specific as to the claims that it covers. The State of Illinois

Consent Judgment releases only those claims that the State could have asserted under the State Consumer Protection Law, defined as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 et seq. Consent Judgment ¶¶ 1(M), 35, attached to Defs.' Opp'n, Hoff Decl. Ex. 6, ECF No. 591-14. On its face, that judgment does not apply to any claims brought under any provision of the Chicago Municipal Code, which provides the basis, at least in part, for Counts I-VII. Furthermore, even assuming that the Consent Judgment released part of the City's ILCS claim in Count II, that would not bar such claims after May 8, 2007 or justify precluding discovery prior to that date that would relate to marketing after mid-2007. Finally, even if the Consent Judgment somehow released the City's claims under its municipal Consumer Fraud Ordinance,[3] that would pertain only to Counts I and II of the City's ten-count TAC and, then, only to pre-May 8, 2007 conduct. For all of these reasons, the Purdue Consent Judgment with the State of Illinois is not determinative of the scope of discovery in this litigation.

### B. Janssen – Duragesic

Janssen argues that because the City's TAC does not allege any improper marketing of Duragesic while it was on patent, there is no basis to seek discovery of its launch plan or the marketing-related materials requested by the City. Def.'s Opp'n at 29. But Janssen's argument fails to recognize that the City's TAC contains numerous allegations that each Defendant—including Janssen—improperly marketed its opioid products, often as unbranded activities that

---

[3] Purdue does not explain how a release of claims under the Illinois Consumer Fraud and Deceptive Business Practices Act could release claims under any Chicago municipal ordinance in general, or both the Chicago Consumer Fraud Ordinance and the Chicago False Claims Ordinance in particular. *See Gallagher v. Lenart*, 226 Ill. 2d 208, 229-43, 847 N.E.2d 43, 56-64 (Ill. 2007) (holding that a specific release did not waive other claim under same statute associated with same event).

indirectly benefitted their brands, and that such allegations pertain to the products' entire commercial life. TAC ¶¶ 127 ("Through unbranded materials, Defendants presented information and instructions concerning opioids generally that were contrary to, or at best, inconsistent with information and instructions listed on Defendants' branded marketing materials and drug labels . . . ."); 516 ("Janssen also engaged in direct, unbranded marketing."); 517 (allegations regarding Janssen's website Prescriberesponsibly.com); 518-44 (allegations regarding Janssen's activities with key opinion leaders and front groups). Janssen should respond to the scope of discovery as bounded by the City's claims. If Janssen did not market Duragesic during some part of the applicable time period, then Janssen will have few documents to provide for that time period, and the burden will be minimal.

### C. Teva – Actiq and Fentora

Like Janssen, Teva makes arguments about the sufficiency of the City's Complaint, which have nothing to do with the scope of discovery. The City seeks discovery to flesh out the specifics of Teva's illegal marketing. The individual examples provided in the City's TAC were just that—examples—and they should not be used to determine the temporal bounds of discovery. Also, if Teva has not marketed a product for the relevant time period, then the burden of certifying the absence of responsive documents will be minimal.

For Fentora, the City has requested a discovery time period starting in September 2005, a full year before the product's approval date. Teva has rejected that proposal, offering instead to produce documents starting from January 2006—four months later. The January date seems to have no rational connection to any Fentora milestone, and the burden of adding an additional four months to this product's discovery time frame cannot be significant. Teva's refusal to

10

expand the scope into these few months does nothing but suggest the importance of those documents.

**D.     Actavis – Kadian**

Actavis notes that it acquired the rights to Kadian on December 30, 2008 and began marketing Kadian in 2009.  Defs.' Opp'n. at 37.  Actavis then declares: "Anything that may have occurred prior to the acquisition date is not relevant to the matters in dispute." *Id.*  But the City is only seeking pre-acquisition planning and marketing documents because of their relevance to post-acquisition activities.  Plaintiffs generally are entitled to discovery for a reasonable period of time predating the earliest possible date of the actionable wrong.  *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000) (collecting cases).  Therefore, the City's proposed timeframe for Kadian is reasonable and should be adopted.

## CONCLUSION

A discovery period that starts in 2004, with the addition of certain limited older materials for which relevance and proportionality cannot be denied, is more than reasonable.  Therefore, this Court should issue an Order compelling each of the four Defendants to answer the City's Interrogatories and produce documents in accordance with the City's proposal as set forth in its Motion to Compel.

/ / / / /

Dated: August 9, 2017                     Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel, City of Chicago

BY: _____/s/_____
          Jeffrey Nelson (admitted pro hac vice)
          Linda Singer (admitted pro hac vice)
          Elizabeth Smith (admitted pro hac vice)
          MOTLEY RICE LLC
          401 9th St. NW, Suite 1001
          Washington, DC 20004
          jnelson@motleyrice.com
          lsinger@motleyrice.com
          esmith@motleyrice.com
          Telephone: (202) 232-5504

          Thomas P. McNulty
          Fiona A. Burke
          City of Chicago, Department of Law
          30 N. LaSalle St., Suite 1240
          Chicago, IL 60602
          thomas.mcnulty@cityofchicago.org
          fiona.burke@cityofchicago.org
          Telephone: (312) 744-6939

          Kenneth A. Wexler
          Thomas A. Doyle
          Bryan D. Pasciak
          WEXLER WALLACE LLP
          55 W. Monroe Street, Suite 3300
          Chicago, IL 60603
          kaw@wexlerwallace.com
          tad@wexlerwallace.com
          bdp@wexlerwallace.com
          Telephone: (312) 346-2222

          *Attorneys for Plaintiff City of Chicago*

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2017, I caused the foregoing document to be served on

Counsel of Record via the Court's ECF system.

August 9, 2017                                    By: _____/s/_____

Jeffrey Nelson