IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, a municipal corporation, | | |
| Plaintiff, | | |
| v. | | Case No. 14-cv-04361 |
| PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICAL, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; and ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC., | | Honorable Jorge L. Alonso

Magistrate Judge Young B. Kim |
| Defendants. | | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION
TO COMPEL PHASED IDENTIFICATION
OF THE MEDICALLY UNNECESSARY CLAIMS AT ISSUE**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

      I.      The City Misstates This Court's Guidance ............................................................3

      II.     The Information Requested is Discoverable Regardless of the City's
            Unilaterally Chosen Method of Proof. ...................................................................4

            A.     This Matter is the Proper Subject of a Motion to Compel. ........................4

            B.     The City Cannot Evade the Production of Discoverable
                  Information Essential to the Defense by Unilaterally Selecting its
                  Own Method of Proof. ...............................................................................7

      III.    The City Should Provide a Response to the "Medically Unnecessary
            Discovery Requests" Based on the Information Now Known to it and
            Provide a Complete Response at the Close of Written Party Discovery. ..............12

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*In re Aqua Dots Products Liability Litigation*,
    270 F.R.D. 322 (N.D. Ill. 2010)...................................................................12

*Bayer Corp. & Subsidiaries v. United States*,
    850 F. Supp. 2d 522 (W.D. Pa. 2012)..........................................................9, 13

*Buycks-Roberson v. Citibank Federal Savings Bank*,
    162 F.R.D. 338 (N.D. Ill. 1995)...................................................................7, 8

*Caudill v. Keller Williams Realty, Inc.*,
    2013 U.S. Dist. LEXIS 156178 (N.D. Ill. Oct. 31, 2013)...............................12

*In re Celexa & Lexapro Marketing & Sales Practices Litigation*,
    315 F.R.D. 116 (D. Mass. 2016)..................................................................10

*CSC Holdings, Inc. v. Redisi*,
    309 F.3d 988 (7th Cir. 2002) ........................................................................8

*Fontano v. S.A. Godinez*,
    No. 12–CV–3042, 2013 WL 3712406 (C.D. Ill. July 12, 2013) ....................11

*Fox v. Cheminova, Inc.*,
    No. CV00-5145, 2006 WL 508087 (E.D.N.Y. Mar. 1, 2006) ..........................7

*Illinois Physicians Union v. Miller*,
    675 F.2d 151 (7th Cir. 1982) ........................................................................8

*Northwestern Memorial Hospital v. Ashcroft*,
    362 F.3d 923 (7th Cir. 2004) ......................................................................11

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...................................................................................12

*Paramount Media Group, Inc. v. Village of Bellwood*,
    2015 WL 5307483 (N.D. Ill. 2015) ...............................................................5

*Peoria Day Surgery Center v. OSF Healthcare System*,
    No. 06-1236, 2008 WL 724798 (C.D. Ill. Mar. 17, 2008)..............................11

*In re Peregrine Financial Group Customer Litigation*,
    No. 12 C 5546, 2015 WL 1344466 (N.D. Ill. Mar. 20, 2015) ......................6, 7

*Sargent-Welch Scientific Co. v. Ventron Corp.*,
    59 F.R.D. 500 (N.D. Ill. 1973)......................................................................6

*Sauer v. Exelon Generation Co., LLC*,
   No. 10 C 3258, 2011 WL 3584780 (N.D. Ill. Aug. 15, 2011) ............................................5

*In re St. Jude Medical, Inc.*,
   522 F.3d 836 (8th Cir. 2008) .........................................................................................10

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ....................................................................................................8

*United States v. Rogan*,
   517 F.3d 449 (7th Cir. 2008) ...........................................................................................8

*United States ex re. Michaels v. Agape Senior Community, Inc.*,
   No. 0:121-3466, 2015 WL 3903675 (D.S.C. June 25, 2015) ......................................8, 10

*United States ex rel. Tyson v. Amerigroup Ill., Inc.*,
   230 F.R.D. 538 (N.D. Ill. 2005) .....................................................................................13

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
   No. 3:07-cv-00604-M, 2016 WL 3449833 (N.D. Tex. June 20, 2016) ..............................8

*Worix v. MedAssets, Inc.*,
   869 F. Supp. 2d 893 (N.D. Ill. 2012) ..............................................................................12

*In re Zyprexa Products Liability Litigation*,
   254 F.R.D. 50 (E.D.N.Y. 2008) .......................................................................................8

*In re Zyprexa Products Liability Litigation*,
   671 F. Supp. 2d 397 (E.D.N.Y. 2009) ..........................................................................8, 9

## RULES

Fed. R. Civ. P. 26(a)(1)(A)(iii) ............................................................................. *passim*

Fed. R. Civ. P. 37(a) ...........................................................................................................4

Defendants respectfully submit this reply in support of their "Joint Motion to Compel Phased Identification of the Medically Unnecessary Claims at Issue" (Dkt. No. 588) ("Motion" or "Mot.").

