**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *City of Chicago,* <br><br>      *Plaintiff,* <br><br> v. <br><br> *Purdue Pharma L.P., et al.,* <br><br>      *Defendants.* | Case No. 14-cv-04361 <br><br> Honorable Jorge L. Alonso |

### CITY OF CHICAGO'S REPLY TO TEVA LTD. IN SUPPORT OF MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

  Plaintiff City of Chicago (the "City") respectfully submits this Reply in Support of its Motion for Leave to File an Amended Complaint in response to Teva Ltd.'s Opposition to the City's Motion (Doc. 670).[1] Teva Ltd. has quickly confirmed the accuracy of the City's prediction that it might interject its views or raise disputes whether or not it is a party. Here, it argues that if it were added as a defendant, it would dispute the allegations of the proposed Fifth Amended Complaint relating to personal jurisdiction. It offers a preview of that dispute, which relies heavily on a declaration it submitted in support of an unsuccessful motion to dismiss in the MDL. There, it made the same arguments it states that it would make here — including the argument that "[n]othing has changed since [this Court's earlier decision in 2015]," Teva MDL Mem., MDL Doc. 1264-1 at 3. The only difference was that the MDL Court had the benefit of more factual

---

[1] All references to "MDL Doc." are to the Master Docket in *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP) (N.D. Ohio) (the "MDL"). All references to "Doc." are to the individual docket in this case.

1

information than was available to the City and this Court in 2015. The MDL Court rightly rejected Teva Ltd.'s arguments. That ruling is the law of the case, and the City has the right to rely on the evidence obtained in the MDL here. There is no prejudice to Teva, but substantial prejudice to the City, which, alone among MDL plaintiffs, would be unable and precluded from taking advantage of that discovery.

Like that of Defendants, Teva Ltd.'s response, in effect, asks this Court to act is if the past three years of MDL litigation did not occur. Yet, it was the *Defendants* who advocated, successfully, for this Court to stay this case and the Judicial Panel on Multidistrict Litigation to transfer it to the MDL. They did so on the grounds that it was necessary to "avoid duplicative efforts[,]" and "avoid . . . inconsistent rulings on pretrial . . . motions." Doc. 640 at 3-5 (arguing that "[t]he essential purpose of 28 U.S.C. § 1407 is to avoid 'piecemeal litigation.'" (internal citation omitted)). Discovery in the MDL revealed, among other things, additional information supporting personal jurisdiction over Teva Ltd. and Mallinckrodt plc, which the MDL Court found sufficient for those claims to proceed.[2] Inclusion of these allegations will ensure that the City's case, intended to serve as a bellwether that would test the allegations against manufacturers, serves its purpose. If the court does not permit the amendment to incorporate discovery in the MDL, it may create a host of potential issues in determining whether and how MDL rulings translate to the City's precursor complaint and limiting the utility of this Court's subsequent rulings. Regardless, the City has satisfied Rule 15's liberal standards governing leave to amend, and the City therefore respectfully requests that its motion be granted.

---

[2] Mallinckrodt plc, perhaps to avoid any argument that it has waived its jurisdictional challenge, has not filed any response.

I.    **Teva Ltd. Cannot Fault the City for Adhering to Applicable Directives or Being Subject to a Stay.**

   A.  **The MDL Court's Decision As to Personal Jurisdiction Over Teva Ltd. Is Both the Law of the Case and Entitled to Deference.**

"The doctrine of the law of the case has its application in multidistrict litigation as well as in traditional litigation." *In re Multi-Piece Rim Products Liab. Litig.*, 653 F.2d 671, 678 (D.C. Cir. 1981). Teva Ltd. is wrong to argue that the law of the case doctrine does not apply because the cases consolidated in an MDL retain their character as separate actions.[3] The "sound exercise of the discretion implicit in th[e law of the case] doctrine requires attention to the special authority granted to the multidistrict transferee judge." *Id.* As the Manual for Complex Litigation explains: "Although the transferor judge has the power to vacate or modify rulings made by the transferee judge, subject to comity and 'law of the case' considerations, doing so in the absence of a significant change of circumstances would frustrate the purposes of centralized pretrial proceedings." Manual for Complex Litigation § 20.133."[4] Accordingly, "[e]ven when the transferee judge does not supersede another court's order, his rulings may require a reexamination of its rationale." *In re Multi-Piece Rim Products Liab. Litig.*, 653 F.2d at 678. And, "[p]roper coordination of complex litigation may be frustrated if other courts do not follow the lead of the transferee court. *Id.* (concluding that an "intervening order of the transferee judge required the district court . . . to reexamine the propriety of any protective orders previously issued").

