## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | |
| v. | Case No. 14-cv-04361 |
| PURDUE PHARMA L.P., et al., | Honorable Jorge L. Alonso |
| Defendants. | Magistrate Judge Young B. Kim |

## JOINT STATUS REPORT

Pursuant to this Court's Orders dated February 27, 2020 (Dkt. No. 726), March 18, 2020 (Dkt. No. 743), and April 4, 2020 (Dkt. No. 745), Plaintiff City of Chicago ("the City") and Defendants[1] (the "Parties") hereby file this Joint Status Report regarding written discovery. The Parties have met and conferred on numerous occasions over the last several weeks, reaching agreement on many issues and narrowing disputes with respect to others. However, the Parties were unable to reach agreement on all topics addressed herein. This report identifies the areas of agreement and sets forth the Parties' respective positions on topics where they did not agree for the Court's consideration. This report also provides an update to the Court on topics that remain under discussion.

Although not required by the above-referenced Court Orders, the Parties have also met

---

[1] For purposes of this Joint Status Report, the "Defendants" include Teva Pharmaceuticals USA, Inc. ("Teva"); Cephalon Inc. ("Cephalon"); Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica Inc. n/k/a Janssen Pharmaceuticals, Inc. ("Janssen"); Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. ("Endo"); Allergan plc f/k/a Actavis plc and Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. ("Allergan"); Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., Actavis LLC, and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc. ("Actavis"); and Mallinckrodt LLC and SpecGx LLC ("Mallinckrodt"). To the extent a Defendant named in the Complaint is not listed in this paragraph, the City expects that Defendant will abide by the agreements set forth in this status report and the terms of the Court's order resulting from this report.

and conferred on their positions regarding deposition limits and respectfully ask the Court to rule on their proposals on this issue, as discussed below.

## I. WRITTEN DISCOVERY

### A. Interrogatories

On December 19, 2016, the Court issued an Order setting a written discovery schedule and certain limitations for written discovery. (*See* Dkt. No. 520 (the "December 2016 Order").) That Order allowed the City to serve up to 20 interrogatories each on the Allergan, Endo, Janssen, and Teva Defendants and allowed each Defendant Corporate Group (also referred to by the Court as "Defendant family") to serve no more than 20 interrogatories on the City. *See* Dkt. No. 520. The December 2016 Order does not address discovery related to Mallinckrodt as Mallinckrodt LLC was not a defendant in this action at that time.

Over the last several weeks, the Parties met and conferred on the numerical limits and scope for additional interrogatories to be served in the action. The Parties have reached an agreement with respect to the interrogatories concerning Mallinckrodt, specifically: Mallinckrodt may serve 20 interrogatories on the City, and the City may serve 20 interrogatories on Mallinckrodt pursuant to the December 2016 Order, in addition to whatever limits are imposed by the Court.[2]

The Parties, however, disagree on the number of interrogatories that the City and Defendants may serve beyond those permitted by the December 2016 Order.

### 1. The City's Position

The Parties (except Mallinckrodt) already have served and responded to interrogatories in this action prior to transfer to the Northern District of Ohio. Now that the case has been

---

[2] The Parties reserve the right to object to individual discovery requests or depositions on any ground, including but not limited to on the grounds that the discovery would be unreasonably cumulative, unduly burdensome, or duplicative of discovery already taken in the MDL or produced in the MDL by Defendants pursuant to Discovery Ruling No. 22 ("MDL DR 22") (Sept. 6, 2019). *See* Ex. A.

remanded, and the City has narrowed its claims, the City proposes the following limits on interrogatories for discovery remaining in the case:

- The City may serve up to 15 global interrogatories that each defendant family will answer, and up to 5 Defendant-specific interrogatories that each respective defendant family will answer; and

- Defendants may serve a total of 25 interrogatories on the City.[3]

This proposal recognizes the amount of discovery that has already occurred, both before and after transfer of this case to the MDL. It is possible the parties may not use all the allotted interrogatories, but this proposal provides an appropriate balance that avoids the potential need to return to the Court without unduly burdening any party.

The City's Fifth Amended Complaint ("5AC") narrowed the City's claims substantially, eliminating claims based upon the payment of false claims for reimbursement of opioid medication and insurance fraud. As noted in the City's Motion for Protective Order, in light of the MDL court's designation of the City's case as a "bellwether" for an early trial setting, the City decided to forego these claims and any associated relief—including any claim or remedy seeking recovery of amounts expended for prescriptions wrongly paid—in order to avoid the burden and intrusion associated with responding to discovery concerning those sensitive issues. The City's proposal thus strikes a balance between affording the Parties the ability to conduct additional discovery on the City's suspicious order monitoring theory while recognizing that interrogatories already have been served on other theories, and will be supplemented as noted below.

