**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, <br><br> Plaintiff, <br><br> v. <br><br> PURDUE PHARMA L.P,; et al., <br><br> Defendants. | Case No. 14-cv-04361 <br><br> Honorable Jorge L. Alonso <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WATSON
LABORATORIES, INC., ACTAVIS LLC, AND ACTAVIS PHARMA. INC. f/k/a
WATSON PHARMA, INC.'S MOTION TO DISMISS PLAINTIFF'S
<u>CORRECTED FIFTH AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 3

III. LEGAL ARGUMENT ....................................................................................................... 5

    A. The City's False Marketing Claims (Counts I-IV) Must Be Dismissed ................ 6

        1. The City Alleges No False Marketing By The Actavis Generic Entities In Chicago, Much Less With The Specificity Required By Rule 9(b). ........................................................................................................ 6

        2. The False Marketing Claims Are Preempted To The Extent They Rely Upon A Failure To Disclose Theory. ................................................ 8

            a. The FDCA Imposes A "Duty Of Sameness" On Generic Manufacturers. ................................................................................. 9

            b. Controlling Supreme Court Law Makes Clear That Failure To Disclose Claims Against Actavis Generic Entities Are Preempted. ..................................................................................... 10

            c. The City's Claims Imply A Duty To Warn Incompatible With Federal Law And Are Likewise Preempted ........................ 11

        3. Counts II And IV Fail For Lack Of Causation. ....................................... 13

    B. The City Offers No Basis For Its Failure-To-Prevent Diversion Claims (Counts I-IV) Against The Actavis Generic Entities. .......................................... 14

III. CONCLUSION ................................................................................................................ 15

I.  **INTRODUCTION**

After more than five years and six pleadings, the City of Chicago ("Plaintiff" or the "City") still fails to identify a single false or misleading statement made by Watson Laboratories, Inc. ("Watson"), Actavis LLC ("Actavis LLC"), or Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. ("Actavis Pharma") (collectively, the "Actavis Generic Entities") in Chicago or anywhere else. The reason for this is clear: the Actavis Generic Entities only manufacture and sell generic medicines, and they *did not* and *do not* promote the safety and efficacy of their generic medicines. As numerous courts have recognized, generic manufacturers are different from brand manufacturers in that they "compete on price and avoid marketing to physicians because the costs of such marketing severely impact their ability to offer the significantly lower prices upon which they compete." *New York v. Actavis, PLC,* No. 14-CIV-7473, 2014 WL 7015198, at *27 (S.D.N.Y. Dec. 11, 2014), *aff'd sub nom. New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015). Even the City recognizes that such generic medicines are not "directly marketed." (5AC ¶ 290 n.100.) This Court has not yet addressed this critical difference between brand manufacturers and generic manufacturers (like the Actavis Generic Entities).

The City's claims rest in large part on a fraudulent marketing theory, yet the Corrected Fifth Amended Complaint ("5AC") fails to contain a single particularized allegation against any of the Actavis Generic Entities. The City fails to identify a single interaction between any Actavis Generic Entity and the City; a single false or misleading statement made by any Actavis Generic entity to anyone, let alone the City; or a single opioid prescription that was somehow written because of a false or misleading statement made by any Actavis Generic Entity. Nor does the exhibit to the 5AC even mention the Actavis Generic Entities or link them to any false statement, prescription, or patient in Chicago. Since the Actavis Generic Entities did not promote their

generic medicines, there can be no false promotion. And since there is no false promotion, all false marketing claims fail.[1]

The City's claims are not saved by the 5AC's rampant group pleading. The City cannot meet its pleading burden as to each Actavis Generic Entity simply by lumping them together with five unrelated and independent companies under the fictitious "Actavis" moniker, and then grouping this fictional "Actavis" entity together with more than a dozen other separate manufacturer defendants. Controlling Seventh Circuit law precludes this pleading approach. And the Actavis Generic Entities cannot be held liable under Illinois law for the marketing actions of other defendants regarding different medicines in which they had no involvement. As a result, all marketing claims should be dismissed.

