IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF CHICAGO,

        *Plaintiff*,

v.

PURDUE PHARMA L.P.; et al.,

        *Defendants.*

Case No. 14-cv-04361

Honorable Jorge L. Alonso

Magistrate Judge Young B. Kim

**REPLY IN SUPPORT OF DEFENDANTS' RULE 72 OBJECTION
TO ORDER GRANTING
<u>PLAINTIFF'S MOTION FOR PROTECTIVE ORDER</u>**

<u>**TABLE OF CONTENTS**</u>

**Page**

**INTRODUCTION**........................................................................................................ 1

**ARGUMENT** ............................................................................................................... 2

   I.    THE CITY SHOULD BE REQUIRED TO IDENTIFY MEDICALLY
       UNNECESSARY OPIOID PRESCRIPTIONS.............................................. 2

     A.   The City's Opposition rests on the incorrect assumption that the scope of discovery is
         constrained by how it plans to attempt to prove its claims. .......................................... 3

     B.   The City is incorrect that the MDL Track One Order is law of the case; the Magistrate
         Judge's Order treating it as such is contrary to law........................................................ 7

     C.   The City's Opposition confirms that merely committing to sole reliance on "aggregate
         proof" is not enough; more stipulations would be necessary to render this discovery
         irrelevant.......................................................................................................................... 8

   II.    THE CITY SHOULD BE ORDERED TO PRODUCE CLAIMS DATA ...................... 10

**CONCLUSION** ................................................................................................................ 11

1

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*City of Chicago v. Purdue Pharma L.P.*,
    211 F. Supp. 3d 1058 (N.D. Ill. 2016) ...................................................................................2

*Heraeus Kluzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011) ..............................................................................................3

*U.S. ex rel. Martin v. Life Care Ctrs. of Am., Inc.*
    2015 WL 10987029 (E.D. Tenn. Feb. 18, 2015) .....................................................................5

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) ..............................................................................................7

*In re Neurontin*,
    712 F.3d 21 (1st Cir. 2013)...................................................................................................5

*People of the State of Cal. v. Purdue Pharma L.P. et al.*,
    No. 30-2014-00725287 .......................................................................................................6

*People v. ConAgra Grocery Prod. Co.*,
    17 Cal. App. 5th 51 (Cal. Ct. App. 2017) ...................................................................................5

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    2009 WL 2043604 (D.N.J. July 10, 2009), *aff'd* 678 F.3d 235 (3d Cir. 2012) ........................5

*Sergeants Benevolent Ass'n Health & Welfare Fund v. State of Louisiana*,
    806 F.3d 71 (2d Cir. 2015)...................................................................................................5

*Sidney Hillman Health Ctr. of Rochestern v. Abbott Laboratories*,
    873 F.3d 574 (7th Cir. 2017) ..............................................................................................5

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010)................................................................................................5

*Winkler v. Eli Lilly & Co.*,
    101 F.3d 1196 (7th Cir. 1996) ............................................................................................8

**Statutes**

28 U.S.C. § 1407(a) .........................................................................................................8

**Rules**

Fed. R. Civ. P. 26(b)(1)........................................................................................1, 3, 10

1

Rule 72(a)........................................................................................................................................1

**Other Authorities**

8 Fed. Prac. & Proc. Civ. § 2011 (3d ed.).......................................................................................3

Manual for Complex Litigation (4th ed.)..................................................................................2, 8

## INTRODUCTION

Defendants' Rule 72(a) Objection asks the Court to compel the City to provide what is among the most important discovery in this case: prescription-level information that will allow Defendants to test the reliability and accuracy of the City's causal theories.[1]  In response, the City argues it need not provide this discovery because it intends to use an "aggregate proof" causation theory designed to steer clear of information about why opioid pain medications were prescribed to individual patients—*i.e.*, alleged Defendant wrongdoing or one of the many other reasons that can impact physician prescribing.[2]  The City's arguments boil down to the premise that discovery must support a plaintiff's affirmative theories to be relevant, and that discovery that is not helpful to a plaintiff's case is therefore not proportional.  This is contrary to the Federal Rules, which state that discovery is relevant where it relates to any claim "or defense," and that proportionality is not based on how well the discovery fits in with plaintiffs' theories but rather against the "needs of the case" as a whole.  Fed. R. Civ. P. 26(b)(1).  The City has it backwards: that the discovery undermines the City's causal theories makes it more—not less—probative.

