**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | |
| v. | Case No. 14-cv-04361 |
| PURDUE PHARMA L.P., et al., | Honorable Jorge L. Alonso |
| Defendants. | Magistrate Judge Young B. Kim |

**JOINT STATUS REPORT**

Pursuant to this Court's Order dated October 3, 2020 (Dkt. No. 849), Plaintiff City of Chicago ("the City") and Defendants[1] (collectively, the "Parties") hereby file this Joint Status Report identifying their unresolved interrogatory disputes and attaching the relevant discovery requests and responses as exhibits hereto.

**I.    CITY'S INTERROGATORIES TO DEFENDANTS**

**A.    Endo Defendants**

The following interrogatory disputes remain ongoing between Plaintiff and Endo Defendants:

---

[1] For purposes of this Joint Status Report, the "Defendants" include Teva Pharmaceuticals USA, Inc. ("Teva"); Cephalon Inc. ("Cephalon"); Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutical Inc. n/k/a Janssen Pharmaceuticals, Inc. ("Janssen"); Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. ("Endo"); Allergan plc f/k/a Actavis plc and Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. ("Allergan"); Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., Actavis LLC, and Actavis Pharma, Inc., f/k/a Watson Pharma, Inc. ("Actavis").

1

**_Responses to Plaintiff's First Set of Interrogatories_**

    **_City's Position:_**

    Endo has agreed to but not yet produced a supplemental production for Interrogatory 4, 6, 12, 13, and 14. Interrogatory 4 pertains to termination and disciplinary proceedings of any employees engaged in compliance oversight of or marketing to Chicago prescribers. Interrogatory 6 concerns any investigation of doctors for diversion or unique or suspicious prescribing. Interrogatory 12 concerns any signal detection committee minutes. Interrogatory 13 concerns updated prescription and revenue data for Endo products. Interrogatory 14 concerns actual or potential compliance violations learned of, identified, investigated or reported related to marketing or prescribing of opioids in Chicago. These interrogatories await supplementation from Endo. Specifically, Plaintiff has requested that Endo update Interrogatory 13 to reflect prescription and revenue date to the present day. Endo has not committed to updating the production with this highly relevant data even though it continues to sell Opioid products including but not limited to, Percocet.

    **_Endo's Position:_**

    As Endo advised Plaintiff on October 14, 2020, Endo will supplement Interrogatories 4, 6, 12, 13, and 14 by October 30, 2020. Endo will supplement the answer to Interrogatory 13 with 2017 and 2018 figures to the extent that data is available in the IMS-NPA Data File, produced at ENDO_DATA-OPIOID_MDL-000000858[2], and/or the SAP Systems (Contribution Margin Reports), produced at ENDO_DATA-OPIOID_MDL-00000001 through 00000019 and ENDO_TXMDL_DATA_00000010.

---

[2] Certain information included in ENDO_DATA-OPIOID_MDL-00000085 contains trade secrets and proprietary and confidential commercial information of IQVIA. IQVIA requests that you take all appropriate measures to maintain the confidentiality of the information, including that all information be treated as confidential under the Freedom of Information Act ("FOIA") or any other applicable state open records law.

*__Responses to Plaintiff's Second Set of Interrogatories__*

*City's Position:*

Interrogatory 18 asks Endo to identify any vendors, including but not limited to government affairs and public relations, retained for purposes related to Opioids, the purpose for which each was retained, each project or undertaking on which each vendor worked, the remuneration provided; the reason each was selected and reason for their termination, if applicable. Endo has provided a list of vendors with only a general description of the type of vendor, absent any time of explanation of which opioid product for which they were hired. Endo also produced an incomplete spreadsheet that covered a limited time period and only concerned Opana ER. Citing the general MDL production as an additional source of materials, Endo refuses to provide further information related to this interrogatory citing generally the burden of further review. Endo indicated it had no further plan to supplement its response unless Plaintiff made a narrow request that it would take under consideration

Interrogatory 20 asks Endo to describe all processes Endo used to monitor orders for and prescriptions of Endo's Opioids in or affecting Chicago, and describe the date, quantity, recipient, and dollar amount of all orders and prescribing you observed, investigated, and reported in or affecting the Chicago that were deemed suspicious; and the action taken with respect to such orders or prescribing. As part of its September 24, 2020 response, Endo directed Plaintiff to the non-custodial productions of SAP Systems (Orders Identified for Further Review by Internal SOM Algorithm), ENDO_DATA-OPIOID_MDL-00000022 and 00000087. However, these documents are an incomplete accounting as the data produced ends on November 9, 2018. Plaintiff has requested that as Endo is still actively selling Opioid products and therefore has continuing obligations to maintain a robust SOM program, that it update the data produced to reflect orders up to the present.

3

***Endo's Position:***

In response to Interrogatory 18, Endo has provided Plaintiff with a list of vendors retained by Endo whose work concerned any of Endo's Schedule II opioid medications, not only Opana ER, as well as the general nature and purpose of those vendors' engagements. Endo's voluminous productions of documents provide additional information concerning the terms of those vendors' engagements and the scope of their work. The burden of reviewing these responsive documents for the specific information sought by Plaintiff is substantially the same for Plaintiff as it is for Endo. Endo has offered to provide Plaintiff additional information if Plaintiff has specific inquiries about Endo's productions in relation to these vendors, but Plaintiff has not raised any such inquiries with Endo.

In response to Interrogatory 20, Endo described its own SOM process and the SOM process implemented by Endo's third-party logistics vendor, UPS Supply Solutions. Endo has also directed Plaintiff to the SAP database Endo maintains for all orders Endo's SOM algorithm identifies for further review, which complements the transaction level data Endo also produced showing orders for shipment to Endo's customers nationally, including at addresses located in Chicago, to the extent that such information was available and in Endo's possession, from 1999 to 2018. Additional SAP data post-dating November 2018 is not reasonably calculated to lead to the discovery of admissible evidence given that this data post-dates the Complaint.

### ***Responses to Plaintiff's Third Set of Interrogatory Responses***

***City's Position:***

Endo has agreed to but not yet produced a supplemental production for Interrogatory 3. Interrogatory 3 concerns Identifying all actual or potential compliance violations that Endo learned of, identified, investigated, or reported (including but not limited to compliance with FDA or DEA regulations or any other Illinois or federal law) that relate to Marketing, prescribing, distribution, or dispensing of Opioids in Chicago including by specifying the date(s) and nature of the

violations, the Employees or agents who committed the violations, and any corrective action take. This interrogatory awaits supplementation from Endo.

On September 24, 2020 Endo disclosed a list of doctors from the Chicago area who were added to the Global Exclude list, however provided no further relevant information such as when the listed prescribers were added to the global exclude list or if they were ever removed. Plaintiff has asked Endo to update the list accordingly.

Interrogatory 4 requests that Endo identify all Persons with knowledge of its' attempts to influence bills, legislation, regulations or rules regarding the treatment of pain, Formulary coverage of Opioids or access to Health Care Providers or pharmacy stocking, including, but not limited to, lobbying efforts performed by Endo at the local, state-wide, or nationwide level. Endo produced national level information pertaining to the request, and claimed any state or local level material available would be contained within the prior production. However, Endo confirmed that it ran no additional searches to look for state or local level materials responsive to the interrogatory and indicated that it had no plans to do so in the future, save for narrow requests from Plaintiff that it would consider.

### *Endo's Position:*

As Endo advised Plaintiff on October 14, 2020, Endo will supplement its responses to Interrogatories 3 and 4 by October 31, 2020. Endo's supplements will include identification of examples of documents in the production of custodial files for the Compliance Custodians that are response to Interrogatory 3 and identification of additional individuals who have had held responsibilities related to state and local government affairs in response to Interrogatory 4.

5

### B.     Teva Defendants

*City's Position:*

Plaintiffs identified deficiencies in the Teva and Allergan Defendants' discovery responses in the Chicago litigation on September 8, 2020, and Teva responded on October 1, 2020. The parties have since met and conferred, and the following are the remaining discovery disputes.

Plaintiffs are requesting through Interrogatory No. 20 all processes Teva used to monitor orders and prescriptions of Teva's opioid products in or affecting the Chicago area. Specifically, Plaintiffs are requesting descriptions of the data, quantity, recipient and dollar amount of all orders and prescriptions observed, investigated, and reported in or affecting Chicago Teva deemed suspicious, and the action taken with respect to such orders or prescriptions. During the meet and confer process, Plaintiff sought further description of Teva's processes and bases for flagging and releasing pended suspicious orders, including the algorithms that were used, but Teva so far has declined to produce that information either in written response or through production of documents.

Also, Teva has not committed at this time to providing information up to this date on any new standard operating procedures or suspicious order reports since its CT1 responses as requested in Plaintiffs' Interrogatory No. 20.

*Teva's Position:*

The Teva Defendants have fully answered Interrogatory No. 20 through and beyond the relevant time period.  The Teva Defendant's Interrogatory responses include as much detail as required by the Federal Rules, given the burden associated with attempting to reduce complex and historical systems into writing.  In response to requests from Plaintiff during subsequent meet-and-confers regarding this Interrogatory and Requests for Production related to suspicious order monitoring and diversion, the Teva Defendants' identified myriad other documents for Plaintiffs, including policies and procedures, Do Not Ship Lists,  documents from the Teva Defendants'

6

Suspicious Order Monitoring Shared Folder, records of investigations, pended orders, and suspicious order monitoring release activity reports, and other documents.

Supplementation of the Teva Defendants' discovery responses up to the present date is not necessary, appropriate, or required. The document collections conducted by the Teva Defendants and the documents produced to Plaintiff, which were generally collected and produced in the course of Track 1, cover the relevant period and postdate the initiation of this litigation by several years. There are no allegations in Plaintiff's Fifth Amended Complaint that relate to the Teva Defendants after 2018. Also, the temporal scope of the Teva Defendants' discovery responses and document productions includes the entire period that the Teva Defendants promoted opioid products. As such, the Teva Defendants' response to Interrogatory No. 20 covers the entire relevant time period for the Fifth Amended Complaint.

