IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, | |
| *Plaintiff*, | |
| v. | Case No. 14-cv-04361 |
| PURDUE PHARMA L.P.; et al., | Honorable Jorge L. Alonso |
| *Defendants.* | Magistrate Judge Young B. Kim |

**REPLY IN SUPPORT OF NON-PARTY ABBVIE INC.'S
MOTION TO QUASH THIRD-PARTY SUBPOENA**

**Table of Contents**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. The City's Three Relevance Theories Are Without Merit. ..............................................2

        1. Collectability of a hypothetical judgment. ..................................................................3

        2. The 2016 and 2018 Allergan-Teva Agreements. .........................................................5

        3. Personal jurisdiction.....................................................................................................5

    B. The City's Opposition Confirms that the Subpoena Is Unduly Burdensome and Disproportionate to the Needs of the Case. ......................................................................6

    C. The City Fails To Justify Its Attempted End-Run Around Party Discovery Limits. ........8

III. CONCLUSION......................................................................................................................9

I.      INTRODUCTION

Plaintiff City of Chicago (the "City") asks the Court to require non-party AbbVie Inc. ("AbbVie") to respond to its wide-ranging, burdensome subpoena (the "Subpoena") that focuses on AbbVie's acquisition of defendants Allergan Limited and Allergan Finance, LLC (together, the "Allergan Defendants") this past May (the "Acquisition"). Yet the City fails to connect any of the Subpoena's twelve broad requests to a matter at issue in this action.

The City's primary relevance argument is that the requests go to the Allergan Defendants' "ability to pay a judgment in this action." (Pl's Opp. To Non-Party AbbVie Inc.'s Mot. Quash 3d-Party Subpoena at 5 (Dkt. No. 884) ("Pl's Opp.")). But the collectability of a potential judgment not an appropriate issue for pre-judgment discovery, and the City's speculation as to how the Acquisition potentially could affect collectability is wholly unsupported. Tellingly, the City fails to cite any authority permitting pre-judgment discovery relating to a defendant's ability to satisfy a hypothetical judgment based on claims like the City's. This is unsurprising because it is black-letter law that such discovery is impermissible even from parties—let alone from non-parties.

Separately, the City asserts that the requested documents are relevant because they may relate to Allergan's 2016 sale of certain subsidiaries to Teva and a subsequent agreement regarding that sale entered into in 2018. But those agreements predated the Acquisition, and the parties to them are defendants in this action, which obviates the City's supposed need for third-party discovery relating to the agreements from non-party AbbVie.

Finally, the City argues that the requested documents are relevant because they relate to Allergan Limited's personal jurisdiction defense. Personal jurisdiction, however, is determined when an action is filed—here, 2014—and the documents sought by the Subpoena do not bear on that issue.

NAI-1515173529v2

In light of the City's failure to establish the relevance of the materials sought by any request, the Subpoena fails the Fed. R. Civ. P. 26(b)(1) proportionality test and violates Fed. R. Civ. P. 45(d)(1)'s requirement that the subpoenaing party "must take reasonable steps to avoid imposing undue burden or expense." The City does not explain why the thousands of pages of publicly available information about the $63 billion acquisition are insufficient, much less what would justify imposing the significant burdens of collection, privilege review, and production on a third party regarding what are, at best, premature collateral issues based on conjecture. Nor does the City explain—much less excuse—its attempt to end-run the document request limits and deadlines negotiated by the parties and set by the Court by serving twelve additional requests on the Allergan Defendants' corporate affiliate. The Subpoena is improper and should be quashed.[1]

## II. ARGUMENT

### A. *The City's Three Relevance Theories Are Without Merit.*

Eleven of the Subpoena's twelve requests seek documents relating to the Acquisition. (*See* Mem. Supp. Non-Party AbbVie Inc.'s Mot. Quash Third-Party Subpoena at 2-4 (Dkt. No. 873) ("AbbVie Mot.") (listing requests and explaining that the final Request's ambiguity makes it impossible to determine what relevant information, if any, it seeks)). The Acquisition closed in May 2020—years after the conduct at issue in the City's complaint—and has no bearing on any of the City's four claims, all of which involve the marketing and distribution of opioids, or on any defendant's defense. *Id.* They are therefore irrelevant, and the Subpoena should be quashed on

---

[1] The City faults AbbVie for declining to "work out a compromise" in the November 5, 2020, meet and confer. (Pl's Opp. at 1). But, in the meet and confer, the City had no reasoned explanation of why the materials sought by the Subpoena are relevant. Further, and given (1) the Subpoena's patent irrelevance, (2) the undue burden that even dramatically narrowed requests would impose, and (3) the City's apparent failure to review the thousands of publicly available documents and then explain what (if anything) it may still need and why, a discussion like the one the City argues should have taken place would have been futile. Put simply, no production is warranted here.