## INTRODUCTION

The City's Opposition to Defendants' Motion to Compel (Dkt. No. 590) ("Opposition" or "Opp.") is a tacit admission that, despite years of investigation, four pleadings, and the rhetoric and generalized prolixity of its Third Amended Complaint ("Complaint" or "TAC"), the City has little idea which of the purported 250,000 health insurance claims involving opioids were medically unnecessary under its liability theory. The City concedes that it is required "to make a disclosure regarding the claims that [it] believes are improper as medically unnecessary." (Opp. at 4.) Curiously, the City evades this requirement and instead proposes that it be permitted to determine through discovery what it should have known *before* it filed its Complaint, namely which of the 250,000 claims involved a medically unnecessary prescription for an opioid. (*Id.*) According to the City, it has no obligation to identify these claims until document production is complete and the City is "allowed to take party and third-party depositions." (*Id.*)

The City's approach is proscribed by Rule 26, which requires a plaintiff at the initial stages of a litigation to provide defendants with "a computation of each category of damages" and make available all nonprivileged supporting documents and evidentiary materials. Fed. R. Civ. P. 26(a)(1)(A)(iii). At its core, this mandatory and uncontroversial computation requires the City to provide a list of claims that it believes are medically unnecessary and the corresponding medical records to support this assertion. *Id.* The City's excuse for not providing this information at this point in the litigation—the need to obtain party and third-party discovery—is specifically deemed "unacceptable" under the Federal Rules: "A party is *not excused* from making its disclosures *because it has not fully investigated* the case or because it challenges the sufficiency of another party's disclosures or *because another party has not made its disclosures*." Fed. R. Civ. P. 26(a)(1)(E) (emphasis added). The same logic extends to the City's deficient discovery responses.

The City proffers a series of justifications for not complying with its discovery obligations, none of which has merit.

*First*, the City seeks to avoid the issue by recasting Defendants' motion as a request for "reconsideration of what was previously ***decided*** on May 8, 2017." (Opp. at 2 (emphasis added).) This argument misstates the guidance from the Court. Contrary to the City's assertion, this Court did ***not*** "reject[] the very relief now sought." (*Id.*)

*Second*, the City contends that it can meet its discovery obligations by turning over its health insurance claims databases, which purportedly contain about 250,000 insurance claims. The City concedes that some of these insurance claims were perfectly proper, but contends that others were medically unnecessary. According to the City, Defendants "can run their own analysis" based on some unspecified criteria and ascertain which claims the City might contend are medically unnecessary at some unspecified future date. (Opp. at 4.) This assertion is false. Defendants have no way of predicting which of the 250,000 insurance claims the City might ultimately assert were medically unnecessary. More fundamentally, the City is required to quantify its alleged damages, provide pertinent supporting documents at the onset of the litigation, and respond to discovery on the factual basis of its claims. It cannot discharge those duties by producing an undifferentiated database to Defendants and telling them to figure it out.

*Third*, the City's proposed schedule reveals that the City ***never*** plans on identifying the insurance claims it contends were medically unnecessary. Rather, the City only commits to disclosing "a ***sample or subset*** of false/medically unnecessary claims . . . ***or its methodology*** for the identification of false/medically unnecessary claims." (Opp. at 13.) In other words, unless this Court orders the production required by Rule 26, the City does not plan on producing anything more than an amorphous methodology some time down the road. This is why Defendants respectfully move this Court for an Order requiring the City to comply with its discovery obligations and produce a list of claims that it contends are "false/medically unnecessary."

## ARGUMENT

### I.     The City Misstates This Court's Guidance

The City quotes from page 38 of the transcript of the May 8, 2017 hearing to assert that "the Court rejected Defendants' request that the City must provide a list of medically unnecessary claims before depositions can begin."  (Opp. at 5-6.)  The argument misstates this Court's guidance at the hearing and ignores the City's representation to the Court.

The statement from the Court that the City quotes was not a "ruling."  It was made midstream during the hearing when the Court was introducing what it was "contemplating" regarding potential phasing.  (Mot., Ex. A. at 38, May 8, 2017 Hr'g Tr. (Dkt. No. 588-2).)  In fact, the statement concludes with a question from the Court—notably omitted by the City in its Opposition—"Why is that not workable?"  (*Id.*)

In response to the Court's question, Defendants proceeded to address why it was necessary to know the "medically unnecessary" claims at issue prior to conducting depositions. (*Id.* at 38-47.)    Indeed, ***after*** the discussion regarding the importance of obtaining this information from the City prior to depositions, the City represented to the Court as follows:

> Your Honor, I fear that I recomplicated things again and I misspoke.  And ***I just want to be clear***.  Right now, we have a schedule for written discovery.  And my only point was that might need to include some written discovery of third parties. ***I think the City would be happy to come back in front of you once the parties are ready to take depositions and figure out what disclosures the City can make and the defendants need in order to proceed in this case.***

(Mot., Ex. A at 47 (emphasis added).)