---

[3] The only case Teva Ltd. cites, in a footnote, did not involve an MDL at all. *See* Teva Mem. at 14 n.7 (citing *GMAC Mortgage, LLC v. McKeever*, 651 Fed. Appx. 332, 338-39 (6th Cir. 2016)).

[4] Other precedent has applied what was subsequently described as a bright-line rule prohibiting a transferor court from revisiting an MDL court's ruling at all. *See In re Food Lion, Inc., Fair Labor Standards Act Effective Scheduling Litig.*, 73 F.3d 528 (4th Cir. 1996).

Neither is the personal jurisdiction analysis applied by the MDL Court meaningfully different than that applied in the Northern District of Illinois. As an initial matter, that is not what Teva Ltd. told the MDL Court. In fact, there, it argued the issues were the same as those addressed in this Court's May 2015 ruling, which Teva Ltd. cited *nine times* in its thirteen-page memorandum. Teva Ltd. argued, in particular, that the MDL Court should "follow" this Court's May 2015 decision because "[n]othing has changed since then[,]" and "well-established constitutional principles" were at issue in the Track One Plaintiffs' case. MDL Doc. 1264-1 at 5; *see also, e.g.*, *id.* at 10 (arguing that "[f]or the same reasons, in *City of* Chicago, . . . there were insufficient "'case-linked' contacts" to support personal jurisdiction). Teva Ltd. went on to argue that "[t]he logic of *City of Chicago* should govern" the inquiry. *Id.* at 11 (characterizing this Court's 2015 decision as applying the same "controlling Supreme Court law and constitutional due process principles" governing the MDL Court's decision); *see also id.* at 13 (citing *City of Chicago* as the basis for its argument that the conduct of Teva USA and Cephalon "cannot be attributed to Teva Ltd." and again asking the MDL Court to apply the same "logic"). Consistent with that view, it further argued that "decisions from courts across the country" were consistent with the "controlling United State Supreme Court and Sixth Circuit precedent" governing the MDL Court's decision. MDL Doc. 1264-1 at 1.

Moreover, this Court's May 2015 Order, on which Teva relies so heavily, is also contrary to Teva Ltd.'s attempt to argue that there is any unique state law issue involved in the personal-jurisdiction analysis. There, this Court explained that the reach of Illinois' long-arm statute is co-extensive with that of federal Due Process, such that the Court need apply only federal standards. *See City of Chicago v. Purdue Pharma L.P.*, 14 C 4361, 2015 WL 2208423, at *5 (N.D. Ill. May 8, 2015) ("Because the state and federal standards are not substantively different, . . . the Court

will address only the federal.") (citations omitted). Thus, the grounds on which Teva Ltd. seeks to distinguish the MDL decision — that it "did not address Illinois law," Teva Mem. at 14, — it might also have said of this Court's earlier decision.

Regardless of Teva's shifting and internally inconsistent arguments,[5] the MDL Court articulated the standard for its decision regarding personal jurisdiction as "based on the Due Process Clause of the Constitution." MDL Doc. 2132 at 5 (internal citation omitted). To the extent it addressed the analysis of alter ego liability in relation to Ohio law, it relied on federal precedent, which in turn, cited authority from a variety of jurisdictions. *See also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) ("[T]he legal conception [of alter-ego liability] has historical antecedents in both federal and state law. Such cases may provide sound analogies or insightful analyses relating to the formal test set forth in [Ohio law] without usurping its authority.").