Defendants, on the other hand, propose that the City be required to answer more than twice as many interrogatories as any Defendant. This inequitable proposal ignores that the City

---

[3] Defendants' section purports to recite the history of negotiations on these topics. The City contends that the parties' prior negotiations are not relevant to the Court's consideration of this issue, and therefore we will not burden the Court with our corrections to their characterizations of those negotiations.

already has responded to 80 interrogatories in this action that 4 of the 5 Defendant families served prior to remand. And while it is true that Defendants have responded to interrogatories in the MDL and in other actions, many of those responses are likely duplicative of each other and/or contain information relevant solely to other jurisdictions or theories. The City here proceeds under its own municipal ordinances, and no other litigating jurisdiction may assert similar claims. Further, Defendants are not entitled to discovery from the City on the City's consumer protection claims and discovery on the City's cost recovery ordinance is limited as compared to the expansive discovery permitted in other jurisdictions.

Moreover, requiring Defendants to coordinate their interrogatories is not unreasonable in these circumstances. Each Defendant already has served (or, in the case of Mallinckrodt, will serve) 20 Defendant-specific interrogatories. Coordination will permit each Defendant to have the benefit of interrogatory responses obtained by any other Defendant in this case and will promote the efficient conduct of discovery. This is particularly true given that it is exclusively Defendants' conduct which is at issue with respect to the claims for civil penalties and injunctive relief. *See City of Chicago v. Purdue Pharma L.P.*, 211 F.Supp.3d 1058, 1070 (N.D. Ill. 2016) (explaining that, in an enforcement action "the City need not allege injury or causation to state a claim under ICFA").

### 2.    Defendants' Position

The City and certain Defendants served interrogatories pursuant to the December 2016 Order in early to mid-2017. Based on the then-operative complaint, those interrogatories related to the City's allegations that Defendants made false and misleading representations regarding the risks and benefits of prescription opioids (the "Marketing Theory"). They did not address the City's new allegations regarding Defendants' alleged failures to effectively monitor, report, and stop "suspicious" orders of prescription opioids (the "Suspicious Order Monitoring (SOM) Theory"), which the City asserted for the first time in its Fifth Amended Complaint. *See, e.g.*, 5AC ¶¶ 669-810, 899-900, 904-928.

4

Defendants initially proposed serving a total of 25 global interrogatories on the City, which the City agreed to on March 24, 2020. This proposal sought to account for the City's new SOM Theory, other changes in the City's allegations, and other developments since mid-2017. Defendants also offered that the City could serve up to 5 additional interrogatories on each Defendant Corporate Group—though, to be clear, Defendants do not believe that the City is entitled to *any* additional written discovery from the non-Mallinckrodt Defendants. The City already took discovery from these Defendants related to its Marketing Theory. And the City has access to even more written discovery served by all Defendants in the MDL related to both the Marketing Theory and SOM Theory. That discovery includes responses to interrogatories served in the MDL Track 1 matter, many of which were not tied to the Track 1 jurisdictions and relate to the City of Chicago. It also includes Defendants' substantial and ongoing productions in the MDL of written discovery responses served by Defendants in any court case outside the MDL. *See* MDL DR 22 at 4 (requiring Defendants to produce in discovery in the MDL all "written responses and discovery . . . regarding the marketing, sales, distribution, or dispensing of Opioids or Opioid Products, on an ongoing basis, for the Track Two cases"). As the City put it, this "significant national-level discovery" taken from Defendants in the MDL means that "the lion's share of affirmative discovery [as to Defendants] has been completed." Dkt. No. 701 at 6.

The Parties continued to exchange additional proposals leading up to their most recent telephonic meet and confer on April 15, 2020. Prior to that call, the City had proposed serving up to 15 global interrogatories on Defendants and up to 5 on each Defendant Corporate Group. In response, Defendants sought an additional 5 requests per Defendant Corporate Group. During the Parties' April 15 call, the City complained about a "disparity" in the interrogatory proposals, specifically, that Defendants' proposal—for 25 global interrogatories for Defendants and 5 interrogatories per Defendant Corporate Group—was unbalanced and would require the City to answer more requests than each Defendant would. Defendants attempted to address the City's concern by reducing the number of global interrogatories Defendants could serve from 25 (which

5

the City had already agreed upon) to 20 and keeping their request for 5 additional interrogatories per Defendant Corporate Group. The City refused this offer, arguing that it requires the City to answer over double the number of interrogatories of any individual Defendant Corporate Group, and counter-proposing that it be permitted to serve 20 interrogatories on all Defendants and 15 per Defendant Corporate Group.