Nor can the City base its false marketing claims upon a failure to warn or communicate theory—that is, that the Actavis Generic Entities did not sufficiently disclose the risks of using opioids to treat chronic pain, despite the labels on those medicines. Any such claims are preempted because they seek warnings and communications by generic manufacturers beyond those in the labels of their generic medicines—actions that federal law expressly prohibits. Under *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) and *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472 (2013), state law claims that would require generic manufacturers to violate federal law and provide warnings or communications beyond those provided in their generic labels are preempted. They violate the "sameness" duty imposed upon generic drug manufacturers under the Food Drug & Cosmetic Act ("FDCA"): that the design and warnings of a generic drug must at all times be

---

[1] Defendants have filed a joint motion to dismiss the 5AC ("Joint Motion"), which the Actavis Generic Entities join. The Actavis Generic Entities are sister subsidiaries of Teva Pharmaceuticals USA, Inc. and Cephalon, Inc., which have filed a separate individual motion to dismiss ("Teva Motion"). The Actavis Generic Entities adopt and incorporate the arguments contained in the briefs filed in support of the Joint Motion and Teva Motion.

identical to those of its branded equivalent medicine. 21 U.S.C. § 355(j)(2)(A). Indeed, such broad preemption principles preclude state law claims that seek to force generic manufacturers to communicate information unilaterally beyond the content of the labels of their generic medicines (or that would hold them liable for failing to warn). *Mensing*, 564 U.S. at 617. For this reason, under *Mensing* and other controlling Supreme Court law, the City's false marketing claims based upon a failure to disclose theory are preempted.

Lastly, the City makes conclusory allegations about "Defendants'" failure to maintain controls to prevent the diversion of their opioid medicines and making false statements about the sufficiency of their systems to monitor, report, and halt suspicious opioid orders placed by licensed distributors. But the City does not identify a single fact to show that any Actavis Generic Entity failed to comply with any diversion monitoring or reporting obligations. The City does not identify a single suspicious order that any Actavis Generic Entity failed to report, much less any in Chicago. And the City does not identify a single false or misleading statement that any Actavis Generic Entity made to anyone about its suspicious ordering monitoring ("SOM") system. Accordingly, any claims based upon this failure-to-prevent diversion theory should be dismissed.

## II. BACKGROUND

The Actavis Generic Entities manufacture and sell only generic medicines. The Actavis Generic Entities were sold by Allergan plc in 2016, after the parties finished briefing motions to dismiss the City's Second Amended Complaint ("SAC"). (5AC ¶ 39.) But the City still incorrectly groups the Actavis Generic Entities with brand manufacturers belonging to the Allergan corporate family as part of what the 5AC collectively (and inaccurately) refers to as "Actavis." (*Id.* ¶ 57.) Other than identifying the state of incorporation and principal place of business for Watson, Actavis Pharma, and Actavis LLC, and incorrectly asserting that each "is owned by Allergan plc," the City asserts no individual allegations against any of the Actavis Generic Entities. (*Id.*)

Instead, the City incorrectly alleges that the fictitious "Actavis" entity markets and sells the branded medications Kadian and Norco. (*Id.* ¶ 58.) The City's allegations against the fictitious "Actavis" are based almost exclusively on the alleged fraudulent marketing of the branded medication Kadian. (*See, e.g., id.* ¶¶ 131, 290–95, 298, 306–08, 310–11, 317, 319, 322–23.) Even Exhibit D to the 5AC, which is intended to "summarize data showing the number of prescriptions" of Defendants' opioid medications prescribed by certain prescribers (5AC ¶ 323), does not show the prescription of any generic opioid medicine manufactured by any Actavis Generic Entity. (ECF No. 727-2 at 1.) And critically, the City does not make any particularized allegations that any of the Actavis Generic Entities had any involvement in the promotion of the branded medication Kadian. The Actavis Generic Entities manufacture and sell only generic medicines and do not market them. There are no allegations in the 5AC to the contrary.