The Magistrate Judge initially recognized this very principle.  Nonetheless, after previously ordering the City to respond to this same discovery (Dkt. No. 604), the Magistrate Judge largely deferred to a decision later made by the MDL Court, which allowed the Track One Ohio Plaintiffs to avoid prescription-level discovery if they "elected" to proceed only via "aggregate proof."  The MDL Court likewise erred in holding that Defendants were not entitled to discovery that went to their core defenses.  In the MDL, however, the Track One Plaintiffs at least opted to provide a

---

[1] *See* Dkt. No. 834, *Plaintiffs' Rule 72 Objection to Order Granting Plaintiff's Motion for Protective Order* ("Obj.").

[2] *See* Dkt. No. 837, *Plaintiff City of Chicago's Opposition to Defendants' Rule 72 Objection to Order Granting Plaintiff's Motion for Protective Order* ("Opp'n").

sampling of such prescription-level discovery. Thus, Defendants at a minimum had some of the underlying prescription-level information needed to challenge Plaintiffs' purported "aggregate proof" theory of causation.

Individual prescription-level information is equally critical here, both because it is central to defenses and because it can be used to directly challenge whatever aggregate causation model the City intends to put forward. Defendants thus request that the Court overrule the Magistrate Judge's Order and require the City to: **(i)** identify the purportedly medically unnecessary prescriptions, per the August 2017 Order; and **(ii)** honor its commitment to promptly produce all prescription and medical claims data in its possession, custody or control.

## ARGUMENT

## I. THE CITY SHOULD BE REQUIRED TO IDENTIFY MEDICALLY UNNECESSARY OPIOID PRESCRIPTIONS

The City concedes that causation is an element of Count IV, its cost recovery claim under MCC § 1-20-020. Opp'n at 7.[3] Further, the City does not dispute that any conceivable causal chain connecting Defendants' alleged misconduct and the costs the City purportedly incurred would include precisely what the August 2017 Order required the City to identify: medically unnecessary prescriptions. *See generally id.* This discovery is therefore highly relevant as it goes to the prescriptions on which the City's entire causal theory rests.

---

[3] The City's Opposition offers no substantive response to the fact that causation is also relevant to Count II, the unfair practices claim under MCC § 2-25-090, because the City continues to rely on the prong that asks whether the practice "***causes*** substantial injury to consumers." *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1074 (N.D. Ill. 2016) (emphasis added); 5AC at ¶ 918. In addition, for the reasons set out in Defendants' opening brief, this discovery is also relevant to the City's allegations in all four Counts that Defendants made misrepresentations regarding the safety and efficacy of opioids. *See* Obj. at 9-10. But the Court need not find the discovery relevant to all claims, or even most claims. Because it is highly relevant to the cost recovery claim in Count IV—at the very least—the City may not withhold it.

It is also proportional. *See* Obj. at 11-12. While the City claims that relevance is "outweighed by the burden" (Opp'n at 4), the City cannot point to any evidence establishing any burden whatsoever, even though it has the burden to do so under controlling Seventh Circuit precedent. *E.g.*, *Heraeus Kluzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011). The other Rule 26(b)(1) proportionality factors likewise establish that this discovery is proportional to the needs of this case. As for the "amount in controversy" and "importance of the issues" factors, the City does not challenge that it is seeking hundreds of millions (if not billions) of dollars in municipal costs. Further, given that the City has accused Defendants of causing the "deadliest drug crisis in American history" (*see* 5AC at ¶ 28), it would be unfair to deprive Defendants of their due process right to discovery critical to defending against those allegations. Similarly, the City does not even argue that the remaining two factors favor a finding of lack of proportionality: Its contingency fee counsel has the requisite "resources" to identify these prescriptions, and Defendants have no other "access" to this information, because only the City can identify the prescriptions the City itself contends make up part of its own causal chain. *See* Fed. R. Civ. P. 26(b)(1). Indeed, besides its conclusory assertion that burden outweighs benefit, the City's Opposition does not even try to show that any of the factors favor its position that proportionality is lacking. *See generally* Opp'n.