### C.    **Janssen Defendants**

The City identified alleged deficiencies in Janssen's responses to the City's Third Set of Interrogatories on August 25, 2020. The parties met and conferred on September 17, 2020, during which Janssen agreed to supplement its responses. Janssen served supplemental responses on October 9, 2020. The City is reviewing those responses and will advise whether additional court involvement is necessary.

### D.    **Allergan Defendants**

The City identified alleged deficiencies in Allergan's responses to the City's Interrogatories on September 8, 2020. The parties met and conferred on October 12, 2020, during which Allergan agreed to supplement its responses. The City will review those responses and will advise whether additional court involvement is necessary

7

### E.   **Mallinckrodt Defendants**

The City is not raising interrogatory disputes with Mallinckrodt in light of Mallinckrodt's October 12, 2020 bankruptcy filing.

## II.   **DEFENDANTS' JOINT INTERROGATORIES TO THE CITY**

### A.   **Interrogatories the City Has Agreed to Supplement or Is Still Investigating**

The City served its Responses and Objections to Defendants' First Set of Joint Interrogatory Requests to Plaintiff on July 31, 2020. (*See* Ex. E-1.)  Defendants provided a letter identifying alleged deficiencies on September 18, 2020, and the City responded by letter on October 5, 2020. The parties met and conferred on October 8, 2020.  During the Parties' meet and confer, the City agreed to supplement or conduct further investigation with respect to the following Joint Interrogatories:

Joint Interrogatory No. 3 seeks the identification of "all efforts the City has taken to regulate, treat, reduce, remediate, control, abate, or prevent abuse of Prescription Opioids, Illicit Opioids, and Illicit Drugs," including "[f]or any such effort," specification of "the amount of money or costs incurred by the City."  (*See* Ex. E-1 at 12.)  In response to Defendants' requests for further information concerning costs associated with identified efforts, the City agreed to provide supplemental information identifying documents with information sufficient to identify such costs, including identifying the sources from which these documents were collected. The City is in the process of collecting this information.

Joint Interrogatory No. 4 seeks the identification of "every HCP or other Person whom the City has investigated, sued, prosecuted, or otherwise reprimanded, or identified as possibly engaged in excessive prescribing, suspicious prescribing, excessive dispensing, diversionary

8

conduct, or other unlawful or improper conduct." The Parties discussed the scope of the request, clarifying that Defendants sought identification of persons who were the subject of law enforcement or agency actions. The City indicated that the identification of such individuals will be found in the City's police records, which the City has produced in part, and the City agreed to supplement its response by specifically identifying documents where the answer may be found pursuant to Rule 33(d).

Joint Interrogatory No. 6 calls for the City to identify databases and shared drives used to track, report, or otherwise maintain various categories of data. Defendants contended the City's response was incomplete and sought clarification as to whether the City had omitted any responsive databases or share drives. In response, the City provided additional information in informal meet and confer correspondence, and has agreed to supplement its interrogatory response to incorporate the additional information included in its correspondence as well as to confirm that no responsive database or shared drive was omitted from its response.

Joint Interrogatory No. 8 asks whether the City continues to reimburse or pay for Prescription Opioids for non-cancer pain, and to identify changes made to policies and procedures for the reimbursement of Prescription Opioids. The City has agreed to supplement by identifying documents sufficient to answer this Interrogatory pursuant to Rule 33(d).

Joint Interrogatory No. 10 requires the identification of each local, state, or federal official or agency to which the City contends Defendants were obligated to "report" Suspicious Orders, as alleged in the Fifth Amended Complaint, ¶ 669. The City's response identified only the U.S. Drug Enforcement Administration ("DEA"). (*See* Ex. E-1 at 11.) During the meet and confer, Defendants noted that the City's response failed to identify any state or local agencies and was thus inconsistent with the cited paragraph of the Complaint. The City believes that its response is

9

complete, but agreed to revisit and to supplement this response to identify any other such official or agency. To the extent the City adds any officials or agencies, the City also agreed to make corresponding supplements to its response to <u>Interrogatory No. 11</u>, which seeks the identification of investigations by agencies identified in the response to Interrogatory No. 10 to the extent such information is within the City's knowledge.

<u>Joint Interrogatory No. 13</u> asks the City to "[d]escribe each cost, expenditure, damage, loss, penalty, fine, or harm" that the City seeks as "equitable or monetary relief from each Defendant," including identification of the amount of the harm and the calculations supporting the claimed amount, among other information. The City's response identified broad categories of damages, but did not include any specific dollar amounts. Defendants contend the categories lack specificity. For example, the City seeks recovery for "City grants to private programs and medication assisted treatment," but does not identify the referenced grants. (*See* Ex. E-1 at 36-37.) The City agreed to supplement this response with further detail.

To the extent the City or any Defendant has agreed to supplement Interrogatories, such supplemental interrogatories will be exchanged by October 30, 2020.

**B.** **<u>Interrogatories on Which the Parties Are at an Impasse</u>**

**1.** **Joint Interrogatory No. 1**

***Defendants' Position:***

Joint Interrogatory No. 1 asks the City to explain whether it believes Prescription Opioids are always medically inappropriate for the treatment of chronic non-cancer pain, and if not, to describe all circumstances under which the City believes that prescription opioids may be medically appropriate for the treatment of chronic non-cancer pain. (*See* Ex. E-1 at 9.) The City's response is incomplete and evasive. Although the City confirms that it "does not and has never

alleged that opioids are 'always' 'medically inappropriate' for the treatment of chronic non-cancer pain," it fails to describe the circumstances in which it believes prescription opioids may be medically appropriate for chronic non-cancer pain. (*See id*. at 10.)  The City's objections to providing this information lack merit.

First, the City is wrong that Interrogatory No. 1 seeks irrelevant information. (*See id*. at 9.) Defendants' request is highly relevant to—and, in fact, flows directly from—the City's claim that Defendants engaged in deceptive practices and misrepresentations by conveying to physicians that prescription opioids are medically "necessary" or appropriate to treat chronic pain. *See* Fifth Am. Compl. ("5AC") ¶ 925. All of the City's civil penalties and cost recovery claims are predicated, at least in part, on that assertion.  *See, e.g.*, *id.*; *id.* ¶ 939(a), (b), (d), (f) (challenging Defendants' promotion of prescription opioids for chronic pain).[3] Moreover, if the City alleges it is inappropriate to make certain statements regarding the use of prescription opioids, it is important for the defense of such claims that the City delineate when it thinks these statements are appropriate versus inappropriate. This information is relevant to the City's cost recovery claim for the additional reason that it is probative of causation, an essential element of this claim. *See City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1079-84 (N.D. Ill. 2016). Indeed, any statements by Defendants that appropriately promoted the use of prescription opioids could not have caused the costs for which the City seeks recovery. *See id.* at 1084 (holding the City failed to provide the "missing [causal] link" by "identify[ing] the prescribers *who were exposed to defendants' misrepresentations* as the same prescribers who prescribed defendants' drugs and thereby caused the City to incur costs") (emphasis added).

---

[3] *See also* 5AC ¶ 228 (alleging Defendants "funded" key opinion leaders who "worked reciprocally with Defendants to promote misleading messaging regarding the appropriate use of opioids to treat chronic pain"); *id.* ¶ 287 (alleging Defendants "were able to effect a sea change in medical opinion in favor of accepting opioids as medically necessary long-term treatment for chronic pain"); *id.* ¶ 570 (alleging Defendants worked with "front groups" to distribute "deceptive statements about the appropriateness of opioid therapy to treat chronic pain").

Second, the City's objection that Interrogatory No. 1 "is not proportional to the needs of the case" is unfounded. (*See* Ex. E-1 at 10.) As stated above, the information sought by this Interrogatory is critical to the claims and defenses in this action. Additionally, the City has not explained why it would need to expend "substantial costs to identify additional responsive materials" to answer this Interrogatory (*id.*), nor could it since the City ought to be able to explain the basis for its allegations without referring to outside materials.

Third, the City states it is "not qualified to offer an opinion on proper prescribing of opioids or proper use of prescription opioids." (*Id.*) According to the City, this analysis is premature because it is "within the province of expert testimony." (*Id.*) However, the City insists it already has the expert discovery it needs from the MDL, including expert reports on "pain management" "addressing substantially the same issues as will be addressed here." 9/24/20 Joint Status Report at 5 (Dkt. No. 845). Although Defendants dispute the City's position that extensive expert discovery need not be conducted in this case, the City has admitted it has the information necessary to respond to this Interrogatory and should be compelled to furnish a complete response. In any case, the City has already made allegations on this subject in its Complaint. The City does not and cannot explain why it is "qualified" to make those allegations but not to answer Defendants' Interrogatory on the same subject.

### The City's Response:

As noted in its objections, this interrogatory seeks information that is not relevant to the City's claims. The City's causes of actions seeking civil penalties for marketing-related conduct (Counts I-III) spell out the conduct that forms the basis of the City's claims. Specifically, paragraph 908 of the 5AC lists "untrue, false, and misleading statements" Defendants made to sell their opioid drugs, including: "[c]laiming or implying that opioids would improve patients' function and quality of life;" "[m]ischaracterizing the risk of opioid addiction and abuse;" "[c]laiming or implying that addiction can be avoided or successfully managed through the use of screening and other tools;" "[p]romoting the misleading concept of pseudoaddiction, thus concealing the true

12

risk of addiction;" and "[m]is characterizing the difficulty of discontinuing opioid therapy, including by mischaracterizing the prevalence and severity of withdrawal symptoms." None of these claims require an assessment of whether the City "allege[s], maintain[s], or contend[s] that prescription opioids are always medically inappropriate" nor are they dependent upon the City's opinion of when prescription opioids should be prescribed. Rather, they are dependent upon an objective analysis of facts: were Defendants' statements accurate or were they unfair or deceptive?