NAI-1515173529v2

this basis alone. Fed. R. Civ. P. 26(b)(1); *Fulton v. Foley*, 2019 U.S. Dist. LEXIS 209585, at *6-8 (N.D. Ill. Dec. 5, 2019) (Harjani, M.J.) (quashing Rule 45 subpoena in substantial part on irrelevance grounds). As detailed below, none of the City's three relevance theories has merit.

### 1. Collectability of a hypothetical judgment

First, the City argues that the requested materials are relevant to "Allergan's ability to pay" a hypothetical judgment against it. (Pl's Opp. at 5-6). But "[t]he federal discovery rules generally prohibit a litigant from discovering an opponent's assets 'until after a judgment against the opponent has been rendered.'" *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1547 (D.C. Cir. 1994) (citation omitted).[2] Indeed, it is black-letter law that, absent narrow circumstances not present here, the Federal Rules "ordinarily do not permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment since such matters are not relevant to the trial issues and cannot lead to the discovery of admissible evidence." 23 Am. Jur. 2d *Depositions and Discovery* § 37 (2020) (footnote omitted).[3]

---

[2] *See, e.g., Swartz v. Rescue*, 2017 U.S. Dist. LEXIS 227041, at *6 (S.D. Ind. June 20, 2017) (Lynch, M.J.) ("the plaintiffs are not entitled to obtain financial information to explore the collectability of a potential judgment"); *In re Method for Processing Ethanol Byproducts & Related Subsystems Patent Litig.*, 2015 U.S. Dist. LEXIS 196942, at *6-7 (S.D. Ind. May 8, 2015) (Lynch, M.J.) (denying motion seeking discovery because "discovery for purposes of collectability issues [wa]s not relevant to the merits"); *3600 Michigan Co. v. Infra-Metals Co.*, 2009 U.S. Dist. LEXIS 88181, at *8 (N.D. Ind. Sept. 24, 2009) (Rodovich, M.J.) ("a defendant's financial status or ability to pay generally is not a permissible ground for inquiry during the discovery phase") (citations omitted); *In re Cowger*, 2014 Bankr. LEXIS 379, at *14-15 (C.D. Ill. Bankr. Jan. 29, 2014) (noting the "general rule that pre-judgment discovery about a defendant's financial affairs is prohibited when the purpose is to determine whether a final judgment will be collectible rather than to establish an element of liability") (citations omitted).

[3] *See also* 27 C.J.S. *Discovery* § 54 (2020) ("[S]ince a party's financial condition or ability to satisfy a judgment is not usually reasonably calculated to produce admissible evidence relating to establishing a claim or defense, such information is generally not discoverable during prejudgment discovery.") (footnote omitted).

3

NAI-1515173529v2

As Judge Shadur observed, the drafters of the 1970 amendments "confronted the question of prejudgment discovery of a defendant's financial affairs" and "drew a narrow line;" namely, they required disclosure of insurance agreements, but limited the "'[t]he amendment . . . to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status.'" *Board of Educ. of Evanston Twp. High Sch. Dist. No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 33 n.16 (N.D. Ill. 1984) (quoting 1970 Adv. Comm. Note to Fed. R. Civ. P. 26(b)(2)). Observing that clear line, and except where independently relevant, "district courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment." *SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 609-10 (E.D. Cal. Aug. 2, 2011) (Newman, M.J.) (collecting cases); *see also* footnote 2, *supra* at page 3 (collecting cases within the Seventh Circuit). Instead, the "appropriate means of obtaining . . . information" about the defendant's financial condition and ability to pay is, in the event an adverse judgment is entered, through "***post-judgment*** discovery pursuant to Federal Rule of Civil Procedure 69(a)(2)." *SierraPine*, 275 F.R.D. at 610 (emphasis added).

These general principles are particularly applicable here, where the City (1) seeks discovery from a non-party and (2) offers no support for its rank speculation that there is doubt about the Allergan Defendants' "ability to pay" a hypothetical judgment. For example, the City claims that Request Nos. 4-7 are relevant to the Allergan Defendants' ability to pay because they "seek documents planning and recording 'cost savings' or 'synergies,'" and "such 'cost savings' could lead to the sale of assets or layoffs that would substantially impair Allergan's financial health and ability to pay a judgment in this action." (Pl's Opp. at 5). This multi-layer speculation assumes

4

an attempt to evade hypothetical creditors without a shred of support and stretches the relevance inquiry far beyond the breaking point.