Defendants then advised the Court that they would have a meet and confer with the City on an appropriate phasing consistent with the Court's guidance and the representations made at the hearing.  (*Id.* at 50.)  To this end, the proposal provided by Defendants following the hearing was fully consistent with this Court's guidance, the City's representations to the Court, and the City's request for limited "written discovery of third parties" prior to making its pre-deposition disclosures.  The City refused to address an appropriate phased schedule until sending a letter the afternoon before motions to compel were due.  (Mot. at 4-5.)  For the reasons set forth in

Defendants' Motion and below, the City's belated proposal on phasing would result in a discovery process that is contrary to Rule 26, fundamentally unfair to Defendants' right to prepare their defenses to the City's claims, and would lead to significant inefficiencies and waste. The City's proposal would result in extensive litigation before this Court including the need to redepose witnesses, including third party witnesses, after the City's disclosure of the medically unnecessary claims at issue and the purported misrepresentations specifically associated with those claims.

## II. The Information Requested is Discoverable Regardless of the City's Unilaterally Chosen Method of Proof.

### A. This Matter is the Proper Subject of a Motion to Compel.

The City asserts that Defendants' Motion "is not really a motion to compel at all." (Opp. at 1.) The City is incorrect. Beyond Rule 26's mandatory disclosure obligations, each Defendant served interrogatories and document requests seeking identification of (i) the prescription claims submitted to and paid for by the City that the City asserts were "medically unnecessary"; (ii) the physicians or health care providers who wrote the prescriptions the City alleges to have been "medically unnecessary"; and (iii) the particular misrepresentation(s) made to the prescribing physician or health care provider that allegedly misled him or her (collectively, the "Medically Unnecessary Discovery Requests").

Contrary to its discovery obligations, the City has steadfastly refused to answer those requests. In fact, the City's Opposition makes clear that it *never* plans on identifying all of the insurance claims it contends were medically unnecessary, stating that it will only disclose "a *sample or subset* of false/medically unnecessary claims . . . *or its methodology* for the identification of false/medically unnecessary claims." (Opp. at 13.) Unless compelled, the City will not even provide this inadequate disclosure until *after* fact discovery is virtually complete, which substantially and unfairly prejudices Defendants' ability to defend against the City's far-reaching allegations. Such a failure to timely and sufficiently answer discovery is the proper subject of a motion to compel. *See* Fed. R. Civ. P. 37(a). Moreover, because the proper phasing

of such disclosures is central to an orderly and fair discovery process, and essential to allow Defendants to prepare their defenses to the City's claims, the issue is appropriate for ruling at this stage in the discovery proceedings.

The City also argues that Defendants are seeking an order "requiring the City to prove its case" or "make an itemized proffer on the merits." (Opp. at 2.) This assertion is false. To begin, it is Rule 26—not Defendants—that requires an "itemized proffer" of damages by requiring the City to provide Defendants with "a computation of each category of damages" and make available all non-privileged supporting documents and evidentiary materials. Fed. R. Civ. P. 26(a)(1)(A)(iii). The City's mandatory initial disclosure brushes aside this obligation, proclaiming that "[d]isclosure of a computation of these damages is premature because the computations require further discovery and consultation with the City's expert." (Pl.'s Initial Disclosures at 4, attached hereto as Ex. D.) But Rule 26(a) states that "[a] party *is not excused from making its disclosures because it has not fully investigated the case* or . . . because another party has not made its disclosures." Fed. R. Civ. P. 26(a)(1)(E) (emphasis added).

The City cannot avoid its disclosure obligations by asserting that this information will be disclosed at some later date, such as during expert discovery. "By its very terms Rule 26(a) requires more than . . . assert[ing] that they will produce, sometime in the future, an expert report detailing" alleged damages—a disclosure that does so "is insufficient." *Sauer v. Exelon Generation Co., LLC*, No. 10 C 3258, 2011 WL 3584780, at *9 (N.D. Ill. Aug. 15, 2011) (quotation marks and citations omitted). It is, thus, "no answer to say that defendants" can later obtain this information through experts. *Paramount Media Grp., Inc. v. Vill. of Bellwood*, No. 13 C 3994, 2015 WL 5307483, at *3 (N.D. Ill. Sept. 10, 2015) (citation omitted).