Teva Ltd. fails to explain how the standard applied by the MDL Court, which requires that "the parent company exert[] so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction," would be more lenient than in Illinois. *Id.* at 6 (quoting *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017). Indeed, the Sixth Circuit and Ohio cases, like the Seventh Circuit and Illinois precedents, including the same case-law Teva Ltd. cites, *see GC2 Inc. v. Int'l Game Tech. PLC*, 16 C 8794, 2017 WL 2985741, at *8 (N.D. Ill. July 13, 2017), have considered a variety of factors in assessing alter ego

---

[5] To the extent that Teva Ltd. made arguments regarding Ohio law in the MDL, it claimed that Ohio's long arm statute is shorter that Illinois', such that it would be *harder* to establish personal jurisdiction in Ohio than Illinois. *See* MDL Doc. 1264-1 at 5 (arguing that "Ohio's long-arm statute is not co-extensive with federal constitutional limits"). Similarly, here, the only Illinois case Teva cites previously was relegated to a footnote of its brief, *see* Doc. 115, and understandably so. It neither supports Teva's arguments nor suggests a conflict or higher standard.

5

liability; Teva Ltd. has never articulated any way in which this jurisdiction would impose a different, higher bar. *Compare Illinois v. Hemi Group LLC*, 622 F.3d 754, 757 (7th Cir. 2010) (stating that "[n]one of the cases cited by [the defendant] even suggests, much less holds, that there is a meaningful difference between the federal and Illinois due process standards"). Similarly, Teva Ltd. also offers no basis for its argument that the MDL Court's determination that there was evidence to support a successor theory of liability, which this Court previously did not address, would require any different analysis here. *Compare* MDL Doc. 2131 at 12-13; Teva Mem. at 13 n. 6.

### B. There Is Neither Prejudice Nor Undue Delay, and Teva Ltd. Is Wrong that "Nothing has Changed" Since 2015.

Teva Ltd. premises much of its opposition on the argument that "***nearly five years***" have passed and previous amendments been made since May 2015. *See* Teva Ltd. Mem. at 1 (emphasis in original). This, of course, ignores that the City's case, through no fault of its own, was stayed for the majority of that time. It likewise ignores that the City could not, and out of respect for this Court's May 2015 decision did not, include claims against Teva Ltd. in prior amendments, but did expressly note, in each instance, that although the City was omitting Teva Ltd., it was doing so "without waiver of the City's right to appeal that decision." *E.g.*, Fourth Amended Complaint, MDL Doc. 511 at 1 n.2. Once additional facts came to light, and the MDL Court determined those facts supported personal jurisdiction over Teva Ltd., it confronted a fundamentally different situation.

Thus, Teva is wrong to claim the City "waited too long" to pursue claims against it. Teva Ltd. Mem. at 2. In fact, the City acted immediately. It filed its Motion on the first business after the parties submitted their designation of record on remand, which enabled the Court to reopen the docket and the City to resume active litigation. It cannot conceivably be charged with lack of

6

diligence. Further, as the authorities cited in the City's Motion reflect, courts do not look at the passage of time in a vacuum or with an arbitrary cut-off, but in relation to the stage of the case. Here, the case remains at the Rule 12(b)(6) stage, with a full opportunity for Teva Ltd. to participate in discovery and later motion practice.

To the extent that Teva argues that "many" (not all, or even most) of the allegations against it in the proposed Fifth Amended Complaint were publicly available in the interim, that is a red herring. *See* Teva Ltd. Mem. at 5. As an initial matter, even where some information is previously available through public sources, leave to amend is appropriately granted where discovery reveals "a more significant" relationship with a party sought to be added. *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 05 C 6391, 2007 WL 3037098, at *2–3 (N.D. Ill. Oct. 16, 2007). Perhaps more importantly, Teva's response shows that there is no dispute that there is significant additional information that was *not* publicly available during that time.

Thus, even assuming *arguendo* that the Court were to construe its 2015 decision, and not the MDL Court's 2019 decision, as the law of the case, it is well established that "previously decided determinations are not applied if there are reasons rendering the doctrine inapplicable." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). "These would include," but are not limited to, "substantial new evidence introduced after the first review," as is undisputedly present here. *Id.*; *see also, e.g.*, *Newman v. Ormond*, 456 Fed. Appx. 866, 867 (11th Cir. 2012) (stating that "[e]xceptions to this doctrine apply when substantially different evidence is produced," and that "when the evidence and the inferences that may be drawn from the record change, the issue presented changes as well, such that the law of the case is the law made on a given set of facts") (internal quotation marks and alteration omitted). Here, to give just one example, the proposed Fifth Amended Complaint would allege, based on documents Teva marked confidential and

7

produced in discovery, that Teva Ltd. set bonus policies it required its subsidiaries to follow, and, based on declarations obtained in the MDL, that former sales representatives in the U.S. described pressure created by these policies, which heavily influenced their marketing efforts. Doc. 672-1 at 28-29 & 288 (Paragraphs 47-48 & 727).