The City's complaint about the "disparity" among the requests is unfounded. First, the Court's December 2016 Order contained the same structure, similarly allowing the City to serve "no more than 20 interrogatories on each Defendant Family" and "each Defendant Family . . . to serve no more than 20 interrogatories on the City." Dkt. No. 520. Second, the City's proposal does not account for the fact that Defendants have already answered *hundreds* of interrogatories that are available to the City, including interrogatories answered by Defendants in the MDL and in numerous state court actions, which have been produced into the MDL pursuant to MDL DR 22. Third, it is the City that has chosen to sue these Defendants. One consequence of that choice is that it must answer discovery from and about each of these Defendants. From the perspective of any given Defendant, that Defendant should not be constrained in its ability to defend itself against the City's claims on the basis that the City has named others as well.

Finally, the City's position that Defendants are not entitled to discovery on the consumer protection claims is unfounded. Indeed, the City offers no support for this statement. It is the City's burden to establish a false or misleading statement by Defendants, among other elements, for the consumer protection claims. Defendants are entitled to discovery from the City on what statements the City claims were false, when these statements were made, when the City first became aware of the falsity of those statements, and what about the statements make them false, among other issues. Furthermore, Defendants are entitled to discovery relevant to their defenses to the City's consumer protection claims, including on issues related to claims data as discussed below. *See infra* Section II.

6

In light of the significant number of interrogatories that Defendants (but not the City) has answered, and each Defendant's need to address new issues in this case, Defendants respectfully ask that the Court set the following numerical limitations for additional interrogatories in this action: (1) Defendants may serve 20 global interrogatories on the City and each Defendant Corporate Group may serve 5 interrogatories on the City; and (2) the City may serve up to 5 interrogatories on each Defendant Corporate Group.

**B. Requests for Production**

The December 2016 Order permitted the City to serve no more than 50 requests for production ("RFPs") on each Defendant Corporate Group, and allowed each Defendant Corporate Group to serve the same number of RFPs on the City. *See* Dkt. No. 520. The City and certain Defendants served RFPs pursuant to the December 2016 Order in early to mid-2017. The Parties agree to set the following limitations for additional RFPs in this action:

- the City can serve up to 10 RFPs on each Defendant Corporate Group;
- Defendants can serve up to 25 global RFPs on the City; and
- Mallinckrodt can serve an additional 20 RFPs on the City, and the City may serve an additional 20 RFPs on Mallinckrodt pursuant to the Court's December 2016 Order (Dkt. No. 520).

**C. Requests for Admission**

The Court's December 2016 Order did not address Rule 36 requests for admission ("RFAs"), and no party has served RFAs in this action. The Parties agree that the Court should set numerical limits on RFAs they can serve in this action, but are at an impasse regarding the limits that should be set.

**1. The City's Position**

The City proposes that the Court permit the City to serve 50 Requests for Admission on each Defendant family, and that the Court permit the Defendants collectively to serve 50

7

Requests for Admission on the City. The City further submits that the above limits should not include Requests that relate solely to the authentication of documents.

Requests for Admission "allow the parties to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree." *Sommerfield v. City of Chicago*, 251 F.R.D. 353, 355 (N.D. Ill. 2008). Nevertheless, the City recognizes that responding to Requests for Admission is time-consuming and, in the extreme cases, may be burdensome. *See, e.g., McCurry v. Kenco Logistic Servs.*, 2017 WL 11489901, at *2 (C.D. Ill. Dec. 8, 2017) (finding 453 Requests for Admission unduly burdensome). The City's proposal strikes a proper balance by requiring that all parties respond to an equal number of Requests for Admission.

Any other proposal would unfairly prejudice the City. If the Court permits each Defendant family to serve 50 Requests for Admission, the City would be responding to *five times* as many Requests as each Defendant. Similarly, if the limits were capped at 50 Requests for Admission per side, then the City could issue no more than 10 Requests for Admission to each party and would not be able to sufficiently narrow the issues for trial.