The manner in which generic drug companies like the Actavis Generic Entities operate is vastly different from the way brand-name drug companies market and promote their products. Generic drug manufacturers do not promote or advertise their generic medications to doctors or consumers—which is largely the result of drug substitution laws. *Actavis, PLC*, 787 F.3d at 644. A pharmacy's ultimate dispensing of a generic opioid medicine results from a doctor first choosing to write a prescription for his or her patient for a branded drug; the generic product is then substituted for the more expensive branded products by the pharmacist. *See, e.g.*, 225 ILCS 85/25 (describing process). Because a prescriber has no control over which generic manufacturer's product is substituted for the more expensive branded products, generic products are not marketed to prescribers or consumers. *Actavis, PLC*, 2014 WL 7015198, at *27.

Notwithstanding the 5AC's failure to identify a single misrepresentation or omission made by the Actavis Generic Entities (much less in Chicago), the City alleges in conclusory fashion that

they—along with over a dozen independent and competing manufacturers—worked together to engage in a "deceptive and unfair marketing campaign" to minimize the risks of using opioids, thereby causing prescribers to write medically inappropriate prescriptions of opioids. (5AC ¶¶ 7–8.) Further, the City asserts for the first time that "Defendants" "failed to put in place adequate systems to guard against diversion of their opioids," (*id.* ¶¶ 15, 919(h)), and that "Defendants" allegedly failed to "investigate, report, and refuse to fill [opioid] orders that it knew or should have known were suspicious" (*id.* ¶ 15), while purportedly marketing themselves as having adequate SOM systems in place (*id.* ¶¶ 802, 908(i)). Although the City fails to link any Actavis Generic Entity to a single suspicious order or medically inappropriate prescription (much less one that the City paid for), the City seeks to recover a vaguely-defined set of downstream government costs associated with opioid abuse. (*Id.* ¶ 943.)

## III. **LEGAL ARGUMENT**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1064 (N.D. Ill. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In addition, Rule 9(b) imposes a heightened pleading requirement on parties making "averments of fraud" to state with particularity the circumstances constituting fraud. *Id.* (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). "This 'ordinarily requires describing the who, what, when, where, and how of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case.'" *Id.* (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

Applying these principles, the City fails to plead a cognizable claim against the Actavis Generic Entities. The City's claims against the Actavis Generic Entities rest upon two legal theories: (1) they falsely marketed their opioid medicines; and (2) they lacked adequate SOM

systems to prevent diversion and made misstatements about the adequacy of those systems. Both theories fail as a matter of law.

### A. The City's False Marketing Claims (Counts I-IV) Must Be Dismissed.

#### 1. The City Alleges No False Marketing By The Actavis Generic Entities In Chicago, Much Less With The Specificity Required By Rule 9(b).

Each claim against the Actavis Generic Entities rests primarily upon allegations of false marketing: that the Actavis Generic Entities—along with the other Defendants—made fraudulent misrepresentations and omissions regarding the safety and efficacy of opioids for the treatment of chronic pain.[2] Thus, as this Court has already held, the City must satisfy the heightened pleading standard of Rule 9(b). *City of Chicago*, 211 F. Supp. 3d at 1071, 1075–76. The City does not and cannot do so as to the Actavis Generic Entities for several reasons.

*First*, the 5AC fails to make a single factual allegation of wrongdoing against any one of the Actavis Generic Entities. The City's allegations with respect to the individual Actavis Generic Entities are confined to a single conclusory background paragraph in the "Defendants" section of the 5AC. (5AC ¶ 57.) The remaining allegations concern the alleged marketing of the branded medication Kadian by the fictitious "Actavis." (*See, e.g., id.* ¶¶ 290–95, 298, 306–08, 310–11, 317, 319, 322–23.) The reason the City pled in this manner is clear: the Actavis Generic Entities sold generic medicines and did not promote their safety and efficacy. *See Actavis, PLC*, 2014 WL 7015198, at *27. The City even acknowledges this reality, alleging that generic medicines are not "marketed by sales representatives." (5AC ¶ 290 n.100.) Thus, there is no false marketing to plead. The City fails to identify a single false statement made by Watson, Actavis Pharma, or Actavis LLC—much less one made in Chicago.