A.    *The City's Opposition rests on the incorrect assumption that the scope of discovery is constrained by how it plans to attempt to prove its claims.*

The City's argument that courts "routinely allow parties to prove elements of their claims, including causation, using statistical analysis of aggregate evidence" is not only flawed, but misses the point in the context of this discovery dispute. Opp'n at 6. Here, the Court need not decide whether aggregate proof will or will not be adequate, because discovery is not limited to plaintiff's theories either way. Fed. R. Civ. P. 26(b)(1); 8 Fed. Prac. & Proc. Civ. § 2011 (3d ed.) (parties

are "not limited in discovery by the opponent's theory").  The Court must allow discovery that will enable Defendants to challenge the basis for any aggregate model; indeed, any aggregate proof model inherently must be consistent with, if not rely on, more granular, individualized prescription-level information.

The City's Opposition confirms that, like the plaintiffs in the MDL Track One cases, the City intends to rely on a model designed to suggest that there were ***numerous*** medically unnecessary prescriptions written as a result of Defendants' conduct generally.  *See* Opp'n at 8. Highly relevant to the validity of such a "model" is whether the City can identify even ***one*** specific prescription that was medically unnecessary that can be linked to each Defendant's conduct.  This becomes especially clear when viewing this discovery from the perspective of each individual Defendant.  Take, for example, Allergan.  There were 27 prescriptions of Allergan's opioid medication, Kadian, written in all of Chicago for all of 2017.  Yet, the City's "aggregate proof" model would lump those 27 prescriptions in with millions of prescriptions of other manufacturers' medications in an attempt to conjure some causal connection between Defendants generally and the City's alleged costs.  The discovery at issue here would allow Allergan (and each other individual Defendant) to test that attenuated theory.  If there are prescriptions of Kadian the City says are medically unnecessary that make up part of that chain, then the City should identify them so Allergan can examine issues like why the doctor wrote those prescriptions, whether Allergan's conduct caused the prescriptions, and even whether there was good reason for the prescriber to have written them in the context of the individual patient to whom they were prescribed.  If there were no such prescriptions of Kadian, that fact is highly probative to the City's "model" suggesting that there were many such prescriptions.[4]

---

[4] For these same reasons, the City's argument that "if Defendants believe the City's theory of the case is flawed," they should "challeng[e] the sufficiency of the City's proof through a dispositive motion" misses

4

Indeed, the cases on which the City relies show that even where courts ultimately permit aggregate proof theories to reach a jury, they nonetheless permit this type of individual-level discovery.[5] For example, in *People v. ConAgra Grocery Prod. Co.*, defendants were provided individualized discovery, including a database that "collect[ed] all of the data from children who happen to be tested for lead in California" and lead poisoning "case files." 17 Cal. App. 5th 51, 152, 157 (Cal. Ct. App. 2017) (cited in Opp'n at 6). *In re Neurontin* similarly proves Defendants' point. *See* 712 F.3d 21 (1st Cir. 2013) (cited in Opp'n at 6). There, even though the *Neurontin* plaintiffs relied on aggregate proof, the defendants there were permitted individualized discovery, and presented it to the jury as part of their defense. *E.g.*, *id.* at 45-47. As *Neurontin* demonstrates, if aggregate proof is ultimately found to be admissible, the jury would then be responsible for "[w]eighing the individual testimony . . . against the aggregate evidence." *Id.* at 45–46. Simply put, on this discovery issue, *In re Neurontin* supports the discovery Defendants seek here.[6]

The City gives short shrift to a case in the same procedural posture here: the decision requiring prescription identification in opioid-related litigation brought on behalf of "the People

_____

the mark. *See* Opp'n at 8. Part of why Defendants need this evidence is to support their argument—both to the Court and (if necessary) to a jury—that the City's theory is flawed in the first instance.