None of the allegations cited in Defendants' argument above support their argument. In ¶ 925, the City alleged that "Defendants co-opted the sources reasonable physicians relied upon to convince those physicians that the risks related to opioids were minimum, that the benefits were substantial, and—as a result—that opioids were medically necessary." The unfair or deceptive statements described in this paragraph, and throughout the 5AC, were that the "risks related to opioids were minimal" and that the "benefits were substantial." Neither of those statements require the factfinder to analyze whether, in the abstract, prescribing opioids is "always inappropriate." Paragraph 939 of the 5AC similarly describes in broad terms Defendants' unfair conduct, and does not require such analysis.

To the extent an answer is required, it is within the province of expert testimony. Defendants correctly point out that the parties submitted expert reports in prior case tracks addressing pain management. Those reports addressed the appropriate circumstances for prescribing opioids. If necessary, the City will similarly offer an expert report on that topic. But there is no reason that the Court should order the City to offer that expert report in advance by requiring a response to this irrelevant interrogatory.

### 2. Joint Interrogatory No. 5

***Defendants' Position:***

Joint Interrogatory No. 5 seeks information concerning each of the Health Care Providers ("HCPs") or other individuals that Interrogatory No. 4 requires the City to list as those the City investigated, sued, prosecuted, or otherwise identified as possibly engaging in excessive

prescribing or otherwise enumerated wrongful conduct.[4]  (*See* Ex. E-1 at 24.)  Specifically, for each of those HCPs, this Interrogatory seeks whether and which of Defendants' opioid medications he or she wrote in excessive quantities or otherwise inappropriately, and the factual basis for the City's contention that Defendants caused those prescriptions to be written.  (*Id.*)  In response, the City refuses to provide any of the requested information.  (*Id.*)

The City objects on the basis that it is "not seeking to recover damages for individual medical expenses" and that "[t]he City does not seek, and expressly declaims, recovery for any of the costs of prescription opioids paid for by the City's health plans or workers compensation plans."  (Ex. E-1 at 24-25.)  But that is not what this Interrogatory requests.[5]  Rather, this Interrogatory calls for information about doctors and other HCPs who are allegedly bad actors—a subject that is squarely relevant to the City's operative Complaint.  The City alleges, for example, that Defendants should have identified and stopped "pill mills" and other "rogue prescribers" who purportedly "issued high volumes of opioid prescriptions."  5AC at ¶ 15.  In order to defend against those and similar allegations, Defendants are entitled to know which "pill mills," "rogue prescribers" and other bad actors the City itself has investigated, prosecuted or identified.  Moreover, Defendants are entitled to know whether it was Defendants' medications that these HCPs prescribed (as opposed to the numerous other opioids manufactured by non-Defendants) and whether these HCPs' prescribing was caused by any Defendants' allegedly inappropriate

---

[4] Specifically, Joint Interrogatory No. 4 requires the City to "[i]dentify each and every HCP or other Person whom the City has investigated, sued, prosecuted, or otherwise reprimanded, or identified as possibly engaged in excessive prescribing, suspicious prescribing, excessive dispensing, diversionary conduct, or other unlawful or improper conduct . . ."  While the City failed to do so in its initial response, it has agreed to supplement.  *See supra p. 8.*

[5] For this same reason, and despite the City's suggestion otherwise during the meet-and-confer process, the July 1, 2020 Order regarding whether the City must identify medically unnecessary prescriptions for which it seeks reimbursement does not control.  *See* Dkt. No. 824, *Memorandum Opinion and Order*.

14

conduct (as opposed to myriad other factors). Thus, the City should be ordered to provide a complete response that set out the requested information about each HCP.

**The City's Response:**

As the Court recognized in its July 1 Order, "the City represents that it will not rely on any information regarding individual prescriptions or insurance claims data in proving the four counts in the current complaint, and argues that accordingly, discovery related to that information is no longer relevant." (Dkt. 824 at 6.) The Court's ruling applies with equal force here:

> If Defendants believe that the City cannot prove its claim under count four without evidence that doctors wrote medically unnecessary prescriptions in reliance on their marketing materials, then their insufficient evidence argument is best left to play out on the merits at the summary judgment phase. In other words, Defendants cannot demand discovery based on a proof element the opposing party does not accept as a required element. (Dkt. 824 at 9.)

Here, again, Defendants seek detailed prescription-level information from the City, when the City has committed solely to proceeding by way of aggregate proof. Consistent with the Court's earlier ruling, Defendants are not entitled to this information. If Defendants contend the City cannot prove causation without prescription-level information, they may raise that claim on summary judgment.

The City's response to Interrogatory No. 4 identifies 23 prescribers and 3 pharmacies that the City contends Defendants could have identified using their own records. The City has agreed to supplement that response to reference documents identifying any additional prescribers or pharmacies whom the City investigated for improper prescribing or dispensing practices. That information provides Defendants with all they need to defend their claims. They are not entitled to demand prescription-level information from the City that the City does not possess and does not intend to use in establishing its claims.

### 3.    Joint Interrogatory No. 15

*Defendants' Position:*

Joint Interrogatory No. 15 asks the City to identify individuals who became addicted to any substance or were otherwise harmed as a result of an unnecessary prescription.  (Ex. E-1 at 39-40.) The interrogatory asks the City to identify the prescription the individual took, when it was prescribed and by whom, the condition for which the prescription was written, and the allegedly false, misleading, or deceptive statement or omission that purportedly caused the prescription to be written.  (*Id*.)

The City refuses to provide a substantive response to this interrogatory.  In correspondence and during the Parties' October 8 meet and confer, the City raised privacy concerns, and argued that the Interrogatory relates to individual medical claims or reimbursement decisions and that the information requested is too burdensome.  Plaintiff's privacy concerns can be remedied through de-identified information, as has been utilized in other Opioid litigation, including the Track 1 MDL, which leaves only the City's proportionality argument.

The information requested in Interrogatory No. 15 is proportional to the needs of the case in light of the extensive damages sought by the City and because it goes to the heart of the causation and misrepresentation elements of the City's claims.  Indeed, the City alleges that there were such individuals in its Complaint (*e.g.*, 5AC at ¶ 812)—yet, it refuses to identify them.  This is fundamentally unfair: The City cannot maintain, on the hand, that there were such individuals yet refuse to provide Defendants with the information they require to test that assertion on the other. Moreover, no matter how Plaintiff attempts to prove its claims, Defendants are entitled to the discovery necessary to rebut them.  Under Rule 26, Defendants are entitled to discovery relevant to either a party's affirmative claim or any party's "defense."  Fed. R. Civ. P. 26(b)(1); *see also* 8 Fed. Prac. & Proc. Civ. § 2011 (3d ed.) ("[A] party is entitled to seek discovery on its theory of the facts and the law and is not limited in discovery by the opponent's theory.").  Given the extensive damages sought by the City, it should be required to tell Defendants whether even one

City of Chicago resident was harmed as a result of an unnecessary prescription written in reliance of an allegedly false, misleading, or deceptive statement or omission by Defendants. If the City cannot identify any individuals who were harmed as a result of an unnecessary prescription, the City should be required to state that in in its Interrogatory response.

**The City's Response:**

Defendants seek the identity of "every Person who allegedly became addicted to any substance or was otherwise harmed as a result of … a Prescription Opioid in the City of Chicago[.]" This interrogatory is patently overbroad, unduly burdensome and not proportional to the needs of the case. The City's claims do not rest on identification of "every Person who allegedly became addicted to any substance or was otherwise harmed as a result" of Defendants' malfeasance. The claims for civil penalties (Counts I-III) require only proof of Defendants' conduct. "As the court already concluded, the City can demonstrate unfairness of through evidence that Defendants' alleged practices are unscrupulous, immoral, or offensive to public policy, without showing consumer injury." (Dkt. 824 at 7.) With respect to Count IV, the City will rely solely on aggregate proof.

The Special Master presiding over the prior case track denied a similar discovery request, noting that it was "clearly overbroad." (Discovery Ruling No. 1 at p. 3, attached as Ex. E-2.) Similar to this Court's findings in its July 1 Order, the Special Master determined that Defendants' cries of a failure of proof were summary judgment arguments and not arguments for additional discovery.

Moreover, even if the information were relevant, this interrogatory appears designed to elicit protected privacy information that the City may not disclose pursuant to federal and Illinois law. 42 U.S.C. § 290dd-2 reflects Congress's recognition that without legal assurances of privacy, "fear of public disclosure of drug abuse . . . will discourage thousands from seeking the treatment they must have . . ." H.R. Rep. No. 92-775, at 33, *reprinted in* 1972 U.S.C.C.A.N. 2072. The federal regulation at 42 C.F.R. § 2.12(a)(1) prohibits the City from disclosing any information that

17

"[w]ould identify a patient as having or having had a substance use disorder" and from disclosing information that "[c]ontain[s] drug abuse information."[6] Violations of this provision are subject to criminal penalties, 42 C.F.R. § 2.3, and no court order in a civil action may compel disclosure of such information absent "notice" to the individual and "[a]n opportunity to file a written response to the application, or to appear in person" to respond. 42 C.F.R. § 2.64(b).

Illinois law is similarly restrictive. "[T]he Illinois Constitution goes beyond federal constitutional guarantees by expressly recognizing a zone of personal privacy, and that the protection of that privacy is stated broadly and without restrictions. The confidentiality of personal medical information is, without question, at the core of what society regards as a fundamental component of individual privacy." *Kunkel v. Walton*, 689 N.E. 2d 1047, 1055, 179 Ill.2d 519, 537 (1997). The Medical Patient Rights Act establishes "[t]he right of each patient to privacy and confidentiality in health care." 410 ILCS § 50/3; *see also* 735 ILCS § 5/8-802 (establishing the physician-patient privilege).