### 2. The 2016 and 2018 Allergan-Teva agreements

Next, the City argues that the materials sought by Request Nos. 8-12 are relevant because they seek documents regarding Allergan's 2016 sale of several separate corporate entities to Teva and a 2018 agreement regarding that sale. (Pl's Opp. at 6-7). The City is mistaken. Those agreements were executed years before the May 2020 Acquisition, and none of the requests references either Allergan-Teva agreement. Nevertheless, the City alleges that a purported "dispute" exists between Teva and the Allergan Defendants regarding generics liability that somehow justifies discovery from a new corporate parent. Yet the City points to no meaningful evidence of such a dispute, and it appears to be the City's counsel's creation. And, even if there were such a dispute, the Actavis and Watson generics entities are Defendants in this case and are being defended by Teva's counsel, so that supposed dispute would not warrant third party discovery from AbbVie.

### 3. Personal jurisdiction

Finally, the City claims the Subpoena seeks documents relevant to Allergan Limited's defense of lack of personal jurisdiction. (Pl's Opp. at 7-8). But facts post-dating the filing of a complaint "are not relevant for personal jurisdiction analysis." *NTE LLC v. Kenny Constr. Co.*, 2015 U.S. Dist. LEXIS 142686, at *14 (N.D. Ill. Oct. 21, 2015); *accord Haggerty Enters., Inc. v. Lipan Indus. Co.*, 2001 U.S. Dist. LEXIS 13012, at *9 (N.D. Ill. Aug. 23, 2001) (post-filing conduct would "not be considered . . . because [personal] jurisdiction is generally determined by facts existing at the case filing") (citations omitted); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 908 (N.D. Ill. 1999). "The focus on whether a defendant has purposefully availed itself of the privilege of conduct activities in the forum state necessarily implies that *only*

5

***conduct prior to the accrual of the cause of action or, at the very latest, the filing of the lawsuit is relevant***." *United Phosphorus, Ltd.*, 43 F. Supp. 2d at 908 (emphasis added). This makes sense, because "jurisdiction attaches (or does not attach) as of the time that an action is filed." *Id.*, 43 F. Supp. 2d at 910. No documents requested by the Subpoena bear on whether this Court had personal jurisdiction over Allergan Limited when Plaintiff filed its Complaint in 2014. Thus, they are irrelevant to the jurisdictional inquiry.

Further, the City's only jurisdictional theory that survived the earlier motion to dismiss is its claim that Allergan Limited (then known as Actavis plc) was "the successor-in-interest to Actavis, Inc." in a transaction that was completed in 2013, "and as such can be charged with Actavis[,] Inc.'s contacts." *City of Chicago v. Purdue Pharma L.P*, 2015 U.S. Dist. LEXIS 60587, at *21-23 (N.D. Ill. May 8, 2015) (Dkt. No. 288). But the materials sought from AbbVie by the Subpoena are not relevant to whether Allergan Limited is the successor to Actavis, Inc. by way of a transaction that occurred seven years before AbbVie acquired the Allergan Defendants in the Acquisition.

### B. *The City's Opposition Confirms that the Subpoena Is Unduly Burdensome and Disproportionate to the Needs of the Case.*

The Subpoena is disproportionate to the needs of the case and would impose an undue burden on non-party AbbVie. Fed. R. Civ. P. 26(b)(1), 45(d)(1), 45(d)(3)(A)(iv). Not only does each request call for "[a]ll Documents" about ill-defined subject matters such that responding would require a burdensome collection, review and production process, but several requests call for primarily privileged or protected materials, which would necessitate a laborious privilege review. (*See* AbbVie Mot. at 5-7). The lack of proportionality and undue burden is particularly evident when weighed against the City's threadbare relevancy arguments. On this independent basis the Subpoena should be quashed. *Buonovaolanto v. LG Chem., Ltd.*, 2019 U.S. Dist. LEXIS

NAI-1515173529v2

229629, at *7 (N.D. Ill. Mar. 8, 2019) (Rowland, M.J.) (quashing Rule 45 subpoena, including on proportionality grounds).