Further, the Medically Unnecessary Discovery Requests seek basic, and essential, factual information regarding the core of the action brought by the City—the identification of the prescriptions the City asserts are "medically unnecessary," the health care practitioner allegedly misled into writing the "medically unnecessary" prescription, and the misrepresentation made to that health care practitioner associated with the "medically unnecessary" prescription. Nothing

about such a discovery request requires the City "to prove the merits of its case." Indeed, the City itself had no difficulty listing "examples" of what it alleges are prescriptions that "were medically unnecessary and ineligible for payment" and were tainted by alleged misrepresentations. (TAC ¶ 718.) "It is clear that the defendants are entitled to know the facts upon which plaintiff's claim is founded." *Sargent-Welch Sci. Co. v. Ventron Corp.*, 59 F.R.D. 500, 503 (N.D. Ill. 1973) (Bauer, J.).

The City also asserts that Defendants can somehow glean from the City's database (which has not yet been produced) which of the purported 250,000 opioid prescriptions in that database constitute the "thousands of improper health insurance claims involving opioids" (Opp. at 1) that the City asserts are medically unnecessary and caused by an alleged misrepresentation. (*Id*. at 4.) "That is without merit. Such a response basically claims that the opposing party should be responsible for identifying the sources of its alleged wrongdoing. [Defendant] is not obligated to sift through the documents and information . . . to determine what Plaintiffs may rely on to substantiate their allegations." *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 WL 1344466, at *3 (N.D. Ill. Mar. 20, 2015). The City concedes, as it must, that it cannot contend that prescribing opioid medications for chronic, non-cancer pain is, in itself, improper or "medically unnecessary." (Opp. to Mot. to Dismiss (Dkt. No. 527) at 34 n.21.) The City further concedes that many (if not most) of the claims in its database are not linked to a purported misrepresentation. (Mot., Ex. A at 24-25.) Thus, providing Defendants with the City's claims database will ***not*** allow Defendants to identify which claims the City contends are medically unnecessary or false claims.

The City's assertion is further undermined by the fact that each health insurance claim in the City's database was approved by the City's Claims Administrator as "medically necessary." Indeed, the undefined, amorphous, and evolving criteria that the City now applies to identify claims that it contends are "medically unnecessary" makes it much more essential that the City respond to discovery. For instance, at the May 8, 2017 hearing, lead counsel for the City ruminated about the "types of claims" the City "may" say "were medically unnecessary," "for

instance, where opioids were the first line of treatment or where opioids were prescribed for certain conditions, like lower back pain, for which opioids were not medically necessary." (Mot., Ex. A at 7.)  None of this has been defined.  Defendants are entitled to use the discovery process to understand and test the core of the City's claims regarding "medically unnecessary" prescriptions of opioids.

In sum, the City is not permitted to play hide the ball with respect to the "types of claims" at issue—nor are such claims meaningfully specified anywhere in the complaint.  The notion that Defendants are somehow equally positioned to identify "medically unnecessary claims," and therefore the City need not provide responses is incorrect both factually and legally.  *See, e.g.*, *In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *3.

### B.    The City Cannot Evade the Production of Discoverable Information Essential to the Defense by Unilaterally Selecting its Own Method of Proof.

The City's Opposition suffers from yet another fundamental error:  the City's mistaken belief that its unilaterally selected (and as yet undefined) method of proof should somehow dictate Defendants' right to discovery of relevant information essential to their defenses.  Such an assertion is contrary to Rule 26:  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense* and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Discovery sought by a defendant and necessary to its defense "is not bound by the confines of damages data considered by plaintiffs' experts"; rather, a defendant is "entitled to relevant discovery of damages data in order to formulate defendants' own theory" and "there is no precedent which permits the plaintiffs to refuse to provide discovery based on their lack of agreement with defendants' theory."  *Fox v. Cheminova, Inc.*, No. CV00-5145, 2006 WL 508087, at *7 (E.D.N.Y. Mar. 1, 2006).  Indeed, "[t]he Federal Rules and this Court do not countenance self-selecting discovery by either party."  *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995) (rejecting proposed "sampling approach" to meet discovery and granting motion to compel).

As this Court noted, there is a difference between the issue of what methodology may, or may not, be acceptable in order for the City to prove its case and the issue of discovery now before the Court.  (Mot., Ex. A at 42.)  Though the City's purported use of "statistical" sampling, or some other form of aggregate proof, will be deficient as a matter of law,[1] this Court need not address the issue to require the City to comply with the Medically Unnecessary Discovery Requests.  Even were the City to advance a statistical sampling method of proof, Defendants are entitled to discovery of the underlying claims alleged to be "medically unnecessary," so that they can challenge the City's methodology and refute that each underlying prescription was written— and each claim was paid—because of some alleged false statement that the City tries to attribute to Defendants.