Finally, Teva's arguments of prejudice simply do not concern the kind of legal prejudice that courts consider in the context of a motion for leave to amend. Teva argues that if named in this case, "it will suffer significant burdens, reputational harm, and expense of having to defend itself" in an action that "seeks to hold it accountable" (along with other defendants) for harm it caused. Teva Mem. at 3. That is not, as Teva contends, "the definition of . . . prejudice." *Id.* It is a consequence of having injured the City and violated its laws. If simply being a defendant in a lawsuit constituted prejudice, as Teva contends, it would be impossible to add a party, ever, as the same "prejudice" would exist no matter when or how they were named. That, of course, is not the law. "'Prejudice' for purposes of deciding whether to permit a proposed amendment involves serious impairment of the non-party's ability to present its case," or a showing by the nonmoving party that "it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered." *Ruiz v. New Jersey Dep't of Corr.*, CV 15-3304 (RBK/JS), 2017 WL 3161685, at *6 (D.N.J. July 25, 2017). Teva Ltd., like the existing Defendants, does not even attempt to argue that is the case here.

### C. Teva Ltd Cannot Show Futility.

Teva Ltd. devotes much of its opposition to previewing its jurisdictional arguments. It does not, however, offer anything that the MDL Court did not previously have the opportunity to consider. Instead, it relies on the same declaration it previously submitted to the MDL, rehashes much of its MDL brief, and argues over hypothetical situations, not the facts present here. The

case law it cites, however, has no bearing on the issues here, or is taken out of context, to raise points that are not at issue. For example, in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1782, 198 L. Ed. 2d 395 (2017), the Supreme Court found insufficient connection between the forum state and the claims of non-resident plaintiffs, without questioning that claims of residents were allowed to proceed. Similarly, the City is not arguing that it may automatically impute Teva Ltd.'s subsidiaries contacts to it simply because Teva Ltd. is a parent company. The allegations of the proposed Fifth Amended Complaint are specific and detailed, and include evidence that Teva Ltd. controls the operations and daily activities of its subsidiaries, *see* MDL Doc. 2132 (Opinion and Order), which are the alter egos of Teva Ltd. and exist only to conduct Teva Ltd.'s business. As explained in the City's Motion, it would be particularly unjust to prohibit naming Teva Ltd. here, given that Teva Ltd. takes control of, and could shield from creditors, funds from its subsidiaries, *see* Mot. for Leave to Amend at 16 & Doc. 672-1 ¶ 63, and comingles assets, *see* Doc. 672-1 ¶ 53. And, although Teva cites certain decisions from other jurisdictions that did not involve opioid marketing and distribution, it made those same arguments to the MDL Court, which was unpersuaded (*compare* Teva Ltd. Mem at 15 *with* MDL Doc 1264-1 at 12).[6]

---

[6] The only decision not available to the MDL Court was *In re Opioid Litig.*, Index No. 40000/2017, NYSCEF Doc. No. 2069 (Sup. Ct. of N.Y., Suffolk County Dec. 2, 2019), which the City candidly disclosed in its Motion. Tellingly, Teva does not dispute that there: (1) the Court lacked the benefit of the evidence adduced in the MDL, and (2) the plaintiff did not offer evidence to contradict a declaration that Teva submitted, but instead relied on: (i) its complaint; (ii) an answer in a 2011 case in which Teva Ltd. acknowledge that its products ultimately were sold in New York and the U.S.; and (iii) that Teva Ltd. agreed to submit to the jurisdiction of the New York courts for disputes arising out of a credit agreement with certain banks — which did not address the specific issues concerning control over the U.S. subsidiaries. That decision simply illustrates, again, the importance of a full factual record.