### 2. Defendants' Position

*Defendants' numerical limits for RFAs.* The City's objection regarding the supposed disparity of RFAs is unfounded for the same reasons discussed above. Consistent with the December 2016 Order, the Court should allow the City and each Defendant Corporate Group to serve the same number of RFAs. Defendants therefore propose that the Court permit (a) the City to serve up to 40 RFAs on each Defendant Corporate Group and (b) each Defendant Corporate Group to serve up to 40 RFAs on the City.

*RFAs related to authenticity of documents.* The Parties began exchanging proposals and conferring on numerical limits for RFAs, among other issues, on March 12, 2020. The Parties' negotiations continued over the following 5 weeks. Yet the City waited until April 16, 2020 to propose—for the first time—that RFAs "dealing solely with authentication of documents" be

excluded from the Parties' proposed RFA numerical limits. The Court should reject the City's last-minute attempt to add this exclusion. If the City wishes to serve RFAs on issues related to the authenticity of documents, it is free to do so within the limits set for RFAs by this Court. Allowing the City to serve an unlimited number of such RFAs would serve no purpose other than to cause undue burden and expense. It is more reasonable for the parties to meet and confer regarding any stipulations to the authenticity of documents at the appropriate time.

### D. Supplementation of Prior Interrogatory Responses

The Parties have met and conferred on the issue of supplementation of prior interrogatory responses and agree that all Parties shall supplement responses served in this action by June 16, 2020, 60 days from the filing of this report.

### E. Proposed Custodians and Search Terms

The Parties exchanged their proposed custodians and search terms on March 30, but are still in the process of meeting and conferring on these topics. The Parties have agreed to continue meeting and conferring in an attempt to further narrow their disputes.

## II. DEPOSITION LIMITS

In addition to discussing written discovery, the Parties have also met and conferred on deposition limits. The December 2016 Order granted Defendants 350 hours of party depositions and the City 525 hours of party depositions. *See* Dkt. No. 520. The Parties agree to the following adjustments to the December 2016 Order and additional limitations on depositions:

- the City cannot re-depose any defense witnesses previously deposed in the MDL unless agreed upon or ordered by the Court; and

- the City's total allotment of hours for party depositions (i.e., for depositions of current and former employees of Defendants) should be reduced from 525 hours to 225 hours, with an aggregate limit of 60 hours for depositions as to each Defendant Corporate Group.

The Parties dispute whether the 350 hours the Court previously allotted to Defendants for party depositions should be reduced.

### 1. The City's Position

The Court previously permitted Defendants 350 deposition hours of current and former City employees. Given competing demands on the time of City personnel and the elimination of the State's prescription-based claims, Plaintiffs submit that the prior 350 hour limit is no longer appropriate. In light of the narrowed focus of this litigation, the City proposes that the Court reduce that number to 250 deposition hours. As noted above, Defendants are not entitled to discovery from the City on the City's consumer protection claims, which solely concern Defendants' own actions.

250 deposition hours affords Defendants the equivalent of more than 35 7-hour depositions of City employees. Defendants therefore will have more than enough time to discover the information they claim to require in this streamlined litigation. The hours limit also encourages Parties to take shorter, more efficient depositions and incentivizes Parties not to waste time on marginally relevant issues.

### 2. Defendants' Position

The Court should not revisit the number of hours of party depositions it granted Defendants. The City argues that the Fifth Amended Complaint streamlines the case because it drops the City's false claims causes of action. Based on its voluntary dismissal of these causes of action, the City takes the position that Defendants no longer need to conduct certain discovery, such as on issues related to claims data and the City's reimbursement of opioid prescriptions. Accordingly, the City proposes reducing Defendants' hours of party depositions from 350 hours to 300 hours.

Defendants have not yet taken any depositions of current or former City employees, and despite the City's contention, the Fifth Amended Complaint *expands* its claims in this case. The City added an entirely new theory of liability against Defendants, which undermines its position

10

that Defendants' hours of party depositions should be reduced. In support of its SOM Theory, the City alleges that "Defendants created a vastly and dangerously larger market for opioids . . . [and] compounded this harm by facilitating the supply of far more opioids that could have been justified by a legitimate market." *Id*. at ¶ 669. It further asserts that "Defendants systematically failed to comply with the law. Their shipments of orders destined for unlawful channels, and their failure to report and halt potentials diversion, perpetuated the opioid epidemic in Chicago and imposed, and continue to impose, substantial costs upon the City." *Id*. at ¶ 681. Defendants will need to depose Chicago witnesses regarding their knowledge of suspicious orders that allegedly should have (but were not) reported to officials and the alleged impact those orders had on the City.