---

[2] *See, e.g.*, 5AC ¶¶ 914 (Count I), 919(c) (Count II), 932 (Count III), 939(a) (Count IV).

Unable to plead any false marketing by the Actavis Generic Entities, the City appears to seek to introduce an unprecedented theory of liability: that the Actavis Generic Entities should be held liable for alleged false marketing by others with respect to entirely different medications, merely because the sale of their generic medicines may have benefited from such marketing. (*See* 5AC ¶ 290 n.100 ("Actavis" sold generic opioid medications which were not marketed but "benefited from Actavis's overall promotion of opioids.").) This turns tort law on its head. The mere fact that a generic medication is ultimately dispensed to a patient is not a basis to hold a generic manufacturer liable for marketing-related conduct that the company never engaged in. The Actavis Generic Entities cannot be held responsible for fraudulent marketing they never engaged in. Such an unsupported and dangerous theory of liability would eviscerate basic legal principles and fundamental due process requirements—and it has been rejected by the United States Supreme Court as a matter of law. *See Bartlett*, 570 U.S. at 488 (finding preempted theory that generic manufacturers are liable merely because they sold their generic medicines).

The City attempts to mask this deficiency by engaging in improper group pleading. It lumps the three Actavis Generic Entities together with five independent companies under the fictitious "Actavis" name, and then for hundreds of allegations further groups this fictional entity with over a dozen independent and competing manufacturers under the "Defendants" label. As a matter of controlling Seventh Circuit law, this is improper. *See, e.g.*, *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328–29 (7th Cir. 1994) ("when the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud."); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (applying principle and citing Seventh Circuit cases "reject[ing] complaints that have 'lumped together' multiple defendants").

*Second*, even if the City had satisfied its pleading burden under *Iqbal* and *Twombly* (and it has not and cannot), the 5AC lacks particularized facts of fraud by the Actavis Generic Entities, as required by Rule 9(b). *City of Chicago*, 211 F. Supp. 3d at 1064 ("party alleging fraud" must describe "the who, what, when, where, and how of the fraud." (quoting *AnchorBank*, 649 F.3d at 615)). Here, the City fails to allege a single statement attributable to the Actavis Generic Entities that reached a Chicago prescriber, a patient who received an opioid prescription at issue, or the City itself. Because of this failure, the City does not, and cannot, plead the specific details of any such statement, such as who made it, when, to whom, and why it is purportedly false. *See, e.g.*, *Ind./Ky./Ohio Reg'l Council of Carpenters Welfare Fund* v. *Cephalon, Inc.*, No. CIV.A. 13-7167, 2014 WL 2115498, at *4–9 (E.D. Pa. May 21, 2014) (applying rule to dismiss allegations of false marketing against pharmaceutical manufacturers of opioid medicines). Nor has the City even attempted to plead facts to show that any marketing by the Actavis Generic Entities misled any Chicago prescriber to write an inappropriate prescription, much less one that caused any harm to any Chicago resident. As a result, all claims against the Actavis Generic Entities based upon the City's flawed false marketing theory should be dismissed.

### 2. The False Marketing Claims Are Preempted To The Extent They Rely Upon A Failure To Disclose Theory.

As described above, there are no specific allegations that the Actavis Generic Entities promoted generic medicines (and they did not). As a result, the City's false marketing claims appear to be predicated upon the theory that the Actavis Generic Entities failed to warn physicians and others about the risks of opioids. Such claims, however, are barred as a matter of law under the well-settled *Mensing* preemption doctrine applicable to generic pharmaceutical manufacturers.

### a. The FDCA Imposes A "Duty Of Sameness" On Generic Manufacturers.

The FDCA allows "manufacturers to develop generic drugs inexpensively, without duplicating the clinical trials already performed on the equivalent brand-name drug." *Mensing*, 564 U.S. at 612. The trade-off for generic drugs receiving and maintaining FDA approval on this basis, however, is that the FDA requires all generic medications *to be the same* as a reference list drug (a brand-name product) in every clinically significant way. *Id.* Generic medications must have the same active ingredient(s) and therapeutic effect(s), the same route of administration, and—critically here—the same FDA-approved labeling as the brand-name medication. *See* 21 U.S.C. § 355(j)(2)(A).