[5] The handful of cases permitting aggregate proof under certain circumstances are contrary to the weight of the case law, including controlling Seventh Circuit precedent. *E.g.*, *Sidney Hillman Health Ctr. of Rochestern v. Abbott Laboratories*, 873 F.3d 574 (7th Cir. 2017); *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010); *Sergeants Benevolent Ass'n Health & Welfare Fund v. State of Louisiana*, 806 F.3d 71 (2d Cir. 2015); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604 (D.N.J. July 10, 2009), *aff'd* 678 F.3d 235 (3d Cir. 2012). Indeed, the "nature of prescriptions[] . . . means that this theory of causation is interrupted by the independent actions of prescribing physicians, which thwarts any attempt to show proximate cause through generalized proof." *UFCW Local 1776*, 620 F.3d at 135. But the Court need not decide that larger issue at this juncture; it is enough for now to recognize that Defendants are entitled to discovery bearing on it.

[6] The circumstances in *U.S. ex rel. Martin v. Life Care Ctrs. of Am., Inc.* were markedly different than those here. 2015 WL 10987029 (E.D. Tenn. Feb. 18, 2015) (cited in Opp'n at 6). Most critically, the plaintiff in *Life Care* had "already provided" the defendant with underlying claims data (*id.* at *3)—unlike here, where not only has the City failed to provide this discovery but is seeking the Court's permission to break its promise to do so.

of the State of California." Opp'n at 8; Dkt. No. 834-5, *People of the State of Cal. v. Purdue Pharma L.P. et al.*, No. 30-2014-00725287, Report & Recommendation No. 1 at 7; Dkt. No. 834-6, 4/11/2019 Minute Order (adopting Report & Recommendation). There, the California court ordered the plaintiff to identify medically unnecessary prescriptions, specifically holding that "Plaintiff's assertion that *it* intends to use aggregate-level data to show causation does not foreclose each Defendant's right to discovery on causation." *Id.* at 2.

The City's attempts to minimize the persuasive import of this case fail. *First*, the City argues that "[t]he California court applied state precedents under which the scope of discovery is expansive." Opp'n at 8 (internal quotations omitted). But even a cursory reading of the California court's decision confirms that its holding is not driven by any expansive discovery requirements. It states, for example, that "it seems undeniable that Defendants should be able to test the premise at a key hinge point: The circumstances under which individuals are actually prescribed, received, and begin to take opiates." Dkt. No. 834-5 at 7. Further, while the City argues that discovery fishing expeditions are disallowed in the Seventh Circuit (Opp'n at 8), this is not a fishing expedition. Defendants seek discovery targeted at one of the most hotly disputed issues in this case: whether each individual Defendant's alleged wrongdoing caused the City to incur any costs.

*Second*, the City suggests that the California judge did not "have the benefit of the MDL Court's prior ruling on this issue." Opp'n at 8-9. This is incorrect. The MDL Track One decision was issued in October 2018 (Dkt. No. 837-1), before the California decision in January 2019 (Dkt. No. 834-5), and the California court considered it as part of that dispute. More fundamentally, for the reasons identified below, the MDL Track One ruling was wrongly decided to the extent it permits an "election" of aggregate proof.

Similarly misplaced is the City's argument that "Defendants cannot dictate the City's method of proof." *See* Opp'n at 8. Defendants do not intend to dictate the City's method of proof. They merely seek evidence to support their defense to it and the City's claims. In other words, the City does not have to change how it plans to prove its case in order to respond to this discovery. If there were no medically unnecessary prescriptions associated with any Defendant's opioid pain medications, the City can simply so state. But if the City wishes to argue that there were such prescriptions—even in the "aggregate"—then it must identify them now. In short, the City cannot dictate how Defendants defend this case and the relevant discovery they need to do so.