Responding to this interrogatory will necessarily require the City to cull information from its substance abuse records to identify *individuals* who became addicted to the Defendants' opioid drugs. Federal and Illinois law exists precisely to prevent that type of disclosure in order to avoid the stigma often associated with receiving treatment for a substance use disorder. Defendants' claims that the information may be provided in "de-identified" form are half-baked. The interrogatory specifically requests that the City "identify" the individuals suffering from addiction to Defendants' opioid drugs.

---

[6] Because the City receives "federal financial assistance," it must abide by the federal disclosure restrictions. 42 C.F.R. § 2.12(b).

## III.    DEFENDANT-SPECIFIC INTERROGATORIES TO THE CITY

### A.    Allergan's Interrogatories

#### 1.    *Interrogatories the City Has Agreed to Supplement or Is Still Investigating*

The parties have exchanged several letters and engaged in a telephonic meet and confer on the City's responses to Allergan's First, Second and Third Sets of Interrogatories.[7]  The City has agreed to supplement its responses to Allergan Interrogatory Nos. 15, 16-18, and 20 by October 30, 2020.  The City has also agreed to supplement its responses to reflect information concerning Norco and generic opioids sold by entities formerly affiliated with Allergan.

#### 2.    *Interrogatories on Which the Parties Are at an Impasse*

##### a.    Allergan Interrogatories Nos. 6, 21 and 25

*Allergan's Position:*

Allergan Interrogatory Nos. 6, 21 and 25 call for bedrock information about the specific alleged misrepresentations the City alleges Allergan made.  Interrogatory No. 6 calls for the City to "[d]escribe, separately and in full and complete detail, the facts of every allegedly false, deceptive, or misleading communication, practice, or document that You attribute to each of the" Allergan Defendants.  Interrogatory No. 21 calls for the City to "[i]dentify and describe all statements or omissions made or disseminated by or on behalf of Allergan that You claim were false, misleading, or deceptive or otherwise wrongful," and "[f]or each statement or omission identified, provide (i) the person who made the statement or omission; (ii) the recipient(s) of the statement or omission; (iii) where and when the statement or omission was made; (iv) which particular claim(s) You contend the statement or omission supports; and (v) all reasons why You

---

[7] Specifically, those are Ex. D-1, *Plaintiff's Second Supplemental Response to Actavis Defendants' First Set of Interrogatories No. 1-4 and 6-15*; Ex. D-2, *Plaintiff's Supplemental Response to Actavis Defendants' Second Set of Interrogatories*; Ex. D-3, *Plaintiff's Supplemental Response to Allergan Defendants' Third Set of Interrogatories*.

contend the statement or omission was false, misleading, or deceptive, including any factual or evidentiary support you have for this contention." Finally, Interrogatory No. 25 seeks information targeted to the 77 visits to doctors, requesting that the City *either* "[c]onfirm that you cannot identify a single specific misrepresentation made to a single Health Care Provider during any of the 77 visits to Health Care Providers in Chicago reflected in ALLERGAN_MDL_01890663, which is the list of visits to Health Care Providers by the sales representatives retained by a former Allergan affiliate" *or* "[u]nless You so confirm without qualification, set out in detail: (i) the date and time of the visit; (ii) the Health Care Provider visited; (iii) the alleged misrepresentation made; and (iv) any allegedly inappropriate prescriptions that were written as a result."

The City has not provided adequate responses to any of these three Interrogatories. In none of the three responses has the City identified a single alleged misrepresentation made by Allergan in Chicago with any degree of specificity, including when the misrepresentation was allegedly made, to whom it was made, by whom it was made, or even what the misrepresentation was. For example, in response to Interrogatory No. 21, the City merely points to a list of documents in Interrogatory No. 6 without stating whether any were ever used or provided to anyone in Chicago. Nor does it provide any of the information called for by the subparts to this Interrogatory, such as "the person who made the statement or omission" or "where and when the statement or omission was made." In response to Interrogatory No. 25, the City again refers to the list of documents in response to Interrogatory No. 6. But nowhere in that list or anywhere else does the City identify a single misrepresentation that was allegedly made during any of the 77 visits at issue, much less set out the requested information about it. The City cannot have it both ways: Either the City can identify a single such "specific misrepresentation," or it cannot. If the City can, it must identify the statement and the requested information about it. If the City cannot, it must plainly so state in a sworn response.

The missing information is critical. Without identification of communications and practices, Allergan has no way to know what specific misrepresentations it is alleged to have made

or specifically what practices it is alleged to have engaged in. Nor would it make sense, as the City has suggested, to defer the City's responses until the end of discovery. Allergan needs this specific information now so that it can seek follow-up discovery about each alleged statement or misrepresentation. For example, if Allergan allegedly made a misrepresentation to a doctor, Allergan is entitled to know now so that it can seek information about and from that doctor to test that assertion. Moreover, the City already has the information it needs to answer, such as Allergan's full document production from the MDL Track One cases as well as that from various other opioid-related actions, none of which was limited by geographic scope, as well as numerous Allergan marketing depositions. While the City can later supplement, it is obligated to provide detailed responses that include all of the information in its possession now, or to plainly state that it cannot identify any such misrepresentations or omissions in a sworn response.

### The City's Response:

The City's response to Interrogatory No. 6 identifies more than 65 documents evidencing "false, deceptive, or misleading communication[s]" or "practice[s]" that the City "attribute[s] to each of the Actavis Holding Company Defendants." For each document, the City provides: the bates number, the date, and a description of the offending contents. The 15-page response is complete by any standard.

Defendants' argument that the City has identified only "documents" ignores the substance of the City's response. The descriptions for each of the documents describe the "communications" or "practices" that the City attributes to the Allergan Defendants. For example, the description of ACTAVIS0006823 notes that this 2007 Kadian marketing brochure claims that addiction is "less likely" to occur in individuals "who have never had an addiction problem." The "communication"—specifically, misrepresenting the risks of addiction—is contained in the document and detailed in the response. Similarly, the document at ALLERGAN_MDL_00441731 describes prescriber recall of statements from Kadian sales presentations and includes the

21

following text: "Many prescribers report that sales rep said Kadian is safe and that addiction/abuse potential is low." The list includes numerous sales presentations describing Allergan's practices.

For similar reasons, Defendants' complaints regarding the City's responses to Interrogatories Nos. 21 and 25 are misplaced. In response to Interrogatory No. 21, the City appropriately referred Defendants to its response to Interrogatory No. 6, which identifies false, misleading or deceptive "statements or omissions made or disseminated by or on behalf of Allergan." Similarly, Interrogatory No. 25 seeks identification of misrepresentations made during in-person practitioner visits. The statements, practices and misrepresentations identified in response to Interrogatory No. 6 answer this interrogatory as well.

To the extent Allergan complains that information is missing, the parties have just begun discovery that is *specific to the City of Chicago*, and it would be premature to require a further response at this juncture. Although Allergan may have produced documents applicable to Chicago during the Track One proceedings, the City's case was stayed during that period. The City could not take depositions of sales representatives responsible for this area because Track One focused on two counties in Ohio. The City thus appropriately objected to this interrogatory on the grounds that it was a contention interrogatory and therefore answering should be deferred to the close of fact discovery. *See, e.g., Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 72925 (N.D. Ill. Dec. 7, 1995); *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 WL 1344466 (N.D. Ill. Mar. 20, 2015). The City will supplement its response as appropriate and as discovery progresses, but there is no basis for an order requiring a further response at this time.

b.    **Allergan Interrogatories Nos. 8-10**

*Allergan's Position:*

Allergan Interrogatories No. 8-10 seek information about doctors and other Health Care Prescribers to whom Allergan allegedly made misrepresentations or omissions.[8]  In its original 2017 response to Interrogatory No. 8 (*i.e.*, requesting identification of any HCPs who purportedly received or reviewed allegedly false Allergan statements), the City identified eight individuals but now refuses to either add to that list or confirm it is not aware of any additional such doctors.  The City has not provided a substantive response to Interrogatory No. 9 (*i.e.*, requesting identification of any HCPs who purportedly received unbranded marketing from Allergan) or Interrogatory No. 10 (*i.e.*, requesting identification of any HCPs who purportedly prescribed or dispensed Kadian as a result of any Allergan conduct).

The City's stated justification for its refusal to provide this foundational information is its assertion that it is irrelevant.  But the City's core contention in this case is that Defendants, including Allergan, made misrepresentations to HCPs.  *See, e.g.*, 5AC at ¶¶ 8 (alleging that Defendants "deploy[ed] sales representatives who visited doctors and other prescribers and delivered misleading messages about the use of opioids"), 9 (alleging that Defendants attempted to "convince doctors . . . that the benefits of using opioids to treat chronic pain outweighed the risks and that opioids could be used safely by most patients"), 10, 25 (alleging that Defendants "targeted not only pain specialists, but also primary care physicians (PCPs), nurse practitioners, physician assistants, and other non-pain specialists"), 114, 117 ("Defendants' sales representatives

---

[8] Specifically, Interrogatory No. 8 asks the City to "[i]dentify all HCPs whom the City contends received or reviewed any allegedly false, deceptive, or misleading statements or omissions concerning Kadian"; Interrogatory No. 9 asks the City to "[i]dentify any HCPs whom the City contends received or reviewed any allegedly false, deceptive, or misleading unbranded advertising concerning Opioids from any [Allergan Defendants]"; and Interrogatory No. 10 asks the City to "[i]dentify any HCPs whom the City contends prescribed or dispensed Kadian to any Chicago patient because of, *i.e.*, in reliance upon, any allegedly false, deceptive, or misleading statements or omissions."