The City's assertion that the Requests are "narrowly tailored to seek only particular documents about the AbbVie-Allergan relationship and information about Allergan's post-acquisition" (Pl's Opp. at 8) is belied by the requests' plain language. They do not identify particular documents or particular sources, but rather each ask for "[a]ll Documents" either "relating to," "reflecting," "concerning," or "describing" broad subject areas. (*See* Subpoena (Dkt. No. 873-1)). For example, Request No. 12, seeks "[a]ll Communications or agreements with any Defendant concerning Opioids or Opioid-related litigation," and it is indistinguishable from those this Court found overbroad in *Earthy, LLC v. BB&HC, LLC*, 2017 U.S. Dist. LEXIS 167200, *10 (N.D. Ill. Oct. 10, 2017) (Kim, M.J.), where a subpoena sought "all communications, documents, and electronically stored information between" a party and several entities.

The City's contention that the Subpoena is "narrowly tailored to seek non-public information" likewise is unavailing. (Pl's Opp. at 8). In fact, the requests make no such distinction. (*See* Subpoena (Dkt. No. 873-1)). Further, excepting public information would only add to the burden on AbbVie, because it would require determining what is public and what is non-public, as business documents generally are not segregated in this manner in the ordinary course.[4]

---

[4] The fact that AbbVie's motion to quash summarized "all the categories of documents sought . . . in bullet points on less than one page" does not, as the City argues, mean that the requests are limited in scope. (Pl's Opp. at 2). However succinct AbbVie's synopsis may have been, the requests have few limits. As to their length, they span two pages, and the definitions and instructions span four pages each. (Subpoena (Dkt. No. 873-1)). And, as to their substance, they seek a "[a]ll Documents" concerning many parts of a multi-billion dollar transaction as noted in text above.

7

### C. The City Fails To Justify Its Attempted End-Run Around Party Discovery Limits.

By serving twelve broad additional requests on an affiliate of the Allergan Defendants, the City improperly attempts to circumvent the discovery limits and schedule negotiated by the parties and set by the Court, which permitted the City to serve "up to 10 RFPs on each Defendant Corporate Group" (Joint Status Rep. at 7 (Dkt. No. 752)), all by June 30, 2020 (6/12/20 Minute Order (Dkt. No. 802)). (*See* AbbVie Mot. at 7-8). Indeed, the City appears to acknowledge as much, arguing (without factual support) that "Allergan has resisted producing discovery on the issue" of Allergan's 2016 sale of certain corporate entities to Teva and that therefore "[t]o the extent AbbVie has information relevant to this issue, Plaintiff should be provided access to it." (Pl's Opp. at 6). The City's failure to pursue discovery it could have obtained from a party cannot justify seeking the same discovery from a non-party.

Moreover, the City neither identifies document requests it served on the Allergan Defendants regarding the Acquisition or the 2016 transaction with Teva nor explains its apparent failure to seek those documents from the Allergan Defendants within the limits and on the timeline set by the Court. Regardless, if the City genuinely believed that it was denied relevant discovery from the Allergan Defendants regarding the matters that are the focus of the Subpoena, the appropriate remedy would have been a timely motion to compel against the parties to the litigation, not a third-party subpoena to a new corporate parent with no connection to that issue.[5]

---

[5] The City also argues that there is an inconsistency between, on the one hand, AbbVie's statement that the Allergan Defendants and AbbVie "are separate, distinct entities" and, on the other hand, AbbVie's reference to itself as the Allergan Defendants' "corporate affiliate. " (Pl's Opp. At 2). This claim ignores the most basic principles of corporate law. While AbbVie is the indirect corporate parent of the Allergan Defendants, that is entirely consistent with and in no way undermines the fact AbbVie and the Allergan Defendants are wholly separate, distinct legal entities.

## III. CONCLUSION

For the foregoing reasons and those set forth in its initial memorandum, AbbVie respectfully requests that the Court quash the City's Subpoena.

Dated: December 7, 2020

Respectfully submitted,

/s/ *Jeremy P. Cole*
Jeremy P. Cole (Ill. Bar No. 6269551)
JONES DAY
77 West Wacker Dr.
Chicago, IL  60601
(312) 782-3939
jpcole@jonesday.com

*Attorneys for AbbVie Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of December, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

/s/ *Jeremy P. Cole*
Jeremy P. Cole (Ill. Bar No. 6269551)
JONES DAY
77 West Wacker Dr.
Chicago, IL  60601
(312) 782-3939
jpcole@jonesday.com

*An Attorney for AbbVie Inc.*

NAI-1515173529v2