For instance, in *CSC Holdings, Inc. v. Redisi*, the Seventh Circuit held that it was reversible error not to permit a defendant to obtain from the plaintiff information needed to test the plaintiff's damage theory.  309 F.3d 988, 996 (7th Cir. 2002).  Likewise, in *In re Zyprexa Products Liability Litigation*, the court found "[t]hat the States currently do not intend to rely on those records should not preclude Lilly from accessing relevant evidence."  254 F.R.D. 50, 57 n.8 (E.D.N.Y. 2008).  And in *Buycks-Roberson*, the court rejected the proposed "sampling approach" to discovery, finding it would amount to improper "self-selecting discovery" of what the responding party "considers to be the relevant material."  162 F.R.D. at 343.

---

[1]  *See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 457 (E.D.N.Y. 2009); *United States ex rel. Wall v. Vista Hospice Care, Inc.*, No. 3:07-cv-00604-M, 2016 WL 3449833, *12-13 (N.D. Tex. June 20, 2016).  The Seventh Circuit cases cited by the City are inapposite.  In *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008), there was no need to examine medical necessity as to any claim because all 1,812 claims at issue were fraudulent based upon illegal kickbacks.  *Id.* at 453.  *Illinois Physicians Union v. Miller*, 675 F.2d 151 (7th Cir. 1982), involved a Department of Public Aid audit, in which the physician was required by law "to keep records necessary to fully disclose the extent of services rendered," there was no need to examine the medical necessity of any particular treatment, and the physician bore the burden "to prove entitlement to welfare monies."  *Id.* at 153-55.  *See, e.g.*, *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, No. 0:12-3466, 2015 WL 3903675 (D.S.C. June 25, 2015) (distinguishing each of the cases now cited by the City and holding that statistical proof is inappropriate where each claim regarding medical necessity would require fact specific inquiries and medical testimony regarding each individual patient's treatment).

The City asserts that prescribers were misled by some (as yet unspecified) misrepresentation given to them by a Defendant or a third-party acting under the control of a Defendant and that the misrepresentation led the prescriber to write, the patient to agree to, and the Claims Administrator to approve for reimbursement, a prescription for an opioid (as yet unspecified) that was not "medically necessary" to treat the condition at issue. Plainly, in defending against such an allegation, Defendants must be permitted discovery to determine, *inter alia*, whether:

> ➤ the prescription was "medically necessary" and based upon proper medical criteria;
>
> ➤ the prescriber ever received or was exposed to the alleged misrepresentation;
>
> ➤ the prescriber was aware of the risks and benefits in making the prescribing decision, regardless of any supposed misrepresentation;
>
> ➤ the purported misrepresentation or omission was not material to the prescribing decision;
>
> ➤ the Claims Administrator and Medical Advisor approved the prescription claim as "medically necessary" based upon their own decision-making, independent of any supposed misrepresentation; and
>
> ➤ the employee or plan member benefited from the particular prescription for which the City reimbursed.

Indeed, it is well settled that "[w]hether a prescription . . . is 'medically necessary' must take into account all the information available to the prescribing physician about the risks and benefits with respect to the individual patient in question and the myriad vectors affecting the presenting person." *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d at 457. By seeking to limit its discovery responses, the City is in essence "seek[ing] to preclude [Defendants] from offering at a trial of this matter any evidence not produced as part of the sampling plan" it proposes. *Bayer Corp. & Subsidiaries v. United States*, 850 F. Supp. 2d 522, 544 (W.D. Pa. 2012) (denying motion for protective order for proposed statistical sampling). This attempt must be rejected.

Likewise, the City's efforts to prevent Defendants from obtaining discovery from health care providers are also meritless. The City cannot assert that a prescriber was misled by a purported misrepresentation without allowing any inquiry into, among other things:

➢ whether the prescriber was exposed to the purported misrepresentation;

➢ whether the prescriber was misled by a particular statement given the totality of the information known to that prescriber;

➢ whether the alleged misrepresentation played any role in the prescribing decision; and

➢ whether the prescription was "medically necessary" given the particular circumstances of the patient being treated.

As the Eighth Circuit recognized under analogous circumstances:

Whether the information on which physicians based their actions ultimately can be traced to a representation by [Defendant] undoubtedly will vary by individual physician. Even where the present record does contain evidence that a physician eventually talked to a [Defendant] representative or read [] promotional materials, those physicians assert that they did not rely on the representations . . . in deciding to recommend [the treatment] to their patients. . . . Whatever the [consumer fraud law states] about the need for these plaintiffs to present direct evidence of individual reliance, it does not eliminate the right of a defendant to present evidence negating a plaintiff's direct or circumstantial showing of causation and reliance.