Illustrating that Teva Ltd.'s arguments are straw-men, the City notes that the Track One Plaintiffs' Opposition to Teva Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction in the MDL, which describes, among other things, Teva Ltd's "control over day to day activities of its subsidiaries," MDL Doc. 1815 at 12, is available as part of the record on remand, as are the voluminous declarations and exhibits in support thereof. *See* MDL Docs. 1816, 1816-1, 1816-2, 1817, 1817-1, & 1817-2). Where, as here, a court has already denied a motion to dismiss on the same issue, leave to amend is, by definition, not futile.

Teva also ignores that "[f]or purposes of Rule 15, all material allegations sought to be amended are taken as true." *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1213, 1220 (E.D. Wis. 1993) (citing *Torriente v. Stackler,* 529 F.2d 498, 499 (7th Cir.1976)); *Doe v. Nevada*, 356 F. Supp. 2d 1123, 1125 (D. Nev. 2004) (in considering a motion for leave to amend, the court "construes all pleaded facts in the complaint as true and draws all inferences in favor of the plaintiff"); *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 231–32 (E.D. Pa. 2012) (concluding that, the complaint's "detailed factual allegations clearly raise the right to relief against [the defendant] above the 'speculative level.'"). An amendment is futile only if it fails to allege any facts which could conceivably support a valid theory of liability." *Acme Printing Ink Co. v. Menard, Inc.*, 881 F. Supp. 1237, 1243 (E.D. Wis. 1995). "The burden on the objecting parties to show futility of amendment is thus substantial." *Id.*; *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 95 (N.D. Ill. 2008) (reasoning that where, as here, a case is in an early stage of proceedings, "argument that futility is defined solely with reference to the summary judgment standard would effectively transform all Rule 15(a) motions into Rule 56 motions" and "that would be a

nonsensical—and thus impermissible—reading of Rule 15(a)"[7]  If Teva Ltd. were to file a new motion to dismiss, however, in considering whether the City made a *prima facie* case for personal jurisdiction, all factual conflicts are resolved in the City's favor.  *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  Even Teva Ltd. does not seem to dispute that the facts alleged, if true, support a valid theory of liability.  That is why it submitted two declarations in an effort to contest them. Regardless, it is clear that the City has satisfied the applicable standards and any further dispute over personal jurisdiction should take place in an evidentiary hearing like that which would have occurred had Teva (including Teva Ltd.) not settled the "Track One" cases on the eve of trial.

## II. Conclusion

Like Defendants, Teva Ltd. offers nothing to dispute that Rule 15 and Rule 21's standards are readily met by the City's proposed Fifth Amended Complaint.  Teva Ltd. can neither overcome the status of the MDL Court's personal jurisdiction ruling as law of the case nor show that the proposed Fifth Amended Complaint is not properly pled.  The City respectfully requests that its Motion for Leave to Amend be granted.

Dated: February 3, 2020                      Respectfully submitted,

                                             MARK FLESSNER
                                             **Corporation Counsel, City of Chicago**

                                             BY: /s/ *Linda J. Singer*
                                                    Linda J. Singer

---

[7] *See also, e.g.*, *In re AMF Bowling Sec. Litig.*, 99 CIV. 3023 (DC), 2003 WL 2012401, at *1–2 (S.D.N.Y. May 2, 2003) ("at this juncture, I reject defendants' argument that the proposed amendment would be futile. Any argument that subsequent disclosures to the market by AMF render some of plaintiffs' claims time-barred is best addressed at summary judgment").

11

Thomas P. McNulty
Fiona A. Burke
City of Chicago, Department of Law
30 N. LaSalle St., Suite 1240
Chicago, IL 60602
thomas.mcnulty@cityofchicago.org
fiona.burke@cityofchicago.org
Phone: (312) 744-6929
Fax:    (312) 742-3832

Linda Singer
Elizabeth Smith
David I. Ackerman
MOTLEY RICE LLC
lsinger@motleyrice.com
esmith@motleyrice.com
dackerman@motleyrice.com
401 9th Street NW, Suite 1001
Washington, DC 20004
Phone: (202) 232-5504
Fax:    (202) 386-9622

Kenneth A. Wexler
Bethany R. Turke
Kara A. Elgersma
2WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
kaw@wexlerwallace.com
brt@wexlerwallace.com
kae@wexlerwallace.com
Phone: (312) 346-2222
Fax:    (312) 346-0022

*Attorneys for Plaintiff City of Chicago*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of February, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

                                            */s/ Linda Singer*
                                              Linda Singer