And even though the City dropped its false claims causes of action, discovery on issues related to claims data and the City's opioid reimbursement practices remains not only relevant but critical to the City's claims and Defendants' defenses. As discussed in further detail in Defendants' concurrently-filed Opposition to Plaintiff's Motion Concerning Production of Medical and Pharmaceutical Claims Data (*see* Dkt. No. 751), each of the City's claims relies on alleged misrepresentations, chief among those being that Defendants allegedly promoted opioids for an improper use: the long-term treatment of chronic non-cancer pain. Defendants need to examine whether a doctor ever received any marketing from any Defendant, whether any marketing by any Defendant changed a doctor's prescribing, whether the City continues to reimburse opioid prescriptions for diagnoses it claims here are medically unnecessary, and whether prescriptions of Defendants' medications resulted in harm to the City, among other subjects.

Simply put, there is no reason for the Court to lessen the amount of time it previously provided to Defendants (350 hours) for party depositions when Defendants will need to depose just as many—if not more—Chicago witnesses on issues raised by the City's expanded claims.

11

### III. CASE MANAGEMENT ORDER

#### 1. The City's Position

The City contends that, in addition to addressing limits on discovery as set forth above, the Court is expecting to set a schedule to govern at least discovery and summary judgment. At the March 11, 2020 status conference, the Court denied the City's motion for entry of a scheduling order but confirmed the urgency of this action given the ongoing opioid epidemic. Specifically, Judge Alonso stated on the record that "The case is, of course, very important and time is of the essence."[4] Judge Alonso confirmed "that it is my responsibility to push the case" and expressed his "full faith in Judge Kim and the fact that he will move things along, he will hold the parties' feet to the fire, if you will, and he will prioritize the case."[5] Judge Alonso also confirmed that, given the age of the case, he was "anxious to get the case tried this year," especially in light of the fact that the other cases remanded at the same time have already been set for trials in August and November of this year.[6]

At that same hearing, counsel for Defendants argued that Judge Alonso should not enter a case schedule because the parties were "to submit a joint proposal on a written discovery plan *with dates*, to" Judge Kim.[7] The Court also "authorize[d] Judge Kim to set a briefing [schedule] on a motion for summary judgment."[8] Consistent with that understanding, the parties exchanged proposed schedules in early March, prior to entry of the first General Order. The City proposed the schedule set forth below to Defendants on March 12.

The City continues to prioritize this litigation because of its belief in the extremely high public health costs of the opioid crisis, despite the current circumstances surrounding COVID-19 and the important resources that the City must also devote to the pandemic. Consistent with the

---

[4] 3/11/20 Tr. at 8:6-7.
[5] *Id*. at 8:13-15.
[6] *Id*. at 10:5-6.
[7] *Id*. at 5:2-5.
[8] *Id*. at 9:23-25.

Court's direction, the City has proposed a Case Management Order that would complete the remaining discovery and motions practice in advance of a 2020 trial date. At this time, the parties may appropriately focus on document discovery, which may be done remotely. The area of discovery that has proved most contentious has been the conduct of depositions, and the schedule the City proposes would allow the parties to moot any such dispute by agreeing upon a June date to begin deposition discovery. If "stay at home" orders remain in effect at that time, the City will be willing to discuss with Defendants whether the parties may conduct depositions of certain personnel remotely and is optimistic that the parties will be able to agree on a protocol to permit that to happen. Consistent with Judge Alonso's directives, the City's proposal also affords sufficient time for summary judgment and pretrial briefing.

The City therefore proposes the following schedule to govern discovery and summary judgment briefing and to permit a trial in December of this year. The City also proposes that the Court schedule weekly or bi-weekly discovery conferences to ensure that discovery disputes are resolved expeditiously:

| TASK | DATE |
| --- | --- |
| Substantial Completion of Document Production: | June 19, 2020 |
| End of Fact Discovery: | August 7, 2020 |
| Submission of The City's Expert Reports: | August 10, 2020 |
| Submission of Defendants' Expert Reports: | September 7, 2020 |
| End of Expert Discovery: | October 2, 2020 |
| Summary Judgment Motions and Statements of Material Facts Per LR 56.1: | October 5, 2020 |

| Responses to Summary Judgment Motions and Responses to LR 56.1 Statements of Material Facts: | October 26, 2020 |
|---|---|
| Replies in Support of Summary Judgment Motions and Responses to LR 56.1 Additional Statements of Fact: | November 9, 2020 |
| Daubert and Motions in Limine: | November 13, 2020 |
| Responses to Daubert and Motions in Limine: | November 25, 2020 |
| Trial: | December 1, 2020 |

### 2. Defendants' Position

The City's proposed schedule is unworkable for several reasons. To start, the Parties are still meeting and conferring regarding custodians, non-custodial data sources, and search terms. Thus, the City's position that substantial document production can be completed in a little over two months, and that fact discovery can be completed in under four months, is unrealistic.