This duty of "sameness" goes further than just the physical label on the generic drug; it extends to any promotional and advertising materials as well. *Id.* § 321(m). Indeed, the FDA has adopted a broad definition of "labeling" that includes "[b]rochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound recordings, exhibits, literature, and reprints" and "similar pieces of printed, audio, or visual matter descriptive of a drug . . . for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer." 21 C.F.R. § 202.1(l)(2). Moreover, the "sameness" constraint on generic drug manufactures also extends to updates to the labeling of a generic medicine; changes "unilaterally made to strengthen a generic drug's warning label would violate the statutes and regulations requiring a generic drug's label to match its brand-name counterpart's." *Mensing*, 564 U.S. at 614.

In short, "[f]ederal law . . . demand[s] that generic drug labels be the same at all times as the corresponding brand-name drug labels." *Id.* at 618. As a result, these well-established

statutory and regulatory rules preclude the Actavis Generic Entities from providing additional or different warnings beyond the confines of the brand labeling.

### b. Controlling Supreme Court Law Makes Clear That Failure To Disclose Claims Against Actavis Generic Entities Are Preempted.

The United States Supreme Court has repeatedly held that state law claims that would require additional or different warnings for a generic medicine violate the duty of sameness, and, thus, are preempted. In *Mensing*, for instance, the Supreme Court first held that state-law claims seeking to require generic drug manufacturers to change FDA-approved labeling are preempted because it is impossible for generic drug manufacturers to simultaneously comply with state-law requirements and the federal-law requirement of sameness. 564 U.S. 604 at 618 ("Thus, it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal-law duty to keep the label the same."). There, the plaintiffs alleged state-law failure-to-warn, fraud, and negligent misrepresentation claims against generic drug manufacturers based on the manufacturers' alleged failure to provide adequate warning labels. *Id*. at 608–09. The Supreme Court recognized that the plaintiffs' claims would require the use of different labeling. *Id*. at 612. Federal law, however, did not allow them to make the change necessary to satisfy state law. As a result, the Supreme Court found the claims preempted. *Id*. at 618.

Notably, the *Mensing* Court expressly rejected the notion that manufacturers could provide additional warnings through "Dear Doctor" letters to physicians,[3] holding that those letters are subject to the sameness requirement and cannot include updated or even additional warnings that stray from an approved label. *Id*. at 615. Doing so violates the sameness requirement because "if

---

[3] "Dear Doctor" letters are communications used by manufacturers to notify health care providers about new or updated warnings regarding a drug. *See* 21 C.F.R. § 200.5 ("Manufacturers and distributors of drugs and the Food and Drug Administration occasionally are required to mail important information about drugs to physicians and others responsible for patient care.")

generic drug manufacturers, but not the brand-name manufacturer, sent such letters, that would inaccurately imply a therapeutic difference between the brand and generic drugs and thus could be impermissibly 'misleading.'" *Id*; *see also Bartlett*, 570 U.S. at 486–87, 490 (reinforcing *Mensing* and holding that any state law claim that brings into question the adequacy of, or otherwise affects a change in, a generic drug manufacturer's labeling is preempted).

### c. The City's Claims Imply A Duty To Warn Incompatible With Federal Law And Are Likewise Preempted.

The City does not—and cannot—plead any specific allegations that the Actavis Generic Entities promoted the safety or efficacy of their generic medicines. Nor does the City challenge the FDA-approved warning labels of any opioid medicine. Thus, the City's claims against the Actavis Generic Entities appear to be based upon a failure to warn theory—that they failed to disclose the risks of opioid medicines to the medical community. These claims are preempted. *See, e.g.*, *Guilbeau v. Pfizer Inc.*, 880 F.3d 304, 306 (7th Cir. 2018) (explaining under *Mensing* that "failure-to-warn claims against manufacturers of generic drugs are preempted by federal law."); *Greager v. McNeil-PPC, Inc.*, 414 F. Supp. 3d 1137, 1143 (N.D. Ill. 2019) (Alonso, J.) (applying rule).