      B.      *The City is incorrect that the MDL Track One Order is law of the case; the Magistrate Judge's Order treating it as such is contrary to law.*

In allowing the City to elect to rely solely on "aggregate proof," the Magistrate Judge relied heavily on the MDL Track One Order permitting such an election, stating that "it would be inconsistent for this court to hold the City to the obligation to identify medically unnecessary prescriptions" in light of that ruling. *See* Dkt. No. 824, Order at 10. As Defendants pointed out in their opening brief, under well-settled law, the MDL Track One Order is not law of the case, because it was entered between different parties in a different case by a different court. *See* Obj. at 6 & n.5. Among other authority, Defendants cited a recent appellate decision granting a mandamus petition in the opioid MDL where the Sixth Circuit held that "as the Supreme Court has made clear, every case in an MDL (other than cases for which there is a consolidated complaint) retains its individual character." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).

Altogether ignoring this authority, the City cites no law in support of its assertion that an order in a separate case brought by separate parties constitutes law of the case here just because this case used to be part of an MDL. Opp'n at 13-14. Instead, the City relies on the federal MDL

statute itself, which simply does not speak to this issue. *See* 28 U.S.C. § 1407(a). The City also misleadingly quotes the Manual for Complex Litigation as stating that "'[a]lthough the transferor judge has the power to vacate or modify rulings made by the transferee judge, subject to comity and 'law of the case' considerations, doing so in the absence of a significant change of circumstance would frustrate the purposes of centralized pretrial proceedings.'" Opp'n at 13. This quotation refers to a ruling in the same case—not to rulings in different cases that happen to be in the same MDL. *See* Manual for Complex Litigation (4th ed.) § 20.133. Indeed, the same source states that while law of the case "may apply when a transferee court has made decisions in the same case, a decision that does not involve the same parties does not command adherence in other cases involving different parties and facts." *Id.* at § 20.14. Nor does the lone case the City cites help its argument, as that decision did not even address the law of the case doctrine. *See Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) (cited in Opp'n at 14). Law of the case does not apply.

> C. *The City's Opposition confirms that merely committing to sole reliance on "aggregate proof" is not enough; more stipulations would be necessary to render this discovery irrelevant.*

Nor should this Court follow the MDL Track One Order merely to "avoid inconsistent rulings," as the City urges. *See* Opp'n at 14. First, if there is any order that should be followed for the sake of consistency, it is the August 2017 Order in this case between these parties. The City invites error by urging this Court to adopt the MDL Track One Order instead. The Track One Order was wrongfully decided to the extent it allowed the Track One Plaintiffs to make an aggregate proof election to avoid certain discovery, because this discovery is equally (if not more) relevant to the City's aggregate proof theories as it is to any other method of proof. This is because the causal chain the City will attempt to prove on an "aggregate" basis implicates the exact same prescriptions that the August 2017 Order required the City to identify.

If the City is permitted to make an election (and it should not be), electing to proceed solely on "aggregate proof" would not be enough to avoid the essential discovery Defendants seek. *See* Obj. at 9-10. Rather, the City would need to stipulate to several other facts as well. For example, the City would have to stipulate that there were no medically unnecessary opioid prescriptions written as a result of Defendants' alleged misconduct. This is necessary because if the City wishes to retain the ability to say that there were such prescriptions, even in the aggregate, then Defendants are entitled to ask in discovery which ones. Similarly, the City would have to stipulate that it will not point to, allude to, or otherwise introduce any evidence relating to any patients, including patients in the aggregate, allegedly harmed by opioids. Again, if the City retains that ability, then Defendants must be allowed in discovery to examine whether they were harmed by medically unnecessary prescriptions written as a result of each Defendant's alleged wrongdoing.