23

have visited hundreds of thousands of doctors, including thousands of visits to Chicago prescribers, and as described herein, spread misinformation . . .").  In light of these and numerous other allegations, the City's relevance objection fails.  Further, these Interrogatories go to causation, which the City concedes is an element of its cost recovery claim in Count IV, because if HCPs did not change their actions based on Allergan's alleged misrepresentations, then Allergan's conduct could not have caused the costs that the City alleges it did.  But it is also relevant to the other three counts, all of which require proof of misrepresentations (as does Count IV).  The City alleges that Allergan made those misrepresentations to HCPs; Allergan therefore must be able to probe in discovery whether it made any such misrepresentations, including by deposing the HCPs who allegedly received them.  Despite the City's contention otherwise, this has nothing to do with whether the City intends to attempt to prove its claims on an "aggregate" basis, because even so whether there were misrepresentations in the first place is squarely relevant and because these HCPs doubtlessly make up an essential link in any potential causal chain.  Put simply, if the City maintains its contention that there were such HCPs, then it must identify them.

Further, this discovery cannot wait.  Allergan requires identification of these HCPs now, because it is entitled to seek discovery from them to test whether, among other things, they ever received any marketing from Allergan in the first place, whether the marketing included any alleged misrepresentations, whether they were influenced by any such misrepresentations, and if so whether they ever took any action as a result of such misrepresentations.  The City should be ordered to supplement each of these three Interrogatories in full.

### The City's Response:

The Court has already held that "Defendants cannot demand discovery based on a proof element the opposing party does not accept as a required element." (Dkt. 824 at 9.) That precept applies with equal force to the City's responses to Interrogatories Nos. 8, 9 and 10.

All three are contention interrogatories. Interrogatory No. 8 requests identification of "all HCPs whom the City *contends* received or reviewed any allegedly false, deceptive or misleading

24

statements or omissions concerning" your client's branded marketing. Interrogatory No. 9 asks a near identical question concerning "unbranded advertising concerning Opioids from any Actavis Defendants." And Interrogatory No. 10 requests that the City "[i]dentify any HCPs whom the City *contends* prescribed or dispensed Kadian to any Chicago patient because of, *i.e.*, in reliance upon, any allegedly false, deceptive, or misleading statements or omissions by any Actavis Defendant."

None of the City's civil penalties claims (Counts I-III of the Fifth Amended Complaint) require causation as an element. Defendants' hypothetical depositions of health care professionals similarly contemplate irrelevant information with respect to Counts I-III. "'A deceptive practice violates the ICFA even if it doesn't actually deceive or injure anyone . . .' Accordingly, the City need not allege injury or causation to state a claim." *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1070-71 (N.D. Ill. 2016) (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)).

These interrogatories thus can only be relevant to the cost recovery claims asserted in Count IV. As the City has represented, the City will establish its claim "based on aggregate proof, meaning without establishing that specific doctors relied on specific misrepresentations in writing prescriptions for Defendants' opioids." (Dkt. 824 at 8-9). The City's responses to these interrogatories are thus consistent with its legal theories, informing Defendants that "Allergan and/or other persons or entities with whom it worked in concert disseminated the false, deceptive and misleading statements or omissions widely to the medical community at large, including to health care practitioners practicing in the City of Chicago or the surrounding area."

Because the City has expressly disclaimed reliance on specific prescriptions to prove causation, Defendants are not entitled to further responses to these interrogatories. As the Court noted, "[i]f Defendants believe that the City cannot prove its claim under count four without evidence that doctors wrote medically unnecessary prescriptions in reliance on their marketing materials, then their insufficient evidence argument is best left to play out on the merits at the summary judgment phase." (Dkt. 824 at 9.)

25

### c.      Allergan Interrogatory No. 19

*Allergan's Position:*

For Allergan Interrogatory No. 19, the City refuses to identify a single individual in response to this Interrogatory, which calls for identification of "all Patients or other persons, if any, whom You allege became addicted to Opioids or other narcotics, were hospitalized, and/or were otherwise harmed as a result of any medically unnecessary or improper prescriptions" of Allergan's opioid pain medications. While the City objects on relevance grounds, the Fifth Amended Complaint alleges that there were such individuals. For example, the City continues to refer to the alleged "consequences of opioid prescription—including addiction, overdose, and death—that have been visited on Chicago *and its residents*, as confirmed by interviews with victims and addiction treatment programs." 5AC at ¶ 812 (emphasis added). The City cannot make such allegations yet refuse to provide the specifics necessary for Allergan to test them. Indeed, any conceivable causal chain between Allergan's alleged wrongdoing and costs the City has purportedly incurred necessarily must include such individuals for whom the City has, for example, incurred costs for addiction treatment services as a result of Allergan's opioid medicines. In addition, to the extent the City contends it cannot reveal the identities of these individuals, it need not do so: Rather, it can replace names and other such information with unique identifiers so long as it provides sufficient information about each de-identified individual such that Allergan can evaluate the City's claim that he or she was harmed as a result of Allergan's alleged misconduct.

In sum, it would be fundamentally unfair for the City to maintain the ability to claim that there are such individuals without providing Allergan the information it requires to test that contention. Accordingly, the City should be ordered to either state without qualification that it cannot identify any such individuals, or to identify them.

*The City's Response:*

The City's arguments in response to Joint Interrogatory No. 15 apply with equal force here. Specifically, the interrogatory is overbroad; the interrogatory seeks irrelevant information because the City's claims do not require proof of individual injury; the interrogatory is identical to requests the Special Master denied in Track One; and the information sought is precluded by federal and Illinois law. *See* pages 17-18 above.

### B.      Endo's Interrogatories

#### 1.      *Interrogatories the City Has Agreed to Supplement*

On October 7, 2009, following the Court's October 3, 2020 order setting an October 9, 2020 deadline to meet and confer, Endo sent a letter concerning deficiencies in the City's interrogatory responses and seeking to meet and confer.  The City declined to meet and confer with Endo, as described further below.

*Endo's Position:*

Because the deficiencies in the City's responses to Endo's interrogatories are similar to the City's deficient responses to other Defendants, Endo asked the City if it could confirm that its position as to Endo's interrogatories is the same as its position as to the other Defendants' interrogatories. The City did not respond to Endo's request.

The City now claims that it did not have sufficient time to meet and confer with Endo following receipt of its letter.  However, the City has no excuse for its failure to respond or its unwillingness to even confirm Endo's understanding of its position.  Endo even offered to meet and confer the following week to give the City more time.  Further, as described by the City below, the City's position regarding its responses to Endo's interrogatories is indeed the same as its position with respect to the interrogatories served by other defendants.  The City had more than enough time to simply confirm that fact following receipt of Endo's letter.

**The City's Position:**

The City contends that Endo's letter – sent a mere two days prior to the meet-and-confer deadline and more than 60 days after the City served its interrogatory responses – confirms the importance of deadlines in order to move this case forward. Had Endo identified deficiencies with sufficient time to meet-and-confer, the City would have conferred with it, as it had done for other defendants. But Defendants, including Endo, should not be permitted to wait until the last minute to raise alleged deficiencies and then complain that the City failed to respond.

Nevertheless, the City agrees to supplement its responses to Endo Interrogatories Nos. 5, 7, 9, 10 and 14, which raise issues similar or identical to other interrogatories the City has agreed to supplement.

## 2.    *Interrogatories on Which the Parties Are at an Impasse*

As described above, despite Endo's multiple efforts, the City has refused to engage in meet and confer discussions regarding alleged deficiencies in its responses to Endo's interrogatories or to even confirm that its position regarding those deficiencies is the same as its position for similar interrogatories served by other Defendants.  As such, it appears that Endo and the City are at impasse as to the following interrogatories:  (i) Interrogatory No. 4 of Endo's First Set of Interrogatories; (ii) Interrogatories No. 3, 5, 6, 11, and 14 of Endo's Second Set of Interrogatories; and (iii) Interrogatories No. 2 and 3 of Endo's Third Set of Interrogatories.  Each is discussed in turn below.

### a.    **Endo Interrogatory No. 4 (First Set)**

**Endo's Position:**

Endo Interrogatory No. 4 (First Set of Interrogatories) asks the City to identify all Health Care Providers that the City contends received allegedly false, misleading, fraudulent, or deceptive statements or omissions from Endo Defendants or "or any 'KOL,' 'front group,' or third party that

28

the City claims conspired with Endo, or was retained, contracted, organized, funded, sponsored, or controlled, in whole or in part, by Endo or was otherwise defrauded and/or harmed by Endo's alleged conduct." The City has refused to supplement this interrogatory. Endo contends that this information is directly relevant to the City's allegation that "increased opioid prescriptions . . . were the result of Defendants' deceptive and unfair conduct." *See* 5AC ¶¶ 831-832.

### The City's Position:

The City's initial response identified eight prescribers. This interrogatory is substantively identical to Allergan Interrogatory Nos. 8, 9, and 10, and the City incorporates its arguments herein. *See* pages 24-25 above.

None of the City's civil penalties claims (Counts I-III of the Fifth Amended Complaint) require causation as an element. These interrogatories thus can only be relevant to the cost recovery claims asserted in Count IV. As the City has represented, the City will establish its claims "based on aggregate proof, meaning without establishing that specific doctors relied on specific misrepresentations in writing prescriptions for Defendants' opioids." (Dkt. 824 at 8-9). The City's responses to these interrogatories are thus consistent with its legal theories.

Because the City has expressly disclaimed reliance on specific prescriptions to prove causation, Defendants are not entitled to further responses to these interrogatories. As the Court noted, "[i]f Defendants believe that the City cannot prove its claim under count four without evidence that doctors wrote medically unnecessary prescriptions in reliance on their marketing materials, then their insufficient evidence argument is best left to play out on the merits at the summary judgment phase." (Dkt. 824 at 9.)