*In re St. Jude Medical, Inc.*, 522 F.3d 836, 839-40 (8th Cir. 2008).[2]

Likewise, while noting that the issue is not yet ripe for discovery, the City appears to contend that the requested information that the City is obligated to disclose is not discoverable as

---

[2]   For this very reason (and others), the City's reliance on *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), is misplaced. That decision did not address medical necessity determinations at all and held only that "[w]hether a representative sample may be used to establish classwide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action." *Id.* at 1049. Indeed, *Tyson Foods* only allowed such representative evidence because there was an "evidentiary gap" of individualized evidence as a result of the employer's failure to comply with its legal obligation to keep adequate time records. *Id.* at 1047; *see, e.g.*, *Agape Senior Cmty., Inc.*, 2015 WL 3903675 at *8 ("some cases are suited for statistical sampling . . . [t]his civil action, however, is not such a case"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 315 F.R.D. 116, 128 (D. Mass. 2016) (rejecting reliance on *Tyson Foods* to introduce aggregate evidence to prove causation in case involving false and misleading marketing of medicines).

the records are "particularly sensitive" and protected under the Illinois physician-patient privilege. (Opp. at 11.) This is incorrect. Although not mentioned by the City, the Court entered an agreed protective order that expressly authorizes the secure transmission of protected health information. (Prot. Ord. (Dkt. No. 386).) As other courts have recognized, this protective order mitigates any privilege or privacy concerns by allowing "documents to be marked 'confidential' . . . [and] the redaction of personal identifiers from the documents such as name[s]" and other personal information. *Fontano v. S.A. Godinez*, No. 12-CV-3042, 2013 WL 3712406, at *2 (C.D. Ill. July 12, 2013). If after production any of the parties finds that "unredaction of the personal identifiers is necessary, [they] may file a motion" and "[a]t that point the Court will be presented with a more concrete dispute. *Id.* Defendants here do not seek any individual's personal medical information at this time. Rather, Defendants request an opportunity to identify *which* of the claims submitted to and paid by the City that the City asserts were "medically unnecessary." The City cannot bar responses of the Medically Unnecessary Discovery Requests by relying on "the physician-patient or other privileges in order to deprive the defendant of material reasonably needed for its defense." *In re Zyprexa*, No. 04-MD-1596, Order on Discovery Appeal at 6 (E.D.N.Y. 2008), attached hereto as Ex. E.

The Seventh Circuit case cited by the City does not change the analysis. In *Northwestern Memorial Hospital v. Ashcroft*, the court repeatedly emphasized the "dearth" of probative value in the records, describing the government's purported need for the records as "vague to the point of being evasive." 362 F.3d 923, 927 (7th Cir. 2004). Here, in contrast, Defendants have identified the "relevance of th[e] information to its defense"—as well as the City's obligation to disclose this information pursuant to Rule 26(a)(1)(A)(iii) and (b)(1)—and reiterate that "[t]here is also a protective order in place that covers protected health information." *Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, No. 06-1236, 2008 WL 724798, at *5 (C.D. Ill. Mar. 17, 2008). The other "authorities" cited by the City are equally unavailing. In *South Carolina v. Janssen Pharmaceutica, Inc.*, the court never considered the present issue or anything similar as the requesting party "dropped" the request. (Opp. at 11.) In *Alaska v. Eli Lilly & Co.*, the dispute

11

concerned "epidemiological evidence" as to the increased risk of diabetes for the Medicaid population as a whole, not to the assertion that any particular prescription of the medication was "medically unnecessary" and it does not appear a protective order for health information was in place.

### III. The City Should Provide a Response to the "Medically Unnecessary Discovery Requests" Based on the Information Now Known to it and Provide a Complete Response at the Close of Written Party Discovery.

The City's suggestion that it is "not now withholding anything" is wrong. (Opp. at 3.) Its plan to "provide a disclosure regarding the claims that are improper, as medically unnecessary, when the City is able to make that disclosure" is untimely and insufficient. (*Id.* at 1.)

In asserting that it is "not now withholding anything," the City references the Complaint, suggesting that the pleadings should themselves somehow be sufficient to alleviate the City of its discovery obligations. But "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Nor is there merit to the City's reliance on rulings on motions to dismiss at the pleadings stage to suggest that it is somehow not required to produce relevant evidence on its claims and necessary for the defenses thereto. (Opp. at 8 (citing *Caudill v. Keller Williams Realty, Inc.*, 2013 U.S. Dist. LEXIS 156178, at *9 (N.D. Ill. Oct. 31, 2013); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893 (N.D. Ill. 2012).)[3] Far from its representation that it is "not now withholding anything," the City has refused to respond to the Medically Unnecessary Discovery Requests even based on the information presently known to it.