While discovery from Defendants is advanced given the work done in the MDL, discovery from the City is just beginning. For this and the other reasons set out in Defendants' section of the Parties' previous Joint Status Report in January (Dkt. No. 701), the City's schedule is not realistic. Since then, only more delay has occurred.

Even without the complications caused by the COVID-19 pandemic, the City's schedule would not be feasible. In light of the pandemic, the City's proposed schedule is impossible. It ignores that the pandemic that will for the foreseeable future impose strain on the resources of the City, Defendants, and third parties. City officials, including those involved in this litigation or from whom discovery will be taken, are in the midst of providing critical public services in this time of crisis. Defendants' employees serve in critical roles of the pharmaceutical chain that

is a part of that effort. And everyone is affected by the unprecedented impact of shelter-in-place orders and other restrictions on daily life.

The City of Chicago, in particular, has felt this impact. Indeed, on April 15, 2020, Mayor Lightfoot acknowledged that the City is "not where [it] need[s] to get in terms of thinking about . . . lifting the stay. . . Many things are needed for [the City] to lift the restrictions [it has] in place."[9] Under these circumstances, the City's proposed schedule is a non-starter.

The City suggests the possibility of remote depositions but has neither discussed this with Defendants nor proposed parameters for how such depositions could take place. Defendants are willing to meet and confer with the City on this issue, but have concerns about the appropriateness of any such depositions in light of the numerous substantive, procedural, technical, and other challenges remote depositions present. Remote depositions impose a substantial and unfair burden on witnesses and Parties by forcing deponents to provide testimony in circumstances where they are prevented from physically meeting with counsel to prepare and are expected to attend a deposition alone. Technological challenges, including ensuring appropriate internet speed and reliability, may present difficulties. Remote depositions also give rise to confidentiality concerns in depositions that require discussion of sensitive information and materials produced by the Parties and third parties, including materials designated as Confidential or Highly Confidential under the protective order.

Neither the Parties, nor the Court, are in a position to know when the City, or the nation, will re-open and return to normalcy. With the understanding that the below schedule is subject to change in light of COVID-19, Defendants propose the following:

---

[9] *See* https://blockclubchicago.org/2020/04/15/chicago-is-flattening-the-curve-lightfoot-says-but-this-is-not-over-yet/

| *TASK* | *DATE* |
|---|---|
| Substantial Completion of Document Production: | October 12, 2020 |
| End of Fact Discovery: | February 1, 2021 |
| Submission of The City's Expert Reports: | February 22, 2021 |
| Submission of Defendants' Expert Reports: | April 15, 2021 |
| End of Expert Discovery: | May 17, 2021 |
| Summary Judgment Motions and Statements of Material Facts Per LR 56.1: | June 9, 2021 |
| Responses to Summary Judgment Motions and Responses to LR 56.1 Statements of Material Facts: | June 30, 2021 |
| Replies in Support of Summary Judgment Motions and Responses to LR 56.1 Additional Statements of Fact: | July 14, 2021 |
| Hearing on Summary Judgment Motions: | July 28, 2021 |
| Daubert and Motions in Limine: | August 23, 2021 |
| Responses to Daubert and Motions in Limine: | September 7, 2021 |
| Replies in Support of Daubert and Motions in Limine | September 16, 2021 |
| Hearing on Daubert and Motions in Limine: | September 30, 2021 |
| Trial: | October 25, 2021 |

Dated:   April 17, 2020

Respectfully submitted,

/s/ Kara A. Elgersma
Kenneth A. Wexler
Bethany R. Turke
Kara A. Elgersma
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
kaw@wexlerwallace.com
brt@wexlerwallace.com
kae@wexlerwallace.com
Phone: (312) 346-2222
Fax: (312) 346-0022