That the City's claims may not all be explicitly framed as failure-to-warn claims is of no consequence. Given the absence any allegations of specific affirmative marketing conduct by the Actavis Generic Entities, the City's claims must necessarily be failure-to-warn claims. Indeed, the City repeatedly contends that Defendants failed to disclose the risks of opioids. (*See, e.g.*, 5AC ¶¶ 80, 96, 871, 873, 934.) Such claims would require the Actavis Generic Entities to alter their products or labeling to avoid liability—something they cannot do given the requirements of the FDCA and its accompanying regulations. *See Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 814 (7th Cir. 2018) (*Mensing* "Court held that federal law preempts state laws that require generic drug

manufacturers to change a drug's label"), *cert. denied*, 139 S. Ct. 2636 (2019); *Houston v. United States*, 638 F. App'x 508, 513 (7th Cir. 2016) (rejecting defective design, negligence, consumer fraud, battery, and breach of express and implied warranties against generic manufacturer as preempted because they are failure-to-warn claims at bottom).

Nor can the City try to avoid preemption by arguing that its state law claims are based upon the theory that the Actavis Generic Entities should have sent letters or other communications to physicians that further communicated risk information about opioids. Generic drug manufacturers are not permitted to communicate ***any warnings*** beyond a generic label if brand-name manufacturers have not already sent such a communication, because doing so "would inaccurately imply a therapeutic difference between the brand and generic drugs and thus could be impermissibly 'misleading.'" *Mensing*, 564 U.S. at 615 (claims that generic drug manufacturers failed to send "Dear Doctor" Letters to healthcare professionals regarding generic medicine's risks were preempted because they would violate federal law); *see also McDaniel v. Upsher-Smith Labs., Inc.*, 893 F.3d 941, 944–48 (6th Cir. 2018) (failure to warn claims based upon alleged failure to provide Medication Guide are impliedly preempted); *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1249 (11th Cir. 2013) (rejecting "failure-to-communicate theory of liability" requiring generic manufacturers to communicate warnings that brand manufacturers had not yet communicated).

Similarly, the City cannot avoid preemption by arguing that the Actavis Generic Entities must refrain from selling FDA-approved drugs altogether if they are unable to correct an alleged misimpression about opioids held by physicians or consumers (created by others) without violating their duty of sameness. *See Bartlett*, 570 U.S. at 488 (rejecting this "stop-selling" theory as "incompatible with our pre-emption jurisprudence" and "incoheren[t]."); *see also Houston*, 638 F. App'x at 513 ("[M]arket exit is precisely the outcome that the duty of sameness and *Mensing*'s

preemption principle are designed to prevent."). Any "stop selling" argument is preempted as a matter of law.

Put simply, regardless of how its claims are framed, the City necessarily seeks to hold the Actavis Generic Entities responsible for failure to provide additional safety information regarding generic opioids beyond what is in their labels. All such claims are preempted under established Supreme Court law.

### 3. Counts II And IV Fail For Lack Of Causation.

To state a claim for unfair practices (Count II) and recovery of costs (Count IV), the City must allege causation. *City of Chicago*, 211 F. Supp. 3d at 1075, 1083. This Court dismissed these same claims from the SAC for lack of causation because the City did not "allege[] enough to connect defendants' alleged deceptive marketing with prescriptions that were covered by the City," and the City "failed to identify the prescribers who were exposed to defendants' misrepresentations as the same prescribers who prescribed defendants' drugs and thereby caused the City to incur costs." *Id.* The City was permitted "a final opportunity" to submit an exhibit showing that (1) prescribers received alleged deceptive marketing from a defendant; (2) those prescribers then prescribed that defendant's opioid medication; and (3) the City paid for that prescribed medication. *Id.* at 1082–83.