Because it has no adequate response to it, the City nowhere even addresses this commonsense point. *Compare* Obj. at 9, *with* Opp'n. Nor does the City agree to provide the required stipulations. *See generally id.* The reason why is clear: The City's "aggregate proof" theories rely on the same prescriptions that the August 2017 Order requires the City to identify. "Aggregate proof" is merely a different way of looking at the exact same prescriptions. The City prefers to view the prescriptions in the aggregate because doing so allows it to dodge the difficult questions about the many individualized factors required to assess what truly caused a specific prescriber to write a specific medication to a specific patient, whether that prescription was medically necessary in light of that patient's background, and whether the opioid pain medication ultimately improved the patient's situation. It also allows the City to impermissibly lump together the various Defendants, both with each other and with other companies like Purdue. Denying

Defendants critical discovery because it does not support the City's theories (and in fact undermines them) is clearly erroneous and contrary to law.

## II.     THE CITY SHOULD BE ORDERED TO PRODUCE CLAIMS DATA

The Magistrate Judge's Order also permitted the City to renege on its agreement to produce claims data in its possession or control.  *See* Order at 10-13.  This data is both relevant and proportional.  As explained in Defendants' Objection, claims data is necessary for a number of analyses—such as whether prescribing patterns by the subset of physicians who were visited by Defendants' sales representatives changed their opioid prescribing after those visits—relevant to rebutting the City's "aggregate proof" model.  Obj. at 12-14.  In response, the City does not seriously dispute the relevance of this data.  *See* Opp'n at 9-11.  Nor does it dispute that it *agreed* to provide it in 2017.  *Id.*  Instead, the City claims that it should be excused from its agreement because the production to which it agreed is now somehow "not proportional to the needs of the case."  *Id.* at 9.

As the City previously recognized in agreeing to provide this data, it is highly probative. Its relevance outweighs any burden on the City, especially given that the other Rule 26(b)(1) proportionality factors also weigh in favor of production for the same reasons they require identification of the medically unnecessary prescriptions.  Accordingly, like many other courts in opioid-related litigation, the MDL court ordered the Track One Plaintiffs to produce all claims data in their possession, custody or control—regardless of whether plaintiffs elected to proceed on aggregate proof.  *E.g.*, Dkt. No. 834-8.

The City's argument that the Court should adopt the MDL Track One Order permitting an aggregate proof election but not the Order requiring the production of this data makes no sense. The City accuses the Defendants of "turn[ing] tail" on this point.  *See* Opp'n at 14.  But Defendants' position is consistent:  Law of the case does not apply to either ruling, which means

that the Court should follow only the one that was correctly decided. In contrast, the City's position is that law of the case does apply—yet, somehow it applies only to the MDL Track One Order the City prefers.

Regardless, the City does not set out any reason why it should be excused from its agreement to provide this data. While the City claims that "[t]here is no reason Defendants could not procure the same information through third-party subpoenas" (Opp'n at 10-11), only the City's claims data shows whether the City continues to reimburse for prescriptions it claims are medically unnecessary. Further, Defendants are entitled to seek claims data from *both* the City and third-party insurers. While the City argues that its claims data represents only a small portion of available claims data (Opp'n at 11), each of the individual third-party insurers is likely to make the same argument. No one entity has access to 100 percent of the available claims data; thus, Defendants seek as representative a sample as possible by requesting data from multiple entities. The City's remarkable claim that it should be immune from Defendants' request because it is a party rather than a third party turns basic legal principles on their head.

Similarly, the City argues that the Track One plaintiffs' claims data production cost these same plaintiffs' counsel more than $600,000. Opp'n at 15. But it does not and cannot explain why third-party insurers should be expected to shoulder this cost for critical discovery, rather than the contingency fee counsel for the City who chose to bring this litigation seeking hundreds of millions of dollars (if not more) against numerous defendants in a case of significant public importance. This Court should reverse the Magistrate Judge's Order.

## CONCLUSION

Defendants thus respectfully request that the Court grant Defendants' Objection to the Magistrate Judge's Order by **(i)** requiring that the City promptly comply with the August 2017

Order; and **(ii)** ordering the City to immediately produce all claims data in its possession, custody or control, as it had previously agreed to do.