### b. Endo Interrogatory No. 3 (Second Set)

### Endo's Position:

Endo Interrogatory No. 3 (Second Set of Interrogatories) asks the City to identify "all City agencies, officers, departments, divisions, or current or former City Employees or contractors whom the City claims received allegedly false, misleading, or deceptive messages or material from

Endo or any 'KOL,' 'front group,' or third party that the City claims conspired with Endo, or was retained, contracted, organized, funded, sponsored, or controlled, in whole or in part, by Endo or was otherwise defrauded and/or harmed by Endo's alleged conduct." The City has not responded to Endo's requests to meet and confer on this interrogatory. Endo maintains that the information sought in this interrogatory is directly relevant to the City's claims because it seeks information detailing the allegedly false, misleading, or deceptive messages or materials that the City references in its allegations against Endo. *See* 5AC ¶¶ 416-518.

**The City's Position:**

The Interrogatory seeks irrelevant information. The City no longer seeks damages for costs it paid for prescriptions for individuals who received insurance coverage through the City.

None of the City's civil penalties claims (Counts I-III of the Fifth Amended Complaint) require causation as an element. These interrogatories thus can only be relevant to the cost recovery claims asserted in Count IV. As the City has represented, the City will establish its claims "based on aggregate proof, meaning without establishing that specific doctors relied on specific misrepresentations in writing prescriptions for Defendants' opioids." (Dkt. 824 at 8-9). The City's responses to these interrogatories are thus consistent with its legal theories.

Because the City has expressly disclaimed reliance on specific prescriptions to prove causation, Defendants are not entitled to further responses to these interrogatories. As the Court noted, "[i]f Defendants believe that the City cannot prove its claim under count four without evidence that doctors wrote medically unnecessary prescriptions in reliance on their marketing materials, then their insufficient evidence argument is best left to play out on the merits at the summary judgment phase." (Dkt. 824 at 9.)

### c. Endo Interrogatory No. 5 (Second Set)

**Endo's Position:**

Endo Interrogatory No. 5 (Second Set of Interrogatories) asks the City to "[i]dentify each Opioid prescription as to which You seek any damages, penalties, disgorgement, restitution, or

30

other financial recovery from Endo," and to include several pieces of information about each such prescription. The City has not responded to Endo's requests to meet and confer on this interrogatory. This information is directly relevant to the City's central allegations, including the allegations that Endo Defendants' practices caused Endo's opioids to be prescribed where not medically appropriate and that patients were harmed as a result.

***The City's Response:***

As the Court recognized in its July 1 Order, "the City represents that it will not rely on any information regarding individual prescriptions or insurance claims data in proving the four counts in the current complaint, and argues that accordingly, discovery related to that information is no longer relevant." (Dkt. 824 at 6.) The Court's ruling applies with equal force here:

> If Defendants believe that the City cannot prove its claim under count four without evidence that doctors wrote medically unnecessary prescriptions in reliance on their marketing materials, then their insufficient evidence argument is best left to play out on the merits at the summary judgment phase. In other words, Defendants cannot demand discovery based on a proof element the opposing party does not accept as a required element. (Dkt. 824 at 9.)

Here, again, Defendants seek detailed prescription-level information from the City, when the City has committed solely to proceeding by way of aggregate proof. Consistent with the Court's earlier ruling, Defendants are not entitled to this information. If Defendants' contend the City cannot prove causation without the prescription-level information, they may raise that claim on summary judgment.

### d. Endo Interrogatory No. 6 (Second Set)

***Endo's Position:***

Endo Interrogatory No. 6 (Second Set of Interrogatories) asks the City to identify patients or other individuals "who allegedly became addicted to or were otherwise harmed as a result of any Endo Opioid." The City has refused to supplement this interrogatory. Endo contends that the information requested in this interrogatory is directly relevant to the City's claims relating to the

alleged "impact of Defendants' deceptive marketing on . . . patients' use of opioids," and the alleged "consequences of opioid overprescription—including addiction, overdose, and death—that have been visited on Chicago and its residents. . . ." 5AC ¶ 812.

**The City's Response:**

The City's arguments in response to Joint Interrogatory No. 15 apply with equal force here. Specifically, the interrogatory is overbroad; the interrogatory seeks irrelevant information because the City's claims do not require proof of individual injury; the interrogatory is identical to requests the Special Master denied in Track One; and the information sought is precluded by federal and Illinois law. *See* pages 17-18 above.

### e.    Endo Interrogatory No. 11 (Second Set)

**Endo's Position:**

Endo Interrogatory No. 11 (Second Set of Interrogatories) asks the City to identify and describe, with respect to each Opioid prescription the City seeks to attribute to Endo, "all facts and evidence supporting a causal connection between Endo's alleged wrongdoings, as described in the Complaint and in Your responses to any other Endo Interrogatories, and the prescription." The City has refused to provide a full response to this interrogatory. The information sought in this interrogatory is directly relevant to the City's allegations, that Defendants' practices caused Defendants' opioids to be prescribed where not medically appropriate, and patients were harmed as a result. *See, e.g.*, 5AC at ¶ 812.

**The City's Response:**

As the Court recognized in its July 1 Order, "the City represents that it will not rely on any information regarding individual prescriptions or insurance claims data in proving the four counts in the current complaint, and argues that accordingly, discovery related to that information is no longer relevant." (Dkt. 824 at 6.) The Court's ruling applies with equal force here:

> If Defendants believe that the City cannot prove its claim under count four without evidence that doctors wrote medically unnecessary prescriptions in

32

> reliance on their marketing materials, then their insufficient evidence argument is best left to play out on the merits at the summary judgment phase. In other words, Defendants cannot demand discovery based on a proof element the opposing party does not accept as a required element. (Dkt. 824 at 9.)

Here, again, Defendants seek detailed prescription-level information from the City, when the City has committed solely to proceeding by way of aggregate proof. Consistent with the Court's earlier ruling Defendants are not entitled to this information. If Defendants contend the City cannot prove causation without the prescription-level information, they may raise that claim on summary judgment.

### f.    Endo Interrogatory No. 2 (Third Set)

***Endo's Position:***

Endo Interrogatory No. 2 (Third Set of Interrogatories) asks the City to identify so called "Suspicious Orders" of Endo Opioids, Qualitest Opioids, or Par Opioids and, *inter alia*, the particular harm or cost(s) the City alleges it incurred as a result of each identified order.  The City has refused to supplement this interrogatory.  Endo contends that the information requested in this interrogatory is directly relevant to the City's claims in this action.  The determination as to whether or not the allegedly "Suspicious Orders" of Endo Defendants' opioids, specifically, as opposed to opioid prescriptions, generally, is entirely relevant to the merits of the City's allegations against the Endo Defendants.  *See* 5AC ¶¶ 747-757.

***The City's Response:***

Exhibit A to the City's interrogatory response identifies more than 200 "suspicious orders" the City contends Endo could have identified applying its own criteria. The identification of what constitutes a suspicious order requires both legal conclusions and expert testimony. The City will supplement its response as necessary consistent with a schedule for expert disclosures.

Endo's claim that the City is required to identify specific "harms" or "costs" associated with each suspicious order fails for the same reason as its claim regarding "medically unnecessary" prescriptions. The City intends to prove its case in the aggregate, demonstrating that the aggregate

33

effect of the Defendants' failure to maintain sufficient suspicious order monitoring policies and prevent the shipment of suspicious orders caused the costs the City seeks to recover. Thus, "Defendants cannot demand discovery based on a proof element the opposing party does not accept as a required element." (Dkt. 824 at 9.)

The City's claims are based on Defendants' failure to detect, report and stop the shipment of suspicious orders. The Controlled Substances Act and surrounding regulations confirm that the failure to detect and stop shipment of suspicious orders in and of itself potentially leads to diversion. The legislative history of the Controlled Substances Act confirms that Congress believed that establishing "a closed system" for distribution of addictive drugs "should significantly reduce the widespread diversion of these drugs out of legitimate channels into the illicit market." Comprehensive Drug Abuse Prevention and Control Act of 1970, H. Rep. No. 91–1444 (Sept. 10, 1970), reprinted in 1970 U.S.C.C.A.N. 4566, 4571–72. As the DEA informed Defendants in 2006, "Congress has expressly declared that the illegal distribution of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people." Almost immediately after the CSA was enacted, the DEA adopted implementing regulations, including a regulation clearly setting forth the obligations to "provide effective controls and procedures to guard against theft and diversion of controlled substances," and to identify and report suspicious orders "when discovered." *See* Regulations Implementing the Comprehensive Drug Abuse Prevention and Control Act of 1970, 36 F.R. 7776-7825, 7784-7785 (1971); *see also* 21 C.F.R. § 1301.74. The DEA's training manual further confirms that "[r]egistrants who routinely report suspicious orders, yet fill these orders with reason to believe they are destined for the illicit market, are expressing an attitude of irresponsibility that is a detriment to the public health and safety as set forth in 21 USC 823 and 824." Violations are not predicated on linking diversion to individual orders. To prove causation, as has already been argued, the City will rely exclusively on aggregate data and methods of proof.

g. **Endo Interrogatory No. 3 (Third Set)**

*Endo's Position:*

Endo Interrogatory No. 3 (Third Set of Interrogatories) seeks information about how the orders identified in response to Interrogatory No. 2 of Endo Defendants' Third Set of Interrogatories were allegedly improperly prescribed, dispensed, diverted, abused, misused, or used for illegitimate medical purposes. The information requested in this interrogatory is directly relevant to the City's claims against the Endo Defendants. The City has refused to supplement this interrogatory. While the City objects on the basis that this information is the subject of expert testimony, that objection is unavailing, as this request merely seeks underlying factual evidence supporting the City's allegations and response to Interrogatory No. 2.

*The City's Response:*

*See* above response to Interrogatory No. 2 (Third Set).