As noted, the City should be required to provide "a computation of each category of damages claimed by the [City]" and make available all non privileged supporting documents and evidentiary materials. Fed. R. Civ. P. 26(a)(1)(A)(iii). At a minimum, this requires the City to

---

[3] *In re Aqua Dots Products Liability Litigation*, 270 F.R.D. 322 (N.D. Ill. 2010), is inapposite to the motion *sub judice* and was addressing whether withheld materials were subject to work product protections.

provide Defendants with a list of claims that it believes are medically unnecessary and the corresponding medical records to support this assertion. *Id.* This mandatory disclosure obligation presupposes that the City has this information in its possession **before** filing a lawsuit. "A party is **not excused** from making its disclosures **because it has not fully investigated** the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Fed. R. Civ. P. 26(a)(1)(E) (emphasis added).

In addition, the City should be required to answer the interrogatories and document requests, at present, based on the information currently known. As mentioned, the City was able to identify "examples" of claims at issue in its Complaint. In its Supplemental Answers to Interrogatories, the City has revealed that during the course of its investigation it contacted hundreds of individuals and entities, including numerous doctors not identified in the Complaint. (*See, e.g.,* Pl.'s Second Suppl. Resp. to Purdue Defs.' First Set of Interrogs., App. A.) As to various of these doctors, the City indicates that it received information regarding "[d]etailing by pharmaceutical companies. . . [and] representations and omissions about risks and benefits of opioids." (*Id.*) Thus, the City is well-positioned to answer the Medically Unnecessary Discovery Requests based on information presently in its possession.

There is also no valid reason why the City cannot identify the "methodology" it will propose using "for the identification of false/medically unnecessary claims." (Opp. at 13.) "[D]amage theory and methodology information from a plaintiff almost invariably will comport with the requirements of Rules 26(b)(1) and 33(c) of the Federal Rules of Civil Procedure, seeking as they do, information about an inherent element of the claim." *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 544 & n.12 (N.D. Ill. 2005).

"[T]he discovery sought by [Defendants] is within the scope of Fed. R. Civ. P. 26(b); [Defendants] ha[ve] a demonstrable need for the discovery; the discovery is in [the plaintiff's] possession; [Defendants] ha[ve] no other means to obtain the discovery; and responsibility for the burden presented by producing the discovery falls squarely on [the plaintiff]." *Bayer*, 850 F. Supp. 2d at 540.

13

Regardless, the City should be required to provide a complete response to the Medically Unnecessary Discovery Requests at the close of written discovery between the parties and third-parties other than health care practitioners and patients.

Ignoring these basic legal principles, the proposed schedule presented by the City is illogical and will lead to waste and inefficiency. As the City would have it, the City would not respond to the Medically Unnecessary Discovery Requests (or reveal its "methodology for the identification of false/medically unnecessary claims") until 6 months after the completion of the parties' written discovery, and then Defendants would be afforded just 4 months to conduct additional written discovery and depositions. In the months *prior* to the City's response to the Medically Unnecessary Discovery Requests (and prior to the completion of written discovery) the City would have the parties take depositions of "parties and certain third parties," while Defendants remained in the dark regarding the specific claims and misrepresentations at issue. Such a sequencing and timing is fundamentally unfair to Defendants and unworkable. The City's proposal will necessarily invite multiple disputes regarding the need to redepose individuals in light of the City's disclosure, the need for extensions of time, and other wasteful proceedings.

For instance, if a physician who provided a talk to fellow physicians in the area is deposed, it is essential for Defendants to know (i) if there were any prescribers in attendance whom the City asserts subsequently wrote "medically unnecessary" prescriptions; (ii) the alleged misrepresentation the City alleges was made at the talk; and (iii) which "medically unnecessary" prescriptions the City alleges were the result of a prescriber hearing the alleged misrepresentation. There is no practical means for Defendants to properly and effectively frame questions of third-parties without such information. Such information is also essential for Defendants to determine which third-parties (or participants at such talks) they will depose.

As the City would now have it, Defendants would not know the specifics of the claims actually at issue, and the purported misrepresentations alleged to have caused the particular prescriber at issue to write the alleged "medically unnecessary" claims for which the City will

seek recovery, while depositions are being conducted of, *inter alia*, "third parties that . . . disseminated messages about opioids," former employees, and others. (Opp. at 4.) Such a practice would be fundamentally unfair to Defendants and would require multiple redepositions once the City identified the specifics necessary to frame appropriate questioning to such deponents. Far from "streamlining" discovery, such a process would burden the Court with multiple disputes regarding the need for redepositions, and would impose wasteful burdens on the deponents and the parties.

In contrast, Defendants' proposal is efficient and will provide for an orderly and fair discovery process. In fact, just a few months ago, the City proposed that depositions should take place "beginning one month after the close of document discovery." (Report of Conference of Parties at 11 (Dkt. No. 486).) The City has not (and cannot) identify what dramatic changes have transpired since its made that proposal that now require the parties to take party and third-party depositions before it produces even the most basic information regarding its claims. The parties should complete written discovery; the City should respond to the Medically Unnecessary Discovery Requests, identifying the claims at issue (and, to the extent the City intends to attempt to use a "methodology for the identification of false/medically unnecessary claims," that methodology, if not previously disclosed); and then depositions should be conducted informed by the claims at issue and the complete written discovery produced by the parties.