Thomas P. McNulty
Fiona A. Burke
City of Chicago, Department of Law
30 N. LaSalle St., Suite 1240
Chicago, IL 60602
thomas.mcnulty@cityofchicago.org
fiona.burke@cityofchicago.org
Phone: (312) 744-6929
Fax: (312) 742-3832

Linda Singer
Elizabeth Smith
David I. Ackerman
MOTLEY RICE LLC
lsinger@motleyrice.com
esmith@motleyrice.com
dackerman@motleyrice.com
401 9th Street NW, Suite 1001
Washington, DC 20004
Phone: (202) 232-5504
Fax: (202) 386-9622

*Attorneys for Plaintiff City of Chicago*

/s/ *Charles C. Lifland*
Charles C. Lifland  (*admitted pro hac vice*)
Sabrina H. Strong  (*admitted pro hac vice*)
Esteban Rodriguez  (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
clifland@omm.com
sstrong@omm.com
esrodriguez@omm.com

Amy R. Lucas (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1999 Avenue Of The Stars
Los Angeles, CA 90067
Telephone: (310) 246-6784
Facsimile: (310) 246-6779
alucas@omm.com

Sherry A. Knutson (#6276306)
TUCKER ELLIS LLP
233 South Wacker Drive, Suite 6950
Chicago, Illinois  60606
Telephone: (312) 624-6300
Facsimile: (312) 624-6309
sherry.knutson@tuckerellis.com

*Attorneys for Defendants Janssen
Pharmaceuticals, Inc., Johnson &
Johnson, Janssen Pharmaceutica, Inc.
n/k/a Janssen Pharmaceuticals, Inc., and
Ortho-McNeil-Janssen Pharmaceuticals, Inc.
n/k/a Janssen Pharmaceuticals, Inc.*

/s/ *Karl Stampfl*
Donna Welch, P.C.
Timothy W. Knapp
Karl Stampfl
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
donna.welch@kirkland.com
tknapp@kirkland.com
karl.stampfl@kirkland.com

Jennifer G. Levy, P.C. (admitted pro hac vice)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jlevy@kirkland.com

*Attorneys for Allergan plc (f/k/a Actavis plc)*
*and Allergan Finance, LLC (Actavis, Inc.*
*f/k/a Watson Pharmaceuticals, Inc.)*

/s/ *Andrew J. O'Connor*
Andrew J. O'Connor (*admitted pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 235-4650
andrew.oconnor@ropesgray.com

Sarah M Kimmer
ROPES & GRAY LLP
191 North Wacker Drive
Chicago, IL 60606
Telephone: (312) 845-1244
sarah.kimmer@ropesgray.com

*Attorneys for Mallinckrodt LLC and SpecGx*
*LLC*

18

/s/ *Tinos Diamantatos*
Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601
(312)-324-1000
Firm Id # 40417
tinos.diamantatos@morganlewis.com

Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
T: 215.963.5840
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

*Attorneys for Teva Pharmaceuticals, U.S.A.,*
*Inc., Cephalon, Inc., Watson Laboratories,*
*Inc., Actavis LLC, and Actavis Pharma, Inc.*

/s/ *Jonathan L. Stern*
Jonathan L. Stern
Joshua M. Davis
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Phone: 202-942-5000
jonathan.stern@arnoldporter.com
joshua.davis@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Phone: 213-243-4000
sean.morris@arnoldporter.com

*Attorneys for Endo Health Solutions Inc. and*
*Endo Pharmaceuticals Inc.*

19

## SIGNATURE ATTESTATION

Pursuant to the Northern District of Illinois's General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories concur in the filing's content.

/s/ *Amy R. Lucas*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2020, I caused to be electronically filed the foregoing Joint Status Report to be filed with the clerk of the court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

/s/ *Amy R. Lucas*

EXHIBIT A

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: | ) ) | SPECIAL MASTER COHEN |
| *"Track Two Cases"* | ) ) ) ) | DISCOVERY RULING NO. 22 |

       The parties have submitted position papers to the undersigned related to "Agenda Item No.

227." The genesis of the issue raised by this Agenda Item was Plaintiffs' Status Report for the

Court's June 18, 2019 Status Conference, where Plaintiffs asked the Court to order that:

> Defendants [must] produce copies of all sworn statements, testimony, video-taped testimony, written responses and discovery, expert reports, and other documents and discovery produced in any court case, mediation, government investigation, government hearing, or arbitration regarding the marketing, sales, or distribution of Opioids or Opioid Products, including any exhibits referred to in that testimony, on an ongoing basis, for the Track Two cases.