The City still fails to allege facts to show that Watson, Actavis LLC, or Actavis Pharma made a single false statement or omission to a single Chicago prescriber, much less caused any prescriber to deviate from her medical judgment and write any prescriptions paid for by the City. Despite the Court's "final opportunity" warning, the City's charts, attached as Exhibit D to the 5AC, do not mention Watson, Actavis LLC, or Actavis Pharma; do not show that any Chicago prescriber received any supposedly false statement from them and then wrote a prescription because of such a statement; and do not identify any medically inappropriate prescription for any

Actavis Generic Entity's opioid medication paid for by the City. Because there are simply no allegations that the Actavis Generic Entities caused any harm, Counts II and IV fail. *City of Chicago*, 211 F. Supp. 3d at 1075, 1083.

### B. The City Offers No Basis For Its Failure-To-Prevent Diversion Claims (Counts I-IV) Against The Actavis Generic Entities.

The City also bases its claims against the Actavis Generic Entities, in part, on a failure-to-prevent diversion theory: that the "Defendants" "misrepresented their compliance with obligations to prevent the diversion of opioids" (*see, e.g.*, 5AC ¶¶ 913 (Count I), 936 (Count III)), or failed to have sufficient SOM systems in place to monitor, report, and halt suspicious orders of opioids (*see, e.g.*, *id.* ¶¶ 922 (Count II), 942 (Count IV)). The City's failure-to-prevent diversion claims therefore sound in fraud, and must satisfy the heightened pleading requirements of Rule 9(b). *See City of Chicago*, 211 F. Supp. 3d at 1064 ("Rule 9(b) applies to all averments of fraud, not claims of fraud." (internal quotation omitted)).

The City's allegations cannot support any claim against the Actavis Generic Entities under *Iqbal* and *Twombly*, much less Rule 9(b). After six years of litigation, the 5AC fails to identify a single fact about the Actavis Generic Entities' systems for identifying, reporting, and halting suspicious orders. Nor does it allege any legal failures with respect to those systems. Indeed, although the City dedicates various paragraphs in the body of the 5AC to detail how certain other defendants allegedly failed to report suspicious orders (5AC ¶¶ 723–801), the 5AC is devoid of any similar allegations specific to the Actavis Generic Entities. It is also devoid of any supposed misrepresentation by any Actavis Generic Entity relating to its prevention of the diversion of opioids, much less describe who made it, when, to whom, and why it is purportedly false. (*See id.* ¶ 802); *see also City of Chicago*, 211 F. Supp. 3d at 1064 ("party alleging fraud" must describe

"the who, what, when, where, and how of the fraud." (quotation omitted)). This alone requires dismissal.

The 5AC also fails to allege facts to show causation with respect to this theory. The 5AC fails to identify a single suspicious order of opioid medicines placed with the Actavis Generic Entities that they failed to report or halt. Nor does the City plead any facts to show how any such (unidentified) shipment reached Chicago and then caused harm to the City or any of its residents. These missing allegations cannot be overlooked. They are basic and fundamental facts necessary to plead causation in a case where the City already has had six attempts to plead its claims. Accordingly, the City's failure-to-prevent-diversion claims in Counts II and IV should be dismissed for lack of causation, too.

### III. CONCLUSION

After six attempts, it is clear that the City has not pled and cannot plead a claim against Watson, Actavis LLC, or Actavis Pharma. For the foregoing reasons, and those stated in the brief in support of the Joint Motion, the Actavis Generic Entities respectfully request that the Court enter an Order dismissing all claims against them with prejudice.

Dated: May 22, 2020

Respectfully submitted,

*/s/ Tinos Diamantatos*
Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Tel: (312) 324-1000
tinos.diamantatos@morganlewis.com

Eric W. Sitarchuk (*pro hac vice forthcoming*)
Rebecca J. Hillyer (*pro hac vice forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921

Tel: (215) 963-5840
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard
Miami, FL 33133-2339
Tel: (305) 415-3416
brian.ercole@morganlewis.com

*Attorneys for Defendants Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, I caused a true and correct copy of the foregoing document to be served using the electronic case filing system, which will send electronic notification of such filing to all parties that have appeared in this action.

                                                  */s/ Tinos Diamantatos*
                                                  Tinos Diamantatos