Dated:    August 7, 2020                              Respectfully submitted,

                                                     /s/ Karl Stampfl
                                                     Donna Welch, P.C.
                                                     Timothy W. Knapp
                                                     Karl Stampfl
                                                     KIRKLAND & ELLIS LLP
                                                     300 North LaSalle, Chicago, IL 60654
                                                     Telephone: (312) 862-2000
                                                     Facsimile: (312) 862-2200
                                                     donna.welch@kirkland.com
                                                     tknapp@kirkland.com
                                                     karl.stampfl@kirkland.com

                                                     Jennifer G. Levy, P.C. (*admitted pro hac vice*)
                                                     KIRKLAND & ELLIS LLP
                                                     1301 Pennsylvania Ave., N.W.
                                                     Washington, D.C. 20004
                                                     Telephone: (202) 879-5000
                                                     Facsimile: (202) 879-5200
                                                     jlevy@kirkland.com

                                                     *Attorneys for Allergan plc (f/k/a Actavis plc)*
                                                     *and Allergan Finance, LLC (Actavis, Inc.*
                                                     *f/k/a Watson Pharmaceuticals, Inc.)*

                                                     /s/ Andrew J. O'Connor
                                                     Andrew J. O'Connor (*admitted pro hac vice*)
                                                     ROPES & GRAY LLP
                                                     Prudential Tower
                                                     800 Boylston St.
                                                     Boston, MA 02199-3600
                                                     (617) 235-4650
                                                     andrew.oconnor@ropesgray.com

                                                     Sarah M Kimmer
                                                     ROPES & GRAY LLP
                                                     191 North Wacker Drive
                                                     Chicago, IL 60606
                                                     Telephone: (312) 845-1244
                                                     sarah.kimmer@ropesgray.com

                                                     *Attorneys for Mallinckrodt LLC and SpecGx*
                                                     *LLC*

/s/ Charles C. Lifland
Charles C. Lifland (*admitted pro hac vice*)
Sabrina H. Strong (*pro hac vice forthcoming*)
Esteban Rodriguez (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
clifland@omm.com
sstrong@omm.com
esrodriguez@omm.com

Amy R. Lucas (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1999 Avenue Of The Stars
Los Angeles, CA 90067
Telephone: (310) 246-6784
Facsimile: (310) 246-6779
alucas@omm.com

Sherry A. Knutson (#6276306)
TUCKER ELLIS LLP
233 South Wacker Drive, Suite 6950
Chicago, Illinois 60606
Telephone: (312) 624-6300
Facsimile: (312) 624-6309
sherry.knutson@tuckerellis.com

*Attorneys for Defendants Janssen
Pharmaceuticals, Inc., Johnson &
Johnson, Janssen Pharmaceutica, Inc.
n/k/a Janssen Pharmaceuticals, Inc., and
Ortho-McNeil-Janssen Pharmaceuticals,
Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/ Tinos Diamantatos
Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601
(312)-324-1000
Firm Id # 40417
tinos.diamantatos@morganlewis.com

Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
T: 215.963.5840
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

*Attorneys for Teva Pharmaceuticals, U.S.A.,*
*Inc., Cephalon, Inc., Watson Laboratories,*
*Inc., Actavis LLC, and Actavis Pharma, Inc.*

/s/ Jonathan L. Stern
Jonathan L. Stern
Joshua M. Davis
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Phone: 202-942-5000
jonathan.stern@arnoldporter.com
joshua.davis@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Phone: 213-243-4000
sean.morris@arnoldporter.com

Carole S. Rendon (IL 6200217)
BAKER & HOSTETER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland OH 44114-1214
Telephone: 216.861.7420
Facsimile: 216.696.0740
crendon@bakerlaw.com

Justin R. Donoho (IL 6299667)
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago IL 60606-2841
Telephone: 312.416.8198
Facsimile: 312.416.6201
jdonobo@bakerlaw.com

15

*Attorneys for Endo Health Solutions Inc. and*
*Endo Pharmaceuticals Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of August, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*/s/ Karl Stampfl*
Karl Stampfl