C. **Janssen's Interrogatories**

1. *Interrogatories the City Has Agreed to Supplement or Is Still Investigating*

On October 12, 2020,[9] the City and Janssen met and conferred regarding the City's responses and objections to Janssen's interrogatories. As part of this meet and confer, the City agreed to supplement its responses to five interrogatories, specifically: Interrogatory Nos. 5, 6, 11, and 12 in Plaintiff's Second Supplemental Response to Janssen Defendants' First Set of Interrogatories (*see* Ex. C-1)[10]; and Interrogatory No. 16 in Plaintiff's Supplemental Response to

---

[9] Janssen agreed to meet and confer on October 9, but counsel for the City had to reschedule for October 12 due to a scheduling conflict.

[10] Interrogatory No. 5 seeks identification of all healthcare providers in Chicago or that provide services to a member or beneficiary of a City program whom the City contends saw or received allegedly false or misleading statements or omissions concerning Janssen's opioid medications. Interrogatory No. 6 seeks similar information, except with respect to unbranded statements or omissions that the City attributes to Janssen. Interrogatory No. 11 seeks identification and

Janssen Defendants' Second Set of Interrogatories (*see* Ex. C-2).[11] The City has agreed to serve its supplemental responses by October 30, 2020. Janssen reserves all rights regarding the City's responses to these Interrogatories and any amended responses the City serves, including Janssen's right to raise any deficiencies with the Court via a motion to compel.

As part of the October 12 meet and confer, the City and Janssen also met and conferred regarding the City's responses to <u>Interrogatory Nos. 15, 18, and 20</u> in Plaintiff's Response to Janssen Defendants' Second Set of Interrogatories.[12] The parties' discussions regarding the City's response to this Interrogatory are ongoing, including whether and to what extent the City agrees to supplement its response. The City has agreed to inform Janssen of its position on this issue by October 23, 2020.

---

descriptions of processes, practices, and procedures implemented to adjudicate claims seeking reimbursement of Janssen's opioid medications dispensed to City-insured patients. Interrogatory No. 12 seeks identification of the nature and amount of any loss, damage, or harm for which the City seeks monetary relief from Janssen, or penalties or fines the City seeks from Janssen. (*See* Ex. C-1.)

[11] Interrogatory No. 16 seeks identification, disclosure, and descriptions of processes, practices, and procedures the City implemented to adjudicate claims seeking reimbursement of medical services described in Interrogatory No. 12, such as drugs used to treat side effects of opioids and treatment for opioid overdose and addiction. (*See* Ex. C-2.)

[12] Interrogatory No. 15 seeks identification, disclosure, and description of facts, data, analyses, beliefs, opinions, findings, reports, testimony, documents, exhibits, demonstratives, evidence, and any other information received from certain persons and entities in connection with the City's investigation of Janssen's promotion of opioid medications or in connection with the City's claims against Janssen. Interrogatory No. 18 seeks identification of and details regarding all City agencies, officers, departments, divisions, or current or former City employees or contractors whom the City claims received allegedly false, misleading, or deceptive messages or materials from Janssen or through a third party the City alleges conspired with Janssen or was retained, contracted, organized, funded, sponsored, or controlled by Janssen. Interrogatory No. 20 seeks identification of each instance in which the City or any other entity that provides or administers City programs denied payment or reimbursement for a prescription of a Janssen opioid medication as medically unnecessary. (*See* Ex. C-2.)

### 2. *Interrogatories on Which the Parties Are at an Impasse*

Despite their good faith meet and confer, the City and Janssen are at an impasse with respect to the City's responses to six Janssen interrogatories, specifically: Interrogatory Nos. 4, 7 and 8 in Plaintiff's Second Supplemental Response to Janssen Defendants' First Set of Interrogatories (*see* Ex. C-1); Interrogatory No. 17 in Plaintiff's Supplemental Response to Janssen Defendants' Second Set of Interrogatories (*see* Ex. C-2); and Interrogatory Nos. 23 and 24 in Plaintiff's Response to Janssen Defendants' Third Set of Interrogatories (*see* Ex. C-3). The parties' positions on these interrogatories are set forth below.

### a. *Janssen's position*

Janssen Interrogatory Nos. 4, 7, 8, 17, 23, and 24 seek critical details regarding the City's liability theories and alleged harms. Specifically:

- Three interrogatories seek details related to the City's theory that Defendants falsely represented opioid medications' risks and benefits, including identification of (a) prescribers whom the City contends wrote a medically unnecessary opioid prescription because of an alleged misrepresentation (No. 4); (b) opioid prescriptions the City contends were written because of an alleged misrepresentation that the City attributes, in whole or in part, to Janssen or for which the City seeks to hold Janssen liable (No. 7); and (c) providers who prescribed Janssen opioid medications for off-label indications (No. 8).

- Two interrogatories seek details related to the City's theory that Defendants did not adequately monitor, report, and halt shipment of suspicious order of opioids (*see, e.g.*, 5AC ¶¶ 15, 919(h)), including identification and descriptions of (a) suspicious orders of Janssen's opioid medications that the City alleges Janssen did not adequately monitor, report, or halt (No. 23); and (b) how any such orders were subsequently used, including how many were improperly prescribed, dispensed, diverted, abused, misused, or used and by whom (No. 24).

- The remaining interrogatory (No. 17) seeks identification of all patients and other individuals in Chicago or covered by a City program who allegedly became addicted to or were otherwise harmed as a result of an opioid medication manufactured by Janssen or other Defendants. *See* 5AC ¶¶ 812.

The City has refused to substantively respond to *any* of these requests, primarily objecting that it need not do so because, as it sates below, it intends to prove its case through

aggregate evidence as opposed to relying on individual prescriptions, individual suspicious orders, or individual cases of persons being allegedly harmed by Janssen's conduct. To support this objection, the City relies on this Court's July 1, 2020 Order that the City need not identify medically unnecessary prescriptions. *See id.* (citing Dkt. 824). But the Court held that the City need not identify medically unnecessary prescriptions only after the Court found that the City "has made clear that it does not intend to point to or rely on a single example of medically unnecessary prescriptions." (Dkt. 824 at 10.) By contrast, the City has *not* made clear that it has not identified and will not rely on examples of:

- prescribers who wrote medically unnecessary opioid prescriptions because of an alleged misrepresentation (No. 4);

- opioid prescriptions allegedly written because of an alleged misrepresentation attributable, in whole or in part, to Janssen (No. 7);

- providers who prescribed Janssen opioids for off-label indications (No. 8);

- patients and other individuals who allegedly became addicted to or were otherwise harmed as a result of a Janssen opioid medication (No. 17);

- suspicious orders of Janssen's opioid medications that the City alleges Janssen did not adequately monitor, report, or halt (No. 23); and

- how any such suspicious orders were improperly prescribed, dispensed, diverted, abused, misused, or used (No. 24).

In fact, the City has refused to supplement its responses to these interrogatories to state unequivocally that it has not identified and will not rely on such examples. Instead, the City offered to supplement its responses to state generally that it will prove its case through aggregate proof. That supplement is inadequate and non-responsive, because it does not specifically address let alone foreclose attempts by the City to introduce individualized evidence responsive

to Janssen Interrogatory Nos. 4, 7, 8, 17, 23, and 24. The Court should order the City to supplement its responses to these interrogatories as requested by Janssen.[13]

The City's remaining objections to these interrogatories are also flawed. First, with respect to Interrogatory Nos. 4, 7, and 8, the City asserts that the information sought is not relevant, because "causation of prescriptions" is not an element of the City's claims. (*See* C-1 at 26, 34, 38.) This is incorrect. The City must establish a causal link between Janssen's alleged misrepresentations and alleged medically unnecessary prescriptions. Indeed, the Court dismissed the City's cost recovery claim *twice* for failure to adequately plead the "missing [causal] link" between alleged false statements and the City's alleged injuries—a link that necessarily includes prescribing decisions. *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1084 (N.D. Ill. 2016).

Second, with respect to Janssen Interrogatory Nos. 4, 7, 8, and 17, the City's supplemental responses further object on the grounds of relevance, because the City disclaims recovery for any of the costs of prescription opioids paid for by the City's health plans or workers compensation plans. (*See* Ex. C-1 at 26, 43, 36; C-2 at 13.) Notwithstanding the City's disclaiming of such costs, these interrogatories seek critical information related to the City's marketing liability theory and alleged harms. *See supra*.

Third, the City is wrong that Janssen Interrogatory Nos. 23 and 24 call for legal conclusions and are the subject of expert testimony. (*See* Ex. C-3 at 9-10.) Indeed, both interrogatories seek underlying *factual* evidence relevant to the City's suspicious order monitoring obligations. Interrogatory No. 23 seeks information, which the City has not provided, on particular harms and costs the City allegedly incurred as a result of each suspicious order of

---

[13] In light of Defendants' pending objection to the Court's July 1, 2020 Order (*see* Dkt. No. 834), Janssen reserves its right to seek further relief regarding the City's responses to Janssen Interrogatory Nos. 4, 7, 8, 17, 23, and 24, including moving to compel the City to identify the individualized information requested in these interrogatories.

Janssen opioid medications identified by the City. Likewise, Interrogatory No. 24 seeks information regarding how suspicious orders of Janssen opioids were ultimately prescribed, dispensed, abused, misused, or used. Janssen is entitled to discovery of any facts the City is aware of on these issues, or confirmation that the City is unaware of any such facts.

Finally, the City objects to Interrogatory No. 24 as overbroad, unduly burdensome, and not proportionate to the needs of this litigation. (*See* Ex. C-3 at 10.) But given the broad scope of the City's allegations and the scale of recovery sought, Janssen is entitled to this highly relevant discovery.