As to the specific time frames to be imposed, Defendants respectfully submit that the issue is premature. Once the proper phasing and structure is decided by the Court, the parties can meet and confer on an appropriate schedule to present to the Court for decision.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants Joint Motion to Compel Phased Discovery of the Medically Unnecessary Claims at Issue.

Dated:    August 9, 2017                    Respectfully submitted,


                                            By: /s/ Charles C. Lifland
                                                Charles C. Lifland (*pro hac vice*)
                                                O'MELVENY & MYERS LLP
                                                400 S. Hope Street
                                                Los Angeles, CA 90071
                                                Telephone:  (213) 430-6000
                                                Facsimile:   (213) 430-6407
                                                clifland@omm.com

                                                *Attorneys for Defendants Janssen*
                                                *Pharmaceuticals, Inc., Johnson &*
                                                *Johnson, Janssen Pharmaceutica, Inc.*
                                                *n/k/a Janssen Pharmaceuticals, Inc., and*
                                                *Ortho-McNeil-Janssen Pharmaceuticals,*
                                                *Inc. n/k/a Janssen Pharmaceuticals, Inc.,*
                                                *Appearing Pro Hac Vice*

                                            By: /s/ Michael P. Doss
                                                Michael P. Doss
                                                Scott D. Stein
                                                SIDLEY AUSTIN LLP
                                                One South Dearborn
                                                Chicago, IL 60603
                                                Telephone:   (312) 853-7520
                                                Facsimile:     (312) 853-7036
                                                mdoss@sidley.com
                                                sstein@sidley.com

                                                *Attorneys for Defendants Janssen*
                                                *Pharmaceuticals, Inc., Johnson &*
                                                *Johnson, Janssen Pharmaceutica, Inc.*
                                                *n/k/a Janssen Pharmaceuticals, Inc., and*
                                                *Ortho-McNeil-Janssen Pharmaceuticals,*
                                                *Inc. n/k/a Janssen Pharmaceuticals, Inc.*

By: /s/ R. Ryan Stoll

R. Ryan Stoll
Patrick Joseph Fitzgerald
Gretchen M. Wolf
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
155 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 407-0508
ryan.stoll@skadden.com
patrick.fitzgerald@skadden.com
gretchen.wolf@skadden.com

*Attorneys for Defendants Purdue Pharma
L.P., Purdue Pharma Inc., and The
Purdue Frederick Company Inc.*

By: /s/ Tinos Diamantatos

Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Telephone: (312) 324-1145
Fax: (312) 353-2067
tdiamantatos@morganlewis.com

Gordon Cooney, Jr. (*pro hac vice*)
Steven A. Reed (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
jgcooney@morganlewis.com
sreed@morganlewis.com

*Attorneys for Defendants Cephalon, Inc.
and Teva Pharmaceuticals USA, Inc.*

By: /s/ James W. Matthews

James W. Matthews (*pro hac vice*)
Katy E. Koski (*pro hac vice*)
Jason L. Drori (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199
(617) 342-4000
jmatthews@foley.com
kkoski@foley.com
jdrori@foley.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
(312) 832-4500
jgarlough@foley.com

*Attorneys for Defendants Allergan plc,
f/k/a Actavis plc, Actavis, Inc., n/k/a
Allergan Finance, LLC, f/k/a Watson
Pharmaceuticals, Inc., Watson
Laboratories, Inc., n/k/a Actavis
Laboratories UT, Inc., Actavis LLC, and
Actavis Pharma, Inc., f/k/a Watson
Pharma, Inc.*

By: /s/ Steven G. Reade

Steven G. Reade (*pro hac vice*)
Joshua M. Davis (*pro hac vice*)
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942.5000
steven.reade@apks.com
joshua.davis@apks.com

*Attorneys for Defendants Endo Health
Solutions Inc. and Endo Pharmaceuticals
Inc.*

## SIGNATURE ATTESTATION

Pursuant to the Northern District of Illinois' General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories concur in the filing's content.

/s/ R. Ryan Stoll
R. Ryan Stoll

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2017, I caused to be electronically filed the foregoing

Defendants' Reply In Support Of Their Joint Motion To Compel Phased Identification Of The

Medically Unnecessary Claims At Issue to be filed with the clerk of the court using the CM/ECF

system, which will send notification of such filing to the e-mail addresses denoted on the

electronic Mail Notice List.

/s/ R. Ryan Stoll
R. Ryan Stoll