Status Report. at 11-12. During the telephonic status conference itself, the Court stated that: (1) it

agreed with the general principal that the MDL should serve as a central repository for all opioid-

related discovery; (2) the requested documents appeared to be generally discoverable and probably

relevant; and (3) granting the request would serve to advance coordination between Federal and

State court litigation; but (4) some details still needed to be worked out.

       In their position papers, Defendants assert several arguments why the Court should reject

Plaintiffs request.[1]  With a minor exception, the Special Master finds these arguments are not well-taken.

Defendants argue that Plaintiffs' request essentially seeks reconsideration of Discovery Rulings No. 2 and No. 9, which set limits on the type and scope of related discovery from State cases that Defendants had to produce in the MDL.  Having reviewed those Rulings and the reasoning underlying them, the Special Master concludes that circumstances have changed to the point where there is no longer good reason for at least some of the limits earlier imposed.  For example, in their position paper, Defendants note the burden of briefing *Daubert* and summary judgment motions and assert that producing the requested additional discovery would be an exceedingly onerous *additional* burden that is too difficult to shoulder.  But the briefing is now finished, the Court has severed numerous Defendants from the Track One trial, other Track One Defendants have settled, and the expedited discovery schedule for Track One is long over.  While there is certainly a great amount of additional work to be done by the remaining Track One Defendants to prepare for trial, there will always be a burden of this sort in this MDL.  Moreover, the hoped-for end result of having all opioid-related discovery produced in this MDL is a *decreased* burden for all parties, including Defendants, who can simply point any future Plaintiffs (including Plaintiffs in additional MDL Track cases, remanded cases, and even State court cases) to the MDL repositories.  In sum, the "burden" argument is not well-taken at this juncture.

Defendants also argue the requested ruling is "premature" because discovery in Track Two has not yet opened.  It suffices to say Track Two discovery will open very soon, so this objection

---

[1]  *See* Agenda Item 227, exhibit 227A (July 15, 2019 letter to Special Master Cohen from Dale Rice), and exhibit 227C (July 24, 2019 letter to Special Master Cohen from Amy Lucas).

is inapposite. And Defendants' argument that "jurisdiction-specific" documents from cases outside of Ohio (home of the Track One Plaintiffs) or West Virginia (home of the Track Two Plaintiffs) are irrelevant is also not well-taken. Some such documents may be *less*-relevant, but discovery in Track One has revealed that many (if not most) of the Defendants' relevant practices, policies, and procedures were applied nationwide, suggesting strongly that the documents produced in (for example) State-court cases will also be relevant to the Track Two cases and to other MDL cases that will follow.

The Special Master does not address seriatim each of the other arguments Defendants make in their position letters, instead noting only that the Master has weighed each point during careful consideration of the nine factors enumerated in Fed. R. Civ. P. 26(b)(1): "Parties may obtain discovery regarding any [i] nonprivileged matter that is [ii] relevant to any party's claim or defense and [iii] proportional to the needs of the case, considering [iv] the importance of the issues at stake in the action, [v] the amount in controversy, [vi] the parties' relative access to relevant information, [vii] the parties' resources, [viii] the importance of the discovery in resolving the issues, and [ix] whether the burden or expense of the proposed discovery outweighs its likely benefit."

Accordingly, the Special Master concludes Plaintiffs are entitled to the requested Order. The "minor exception" referred to above, however, is that Plaintiffs' request is slightly too broad. For example, in addition to asking the Defendants to produce in the MDL documents produced in related State-court matters, Plaintiffs seek documents produced in "any mediation." Defendants correctly observe that many documents produced in mediation will be covered by settlement privilege, and those that are not covered by privilege will likely also have been produced in litigation. Accordingly, the Special Master tailors Plaintiffs' request and **ORDERS** as follows:

- Defendants shall produce in discovery in this MDL copies of all sworn statements, testimony, video-taped testimony, written responses and discovery, expert reports, and other documents and discovery that they produce in any court case, government investigation, or government hearing, regarding the marketing, sales, distribution, or dispensing of Opioids or Opioid Products, including any exhibits referred to in that testimony, on an ongoing basis, for the Track Two cases; except Defendants shall not produce any privileged materials, and instead shall produce privilege logs listing those materials, as has been the existing practice.
- Defendants shall "roll out" production of this discovery beginning as soon as reasonably possible, rather than collect it all and produce it all at once.
- This Ruling is incorporated in advance into the Track Two Case Management Order, which is forthcoming.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: September 6, 2019**

4