### b.     The City's Response

The City responds to each of the disputed interrogatories in turn:

*Interrogatories Nos. 4 & 7:*

Interrogatory No. 4 asks the City to identify HCPs "whom the City contends wrote a medically unnecessary Opioid Prescription because of an alleged false, misleading or fraudulent statement." Interrogatory No. 7 requests that the City "[i]dentify all opioid prescriptions the City contends were written because of a false, misleading, or fraudulent statement or omission . . ."

The Court has already ruled that the City need not identify "medically unnecessary" prescriptions, yet that is precisely what these interrogatories require. Janssen merely seeks to re-argue the Court's ruling, which it cannot do by virtue of an interrogatory.

None of the City's civil penalties claims (Counts I-III of the Fifth Amended Complaint) require causation as an element. These interrogatories thus can only be relevant to the cost recovery claims asserted in Count IV. As the City has represented, the City will establish its claim "based on aggregate proof, meaning without establishing that specific doctors relied on specific misrepresentations in writing prescriptions for Defendants' opioids." (Dkt. 824 at 8-9). The City's responses to these interrogatories are thus consistent with its legal theories.

Because the City has expressly disclaimed reliance on specific prescriptions to prove causation, Defendants are not entitled to further responses to these interrogatories. As the Court

noted, "[i]f Defendants believe that the City cannot prove its claim under count four without evidence that doctors wrote medically unnecessary prescriptions in reliance on their marketing materials, then their insufficient evidence argument is best left to play out on the merits at the summary judgment phase." (Dkt. 824 at 9.)

*Interrogatory No. 8:*

Interrogatory No. 8 addresses prescriptions for "'off-label' indications." As set forth above, the City "will not rely on any information regarding individual prescriptions or insurance claims data in proving the four counts in the current complaint" and therefore Janssen "cannot demand discovery based on a proof element the opposing party does not accept as a required element." (Dkt. No. 824 at 6, 9.)

With respect to the remainder of the interrogatory, to the extent information from the City's health plans remains relevant, the City's prior response identified prescribers "who wrote City-reimbursed prescriptions for Nucynta IR for a patient without any cancer diagnoses who received any opioid within 90 days of a diagnosis of joint or back pain, where the course of opioid treatment lasted 90 days or more." No supplemental response is necessary.

*Interrogatory No. 17:*

Janssen seeks the identity of "all patients and other individuals in Chicago or covered by a Program who allegedly became addicted to or were otherwise harmed as a result of Janssen Opioids or any other Opioid manufactured by the Defendants, and whether those patients' claims were subsequently reimbursed by a Program."

The City's arguments in response to Joint Interrogatory No. 15 apply with equal force here. Specifically, the interrogatory is overbroad; the interrogatory seeks irrelevant information because the City's claims do not require proof of individual injury; the interrogatory is identical

41

to requests the Special Master denied in Track One; and the information sought is precluded by federal and Illinois law. *See* pages 17-18 above.

*Interrogatory Nos. 23 & 24*

These interrogatories are substantively identical to Endo Interrogatories Nos. 2 & 3. In response to Interrogatory No. 23, the City identified orders that could be flagged as suspicious using Janssen's own criteria. As explained, the identification of what constitutes a suspicious order requires both legal conclusions and expert testimony. The City will supplement its response as necessary consistent with a schedule for expert disclosures.

Janssen's claim that the City is required to identify specific "harms" or "costs" associated with each order fails for the same reason as its claim regarding "medically unnecessary" prescriptions. The City intends to prove its case in the aggregate, demonstrating that the aggregate effect of the Defendants' failure to maintain sufficient suspicious order monitoring policies and prevent the shipment of suspicious orders caused the costs the City seeks to recover. Thus, "Defendants cannot demand discovery based on a proof element the opposing party does not accept as a required element." (Dkt. 824 at 9.)

The City incorporates its arguments asserted at pages 33-34 above in response to Endo Interrogatories Nos. 2 & 3.

### D.     **Teva's Interrogatories**

#### 1.     *Interrogatories the City Has Agreed to Supplement or Is Still Investigating*

The City served supplemental Responses and Objection to the Teva Defendants' First and Second Set of Interrogatories on July 31, 2020, and served Plaintiff's Responses and Objections to Teva Defendants' Third Set of Interrogatories on August 7, 2020. The Teva Defendants provided a letter identifying alleged deficiencies on September 8, 2020, and the City responded by

letter on September 22, 2020. The parties met and conferred on October 7, 2020. During the Parties' meet and confer, the City agreed to supplement or conduct further investigation with respect to the following Joint Interrogatories:

The Teva Defendant's Interrogatory No. 7 seeks the identification of policies are procedures that are also requested by Joint Interrogatory No. 8, and the City has agreed to produce and/or identify relevant policies and procedures.

The Teva Defendant's Interrogatory No. 12 seeks the identification of studies, audits, reviews, evaluations, or analyses that the City or any PBM administrator or third-party vendor relied upon to assess the benefits, detriments, or impacts on costs associated various Opioid-related topics. As with the prior Interrogatory, the City has agreed to produce and/or identify relevant documents.

## 2. ***Interrogatories on Which the Parties Are at an Impasse***

### a. **The Teva Defendants' Interrogatory No. 16**

*The Teva Defendants' Position*

The Teva Defendants' Interrogatory No. 16 asks the City to identify patients or other individuals "who allegedly became addicted to opioids or other narcotics, were hospitalized, and/or were otherwise harmed as a result of any medically unnecessary or improper prescriptions of Teva Opioids." Actavis Interrogatory No. 19 requests similar information with regard to any Actavis Opioid, including the Teva-Acquired Actavis Entities. In both its Answer and Supplemental Answer, the City fails to identify any such individuals. The Teva Defendants maintain that the sought after information is highly relevant and important to the needs of the Teva Defendants for testing the basis of the City's claims, including allegations throughout the

complaint that the Teva Defendants' actions have caused addition, overdose, and death in individuals. The Teva Defendants disagree that prior orders regarding the production of claims data preclude the highly relevant discovery sought here. The Teva Defendants incorporate by reference all arguments made by the Joint Defendants in connection with Joint Interrogatory No. 15 as equally relevant to the Teva Defendant's Interrogatory No. 16 and Actavis Interrogatory No. 19.

### *The City's Response*

The City's arguments in response to Joint Interrogatory No. 15 apply with equal force here. Specifically, the interrogatory is overbroad; the interrogatory seeks irrelevant information because the City's claims do not require proof of individual injury; the interrogatory is identical to requests the Special Master denied in Track One; and the information sought is precluded by federal and Illinois law. *See* pages 17-18 above.

Dated:     October 16, 2020

Respectfully submitted,

/s/ Kara A. Elgersma
Kenneth A. Wexler
Bethany R. Turke
Kara A. Elgersma
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
kaw@wexlerwallace.com
brt@wexlerwallace.com
kae@wexlerwallace.com
Phone: (312) 346-2222
Fax: (312) 346-0022

Thomas P. McNulty
Fiona A. Burke
City of Chicago, Department of Law
30 N. LaSalle St., Suite 1240
Chicago, IL 60602
thomas.mcnulty@cityofchicago.org
fiona.burke@cityofchicago.org
Phone: (312) 744-6929
Fax: (312) 742-3832

Linda Singer
Elizabeth Smith
David I. Ackerman
MOTLEY RICE LLC
lsinger@motleyrice.com
esmith@motleyrice.com
dackerman@motleyrice.com
401 9th Street NW, Suite 1001
Washington, DC 20004
Phone: (202) 232-5504
Fax: (202) 386-9622

*Attorneys for Plaintiff City of Chicago*

/s/ Tinos Diamantatos
Tinos Diamantatos
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601
(312)-324-1000
Firm Id # 40417
tinos.diamantatos@morganlewis.com

Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
T: 215.963.5840
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

*Attorneys for Teva Pharmaceuticals, U.S.A.,
Inc., Cephalon, Inc., Watson Laboratories,
Inc., Actavis LLC, and Actavis Pharma, Inc.*

/s/ Jonathan L. Stern
Jonathan L. Stern
Joshua M. Davis
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Phone: 202-942-5000
jonathan.stern@arnoldporter.com
joshua.davis@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Phone: 213-243-4000
sean.morris@arnoldporter.com

Carole S. Rendon (IL 6200217)
Melissa D. Bertke (pro hac vice pending)
BAKER & HOSTETLER LLP

45

Key Tower
127 Public Square, Suite 2000
127 Public Square, Suite 2000
Cleveland  OH  44114-1214
Phone: 216.861.7420
crendon@bakerlaw.com
mbertke@bakerlaw.com

Justin R. Donoho (IL 6299667)
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago  IL  60606-2841
Telephone:  312.416.8198
jdonoho@bakerlaw.com

*Attorneys for Endo Health Solutions Inc. and
Endo Pharmaceuticals Inc.*

/s/ Charles Lifland
Charles C. Lifland (*admitted pro hac vice*)
Sabrina H. Strong (*admitted pro hac vice*)
Esteban Rodriguez (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
clifland@omm.com
sstrong@omm.com
esrodriguez@omm.com

Amy R. Lucas (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1999 Avenue Of The Stars
Los Angeles, CA 90067
Telephone: (310) 246-6784
Facsimile: (310) 246-6779
alucas@omm.com
Sherry A. Knutson (#6276306)
TUCKER ELLIS LLP
233 South Wacker Drive, Suite 6950
Chicago, Illinois 60606
Telephone: (312) 624-6300
Facsimile: (312) 624-6309
sherry.knutson@tuckerellis.com

46

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/ Donna Welch
Donna Welch, P.C.
Timothy W. Knapp
Karl Stampfl
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
donna.welch@kirkland.com
tknapp@kirkland.com
karl.stampfl@kirkland.com

Jennifer G. Levy, P.C. (admitted pro hac vice)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jlevy@kirkland.com

*Attorneys for Allergan plc (f/k/a Actavis plc) and Allergan Finance, LLC (Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.)*

47